STEPHANIE S. CHRISTENSEN
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
CHRISTINA MARQUEZ (Cal. Bar No. 305301)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-4061
     Facsimile: (213) 894-7819
     E-mail: Christina.Marquez@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Esvin Fernando Arredondo Rodriguez, <br><br> Plaintiff, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV 22-02845-JLS-AFM <br><br> **NOTICE OF MOTION AND MOTION TO TRANSFER; MOTION TO DISMISS PLAINTIFF'S COMPLAINT** <br><br> Hearing Date:  December 9, 2022 <br> Hearing Time:  10:30 a.m. <br> Ctrm:      8A <br> Hon.      Josephine L.Staton |

# **TABLE OF CONTENTS**

DESCRIPTION                                                                 PAGE

TABLE OF AUTHORITIES ...................................................................i

NOTICE OF MOTION AND MOTION TO DISMISS ....................................vi

MEMORANDUM OF POINTS AND AUTHORITIES ................................1

I.      INTRODUCTION ....................................................................1

II.     FACTUAL AND LEGAL BACKGROUND.....................................2

   A.    Statutory framework for noncitizens entering the United States. .................2

   B.    Statutory Framework for Immigration Custody Relating to Unaccompanied Minors ...................................................3

   C.    Flores Agreement requirements ....................................4

   D.    Prior Executive Branch Directives Regarding Immigration Enforcement ...................................................................5

   E.    Plaintiff's Complaint ...................................................6

   F.    Subsequent policy changes.............................................6

III.    LEGAL STANDARD .............................................................7

   A.    Transfer Under 28 U.S.C. § 1404(a) ..............................7

   B.    Dismissal for Lack of Subject Matter Jurisdiction.........................8

   C.    Dismissal for Failure to State a Claim ...........................9

IV.     ARGUMENT.........................................................................10

   A.    This Matter Should be Transferred Pursuant to 28 U.S.C. § 1404(a).........10

       1.    Plaintiff Could Have Brought this Action in the Southern District of Texas.......................................11

       2.    The Convenience and Interests of the Parties Favor Transfer Because Most Operative Facts Occurred in Southern Texas. .........11

       3.    The Southern District of Texas Has a Greater Local Interest in this Matter. .........................................13

   B.    Plaintiff's Claims Are Impermissible Direct Liability or Systemic Tort Claims ..............................................14

   C.    Plaintiff Fails to State a Claim for Negligence and Negligent Infliction of Emotional Distress Under the Applicable State Law .............15

i

# <u>TABLE OF CONTENTS (CONTINUED)</u>

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

      1.    Texas Law Applies ................................................................. 15

D.    Plaintiff's Claims for NIED Should Be Dismissed For Failure to State a Claim Because Texas Does Not Recognize an Independent Tort Claim for NIED ................................................................................ 16

E.    Plaintiffs Fail to State a Claim for Negligence Under Texas Law Because They Did Not Suffer a Physical Injury ......................................... 16

V.    CONCLUSION ................................................................................ 18

# TABLE OF AUTHORITIES

<u>DESCRIPTION</u>                                                                                                          <u>PAGE</u>

**Federal Cases**

*Adams v. United States*,
    420 F.3d 1049 (9th Cir. 2005) ..................................................................... 14

*Amazon.com v. Cedant Corp.*,
    404 F. Supp. 2d 1256 ..................................................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................... 10

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*,
    571 U.S. 49 (2013) ........................................................................................... 7

*Barroca v. United States*, No. 19-cv-699,
    2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) ............................................... 11

*Barton v. Barr*,
    140 S. Ct. 1442 (2020) ..................................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... 9, 10

*Bender v. Williamsport Area School Dist.*,
    475 U.S. 534 (1986) ......................................................................................... 9

*Bunikyte v. Chertoff*,
    No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ........................... 4

*Canal A Media Holding, LLC v. United States Citizenship & Immigration Servs.*, No. 17-cv-6491,
    2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ....................................... 13, 14

*Center for Biological Diversity v. Kempthorne*, No. 08-cv-1339-CW,
    2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) ............................................... 8

*Commodity Futures Trading Comm'n v. Savage*,
    611 F.2d 270 (9th Cir. 1979) ........................................................................... 8

*Consol. Rail Corp. v. Gottshall*,
    512 U.S. 532 (1994) ....................................................................................... 17

i

*Dreier v. United States*,
  106 F.3d 844 (9th Cir. 1997) ........................................................................ 9

*E.L.A. v. United States*,
  2022 WL 2046135 (W.D. Wash. June 3, 2022) ........................................ 17

*F.D.I.C. v. Meyer*,
  510 U.S. 471 (1994) ...................................................................................... 9

