MILBANK LLP
Linda Dakin-Grimm (State Bar #119630)
Ldakin-grimm@milbank.com
Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
Asena Baran (State Bar #342626)
Abaran@milbank.com
Lya Ferreyra (State Bar #340148)
Lferreyra@milbank.com
Marina Markarian (State Bar #340686)
Mmarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA  90067
Telephone: 424-386-4404
Facsimile: 213-629-5063

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and A.F.A.J.

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ESVIN FERNANDO ARREDONDO RODRIGUEZ INDIVIDUALLY AND A.F.A.J., A MINOR, BY HER GUARDIAN AD LITEM, JEFFREY HAMILTON, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No.: CV 22-02845-JLS-AFM <br><br> **PLAINTIFFS' AMENDED OPPOSITION TO (1) DEFENDANT'S MOTION TO TRANSFER VENUE; (2) MOTION TO DISMISS PURSUANT TO 12(b)(1); AND (3) MOTION TO DISMISS PURSUANT TO 12(b)(6)** <br><br> Honorable Josephine L. Staton |

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...................................................................... 1

II.  ARGUMENT ................................................................................................ 3

   A.   Defendant Mischaracterizes the Facts and Laws at Issue ................... 3

     1.   Plaintiffs Entered the United States Legally ............................. 3

     2.   A.F.A.J. Was Not an Unaccompanied Minor ............................ 4

     3.   The *Flores* Agreement Is Not Relevant to this Case ............... 5

     4.   "Executive Branch Directives" and "Subsequent Policy
        Changes" Are Irrelevant and Distort the Facts ........................ 5

   B.   This Court Should Deny Venue Transfer ............................................ 6

     1.   Legal Standard ......................................................................... 6

     2.   Venue Is Proper in this District Because It Is Where *In
        Forma Pauperis* Plaintiffs Reside ............................................ 7

        i.    Private Interest Factors Weigh Against Transfer ........... 7

        ii.   Public Interest Factors Weigh Against Transfer ............. 9

   C.   This Court Should Deny the Rule 12(b)(1) Motion ........................... 10

     1.   Legal Standard ....................................................................... 10

     2.   The Complaint Does Not Allege Systemic Tort Claims.......... 10

   D.   This Court Should Deny the Rule 12(b)(6) Motion ........................... 13

     1.   Legal Standard ....................................................................... 13

     2.   A Proper Choice of Law Analysis Will Compel this Court
        to Apply California Law ......................................................... 14

     3.   Plaintiffs' Claims Are Plausible Under California Law ......... 17

        i.    Plaintiffs Stated a Negligence Claim Under
           California Law.................................................................. 17

        ii.   Plaintiffs Stated a NIED Claim Under California
           Law ................................................................................. 19

     4.   Plaintiffs' Claims Are Plausible Even if Texas Law
        Applies ................................................................................... 19

        i.    Plaintiffs Stated a Negligence Claim Under Texas
           Law ................................................................................. 20

PLAINTIFFS' AMENDED OPPOSITION TO (1) DEFENDANT'S MOTION TO TRANSFER VENUE;
(2) MOTION TO DISMISS PURSUANT TO 12(B)(1); AND (3) MOTION TO DISMISS PURSUANT TO 12(B)(6)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii.      Plaintiffs Stated an NIED Damages Claim Under Texas Law ....................................................................... 22

III.    CONCLUSION ............................................................................ 25

-ii-

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*A.F.P. v. United States,*
    No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570
    (E.D. Cal. July 11, 2022) ............................................................. 2, 7, 8, 10, 11, 12

*A.I.I.L. v. Sessions,*
    No. CV-19-00481-TUC-JCH, 2022 WL 992543
    (D. Ariz. Mar. 31, 2022) ..................................................................................... 24

*Adams v. United States,*
    420 F.3d 1049 (9th Cir. 2005) ............................................................................. 11

*Arcona, Inc. v. Farmacy Beauty, LLC,*
    No. 2:17–cv–07058–ODW–JPR, 2018 WL 1441155
    (C.D. Cal. Mar. 22, 2018) ...................................................................................... 8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................. 13

*Barela v. Underwood,*
    No. 3:18-CV-2353-G-BH, 2020 WL 4550417
    (N.D. Tex. July 9, 2020) ...................................................................................... 20

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................................13, 14

*Boyles v. Kerr,*
    855 S.W.2d 593 (Tex. 1993).....................................................................20, 23, 24

*Browning v. Graves,*
    152 S.W.2d 515 (Tex. Civ. App. 1941).............................................................. 21

*Burgess v. Superior Court,*
    2 Cal. 4th 1064 (1992).......................................................................................... 19

*City of Tyler v. Likes,*
    962 S.W.2d 489 (Tex. 1997)................................................................................ 23

*Commodity Futures Trading Com. v. Savage,*
    611 F.2d 270 (9th Cir. 1979) ................................................................................. 6

-iii-

*Consol. Rail Corp. v. Gottshall*,
   512 U.S. 532 (1994) ............................................................................ 20

*Cooper v. Tokyo Elec. Power Co. Holdings*,
   960 F.3d 549 (9th Cir. 2020) ............................................................. 9

*Coyle v. Historic Mission Inn Corp.*,
   24 Cal. App. 5th 627 (2018) ............................................................. 18

*Daniels-Hall v. Nat'l Educ. Assoc.*,
   629 F.3d 992 (9th Cir. 2010) ............................................................. 13

*Dillon v. Legg*,
   441 P.2d 912 (Cal. 1968) .................................................................. 17

*Doe v. United States Youth Soccer Ass'n., Inc.*,
   8 Cal. App. 5th 1118 (2017), *modified on reh'g* (Mar. 16, 2017) ..................... 17

*Ducey v. United States*,
   713 F.2d 504 (9th Cir. 1983) ............................................................. 15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   546 F.3d 981 (9th Cir. 2008) ............................................................. 10

*E.L.A. v. United States*,
   No. 2:20-cv 1524-RAJ, 2022 WL 2046135
   (W.D. Wash. June 3, 2022), *reconsideration denied*, 2022 WL
   11212690 (W.D. Wash. Oct. 19, 2022) ........................................... 9, 15

*Ely v. Cnty. of Santa Barbara*,
   No. CV-20-6549-DMG-AGRx, 2021 WL 6752303
   (C.D. Cal. Nov. 29, 2021) ................................................................ 18

*F.R. v. United States*,
   No. CV-21-00339-PHX-DLR,
   2022 WL 2905040 (D. Ariz. July 22, 2022) ..................................... 12

*Firestone Steel Prods. Co. v. Barajas*,
   927 S.W.2d 608 (Tex. 1996) ............................................................ 20

*Flores v. Sessions*,
   No. 2:85-CV-4544-DMG-AGRx,
   2018 WL 10162328 (C.D. Cal. July 30, 2018) .................................. 5
   2018 WL 4945000 (C.D. Cal. July 9, 2018) ..................................... 5

-iv-

407 F. Supp. 3d 909 (C.D. Cal. July 30, 2018) ..................................................... 5

*Franey v. Am. Battery Sols. Inc.*,
No, 22-CV 03457-LB, 2022 WL 4280638
(N.D. Cal. Sep. 15, 2022) ......................................................................................... 6

*Greater Houston Transp. Co. v. Phillips*,
801 S.W.2d 523 (Tex. 1990)................................................................................... 20

