UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 2:22-cv-02845-JLS-AFM                                        Date: December 22, 2022
Title: Esvin Fernando Arredondo Rodriguez v. United States of America

.Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| V.R. Vallery | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANTS:

Not Present                                                            Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER DENYING DEFENDANT'S MOTION TO DISMISS, MOTION TO TRANSFER (Doc. 18)**

Before the Court is Defendant United States's Motion to Transfer, or in the alternative, Motion to Dismiss. (Mot., Doc. 18.) Plaintiff opposed and the United States replied. (Opp., Doc. 20; Reply, Doc. 23.) The Court thereafter took this matter under submission. (Order, Doc. 24.)[1] For the following reasons, the Court DENIES the United States's Motion.

### I.    BACKGROUND

These facts are drawn from Plaintiff's Complaint. (Compl., Doc. 1.) In 2018, Plaintiff Esvin Fernando Arredondo Rodriguez, his wife, and their three daughters fled Guatemala following the murder of their seventeen-year-old son and brother Marco. (*Id.* ¶ 6.) They sought asylum in the United States to escape threats against their lives. (*Id.*)

---

[1] On December 15, 2022, the Court issued an Order to Show Cause regarding claims on behalf of Plaintiff's minor daughter A.F.A.J., who was unrepresented in the action. (Doc. 25.) On December 19, Plaintiff filed a Petition for Appointment of Jeff Hamilton as Guardian ad Litem for A.F.A.J. (Doc. 26.) The Court granted this Petition, and ordered Plaintiff to file an Amended Complaint adding A.F.A.J.'s guardian ad litem and referring to A.F.A.J. only by her initials. (Doc. 27.) Plaintiff filed the First Amended Complaint on December 21, 2022. (Doc. 28.) The instant Motion to Dismiss is based on the earlier complaint, filed April 28, 2022. As there are no substantive changes in the First Amended Complaint which would alter the arguments made in the briefing on the Motion, the Court issues this Order, which is equally applicable to the original Complaint and the First Amended Complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-02845-JLS-AFMDate: December 22, 2022
Title: Esvin Fernando Arredondo Rodriguez v. United States of America

The Mexican government separated Arredondo Rodriguez and his daughter A.F.A.J. from his wife and two other daughters. (*Id.* ¶ 7.) His wife and two daughters arrived at the U.S. border in Laredo, Texas on May 12, 2018 and requested asylum. After passing a credible fear interview on May 24, 2018, his wife and two daughters were permitted to travel to Los Angeles, California to stay with a relative while undergoing immigration proceedings. (*Id.*)

Arredondo Rodriguez and A.F.A.J. arrived at Laredo on May 16, 2018 and requested asylum. (*Id.* ¶ 8.) A.F.A.J. was twelve years old at the time. (*Id.* ¶ 18.) Government officials forcibly separated A.F.A.J. from her father, telling neither what was happening or why, or when they would be reunited. (*Id.* ¶ 8.) Arredondo Rodriguez was detained in a series of facilities in Texas and Georgia for a period of several months and was never told of any charges against him. (*Id.*) A.F.A.J. was declared an unaccompanied minor and sent to an Office of Refugee Resettlement-contracted facility in San Antonio, Texas. (*Id.* ¶¶ 8, 45.) While he was imprisoned, "[g]overnment officials denied Mr. Arredondo Rodriguez access to the asylum process, lied to him about his rights, tricked him, and ultimately deported him in direct violation of [an injunction]."[2] (*Id.* ¶ 8.) Arredondo Rodriguez was deported to Guatemala on August 22, 2018. (*Id.* ¶ 43.) A.F.A.J. was eventually released to her mother's custody in Los Angeles after being held at the facility for about a month. (*Id.* ¶¶ 45-46.)

Meanwhile, Arredondo Rodriguez was living "in fear and in hiding" in Guatemala, seeking to be allowed to return to the U.S. through litigation. (*Id.* ¶¶ 9-10.) On September 4, 2019, a federal district court found that Arredondo Rodriguez had been unlawfully deported. (*Id.* ¶ 10.) After bringing an emergency motion to enforce the September 4 Order, U.S. Immigration and Customs Enforcement ("ICE") sent Arredondo

---

[2] A preliminary injunction entered on June 26, 2018 enjoined immigration officials from removing parents in DHS custody without their children "unless the [parent] affirmatively, knowingly, and voluntarily declines to be reunited with the child prior to the [parent]'s deportation, or there is a determination that the parent is unfit or presents a danger to the child." *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1150 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019), *and enforcement granted in part, denied in part sub nom. Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-02845-JLS-AFM                                                              Date: December 22, 2022
Title:  Esvin Fernando Arredondo Rodriguez v. United States of America

