MILBANK LLP
Linda Dakin-Grimm (State Bar #119630)
Ldakin-grimm@milbank.com
Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
Asena Baran (State Bar #342626)
Abaran@milbank.com
Marina Markarian (State Bar #340686)
Mmarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA  90067
Telephone: 424-386-4404
Facsimile: 213-892-4704

Pro Bono Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez, A.F.A.J.

E.MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
CHRISTINA MARQUEZ (CBN 305301)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-4061
Facsimile: (213) 894-7819
E-mail: Christina.Marquez@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

ESVIN FERNANDO ARREDONDO
RODRIGUEZ INDIVIDUALLY AND JEFF
HAMILTON AS GUARDIAN AD LITEM
OF A.F.A.J., MINOR

                 Plaintiffs,

   vs.

UNITED STATES OF AMERICA

                 Defendant.

Case No. CV 22-02845-JLS-AFM

**JOINT RULE 26(f) REPORT**

Pursuant to Federal Rule of Civil Procedure 26(f), the parties conferred via videoconference on January 23, 2022. Plaintiffs Esvin Fernando Arredondo Rodriguez and A.F.A.J., a minor, by her guardian *ad litem*, Jeffrey Hamilton (collectively "**Plaintiffs**"), and Defendant United States of America ("**Defendant**") submit the following Joint Report pursuant to FRCP 26(f) and Local Rule 26-1:

**a. Statement of the Case**

<u>Plaintiffs</u>: This action seeks damages for a Guatemalan father and daughter who were admittedly forcibly separated by officers and employees of Defendant when they lawfully approached an official border station in 2018 to ask for asylum. Plaintiffs' First Amended Complaint states six claims, all arising under the Federal Tort Claims Act. Mr. Arredondo Rodriguez and his then-twelve-year-old daughter, A.F.A.J., came to the United States seeking asylum. Plaintiffs lawfully approached an official border crossing, where officials of the United States government forcibly separated A.F.A.J. and her father, sending each to detention facilities without explanation of what was happening to them. The separation was done pursuant to the official "Zero Tolerance" deterrence policy, which was expressly aimed at inflicting harm and terror on migrant parents and children, in order to discourage other migrants from requesting asylum in the United States.

The Arredondo Rodriguez family was forced to flee their home in Guatemala following persistent threats against their lives—including the murder of their then-

seventeen-year-old son and brother—related to their perceived political opinion activity.  The Arredondo Rodriguez family was ultimately awarded asylum in the United States by the U.S. Department of Justice's Executive Office of Immigration Review on December 7, 2022. The United States did not appeal that determination.

When Mr. Arredondo Rodriguez and A.F.A.J. arrived at the official border crossing at Laredo Texas, they presented themselves to Customs and Border Protection officials and requested asylum.  These government officials physically grabbed a crying A.F.A.J. and forcibly took her away from her despondent father. Defendant then declared A.F.A.J. to be an "unaccompanied minor" and sent her to a private juvenile detention facility in Texas, contracted by the U.S. Department of Health and Human Services' Office of Refugee Resettlement.  Mr. Arredondo Rodriguez was transported in leg and wrist chains and incarcerated in a series of detention facilities in Texas and Georgia, without charges, for months until he was unlawfully deported in direct violation of a U.S. District Court order.  After his deportation, he lived in hiding, in fear for his life, while Defendant continued to defy court orders which ultimately directed that Mr. Arredondo Rodriguez be permitted to return to the United States, reunite with A.F.A.J., and pursue asylum with his family. Mr. Arredondo Rodriguez and A.F.A.J were separated for twenty months.

