E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
CHRISTINA MARQUEZ (Cal. Bar No. 305301)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-4061
    Facsimile: (213) 894-7819
    E-mail: Christina.Marquez@usdoj.gov

Attorneys for Defendant United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ESVIN FERNANDO ARREDONDO RODRIGUEZ INDIVIDUALLY AND A.F.A.J, A MINOR, BY HER GUARDIAN AD LITEM, JEFFREY HAMILTON<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. CV 22-02845-JLS-AFM<br><br>DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS PROPOSED PROTECTIVE ORDER<br><br><br>Hon. Alexander F. MacKinnon<br>United States Magistrate Judge |

## I. INTRODUCTION

On April 11, 2023, the Court heard argument on Plaintiff's Motion for Entry of the Model Protective Order. *See* ECF No. 52. The Court indicated that it was inclined to enter the United States' Proposed Protective Order but would require the United States to re-review and perform line-item designations to the confidentially designated Common Discovery, which consists of over **400,000** pages[1]. *See id*. The Court provided the parties with an opportunity for supplemental briefing. *See id*.

The United States strongly objects to an order requiring redesignation, given the already exorbitant amount of time and resources spent on thoughtfully applying document-by-document confidentiality designations and privilege assertions to what is known as the Common Discovery by three Executive Departments and various subcomponents.[2] The current version of the 63,000 document Common Discovery package with document-by-document[3] confidentiality markings took numerous attorneys from DOJ, DHS Office of General Counsel, HHS, and the DHS components (ICE, CBP, USCIS) over **4,000** hours to compile and review. The privilege log alone is almost **1,000** pages. It will take significantly more time to do line-by-line confidentiality markings of the Common Discovery as this task involves complex determinations of law enforcement sensitivity across multiple DHS components and other third party PII.

An order requiring line-by-line designations would defeat the purposes of

---

[1] This page count is significantly underestimated because spreadsheets, which make up a meaningful portion of the overall document count, are only counted as a single page despite the fact that they often contain numerous tabs and/or hundreds/thousands of lines of data. *See* Declaration of Scott Falk "Falk Decl.," ¶ 14.

[2] *See generally* Falk Decl. (Chief Counsel for CBP); Declaration of Stephen McCleary "McCleary Decl." (Associate General Counsel in the Office of the General Counsel ("OGC") at DHS); Declaration of Annemarie Brennan-Linnan, "Brennan-Linnan Decl." (Chief, District Court Litigation Division, ICE).

[3] It is important to note, that the United States did not apply a confidentiality designation without reviewing each document. The confidentiality designations were made on a document-by-document rather than a line-by-line basis, and only applied to those documents that were in fact confidential. Not all documents in the Common Discovery are designated as confidential. *See* Falk Decl. ¶ 11

allowing for the expedited release of a large volume of common discovery and take substantial government resources away from producing the more important plaintiff-specific discovery in this case. In addition, it may adversely impact the United States' ability to proceed in other family separation cases around the country, and other matters of national significance involving the same agencies, such as claims arising out of the shooting at Robb Elementary School in Uvalde, Texas. *See* Falk Decl. ¶ 21.

      Plaintiffs' request must be viewed in a larger context. Family separation cases are proceeding throughout the country using the same or a similar protective order as the United States has moved for in this case without issue.[4] In those cases, two of which have now reached the summary judgment phase the Common Discovery's confidentiality designations have not become an issues.[5]

      The Plaintiffs have not specified how application of the current document-by-document confidentiality designation would prejudice their case, or have any impact at all on these proceedings, other than to cause undue delay and the United States great expense. It is apparent from the hearing, that Plaintiffs' counsels' sole purpose for requiring the United States to re-review the Common Discovery is based on "principle," rather than any actual prejudice.

