E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
CHRISTINA A. MARQUEZ (Cal. Bar No. 305301)
DAVID PINCHAS (Cal. Bar No. 130751)
Assistant United States Attorneys
Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-4061/2920
    Facsimile: (213) 894-7819
    E-mail: Christina.Marquez@usdoj.gov
    E-mail: David.Pinchas@usdoj.gov

Attorneys for Federal Defendant
United States of America

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Esvin Fernando Arredondo Rodriguez, individually and A.F.A.J., a minor, by her guardian ad litem, Jeffrey Hamilton, | No. 2:22-cv-02845-JLS-AFM |
| Plaintiffs, | Hearing Date: February 16, 2024<br>Hearing Time: 10:30 a.m.<br>Ctrm: 8A First Street Courthouse |
| v. | |
| United States of America, | Honorable Josephine L. Staton<br>United States District Judge |
| Defendant. | |

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY

JUDGMENT;

MEMORANDUM OF POINTS AND AUTHORTIIES;

DECLARATIONS OF  DAVID PINCHAS, CHRISTINA MARQUEZ, TRAVIS

O. RICE, DR. BENNETT WILLIAMSON,  JASON LYNCH, JUSTON,

TAYLOR, KEVIN DUVALL

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                                PAGE

TABLE OF AUTHORITIES ...................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

I.      **INTRODUCTION** .........................................................................................1

II.     **BACKGROUND** ...........................................................................................1

     **A.**    **The Scope of the "Zero Tolerance Policy" and the DHS Referral Policy**...................................................................................................1

     **B.**    **Plaintiffs' Entry at the Laredo Port of Entry** .......................................2

     **C.**    **Plaintiffs' Separation** ............................................................................3

     **D.**    **A.F.A.J.'s Housing While in ORR Custody and Reunification with Her Mother** ..................................................................................4

     **E.**    **Arredondo's Detention at the Rio Grande ICE Detention Center**........4

     **F.**    **Arredondo's Transfer to Folkston Detention Center, Credible Fear Interview, Removal, and Return to the United States**...................5

     G.     The Ms. L Litigation ...............................................................................6

III.    **ARGUMENT**.................................................................................................7

     **A.**    **The Discretionary Function Exception Bars Plaintiffs' Claims** ............7

          1.     Overview of the Discretionary Function Exception ..........................7

          2.     **The Government's Detention of Arredondo, and the Resulting Separation of Plaintiffs, Were Exercises of Policy Discretion**........8

          3.     **The Discretionary Function Exception Applies to Plaintiffs' Claims of Poor Conditions of Confinement**..................................9

          **4.**    **Plaintiffs Cannot Overcome the Discretionary Function Exception By Alleging a Constitutional Violation** .......................11

             *a.*     There is no evidence that the government violated a clearly established and specific constitutional directive ........11

     **B.**    **Plaintiffs Cannot Establish a Requisite Private Person Analogue** ......12

     **C.**    **The Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims for Deceit or Misrepresentation** ...............................................13

     **D.**    **Plaintiffs Cannot Establish Claims for Negligent or Intentional Infliction of Emotional Distress or Negligence Under State Law**........13

1

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

2

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

3

IV.    CONCLUSION............................................................................................17

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>DESCRIPTION</u>                                                                                          <u>PAGE</u>

Federal Cases

*Antonelli v. Crow*,
   2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ................................................ 10

*Arita v. United States*,
   470 F. Supp. 3d 663 (S.D. Tex. 2020) ............................................................ 8

*Blanco Ayala v. United States*,
   982 F.3d 209 (4th Cir. 2020) .......................................................................... 9

*Chen v. United States*,
   854 F.2d 622 (2d Cir. 1988) .......................................................................... 12

*Comm. of Cent. Am. Refugees v. I.N.S.*,
   795 F.2d 1434 (9th Cir. 1986) ........................................................................ 8

*D.B. v. Poston*,
   119 F. Supp. 3d 472 (E.D. Va. 2015) .............................................................. 9

*Delgado v. INS*,
   637 F.2d 762 (10th Cir. 1980) ............................................................... 11, 15

*Demore v. Kim*,
   538 U.S. 510 (2003) ........................................................................................ 8

*Dominguez-Portillo*,
   2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ................................................. 11

*Dugan v. Warden, FCC Coleman--USP I*,
   673 Fed. App'x 940 (11th Cir. 2016) ............................................................ 10

*Edison v. United States*,
   822 F.3d 510 (9th Cir. 2016) ........................................................................ 10

*El Hanif v. United States*,
   2015 WL 72804 (S.D.N.Y. Jan. 16, 2015) ................................................... 10

*Elgamal v. Bernacke*,
   714 F. App'x 741 (9th Cir. 2018) ................................................................. 13

*Felipe v. United States*,
   659 F.Supp.3d 1249 (D.N.M. 2023) ..................................................... 8, 11, 15

*Gonzalez v. United States*,
   814 F.3d 1027 (9th Cir. 2016) ........................................................................ 8

*J.F.G. v. Hott*,
   921 F.3d 204 (4th Cir. 2019) ........................................................................ 11

