1   MILBANK LLP
2   Linda Dakin-Grimm (State Bar #119630)
    Mark Shinderman (State Bar #136644)
3   Samir L. Vora (State Bar #253772)
4   2029 Century Park East, 33rd Floor
    Los Angeles, CA  90067
5   Telephone: (213) 892-4404
6   Facsimile: (213) 629-5063
    Email: Ldakin-grimm@milbank.com

7   *Additional counsel listed on signature page

8   *Pro Bono* Attorneys for Plaintiffs,
9   Esvin Fernando Arredondo Rodriguez and A.F.A.J.

10

11                **UNITED STATES DISTRICT COURT**
12        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                         **WESTERN DIVISION**
13

14   ESVIN FERNANDO ARREDONDO
     RODRIGUEZ INDIVIDUALLY AND
15   A.F.A.J., A MINOR, BY HER GUARDIAN
     AD LITEM, JEFFREY HAMILTON,          Case No.: CV 22-02845-JLS-JC
16

17                    Plaintiffs,          **OPPOSITION TO DEFENDANT'S**
                                           **MOTION FOR SUMMARY**
18            v.                           **JUDGMENT**

19   UNITED STATES OF AMERICA,             **Hearing Date:** February 16, 2024
20                                         **Hearing Time:** 10:30 a.m.
                      Defendant.           **Judge:** Hon. Josephine L. Staton
21                                         **Courtroom**: 8A

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................... 1

II. STATEMENT OF FACTS ........................................................................ 2

    A. Defendant Separated Families Pursuant to a Nationwide Family Separation Policy Designed to Deter Immigration. ............................ 2

    B. Defendant Forcibly Separated Plaintiffs and Subjected Them to Inhumane Treatment ........................................................................ 3

    C. Defendant's Unlawful Deportation of Fernando Violated Multiple Court Orders ........................................................................ 4

III. STANDARD OF REVIEW ...................................................................... 5

IV. ARGUMENT ......................................................................................... 6

    A. Defendant Is Bound by Prior Court Orders Finding that Plaintiffs Were Unlawfully Separated Pursuant to Defendant's Nationwide Family Separation Policy ................................................. 6

    B. Defendant Has Admitted that Plaintiffs Were Separated in Connection with the Operation of the Zero Tolerance Policy ............. 7

    C. In Any Event, the Discretionary Function Exception Does Not Shield Defendant from Liability .......................................................... 8

        1. Unconstitutional Acts are Not Discretionary ............................ 8

            a. Defendant Violated Plaintiffs' Substantive Due Process Rights ................................................................. 9

            b. Defendant Violated Plaintiffs' Procedural Due Process Rights ............................................................... 11

            c. The Court Should Not Apply a Quasi-Qualified Immunity Standard ...................................................... 13

        2. Defendant's Separation of Plaintiffs Was Mandated ............. 14

            a. Prosecutorial Discretion Is a Red Herring Because No Prosecution Was Possible ....................................... 15

-1-

b.    The Decision to Place A.F.A.J. in ORR Custody
Was Not Subject to Discretion ...................................... 16

c.    Claims that Address Conditions of Plaintiffs'
Confinement Are Not Barred by the Discretionary
Function Exception ....................................................... 18

3.    Defendant Fails to Articulate a Legitimate Policy
Rationale ................................................................................... 19

D.    Plaintiffs Have Clearly Established a Private Person Analog .......... 20

E.    Plaintiffs Have Established Their Claims Under State Law .............. 22

V.    CONCLUSION ............................................................................................. 24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 22-02845-JLS-JC

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                        **Page(s)**

3

4

*A.F.P. v. United States,*
2022 WL 2704570 (E.D. Cal. July 11, 2022) ................................... 11, 16, 18, 21

5

6

*A.P.F. v. United States,*
492 F. Supp. 3d 989 (D. Ariz. 2020) ............................................................ 16, 21

7

8

*A.P.F. v. United States,*
No. 2:20-CV-00065-SRB (D. Ariz. Mar. 9, 2023), ECF No. 363 .................... 13

9

*Antonelli v. Crow,*
2012 WL 4215024 (E.D. Ky. Sept. 19, 2012)..................................................... 18

10

11

*B.A.D.J. v. United States,*
2022 WL 11631016 (D. Ariz. Sept. 30, 2022)..................................................... 10

12

13

*B.Y.C.C. v. United States,*
2023 WL 5237147 (D. N.J. Aug. 15, 2023)................................................... 21, 23

14

15

*Berkovitz v. United States,*
486 U.S. 531 (1988) ................................................................................... 8, 14, 19

16

17

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,*
149 F.3d 971 (9th Cir. 1998).............................................................................. 11

18

19

*Bultema v. United States,*
359 F.3d 379 (6th Cir. 2004).............................................................................. 18

20

*C.D.A. v. United States,*
2023 WL 2666064 (E.D. Penn. Mar. 28, 2023)................................................. 21

21

22

*C.M. v. United States,*
2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ....................................... 11, 19, 22

23

24

*C.M. v. United States,*
2023 WL 3261612 (W.D. Tex. May 4, 2023)..................................................... 21

25

26

*C.M. v. United States,*
2023 WL 7102132 (D. Ariz. Oct. 24, 2023) ..............................................*passim*

27

28

-4-

*C.M. v. United States*,
No. 19-cv-05217-SRB (D. Ariz. Mar. 9, 2023), ECF No. 371 .......................... 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................ 6

*Ching v. Mayorkas*,
725 F.3d 1149 (9th Cir. 2013) .................................................. 12

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ........................................................ 9, 10

*D.A. v. United States*,
663 F. Supp. 3d 715 (W.D. Tex. 2023) ...................................... 11, 21

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ............................................................ 9

*F.R. v. United States*,
2022 WL 2905040 (D. Ariz. July 22, 2022) ..................................... 11

*Flores Benitez v. Miller*,
2023 WL 5290855 (D. Conn. Aug. 17, 2023) ................................. 16, 21

*Flores v. Autozone West, Inc.*,
74 Cal. Rptr. 3d 178 (Ct. App. 2008) .......................................... 22

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004) .................................................. 5

*Fuentes-Ortega v. United States*,
640 F. Supp. 3d 878 ..................................................... 10, 13, 16

*Galvin v. Hay*,
374 F.3d 739 (9th Cir. 2004) ............................................. 8, 9, 13

*Gasho v. United States*,
39 F.3d 1420 (9th Cir. 1994) ............................................. 19, 22

*United States ex rel. Giles v. Sardie*,
191 F. Supp. 2d 1117 (C.D. Cal. 2000) ......................................... 20

*Harrison v. Fed. Bureau of Prisons*,
464 F. Supp. 2d 552 (E.D. Va. 2006) .......................................... 18

-5-

*Hope v. Pelzer*,
   536 U.S. 730 (2002) .......................................................................... 14

*Hydranautics v. FilmTec Corp.*,
   204 F.3d 880 (9th Cir. 2000).............................................................. 7