*F.R. v. United States*,
  2022 WL 2905040 (D.Ariz. July 22, 2022) .............................................. 14

*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016) ..................................................................... 4, 5

*Flores v. Rosen*,
  984 F.3d 720 (9th Cir. 2020) ........................................................................ 4

*Hansen v. Combined Transp., Inc.,* No. 13-cv-1298,
  2013 WL 5969863, at *2 (W.D. Wash. Nov. 7, 2013) ............................. 13

*Jones v. GNC Franchising, Inc.,*
  211 F.3d 495 (9th Cir. 2000) ................................................................... 8, 12

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ................................................................................. 8, 9

*Koval v. United States*, No. 2:13-cv-1630,
  2013 WL 6385595 (D. Ariz. Dec. 6, 2013) .............................................. 11

*Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF),
  2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ...................................... 14, 15

*M.D.C.G. v. United States*,
  2016 WL 6638845 (S.D. Tex. Sept. 13, 2016) .......................................... 16

*Nordquist v. Blackham,* No. 06-cv-5433,
  2006 WL 2597931 (W.D. Wash. Sept. 11, 2006) ............................... 12, 13

*Quicksilver Res. Inc. v. Eagle Drilling, LLC,*
  792 F. Supp. 2d 948 (S.D. Tex. 2011) ....................................................... 15

*Richards v. United States*,
  369 U.S. 1 (1962) ....................................................................................... 15

*Robinson v. United States*,
  586 F.3d 683 (9th Cir. 2009) ........................................................................ 9

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ............................................................ 8, 9

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.,*
   343 F.3d 1036 (9th Cir. 2003) ............................................................ 8

*Sierra Club v. Whitman*,
   268 F.3d 898 (9th Cir. 2001) ............................................................ 9

*Smith v. Corizon Health, Inc.,* No. 16-cv-00517-WHA,
   2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) .................................... 7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................ 8

*Strojnik v. 1530 Main LP*,
   2020 WL 981031 (N.D. Tex. Feb. 28, 2020) .................................. 17

*Thornhill Publishing Co. v. Gen. Tel. & Elec. Corp.,*
   594 F.2d 730 (9th Cir. 1979) ............................................................ 8

*United States v. Dominguez-Portillo*, No.17-MJ-4409
   2018 WL 315759 (W.D. Tex. Jan. 5, 2018) .................................... 4

*Valdez v. United States*,
   56 F.3d 1177 (9th Cir. 1995) ............................................................ 14

*Villafuerte v. United States*,
   2017 WL 8793751 (S.D. Tex. Oct. 11, 2017) ................................ 17

*Villafuerte v. United States,* No. 7:16-CV-619,
   2017 U.S. Dist. LEXIS 227976 (S.D. Tex. Oct. 11, 2017) ............ 16

*Walding v. United States*, No. SA-08-CA-124-XR,
   2009 U.S. Dist. LEXIS 26552 (W.D. Tex. Mar. 31, 2009) ............ 16

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ........................................................ 9

**Federal Statutes**

6 U.S.C. § 279(a) .................................................................................. 3

6 U.S.C. § 279(b)(1)(A) ........................................................................ 3

6 U.S.C. § 279(b)(1)(C) ........................................................................ 3

iii

6 U.S.C. § 279(b)(2) .......................................................................................... 3

6 U.S.C. § 279(g)(2) .......................................................................................... 3

8 U.S.C. § 1101(a)(3) ........................................................................................ 2

8 U.S.C. § 1225(a)(1) ........................................................................................ 2

8 U.S.C. § 1225(a)(3) (b) ................................................................................... 2

8 U.S.C. § 1225(b) ............................................................................................. 2

8 U.S.C. § 1231(g)(1) ..................................................................................... 2-3

8 U.S.C. § 1232(b)(1) ........................................................................................ 3

8 U.S.C. § 1232(b)(3) ........................................................................................ 3

8 U.S.C. § 1232(c)(2)(A) ................................................................................... 3

8 U.S.C. § 1232(c)(3) ..................................................................................... 3, 4

8 U.S.C. § 1232(c)(3)(B) ................................................................................... 4

8 U.S.C. § 1325 ............................................................................................. 5, 6

8 U.S.C § 1325(a) .......................................................................................... 2, 6

8 U.S.C. § 1326 ................................................................................................. 2

8 U.S.C. § 1326(a) ............................................................................................ 2

28 U.S.C. § 1346(b) ........................................................................................ 14

28 U.S.C. § 1346(b)(1) .......................................................................... 1, 6, 7, 15

28 U.S.C. § 1402(b) ..................................................................................... 7, 11

28 U.S.C. § 1404(a) .................................................................................. _passim_

28 U.S.C. §§ 2671-2680 ................................................................................. 1, 6

**State Cases**

_Boyles v. Kerr,_
   855 S.W.2d 593 (Tex. 1993) ..................................................................... 16