*Guillory ex rel. Guillory v. United States*,
699 F.2d 781 (5th Cir. 1983) ................................................................................. 16

*Harris v. Harris County Hosp. Dist.*,
557 S.W.2d 353 (Tex. Civ. App. 1977)................................................................... 21

*Hendricks v. StarKist Co.*,
No. 13-CV-729 YGR, 2014 WL 1245880
(N.D. Cal. Mar. 25, 2014)......................................................................................... 8

*Hill v. Kimball*,
13 S.W. 59 (Tex. 1890), *abrogated by Parkway Co. v. Woodruff*,
901 S.W.2d 434 (Tex. 1995)................................................................................... 20

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ................................................................................... 6

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947)................................................................................................... 7

*Lacey v. United States*,
No. CV13-00132-PHX-DGC, 2013 WL 4759270
(D. Ariz. Sep. 4, 2013)........................................................................................... 16

*Ladd v. Cnty. of San Mateo*,
911 P.2d 496 (Cal. 1996)........................................................................................ 17

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ................................................................................. 13

*Lee v. United States*,
No. CV 19-08051-PCT-DLR (DMF),
2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ....................................................... 11

-v-

*Luna v. United States*,
   No. C20-1152RSL, 2021 WL 673534 (W.D. Wash. Feb. 22, 2021)................... 9

*Malibu Consulting Corp. v. Funair Corp.*,
   No. SA-06-CA 735-XR, 2008 WL 583882
   (W.D. Tex. Feb. 28, 2008)................................................................. 16

*Marino v. Countrywide Fin. Corp.*,
   26 F. Supp. 3d 955 (C.D. Cal. 2014) .................................................. 10

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) ............................................................ 10

*Mercado v. Leong*,
   43 Cal. App. 4th 317 (1996) ............................................................. 19

*Mitchell v. 1Force Gov't Sols., LLC*,
   No. CV 18-7612 PSG, 2018 WL 6977476
   (C.D. Cal. Nov. 29, 2018)................................................................... 7

*Ms. L. v. U.S Immig. and Cust. Enf't*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018)............................................... 24

*Munguia v. Bekins Van Lines, LLC*,
   No. 1:11-CV-01134-LJO,
   2012 WL 5198480 (E.D. Cal. Oct. 19, 2012)...................................... 16

*Ochoa v. J.B. Martin & Sons Farms*,
   287 F.3d 1182 (9th Cir. 2002) ............................................................ 9

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)......................................................................... 9

*Ramirez v. Plough, Inc.*,
   6 Cal. 4th 539 (1993) ...................................................................... 18

*Reich v. Purcell*,
   67 Cal. 2d 551 (1967) ...................................................................... 15

*Retzlaff v. Tex. Dep't of Criminal Justice*,
   135 S.W.3d 731 (Tex. App. 2003).............................................. 20, 23

*Richards v. United States*,
   369 U.S. 1 (1962).................................................................... 14, 15

-vi-

*Salazar v. Collins*,
    255 S.W.3d 191 (Tex. App. 2008) ........................................................ 23

*SCI Tex. Funeral Servs. v. Nelson*,
    540 S.W.3d 539 (Tex. 2018) .......................................................... 23, 24

*St. Louis-San Francisco Ry. Co. v. Super. Ct. for Los Angeles Cnty*,
    276 Cal. App. 2d 762 (1969) .............................................................. 15

*Strojnik v. 1530 Main LP*,
    No. 3:19-CV 01326-E, 2020 WL 981031
    (N.D. Tex. Feb. 28, 2020) .................................................................. 20

*STX, Inc. v. Trik Stik, Inc.*,
    708 F. Supp. 1551 (N.D. Cal. 1988) ..................................................... 8

*T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*,
    2016 WL 1464468 (W.D. Wash. Apr. 14, 2016) ................................... 9

*Torrington Co. v. Stutzman*,
    46 S.W.3d 829 (Tex. 2000) ................................................................ 16

*Wilbur P.G. v. United States*,
    No. 4:21-cv 04457-KAW, 2022 WL 3024319
    (N.D. Cal. May 10, 2022) ......................................... 2, 7, 9, 10, 11, 12

**Statutes**

6 U.S.C. § 279(g)(2) ................................................................................... 4

28 U.S.C. § 1402(b) ................................................................................ 1, 6

28 U.S.C. § 1404(a) ............................................................................. 1, 6, 9

8 U.S.C. § 1182 (a)(9) ................................................................................ 4

Federal Tort Claims Act,
    U.S.C. § 1346(b) and §§ 2671-2680 .......................... 1, 2, 7, 9, 10, 11, 14, 15, 16

Tex. Civ. Prac. & Rem. Code § 41.001(7) ................................................ 24

**Other Authorities**

DEP'T OF JUST., OFF. OF THE INSPECTOR GEN., REVIEW OF THE
    DEPARTMENT OF JUSTICE'S PLANNING AND IMPLEMENTATION OF ITS

-vii-

ZERO TOLERANCE POLICY 6 (2021),
https://oig.justice.gov/sites/default/files/reports/21-028_0.pdf ........................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

This case seeks to hold the United States government accountable for certain officials' willful, unlawful, cruel, and inhumane treatment of Plaintiffs Esvin Fernando Arredondo Rodriguez ("Mr. Arredondo Rodriguez") and his minor daughter A.F.A.J., pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and §§ 2671-2680. In its motion to transfer and motions to dismiss plaintiff's complaint (Doc. 18) ("Motions"), the government seeks to change venue under 28 U.S.C. § 1404(a) and dismiss under Rule 12(b)(1) and Rule 12(b)(6).

The Court should deny the government's motion to change venue because venue is proper in California under 28 U.S.C. § 1402(b). Plaintiffs are not only California residents, but indigent, making it physically and financially infeasible for them to prosecute this case in another venue. Compl., Doc. 1, at ¶ 17; *In Forma Pauperis* Order, Doc. 9. Not only did the government send A.F.A.J. to Los Angeles, California to live with her mother, but also required Mr. Arredondo Rodriguez to return to Los Angeles after his unlawful deportation and to report to ICE officials there. Compl., ¶¶ 9, 12, 56; *see id.* at ¶¶ 7, 22, 53. Furthermore, Plaintiffs were summoned by the government to appear in Los Angeles immigration court. *Id*. To now argue against venue in California is inconsistent with the government's previous conduct. In short, private and public interest factors weigh against transferring venue out of California.

The Court should deny the motion to dismiss under Rule 12(b)(1) because the Court has subject matter jurisdiction over Plaintiffs' claims, which allege specific tortious acts or omissions on behalf of specific, if unnamed, federal employees. *Id.* at ¶¶ 1, 5, 8, 12, 14, 18–19, 26–34, 40, 42, 44–45, 59–60, 71, 75–76, 80–82, 86, 90– 91, 95–97. The government's argument that the complaint alleges systemic tort claims is not supported by the law. Indeed, courts have recently ruled against the government on this very issue, finding that references to the

-1-

"United States Government" are not unexpected in FTCA actions which can only be brought against the United States Government. *See A.F.P. v. United States*, No. 1:21-cv-00780- DAD-EPG, 2022 WL 2704570 (E.D. Cal. July 11, 2022); *Wilbur P.G. v. United States*, No. 4:21-cv-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022).