Rodriguez's counsel a letter on January 17, 2020 stating that he was being offered "humanitarian parole" for three days and should present the letter at the U.S. Embassy in Guatemala City to get travel documents to reenter the U.S.  (*Id.* ¶ 11.)  When Arredondo Rodriguez and his attorney did so, they were refused entrance; only upon intercession by Congressional officials were they directed to an ICE facility elsewhere in Guatemala City, where they obtained the necessary documentation.  (*Id.*)  Arredondo Rodriguez lawfully reentered the U.S. on January 22, 2020 in Los Angeles, California.  (*Id.* ¶ 12.)

Both Arredondo Rodriguez and A.F.A.J. suffered severe emotional distress and have developed post-traumatic stress disorder.  (*Id.* ¶ 13.)  While incarcerated in Texas and Georgia, Arredondo Rodriguez suffered "suicidal ideation and debilitating physical symptoms including rapid weight loss, severe hair loss, chronic headaches, abdominal pain, and urinary tract pain."  (*Id.*)  Arredondo Rodriguez and A.F.A.J. "suffer ongoing psychological distress including depression, obsessive anxiety, and trauma of an extreme nature."  (*Id.*)

Arredondo Rodriguez filed the Complaint in this action on April 28, 2022, under the Federal Tort Claims Act ("FTCA"), bringing claims for intentional infliction of emotional distress ("IIED"), negligence, and negligent infliction of emotional distress ("NIED") on behalf of himself and A.F.A.J.  (*Id.* ¶¶ 70-99.)  The Government now moves to transfer the case to the Southern District of Texas, or, in the alternative, to dismiss the negligence and NIED claims.

**II.     LEGAL STANDARDS**

    **A.     Motion to Transfer**

Under 28 U.S.C. § 1404, courts may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice."  The Ninth Circuit has laid out multiple factors to consider, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-02845-JLS-AFM                                                      Date: December 22, 2022
Title:  Esvin Fernando Arredondo Rodriguez v. United States of America

governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  The court will also consider "the relevant public policy of the forum state."  *See id.*

   **B.**     **Rule 12(b)(1)**

A Rule 12(b)(1) jurisdictional challenge can be either facial, where the challenger "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," or factual, where the challenger "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "The United States is immune from suit unless it consents to be sued."  *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).  The FTCA provides "a limited waiver of that sovereign immunity." *Id.*  If the FTCA is not applicable, the Court lacks subject matter jurisdiction.

   **C.**     **Rule 12(b)(6)**

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Furthermore, courts must construe the facts in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted).  The complaint must contain "sufficient factual matter, accepted as true, to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-02845-JLS-AFM                      Date: December 22, 2022
Title: Esvin Fernando Arredondo Rodriguez v. United States of America

'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### III. **MOTION TO TRANSFER**

The burden is on the party seeking transfer to show that the balancing of the various factors and interests clearly favor transfer, and transfer will not be granted if it merely shifts the inconvenience from one party to the other. *See Lax v. Toyota Motor Corp.*, 65 F. Supp 3d 772, 776 (N.D. Cal. 2014.). The Government argues that this case should be transferred to the Southern District of Texas because that district:

> (1) is where the acts and omissions underlying Plaintiff's claims occurred, (2) is most familiar with the governing law, (3) is where the parties have the most contacts, (4) will be a less expensive forum in which to litigate, and (5) affords far greater ease of access to sources of proof.

(Mot. at 20.) Arredondo Rodriguez argues that transfer is improper because it would shift the expense of litigating in a distant forum to Plaintiff, who is proceeding *in forma pauperis*; it is inconvenient for Plaintiff's witnesses, most of whom reside in California; and it goes against California's legitimate interest in ensuring that its residents are compensated for torts committed against them. (Opp. at 16-18.) Arredondo Rodriguez

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-02845-JLS-AFM                                                         Date: December 22, 2022
Title:  Esvin Fernando Arredondo Rodriguez v. United States of America

does not dispute that the action could have been brought in the Southern District of Texas.

Plaintiff's choice of the Central District of California as forum weighs against transfer.  "A plaintiff's choice of forum—particularly a plaintiff's 'home forum'—is entitled to considerable deference."  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1112 (9th Cir. 2020).  Here, Arredondo Rodriguez has chosen to litigate where he resides.  However, his choice of forum is accorded diminished deference where, as here, the central facts alleged in the Complaint occurred outside the forum.  *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005).