The public record concerning Defendant's "Zero Tolerance" family separation policy demonstrates that the policy was intentionally created and developed by specific high-ranking government officials for the express purpose of deterring future asylum seekers by inflicting pain and suffering on families fleeing violence and oppression.  In addition to the intentional cruelty of the policy, government officials failed to manage the separations, track children separated from parents for eventual reunification, facilitate communication between separated family members, or facilitate reunification of families. These failures were due to the deliberate or negligent lack of planning by officials in multiple agencies.  Plaintiffs suffered—and will continue to suffer throughout their lives —severe physical, mental, and emotional

harm because of the government's actions.  The Plaintiffs each assert three causes of action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680: intentional infliction of emotional distress ("IIED"); negligence; and negligent infliction of emotional distress ("NIED").  The Court has jurisdiction over this case under 28 U.S.C. § 1346(b).

Defendant's Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and its Motion to Transfer Venue were denied and Defendant has Answered.

<u>Defendant</u>: Defendant admits that in 2018, the United States implemented a Zero-Tolerance policy, which directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." ECF No. 18 at 4-5. Defendant further admits that some families were separated at the United States-Mexico border during the Zero Tolerance policy, and some children were classified as Unaccompanied Children ("UCs") and transported to Officer of Refugee Resettlement ("ORR")-funded care provider facilities. *See id*. at 3-4, 7. Defendant denies that the Zero-Tolerance policy was a pretext to justify separation of a child from the child's parent. *See generally* ECF No. 35. Defendant admits that the Plaintiffs in this action were held separately. *See id*. ¶ 1.

Defendant disputes liability and the nature and extent of damages.

**b. Legal Issues**

Liability and damages are in dispute.  The legal issues presented in this case include:

- Whether Defendant owed Plaintiffs a legal duty to use due care;
- Whether Defendant breached any dut(ies) of care to Plaintiffs that proximately caused them damages;

- Whether Defendant engaged in extreme and outrageous conduct with the intent of causing, or reckless disregard of the probability of causing, emotional distress;

- Whether Plaintiffs suffered severe or extreme emotional distress;

- Whether Plaintiffs' claims are barred by the discretionary function exception to the FTCA;

- Whether Plaintiffs' claims are barred by the FTCA's exception for actions taken while reasonably executing the law; and

- Whether Plaintiffs' claims are barred by the FTCA's independent contractor exception.

## c. Damages

Plaintiffs: Plaintiffs concede that damages are limited to the amounts they sought in their administrative claims under the Federal Tort Claims Act, of $3 million (Mr. Arredondo Rodriguez) and $5 million (A.F.A.J.). These amounts have been calculated based upon the severity of harm caused to each plaintiff, the expected impact of the harm based on their respective ages and stages of development when it occurred, and their respective life expectancies. The damages amounts will be supported by expert testimony at trial from persons with expertise in the fields of trauma and torture and their effects, child development, and economics.

Defendant: Defendant disputes liability and denies the nature and extent of damages.

## d. Insurance

Joint: This item is not applicable.  The United States is self-insured.

## e. Motions

Joint: On September 12, 2022, Defendant filed a Motion to Transfer Venue; Motion to Dismiss Pursuant to 12(b)(1); and Motion to Dismiss Pursuant to 12(b)(6). ECF No. 18.  The Motion was fully briefed by the parties.  ECF Nos. 20, 23.  On December 22, 2022, the Court denied the Motion.  ECF No. 31.

<u>Plaintiffs</u>:  The parties do not expect to add parties or amend the pleadings at this time.  If, during discovery, Plaintiffs learn that additional parties should be added to this action or that amendment is necessary, any necessary amendments will be made before the deadline provided in the Court's scheduling order, after seeking leave of Court as necessary. A deadline for amending the pleadings is proposed in Exhibit A below.

Plaintiffs anticipate the possibility of the following motions: Motion to Deem Certain Facts Alleged in the Complaint Admitted by Defendant, Motion to Strike Frivolous Affirmative Defenses in the Defendant's Answer, and a Motion for Summary Judgment or Summary Adjudication.

<u>Defendant</u>: Defendant anticipates the possibility of a Motion for Summary Judgment or Summary Adjudication.

**f.  Complexity**

<u>Joint</u>: This case is not sufficiently complex such that the Manual for Complex Litigation should be utilized, in whole or in part.