      Given the undue burden redesignation will cause, as demonstrated below, the United States requests that the Court not require the United States to perform line-by-line confidentiality designations for the over 400,000 pages of confidentially designated

---

[4] *See A.E.S.E. et al. v. United States*, et al., No. 2:21-cv-00569 (D.N.M.); *A.F.P. et. al. v. United States*, No. 1: 21-at-00548 (E.D.Cal.); *A.I.I.L. et al. v. Sessions, et al.*, No. 4:19-cv-00481 (D.Ariz.); *A.P.F. v. United States*, No. 2:20-cv-00065 (D.Ariz.); *C.M. v. United States*, No. 2:19-cv-05217 (D.Ariz.); *B.A.D.J. v. United States*, No. 2:21-cv-00215 (D.Ariz.); *E.C.B. v. United States*, No. 2:22-cv-00915 (D.Ariz.); *E.S.M. v. United States*, No. 4:21-cv-00029 (D.Ariz.); *F.R., et al. v. United States*, No. 2:21-cv-00339 (D.Ariz.); *P.G. et al. v. United States*, No. 4:21-cv-04457 (N.D.Cal.); *D.J.C.V. et al. v. United States*, No. 1:20-cv-05747 (S.D.N.Y.); *Benitez et al. v. Miller et al.* No. 3:22-cv-00884 (D. Conn.); *R.Y.M.R. et al. v. United States*, No. 1:20-cv-23598 (S.D.Fla.); *Nunez Euceda v. United States*, No. 2:20-cv-10793 (C.D.Cal.).

[5] While there have been challenges to privilege assertions, the Court in *A.P.F.* and *C.M.*, noted that for the most part redactions made by the government were carefully and correctly done. *See C.M.*, ECF No. 137; *see also A.P.F.*, ECF No. 136.

pages of Common Discovery.

## II. STATEMENT OF RELEVANT FACTS

### A. Background Regarding the Creation of the Common Discovery

To date, there are approximately 35 pending cases (the "Family Separation Cases") across the nation, including this matter, with allegations arising out of the Zero Tolerance Policy.[6] The first cases filed in federal district court were *A.P.F. et al., v. United States*, No. 2:20-cv-00065-SRB (D. Ariz.) and *C.M. et al., v. United States*, No. 2:19-cv-05217-SRB (D. Ariz.). Discovery in those two cases, which relied on a similar protective order to the one proposed in this case, is now closed.

The discovery in Family Separation Cases generally falls into two basic categories: (1) policy-level discovery; and (2) plaintiff-specific discovery. The policy-level discovery has been referred to in these cases as "Common Discovery." Common Discovery relates to the national, policy-related decision making of senior government officials, as well as the implementation of those policies by officials and employees with

---

[6] *See A.E.S.E. et al. v. United States*, et al., No. 2:21-cv-00569 (D.N.M.); *A.F.P. et. al. v. United States*, No. 1:21-at-00548 (E.D.Cal.); *A.I.I.L. et al. v. Sessions, et al.*, No. 4:19-cv-00481 (D.Ariz.); *A.P.F. v. United States*, No. 2:20-cv-00065 (D.Ariz.); *C.M. v. United States*, No. 2:19-cv-05217 (D.Ariz.); *Gonzales de Zuniga, et al. v. United States*, No. 2:23-cv-00162-KRS-JHR (D.N.M.); *B.A.D.J. v. United States*, No. 2:21-cv-00215 (D.Ariz.); *E.C.B. v. United States*, No. 2:22-cv-00915 (D.Ariz.); *E.S.M. v. United States*, No. 4:21-cv-00029 (D.Ariz.); *F.R., et al. v. United States*, No. 2:21-cv-00339 (D.Ariz.); *J.P. et al. v. United States*, No. 2:22-cv-00683 (D.Ariz.); *M.S.E., et al. v. United States*, No. 2:22-cv-01242 (D.Ariz.); *Fuentes-Ortega et al. v. United States*, No. 2:22-cv-00449 (D.Ariz.) *B.Y.C.C. v. United States*, No. 3:22-cv-06586 (D.N.J.); *J.A.L.C. v. United States*, No. 3:22-cv-06587 (D.N.J.); *R.J.P. v. United States*, No. 3:22-cv-06588 (D.N.J.); *Caal et al. v. United States*, No. 1:23-cv-00598 (N.D.Ill.); *C.D.A., et al. v. United States*, No. 5:21-cv-00469 (E.D.Pa.); *C.M.-D.V. v. United States*, No. 5:21-cv-00234 (W.D.Tex.); *D.A. et al. v. United States*, No. 3:22-cv-00295 (W.D.Tex.); *W.P.V., et al. v. United States*, No. 3:23-cv-00074-DCG (W.D.Tex.); *J.R.G. et al. v. United States*, No. 4:22-cv-05183 (N.D.Cal.); *P.G. et al. v. United States*, No. 4:21-cv-04457 (N.D.Cal.); *I.T. v. United States*, No. 4:22-cv-05333 (N.D.Cal.); *D.J.C.V. et al. v. United States*, No. 1:20-cv-05747 (S.D.N.Y.); *E.L.A. et al. v. United States*, No. 2:20-cv-01524 (W.D.Wash.); *S.M.F. v. United States of America*, No. 2:22-cv-01193 (W.D.Wash); *K.O. et al. v. United States*, No. 4:20-cv-12015 (D.Mass.); *Leticia et al. v. United States*, No. 1:22-cv-07527 (E.D.N.Y.); *F.C.C. v. United States*, No. 2:22-cv-05057 (E.D.N.Y.); *Benitez et al. v. Miller et al.* No. 3:22-cv-00884 (D. Conn.); *R.Y.M.R. et al. v. United States*, No. 1:20-cv-23598 (S.D.Fla.); *Nunez Euceda v. United States*, No. 2:20-cv-10793 (C.D.Cal.); *M.A.N.H. et al. v. United States*, No. 5:23-cv-00372 (C.D.Cal.); *J.P./M.A. v. United States*, No. 23-cv-01136 (C.D.Ill.).