*Kennewick Irr. Dist. v. United States*,
   880 F.2d 1018 (9th Cir. 1989) ........................................................................ 7

*Lineberry v. United States*,
   2009 WL 763052 (N.D. Tex. Mar. 23, 2009) .............................................. 10

*Liranzo v. United States*,
   690 F.3d 78 (2d Cir. 2012) ............................................................................ 12

*Marin-Garcia Holder v. Holder*,
   647 F.3d 666 (7th Cir. 2011) ........................................................................ 11

*Mazur v. United States*,
   957 F. Supp. 1041 (N.D. Ill. 1997) .............................................................. 13

*McQuillion v. Schwarzenegger*,
   369 F.3d 1091 (9th Cir. 2004) ...................................................................... 15

*Ms. L v. U.S. Immigration & Customs Enforcement*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ..................................................... 7, 15

*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) .......................................................................... 7

*Obesity Research Inst., LLC v. Fiber Research Int'l LLC*,
   310 F.Supp.3d 1089 (S.D. Cal. 2018) .......................................................... 10

*Patel v. United States*,
   398 F. App'x 22 (5th Cir. 2010) ..................................................................... 9

iv

*Payne-Barahana v. Gonzales,*
   474 F.3d 1 (1st Cir. 2007) ................................................................ 11

*Peña Arita v. United States,*
   470 F. Supp. 3d 663, 691-92 .......................................................... 8

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
   525 U.S. 471 (1999) ........................................................................ 7

*Ryan v. ICE,*
   974 F.3d 9 (1st Cir. 2020) ............................................................ 13

*Sea Air Shuttle Corp. v. United States,*
   112 F.3d 532 (1st Cir. 1997) ........................................................ 13

*Weissich v. United States,*
   4 F.3d 810 (9th Cir. 1993) ............................................................ 8

*Westbay Steel, Inc. v. United States,*
   970 F.2d 648 (9th Cir. 1992) ...................................................... 12

**STATE CASES**

*Berkley v. Dowds,*
   152 Cal. App. 4th 518 (2007) ...................................................... 14

*Christensen v. Superior Court,*
   54 Cal. 3d 868 (1991) .................................................................. 14

*Cochran v. Cochran,*
   65 Cal. App. 4th 488 (1998) ........................................................ 14

*Davidson v. City of Westminster,*
   32 Cal. 3d 197 (1982) .................................................................. 14

*Dillon v. Legg,*
   68 Cal.2d 728 (1968) .................................................................... 16

*Ochoa v. Superior Court,*
   39 Cal. 3d 159 (1985) ............................................................ 15, 16

*Potter v. Firestone Tire & Rubber Co.,*

6 Cal.4th 965 (1993) ................................................................................................15, 16

*Ross v. Creel Printing & Publishing Co., Inc.*,
    100 Cal. App. 4th 736 (2002) ...................................................................... 14

**FEDERAL STATUTES**

8 U.S.C. § 1225(b) ............................................................................................... 3

8 U.S.C. § 1231(g)(1)........................................................................................... 8

8 U.S.C. § 1232(b)(3)........................................................................................... 3

8 U.S.C. § 1325(a) ........................................................................................... 1, 2

28 U.S.C. § 1346(b)(1)....................................................................................... 12

28 U.S.C. § 2680 ................................................................................................. 7

28 U.S.C. § 2680(a) ............................................................................................ 7

U.S.C. § 279(g)(2) .............................................................................................. 3

U.S.C. § 1182(d)(5)(A) ....................................................................................... 3

U.S.C. § 1232(b)(3)............................................................................................. 4

U.S.C. § 2680(h) ............................................................................................... 13

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    INTRODUCTION

Plaintiffs attempted to enter the United States in May 2018 at the port of entry in Laredo, Texas without valid entry documents.  Plaintiff Esvin Fernando Arredondo Rodriguez ("Arredondo") had been previously removed from the United States after entering unlawfully and providing federal officers with false information about his identity and nationality.  Based on this history, and a lack of available family detention unit space—and not due to the previous Administration's "Zero Tolerance Policy," which did not apply to Plaintiffs, who had presented themselves at a lawful port of entry to the United States—Arredondo was transferred to adult detention in the custody of Immigration Customs and Enforcement ("ICE").  His daughter A.F.A.J. was transferred to the custody of the Department of Health and Human Services' ("HHS") Office of Refugee Resettlement ("ORR") and placed in a children's shelter until she was released to her mother a few weeks later.  In an interview with an asylum officer of United States Citizenship and Immigration Services ("USCIS") Arredondo failed to establish a credible fear of persecution or torture.  After he waived his right to seek Immigration Judge review of this decision, Arredondo was removed from the United States in August 2018.

Plaintiffs fail to establish that Defendant's discretionary actions, which were done pursuant to statutory authority, were negligent or constitute intentional infliction of emotional distress. Their Motion for Summary Judgment should be denied, and Defendant's Summary Judgment Motion  (Dkt # 93) should be granted.