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*,
   319 F. Supp. 3d 491 (D.D.C. 2018) .......................................... 16, 20

*K.O. v. United States*,
   651 F. Supp. 3d 331 (D. Mass. 2023)................................................ 10

*Leticia v. United States*,
   2023 WL 7110953 (E.D.N.Y. Oct. 27, 2023) ............................*passim*

*Lineberry v. United States*,
   2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ................................. 18

*Liranzo v. United States*,
   690 F.3d 78 (2d Cir. 2012) ............................................................... 21

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
   584 F.3d 1232 (9th Cir. 2009).......................................................... 11

*Lopez-Valenzuela v. Arpaio*,
   770 F.3d 772 (9th Cir. 2014) ............................................................. 9

*M.A.N.H. v. United States*,
   2023 U.S. Dist. LEXIS 169613 (C.D. Cal. Sept. 22, 2023).... 10, 11, 13

*Martinez v. United States*
   2018 WL 3359562 (D. Ariz. July 9, 2018) ....................................... 22

*Ms. L. v. U.S. Immigr. & Customs Enf't (Ms. L. I)*,
   302 F. Supp. 3d 1149 (S.D. Cal. 2018) .......................... 9, 10, 11, 20

*Ms. L. v. U.S. Immigr. & Customs Enf't (Ms. L. II)*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284
   (S.D. Cal. 2019).........................................................................*passim*

*Ms. L. v. U.S. Immigr. & Customs Enf't (Ms. L. III)*,
   403 F. Supp. 3d 853 (S.D. Cal. 2019) .............................................. 12

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
No. 18-cv-0428 (S.D. Cal. Mar. 9, 2018), ECF No. 32 ......................................7

*Myers v. United States*,
652 F.3d 1021 (9th Cir. 2011).................................................................14

*Myles v. United States*,
47 F.4th 1005 (9th Cir. 2022).................................................................19

*Nieves Martinez v. United States*,
997 F.3d 867 (9th Cir. 2021)....................................................................8

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
210 F.3d 1099 (9th Cir. 2000)...................................................................6

*Nunez Euceda v. United States*,
2021 WL 4895748 (C.D. Cal. Apr. 27, 2021)..................................................11

*Paulo v. Holder*,
669 F.3d 911 (9th Cir. 2011).....................................................................7

*Peña Arita v. United States*,
470 F. Supp. 3d 663 (S.D. Tex. 2020) ........................................................15

*Prescott v. United States*,
973 F.2d 696 (9th Cir. 1992)....................................................................8

*R.I.L.R. v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) .............................................................20

*S.E.B.M. v. United States*,
659 F. Supp. 3d 1249 (D.N.M. 2023).......................................................15, 17

*Schuyler v. United States*,
987 F. Supp. 835 (S.D. Cal. 1997) ............................................................19

*Sheehan v. United States*,
896 F.2d 1168 (9th Cir. 1990), *as amended*, 917 F.2d 424 (9th Cir.
1990)....................................................................................................22

*United States v. Gaubert*,
499 U.S. 315 (1991) ..............................................................................19

-7-

*United States v. Gianelli*,
543 F.3d 1178 (9th Cir. 2008) ............................................................. 20

*United States v. Stauffer Chem. Co.*,
464 U.S. 165 (1984) ....................................................................... 7, 12

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ............................................................................ 9

*Wilbur P.G. v. United States*,
2022 WL 3024319 (N.D. Cal. May 10, 2022) .................................... 21

*Xue Lu v. Powell*,
621 F.3d 944 (9th Cir. 2010) ............................................................. 22

*In re Yochum*,
89 F.3d 661 (9th Cir. 1996) ............................................................... 11

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ............................................................................ 9

**Statutes**

8 U.S.C. § 1182(a)(9)(A) ....................................................................... 2

8 U.S.C § 1232(b)(1) ........................................................................... 16

Federal Torts Claims Act ...................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................. 5

-8-

# I. PRELIMINARY STATEMENT[1]

The Court should deny Defendant's Motion for Summary Judgment ("Defendant's Motion") because there is no basis for it. Defendant intentionally and forcibly separated Plaintiffs pursuant to a mandatory nationwide family separation policy. The unconscionable and insidious separation was unconstitutional and unlawful. Defendant concedes such separation was a "human tragedy." Defendant's Motion at 1. The facts show that Defendant's conduct violated the Constitution, violated mandatory directives, and lacked a legitimate policy rationale—the very type of conduct for which the FTCA holds Defendant accountable.

Putting forth the same arguments repeatedly rejected by other courts, Defendant asserts it is not liable for its horrifying actions because: (1) it is by the FTCA's discretionary function exception ("DFE"), (2) Plaintiffs have not established a private person analog, and (3) Plaintiffs' claims for negligence or IIED fail under California law. Defendant fails to meet its burden of proof on all of these arguments.

First, Defendant is estopped from relitigating issues that have already been decided in other proceedings between the parties. Second, assuming *arguendo* that Defendant is not collaterally estopped, the weight of evidence shows that Defendant's actions are unconstitutional, not discretionary, and not supported by legitimate policy objectives. Lastly, Plaintiffs have shown a requisite private person analog and satisfied their burden of proof on all affirmative claims.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") (Dkt. 98-1).

## II.     STATEMENT OF FACTS[2]

### A.     Defendant Separated Families Pursuant to a Nationwide Family Separation Policy Designed to Deter Immigration.

In early 2017, senior DHS officials began preparing to implement a family separation policy specifically designed to *deter* immigration. SOF ¶¶ 16-17, 24. Despite countless warnings from experts and its own advisors that separation was unlawful and would "roll back years of humanitarian progress[,]" DHS rolled out a pilot program that sought to separate families along the southwest border in Summer 2017. SOF ¶¶ 25, 27-28, 30-31. These early separation initiatives eventually culminated in the ZTP, which was announced by then-Attorney General Jefferson Sessions on April 6, 2018. SOF ¶ 43.

The ZTP mandated the prosecution of all persons who crossed the U.S. border between ports of entry and applied to "all arriving families . . . regardless of whether the immigrants are seeking protection/status or whether they are crossing the border for economic/other reasons ('illegal')." SOF ¶¶ 44-45. As part of the ZTP, CBP agents at Laredo, where Plaintiffs were apprehended, were instructed to separate families when the parent had a prior immigration violation, regardless of the age or materiality of the violation. SOF ¶¶ 54-55, 58, 80-81. That directive contravened U.S. law—the Immigration and Nationality Act—which permits admission of previously removed aliens whose removal occurred more than 10 years from the date of their reentry. *See* 8 U.S.C. § 1182(a)(9)(A).

---

[2] Plaintiffs incorporate by reference the facts from Plaintiffs' Motion, the related Statement of Uncontroverted Facts ("SOF") in support of Plaintiffs' Motion (Dkt. 98-2), and Plaintiffs' Statement of Disputed Fact, Objections to Defendants' Proposed Conclusions of Law, and Supplemental Statement of Fact in Opposition to Defendant's Motion for Summary Judgment ("SSOF"), filed contemporaneously herewith.