_Chapa v. Traciers & Assocs.,_
   267 S.W.3d 386 (Tex. App. 2008) .............................................................. 17

_Christensen v. Superior Court,_
   54 Cal. 3d 868. (1991) ............................................................................... 16

_Dowis v. Mud Slingers, Inc.,_
   279 Ga. 808, 621 S.E.2d 413 (2005) .......................................................... 15

*Gutierrez v. Collins*,
    583 S.W.2d 312 (Tex. 1979) ....................................................... 15

*Holbrook v. Stansell*,
    254 Ga. App. 553, 562 S.E.2d 731 (2002) ................................ 16

*Ryckeley v. Callaway*,
    261 Ga. 828, 412 S.E.2d 826 (1992) ......................................... 18

*Temple-Inland Forest Products Corp. v. Carter*,
    993 S.W.2d 88 (Tex. 1999) ................................................. 16, 17

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................... viii, 2, 9, 18

Fed.R.Civ.P. 12(b)(1) ................................................................ passim

**Other**

82 Fed. Reg. 8793 (Jan. 30, 2017) .......................................................... 5

Article III of the Constitution  ......................................................... 9

"Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry Southwest Border." U.S. DOJ News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (the "Zero-Tolerance Memorandum") ......................................... 5, 6

## **NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that, on December 9, 2022  at 10:30 a.m., or as soon thereafter as it may be heard, Defendant United States of America will, and hereby does, move this court to transfer venue to the Southern District of Texas or, in the alternative, dismiss Plaintiff's Complaint. This motion will be made in Courtroom 8A of the First Street Federal Courthouse before the Honorable Josephine L. Staton, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012.

Defendant requests that the Court transfer this action to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a) or, in the alternative, dismiss Plaintiff's Complaint to the extent it alleges institutional tort claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Additionally, Defendant requests that the Court dismiss Plaintiff's negligence and NIED claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

 This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on August 23, 2022.

1     Dated: September 12, 2022            Respectfully submitted,

2                                          STEPHANIE S. CHRISTENSEN
Acting United States Attorney

3                                          DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

4                                          JOANNE S. OSINOFF
Assistant United States Attorney

5                                          Chief, General Civil Section

6

7

8                                             /s/ *Christina Marquez*

9                                          CHRISTINA MARQUEZ
Assistant United States Attorney

10

11                                          Attorneys for UNITED STATES OF
AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Esvin Fernando Arredondo Rodriguez ("Plaintiff") brings this action on behalf of himself and his minor daughter A.F.A.J.[1] against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA"), seeking damages based on his separation from A.F.A.J., subsequent detention, and conditions of confinement. Plaintiff asserts claims for intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. *See* ECF No. 1 ("Compl."), ¶¶ 70-99. Plaintiff alleges that his separation from A.F.A.J. in Laredo, Texas, was a result of an April 2018 policy known as "the Zero-Tolerance Policy." *See* Compl., ¶ 20.[2] Following their separation, Mr. Arredondo Rodriguez was transferred to immigration detention centers in Texas and Georgia. *See* Compl., ¶¶ 33,35,39. A.F.A.J. was transferred to BCFS Health and Human Services—San Antonio formerly known as Baptist Child and Family Services ("BCFS"), in San Antonio, Texas. *See* Compl., ¶ 45.

The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and has committed itself to family reunification.[3] Nevertheless, Defendant United States of America respectfully moves to transfer this case to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a) because Plaintiff could have brought this action in the Southern District of Texas, the

---

[1] Pursuant to Fed.R.Civ.P. 5.2(a)(3), the name of an individual known to be a minor should be reflected through the minor's initials. Although Plaintiff included his minor daughter's full name in the Complaint and has waived the protection pursuant to Fed.R.Civ.P. 5.2(h), in order to protect the privacy of Plaintiff's minor daughter, the United States will use her initials unless the Court orders otherwise.

[2] There are serious grounds to question the Court's subject matter jurisdiction over certain claims. In particular, the FTCA's Discretionary Function Exception, the Independent Contractor Exception, and the FTCA's exception for actions taken while reasonably executing the law bar Plaintiff's claims. These issues appear to involve some amount of factual discovery in this case, and the United States may bring an additional motion after collecting the relevant information.

[3] See Executive Order on the Establishment of Interagency Task Force on the Reunification of Families, Feb. 2, 2021, at https://www.whitehouse.gov/briefingroom/presidential-actions/2021/02/02/executive-order-on-the-establishment-of-interagency-task-force-on-the-reunification-of-families.