The government's motion to dismiss under Rule 12(b)(6) also fails. The government assumes, without analysis, that Texas law governs this dispute. It does not, and, in any event, the Court need not decide choice of law at this early stage of litigation but must merely find whether Plaintiffs' claims are plausible under potentially applicable state laws. Plaintiffs have asserted plausible claims under California and Texas law, which recognize claims for negligence and negligent infliction of emotional distress on the facts pled here.[1]

The government was twice granted an extension of time to file its Motions. Instead of using this additional time to thoughtfully respond to the complaint, the government relied on arguments which have no factual application to this case and have been routinely defeated in several courts.[2]

Indeed, the government fails to acknowledge that it has not won a single motion to change venue from a jurisdiction where the plaintiff resides. The government has also not obtained a single dismissal of a family separation FTCA case under Rule 12(b)(1) and has been unsuccessful in its Rule 12(b)(6) motions involving negligence and negligent infliction of emotional distress claims under California law.

---

[1] The motion does not challenge intentional infliction of emotional distress claims.
[2] As of the initial date of this filing, there were approximately 26 other cases pending in federal courts. Declaration of Linda Dakin-Grimm ("Dakin-Grimm Decl.") at ¶ 3.

-2-

1  Perhaps most egregiously, the government introduces facts and law it knows
2  to be irrelevant to this case, likely copied unthinkingly from similar pending cases.[3]
3  Despite what the government suggests, Mr. Arredondo Rodriguez did *not* enter the
4  U.S. illegally but, rather, presented himself at the border as a lawful asylum seeker.
5  Compl., ¶¶ 1, 8, 25. Furthermore, A.F.A.J. was not an unaccompanied minor, as the
6  government mistakenly argues. She was a lawful asylum seeker accompanied by her
7  father, making the *Flores* Agreement on which the government so heavily relies
8  inapplicable to this case. *Id.* at ¶ 8. It is incredible that the government would make
9  such outrageous factual allegations given their unrestricted access to Plaintiffs'
10  immigration and detention records.

11  **II.  ARGUMENT**
12      **A.  Defendant Mischaracterizes the Facts and Laws at Issue**
13          **1.  Plaintiffs Entered the United States Legally**
14  The government's Motions begin with an irrelevant discussion of the
15  criminal statutory framework for noncitizens who enter and re-enter the United
16  States between official ports of entry. Mot., 2–3. The discussion, taken from
17  the government's template no doubt, is irrelevant. The government contends that
18  a noncitizen entering the country between official ports of entry "may be prosecuted
19  for criminal immigration violations." *Id.* at 2. The government alleges that
20  "[r]eentering the United States without authorization after having been previously
21  removed is a felony." *Id.* (citing 8 U.S.C. § 1326).

22  There is no legitimate reason for the government to have included these
23  allegations other than falsely to suggest that Mr. Arredondo Rodriguez and A.F.A.J.
24  engaged in criminal activity or were caught entering the country between official
25  ports of entry, without permission. Neither is true. As described in the Complaint,

26
27  ---
[3] A chart of the FTCA cases indicating where they have used "template language"
28  is attached to the Dakin-Grimm Decl. as Ex. Q.

-3-

Mr. Arredondo Rodriguez and A.F.A.J. lawfully approached the Nuevo Laredo U.S.-Mexico border crossing on May 16, 2018, where they asked for asylum. Compl., ¶¶ 1, 8, 25. They were taken to a holding cell. *Id.* at ¶ 26. A.F.A.J was then forcibly torn from Mr. Arredondo Rodriguez's arms. *Id.* at ¶¶ 26–31. She was taken away to a different detention facility for juveniles, where she was kept for weeks, not knowing whether she would ever see her family again. *Id.* at ¶¶ 8, 27–31, 44–45. Mr. Arredondo Rodriguez has never been charged with any crime. He was nevertheless imprisoned for months in a series of federally-contracted private prisons in Texas and Georgia, moved around in chains, seemingly at random, between these states, and eventually (and unlawfully) deported. *Id.* at ¶¶ 30–43. The only unlawful activity at issue in this case is that of government officials.[4]

### 2.    A.F.A.J. Was Not an Unaccompanied Minor

The government's "Factual and Legal" section next purports to explain the statutory framework applicable to "unaccompanied minors"—a legal term meaning children who approach the border without a parent or legal guardian. Mot., 3–4. There is no valid reason for the government to have included this explanation either. A child is an unaccompanied minor only if "there is no parent or legal guardian in the United States" or "available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Twelve-year-old A.F.A.J. approached the official border crossing *with her father*. She was by definition, "accompanied." Moreover, A.F.A.J.'s mother, Ms. Jerez Lara, was in the country and "available to provide care and physical custody" of A.F.A.J. Compl., ¶¶ 7, 46. There is no good faith reason for the government to have included this material in its brief, much less to label it "Factual" or "Legal."

---

[4] If the government's basis for citing Section 1326 is Mr. Arredondo Rodriguez's attempt to enter the U.S. in 2006, that too would be a red herring because it occurred more than ten years prior to his seeking asylum in 2018. *See* 8 U.S.C. § 1182 (a)(9).

-4-

### 3. The *Flores* Agreement Is Not Relevant to this Case

In another attempt at obfuscation, the government refers to the *Flores* Agreement, implying that the detention of A.F.A.J. was somehow justifiable under the Agreement. *See* Mot., 4. The *Flores* Agreement is not relevant to this case because, as the Complaint makes clear, A.F.A.J. and her father presented themselves lawfully at an official border crossing *together* to seek asylum. Compl., ¶ 8. Her father was only "in custody" because the government unlawfully detained him without charges, and, even then, A.F.A.J.'s mother remained available to care for her. *Id.* at ¶ 7. Not only is the *Flores* Agreement irrelevant, but the government's attempt to hide behind the Agreement now, when at the time the events in the Complaint occurred it *refused* to comply with the Agreement, is disingenuous at best.[5]

### 4. "Executive Branch Directives" and "Subsequent Policy Changes" Are Irrelevant and Distort the Facts

Again, implying without a scintilla of evidence that Plaintiffs were criminals, the government purports to describe "several [Trump] directives regarding enforcement of federal immigration laws" that were supposedly issued "[d]uring the time period relevant to this action." Mot., 5–6. To the extent any of these Executive Orders were legal—and Judge Sabraw has held they were not—*none of them applied to the Plaintiffs*, who were lawful asylum seekers. Instead, the government seems to refer to these policies to create a false impression of

---

[5] In 2018 the government's actions resulted in multiple court orders directing compliance. *Flores v. Sessions*, No. 2:85-CV-4544-DMG-AGRx, 2018 WL 10162328, at *21–22 (C.D. Cal. July 30, 2018) (ordering the government cease misconduct, including forcing children to take psychotropic medication and depriving children of drinking water and private phone calls); *Flores*, 2018 WL 4945000, at *5 (C.D. Cal. July 9, 2018) (rejecting efforts to modify the Agreement); *Flores*, 407 F. Supp. 3d 909, 913, 931 (C.D. Cal. Sept. 27, 2019), *aff'd* in part, 984 F.3d 720 (9th Cir. 2020) (blocking the government's attempt to unilaterally "supersede and terminate" the Agreement).

-5-

1   Plaintiffs. Nor are subsequent policy changes implemented by the Biden
2   administration in 2021 and thereafter relevant to the factual allegations of the
3   Complaint, the claims presented therein, and the Motions. If anything, those policy
4   changes underscore the impropriety and immorality of the previous policy of
5   separation.