Several factors weigh in favor of the Southern District of Texas: many of the operative facts in the Complaint, including the initial separation and some of Arredondo Rodriguez's incarceration occurred there; many of the Government's witnesses are located there, and thus the expense to the Government will be lessened by holding the trial there; and many sources of proof are there.  However, many of the key events in the case did not occur in the Southern District of Texas.  Arredondo Rodriguez was also imprisoned in Georgia, and A.F.A.J. was held in San Antonio, Texas, which falls in the Western District of Texas.  *See Wilbur P.G. v. United States*, No. 21-04457, 2022 WL 3024319, at *4 (N.D. Cal. May 10, 2022) (denying motion to transfer in family separation policy FTCA case where a "substantial portion of the conduct occurred in Arizona, [but] conduct also occurred in other states").

As for the convenience to the Government, it is apparent that the Government is merely requesting that its own convenience outweigh Plaintiff's convenience.  As Plaintiff points out, his witnesses and some sources of proof are in this district.  *See id.* (noting that "the complaint contains detailed allegations of the emotional trauma experienced by Plaintiffs after their arrival, which may result in the production of records and non-party witnesses who reside [in the Plaintiff's chosen forum]").  It would be an onerous burden for Arredondo Rodriguez, who is litigating *in forma pauperis*, to fly himself and other witnesses to Texas in order to litigate there, particularly in light of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-02845-JLS-AFM                                    Date: December 22, 2022
Title:  Esvin Fernando Arredondo Rodriguez v. United States of America

fact that he is required by the Government to check-in with ICE officials in California and has been summoned to appear in immigration court here.  (Opp. at 16.)

The Government has not demonstrated that the Southern District of Texas is a clearly superior forum in which to litigate.  Neither the convenience of the parties and witnesses, nor the interests of justice, weigh in favor of transfer.  The motion to transfer venue is accordingly DENIED.

### IV. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The Government argues that Arredondo Rodriguez lacks subject matter jurisdiction because he brings systemic claims attempting to hold the United States directly liable under the FTCA, rather than alleging tortious conduct by individual federal employees.  (Mot. at 24.)  Numerous courts have rejected this argument, or clarified that they interpret the pleadings to allege wrongdoing by individual officials rather than the United States as a whole.  *See, e.g.*, *Wilbur P.G.*, 2022 WL 3024519, at *6; *A.F.P. v. United States*, No. 21-780, 2022 WL 2704570, at *18 (E.D. Cal. July 12, 2022); *B.A.D.J. v. United States*, No. 21-215, 2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022).  Here, the Complaint alleges specific conduct by government officials, including the implementation by government employees of government policies themselves crafted by individuals.  That Plaintiff cannot identify all of the individual employees involved in the separation, his deportation, and his and his daughter's detention is to be expected at this stage.  This motion is accordingly DENIED.

### V. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Government argues that Texas choice-of-law provisions should apply, and, under Texas's choice-of-law analysis, Texas law applies.  Under Texas law, the Government argues, the NIED claims should be dismissed because there is not an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-02845-JLS-AFM                                                                 Date: December 22, 2022
Title:  Esvin Fernando Arredondo Rodriguez v. United States of America

independent cause of action for NIED, and NIED claims are viable only where there is a special relationship, which immigration officials do not have to detainees to prevent emotional distress.  (Mot. at 26.)  The Government further argues that Plaintiff does not state a claim for negligence because he did not suffer a physical injury as required under Texas law.  (*Id.*)  Plaintiff first argues that under either Texas or California choice-of-law principles, this Court should apply California law.  (Opp. at 24.)  He further argues that he has alleged plausible claims under either Texas or California law.  (*Id.* at 26-34.)

"In assessing the United States' liability under the FTCA, we are required to apply the law of the state in which the alleged tort occurred."  *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006).  This includes the state's choice-of-law principles.  *See Richards v. United States*, 369 U.S. 1, 11-14 (1962).  "The FTCA … requires federal courts to apply the law of the place in which the negligent act or omission occurred and not the place in which the act or omission had its 'operative effect.'"  *Brock v. United States*, 601 F.2d 976, 977 n.3 (9th Cir. 1979).  For the purposes of the FTCA, "an injury 'occurs' where it is first suffered, even if a negligent act later results in further or more serious harm."  *S.H. ex rel. Holt v. United States*, 853 F.3d 1056, 1061–62 (9th Cir. 2017).