**g.  Status of Discovery**

The parties have not yet engaged in any discovery. The parties stipulated that all Initial Disclosures will be exchanged on or before Thursday, February 9, 2023.

**h.  Discovery Plan**

<u>Joint</u>:  The parties agree that fact discovery will not be conducted in phases. Fact discovery will be conducted on liability and damages simultaneously.  The parties will exchange written interrogatories, requests for admissions, and requests for production of documents. Expert discovery will be conducted consistent with the Court's scheduling order.

***1.  Initial Disclosures***

<u>Plaintiffs</u>:  Defendant sought (and Plaintiffs stipulated to) two lengthy extensions of time to respond to the Complaint on the basis that Defendant's lawyers claimed a need to review thousands of pages of documents concerning Plaintiffs and

the issues prior to responding. ECF No. 13 at 2; ECF No. 15 at 4 (requesting a second extension of time to respond to the Complaint, in order to "prudently investigate the claims as well as to be proactive for anticipated discovery in this litigation, e-discovery requests were submitted, which has since produced thousands of documents that are diligently being reviewed to determine how best to respond to the Complaint.")

On December 29, 2022, after Defendant's Motions to Dismiss and Motion to Transfer Venue were denied, Defendant requested that Plaintiffs stipulate to another two-week extension to Defendant's deadline to file an Answer.  In light of the extensions to which Plaintiffs had already stipulated at Defendant's request, Plaintiffs agreed to the additional extension, on the condition that Defendant agree to: (i) complete Rule 26  initial disclosures by February 9, 2023; and (ii) that Defendant's initial disclosures would include *actual production* (not a description) of what the government has termed "Common Discovery"—which consists of non-plaintiff specific materials that government has already produced in other pending family separation FTCA cases in this and other District Courts. Those materials have obviously already been gathered, bates labeled and organized, and could easily be produced by the government electronically. Defendant agreed to these terms on December 30, 2022.

At the Rule 26(f) Conference, which took place on January 23, 2023, Plaintiffs reconfirmed the parties' agreement that initial disclosures, including actual production of the "Common Discovery," would be exchanged on or before Thursday, February 9, 2023.  Defendant agreed to produce the common discovery documents. Following the conference, Defendant reneged on its commitment.

Defendant now contends that unless Plaintiffs stipulate to an overly restrictive, one-sided protective order that goes far beyond Magistrate Judge Alexander F. MacKinnon's Model Protective Order, the government will not produce the so-called "Common Discovery" until its form of protective order is entered. The government

has not moved Judge MacKinnon to enter such an order, nor has it agreed promptly to present a motion seeking approval of its proposed protective order on any time frame.

Moreover, the government now contends that the "Common Discovery" is obligated to produce on or before February 9, 2023, is limited to what was previously produced in only two of the other pending cases. The government previously agreed that "Common Discovery" included non-plaintiff-specific documents produced in *all* the other pending cases. (All such documents should be produced under Rule 26.)

Plaintiffs are eager to have this case proceed swiftly and have previously stipulated to delays only as a professional courtesy to the government. However, given the government's present refusal to comply with its commitments and failure promptly to move for entry of its desired protective order, Plaintiffs attempted to find a path forward to keep the case moving and allow the government to produce documents promptly. The government rebuffed this proposal as well.

<u>Defendant</u>: Initial disclosures will be exchanged on or before Thursday, February 9, 2023. Once a protective order is in place the government will produce the "Common Discovery," defined to be all documents that it disclosed or otherwise produced in *A.P.F. et al. v. United States*, Civil Action No. 20-cv-00065-PHX-SRB (D.Ariz), and *C.M. v. United States*, Civil Action No. 19-cv-05217-PHX SRB (D.Ariz), that are not specific to the plaintiffs in those two actions The is the "Common Discovery" that has been produced in the other cases pending around the nation and is not limited to just the referenced actions. The cases cited are used for purposes of defining the terms "Common Discovery."

Defendant has not reneged on any commitment to produce the "Common Discovery." Plaintiffs acknowledged at the Joint 26f Conference on January 23, 2023 that the production of the "Common Discovery" would be contingent on the entering of a protective order.