1  the Border Patrol Sectors, ICE Field Offices, and U.S. Attorney's Offices. *See A.I.I.L.*,
2  ECF No. 92 at 3.

3      The development of what has been deemed the Common Discovery began in *A.P.F.*
4  and *C.M.* At the time these cases were filed, the District of Arizona participated in the
5  Mandatory Initial Discovery Pilot Project (MIDPP). *See C.M.*, ECF No.4; *see also*
6  *A.P.F.*, ECF No.4. In lieu of traditional initial disclosures pursuant to Fed.R.Civ.P. 26,
7  the parties were required to produce "all information relevant to the parties' claims and
8  defenses without awaiting formal discovery requests, whether favorable or unfavorable,
9  and regardless of whether they intend to use the information in presenting their claims or
10 defenses." *See id.* at 2. Among other things, the MIDPP required the parties to develop
11 search terms and identify custodians for discovery of electronically stored information.
12 *See id.* at 6.

13     The parties in *A.P.F.* and *C.M.* spent months negotiating search terms and identifying
14 custodians for discovery of electronically stored information (ESI). The ESI searches
15 developed by the parties consisted of several dozen custodians from multiple Federal
16 agencies and fourteen multi-term search strings, with a date range spanning
17 approximately seventeen (17) months. *See C.M.*, ECF No. 69 at 3. The ESI the United
18 States collected initially resulted in several million pages for review. *See id.* at 3.
19 Through Technology Assisted Review ("TAR")[7], the volume of documents was reduced
20 to approximately 90,000 documents. *See C.M.*, ECF No.86.

21     The Common Discovery has been refined over time and now consists of over **60,000**
22 **documents.**[8] *See P.G.*, ECF No. 73 at 6, 8. The corresponding privilege log is almost

---

[7] The TAR is only used for responsiveness not for privilege or confidentiality, which is the exceedingly more burdensome task. *See C.M.*, ECF No.5-6.

[8] A significant portion of the Common Discovery is made up of large Excel spreadsheets that collectively contain thousands of noncitizens, non-party, names and can be comprised of thousands of pages. *See* Falk Decl. ¶ 17; *see also* Brennan-Linnan Decl. ¶¶ 7, 13. Excel spreadsheets cannot easily be redacted in Relativity, and must be produced, and thus redacted or marked, in native format, which takes additional manual review and time to complete. The Excel spreadsheets contain large amounts of personally identifiable information (PII) for individuals who are not a party to this case.
*(footnote cont'd on next page)*

*1,000 pages*. The herculean task of collecting and reviewing the documents that make up the Common Discovery took "more than 4,000 attorney-hours and countless additional hours spent by contractors." *See P.G.*, ECF No. 73 at 8. As an example of one agency's efforts, CBP's initial review of its portion of the Common Discovery required seventeen (17) attorneys and hundreds of hours of attorney work time, including hours worked outside of attorneys' regular schedule. *See* Falk Decl. at ¶ 10. Before even beginning any substantive document review, the document review team needed to procure key fobs from DOJ to access the document review platform and created/administered a training module to teach each member how to review the documents. *See id*. ¶ 9. Just these initial pre-review steps took approximately three weeks to complete. *See id*. These initial steps will likely need to be repeated here because it has been years since this initial review, and there is no guarantee the same contract attorneys who previously underwent this training would be used again.