### II.    BACKGROUND

### A.    The Scope of the "Zero Tolerance Policy" and the DHS Referral Policy

On April 6, 2018, Attorney General Jefferson Sessions issued a memorandum that directed "each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero tolerance policy for all offenses referred for prosecution under" 8 U.S.C. § 1325(a), which

1

prohibits unlawful entry into the United States.  (Dkt # 102-90. On May 4, 2018, Secretary Kirstjen Nielsen a policy of referring for prosecution, to the extent practicable, all adults who unlawfully crossed the Southwest border of the United States, "including those initially arriving with minors."  *See* Exhibit 11 to attached declaration of Christina Marquez.  Neither Attorney General Sessions' memorandum nor the DHS Referral Memorandum addressed the treatment of individuals who arrived in the United States at an official port of entry and were accordingly not subject to prosecution for unlawful entry.

### B.    Plaintiffs' Entry at the Laredo Port of Entry

On May 16, 2018, Plaintiffs presented themselves to immigration officials at the Nuevo Laredo official port of entry and indicated they were seeking asylum.  First Amended Complaint ("FAC") ¶ 25.  Arredondo explained to a government agent that he had no visa and "was here to turn [himself] in." Defendant's Statement of Uncontroverted Facts (Dkt # 93-1) ("SUF") 15[1].  Arredondo was referred to secondary processing where he was fingerprinted.   SUF 20, 21.

The records attached to Arredondo's fingerprints showed that this was not the first time he had entered the United States.  SUF 23.  Specifically, the fingerprint search revealed that Arredondo had illegally entered the country in 2006.  *Id.*  Moreover, when he was apprehended by United States Border Patrol ("BP") in 2006, he lied to government agents about his name and his country of citizenship, presumably to avoid future immigration consequences associated with his apprehension.  *Id.*

Presented with this information, Customs and Border Protection's ("CBP") Office of Field Operations ("OFO") which is responsible for processing individuals seeking entry into the United States at a port of entry, SUF 4, had the processing discretion to

---

[1] Unless otherwise specified, Defendant's references to ""SUF" mean the statements of uncontroverted facts attached to Defendant's Motion for Summary Judgment filed December 22, 2023.

determine whether to release Arredondo into the United States or to detain him.[2]  In view of his prior unlawful entry and false statements to immigration officials, the officials exercised their discretion not to release him into the country and instead process him as "expedited removal/credible" fear and  transfer him to ICE custody pending his credible fear interview by USCIS.  SUF 24, 25.

Due to Arredondo's prior immigration violation, and the fact that he indicated he was seeking asylum, CBP designated his case as "expedited removal/credible fear." SUF 25.  Expedited removal provides an accelerated removal process for certain noncitizens.  *See* 8 U.S.C. § 1225(b); 69 Fed. Reg. 48,877 (Aug. 11, 2004).  As such, Arredondo was subject to detention by ICE.  *See* 8 U.S.C. § 1225(b)(l)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.").

### C.   Plaintiffs' Separation

After determining that Arredondo should be detained, the officials at the Laredo port of entry were unable to find an ICE family detention center that would accept a family unit headed by an adult male.  SUF 26.  Accordingly, A.F.A.J. could not be placed in ICE custody together with her father.  *Id.*  Due to her father's detention, A.F.A.J. was designated as an unaccompanied alien child ("UAC") under the Trafficking Victims Protection and Reauthorization Act of 2003 ("TVPRA"), 8 U.S.C. § 1232(b)(3); 6 U.S.C. § 279(g)(2), SUF 36.  The TVPRA defines a UAC as a child under age 18 who "has no lawful immigration status in the United States" and has "no parent or legal guardian in the United States … available to provide care and physical custody."

---

[2] For example, DHS has discretion to release or parole noncitizens into the United States "temporarily under such conditions as [the Secretary] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

Under the TVPRA, except in "exceptional circumstances," any agency or department must transfer a UAC to the custody of ORR within 72 hours of the agency's determination that a child in its custody is a UAC. 8 U.S.C. § 1232(b)(3). Thus, once OFO determined to detain Arredondo, it accordingly designated A.F.A.J. a UAC. SUF 36. And once A.F.A.J. was designated a UAC, Defendant was expressly authorized to transfer her to ORR custody. *Ibid.*[3]

**D.   A.F.A.J.'s Housing While in  ORR Custody and Reunification with Her Mother**

On May 17, 2018, A.F.A.J. was transferred to the care of CFS Health and Human Services, formerly known as Baptist Child and Family Services, in San Antonio, Texas. SUF 33, 44, 45. She was housed there for less than one month. SUF 44, 73. Shelter care is a residential care facility in which all programs are administered on-site, in the least restrictive setting. SUF 46. A.F.A.J. had telephone contact with her mother's niece the day after she arrived. *See* Defendant's Statement of Genuine Issue 153 ("SGI") filed concurrently herewith. On June 9, 2018, A.F.A.J. was discharged from the shelter, flown to Los Angeles, and reunited with her mother, who was also in the United States. SUF 73.