-2-

**B.     Defendant Forcibly Separated Plaintiffs and Subjected Them to Inhumane Treatment[3]**

In May, 2018, Fernando and A.F.A.J. lawfully entered the United States at Laredo seeking asylum for fear of political persecution in Guatemala. SOF ¶¶ 92-94. After their initial presentation at Laredo, Defendant kept Plaintiffs waiting in line, and then in a cold, barren holding room, for hours before processing them. SOF ¶¶ 104-13. Without warning, and pursuant to the nationwide Family Separation Policy, an officer forcibly removed A.F.A.J. from Fernando, A.F.A.J.'s only parent present, as she clung to him crying,. SOF ¶¶ 16-17, 24, 119-21, 123. The officers refused to provide Fernando with any information about where A.F.A.J. was being taken, for how long, or for what reason. They only stated that A.F.A.J. could not be with Fernando. SOF ¶¶ 119-20, 127, 129, 132.

Though A.F.A.J. lawfully arrived at Laredo with her father, Defendant falsely declared A.F.A.J. to be an unaccompanied alien child ("UAC"). SOF ¶ 100. A.F.A.J. was separately detained in Laredo for several hours in a room with no bed or visible restroom before being transferred to an ORR facility where she would spend the remainder of her detention without adequate treatment or care for her visible trauma and distress. SOF ¶¶ 5, 8, 125.

Meanwhile, Fernando remained at Laredo for two days, during which he was largely ignored and not adequately fed. SOF ¶¶ 163-165. For the next few months, Defendant transported Fernando between its facilities in handcuffs and shackles, *without any explanation*, as Fernando's physical and emotional health drastically deteriorated, before ultimately deporting Fernando back to Guatemala. *See, e.g.,*

---

[3] For a fuller description of Defendant's treatment of Plaintiffs during their time in Defendant's custody, see Plaintiffs' Motion at 7-11.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 22-02845-JLS-JC

SOF ¶¶ 166-67, 176, 183-86, 215. Fernando would not see A.F.A.J. again for almost two years. SOF ¶ 239.

## C.   Defendant's Unlawful Deportation of Fernando Violated Multiple Court Orders

At the time Defendant separated and detained Plaintiffs and deported Fernando, the *Ms. L.* Action was proceeding before Judge Sabraw in the District Court of the Southern District of California. SOF ¶ 71. In that action (and related proceedings), Judge Sabraw made several determinations directly relevant to Plaintiffs, including:[4]

- Family separation is "so egregious, so outrageous" that it "shock[s] the contemporary conscience, interferes with rights implicit in the concept of ordered liberty, and is so brutal and offensive that it does not comport with traditional ideas of fair play and decency." *Ms. L. v. U.S. Immigr. & Customs Enf't (Ms. L. II)*, 310 F. Supp. 3d 1133, 1145-46 (S.D. Cal. 2018) (internal citations and quotation marks omitted), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019).

- Family separation and "failing to reunify class members . . . without any showing the parent is unfit or presents a danger to the child is sufficient to find that [p]laintiffs have a likelihood of success on their due process claim." *Id*. at 1145.

- Plaintiffs are class members in the *Ms. L.* Action. SOF ¶¶ 229-30.

- Plaintiff was "separated from [his] child[]at the border pursuant to a nationwide policy." SOF ¶ 231.

---

[4] For a fuller description of the conclusions and orders reached by Judge Sabraw, see Plaintiffs' Motion at 4-7.

-4-

1    • Fernando's deportation was "unlawful," in violation of three court
2      orders. SOF ¶¶ 76, 85-86, 232.
3    • Fernando suffered injury, "namely separation from [his] child." SOF ¶
4      233.

5    **Notably, all these decisions were final. Defendant never appealed the _Ms._**
6  **_L_ Action.**

7        After a September 2019 order by Judge Sabraw requiring Defendant to
8  facilitate Fernando's return to the United States (even then, only done after
9  intervention by Congress), Fernando was allowed to reenter the country on January
10  22, 2020—reuniting with A.F.A.J. more than 20 months after their separation. SOF
11  ¶¶ 234-42. On December 1, 2021, Defendant sent Plaintiffs a letter confirming that
12  they "were separated at the United States-Mexico border by [DHS] . . . in connection
13  with the operation of the government's Zero-Tolerance Policy and related policies"
14  and offering them a status called "Parole in Place." SSOF ¶¶ 10-11. Subsequent
15  communications from Defendant have confirmed these facts, even while counsel
16  argues they are not true.

17        On January 27, 2022, DHS once again notified Plaintiffs that they qualified
18  for additional benefits under DHS's "Family Reunification Task Force," which was
19  designed to redress the grievances suffered by families separated under the ZTP.
20  SOF ¶ 244. On December 12, 2023, the Family Reunification Task Force sent each
21  Plaintiff an email communication acknowledging that Plaintiffs are _Ms. L._
22  Settlement class members, and notifying them that they are eligible for additional
23  services under the _Ms. L._ Settlement. SSOF ¶¶ 13-14.

24  **III.   STANDARD OF REVIEW**

25        A party moving for summary judgment has the burden to "show[] that there
26  is no genuine dispute as to any material fact and [that it] is entitled to judgment as a
27  matter of law." Fed. R. Civ. P. 56(a); _see also Fortyune v. Am. Multi-Cinema, Inc._,

28

-5-

364 F.3d 1075, 1079-80 (9th Cir. 2004). If the movant meets its initial burden, the nonmoving party can defeat summary judgment by "produc[ing] enough evidence to create a genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). When ruling on a summary judgment motion, the court must examine all the evidence in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## IV.   ARGUMENT

As explained below, Defendant fails to meet its burden of establishing that it is entitled to judgment as a matter of law based on uncontroverted facts.

### A.   Defendant Is Bound by Prior Court Orders Finding that Plaintiffs Were Unlawfully Separated Pursuant to Defendant's Nationwide Family Separation Policy

Defendant seeks summary judgment on the faulty premise that its separation of Plaintiffs was an independent discretionary act wholly unrelated to the Family Separation Policy, and that Plaintiffs were not unlawfully harmed by their separation. Defendant ignores that Judge Sabraw in the *Ms. L.* Action *already* decided these issues.

Indeed, Judge Sabraw already determined that Defendant separated these Plaintiffs "pursuant to a nationwide policy." SOF ¶ 231. Judge Sabraw also held that the family separation policy encompassed the later-announced ZTP and was aimed at separating families arriving both at and between ports of entry. *Ms. L. II*, 310 F. Supp. 3d at 1143. Judge Sabraw later held that Defendant's deportation of Fernando was "unlawful," as Fernando was deported in violation of his prior orders and that Plaintiffs suffered injury caused by the separation. SOF ¶¶ 232-33. Defendant repeatedly acknowledged that Fernando is a member of the *Ms. L.* class. SOF ¶ 230. Defendant's attempt to relitigate these issues is thus improper and barred by the doctrine of mutual collateral estoppel.