1

convenience and interests of the parties favor transfer, and because the Southern District of Texas has a greater local interest in this matter. Alternatively, Defendant moves to dismiss Plaintiff's Complaint to the extent it alleges institutional tort claims pursuant to Fed.R.Civ.P. 12(b)(1). Additionally, Defendant moves to dismiss Plaintiff's Negligence and Negligent Infliction of Emotional Distress claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.   FACTUAL AND LEGAL BACKGROUND

### A.   Statutory Framework for Noncitizens[4] Entering the United States.

Pursuant to Title 8 of the U.S. Code, when a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325(a). Section 1325(a) is a misdemeanor that is punishable by a fine and 'imprison[ment] not more than 6 months" for a first infraction. *Id*. A subsequent violation may result in imprisonment of not more than two years. *Id.* Reentering the United States without authorization after having been previously removed is a felony. 8 U.S.C. § 1326. An individual who reenters the United States without authorization after having been removed "shall be fined under title 18, or imprisoned not more than 2 years, or both." *Id.* § 1326(a).

Noncitizens who arrive at a United States port of entry are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). Individuals arriving in or present in the United States who, following inspection, are deemed inadmissible are subject to removal from the United States and, as appropriate, detention pending such removal. *See id*. §§ 1225(b); 1226; 1357. These provisions apply to both adults and children. The federal government possesses statutory authority to "arrange for

---

[4] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

appropriate places of detention for aliens detained pending removal or a decision on removal." *Id.* § 1231(g)(1).

### B. Statutory Framework for Immigration Custody Relating to Unaccompanied Minors

Federal immigration law authorizes the United States to provide for the custody and care of minor children who are present in the United States without lawful immigration status. Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(b)(2). Rather, once in ORR custody, there are detailed statutory and regulatory provisions that must be followed before the child is released to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied alien child may not be placed with a person . . . unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that "[s]uch determination shall, at a minimum, include verification of the custodian's identity and

relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a home study is required. *Id*. § 1232(c)(3)(B).

### C.   Flores Agreement Requirements

In 1996, the federal government entered into a settlement agreement referred to as the "Flores Agreement." *See, e.g.*, *Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9). Under a binding interpretation of the Ninth Circuit, the Flores Agreement "unambiguously" applies both to unaccompanied minors and to minors who are encountered together with their parents or legal guardians. *Id.* at 901. Under the Flores Agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id*. at 902-03 (quoting Flores Agreement ¶ 12). The government must also "make and record the prompt and continuous efforts on its part toward . . . release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agreement ¶ 14).

Notably, the Flores Agreement applies only to minors. *Flores*, 828 F.3d at 901. It "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores*, 828 F.3d at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Although the Flores Agreement gives preference to release of

4

minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

### D.  Prior Executive Branch Directives Regarding Immigration Enforcement

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws.  Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017) ("EO 13767").  First, in January 2017, the then-President issued EO 13767 stating that "[i]t is the policy of the executive branch to …detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" *Id*. § 2(b). Executive Order 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law" (*id*. § 6) and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute… and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole" (*id*. § 11(d)).

Second, on April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325 and illegal reentry of individuals who had been removed previously. *See* U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

Third, on April 6, 2018, the former Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ News Release: Attorney

General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (the "Zero-Tolerance Memorandum"). The memorandum directed federal prosecutors along the United States–Mexico border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id*. Consistent with EO 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults – including those traveling with children – who unlawfully entered the United States along the Southwest border in violation of Section 1325. *See generally* EO 13767. Minor children of those adults were transferred to ORR custody as required by the TVPRA.

### E.    Plaintiff's Complaint

Plaintiff brings this action against the United States under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages for (1) Intentional Infliction of Emotional Distress; (2) Negligence; and (3) Negligent Infliction of Emotional Distress. Compl., ¶¶ 70-99. Plaintiff alleges these harms stem from (1) the separation of him from his daughter A.F.A.J. pursuant to the Zero Tolerance Policy; and (2) the conditions of confinement and treatment of Plaintiff and A.F.A.J. after they were separated. *Id*. ¶¶ 26-55.

On or about May 16, 2018, Plaintiff and A.F.A.J. applied for admission into the United States at the Laredo Port of Entry. *Id*. ¶¶ 25-26. Both were detained. *Id*. ¶ 26. Plaintiff was transferred to the Rio Grande Detention Center in Laredo, Texas. *Id*. ¶ 33. Plaintiff was subsequently transferred to two separate immigration detention centers in Georgia prior to his removal from the United States on August 22, 2018. *Id*. ¶¶ 35, 39, 43. A.F.A.J. was taken to Baptist Child and Family Services in San Antonio, Texas and eventually released to the custody of her mother in Los Angeles, California. *Id*. ¶¶ 45-46.