6         **B.**    **This Court Should Deny Venue Transfer**

7             **1.**    **Legal Standard**

8        "Any civil action on a tort claim against the United States . . . may be prosecuted
9   only in the judicial district where the plaintiff resides or wherein the act or omission
10  complained of occurred." 28 U.S.C. § 1402(b). This Court has the discretion to
11  transfer a case to "any other district or division where it might have been brought"
12  if a moving party proves that such a transfer is "[f]or the convenience of parties and
13  witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). The moving party
14  bears the burden of proof on this issue—both that transfer is for the convenience of
15  both parties and the witnesses, and that transfer is in the interest of justice. *See*
16  *Commodity Futures Trading Com. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)
17  ("[Defendant] ha[s] the burden to justify by particular circumstances that the
18  transferor forum was inappropriate.").

19       Courts in the Ninth Circuit consider private and public interest factors, such as
20  the plaintiff's choice of forum, the parties' contacts with the forum, where the
21  relevant conduct occurred, the convenience of the witnesses, the availability of
22  compulsory process for witnesses, the ease of access to other sources of proof, the
23  state most familiar with the controlling law, and the difference in costs of litigating
24  in the two forums. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir.
25  2000). These factors are not of equal weight, and "have more weight or less
26  depending on the context." *Franey v. Am. Battery Sols. Inc.*, No. 22-CV-03457-LB,
27  2022 WL 4280638, at *12 (N.D. Cal. Sep. 15, 2022).

28

2. **Venue Is Proper in this District Because It Is Where *In Forma Pauperis* Plaintiffs Reside**

The government does not dispute that the Central District of California is a proper venue for this case. Mot., 10–14. Plaintiffs filed this lawsuit where they reside and have access to counsel—Los Angeles, California. The government does not dispute that Mr. Arredondo Rodriguez is domiciled in Los Angeles, is required to check-in with ICE officials in Los Angeles, and has been summoned to appear in immigration court in Los Angeles. Nevertheless, the government has moved to transfer the case to the Southern District of Texas, but each of the private and public interest factors weigh against transfer. Just as in each of the other factually analogous FTCA cases, the government has failed to meet its burden to show that transfer of this case would be appropriate. *See* Dakin-Grimm Decl. at ¶ 21.

i. **Private Interest Factors Weigh Against Transfer**

"Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). Therefore, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Id.*

Accordingly, as multiple judges in district courts in California and elsewhere have confirmed in analogous family separation FTCA Cases, even if the "great weight" typically afforded to plaintiff's chosen forum is reduced because conduct at issue occurred in another forum, a real showing of convenience by a plaintiff who has sued in his home forum still outweighs any inconvenience the defendant may have shown. *See Wilbur P.G.*, 2022 WL 3024319, at *3–4 (denying transfer from the district where the plaintiffs reside); *A.F.P.*, 2022 WL 2704570, at *5–6, 9 (same).

Moreover, this Court has confirmed that "[t]ransfer is not appropriate when it simply shifts the burden of litigating in a distant forum from Defendant to Plaintiff." *Mitchell v. 1Force Gov't Sols., LLC*, No. CV 18-7612 PSG (SKX), 2018

-7-

1  WL 6977476, at *4 (C.D. Cal. Nov. 29, 2018); *Arcona, Inc. v. Farmacy Beauty,*
2  *LLC*, No. 2:17–cv–07058–ODW–JPR, 2018 WL 1441155, at *8, 10 (C.D. Cal. Mar.
3  22, 2018) (same).  The government has not and cannot show that a transfer to Texas
4  "would do more than simply reduce [the government's] litigation costs while
5  increasing [Plaintiff's] costs." *Hendricks v. StarKist Co.*, No. 13-CV-729 YGR,2014
6  WL 1245880, at *5 (N.D. Cal. Mar. 25, 2014).

7          The government does not contend that transfer of this case to Texas would
8  be more convenient *for Plaintiffs* and their witnesses. It contends only that the
9  government prefers Texas because *some* of its witnesses will be found there. The
10 government simply ignores that many of its own witnesses are *in Georgia* because
11 some of the tortious conduct by ICE officials toward Mr. Arredondo occurred
12 there. Other witnesses are in California, based on the almost two years of
13 separation the government caused A.F.A.J. to endure here. And this Court may
14 discount *any inconvenience* to the government of calling as witnesses federal officials
15 and officers [such as CBP and ICE officers] because "[a]s federal employees, these
16 witnesses may be compelled to testify in this court by the government." *A.F.P.*,
17 2022 WL 13 2704570, at *7; *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556
18 (N.D. Cal. 1988) (noting that the convenience of a party's employee witnesses "must
19 be discounted" in the analysis). On the other hand, most of Plaintiffs' witnesses,
20 including Mr. Arredondo Rodriguez's wife and two other children who witnessed his
21 and his daughter A.F.A.J.'s suffering;  the professionals who have knowledge of
22 A.F.A.J.'s  trauma;  and  the charitable organizations that supported Mr. Arredondo
23 Rodriguez's family, are in California.

24         While it may be slightly inconvenient for the government to transport
25 witnesses from Texas (and Georgia) to California, *in forma pauperis* Plaintiffs
26 cannot afford to transport *any* witnesses to Texas. Thus, "[t]ransferring this action
27 to the Southern District of Texas would merely shift the burden from the
28 government to plaintiffs of limited means." *A.F.P.*, 2022 WL 2704570, at *6.

"Under [such] circumstances of significant disparity between the means of the parties, [Plaintiffs'] choice of venue should be left undisturbed." *Id*.; *see also E.L.A. v. United States*, No. 2:20-cv-1524-RAJ, 2022 WL 2046135, at *5 (W.D. Wash. June 3, 2022) (denying transfer of separated family FTCA suit from plaintiff's home forum because plaintiff is "financially and logistically precluded from litigating their claims if forced to do so in Texas"), *reconsideration denied*, 2022 WL 11212690 (W.D. Wash. Oct. 19, 2022); *Luna v. United States*, No. C20-1152RSL, 2021 WL673534, at *3 (W.D. Wash. Feb. 22, 2021) (same).

### ii.   Public Interest Factors Weigh Against Transfer

As explained below, substantive California law will govern Plaintiffs' claims, so that the state that is most familiar with the governing law is California. Because "a § 1404(a) transfer should not result in a change in the applicable law," venue is most appropriate in the Central District of California. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). Moreover, even if the government's contention that Texas law will govern Plaintiffs' claims was correct (and it is not), "this district is familiar with the FTCA and judges here routinely apply the laws of other states." *See Wilbur P.G.*, 2022 WL 3024319, at *4.

Furthermore, public policy favors maintaining this lawsuit in this Court. "There are plaintiffs who are California residents," and "California has a legitimate interest in ensuring that its injured residents are compensated for injuries." *Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 561 (9th Cir. 2020); *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1193 (9th Cir. 2002) ("[States] unquestionably ha[ve] a strong interest in protecting [their] residents from injury and in furnishing a forum where their injuries may be remedied."); *T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, 2016 WL 1464468, at *8 (W.D. Wash. Apr. 14, 2016) (finding public policy factors in plaintiff's favor as "[f]orum states have an interest in providing redress for their injured residents").