Here, the initial separation occurred in Texas.  Arredondo Rodriguez and A.F.A.J. were detained in immigration facilities in Texas.  Arredondo Rodriguez was also held in Georgia and was, he alleges illegally, deported from Georgia.  A.F.A.J. lived in California while separated from her father and was in California when she learned he had been deported.  Arredondo Rodriguez was required to fly to Los Angeles by ICE when he returned from Guatemala and must attend hearings in immigration court in California.  Plaintiff argues that the government officials' acts of releasing A.F.A.J. to her mother in California and compelling Arredondo Rodriguez to fly into Los Angeles and conduct immigration proceedings there are acts and omissions for the purposes of FTCA choice-of-law analysis.  (Opp. at 23-24.)

The relevant acts in this case did not occur in California.  Although the Complaint alleges that A.F.A.J. suffered injury in California, because she was released by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-02845-JLS-AFM                                                  Date: December 22, 2022
Title:  Esvin Fernando Arredondo Rodriguez v. United States of America

government there while still separated from her father, the relevant acts which prevented Arredondo Rodriguez and A.F.A.J. from reuniting took place in Texas, where they were separated, and Georgia, where Arredondo Rodriguez was held and eventually deported. It is true that since entering and reentering the United States, government action has been responsible for where Arredondo Rodriguez and A.F.A.J. are at any given time, including California.  Nevertheless, the acts giving rise to the injuries alleged in this case were their separation and their detention, which occurred in Texas and in Georgia.  Neither party argues that Georgia law applies.  The Court will thus apply Texas's choice-of-law analysis.

Under Texas choice-of-law principles, it must first be determined whether there is an actual conflict between the substantive laws of the states whose laws might be applied. *See Schnieder Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002).  As neither party provides any analysis as to the differences between Texas and California tort law, neither party argues that a choice-of-law analysis is unnecessary because California and Texas tort law do not substantively conflict.  The Court therefore assumes that there is a conflict necessitating a choice-of-law analysis.

Texas applies the "most significant relationship" test for choice of law.  *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).  General factors to be considered include:
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-02845-JLS-AFM                                              Date: December 22, 2022
Title:  Esvin Fernando Arredondo Rodriguez v. United States of America

*Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (quoting Restatement (Second) of Conflict of Laws § 6(2)).  In tort cases, additional contacts to be considered are "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id.* (quoting Restatement (Second) of Conflict of Laws § 145(2)) (alteration in original).

      In its opening brief, the Government does not cite to these factors, nor does it provide any analysis of them.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). It devotes a single sentence to the issue, arguing that "because Texas courts look to the state with the most significant relationship in their choice-of-law analysis, the tort law of Texas applies."  (Mot. at 25.)  It fleshes out the argument somewhat in its Reply, contending that Texas is the place of injury and therefore has the most significant relationship, and that Plaintiff's residence in California should be discounted because he did not reside there when the alleged injury occurred.  (Reply at 6.)  For his part, Plaintiff argues that California law should apply under Texas choice of law rules because Plaintiff's state of residence is the most significant contact under the multi-factor analysis.  (Opp. at 25.)

      The Court finds that Texas does not have a strong interest in having its law applied to the facts of this case.  Neither party is domiciled in Texas.  *See Lacey v. United States*, No. 13-132, 2013 WL 4759270, at *2 (D. Ariz. Sept. 4, 2013) (finding that Texas's interest in applying its damages law was diminished in FTCA case where "there are no Texas plaintiffs to be compensated and no Texas defendants to be protected").  And though the Court finds that the relevant acts for purposes of FTCA choice-of-law occurred in Texas, that does not change the fact that some of the acts occurred in Georgia and some of the injuries occurred in California.  Thus, Texas's interest as "the place

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-02845-JLS-AFM                                    Date: December 22, 2022
Title:  Esvin Fernando Arredondo Rodriguez v. United States of America

where the injury occurred" and "the place where the conduct causing the injury occurred" is also diminished.

Nor does California have a strong interest in applying its laws to Plaintiff's claims. Certainly, California has a general interest in ensuring that its residents are compensated for injuries sustained from others' tortious conduct.  *See McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 99 (2010).  However, the California Supreme Court has recognized that "California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California."  *Id.*

Because neither state has a very strong interest in the application of its laws, Plaintiff's state of residence becomes a more important factor than it might otherwise. Likewise, California is the state where the relationship between Plaintiff and the Government, such as it is, is centered, as Plaintiff is undergoing his immigration proceedings in California.  These two factors cut in favor of applying California tort law.  Accordingly, under Texas choice-of-law principles, California has the most significant relationship to the action here.

All of the Government's 12(b)(6) arguments are centered on the application of Texas's tort law.  (Mot. 26-28.)  Because the Court finds that Texas's substantive law will not be applied in this case, the Motion is DENIED.

### VI.     CONCLUSION

For the foregoing reasons, the Motion is DENIED.


                                                                    Initials of Deputy Clerk:  vrv