Defendant has not moved for a protective order because the parties have continued to meet and confer as to the scope of the issues, which is required pursuant to L.R. 37-1. On January 18, 2023, Defendant sent the first draft of the protective order. The parties participated in its Joint 26f conference on January 23, 2023 where Plaintiffs informed Defendant of their concerns with the first draft of the protective order. On January 30, 2023, Defendant sent a second draft of the protective order making substantial changes to the first draft with the goal of harmonizing with Judge MacKinnon's model protective order. Since then, the parties have continued to narrow the issues regarding the protective order.

### 2. *Anticipated Subjects of Discovery*

Plaintiffs: Plaintiffs intend to obtain discovery and deposition testimony concerning the following subject areas:

- Documents within the possession, custody, or control of the United States government that specifically relate to Plaintiffs and their immediate family members, relevant to the facts as alleged in the Complaint, including each Plaintiff's and their immediate family member's Alien File ("A-File"), Plaintiff A.F.A.J.'s ORR custody records, and, for each Plaintiff and their immediate family member, his/her I-213s, subject activity logs, and any transfer or detention records;

- Documents sufficient to identify the individual government employees who engaged in the conduct specified in the Complaint;

- Government officials' treatment of Plaintiffs during the course of their respective detentions, including, but not limited to, daily logs/records of detention, including all photographs, films, surveillance footage, and other images of Plaintiffs while detained;

- Information in the government's possession concerning physical, medical, and psychological harms suffered by each of the Plaintiffs as a result of their separation;

- The creation, development, and implementation of the government's policy or practice of separating adults and minors at the Southern border of the United States since 2017 (the "Family Separation Policy"), including any pilot program related to the separation of families, and including the separation of families who crossed the border between ports of entry and families who lawfully presented at a port of entry;

- The purpose or intent of the Family Separation Policy, and the reasons underlying government officials' decision to implement the Family Separation Policy;

- Government officials' knowledge of potential or actual effects of the Family Separation Policy on individuals subject to the policy, including but not limited to government officials' knowledge that separating children from parents would cause emotional and psychological harm to separated parents and children;

- Concerns raised by government officials and others about the Family Separation Policy before and during implementation;

- Government policies and practices concerning the care of children in the custody of the U.S. Office of Refugee Resettlement ("**ORR**"), including policies related to the government's determination of where to place children separated from their parents pursuant to the Family Separation Policy, the manner in which children were transported, and policies and practices of facilities and organizations that contracted with ORR and provided care for A.F.A.J.;

- ORR's response to the implementation of the Family Separation Policy, including information regarding the number of children in ORR custody for the period of 2016 to 2019, and concerns raised by ORR officials and others concerning ORR's capacity to house children separated from their parents;

-10-

JOINT RULE 26(F) REPORT

- Government policies and practices, if any, regarding communication between parents and children separated under the Family Separation Policy;

- Government policies and practices, if any, regarding the tracking of parents and children separated under the Family Separation Policy, including any interagency communication regarding separated families;

- Government policies and practices, if any, regarding the reunification of families separated under the Family Separation Policy;

- Government officials' actions and decisions, if any, to end the Family Separation Policy;

- The creation, development, and implementation of the government's "Zero-Tolerance" policy implemented in 2018, and the relationship, if any, between the Family Separation Policy and the Zero-Tolerance policy;

- Government policies and practices concerning the care of individuals in immigration detention;

- The conditions of each government or government-contracted facility in which the government detained each of the Plaintiffs;

- The decision to separate Plaintiffs and the timing and circumstances of their separation;

- The timing and circumstances of the designation of A.F.A.J. as an unaccompanied minor; and

- Government officials' decisions and conduct regarding the deportation and refused reentry of Plaintiff Arredondo Rodriguez in contravention of court orders.

- Documents sufficient to identify each government personnel who interacted with Plaintiffs as alleged in the Complaint.