### B. The Privilege and Confidentiality Review of the Common Discovery

The Common Discovery produced in *A.P.F.* and *C.M.* was marked in great part as confidential at a page or document level. *See* Falk Decl. ¶ 11. This was allowed pursuant to the protective orders issued in *C.M.* and *A.P.F. See C.M.*, ECF No.58; *see also A.P.F.*, ECF No. 45. This allowed the plaintiffs to receive more information, receive the information more quickly, and the discovery process to remain streamlined. *See* Falk Decl. ¶ 11; *see also* Brennan-Linnan Decl. ¶ 4.

Additionally, nothing prevented plaintiffs from asking whether a document was confidential in whole or in part or challenging the confidentiality designations. *See*

---

To properly designate information within these spreadsheets as confidential, either an agency must run system checks for each individual to determine whether disclosure would improperly reveal asylum or other protected status information; or, the agencies would need to locate the Plaintiffs information on the spreadsheet and redact the remaining PII.  Redacting third party PII is not a fast or efficient undertaking. Agency attorneys would need to manually perform the redactions across each spreadsheet and would need to perform different redactions in each case to only reveal the information relevant to each plaintiff. *See* Falk Decl. ¶ 15. **If the Court orders redesignation, the United States requests a carveout for these spreadsheets, given the burdensome nature of redesignation.**

1  Brennan-Linnan Decl. ¶ 4. The protective orders in *C.M.* and *A.P.F.* both provide in
2  pertinent part the following: A "Receiving Party may request the Designating Party to
3  identify whether a Document labeled 'CONFIDENTIAL-SUBJECT TO PROTECTIVE
4  ORDER' is confidential in total or only in part." *See C.M.*, ECF No. 58 at 7, *see also*
5  *A.P.F.*, ECF No. 45. There is no language suggesting that plaintiffs were required to
6  provide any basis for this request, as read, a simple e-mail would suffice. Also, the
7  protective orders in *C.M.* and *A.P.F.* permit the parties to seek that certain sections of
8  documents be no longer protected by the protective order if the document needs to be
9  used in a dispositive motion.

### C. The Litigation Posture of Family Separation Cases to Date

11  Two years have passed since the Court in *C.M.* and *A.P.F.* ordered completion of the
12  disclosure of the policy level ESI. Since then, many more "Family Separation" cases
13  have been filed. Given the extensive amount of time and resources already expended on
14  production of the Common Discovery, the parties in cases entering the discovery phase
15  opted for protective orders similar to those entered in *C.M.* and *A.P.F.* (allowing for
16  document-by-document confidentiality designation of the Common Discovery), so that
17  the documents could be quickly produced.[9]

18  There has been nothing to suggest that plaintiffs in other cases have been prejudiced
19  in any way by designating documents as confidential in this manner. In fact, the number
20  of documents that have been filed in the public record, suggests producing documents in
21  this manner is the most efficient method of disclosure. *See* Falk Decl. ¶ 12. For instance,
22  the parties in *C.M.* and *A.P.F.* have filed motions for summary judgment, and used 86
23  and 96 exhibits, respectively, out of the universe of both the Common Discovery and
24  Plaintiff-specific documents. *See A.P.F.*, ECF Nos. 362-364; *see also C.M.*, ECF No.
25  371, 378-379; Falk Decl. ¶ 12. Although some documents remained protected by the

---

[9] *See A.E.S.E.*, ECF No. 68; *A.F.P.* (docket is under seal); *A.I.I.L.*, ECF No. 105; *A.P.F.*, ECF No. 45; *C.M.*, ECF No. 58; *B.A.D.J.*, ECF No. 75; *E.C.B.*, ECF No. 35; *E.S.M.*, ECF No. 60; *F.R.*, ECF No. 46; *P.G.*, ECF No. 58; *D.J.C.V.*, ECF No. 112; *Benitez*, ECF No. 53; *R.Y.M.R.*, ECF No. 32; *Nunez Euceda*, ECF No. 46.