**E.   Arredondo's Detention at the Rio Grande ICE Detention Center**

On May 18, 2018, Arredondo was transferred to ICE's Rio Grande Detention Center in Texas, where he stayed for two and a half weeks. SUF 74, 92; FAC ¶ 33. It was standard ICE policy to place detainees in restraints for safety reasons during transfers of detainees. SUF 93. In the Rio Grande Detention Center, detainees would sleep on bunk beds with a mattress and blanket. SUF 78. The first day he arrived,

---

[3] Although Arredondo claims that the officials at Laredo "refused to answer any questions about where they were taking A.F.A.J.," Motion at 10, Arredondo has recently admitted that "another guard…told the parents that the children were taken to…a place for children in San Antonio." Williamson report at 10. Dr. Williamson has concluded that neither Plaintiff suffers from P.T.S.D. *Id.*

4

Arredondo was able to speak with his wife's niece in Los Angeles by telephone, and she informed him of his wife's whereabouts. SUF 80, 81.  Arredondo also received dental care that he requested at this facility.  SUF 87.  On or about May 30, 2018, Arredondo received a telephone call from A.F.A.J.  SUF 90.

On June 4, 2018, Arredondo was transferred by airplane to an ICE detention center in Stewart, Georgia.  FAC ¶ 35; SUF 92.  He was provided personal hygiene items there.  SUF 100.   To the extent Plaintiffs argue that his sickness was "ignored," Motion at 17, Arredondo has testified that he deliberately never asked for any medical treatment while at the Stewart detention center, and had no sickness that would have been noticeable to other people.  SUF 105, 106.

**F.      Arredondo's Transfer to Folkston Detention Center, Credible Fear Interview,  Removal, and Return to the United States**

On June 15, 2018, Arredondo was transferred to Folkston Detention Center, also in Georgia.  SUF 107.  He did not object to the temperature in this facility.  SUF 114. Arredondo was also able to contact members of his family while there.  SUF 117. Arredondo did not ask for any medical treatment due to sickness while at Folkston. SUF 118.

On June 19, 2018, while at Folkston, Arredondo had a credible fear interview with an asylum officer from USCIS and a Spanish interpreter.  SUF 119.  He told the officer why he was afraid to return to Guatemala and felt that he had enough time to do so.  SUF 120.  On or about June 25, 2018, an USCIS immigration analyst, through an interpreter, explained to Arredondo that the asylum officer determined that he had not established a credible fear of persecution or torture in his country of nationality and that he had been ordered removed to that country.  SUF 125. The analyst advised Arredondo of the adverse result and asked him, twice, whether he requested Immigration Judge review of the decision or whether he did not request such review.  *See* Declaration of former asylum analyst Travis O. Rice declaration ¶ 3; SUF 126. The analyst also advised Arredondo that if he did not request Immigration Judge review, he could  be removed

immediately.  *Id.* (*citing* Rice deposition transcript at 267:24-268:9).

Arredondo was later provided with, and signed, a one-page document entitled "Record of Negative Credible Fear Finding and Request for Review by Immigration Judge." SUF 127.  A copy of this document is found as Exhibit 1 to the declaration of Tracey Long.  (Dkt 93-7).  The document Arredondo signed reflects that he opted not to seek Immigration Judge review.  *Ibid*.  Defendant disputes Arredondo's allegation that no one read, translated, or explained the form to him, or told him the United States was not interested in accepting people like him  *See* Travis Rice declaration ¶¶ 2-4.

Arredondo was returned to the ICE detention center in Stewart, Georgia on June 28, 2018.  SUF 121.  He remained at Stewart until he was removed to Guatemala on August 22, 2018.  FAC ¶ 43; SUF 129.

Rodriguez was later permitted to reenter the United States.  He was reunited with A.F.A.J. on January 22, 2020. FAC ¶ 55.

### G.    The Ms. L Litigation

Arredondo was permitted to reenter the United States pursuant to an order in *Ms. L. v. Immigration and Customs Enforcement*, 3:14-cv-0048 DMS (S.D. Cal.), a class action challenging the separation of parents and children.  On June 26, 2018, the *Ms. L.* court certified the following class (with some exclusions not relevant here):

> All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) *have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody*, absent a determination that the parent is unfit or presents a danger to the child.

*Ms. L.*, docket # 82 at 17 (emphasis added).  As noted above, A.F.A.J. had been released from federal custody and reunited with her mother on June 9, 2018, before the *Ms. L.* class was certified; accordingly Arredondo was not part of the *Ms. L.* class when he was removed from the country in August 2018.

The *Ms. L.* class was later modified in 2019 to add individuals who "have a minor child who has been, is or will be separated from them by DHS and *has been*, is or will be

6

detained in ORR custody, ORR foster care, or DHS custody."  Ms. L. Dkt 386 at 13-14 (emphasis added).  Accordingly, the *Ms. L.* class now included Plaintiffs, and on September 4, 2019, the *Ms. L.* court ordered the government to allow Arredondo and various other individuals to return to the United States.  403 F. Supp. 3d 853, 857, 868 (S.D. Cal. 2018).  However, as discussed above, Arredondo had not been a member of the *Ms. L.* class when he was removed the previous year. The *Ms. L.* litigation recently settled, with the parties agreeing to various forms of classwide relief and restrictions on future separations of families at the border.  See *Ms. L.*, Dkt #721 (Dec. 1, 2023); Dkt. #727 (Dec. 11, 2023).