-6-

Three elements must be present for collateral estoppel to be invoked: (1) the identical issue was decided at a previous proceeding; (2) the first proceeding ended with a final judgment on the merits; and (3) Defendant was a party to the first proceeding. *See Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). Collateral estoppel also applies to the government when there is mutuality. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 173 (1984); *see also Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) .

All three elements of mutual collateral estoppel exist here. *First*, Judge Sabraw already determined that Plaintiffs were separated "pursuant to a nationwide policy," that Plaintiffs were injured by that separation, and that Fernando was unlawfully deported. These are the very issues Defendant now seeks to relitigate. *Second*, the *Ms. L.* orders were final and on the merits. ***Defendant never appealed the decisions***. *Third*, Defendant was a party in the *Ms. L.* Action. *See* Amended Complaint, *Ms. L. v. U.S. Immigr. & Customs Enf't*, No. 18-cv-0428 (S.D. Cal. Mar. 9, 2018), ECF No. 32. Finally, mutuality is satisfied as all parties here were parties to the *Ms. L.* Action. Therefore, Plaintiffs satisfy the requirements for mutual offensive collateral estoppel. Defendant cannot relitigate the findings that Plaintiffs were unlawfully separated pursuant to Defendant's family separation policy, the basis or lawfulness of Fernando's deportation, or that the separation caused injury.

## B.  Defendant Has Admitted that Plaintiffs Were Separated in Connection with the Operation of the Zero Tolerance Policy

Not only does Defendant ignore binding decisions by Judge Sabraw that operate as collateral estoppel to its position in this case, it ignores its own repeated communications to Plaintiffs expressly acknowledging that they were "separated at the United States-Mexico border by DHS between the dates of January 20, 2017 and January 20, 2021 in connection with the operation of the Zero Tolerance Policy and related Policies." SSOF ¶¶ 10-11. Defendant sent Plaintiffs this letter upon accepting

-7-

1  them as a wrongfully separated family entitled to parole in place because they had
2  been victims of the Family Separation/Zero Tolerance Policy.

3  **C.    In Any Event, the Discretionary Function Exception Does Not**
4  **Shield Defendant from Liability**

5  The Supreme Court has held that the DFE applies when: (1) the challenged
6  conduct "involve[d] an element of judgment or choice"; and (2) the challenged
7  decision was "based on considerations of public policy." *Berkovitz v. United States*,
8  486 U.S. 531, 536-37 (1988). "[T]he United States bears the ultimate burden of
9  proving . . . the discretionary function exception" applies to the specific action
10  challenged. *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

11  Even if Defendant was not collaterally estopped from raising its claims,
12  Defendant's argument that it is shielded from liability by the DFE nonetheless fails
13  because: (1) Defendant does not have discretion to violate the Constitution, (2)
14  Defendant's conduct was not subject to any discretion, and (3) Defendant's conduct
15  is not susceptible to policy analysis.

16  1.    Unconstitutional Acts are Not Discretionary

17  Defendant's separation of Plaintiffs cannot be discretionary because it
18  violated Plaintiffs' constitutional rights to procedural and substantive due process
19  and violations of constitutional rights are never proper discretionary acts. *Nieves*
20  *Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021) ("Even if the agents'
21  actions involved elements of discretion, agents do not have discretion to violate the
22  Constitution."); *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("[F]ederal
23  officials do not possess discretion to violate constitutional rights[.]"). This is the case
24  regardless of whether the rights are specifically alleged or clearly established at the
25  time of the violation. *See Galvin*, 374 F.3d at 756-58. Defendant's conduct violated
26  Plaintiffs' substantive and procedural due process rights.

27

28
-8-

1

2

                       *a.*    *Defendant Violated Plaintiffs' Substantive Due Process Rights*

3        "The substantive component of the Due Process Clause protects 'against

4 government interference with certain fundamental rights and liberty interests,'

5 regardless of the process provided, 'unless the infringement is narrowly tailored to

6 serve a compelling [government] interest.'" *C.M. v. United States*, 2023 WL

7 7102132, at *10 (D. Ariz. Oct. 24, 2023) (citing *Washington v. Glucksberg*, 521 U.S.

8 702, 720-21 (1997), and *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir.

9 2014)); *see also Ms. L. v. U.S. Immigr. & Customs Enf't (Ms. L. I)*, 302 F. Supp. 3d

10 1149, 1161 (S.D. Cal. 2018). Plaintiffs were guaranteed due process rights under the

11 Fifth Amendment when they arrived in the United States. *Zadvydas v. Davis*, 533

12 U.S. 678, 693 (2001).

13        To establish a substantive due process violation, Plaintiffs must either show a

14 liberty interest that is "deeply rooted in this Nation's history and tradition and

15 implicit in the concept of ordered liberty[,]" *Dobbs v. Jackson Women's Health Org.*,

16 597 U.S. 215, 231 (2022) (citation and internal quotation marks omitted), or conduct

17 that is "so egregious, so outrageous, that it may fairly said to shock the contemporary

18 conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Conduct

19 "shock[s] the conscience" when it is "intended to injure in some way unjustifiable

20 by any government interest" or results from "deliberate indifference." *Id*. at 849-50,

21 855.[5] Plaintiffs prevail under both tests.

22

23 [5] Defendant cites *Lewis* to support its argument that negligent conduct cannot shock

24 the conscience, and that, in certain cases, deliberate indifference also falls short.
Defendant's Motion at 14 n.8. In *Lewis*, the Supreme Court grappled with whether

25 something short of intentional conduct (*i.e.*, deliberate indifference) could satisfy the

26 bar for conscious shocking conduct—and it compared cases involving claims arising

27 out of detention and those arising in the context of a high-speed chase. The Court

28

-9-

Plaintiffs' separation—and the forced family separation of thousands—is a disgraceful practice that "shocks the conscience." *Ms. L. II*, 310 F. Supp. 3d at 1142. In response to Plaintiffs' lawful request for asylum, Defendant separated then-12-year-old A.F.A.J. from Fernando, her father and the only parent present. Defendant made no determination that Fernando was unfit, dangerous, or a criminal (it could not). Instead, it admittedly separated the Plaintiffs pursuant to a policy meant "to prevent or deter other migrant families from coming to the United States." SOF ¶¶ 6, 17, 20-28, 39-41; *see also Ms. L. I*, 302 F. Supp. 3d at 1166-67; *C.M.*, 2023 WL 7102132, at *10. In other words, "harming children was *the point* of this alleged conduct—to deter other families from crossing the southern border." *K.O. v. United States*, 651 F. Supp. 3d 331, 346 (D. Mass. 2023) ("This Court has no difficulty finding that separating families for the *in terrorem* effect it may have on others shocks the conscience") (citation and internal quotation marks omitted).