### F.    Subsequent Policy Changes

After assuming office, President Biden took action to repudiate the Zero Tolerance Policy and to reunify the families that were affected by that policy. On February 2, 2021,

the President issued an Executive Order that condemned the "human tragedy" of the prior Administration's Zero-Tolerance Policy, and that committed the United States government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." Family Reunification Task Force EO § 1. That Order created a Task Force to identify and reunify families separated under the Zero-Tolerance Policy, and to make recommendations for the potential provision of immigration benefits and mental-health services to those separated families. *Id.* § 4; *see also* Interim Progress Report, Interagency Task Force on the Reunification of Families 3, July, 31, 2022, available at https://www.dhs.gov/sites/default/files/2022-08/22_0731_FRTF_interim-report.pdf.

## III.  LEGAL STANDARD

### A.    Transfer Under 28 U.S.C. § 1404(a)

The FTCA provides an avenue for individuals to sue the federal government for conduct that constitutes a tort under state law. The applicable substantive state law is "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Venue for an FTCA claim is governed by 28 U.S.C. § 1402(b), which permits such a claim to be prosecuted "in the judicial district where the claimant resides or where the act or omission occurred." 28 U.S.C. § 1402(b). However, section 1404(a) of Title 28 of the United State Code provides for transfer to another district court:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

*See also Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*, 571 U.S. 49, 62-63 (2013). A district court's analysis under Section 1404(a) considers "both private factors, which go to the convenience of the parties and witnesses, and public factors which go to the interests of justice." *Smith v. Corizon Health, Inc.*, No.

16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016). In undertaking this analysis, courts in the Ninth Circuit weigh and consider various case-specific factors, including:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the Plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to Plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Center for Biological Diversity v. Kempthorne, No.* 08-cv-1339-CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008). The moving party bears the burden of establishing that the proposed transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

## B. Dismissal for Lack of Subject Matter Jurisdiction

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). Courts must consider the threshold issue of jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court may dismiss an action under Rule 12(b)(1) if the complaint does not allege facts sufficient to establish subject matter jurisdiction on its face or, even if the complaint asserts grounds for jurisdiction on its face, the evidence does not support a finding of jurisdiction. *Thornhill*

*Publishing Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge allows the court to look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The Court also can hear evidence outside the pleadings and resolve factual disputes, if necessary, without treating the motion as one for summary judgment. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence," and the plaintiff's allegations carry no presumption of truthfulness. *Robinson*, 586 F.3d at 685. Whether a facial or factual attack, because "[f]ederal courts . . . have only that power that is authorized by Article III of the Constitution and the statutes enacted by Congress," *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted), the Court presumes the action lies outside its limited jurisdiction, and the burden is on the party asserting jurisdiction to establish that it exists. *Kokkonen*, 511 U.S. at 377.

A district court cannot hear a suit against the United States unless the government has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature," meaning that a party's failure to establish a waiver of sovereign immunity is properly resolved on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Robinson*, 586 F.3d at 685; *Sierra Club v. Whitman*, 268 F.3d 898, 905-906 (9th Cir. 2001).

## C.    Dismissal for Failure to State a Claim

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations omitted). Rather, the allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Id.* To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Moreover, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## IV.   ARGUMENT

### A.   This Matter Should be Transferred Pursuant to 28 U.S.C. § 1404(a)

The United States moves to transfer this case to the Southern District of Texas "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a).

Both steps of the § 1404(a) analysis are satisfied. Plaintiff could have originally brought this suit in the Southern District of Texas. Plaintiff's claims arise out of the separation, which occurred in Laredo, Texas, in the Southern District of Texas. Compl., ¶¶ 67-68. Additionally, Plaintiff alleges claims arising during his detention and removal from the United States in Georgia and A.F.A.J. alleges claims arising out of her detention in San Antonio, Texas. The Southern District of Texas (1) is where the acts and omissions underlying Plaintiff's claims occurred, (2) is most familiar with the governing law, (3) is where the parties have the most contacts, (4) will be a less expensive forum in which to litigate, and (5) affords far greater ease of access to sources of proof. On the other hand, this District has minimal connection with this matter. While Plaintiff is located here, that factor should be given little weight since none of the facts at issue occurred here.