-9-

## C.     This Court Should Deny the Rule 12(b)(1) Motion

### 1.     Legal Standard

"When a motion is made pursuant to Rule 12(b)(1), the plaintiff has the burden of proving that the court has subject matter jurisdiction." *Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 955, 959 (C.D. Cal. 2014) (citing *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001)). "For the court to exercise subject matter jurisdiction, a plaintiff must show that he or she has standing under Article III." *Id.* (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008). When considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but 10 may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

The government has repeatedly argued in dozens of cases that FTCA claims brought by separated parents and children should be dismissed under Rule 12(b)(1). Dakin-Grimm Decl. at ¶¶ 3–10, 12–18. They have not won a single motion on this point. *Id.* at ¶ 22.

### 2.     The Complaint Does Not Allege Systemic Tort Claims

The government's prime argument is that Plaintiffs asserted "[s]ystemic [t]ort [c]laims." Mot., 14–15. This argument has been soundly rejected in two recent FTCA cases brought by separated parents and children. *See A.F.P.,* 2022 WL 2704570, at *18–19; *Wilbur P.G*, 2022 WL 3024319, at *5–6. It borders on bad faith for the government to have raised this argument again here—without reference to those two recent adverse decisions.

-10-

1    The government relies on *Lee* and *Adams* for the proposition that as a result

2    of Plaintiffs' reference to the United States Government, they have asserted only

3    generalized claims against federal institutions as a whole. *See Lee v. United States*,

4    No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020);

5    *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005). The *A.F.P.* court rejected

6    this argument, explaining that "[r]eferences to the 'United States Government' as a

7    whole are not unexpected in an FTCA action, which may only be brought against

8    'the United States itself.'" *A.F.P.*, 2022 WL 2704570, at *18. Furthermore, "[t]he

9    government's reliance" on *Lee* and *Adams* was "misplaced." *Id.* (explaining that

10   *Adams* was inapplicable because "plaintiffs have alleged claims only against the

11   government and employees of the government," and "[u]nlike the complaint

12   addressed by the court in *Lee*, plaintiffs' complaint here sets forth specific alleged

13   acts and omissions of specific federal employees"). Judge Drozd clarified that

14   "identify[ing] every employee, official, and contractor involved in each of the

15   alleged acts . . . is not required at this early stage of litigation when discovery has

16   yet to be conducted." *Id.*

17          The government made the same argument again in *Wilbur P.G.* Judge

18   Westmore similarly found that the complaint at issue had not asserted "a general

19   systemic tort claim." *Wilbur P.G.*, 2022 WL 3024319, at *6. In rejecting the

20   government's argument, Judge Westmore wrote:

21          "Plaintiffs detailed the horrors they allegedly experienced at the hands

22          of specified government agencies, and they have identified several

23          high-ranking government employees involved . . . and described, albeit

24          vaguely, the employees involved in their actual separation. Plaintiffs

25          also adequately allege what actions these agencies, their employees,

26          and the named public officials took."

27   *Id.* (citations omitted). The plaintiffs' inability to "name the individual Border Patrol

28   officers who forcibly separated them and detention center employees without the

benefit of discovery" was not "fatal to their action, particularly given that none of the [p]laintiffs spoke English at the time of detention and were not provided with adequate (or any) interpretive services." *Id.*

Here, every single count in the complaint explicitly identifies specific officials of the United States (not the government as a whole) as the tortfeasors. Compl., ¶¶ 71, 75–76, 80–82, 86, 90–91, 95–97. Plaintiffs reference "high-ranking government employees," *id.* at ¶¶ 2, 4–5, 20–22, as well as "the employees involved in their actual separation,"[6] Compl., ¶¶ 1, 5, 8, 12, 14, 18–19, 21, 26–34, 40, 42, 44–45, 59–60. Plaintiffs did not identify employees involved in the unlawful separation by name (because that information is not yet known) but was not required to. *A.F.P.*, 2022 U.S. Dist. LEXIS 122794, at *55; *Wilbur P.G.*, 2022 WL 3024319, at *6.

The government mistakenly relies on *F.R. v. United States*, No. CV-21-00339- PHX-DLR, 2022 WL 2905040 (D. Ariz. July 22, 2022), but misstates the result of that case. The *F.R.* court held that plaintiff's complaint could have been "read as alleging claims against the United States based either on tortious misconduct of entire agencies or based on tortious misconduct by individual employees working for those agencies." *F.R.*, 2022 WL 2905040, at *4. The court held that it lacks subject matter jurisdiction ***only*** "[t]o the extent Plaintiffs intend to sue the United States for the alleged tortious misconduct of the relevant agencies writ large." *Id.* But the *F.R.* court ruled that to the extent the *plaintiff did not so intend*, its claims survived. *Id.* The government fails to advise this Court that *all of the claims asserted in F.R. thus survived the government's Rule 12(b)(1) motion to dismiss.*[7]

---

[6] *See Wilbur* P.G., 2022 WL 3024319, at *6 (explaining that the identification of high-ranking government employees and even a vague description of involved individuals weighs against a finding that plaintiffs alleged a systemic tort); *A.F.P.*, 2022 WL 2704570, at *18.

[7] *See* Dakin-Grimm Decl. at ¶ 22.

-12-

Here, no claim alleged in the Complaint can be read as asserted against the United States. Indeed it is Plaintiffs' intent that all its claims allege tortious misconduct by individual government employees. In sum, the claims alleged in the Complaint are not impermissible direct liability or systemic tort claims, and the Court should deny the motion to dismiss for lack of subject matter jurisdiction.

**D.   This Court Should Deny the Rule 12(b)(6) Motion**

**1.   Legal Standard**

With respect to the government's motion under Rule 12(b)(6), the matters alleged in the "factual and legal" background section of the Motions must be disregarded entirely because they are not supported by the Complaint. "[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), '[r]eview is limited to the complaint.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir.1993)). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Id.* The district court cannot consider material outside of the pleadings for a Rule 12(b)(6) motion, and "consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court must draw all reasonable inferences "in the light most favorable to the non-moving party." *See Daniels-Hall v. Nat'l Educ. Assoc.*, 629 F.3d 992, 998 (9th Cir. 2010). Yet, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

-13-

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). A plaintiff must not merely allege conduct that is conceivable; "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

> **2.** **A Proper Choice of Law Analysis Will Compel this Court to Apply California Law**

On a motion to dismiss under Rule 12(b)(6), a district court should apply "the law of the place where the act or omission occurred" in an action brought under the FTCA. 28 U.S.C. § 1346(b)(1); *see also Richards v. United States*, 369 U.S. 1, 10 (1962). Here, the Complaint alleges acts and omissions by the government *in three states*: Texas, Georgia, and California. Plaintiffs were initially forcibly separated by government officials in Texas. Compl., ¶ 26–31. Mr. Arredondo Rodriguez was detained by government officials in Texas and was then moved in chains to Georgia, where he spent weeks experiencing tortious conduct by ICE officials. *Id.* at ¶¶ 30– 39. His daughter was detained by government officials in Texas and then released to her mother's custody in California, where she spent a year and a half separated from her father—who was unlawfully deported. *Id.* at ¶ 44–46, 55. In purported compliance with Judge Sabraw's order that ICE facilitate Mr. Arredondo Rodriguez's return to the U.S., ICE officials required him to fly into LAX and to remain in Los Angeles to meet with ICE and attend hearings in immigration court. *See id.* at ¶¶ 54–56. Thus, the acts and omissions at issue in this case occurred in Texas, Georgia, and California, and the Court will have to decide— under a choice of law analysis—which state's law applies.