<u>Defendant</u>: In view of Plaintiffs' claims of severe mental injuries, Defendant intends to arrange independent medical and or mental examinations to determine the nature and extent of such injuries. In addition, Defendant will propound interrogatories, and requests for production and admission regarding the following:

- Plaintiffs' claimed injuries and damages;
- Any medical consultation or care of Plaintiffs regarding treatment of claimed injuries;
- Plaintiff Mr. Arredondo-Rodriguez's conversations and alleged interactions with government personnel in government facilities of which he complains;
- Plaintiff Mr. Arredondo-Rodriguez's allegations of abusive treatment and conditions of confinement; and
- Plaintiffs' prior immigration history.

After Plaintiffs respond fully to Defendant's written discovery requests, Defendant intends to depose the Plaintiffs, his wife, his children, and any witnesses he identifies who are not current federal government employees.

### 3. *Time Needed for Discovery*

The parties' proposed discovery deadlines are set forth in Exhibit A.

### 4. *Electronically Stored Information*

The Parties have taken and will continue to take all reasonable steps necessary to preserve discoverable electronically stored information ("**ESI**"). The parties agree to address any ESI disclosures in keeping with the other discovery deadlines in this case. The parties agree that production of ESI will occur in native format, with the caveat that a party may request that specific items be reproduced in .pdf format as well.

### 5. *Protective Orders*

The Parties have discussed the need for a protective order pursuant to Fed. R. Civ. P. 26(c) in this case. The Parties have met and conferred regarding the scope of the protective order but have reached an impasse.

<u>Plaintiffs</u>: Plaintiffs proposed filing Magistrate Judge MacKinnon's Model Protective Order. Defendant insisted on multiple alterations and additions that are not consistent with Magistrate Judge MacKinnon's Model, nor with his admonition against blanket designation of entire documents as confidential. Defendant's modifications are apparently based on protective orders entered in other cases before other judges in different jurisdictions. Plaintiffs are obviously not required to accept these terms simply because they were ordered in separate cases elsewhere.

Plaintiffs specifically objected to proposed alterations that sought to : (i) shift the burden of identifying confidential information in Defendant's production to Plaintiffs; (ii) designate not just entire documents but entire *swaths of documents* as confidential, without any specific review or designation; (iii) revoke the typical mutual return protocol for inadvertently produced documents, and *for Defendants only*; and (iv) include numerous recitations to statutory provisions that are wholly irrelevant to this litigation. Plaintiffs believe it is unlikely that Magistrate Judge MacKinnon will approve these provisions, when Defendant eventually proposes them. But by proposing the additions, Defendant has unilaterally taken for itself a delay in its agreed production obligations.

In an effort to avoid delay, Plaintiffs offered *temporarily* to abide by Defendant's more onerous, one-sided protective order for a period of six weeks, in order to allow Defendant an opportunity to present its proposed protective order to Judge MacKinnon and request a hearing. Defendant declined this proposal.

<u>Defendant</u>: Defendants intend on filing a motion for a protective order with Magistrate Judge MacKinnon.

### 6. Privilege Issues

<u>Plaintiffs</u>:  As noted above, the parties have met and conferred regarding a protective order.  Plaintiffs' compilation of subject areas is proportional to the needs of the case as provided in Fed. R. Civ. P. 26(b)(1). The issues at stake in the action are of interest to the Plaintiffs but also are of great public importance as they involve a policy enacted at the highest level of the federal government, that received broad public attention.

Plaintiffs have alleged that they and their children suffered severe emotional trauma and other harms, some of which may be permanent, and that the potential damages are substantial. Information relevant to Plaintiffs' claims has already been gathered and is in the possession of government officials. Given the nonpublic nature of the policymaking process, Plaintiffs have minimal access to that information without the use of discovery permitted under the Federal Rules of Civil Procedure. Given these factors, the burden and expense of the proposed discovery does not outweigh its likely benefit in permitting the parties to efficiently resolve the case through settlement discussions or trial.