6

protective order, the parties were able to reach agreement on certain sections of some of the documents for the motions for summary judgment.

### D. Resources Needed to Perform Line-Item Designations

It is estimated that ICE and CBP's re-review of the Common Discovery to make line-by-line confidentiality designations, would take approximately four to six months. *See* Falk Decl. ¶ 13; *see also* Brennan-Linnan Decl. ¶ 17. This does not include the time for subsequent layers of review by DOJ. Important to note, that this timeline comes at great expense to the resources of these agencies, other pending lawsuits, and functionality of these agencies day to day. *See* Brennan-Linnan Decl. ¶ 9; *see also* Falk Decl. ¶ 18-23; McCleary Decl. ¶ 6-10.

To perform such a re-review, the reviewing attorney will first need adequate training to understand what information is confidential under the terms of the protective order, and how that confidential information may appear in the Common Discovery. *See* Falk Decl. ¶ 16; *see also* Brennan-Linnan Decl. ¶ 12. To properly review and designate information such as law enforcement sensitive information, asylum, or pre-decisional and deliberative material, the attorney will need to review and evaluate the entire document in the context of an agency's operations, and potentially consult with attorneys in other agencies. Falk Decl. ¶ 16; *see also* Brennan-Linnan Decl. ¶¶ 7-8. Such confidential information is not apparent on its face and depending on the document at issue and its length, review could feasibly take several minutes per page. Falk Decl. ¶ 16.

### III. ARGUMENT

There is good cause to enter the United States' proposed protective order as is, because requiring the United States to redesignate the thousands of documents previously marked confidential and redact for the deliberative process privilege, while simultaneously engaging in Plaintiff-specific discovery is unduly burdensome and will have a crippling effect on the United States resources. Courts have found good cause for blanket designations of information. *See Kristoff-Rampata v. Publix Super Markets, Inc.*, 2016 WL 11431488, at *3 (M.D. Fla. Sept. 9, 2016) ("allowing a blanket designation of

confidentiality for those categories will save the parties time and expense and promote the "just, speedy, and inexpensive determination" of this case as required by Federal Rule of Civil Procedure 1); *see also Juniper Networks, Inc. v. Bahattab*, 2008 WL 11403235, at *3 (D.D.C. Nov. 12, 2008).

In *Juniper Networks*, Defendant proposed language that "[d]ocuments should not be given a blanket designation of 'Confidential Information;' only confidential portions of documents should be designated." *See Juniper Networks*, at *3. Plaintiff opposed the inclusion of this section, arguing that such language imposed an undue burden on Plaintiff because it would be required to review source code line-by-line or page-by-page for confidentiality. *See id*. The Court found that designating confidential information on a partial document basis, rather than a document-by-document basis, would impose an undue burden on the parties in this case because of the nature of the voluminous information at issue. *See id*.

There have been multiple instances in the Family Separation Cases suggesting courts have found "good cause" for blanket designations or at least endorsed the benefits of such, despite the parties stipulating to a protective order. For instance, in *P.G.*, a Family Separation Case filed in the Northern District of California, the parties proposed in their Joint Case Management Conference Statement to use stipulated protective orders from *C.M.* and *A.P.F. See P.G.*, ECF No. 47 at 6. However, the Court directed the parties to meet and confer and then present, through an administrative motion, a request to modify the Northern District of California Model Protective Order. *See P.G.*, ECF No. 58 at 1. The United States provided virtually identical evidence in support of its administrative motion in *P.G.*, as it did in this case[10], to support the modifications to the Model Protective Order. *See P.G.*, ECF No. 58, Declarations of Kenneth Brakebill and James McConnon. The Court in *P.G.* granted the administrative motion for a protective order allowing for blanket designations of the Common Discovery, after the parties

---

[10] The United States has since provided even more evidence of good cause through this supplemental brief.