## III.   ARGUMENT

### A.   The Discretionary Function Exception Bars Plaintiffs' Claims

Plaintiffs are not entitled to summary judgment because the FTCA's discretionary function exception ("DFE") bars their claims, which challenge discretionary determinations by the federal government.

#### 1.   Overview of the Discretionary Function Exception

The FTCA's waiver of sovereign immunity is subject to statutory exceptions.  *See* 28 U.S.C. § 2680.  When an exception applies, the United States retains its sovereign immunity and the court lacks jurisdiction.  *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).  These exceptions include "[a]ny claim" "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

Concerns about subjecting policy-based decisionmaking "to outside inquiry" are magnified in the immigration context.  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999).  Further, "negligence is simply irrelevant to the discretionary function inquiry," *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1029 (9th Cir. 1989), and the exception applies "whether or not the discretion involved [was] abused," 28 U.S.C. § 2680(a).

7

2. **The Government's Detention of Arredondo, and the Resulting Separation of Plaintiffs, Were Exercises of Policy Discretion**

The government's decisions regarding Arredondo's detention, and the resulting placement of A.F.A.J. in ORR custody, fall within the DFE. The federal government has the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). The Supreme Court has recognized "detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

In particular, the decision whether and where to detain an individual during removal proceedings is a classic discretionary exercise: "Congress has placed the responsibility of determining whether and where aliens are detained within the discretion of the [Secretary of Homeland Security]." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986), *amended on other grounds*, 807 F.3d 769 (1986).

This discretion necessarily applies to decisions regarding with whom noncitizens are detained, whether adults and minors can be detained in the same facility, and whether to detain family members together. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the DFE); *S.E.B.M. by & through Felipe v. United States*, 659 F.Supp.3d 1249, 1273 (D.N.M. 2023) (the FTCA did not permit recovery for a noncitizen minor's separation from her father and placement in an ORR facility because "the government's prosecution of [the minor's] father, which immediately caused her to be separated from him, was a discretionary decision," and was accordingly covered by the DFE).

The decisions regarding Arredondo's detention were also made pursuant to express statutory authorities relating to detention and grounded in the policy objectives underlying those statutory schemes, including the TVPRA. *See Gonzalez v. United States*, 814 F.3d 1027, 1036 (9th Cir. 2016) (DFE shields officer's decision not to disclose information, which required consideration of public safety); *see also Weissich v.*

8

*United States*, 4 F.3d 810, 814 (9th Cir. 1993).   Defendant also had the discretion to transfer Arredondo between different detention centers, as the government's needs required.  *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (discretionary function exception shielded decision to transfer prisoner).

Likewise, the designation of A.F.A.J. as a UAC, based on the determination that she had no parent "available to provide care and physical custody," was a discretionary determination susceptible to policy analysis.  *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016). ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children.").  Designating a child as a UAC because of the decision to detain the parent for removal proceedings is integrally related to the decision to detain the parent. *See Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020).  Particularly given the lack of a family detention shelter that could accommodate the Plaintiffs together, Defendant was expressly authorized to designate A.F.A.J. as a UAC and place her in ORR custody, pursuant to the TVPRA, after detaining her father.

Federal officers were thus exercising policy discretion when Arredondo was detained in May 2018 and Plaintiffs were separated.  Immigration officials determined that Arredondo should be detained and consequently, once they made that determination, they sought to place his child with ORR as soon as possible. SUF 37.  This operational approach reflected discretionary choices related to the constraints and exigencies associated with noncitizens, particularly minors, in custody.

3.     **The Discretionary Function Exception Applies to Plaintiffs' Claims of Poor Conditions of Confinement**

Plaintiffs' claims regarding the conditions of their confinement are also barred by the DFE because the manner in which the government manages and operates its

detention facilities involves discretionary decisions.[4]  *See Dugan v. Warden, FCC Coleman--USP I*, 673 Fed. App'x 940, 942-943 (11th Cir. 2016) ("Although the [Bureau of Prisons] owes a general duty of care to safeguard federal prisoners, ... [it] retains considerable discretion to determine the means by which it will fulfill these duties... [That determination] is grounded in public policy considerations.

In particular, the DFE precludes any claim based on Arredondo's placement in restraints when he was transferred to different locations.  *See El Hanif v. United States*, 2015 WL 72804 * 10 (S.D.N.Y. Jan. 16, 2015) ("the government's decision to apply leg restraints during El-Hanafi's transport to the hospital falls within the discretionary function exception to the FTCA").  Similarly, with respect to Plaintiffs' other allegations regarding the conditions of confinement, many courts have held that such claims are also subject to discretionary decision-making involving numerous policy considerations and thus are barred by the DFE.  *See, e.g., Antonelli v. Crow*, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by discretionary function exception); *Lineberry v. United States*, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception).[5]

---

[4] Arredondo alleges that guards at Stewart used "aggressive force" and "verbally abused" him, SOF 182, but these nonspecific and conclusory allegations cannot defeat Defendant's motion for summary judgment or establish that Plaintiffs are entitled to summary judgment.  *See Obesity Research Inst., LLC v. Fiber Research Int'l LLC*, 310 F.Supp.3d 1089, 1104 (S.D. Cal. 2018).