Numerous courts, including this Court, have consistently held that forced family separation—and the Family Separation Policy specifically—"amounts to a constitutional violation" that bars application of the DFE. *M.A.N.H. v. United States*, 2023 U.S. Dist. LEXIS 169613, at *46 (C.D. Cal. Sept. 22, 2023); *see, e.g.*, *C.M.*, 2023 WL 7102132, at *9; *Fuentes-Ortega v. United States*, 640 F. Supp. 3d 878, 882-83; *B.A.D.J. v. United States*, 2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022); *F.R. v. United States*, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022); *A.F.P. v. United States*, 2022 WL 2704570, at *12 (E.D. Cal. July 11, 2022); *Nunez*

---

found that, in the latter, where unforeseen circumstances require snap judgments, only conduct involving an intent to cause harm will meet the conscious-shocking test. *See Lewis*, 523 U.S. at 845-55. The case at bar falls in the former category—detention—where no snap judgments are required. There is no doubt that the Family Separation Policy was created to cause harm (*see, e.g.,* SOF ¶¶ 22-28, 38-42, 50, 61), and even if that were not the case, the deliberate indifference illustrated in this case would surely suffice under *Lewis*.

-10-

*Euceda v. United States*, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021); *C.M. v. United States*, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020).

As this Court has held, "the family separation policy 'arbitrarily tears at the sacred bond between parent and child[,] . . . 'shocks the conscience' and violates Plaintiffs' constitutional right to family integrity.'" *M.A.N.H.*, 2023 U.S. Dist. LEXIS 169613, at *46 (quoting *Ms. L. I*, 302 F. Supp. 3d at 1167). The family separation policy caused "international condemnation," "[p]ublic outrage," *Ms. L. II*, 310 F. Supp. 3d at 1136, and "staggering backlash" all "evinc[ing] the conscience-shocking nature of its forced family separations," *D.A. v. United States*, 663 F. Supp. 3d 715, 735 (W.D. Tex. 2023). *See* SOF ¶¶ 25-28, 32, 39-42, 63.

Further, Defendant was on notice *before* implementation of the Family Separation Policy that it would violate constitutional rights. *See, e.g.*, SOF ¶¶ 20-22, 28.

> b.   *Defendant Violated Plaintiffs' Procedural Due Process Rights*

Procedural due process requires that a "deprivation of life, liberty, or property must be 'preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1236 (9th Cir. 2009) (quoting *In re Yochum*, 89 F.3d 661, 672 (9th Cir. 1996)). "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

First, Plaintiffs were deprived of a well-established and constitutionally protected liberty interest: "[t]he right to . . . not be separated from one's immediate family is a right that ranks high among the interests of the individual and that cannot

-11-

1   be taken away without procedural due process." *Ching v. Mayorkas*, 725 F.3d 1149,

2   1157 (9th Cir. 2013) (citation and internal quotation marks omitted).

3        Second, Plaintiffs received no, let alone adequate, procedural protections.

4   Indeed, Plaintiffs were never provided an opportunity to be heard to challenge their

5   separation. Plaintiffs were separated hours after their lawful arrival in the United

6   States. Defendant's SOF ¶ 27. Plaintiffs received no hearing before or after their

7   separation at which they could challenge the separation. SSOF ¶ 3. Plaintiffs were

8   not even informed of the basis for their separation. SOF ¶¶ 129, 132, 174. When

9   ordered by a Federal Court to produce "*any and all* evidence relevant to the issues,"

10  including the "legal basis for the deportation of the 21 parents [including

11  Fernando]," Defendant produced only two documents pertaining to Fernando.[6] *See*

12  Order, *Ms. L.*, No. 18-cv-0428, ECF No. 437 (emphasis added). Defendant's sole

13  basis for separating Plaintiffs was its Family Separation Policy; Fernando had no

14  criminal history and posed no danger to his daughter. *Ms. L. v. U.S. Immigr. &*

15  *Customs Enf't (Ms. L. III)*, 403 F. Supp. 3d 853, 857, 860 (S.D. Cal. 2019). Further

16  exacerbating the violation of Plaintiffs' procedural due process rights, Defendant

17  then unlawfully deported Fernando in violation of three court orders. SOF ¶¶ 85-86.

18  Defendant's separation of Plaintiffs violated their procedural due process rights,

19  precluding application of the DFE.

20

21

22

23  ───────────────
    [6] Defendant produced (1) a version of Form 1-296, Notice to Alien Ordered

24  Removed/Departure Verification, related to Fernando, stating the date and location

25  of Fernando's deportation and (2) a version of Form I-213 which lists Fernando's
    immigration history as the reason for Plaintiffs' separation. Defendant did not appeal

26  the resulting final order, *Ms. L. III*, and is collaterally estopped from presenting
    additional evidence or arguing the determination made in *Ms. L. III*. *See Stauffer*

27  *Chem. Co.*, 464 U.S. at 173.

28                                          -12-

c. <i>The Court Should Not Apply a Quasi-Qualified Immunity Standard</i>

Recognizing its failure to provide due process, Defendant invites this Court to apply a quasi-qualified immunity standard to its conduct, arguing that: (1) overcoming the DFE requires a clearly established and specific constitutional directive, and (2) such a directive did not exist when the separation took place.[7] Defendant's Motion at 13. Defendant completely ignores binding Circuit precedent.[8]

In the Ninth Circuit, a clearly established and specific constitutional directive is not required to overcome the DFE. *See, e.g.*, *M.A.N.H.*, 2023 U.S. Dist. LEXIS 169613, at \*46; *Galvin*, 374 F.3d at 757 (declining to apply the DFE even though "the constitutional right violated . . . was not clearly established"). Accordingly, numerous courts within the Ninth Circuit have agreed that "the mere pleading of a plausible constitutional violation rendered the discretionary function exception inapplicable." *See, e.g.*, *Fuentes-Ortega*, 640 F. Supp. 3d at 883 ("The United States acknowledges that district courts in this circuit have, under substantially similar circumstances, rejected its discretionary function argument.") (collecting cases). Therefore, Defendant's assertion that Plaintiffs must prove a clearly established, specific constitutional directive is simply incorrect.

Even if the Court were to accept Defendant's invitation (and it should not), this would not aid Defendant because a clearly established and specific

---

[7] Defendant's recycle, largely verbatim, the unsuccessful arguments made in their summary judgment motions in *C.M.* and *A.P.F.* *Compare* Defendant's Motion at 11-14 *with C.M. v. United States*, No. 19-cv-05217-SRB (D. Ariz. Mar. 9, 2023), ECF No. 371 at 21-26, *and A.P.F. v. United States*, No. 2:20-CV-00065-SRB (D. Ariz. Mar. 9, 2023), ECF No. 363, at 23-28. The court soundly rejected such arguments. *C.M.*, 2023 WL 7102132, at \*8 n.7.

[8] Defendant fails to even cite *Galvin*, binding precedent that forecloses its argument. *See Galvin*, 374 F.3d at 756-58.