1.  **Plaintiff Could Have Brought this Action in the Southern District of Texas.**

The initial question in the transfer of venue analysis is whether a plaintiff could have originally brought this action in the transferee district.  Here, Plaintiff could have brought this matter in the Southern District of Texas because a substantial portion of the operative facts occurred in Texas.  28 U.S.C. § 1402(b) (stating that an FTCA action "may be prosecuted…where[]in the act or omission complained of occurred"); Compl., ¶ 8, (describing separation in Laredo Texas and detention in facilities in Texas).  Because most tortious acts or omissions alleged in the Complaint are alleged to have occurred in the Southern District of Texas, it is a proper venue under 28 U.S.C. § 1402(b), and transfer there is authorized by 28 U.S.C. § 1404(a).  *Cf. Barroca v. United States*, No. 19-cv-699, 2019 WL 5722383, *3 (N.D. Cal. Nov. 5, 2019) (granting motion to transfer in FTCA case where majority of allegations in plaintiff's complaint occurred in the transferee state); *Koval v. United States*, No. 2:13-cv-1630, 2013 WL 6385595, *4 (D. Ariz. Dec. 6, 2013) (granting motion to transfer case to Eastern District of California where "[t]he only connection that this case has to Arizona is that plaintiff happened to move there sometime after the events upon which his claims are based occurred").

2.  **The Convenience and Interests of the Parties Favor Transfer Because Most Operative Facts Occurred in Southern Texas.**

Next, we must consider the convenience and interests of the parties and with respect to both judicial districts.  Here, the convenience of the parties and witnesses clearly favors transfer.  Plaintiff and A.F.A.J., who are currently living in Los Angeles, but most other witnesses are located outside this District.  The alleged conduct concerns federal officials and officers in Texas and Georgia, and the relevant events—including Plaintiff and A.F.A.J.'s detentions and separation—that occurred in Texas or Georgia.

Factor one (where the acts and omissions underlying plaintiffs' claims occurred[5]) favors transfer, because the great bulk of alleged wrongdoing occurred (if at all) in the Southern District of Texas.

Factors four ("respective parties' contacts with the forum") and eight ("ease of access to sources of proof") likewise favor transfer for the reasons stated above. Factor five ("contacts relating to the plaintiff's cause of action in the chosen forum") favors transfer because there are no contacts with this forum relating to Plaintiff's causes of action; Plaintiff and A.F.A.J. moved here after the key events alleged in the complaint.

Factor six ("differences in cost of litigating in the two forums") also favors transfer. It will cost much more to litigate this case here than it would in the Southern District of Texas. The United States anticipates that it will have to call a significant number of witnesses—including numerous federal officials and officers—most of whom are in Southern Texas. Preparing, flying, and accommodating all these witnesses here would be a substantial financial burden. *Nordquist v. Blackham*, No. 06-cv-5433, 2006 WL 2597931, at *4 (W.D. Wash. Sept. 11, 2006) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or be deposed….Here, all potential witnesses and parties, save one, reside in northern Texas. Accordingly, this factor favors transfer.") (internal citation omitted).

Factor seven ("the availability of compulsory process") favors transfer to Texas because that is where BCFS is located. BCFS is not a government facility, and the employees are not government employees. Accordingly, the government does not control these non-party witnesses; should they be unwilling to travel to California to testify, compulsory process would not be available in the Central District.

Factor two (which state is "most familiar with the governing law") favors transfer

---

[5] In *Jones*, *supra*, the Ninth Circuit listed the "location where the relevant agreements were negotiated and executed" as the first transfer factor because the central claims in that case rested on a franchise agreement and other contracts. *See* 211 F.3d at 496, 498. In this tort case, the relevant consideration is where the acts and omissions underlying plaintiffs' claims occurred.

because, as discussed below Texas law applies. *Hansen v. Combined Transp., Inc.*, No. 13-cv-1298, 2013 WL 5969863, at *2 (W.D. Wash. Nov. 7, 2013) ("[B]ecause plaintiff brings more claims under Oregon law than Washington law, this factor favors transfer to Oregon."); *Blackham*, 2006 WL 2597931, at *3 ("It is undisputed that the choice of law (Texas) was contractually agreed by the parties. Accordingly, the choice of law factor favors transfer to Texas."). The Southern District of Texas routinely applies Texas tort law in FTCA and diversity cases; this Court seldom if ever does. Familiarity with the governing law therefore weighs in favor of transfer.