The government simply ignores its acts and omissions in Georgia and California, summarily announcing that Texas law applies in this case because

-14-

1   Plaintiffs were first separated in Texas.[8] Mot., 15. However, pursuant to 28 U.S.C.

2   § 1346(b)(1), the Court may ultimately apply California, Georgia, or Texas law to

3   the tortious acts and omissions in this case.

4       Moreover, "the whole law (including the choice of law principles) of the state

5   in which the allegedly wrongful act or omission occurred must be applied to

6   determine whether the United States is liable under § 1346(b)." *Ducey v. United*

7   *States*, 713 F.2d 504, 508 n.2 (9th Cir. 1983); *Richards*, 369 U.S. at 12–14.

8   Here,  the government fails to analyze choice of law under any state's laws. Instead,

9   *in a single sentence*, based on its presumption that Texas law applies pursuant to

10  1346(b)(1), the government declares that Texas tort law applies. Under a choice of

11  law analysis *conducted under either California or Texas law*, the result will be that

12  this Court will apply California law to the claims at issue.[9]

13      California choice of law analysis requires the application of California tort

14  law to this case. The California choice of law rules "apply the substantive law

15  deemed most appropriate in light of the significant interest in the particular case." *St.*

16  *Louis- San Francisco Ry. Co. v. Super. Ct. for Los Angeles Cnty*, 276 Cal. App. 2d

17  762, 767 (1969). "The state of the place of the wrong has little or no interest

18  in  such compensation when none of the parties reside there." *Reich v. Purcell*, 67

19

20  _____

21  [8] The government also erroneously claims that in E.L.A., 2022 WL 2046135, "a

22  similar case involving alleged claims arising out of the Zero Tolerance Policy, a
    court in this Circuit *concluded* that Texas law applied and dismissed the negligence

23  claim." Mot., 17 (emphasis added). This is untrue. The court did not *conclude* that
    Texas law governed the claims, the parties stipulated to the application of Texas law.

24  *See* Response to Defendant's Motion to Transfer and Partial Motion to Dismiss at
    18, *E.L.A.*, 2022 WL 2046135 (No. 17). A true and correct copy of this Response is

25  attached to the Dakin-Grimm Decl. at ¶ 11. In fact, the government has not obtained
    a determination from any court that Texas law applies to separated family FTCA

26  cases. Dakin-Grimm Decl. at ¶ 24.

27  [9] Because neither Plaintiffs nor the government contend that Georgia law should

28  apply, Plaintiffs will not include an analysis of that law.

1    Cal. 2d 551, 556 (1967). Meanwhile, "California has an interest in ensuring that
2    . . . its residents are compensated for their injuries and do not become dependent
3    on the resources of California for necessary medical, disability, and
4    unemployment benefits." *Munguia v. Bekins Van Lines, LLC*, No. 1:11-CV-01134-
5    LJO, 2012 WL 5198480, at *11 (E.D. Cal. Oct. 19, 2012). As such, because
6    Plaintiffs are California residents, "California's interest in protecting the tort recovery
7    of damages of its residents would be severely impaired if California law did not
8    apply." *Id.* Therefore, California tort law most likely applies to the claims in this
9    case.

10           Under Texas' choice of law rules, California tort law still would apply. Texas
11   has adopted the "most significant relationship" test from the Restatement (Second)
12   of Conflict of Laws. *Guillory ex rel. Guillory v. United States*, 699 F.2d 781, 784
13   (5th Cir. 1983). Courts deciding choice of law under Texas's rules conduct a multi-
14   factor analysis. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). Under
15   this Texas analysis, the "most significant contact . . . is the Plaintiff's state of
16   residency." *Lacey v. United States*, No. CV13-00132-PHX-DGC, 2013 WL
17   4759270, at *4 (D. Ariz. Sep. 4, 2013) (finding Texas choice of law principles
18   require applying Arizona law to an FTCA claim arising out of an injury in Texas
19   inflicted by a Texan federal employee *on an Arizona resident*); *see also Guillory*,
20   699 F.2d at 783, 785 (finding Texas choice of law principles require the application
21   of Louisiana law to an FTCA claim arising out of an injury in Texas inflicted by a
22   Texan federal employee *on a Louisiana resident*); *Malibu Consulting Corp. v.
23   Funair Corp.*, No. SA-06-CA-735-XR, 2008 WL 583882, at *3 (W.D. Tex. Feb. 28,
24   2008) (finding Texas choice of law principles require the application of California
25   law to a tort claim arising out of an injury in Texas because the plaintiff was a
26   California resident). Therefore, whether this Court applies California's or Texas'
27   choice of law rules, California tort law will apply because Plaintiffs reside in
28   California.

-16-

### 3. Plaintiffs' Claims Are Plausible Under California Law

As discussed above, this Court need not decide which state law applies at this stage but must merely conclude whether Plaintiffs' claims are plausible under the potentially applicable state laws. California law will ultimately apply to the Plaintiffs' claims. Plaintiffs have established plausible claims for Negligence, Negligent Inflection of Emotional Distress ("NIED"), and Intentional Inflection of Emotional Distress ("IIED") under California law.[10]

### i. Plaintiffs Stated a Negligence Claim Under California Law

Under California law, the standard for negligence is "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury.'" *Ladd v. Cnty. of San Mateo*, 911 P.2d 496, 498 (Cal. 1996) (quoting *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992)). Generally, "[d]uty…is measured by the scope of the risk which negligent conduct foreseeably entails." *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968). When the government separated 12-year-old A.F.A.J. from her father, placed her in custody, and kept her separated from her father for almost two years, the risk of lasting psychological and physiological harm was foreseeable. Compl., ¶¶ 8, 26–31, 55.

Furthermore, California courts have found that when paired with foreseeability, special relationships with a child can give rise to a duty of reasonable care because the child "is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare." *See Doe v. United States Youth Soccer Ass'n., Inc.*, 8 Cal. App. 5th 1118, 1129 (2017), *modified on reh'g*

---

[10] Because neither Plaintiffs nor Defendant are arguing for application of Georgia law, Plaintiffs do not address herein the plausibility of claims under Georgia law. Additionally, the government's motion does not challenge Plaintiffs' IIED claim under California law. Therefore, Plaintiffs do not address that claim herein.

(Mar. 16, 2017). California courts have similarly found that a special relationship exists when an individual is in custody because individuals in custody are particularly vulnerable. *Ely v. Cnty. of Santa Barbara*, No. CV-20-6549-DMG-AGRx, 2021 WL 6752303, at \*10 (C.D. Cal. Nov. 29, 2021) (citing *Frausto v. Dept. of California Highway Patrol*, 53 Cal. App. 5th 973, 993 (2020)). Here, A.F.A.J. was a child when she and her father presented themselves at the border as asylum seekers, and the government took them into custody. Compl., ¶¶ 8, 26–31. While detained and under the government's care, the government forcibly separated Plaintiffs. *Id.* Plaintiffs have pled facts sufficient to find the existence of a special relationship between the government and both Plaintiffs, giving rise to a duty of reasonable care.