Plaintiffs expect that to the extent that either party claims that any particular document can be withheld based on any claimed privilege or doctrine, each individual document must be listed on a contemporaneously produced privilege log that complies with the Federal Rules of Civil Procedure by identifying the Bates number and date of the document, the identity and position of the author and all recipients, the claimed privilege, a description of the document sufficient to justify the claimed privilege, and the location of the document.

<u>Defendant</u>: Many of the records Plaintiffs will likely seek are subject to, or contain sensitive matters subject to, privilege pursuant to the attorney-client privilege, work product doctrine, deliberative process privilege, executive privilege, Presidential Communication privilege, the Privacy Act, 5 U.S.C. § 552a and the

privacy rights of third parties, the law enforcement privilege, personal protected information, and HIPAA among other privileges and immunities.

### i. Expert Discovery

The parties propose that the Court establish the schedule for expert discovery as set forth in Exhibit A, beginning at the end of fact discovery.

### j. Dispositive Motions

The parties propose that the Court establish the schedule for dispositive motions as set forth in Exhibit A.

The parties may file motions for summary judgment after the conclusion of fact discovery and prior to the cut-off deadline established in the Court's scheduling order.

### k. Alternative Dispute Resolution Procedure

Joint:  The parties are willing to proceed with either ADR procedure 2 or 3, as the Court sees fit. Plaintiff requests ADR Procedure 2-Court Mediation Panel. Should the Court determine that ADR Procedure 1-Conference with the Magistrate Judge is appropriate, both parties are amendable to this procedure.

### l. Settlement Efforts

Plaintiffs:  Plaintiffs' counsel participated in the almost one-year-long settlement discussions of FTCA claims during 2021 between a group of lawyers representing separated families and lawyers from the Department of Justice who represented they had authority to settle claims of all separated parents and children on behalf of the United States. The Department of Justice lawyers unilaterally terminated the settlement discussions in December 2021, after news of the confidential discussions was leaked to the press and widely reported. Thereafter, the Department of Justice indicated that while it would not negotiate a settlement on a global basis, it would continue settlement talks with individual plaintiffs, stating in a public press release, "While the parties have been unable to reach a global settlement agreement at this time, we remain committed to engaging with the plaintiffs and to

bringing justice to the victims of this abhorrent policy."  No settlement discussions have occurred in this case.

<u>Defendant</u>: No settlement discussions have occurred in this case.

**m. Preliminary Trial Estimate**

Because Plaintiffs claims arise under the Federal Tort Claims Act, the case must be tried by the Court.  28 U.S.C. § 2402.

<u>Plaintiffs</u>:  Plaintiffs anticipates the trial will take 5 days.

<u>Defendant</u>: Defendant estimates that a trial shall require 3-5 days. Defendants reserve the right to change this estimate should discovery indicate that more time is necessary to try this case.

**n.  Trial Counsel**

<u>Plaintiffs</u>:

Linda Dakin-Grimm

Mark Shinderman

Asena Baran

Marina Markarian

So-Young Kim

Elizabeth Hamilton (*pro hac vice* to be submitted)

Milbank LLP

2029 Century Park East, 33rd Floor

Los Angeles, CA  90067

Telephone: 424-386-4404

Facsimile: 213-892-4704

<u>Defendant</u>: Christina Marquez, Assistant United States Attorney.

**o.  Independent Expert or Master**

<u>Joint</u>: The appointment of an independent expert or master is not necessary in this action.

### p. Other Issues

<u>Plaintiffs</u>: Plaintiffs anticipate that witnesses whose primary language is not English may be called to testify. The Court may need a Spanish translator for these witnesses.

Plaintiff is concerned that this case, filed in April 2022, is now ten months old and Defendant has not made any initial disclosures, notwithstanding its lawyer's representation in August, 2022, that she was diligently reviewing thousands of documents "to be proactive for anticipated discovery in this litigation [and] to determine how best to respond to the Complaint," (ECF No. 15 at 4) and that the government has already gathered and produced voluminous documents in other cases. Moreover, the government continues to seek extensions and unilaterally to impose delays. Plaintiff has offered to comply with the overly restrictive protective order proposed by plaintiff for a period sufficient for Defendant to bring a motion before Judge MacKinnon, but Defendant declined.