justified modifications to the model protective order. *See id.*

In *A.I.I.L.*, the United States moved to consolidate *A.I.I.L.*, *C.M.*, and *A.P.F.* for the limited purpose of policy-based discovery common to the Family Separation Cases to avoid unnecessary costs, duplication of efforts, and inconsistent results. *See A.I.I.L.*, ECF No. 92. Although U.S. District Court Judge Susan Bolton denied the request to consolidate, Judge Bolton noted "the considerable work already done by the parties and this Court" in *C.M.* and *A.P.F.* and acknowledged the benefit to the parties in *A.I.I.L.* in agreeing to "consolidate their discovery in much the same way that has occurred in" *C.M.* and *A.P.F.* and abide by the Protective Orders already in place in *C.M.* and *A.P.F.* to "avoid unnecessary duplication." *See A.I.I.L.*, ECF No. 101. In *Benitez et al. v. Miller et al*. No. 3:22-cv-00884 (D. Conn.), the Court ordered the government to produce the common discovery produced in *A.P.F.* and *C.M.* consistent with the protective orders in those cases. *See Benitez*, ECF No.43.

The United States has established good cause for its proposed protective order. A line-item review of over 400,000 pages is unduly burdensome given the multiple categories[11] of protected information that can be included in any one document; it will be difficult to obtain the necessary manpower needed due to workload and budgetary constraints; and the training required to ensure those performing the review are adequately protecting the information will significantly relay any re-review. *See* Falk Decl.¶¶ 8, 12-18, 23. Moreover, the diversion of this amount of resources would significantly impact other litigation, policies, and programs, that are being implemented by the DOJ, DHS, and HHS. *See id.* ¶¶ 8, 19-22.

Additionally, while the United States is redesignating the Common Discovery, it

---

[11] Information protected by provisions of the Privacy Act of 1974, 5 U.S.C § 552a; sensitive information about CBP's law enforcement or national security staffing, resources, intelligence and/or methods (including the names and contact information of third parties, and non-supervisory federal and non-federal employees); information pertaining to applications for asylum or withholding of removal; and other information restricted from disclosure, which otherwise could subject CBP to civil or criminal penalties in the event of unauthorized disclosure. *See* Falk. Decl. ¶ 15.

will still be required to simultaneously conduct ESI searches for Plaintiff-specific discovery and review those documents for responsiveness, privilege, and confidentiality. This would slow down the ability to review and produce both the Common Discovery and Plaintiff-specific discovery, further increasing the length of time it will take review and produce discovery. *See* Brennan-Linnan Decl. ¶ 17.  In *A.P.F.* and *C.M.*, tens of thousands of Plaintiff-specific documents were collected. *See C.M.*, ECF No. 78 at 4. In *P.G.*, 22,000 pages of Plaintiff-specific documents were produced. This case may involve a similar amount of Plaintiff-specific documents.

Similar to the protective orders in *C.M.* and *A.P.F.*, the United States' proposed protective order provides Plaintiff with the ability to ask whether a designated document is confidential in total or only in part. Despite Plaintiffs' argument that they would be burdened with identifying whether a document is confidential in whole or in part, nothing suggests that Plaintiffs must provide anything more than an e-mail asking for this information. The United States is more than willing to thoughtfully consider requests to redesignate certain documents on a line-by-line basis as appropriate and necessary for dispositive motions.

As evidenced by the filings in *C.M.* and *A.P.F.*, the universe of documents relied upon in public filings is significantly smaller than what will be produced in discovery. Plaintiffs fail to articulate an argument justifying the redesignation of over 400,000 pages of confidentially designated Common Discovery when it is likely that a very high percentage of those pages/documents are irrelevant[12] to their case and will not be relied on in public filings. The United States has set forth significant evidence of how an order requiring redesignation would be extremely resource intensive and, as a result, detrimentally impact the critical work of the departments and agencies.

//

---

[12] There are serious concerns as to the relevance of these documents to Plaintiffs' case. The Plaintiffs in this case were not separated because of prosecution under the Zero Tolerance Policy. Therefore, many of the policy related documents in the Common Discovery are not likely to apply in this case.

## IV. CONCLUSION

Based on the foregoing, the United States respectfully requests this Court enter the United States' proposed protective order without a requirement to perform line-item designations to the Common Discovery. The proposed protective order already has adequate protections in place for Plaintiff to seek clarification on whether a document is confidential in total or in part and to challenge those designations.

Dated: April 18, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

　/s/ *Christina Marquez*
CHRISTINA MARQUEZ
Assistant United States Attorney
Attorneys for Defendant