[5] To the extent that Plaintiff complains of actions  or omissions that took place at Baptist Child and Family Services, which is an independent contractor of ORR, the United States is not liable for such acts, pursuant to the "independent contractor exception" to the FTCA.  *See* SUF 34; *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016).

1

2

### 4. **Plaintiffs Cannot Overcome the Discretionary Function Exception By Alleging a Constitutional Violation**

3      Plaintiffs' allegation that the government violated the Constitution does not

4 preclude application of the discretionary function exception.  In order to defeat summary

5 judgment, Plaintiffs must prove that the government violated a constitutional right that

6 was clearly established and specifically prescribed at the time of the alleged violation.

7 They cannot do so here.

8      *a.* There is no evidence that the government violated a clearly

9      established and specific constitutional directive

10      No clearly established and specific constitutional directive constrained the

11 government's actions here at the time they took place.  The Fourth Circuit observed a

12 year after Plaintiffs' separations: "We…have been unable to find a substantive due

13 process right to family unity in the context of immigration detention pending removal."

14 *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019); *see also*

15 *Delgado v. INS*, 637 F.2d 762, 763-64 (10th Cir. 1980) ("incidental impact visited upon

16 the children" resulting from family separation due to parent's removal "does not raise

17 constitutional problems"); *S.E.B.M.*, 659 F.Supp.3d at 1272 (dismissing FTCA claim

18 based on family separation and holding that "[a]lthough [the child's] right to associate

19 with her father is constitutionally protected, it does not outweigh the government's

20 interest in enforcing its immigration policy").  Nor were federal officials on notice of any

21 such specific constitutional directives at the time Plaintiffs were separated.[6]  Thus, a

22

23      [6] *Accord Marin-Garcia Holder v. Holder*, 647 F.3d 666, 674 (7th Cir. 2011)
("nothing in the Constitution prohibits" separation of citizen children from their parents

24 when the parents are deported"); *Payne-Barahana v. Gonzales*, 474 F.3d 1, 2 & n.1 (1st
Cir. 2007) ("The circuits that have addressed the constitutional issue  . . . have uniformly

25 held that a parent's otherwise valid deportation does not violate a child's constitutional
right."); *Dominguez-Portillo*, 2018 WL 315759 at *6 (W.D. Tex. Jan. 5, 2018) ("[T]he

26 case law provides little guidance on how such parental rights are actually manifested

27 when a parent charged with a petty misdemeanor illegal entry offense is separated from
their child who allegedly accompanied them across the border."); *see also id.* (noting

28 *(footnote cont'd on next page)*

11

1     right to family integrity during immigration proceedings was not "clearly established" at

2     the time of Plaintiffs' separations.

3     **B.**     **Plaintiffs Cannot Establish a Requisite Private Person Analogue**

4     Plaintiffs also are not entitled to summary judgment because the challenged

5     government actions have no private-person analogue. The FTCA's waiver of sovereign

6     immunity is limited to "circumstances where the United States, if a private person, would

7     be liable to the claimant in accordance with the law of the place where the act or omission

8     occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United

9     States only "in the same manner and to the same extent as a private individual under like

10     circumstances." *Id.* § 2674. The FTCA does not waive sovereign immunity for claims

11     against the United States based on governmental action "of the type that private persons

12     could not engage in and hence could not be liable under local law." *Chen v. United States*,

13     854 F.2d 622, 626 (2d Cir. 1988) (quotation omitted).

14     The FTCA requires a court to look to the state-law liability of private entities, not

15     to that of public entities, when assessing the Government's liability under the FTCA.

16     *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). Though the private analogue

17     need not be exact, a plaintiff must offer "a persuasive analogy" showing that the

18     government actor would be subject to liability under state law if a private person. *Westbay*

19     *Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

20     Because only the federal government has the authority to enforce immigration laws

21     and make determinations concerning detention, there is no private person analogue that

22     could support a claim under the FTCA. The alleged harms here stem from the

23     government's decision to enforce federal immigration laws and to hold a parent in custody

24     pending immigration proceedings, resulting in his child's placement in the care and

25     custody of ORR. The United States has not waived its sovereign immunity for such

26

27     "lack of clearly established parental rights in these circumstances and under case law").

28

decisions to enforce federal law, and the decisions have no private-person counterpart. *See e.g., Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("because no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (regarding naturalization of noncitizens, "only the United States has the power to act" and "there is no private analog[ue] under state law").[7]

## C. The Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims for Deceit or Misrepresentation

Plaintiff's summary judgment motion should also be denied with respect to any claims based on supposed misrepresentations by federal officers, because the FTCA does not waive the government's sovereign immunity from claims arising from misrepresentation and deceit. *See* U.S.C. § 2680(h). In particular, to the extent that Plaintiffs allege that Arredondo claims he was given inaccurate information by a USCIS officer or an ICE guard as to whether to sign the Record of Negative Credible Fear Finding or to waive Immigration Judge Review thereof, such claims are not cognizable under the FTCA.