-13-

constitutional direction *did exist* at the time of Defendant's conduct at issue. A constitutional right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 753 (2002) (citation and internal quotation marks omitted). As the right to family integrity and an opportunity to be heard in advance of the deprivation of those rights are well established (*supra* IV.C.1.a-b), Defendant was on notice that separating Plaintiffs would violate their due process rights.

### 2.   Defendant's Separation of Plaintiffs Was Mandated

Even if the Court were to find that Defendant's conduct was not unconstitutional, Defendant cannot establish that its decisions to separate Plaintiffs and designate A.F.A.J. as a UAC were "discretionary." A decision is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. "[T]here can be no element of discretion when an employee has no rightful option but to adhere to the directive[.]" *Myers v. United States*, 652 F.3d 1021, 1030 (9th Cir. 2011) (citation and internal quotation marks omitted). Defendant cannot rewrite history or "splice" its decisions under the Family Separation Policy "into a series of discrete, noncontroversial decisions" about Fernando's immigration history, "its decision to label [A.F.A.J.] 'unaccompanied' under the TVPRA and decisions relating to [p]laintiffs' detention." *Leticia v. United States*, 2023 WL 7110953, at *11 (E.D.N.Y. Oct. 27, 2023) ("When an agency has a policy that in practice determines how agents will enforce immigration laws, the agents are not making discrete discretionary decisions.").

The evidence is clear, *and Defendant has admitted*, that Defendant's agents implementing the family separation policy, including the separation of Plaintiffs and separately placing A.F.A.J. in ORR custody, acted as required by federal mandates.

-14-

              *a.*    *Prosecutorial Discretion Is a Red Herring Because No Prosecution Was Possible.*

The Family Separation Policy removed all discretion because the policy required federal agents to "use[] family separation to deter migration to the United States." *Leticia*, 2023 WL 7110953, at *11. In fact, Defendant's representative and witnesses testified that there was no exercise of discretion under the Family Separation Policy—*any* family presenting at the border with prior immigration violations was summarily separated. SOF ¶¶ 54, 55; SSOF ¶ 1 (testifying that separations based on prior immigration violations were mandated at ports of entry).[9]

Defendant relies on just two cases to support its contention that DFE should apply in family separation cases: *S.E.B.M.* and *Peña Arita*. In both cases, applying Texas law (which this Court has already found does not apply here), the court found that claims based on the ZTP may be barred where the United States was exercising *prosecutorial discretion*. *See S.E.B.M. v. United States*, 659 F. Supp. 3d 1249, 1272-73 (D.N.M. 2023); *Peña Arita v. United States*, 470 F. Supp. 3d 663, 686-87 (S.D. Tex. 2020). Defendant concedes it never prosecuted Fernando, however, so Defendant's reliance on these cases is misplaced.

Defendant further concedes in a footnote that "certain other courts have reached different conclusions" regarding the DFE's applicability to family separation claims. Defendant's Motion at 9 n.3. In truth, the vast weight of decisions

---

[9] Defendant's argument that policy level documents regarding the ZTP are "insufficient to establish . . . intent because Plaintiffs were not separated pursuant to that policy" is meritless. Defendant's Motion at 18. First, *Ms. L.* conclusively determined that Plaintiffs were separated pursuant to a nationwide family separation policy and that the family separation policy included the ZTP. *Supra* II.C. Second, Defendant's witnesses testified that they understood the ZTP to mandate the separation of families presenting at the Laredo port of entry with prior immigration violations. SOF ¶ 54; SSOF ¶ 1. Third, Defendant has already recognized Plaintiffs to be victims of the ZTP. *See* SOF ¶¶ 244, 245; SSOF ¶¶ 10-14, 16-17.

is against Defendant. *See, e.g.*, *C.M.*, 2023 WL 7102132, at *8-12; *Flores Benitez v. Miller*, 2023 WL 5290855, at *11-14 (D. Conn. Aug. 17, 2023); *Fuentes-Ortega v. United States*, 640 F. Supp. 3d 878, 883 (D. Ariz. 2022); *A.F.P.*, 2022 WL 2704570, at *12; *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996-97 (D. Ariz. 2020).

Most recently, in *C.M.* and *A.P.F.*, two cases where, as here, the parent-plaintiffs were not prosecuted, the court rejected Defendant's reliance on *S.E.B.M.* and *Peña Arita*. There, the court held that *S.E.B.M.* and *Peña Arita* were inapplicable because "the CBP agents' UAC determinations in [the present] case are not similarly 'bound up' in or 'indivisible' from the decision to refer the parent [p]laintiffs for prosecution. . . . Plaintiffs were never prosecuted or held in criminal custody." *C.M.*, 2023 WL 7102132, at *11. This Court should join the resounding chorus of courts declining to follow the outliers identified by Defendant (which themselves are factually distinguishable).

> **b.** *The Decision to Place A.F.A.J. in ORR Custody Was Not Subject to Discretion*

Defendant's decision to designate A.F.A.J. as a UAC and place her in ORR Custody is not protected by the DFE. A child may only be labelled a UAC if they meet the definition of a UAC under the Trafficking Victims Protection and Reauthorization Act of 2003 ("<u>TVPRA</u>"). *See* 8 U.S.C § 1232(b)(1). The TVPRA "does not apply to children who enter the United States with their parents." *Leticia*, 2023 WL 7110953, at *16; *see also Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp. 3d 491, 495 n.2 (D.D.C. 2018) (holding minors who crossed the border with mother "were rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants"); *C.M.*, 2023 WL 7102132, at *11 ("[T]he TVPRA does not grant CBP agents discretion to make pre-emptive determinations that a parent *might become* unavailable.").

-16-

1    The facts here show that A.F.A.J. does not meet the definition of an UAC

2    because she entered the United States with her father, who was available to provide

3    care and physical custody. *See C.M.*, 2023 WL 7102132, at *11. The decision to

4    label A.F.A.J. a UAC was not a discrete, discretionary decision. "The Government

5    cannot unconstitutionally separate children from their parents and then claim that

6    decisions that were intertwined with these decisions are themselves discretionary."

7    *Leticia,* 2023 WL 7110953, at *16 (holding DFE did not apply to the decision to

8    label minor unaccompanied and the resulting harms); *id.* at *11 (holding that there

9    was no "isolated decision to label [a child] an 'unaccompanied alien child'" under

10   the ZTP).

11          Defendant argues it was "expressly authorized to designate A.F.A.J. as a UAC

12   and place her in ORR custody, pursuant to the TVPRA, after detaining her father."

13   Defendant's Motion at 10. That Defendant possesses authority to determine whether

14   a child is a UAC does not, however, mean that Defendant exercised discretion in

15   doing so or that the DFE shields it from liability. Determining whether a minor meets

16   the definition of a UAC may require the exercise of "some professional judgment,"

17   but "that professional judgment is not the same as 'discretion.'" *C.M.*, 2023 WL

18   7102132, at *11 (citation and internal quotation marks omitted); *see e.g., Leticia,*

19   2023 WL 7110953, at *11 ("[W]hen an agency has a policy for its officers to make

20   decisions that set off a series of legally required actions that necessarily lead to

21   constitutional violations, the agency and its officers do not have discretion to make

22   the first decision.").[10]

23

24

25   [10] Defendant's reliance on *S.E.B.M.* here is also unavailing. *S.E.B.M.* explicitly held

26   that the "only discretionary action" was the decision to prosecute the accompanying

27   parent. *S.E.B.M.*, 659 F. Supp. 3d at 1272. Defendant concedes that Fernando was

     "never prosecuted or referred for prosecution[.]" Defendant's Motion at 18.