The only factor that favors maintaining this action in this District is Plaintiff's choice of forum. Deference to a plaintiff's chosen venue is substantially reduced, however, where that locale lacks any real connection to the activities alleged in the complaint. *Amazon.com*, 404 F. Supp. 2d at 1260; *Hansen*, 2013 WL 5969863, at *2 *Nordquist*, 2006 WL 2597931, at *4 ("A plaintiff's choice of forum is given much less weight when the forum lacks any significant contact with the activities alleged in the complaint. As previously noted, the business is located in Texas, the Defendants reside in Texas, and the Plaintiff resided in Texas while operating the business and during significant negotiations of the sale. This factor weighs heavily in favor of transfer."). The United States acknowledges the cost to Plaintiff of traveling to the Southern District of Texas for an eventual trial. On balance, however, the costs of a multitude of witnesses traveling here outweighs Plaintiff's costs to travel there.

        3.    The Southern District of Texas Has a Greater Local Interest in this Matter.

Lastly, the interests of justice also favor transfer. The allegations in Plaintiff's complaint focus significantly on the behavior of federal officials and officers operating in Southern Texas and the conditions of facilities in Texas. The Southern District of Texas has the greater interest in addressing alleged government wrongdoing toward people located in that District. *See, e.g.*, *Canal A Media Holding, LLC v. United States Citizenship & Immigration Servs.*, No. 17-cv-6491, 2018 WL 7297829, at *4 (C.D. Cal.

13

Sept. 30, 2018) (finding that the transferee district "has a great interest in protecting its citizens from the unreasonable actions of a [government agency]") (internal citations and quotations omitted).

On balance, these factors weigh in favor of transfer. Plaintiff's choice of forum should given minimal weight because none of the alleged conduct occurred here. Therefore, the United States requests that the Court transfer this matter to the Southern District of Texas.

### B.    Plaintiff's Claims Are Impermissible Direct Liability or Systemic Tort Claims

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain torts committed by federal employees acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)). As the Ninth Circuit has held, the terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Adams v. United States*, 420 F.3d 1049, 1052-55 (9th Cir. 2005). Hence, a plaintiff cannot assert "systemic" claims or seek to hold the United States directly liable under the FTCA but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability for under the FTCA. *See, e.g., Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (applying Adams and dismissing claims of "generalized negligence" asserted against staff and employees of federal institutions "as a whole" for lack of jurisdiction).

In *F.R. v. United States*, 2022 WL 2905040, at *4 (D.Ariz. July 22, 2022), a factually similar case, the Court found that it lacked subject-matter jurisdiction to the extent Plaintiffs intended to sue the United States for the alleged tortious misconduct of the relevant agencies writ large where throughout the Complaint Plaintiff referred to "the United States government," "the U.S. government," and "the government," rather than

specific tortious conduct on the part of specific federal employees. The Court held that "the complaint plausibly could be read as alleging claims against the United States based either on tortious misconduct of entire agencies or based on tortious misconduct by individual employees working for those agencies."

Similarly, Plaintiff's Complaint can be construed in a similar way. Plaintiff's Complaint contains numerous allegations attributing tortious conduct to the government as a whole. *See* Compl., ¶¶ 1-4, 13, 43, 59, 62, 64- 66. The FTCA's limited waiver of sovereign immunity does not encompass such "systemic," institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6.

## C.   Plaintiff Fails to State a Claim for Negligence and Negligent Infliction of Emotional Distress Under the Applicable State Law

### 1.   Texas Law Applies

Pursuant to the Federal Tort Claims Act, the United States' liability is determined by the application of the law of the place where the act or omission occurred. *See* 28 U.S.C. § 1346(b)(1). The court uses the choice-of-law provisions from that state to determine what substantive law applies. *See Richards v. United States*, 369 U.S. 1, 8-10 (1962). Here, Plaintiff and A.F.A.J. were separated in Texas.  Therefore, Texas's choice of law rules apply—and, because Texas courts look to the state with the most significant relationship in their choice-of-law analysis, the tort law of Texas applies. *See Quicksilver Res. Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011) (*citing Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)).[6]

---

[6] To the extent plaintiffs allege that their tort claims arise out of Plaintiff's deportation from Georgia, the court may consider Georgia's choice-of-law rule.  Georgia uses the choice of law rule of "lex loci delicti," so the substantive law of the state where the tort was committed applies.  *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 816, 621 S.E.2d 413, 419 (2005).