A breach of duty occurs when defendants fail to meet the standard of care. *Coyle v. Historic Mission Inn Corp.*, 24 Cal. App. 5th 627, 643 (2018). "[C]ourts have fixed no standard of care for tort liability more precise than that of a reasonably prudent person under like circumstances." *Ramirez v. Plough, Inc*., 6 Cal. 4th 539, 546 (1993). Here, federal officers yanked A.F.A.J. from her father's arms and refused to provide either of the Plaintiffs with information of the other's whereabouts. Compl., ¶¶ 8–12. Despite Mr. Arredondo Rodriguez's status as a lawful asylum seeker and lack of a criminal record or immigration bar, A.F.A.J. was taken from him and turned over to a separate agency—the U.S. Department of Health and Human Services—without the knowledge or permission of either parent. *Id.* at ¶¶ 8, 26–31, 44–45. Plaintiffs have pled sufficient facts to support that government officials unjustifiably separated Mr. Arredondo Rodriguez from his daughter, failing to act like reasonably prudent officials.

Causation exists where there is "a connection between the defendant's breach and the plaintiff's injury." *Coyle*, 24 Cal. App. 5th at 645. Professional mental health experts have diagnosed Mr. Arredondo Rodriguez with Posttraumatic Stress Disorder, Complex Type ("PTSD-C"), the most severe form of PTSD. Compl., ¶ 67.

-18-

A.F.A.J. has also been diagnosed with PTSD and other conditions which could lead to long-term consequences on her brain development. *Id*. at ¶¶ 68–69. Plaintiffs have alleged facts indicating that their diagnoses are directly attributable to their separation by the government. *Id*. at ¶¶ 13–14, 67, 68. Because Plaintiffs' complaint alleges facts satisfying all three elements, Plaintiffs have plausibly stated a claim for negligence under California law.

### ii.    Plaintiffs Stated a NIED Claim Under California Law

To plead a claim for NIED in California, plaintiffs must allege the "traditional elements of duty, breach of duty, causation, and damages." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). Additionally, "plaintiff's emotional condition must be an object of the duty assumed or plaintiff's emotional distress must arise from the breach of some other legal duty already owed by defendant." *Mercado v. Leong*, 43 Cal. App. 4th 317, 324 (1996).

Plaintiffs have pled sufficient allegations to satisfy the traditional elements of negligence as discussed above. Plaintiffs have also sufficiently alleged that their emotional distress arises from the breach of a legal duty owed to them by the government. As discussed above, the government had a special relationship with Plaintiffs which required a reasonable duty of care. Plaintiffs were in the government's custody when they were forcibly separated by immigration officials. Compl., ¶ 8. It was because of their forced separation that Plaintiffs suffered and continue to suffer the consequences of severe emotional distress. *Id*. at ¶¶ 13–14, 67, 68. Plaintiffs have alleged that their suffering arose from the government's breach of their legal duty, and thus has plausibly pled NIED.

### 4.    Plaintiffs' Claims Are Plausible Even if Texas Law Applies

Assuming arguendo that Texas law governs instead of California law, Plaintiffs have pled plausible claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress under Texas law.

-19-

### i.   Plaintiffs Stated a Negligence Claim Under Texas Law

The government's motion to dismiss Plaintiffs' negligence claim erroneously conflates Texas law on negligence with negligent infliction of emotional distress. *See* Mot., 16–17; *see also Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994) (discussing negligent infliction of emotional distress); *Strojnik v. 1530 Main LP*, No. 3:19-CV-01326-E, 2020 WL 981031, at *6 (N.D. Tex. Feb. 28, 2020) (referring to the standard for recovery of damages resulting from negligently inflicted emotional distress). Under Texas common law, negligence "consists of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996).

To determine whether a defendant owes a duty, Texas courts consider "(1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations." *Retzlaff v. Tex. Dep't of Criminal Justice*, 135 S.W.3d 731, 742 (Tex. App. 2003). The foreseeability of the harm is the most important factor. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Unlike negligence claims under California law, under Texas law, the damages suffered due to a defendant's breach must include some physical injury. *See Barela v. Underwood*, No. 3:18-CV-2353-G-BH, 2020 WL 4550417, at *5–6 (N.D. Tex. July 9, 2020).

Contrary to the government's assertion, under Texas law, the physical injury can be a manifestation of emotional distress. *See Hill v. Kimball*, 13 S.W. 59, 59 (Tex. 1890) ("That a physical personal injury may be produced through a strong emotion of the mind there can be no doubt . . . [and] if it be proved, and the injury be the proximate result of the cause, we cannot say that a recovery should not be had."), *abrogated by Parkway Co. v. Woodruff*, 901 S.W.2d 434, 443 (Tex. 1995) (explaining that later courts further "eased the physical impact rule"); *Boyles v. Kerr*, 855 S.W.2d 593, 596 (Tex. 1993) ("*Hill*, therefore, did not recognize a cause of

-20-

action for negligent infliction of emotional distress. It merely recognized the right to recover for physical injuries under standard negligence principles, notwithstanding that the physical injury is produced indirectly through emotional trauma.").

Plaintiffs have alleged a negligence claim grounded in a breach of duty owed by federal agents to persons like Plaintiffs, who were in their care. Each of the factors considered by courts in Texas supports that the government owed a legal duty to Plaintiffs. First, the relationship between the government and Plaintiffs was based on the government's assumption of custody of Plaintiffs. Texas law recognizes a legal duty to provide for the care and protection of individuals for whom one assumes custodial care. *See, e.g.*, *Harris v. Harris County Hosp. Dist.*, 557 S.W.2d 353, 355 (Tex. Civ. App. 1977) ("It [is] the duty of the hospital to provide for the care and protection of its patients, and in the exercise of this duty the hospital [is] required to provide such reasonable care as the patient's known condition require[s]."); *cf. Browning v. Graves*, 152 S.W.2d 515, 519 (Tex. Civ. App. 1941) (recognizing a jailer has a duty to "care for and protect his prisoners from harm").

Second, the harm suffered by Plaintiffs was foreseeable by the government. It was foreseeable that aggressively manhandling a child, pulling her forcefully from her father, could lead to her injury. It was also foreseeable that housing individuals in inhumanely cold holding cells without blankets, warm clothing, seats, or beds for extended periods of time could lead to illness. Public policy considerations also support imposing a duty. Prior to the events at issue in 2018, the "long-standing DHS practice of deferring to civil immigration proceedings and enforcement, rather than criminally prosecuting adults entering the United States with children as a family unit, was related to concerns about separating children from their family during the pendency of the parent's prosecution." DEP'T OF JUST., OFF. OF THE INSPECTOR GEN., REVIEW OF THE DEPARTMENT OF JUSTICE'S PLANNING AND IMPLEMENTATION OF ITS ZERO TOLERANCE POLICY  6 (2021), https://oig.justice.gov/sites/default/files/reports/21-028_0.pdf. The government's own motion acknowledges

-21-

that public policy weighs in favor of imposing a duty. Mot., 7 (reciting the government's commitment to "protect[ing] family unity and ensur[ing] that children entering the United States are not separated from their families").