<u>Defendant</u>: As indicated above, the parties are disputing the scope of the protective order that will be controlling in this case. As noted in prior filings, there are numerous other matters around the nation arising out of the Zero-Tolerance Policy. To streamline the discovery process, the United States has compiled what has been referred to as the "Common Discovery." This discovery is over 60,000 pages, and has been produced pursuant to stipulated protective orders, including here in the Central District of California. Litigating the issue of the protective order is likely to cause delay of discovery production.


Respectfully Submitted,


Dated:   February 6, 2023          **MILBANK LLP**
By: /s/   *Linda Dakin-Grimm*
Linda Dakin-Grimm (State Bar #119630)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ldakin-grimm@milbank.com
Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
Asena Baran (State Bar #342626)
Abaran@milbank.com
Marina Markarian (State Bar #340686)
Mmarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: 424.386.4000
Facsimile: 213.629.5063
*Pro Bono* Attorneys for Plaintiffs

Dated: ___February 6, 2023___        E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

By: */s/    Christina Marquez*
Christina Marquez
Assistant United States Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION UNDER LOCAL RULE 5-4.3.4

I hereby certify pursuant to Local Rule 5-4.3.4 that the content of this document is acceptable to all persons required to sign the document and that I have obtained authorization to file this document with all electronic signatures appearing within the foregoing document which are not my own.


Dated:   February 6, 2023            By: /s/   *Linda Dakin-Grimm*
                                                    Linda Dakin-Grimm (State Bar #119630)
                                                    Attorney for Plaintiffs

# EXHIBIT A

## PROPOSED SCHEDULE OF PRETRIAL AND TRIAL DATES

CASE NAME: Rodriguez et al. v. United States

CASE NO: CV 22-02845 JLS

| Matter | Standard Deadline | Plaintiffs' Request | Defendant's Request |
|---|---|---|---|
| Last Day to File Motions to Add Parties and Amend Pleadings | Scheduling Conference Date plus 8 weeks | June 2, 2023 | June 2, 2023 |
| Fact Discovery Cut-Off | Depending on case complexity, generally a Friday between 6-9 months after the Scheduling Conference | December 7, 2023[1] | December 7, 2023 |
| Identification of Experts | | December 7, 2023 | December 7, 2023 |
| Last Day to Serve Initial Expert Reports | 2 weeks after Fact Discovery Cut-Off | January 8, 2024 | January 8, 2024 |
| Last Day to File Motions (except *Daubert* and all other Motions in Limine) | 2 weeks after Fact Discovery Cut-Off | December 21, 2023 | January 8, 2024 |
| Last Day to Serve Rebuttal Expert Reports | 6 weeks after Fact Discovery Cut-Off | January 29, 2024 | February 7, 2024 |
| Expert Depositions | | two-week block beginning two weeks after receipt of the rebuttal expert reports. | two-week block beginning two weeks after receipt of the rebuttal expert reports. |
| Last Day to Conduct | 9 weeks after Fact Discovery Cut-Off | February 8, 2024 | February 8, 2024 |

---

[1] Contingent on initial disclosures and discovery occurring promptly.

| Matter | Standard Deadline | Plaintiffs' Request | Defendant's Request |
|---|---|---|---|
| Settlement Proceedings | | | |
| Expert Discovery Cut-Off | 10 weeks after Fact Discovery Cut-Off | February 26, 2024 | March 7, 2024 |
| Last Day to file *Daubert* Motions: | 1 week after Expert Discovery Cut-Off | March 4, 2024 | March 14, 2024 |
| Last Day to File Motions in Limine: | 4 weeks before the FPTC | July 11, 2024 | July 12, 2024 |
| Final Pre-Trial Conference **(Friday at 10:30 a.m.)** | 35 weeks after Fact Discovery Cut-Off | August 8, 2024 | August 9, 2024 |