## D. Plaintiffs Cannot Establish Claims for Negligent or Intentional Infliction of Emotional Distress or Negligence Under State Law

Under California law, to establish a claim for intentional infliction of emotional

---

[7] Similarly, as discussed further below, no private defendant could, consistent with due process, be liable for damages for a retroactive violation of a class action ruling when the opposing plaintiff was not a member of the class at the time of the ruling.

distress, the plaintiff must prove "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982). "Thus, the conduct must be "directed primarily at [plaintiffs], [be] calculated to cause them severe emotional distress, or [be] done with knowledge of their presence and of a substantial certainty that they would suffer severe emotional injury." *Christensen v. Superior Court*, 54 Cal. 3d 868, 906 (1991). Moreover, "[w]hether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged." *Ross v. Creel Printing & Publishing Co., Inc.*, 100 Cal. App. 4th 736, 745 (2002) (citation omitted). Defendant submits that the decisions and actions in issue were privileged because they were made in the furtherance of immigration statutes and regulations. Accordingly, Plaintiffs are not entitled to summary judgment on these claims.

Further, "[w]hether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007). "In evaluating whether the defendant's conduct was outrageous, it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (cleaned up). The defendant's conduct must "exceed[] all bounds usually tolerated by decent society, [and be] of a nature which is *especially calculated to cause*, and does cause, mental distress of a very serious kind."

14

1   *Ochoa v. Superior Court*, 39 Cal. 3d 159, 165 n.5 (1985) (italics in original).  The

2   government's lawful detention of Arredondo pursuant to its authority to enforce

3   immigration law, and its resulting separation of Arredondo from A.F.A.J. pursuant to the

4   TVPRA, do not meet that demanding standard.  *See S.E.B.M.*, 659 F.Supp.3d at 1272

5   (*citing Delgado*, 637 F.2d at 762).

6          Moreover, Plaintiffs have no evidence of the requisite intent on the part of any

7   government employee to cause the Plaintiffs severe emotional distress.  Any reliance on

8   policy level documents or deposition testimony related to the previous Administration's

9   "Zero Tolerance Policy" and its implementation is insufficient to establish such intent

10  because Plaintiffs were not separated pursuant to that policy.[8]  At a minimum, Plaintiffs'

11  allegation that they were separated pursuant to the Zero Tolerance Policy is a disputed

12  question of fact that precludes summary judgment in their favor.

13         Likewise, Plaintiffs are not entitled to summary judgment on their negligence

14  claims because negligence is "a cause of action in which a duty to the plaintiff is an

15  essential element."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993).

16  Insofar as their claims are based on their separation, Plaintiffs cannot establish that

17  Defendant's employees negligently breached a duty not to detain Arredondo, a duty not

18  ───────────────

19  [8] Plaintiffs' lengthy allegations regarding the policies and practices that led to the
    separation of families in the previous Administration (Pl. MSJ at 2-4; SOF 15-36; 43-45,

20  59, 84) are irrelevant here, because, as discussed above, those policies and practices
    concerned the prosecution of individuals who were apprehended while entering the

21  United States unlawfully.  Plaintiffs presented for inspection at  the United States at a

22  lawful port of entry and were not referred for prosecution.

23         Plaintiffs' claim in a footnote that Defendant is collaterally estopped from arguing
    that Plaintiffs were not separated due to the "Zero Tolerance Policy" is misplaced.  *See*

24  MSJ fn. 1 (citing *Ms. L v. U.S. Immigration & Customs Enforcement*, 310 F. Supp. 3d
    1133, 1143 (S.D. Cal. 2018); 403 F. Supp. 3d 853, 860 (S.D. Cal. 2019)).  Collateral

25  estoppel does not apply because the *Ms. L.* court's statements on which Plaintiffs rely
    were not "a critical and necessary part of the judgment in the earlier action," nor was

26  "the issue [whether Plaintiffs were separated pursuant to the "Zero Tolerance Policy"]

27  actually litigated … in the prior litigation."  *McQuillion v. Schwarzenegger*, 369 F.3d

28  1091, 1096 (9th Cir. 2004)).

1    to place A.F.A.J. in ORR custody when her father was detained, or a duty not to remove
2    Arredondo after he waived his right to Immigration Judge review of his negative credible
3    fear determination.[9]

4          Plaintiffs are also not entitled to summary judgment on their "bystander" theory of
5    negligence.  Motion at 18-19.  The California cases Plaintiffs cite allowed for recovery
6    only where the parent observed serious *physical* injury to their child, *Dillon v. Legg,* 68
7    Cal.2d 728 (1968) (fatal traffic accident); *Ocha v. Superior Court*, 39 Cal.3d 159, 163-64
8    (1985) (excruciating pain that led to death).  Plaintiffs do not allege that type of injury.