28
                                    -17-

1   Furthermore, Defendant's speculative assertion that its decision to separate

2   Plaintiffs may have been due to there being a "lack of a family shelter that could

3   accommodate the two Plaintiffs together" is not supported by the record. *See*

4   Defendant's Motion at 9-10. Indeed, nowhere in Plaintiffs' I-213 forms is such a

5   contention reflected, and Defendant failed to put forth any witness who could recall

6   a search for shelter having been made. SOF ¶¶ 56, 57, 101; SSOF ¶¶ 2, 18, 19.

7           c.      *Claims that Address Conditions of Plaintiffs' Confinement*

8                   *Are Not Barred by the Discretionary Function Exception*

9   In its motion, Defendant argues that "Plaintiffs' claims regarding the

10  conditions of their confinement are also barred" by the DFE because "the manner in

11  which the government manages and operates its detention facilities involves

12  discretionary decisions."[11] Defendant's Motion at 10.

13  Defendant's attempt to characterize Plaintiff's factual allegations of

14  mistreatment at the hands of Defendant as stand-alone claims is grossly misplaced

15  and has been repeatedly rejected in other family separation cases. *See, e.g.*, *A.F.P.*,

16  2022 WL 2704570, at *13 ("[R]eject[ing] the government's characterization of

17  plaintiffs' factual allegations as standalone claims . . . [they] concern not the

18

19  _____

20  [11] Defendant cannot seriously contend that the DFE applies to preclude all claims of

21  "[p]oor [c]onditions of [c]onfinement" because "the manner in which the
    government manages and operates its detention facilities involves discretionary

22  decisions." Defendant's Motion at 10. In any event, the cases cited by Defendant
    either involve inapposite conduct or involve FTCA claims alongside other causes of

23  action, such that the complaining party is left with no right to remedy or recourse.
    *See, e.g.*, *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not

24  to provide bed rails); *Lineberry v. United States*, 2009 WL 763052, at *6 (N.D. Tex.
    Mar. 23, 2009) (allegations of negligent overcrowding); *Harrison v. Fed. Bureau of

25  Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) (decision regarding provision of
    telephone services); *Antonelli v. Crow*, 2012 WL 4215024, at *2-7 (E.D. Ky. Sept.

26  19, 2012) .

27

28                                          -18-

existence of jurisdiction, but the alleged harm resulting from the separation of plaintiffs."); *C.M. v. United States*, 2020 WL 1698191, at *4 (same).[12] As in *A.P.F.* and *C.M.*, Plaintiffs' allegations here regarding mistreatment by Defendant while Plaintiffs were in Defendant's custody are not alleged as individual claims but are intended to establish the overall harm that Defendant caused to Plaintiffs.[13]

### 3.   Defendant Fails to Articulate a Legitimate Policy Rationale

Assuming *arguendo* that Defendant exercised discretion in separating Plaintiffs (it did not), Defendant is unable to satisfy the second *Berkovitz* prong, which requires that the conduct be based on "'considerations of public policy'" or "susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 323, 325 (1991) (citation omitted); *Berkovitz*, 486 U.S. at 537; *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994) (stating that discretionary conduct "is protected by [28 U.S.C.] § 2680(a) only if it implements social, economic, or political policy"). The DFE does not apply where there is "no legitimate policy rationale." *Myles v. United States*, 47 F.4th 1005, 1012 (9th Cir. 2022) (citation and internal quotation marks omitted).

---

[12] Furthermore, allegations that the conditions of detention "violate CBP manual guidelines" "are not 'of the kind that the discretionary function exception was designed to shield.'" *Leticia,* 2023 WL 7110953, at *16 (citation omitted).

[13] Defendant's ancillary argument that, "[t]o the extent that Plaintiff complains of actions or omissions that took place at BCFS," such acts are protected by the independent contractor exception, is equally fruitless. Defendant's Motion at 11, n.4. A.F.A.J.'s injuries were directly caused by being forcibly separated from her father and being placed in an inadequate ORR facility for weeks. In any event, summary judgment should be denied because determining whether BCFS staff's actions can be attributed to Defendant for FTCA liability is a fact-intensive inquiry to be made by the finder of fact. *See, e.g.*, *Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997). Moreover, if the court finds that BCFS employees are independent contractors, then the DFE cannot logically apply. *Id.*

Here, Defendant does not address the second *Bervokitz* factor at all, which instantly defeats its DFE defense, and Defendant should not be permitted to introduce evidence in support of the second prong later. *See generally* Defendant's Motion at 6-11; *see also United States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008) ("[A]rguments raised for the first time in a reply brief are generally considered waived[.]"); *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

Regardless, Defendant cannot satisfy the second *Berkovitz* factor because separating migrant families serves no legitimate governmental objective. *See e.g.*, *C.M.*, 2023 WL 7102132, at *10 ("separat[ing] families irrespective of whether the parents were ever prosecuted to deter other potential migrants from entering the United States . . . could serve no compelling or legitimate government interest"); *Ms. L. I*, 302 F. Supp. 3d at 1167 (stating that family separation "is emblematic of the 'exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective'") (citation omitted); *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164, 188-89 (D.D.C. 2015) (finding that general civil detention "for the sake of sending a message of deterrence to other Central American individuals who may be considering immigration" is not a legitimate government interest); *Jacinto-Castanon*, 319 F. Supp. 3d at 502 .

Because Defendant's separation of Plaintiffs was not susceptible to policy analysis, the DFE does not apply.

### D. Plaintiffs Have Clearly Established a Private Person Analog

Defendant argues that there is no private person analog for any of Plaintiffs' claims "[b]ecause only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention."

-20-

Defendant's Motion at 15.[14] As an initial matter, Defendant's framing of the conduct at issue as the enforcement of immigration laws is wrong. The conduct at issue is more properly understood as the specific conduct that grounds Plaintiffs' claims: their separation. *See, e.g.*, *Flores Benitez*, 2023 WL 5290855, at *18  (finding that the plaintiffs' IIED claim based on defendant's separation of plaintiffs satisfied the private person analog). Case law, including that cited by Defendant, makes clear there is no carve-out for tortious conduct committed within the scope of inherently governmental duties, even in the immigration context. *See id.; Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012).