1
2
3

### D.   Plaintiff's Claims for NIED Should Be Dismissed for Failure to State a Claim Because Texas Does Not Recognize an Independent Tort Claim for NIED

4
5
6
7
8
9
10
11
12
13
14
15
16

Applicable state law bars the plaintiff's claims for negligent infliction of emotional distress.  Texas generally does not recognize an independent cause of action for NIED. *See M.D.C.G. v. United States*, 2016 WL 6638845, at *11 (S.D. Tex. Sept. 13, 2016), *aff'd*, 956 F.3d 762 (5th Cir. 2020); *Christensen v. Superior Court*, 54 Cal. 3d 868, 884. (1991). Such a claim is viable only where there is a special duty imposed by law. *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993). Texas courts do not recognize a special duty by immigration officials to prevent emotional distress by detainees. *See Villafuerte v. United States*, No. 7:16-CV-619, 2017 U.S. Dist. LEXIS 227976, at *30-37 (S.D. Tex. Oct. 11, 2017) (dismissing detainee's claim of negligent infliction of emotional distress); *Walding v. United States*, No. SA-08-CA-124-XR, 2009 U.S. Dist. LEXIS 26552, at *52 (W.D. Tex. Mar. 31, 2009) (accepting voluntary dismissal of detainee's negligent infliction of emotional distress claim where such claim was unsupported by Texas law). Accordingly, Plaintiffs' NIED claims should be dismissed.[7]

17
18

### E.   Plaintiff Fails to State a Claim for Negligence Under Texas Law Because He Did Not Suffer a Physical Injury

19
20
21
22
23

Applicable state law also bars Plaintiff's claims for negligence. Texas law requires that a plaintiff show some physical injury to bring an ordinary negligence claim. *See Temple-Inland Forest Products Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999) ("[i]t has been established for over a century that '[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply

24
25
26
27
28

---

[7] To the extent the court considers Georgia substantive law, "[t]here is no independent tort in Georgia for negligent infliction of emotional distress."  *Holbrook v. Stansell*, 254 Ga. App. 553, 554, 562 S.E.2d 731, 733 (2002).  "In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Id.*  As explained below, Plaintiff allege no physical injuries.

because he has been placed in a perilous position.  Nor is mere fright the subject of damages.'") (citation omitted); *Villafuerte v. United States*, 2017 WL 8793751, at *11 (S.D. Tex. Oct. 11, 2017) ("Texas law requires that a plaintiff show some physical injury in order to bring an ordinary negligence claim."); *Strojnik v. 1530 Main LP*, 2020 WL 981031, at *6 (N.D. Tex. Feb. 28, 2020) ("[plaintiff] has not pleaded facts to show this case is one in which it is permissible to bring a negligence claim in the absence of physical injury").  Physical injuries, however, are distinct from physical manifestations of emotional distress. *Chapa v. Traciers & Assocs.*, 267 S.W.3d 386, 397 (Tex. App. 2008).

In *Villafuerte*, a sixteen-year-old plaintiff alleged that her detention by CBP led to "pain from prolonged exposure to extremely low temperatures, sleep deprivation, hunger, stomach aches, headaches, weakness, dizziness, and symptoms of trauma, depression, and anxiety." *Villafuerte*, 2017 WL 8793751, at *11.  She argued that these symptoms, viewed together, demonstrated a physical injury sufficient to bring an ordinary negligence claim. *Id.* The court concluded that the symptoms alleged by Plaintiff were mental and emotional harms, not physical injuries, and dismissed Plaintiff's negligence claim. *Id.* (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994). Additionally, in a similar case involving alleged claims arising out of the Zero Tolerance Policy, a court in this Circuit concluded that Texas law applied and dismissed the negligence claim because Plaintiff only alleged emotional injuries. *See E.L.A. v. United States*, 2022 WL 2046135, at *7 (W.D. Wash. June 3, 2022).

Here, Plaintiff alleges no physical injuries. Rather, he alleges the same sorts of emotional distress rejected in *Villafuerte*. Plaintiff claims that while detained he suffered from frequent headaches, his hair began to fall out, he broke out in hives, he lost weight, his mental health significantly declined, and he became anxious and irritable. Compl., ¶¶ 37-38. A.F.A.J. claims that her mental health deteriorated and she struggled to eat and sleep. *Id*. at ¶ 47. These alleged injuries are mental and emotional harms or physical manifestations of such harms, which do not constitute a physical injury under Texas law.

17

Accordingly, Plaintiff fails to state a claim for negligence, and the negligence claims should be dismissed[8]

## V.      CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court transfer this case to the Southern District of Texas or, in the alternative, Defendant moves to dismiss Plaintiff's Complaint to the extent it alleges institutional tort claims pursuant to Fed.R.Civ.P. 12(b)(1).  Additionally, Defendant moves to dismiss Plaintiff's Negligence and Negligent Infliction of Emotional Distress claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.


Dated: September 12, 2022                          Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section



             /s/ *Christina Marquez*
CHRISTINA MARQUEZ
Assistant United States Attorney

Attorneys for United States of America

---

[8] To the extent the court considers Georgia substantive law, Georgia also requires a physical injury for a negligence claim. *See Ryckeley v. Callaway*, 261 Ga. 828, 828, 412 S.E.2d 826, 826 (1992).