Plaintiffs allege that the government breached the duty of care owed to them by forcibly separating A.F.A.J. from Mr. Arredondo Rodriguez. This breach caused both immediate and ongoing physical injuries. A.F.A.J. was aggressively grabbed, yanked, pulled, and dragged from her father's presence. Compl., ¶¶ 8, 27, 44. Additionally, A.F.A.J. will continue to suffer long-term physical harm in the form of inhibited brain development and other health problems caused by the government's breach. *Id.* at ¶¶ 14, 68. Mr. Arredondo Rodriguez was forced to stay in a brutally cold holding cell without blankets, seats, or beds for a prolonged period of time. *Id.* at ¶¶ 26, 32. This caused Mr. Arredondo Rodriguez to become physically ill, suffering from a high fever, chills, body aches, severe headaches, debilitating pain, hair loss, and a urinary tract infection. The government failed to notice or provide treatment for his infirmities. *Id.* at ¶¶ 36–37. These allegations are sufficient to survive a Rule 12(b)(6) motion as to Plaintiffs' negligence claims under Texas law.

### ii.   Plaintiffs Stated an NIED Damages Claim Under Texas Law

Plaintiffs have adequately pled a claim for damages for negligently inflicted emotional distress. In their motion, the government argues that NIED is not recognized as an independent cause of action under Texas law[11] and that such

---

[11] The government made a similar argument in their Motion to Transfer/Motion to Dismiss, filed in *Nunez Euceda*, No. 2:20-cv-10793-VAP-GJSx, ECF No. 11. There, as here, the plaintiff's response outlined the requirements for recovery of negligently inflicted emotional distress damages if Texas law were applied. Judge Virginia A. Phillips of this Court denied the government's motion to dismiss the plaintiff's negligent infliction of emotional distress claim. A true and correct copy of this Motion, Response, and Order is attached to the Dakin-Grimm Decl. as Ex. K.

-22-

claims are only viable in limited circumstances. In doing so, the government misrepresents the limitations on recovery for negligently inflicted emotional distress under Texas law, asserting that recovery is only permissible where there is a "special duty." Arguing that because there is no special duty owed by immigration officials to prevent emotional distress to detainees, the government asserts they cannot be liable for the emotional distress they negligently inflicted. In fact, under Texas law, recovery for negligently inflicted emotional distress does not require a "special duty." The law requires 1) the breach of a *legal* duty, and 2) either "a special relationship, malice, *or* a particularly shocking injury." *SCI Tex. Funeral Servs. v. Nelson*, 540 S.W.3d 539, 543, 545 (Tex. 2018) (emphasis added); *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997).[12] The second requirement of either a special relationship, malice, or shocking injury is unique to Texas law and serves to address concerns of genuineness and foreseeability. *SCI Tex.*, 540 S.W.3d. at 544.

Plaintiffs have sufficiently pled facts that satisfy both requirements for recovery of negligently inflicted emotional distress under Texas law. First, as discussed above, Texas law considers three factors when determining if a legal duty exists. *See Retzlaff*, 135 S.W.3d at 742. For the same reasons discussed above, all three factors support the existence of a legal duty owed by the government to protect individuals in their custody from harm. *See Salazar v. Collins*, 255 S.W.3d 191, 199–200 (Tex. App. 2008). That duty was breached when the government forcibly separated A.F.A.J. from her father, refused to permit contact between

---

[12] The government cites *Boyles* to support its assertion that Plaintiffs' "claim is only viable where there is a special duty imposed by law." Mot., 16. *Boyles*, however, reaches the opposite conclusion, that "[i]t is unnecessary to recognize some other 'special duty' based on the parties' intimate relationship to provide a basis for recovery" because the defendant in that case already owed a legal duty to the plaintiff. *Boyles*, 855 S.W.2d at 600. The same is true here. The government owed Plaintiffs a legal duty which it breached.

-23-

them, unnecessarily prolonged A.F.A.J.'s separation from her family, and illegally deported Mr. Arredondo Rodriguez in violation of existing court orders. Compl., ¶¶ 8, 10, 18, 27, 34, 43, 45, 49. The breach of this legal duty satisfies the first requirement under Texas law. *See SCI Tex.*, 540 S.W.3d at 546 (Tex. 2018) (explaining that an award of damages was upheld despite the unavailability of NIED as a cause of action because a different legal duty had been breached); *Boyles*, 855 S.W.2d at 601 ("A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated.").

Second, Plaintiffs have pled both malice *and* a particularly shocking injury—recovery requires only one, not both. Under Texas law, malice requires that a defendant anticipated "causing substantial injury or harm to the claimant." Tex. Civ. Prac. & Rem. Code § 41.001(7). Here, Plaintiffs have pled that the government anticipated and even hoped for injury and harm. Government officials repeatedly admitted that the family separations were intended to traumatize families like Plaintiffs, with the expectation that by doing so, other families would be too terrified seeking asylum in the United States. Compl., ¶¶ 5, 21.

Plaintiffs have also demonstrated that the harm Mr. Arredondo Rodriguez and A.F.A.J. suffered as a result of the government's negligence was particularly shocking. Courts that have considered these family separations have found that the government's conduct in forcibly separating children from their parents meets this standard. *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *7 (D. Ariz. Mar. 31, 2022) ("[A] jury could find the government's conduct extreme and outrageous."); *Ms. L. v. U.S. Immig. and Cust. Enf't*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018) (finding the family separation practice "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience"); Compl., ¶ 63. In addition to physically and aggressively separating A.F.A.J. from her father, the government forced Mr. Arredondo Rodriguez to

-24-

watch as A.F.A.J. and other minors were lined up like prisoners and marched out of the facility. *Id*. at ¶ 31.

This malicious breach by the government of the legal duty owed to Plaintiffs resulted in significant and shockingly outrageous emotional harm to both A.F.A.J. and Mr. Arredondo Rodriguez. The family separation policy "'cause[d] irreparable harm' to children by inhibiting brain development and causing other long-term health problems." *Id.* at ¶ 68. The Complaint alleges that Mr. Arredondo Rodriguez continues to battle intense anxiety, coupled with flashbacks of A.F.A.J. being yanked from him; feels perpetually sad and anxious regardless of his daily reality; continues to struggle with sleep, and at times feels overwhelmed by a great emptiness. *Id.* at ¶ 67. Mr. Arredondo Rodriguez's symptoms have manifested into Posttraumatic Stress Disorder, Complex Type ("PTSD-C"), the most severe form of PTSD, and A.F.A.J. has been diagnosed with PTSD as well. *Id.* at ¶¶ 67, 69. Plaintiffs' allegations are sufficient survive a motion to dismiss under Rule 12(b)(6) as to recovery for negligent infliction of emotional distress under Texas law.

## III.     CONCLUSION

Ultimately, the government did not need more time to work on its arguments, its Motions regurgitating the same unsuccessful theories espoused in dozens of other cases. All the government has done is place additional burdens on *pro bono* counsel and delay justice for Plaintiffs. Thus, Plaintiffs respectfully request that this Court deny the government's Motions in their entirety.

Dated:          December 22, 2022          Respectfully Submitted,

**MILBANK LLP**

By:_____
Linda Dakin-Grimm (State Bar #119630)
Ldakin-grimm@milbank.com

-25-

1    Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
2    Asena Baran (State Bar #342626)
Abaran@milbank.com
3    Lya Ferreyra (State Bar #340148)
Lferreyra@milbank.com Marina
4    Markarian (State Bar #340686)
Mmarkarian@milbank.com
5    2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
6    Telephone: 424.386.4000
Facsimile: 213.629.5063

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

-26-