9          Finally, Plaintiffs' claims hinge in part on their allegation that Arredondo was
10   removed from the country despite his membership in the *Ms. L.* class.  As discussed
11   above, Arredondo was not a member of the *Ms. L.* class—as defined by the court's 2018
12   class certification—at the time of his removal; he was retroactively added to the class the
13   following year.  Plaintiffs cite no basis for holding the United States liable under the
14   FTCA based on the addition of Arredondo to the *Ms. L.* class months after he had
15   already been removed.  Imposing such retroactive liability would be unfair,
16   unreasonable, and raise due process concerns.

17   //
18   //
19   //
20   //
21   //
22   //
23   //

---

27      [9] Plaintiffs' claim for negligent infliction of emotional distress also fails because
     that tort does not exist under California law.  *See Potter,* 6 Cal.4th at 985 ("there is no
28   independent tort of negligent infliction of emotional distress.").

## IV.   CONCLUSION

For the foregoing reasons, and those set forth in Defendant's motion for summary judgment, Defendant requests that the Court deny Plaintiffs' motion for summary judgment and grant Defendant's motion for summary judgment.

Dated: January 17, 2024          Respectfully submitted,

                                 E. MARTIN ESTRADA
                                 United States Attorney
                                 DAVID M. HARRIS
                                 Assistant United States Attorney
                                 Chief, Civil Division
                                 JOANNE S. OSINOFF
                                 Assistant United States Attorney
                                 Chief, Complex and Defensive Litigation Section


                                 ___/s/ David Pinchas_____
                                 CHRISTINA MARQUEZ
                                 DAVID PINCHAS
                                 Assistant United States Attorney

                                 Attorneys for Defendant


The undersigned counsel of record for the United States of America certifies that this brief contains 4,869 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 19, 2024
                                 _/s/ David Pinchas_____
                                 DAVID PINCHAS
                                 Assistant United States Attorney

DECLARATION OF TRAVIS O. RICE

I, Travis O. Rice, hereby declare and state:

1.    1.  I am a personnel security specialist employed by the United States Drug Enforcement Administration and have been so employed since January 2022.  In the latter half of 2018, I was employed by United States Citizenship and Immigration Services ("USCIS") as an asylum analyst in Arlington, Virginia.  In that position, my duties included giving asylum seekers oral and written notification of the results of their credible fear determinations by asylum officers, sending them immigration forms documenting this notice for their signature, and preparing packets of immigration documents regarding individual asylum seekers. I make this declaration from my personal knowledge, and my review of USCIS files that were presented to me during my deposition in this action on December 1, 2023.  If called upon to testify, I could and would testify competently thereto.

2.  On or about June 29, 2018, I provided telephonic notice to Esvin Fernando Arredondo Rodriguez of the asylum officer's negative credible fear finding through a Spanish language interpreter who was also on the call and translated what I told him.  In every telephone conversation I have had with an asylum seeker, who received a negative credible fear finding, I read the information on form I-869, Record of Negative Credible Fear Finding and Request for Review by Immigration Judge, including the asylum officer's reasons for finding that the asylum seekers had not established credible fear of persecution and torture, and advised them that they were ordered removed from the United States.  I also advised each asylum seeker that they may request Immigration Judge review of the negative decision and, if they do so, they will remain in detention until the Immigration Judge reviews their case.  I also read to each asylum seeker the portion of form I-869 that states: if they do not request review by an Immigration Judge of the decision, they may be removed from the United States immediately.  I have never deviated from making the above statements under the circumstances of a negative credible fear decision.  To the extent Mr. Arredondo claims that no one ever read,

translated, or explained the Record of Negative Credible Fear Finding form, this claim is not true.

3.   I also asked every asylum seeker, who received a negative credible fear finding, to respond whether 1) they wished to request review by an Immigration Judge of the decision that they did not have a credible fear of persecution or torture; or 2) they do not request review by an Immigration Judge of the decision that they did not have a credible fear of persecution or torture.  After they responded, I always asked them the same question a second time to make sure that their answer was the same.  In the case of Mr. Arredondo, he answered that he did not wish to seek Immigration Judge review and, to the best of my belief, I personally checked the box on the form that reflected that he stated he did not wish Immigration Judge review.  I then sent the form I partially filled out to the detention center in which he was housed, for his signature.  Mr. Arredondo did sign the form and did not change his answer that he did not wish Immigration Judge review of the negative credible fear decision although he could have done so.  His signed form was returned to me for placement in the packet I prepared for him.

4.  I have been advised that Mr. Arredondo claims that I told him words to the effect that cases such as his were not dealt with anymore.  I have never made any such statement to an asylum seeker.  I also deny telling him that the United States is not interested in people like him or that people like him can never get asylum.  I further deny telling him that if he requested a decision from an Immigration Judge, he was going to be deported anyway.  I have never made any statements like these to any asylum seeker.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 18, 2024  at Arlington, Virginia.


*Travis Rice*
TRAVIS O. RICE