Each of Plaintiffs claims is cognizable under California law, and each is a claim for which a private person may be held liable. Contrary to Defendant's arguments, Plaintiffs' facts and claims as alleged have a reasonable analogy under state law.[15]

First, claims based on family separation have a private party analog. Indeed, numerous courts across the country have recognized claims against private parties who  separated parents from their children. *See, e.g.*, *Wilbur P.G. v. United States*, 2022 WL 3024319, at *5 (N.D. Cal. May 10, 2022); *A.P.F.*, 492 F. Supp. 3d at 994-

---

[14] Defendant unsuccessfully made this same argument in other cases concerning the Family Separation Policy. *See, e.g.*, *B.Y.C.C. v. United States*, 2023 WL 5237147, at *7 (D. N.J. Aug. 15, 2023); *C.D.A. v. United States*, 2023 WL 2666064, at *16 (E.D. Penn. Mar. 28, 2023); *A.F.P.*, 2022 WL 2704570, at *10; *C.M. v. United States*, 2023 WL 3261612, at *20 (W.D. Tex. May 4, 2023); *D.A.*, 2023 WL 2619167, at *10. Defendant's arguments here should be similarly rejected.

[15] In a footnote, Defendant states that California does not recognize NIED as an independent tort. Defendant's Motion at 19 n.9. As discussed *infra*, and as stated in Plaintiffs' Motion, Plaintiffs recognize that NIED under California law is a species of negligence. Plaintiffs' Motion at 18.

-21-

95; *C.M.*, 2020 WL 1698191, at \*2; *Martinez v. United* States, 2018 WL 3359562, at \*10-12 (D. Ariz. July 9, 2018).

Furthermore, the Ninth Circuit has held that "the tort of [IIED] is not excluded as a matter of law from [the] FTCA by § 2680(h)." *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990), *as amended*, 917 F.2d 424 (9th Cir. 1990) (citation and internal quotation omitted). Accordingly, district courts may exercise jurisdiction over FTCA IIED claims where plaintiffs plead malicious intent. *Gasho*, 39 F.3d at 1434. Defendant, as a private party, could be held liable under California law for its employee's infliction of emotional distress, whether intentional or reckless. *See Xue Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010); *Flores v. Autozone West, Inc*., 74 Cal. Rptr. 3d 178, 179-80, 188 (Ct. App. 2008).

As to the claims for negligence specifically, family separation and Plaintiffs' detention have a private party analog because Defendant, acting as jailer, owed and breached duties to Plaintiffs (its detainees). *See* Plaintiffs' Motion at 12-13. Thus, because a private party would be liable for analogous conduct under California law, Defendant too may be liable under the FTCA.

### E.   Plaintiffs Have Established Their Claims Under State Law

Plaintiffs' claims satisfy every element imposed by California law. *See* Plaintiffs' Motion at 12-23. Defendant only offers barebones, conclusory arguments to the contrary.

*First*, Defendant does not cite a single case supporting its contention that Defendant did not breach its duty of care to Plaintiffs. Defendant's Motion at 18-19. It merely asserts that it did not violate any duty of care by detaining Fernando or by holding A.F.A.J. at an ORR facility. Most noticeably, Defendant fails to address Plaintiffs' primary claim—that their separation was a breach of Defendant's duty of care.

-22-

*Second*, Defendant cites a series of cases stating the standards for an IIED claim, but fails to explain why Plaintiffs' IIED claims do not meet those standards. Defendant's Motion at 17-18. Plaintiffs have explained in Plaintiffs' Motion how each element of their claims have been met. *See* Plaintiffs' Motion at 11-23.

*Third*, Defendant's assertion that it lacked the requisite intent to harm Plaintiffs is unavailing inasmuch as the separation was pursuant to a policy purposefully designed to discourage immigration by inflicting harm. Defendant's Motion at 18; SOF ¶¶ 6, 17, 20-28, 39-41. Importantly, a federal court has already determined that Plaintiffs were separated "pursuant to a nationwide policy[,]" that separation caused trauma, and Plaintiffs "suffered injury." SOF ¶¶ 231-233. Defendant is collaterally estopped from relitigating those issues. *Supra* I.A.1.

*Fourth*, Defendant fails to address the numerous cases that already found that its conduct supports negligence and IIED claims. For instance, Defendant ignores Judge Sabraw's finding that family separation in the manner implemented by Defendant "assure[s]" success on a substantive due process claim. *See Ms. L. II*, 310 F. Supp. 3d at 1146. Likewise, Defendant fails to address numerous cases concluding that forcibly separating a minor from her only available parents is extreme and outrageous conduct that shocks the conscience. Plaintiffs' Motion at 21; *see, e.g.*, *B.Y.C.C. v. United States*, 2023 WL 5237147, at *10 (D.N.J. Aug. 15, 2023) (agreeing with "numerous other courts across the country" that Defendant's family separation policy constitutes extreme and outrageous conduct).

-23-

1

## V.    CONCLUSION

2       For the foregoing reasons, the Court should deny Defendant's Motion in its

3  entirety.

4  Dated: <u>January 19, 2024</u>                          Respectfully Submitted,

5                                                    **MILBANK LLP**

6                                                    By: <u>/s/ *Linda Dakin-Grimm*</u>
                                                     Linda Dakin-Grimm (State Bar #119630)
7                                                    Ldakin-grimm@milbank.com

8
                                                     Mark Shinderman (State Bar #136644)
9                                                    MShinderman@milbank.com
                                                     Samir L. Vora (State Bar #253772)
10                                                   SVora@milbank.com
                                                     Marina Markarian (State Bar #340686)
11                                                   MMarkarian@milbank.com
                                                     2029 Century Park East, 33rd Floor
12                                                   Los Angeles, CA 90067
13                                                   Telephone: 424.386.4000
                                                     Facsimile: 213.629.5063
14

15                                                   Elizabeth Hamilton, *pro hac vice*
16                                                   EHamilton@milbank.com
                                                     55 Hudson Yards
17                                                   New York, New York 10001
                                                     Telephone: 212-530-5000
18                                                   Facsimile: 212-530-5219
19

20                                                   Julie Wolf, *pro hac vice*
21                                                   JWolf@milbank.com
                                                     Julia Duke, *pro hac vice*
22                                                   JDuke@milbank.com
                                                     Riah Kim, *pro hac vice*
23                                                   RKim2@milbank.com
24                                                   Victoria Colbert, *pro hac vice*
                                                     VColbert@milbank.com
25                                                   Jonghyun Lee, *pro hac vice*
26                                                   JLee7@milbank.com
27                                                   1850 K Street NW, Suite 1100

28
                                                         -24-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Washington, DC 20006
Telephone: 202.835.7500
Facsimile: 202.263.7586
*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

-25-

1

### <u>Certificate of Compliance Pursuant to L.R. 11-6.2</u>

2

The undersigned, counsel of record for Plaintiffs Esvin Fernando Arredondo

3

Rodriguez and A.F.A.J certifies that this brief contains 6,981 words, which

4

complies with the word limit of L.R. 11-6.2.

5

6

Dated: January 19, 2024                  By: <u>/s/ *Elizabeth Hamilton*</u>

7

Elizabeth Hamilton

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-