MILBANK LLP
Linda Dakin-Grimm (State Bar #119630)
Mark Shinderman (State Bar #136644)
Samir L. Vora (State Bar #253772)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (213) 892-4404
Facsimile: (213) 629-5063
Email: Ldakin-grimm@milbank.com

*Additional counsel listed on signature page

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and A.F.A.J

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ESVIN FERNANDO ARREDONDO RODRIGUEZ INDIVIDUALLY AND A.F.A.J., A MINOR, BY HER GUARDIAN AD LITEM, JEFFREY HAMILTON, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No.: CV 22-02845-JLS-JC <br><br> **PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANT'S PROFFERED EVIDENCE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND TO THE DECLARATION OF JAMES DE LA CRUZ** <br><br> Hearing Date:  February 16, 2024 <br> Time:  10:30 a.m. <br> Place:  First Street Courthouse, Courtroom 8A <br><br> Honorable Josephine L. Staton, United States District Judge |

Pursuant to the Initial Standing Order for Cases Assigned to Judge Josephine L. Staton, Plaintiffs Esvin Fernando Arredondo Rodriguez and A.F.A.J. respectfully submit the following Evidentiary Objections to the evidence referenced in Defendant's Statement of Undisputed Facts in support of its Motion for Summary Judgment and to the Declaration of James De La Cruz.

# I.   EVIDENTIARY OBJECTIONS TO EVIDENCE REFERENCED IN DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **1.** | U.S. Border Patrol ("BP") is a component of U.S. Customs and Border Protection ("CBP"), which is an agency within DHS.<br><br>(*See* CBP Organizational Structure ("CBP Org. Chart"), available at https://www.cpb.gov/sites/default/files/assets/documents/2023-Mar/cbp-org-chart-compliant-03-2023.pdf.) | <u>Assumes facts not in evidence; lack of foundation (Federal Rule of Evidence ("FRE") 901)</u><br>The CBP Organizational Structure chart referenced in this item was not produced in discovery and cannot be found at the URL provided, which states, "We're sorry, we can't find the page you're looking for. It might have been removed, changed its name, or is otherwise unavailable."<br><br>Because it is impermissible to offer new evidence with reply papers, Defendant may not offer new support for this assertion. *See Morris v. Guetta*, No. 12-cv-684, 2013 WL 440127, at *8 (C.D. Cal. Feb. 4, 2013) ("New evidence submitted as part of a reply is improper."). |
| **2.** | BP possesses responsibility for apprehending individuals who enter | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is inadmissible because "its probative value is |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | the United States between ports of entry.<br><br>(Declaration of David Pinchas "Pinchas Decl." at ¶ 2, Ex. 2 (H.N. Depo) at 18:11-24, 51:1-13; Declaration of Christina Marquez "Marquez Decl." at ¶ 6, Ex. 5 (H.E. Depo) at 101:3-10) | substantially outweighed by a danger of . . . unfair prejudice, confusing the issues[ and] misleading the jury[.]" (FRE 403) (This proposition applies to all following objections made pursuant to FRE 403.)<br><br>To the extent that this asserted fact implies that it is a comprehensive description of BP's responsibilities or an assertion that BP is the only agency within CBP with such responsibilities, it is false and misleading. BP's responsibility is much more extensive than asserted.  BP's "primary mission" is to detect and prevent the illegal entry of individuals into the US," both between ports of entry and at official border stations.<br><br>To that end, BP operates and controls border stations across sectors of the U.S. border, including the Laredo sector in Texas, where the events at issue in this case occurred. *See Border Patrol Overview*, U.S. Customs and Border Protection website, https://www.cbp.gov/border-security/along-us-borders/overview (last visited Jan. 16, 2024), Ex. B; *Border Security - Sectors and Stations*, U.S. Customs and Border Protection, https://www.cbp.gov/border-security//along-us-borders/border-patrol-sectors (last visited Jan. 16, 2024), Ex. C. |

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| | <u>Not relevant (FRE 401-402)</u><br>This asserted fact is irrelevant to Plaintiffs' claims and Defendant's defenses, as it has no bearing on whether Defendant and its agents including those employed by CBP and BP are liable for Plaintiffs' causes of action under the FTCA. |
| **3.** Office of Field Operations ("OFO") is a component of CBP, which is an agency within DHS.<br><br>(*See* CBP Org. Chart) | <u>Assumes facts not in evidence; lack of foundation (FRE 901)</u><br>The CBP Organizational Structure chart referenced in this item was not produced in discovery and cannot be found at the URL provided, which states, "We're sorry, we can't find the page you're looking for. It might have been removed, changed its name, or is otherwise unavailable."<br><br>Because it is impermissible to offer new evidence with reply papers, Defendant may not offer new support for this assertion. *See Morris v. Guetta*, No. 12-cv-684, 2013 WL 440127, at *8 (C.D. Cal. Feb. 4, 2013) ("New evidence submitted as part of a reply is improper."). |
| **4.** OFO is responsible for processing individuals at ports of entry.<br><br>(*See* CBP Org. Chart; *see also* H.N. Depo at 18:11-24) | <u>Assumes facts not in evidence; lack of foundation (FRE 901)</u><br>The CBP Organizational Structure chart referenced in this item was not produced in discovery and cannot be found at the URL provided, which states, "We're sorry, we can't find the page you're looking for. It might have |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | been removed, changed its name, or is otherwise unavailable." |
| | | Because it is impermissible to offer new evidence with reply papers, Defendant may not offer new support for this assertion. *See Morris v. Guetta*, No. 12-cv-684, 2013 WL 440127, at *8 (C.D. Cal. Feb. 4, 2013) ("New evidence submitted as part of a reply is improper."). |
| **5.** | BP and OFO are co-equal parts of CBP that report to the Deputy Commissioner independent of each other.<br><br>(*See* CBP Org Chart; *see also* H.N. Depo at 51:1-13, 94:18-21) | <u>Assumes facts not in evidence; lack of foundation (FRE 901)</u><br>The CBP Organizational Structure referenced in this item was not produced in discovery and cannot be found at the URL provided, which states, "We're sorry, we can't find the page you're looking for. It might have been removed, changed its name, or is otherwise unavailable."<br><br>Because it is impermissible to offer new evidence with reply papers, Defendant may not offer new support for this assertion. *See Morris v. Guetta*, No. 12-cv-684, 2013 WL 440127, at *8 (C.D. Cal. Feb. 4, 2013) ("New evidence submitted as part of a reply is improper.").<br><br>The cited testimony does not support the fact asserted. |

- 4 -

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| | Not relevant (FRE 401-402) This asserted fact is irrelevant to Plaintiffs' claims and Defendant's defenses, as it has no bearing on whether Defendant and its agents, including those employed by CBP regardless of subdivision, are liable for Plaintiffs' causes of action under the FTCA. |
| **6.** BP does not control policy for OFO. (*See* Marquez Decl. ¶¶ 8-9, Exs. 7-8 (Hastings Depo) at 31:22, 33:12-34:3, (DHS 30(b)(6) Depo) at 193:15-194:12) | Assumes facts not in evidence; lack of foundation (FRE 901) The cited testimony does not support the fact asserted. Not relevant (FRE 401-402) This asserted fact is irrelevant to Plaintiffs' claims and Defendant's defenses, as it has no bearing on whether Defendant and its agents, including those under BP or OPO, are liable for Plaintiffs' causes of action under the FTCA. |
| **7.** OFO is responsible for the Laredo Port of Entry. (*See* H.N. Depo at 52:8-9) | More prejudicial than probative; misleading (FRE 403) To the extent that this asserted fact implies that other agencies and their employees within CBP do not also have responsibilities at the Laredo Port of Entry, it is false and misleading. Not relevant (FRE 402) This asserted fact is irrelevant to Plaintiffs' claims and Defendant's motion, as it has no bearing on whether Defendant and its agents |

PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANT'S PROFFERED EVIDENCE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND TO THE DECLARATION OF JAMES DE LA CRUZ
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | including those employed by CBP and BP are liable for Plaintiffs' causes of action under the FTCA because the Family Separation Policy and the Zero Tolerance Policy ("ZTP") encompassed within it were not directed to only certain parts of CBP.<br><br>Assumes facts not in evidence; lack of foundation (FRE 901)<br>The cited testimony does not support the fact asserted. |
| 8. | The Laredo Port of Entry processes thousands of individuals each day.<br><br>(*See* H.E. Depo at 95:13-25, 96:5-6) | Not relevant (FRE 401-402)<br>This asserted fact is irrelevant to Plaintiffs' claims and Defendant's defenses, as it has no bearing on whether Defendant and its agents are liable for Plaintiffs' causes of action under the FTCA. |
| 9. | The Zero Tolerance Policy was never applied at the Laredo Port of Entry.<br><br>(*See* Marquez Decl., at ¶ 3, Ex.2 (CBP 30(b)(6) Depo) at 292:9-293:12; *see also* H.N. Depo at 17:21-25, 106:18-23) | Not relevant (FRE 401-402)<br>This asserted fact is false, but in any event is irrelevant to Plaintiffs' claims and Defendant's defenses, as the policy at issue includes both the broader Family Separation Policy and the ZTP which is a part of it.<br><br>Moreover, Plaintiffs *were* separated under these policies at Laredo, as were many other parents and children, on the same day that Plaintiffs arrived at Laredo Port of Entry. *See* Plaintiffs' Statement of Uncontroverted Fact in Support of Plaintiffs' Motion for Summary Judgment ("SOF") ¶¶ 120, |

- 6 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | 123. And contrary to the assertions of its lawyers, Defendant has repeatedly and recently admitted that Plaintiffs were separated under the ZTP and has awarded them benefits available only to those who were separated pursuant to the policy (including parole-in-place for victims of the ZTP) under the auspices of Defendant's Department of Homeland Security's Family Reunification Task Force. *See* SOF ¶¶ 244-45; Plaintiffs' Supplemental Statement of Fact ("SSOF") ¶¶ 10-14. |
| **10.** | Plaintiff Esvin Arredondo Rodriguez ("Mr. Arredondo") is a native and citizen of Guatemala.<br><br>(*See* Declaration of Tracey Long "Long Decl." at ¶ 5D, Ex. 4 (Mr. Arredondo's Form I-213)) | <u>Unauthenticated document (FRE 901); inadmissible hearsay (FRE 802)</u><br>The document (Form I-213 Record of Deportable/Inadmissible Alien) is unauthenticated (FRE 901) and constitutes inadmissible hearsay. (FRE 802.) The document also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created, and because the document contains various and internally inconsistent dates, there is a strong indication that the document was created after-the-fact. |
| **11.** | Plaintiff A.F.A.J., Mr. Arredondo's daughter, is a native and citizen of Guatemala. | <u>Unauthenticated document (FRE 901); inadmissible hearsay (FRE 802)</u><br>The document (A.F.A.J.'s Form I-213) is unauthenticated (FRE 901) and |

- 7 -

|  | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
|  | (*See* Declaration of Randy Fondren "Fondren Decl." at ¶ 5B, Ex. 2 (A.F.A.J.'s Form I-213)) | constitutes inadmissible hearsay. (FRE 802.) The document also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact. |
| 12. | Mr. Arredondo and A.F.A.J. sought admission to the United States on May 16, 2018 at the Gateway to the Americas Bridge, otherwise known as "Bridge 1" at the Laredo Port of Entry at approximately 5:37 p.m. A.F.A.J. was 12 years on this day.<br><br>(*See* Long Decl., Ex. 4; Fondren Decl., Ex. 2; CBP 30(b)(6) Depo at 67:5-9) | <u>Unauthenticated document (FRE 901);</u> <u>Inadmissible hearsay (FRE 802)</u><br>The document (Form I-213 Record of Deportable/Inadmissible Alien) is unauthenticated (FRE 901) and constitutes inadmissible hearsay. (FRE 802.) The document also lacks foundation as a business record for purposes of FRE 803(6).<br><br>The document itself states two different dates on which Plaintiffs supposedly arrived at the Laredo Port of Entry. Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created, and because the document contains various and internally inconsistent dates, there is a strong indication that the document was created after-the-fact. |

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| **13.** This first official interaction Mr. Arredondo and A.F.A.J. had with CBP occurred at what is known as pedestrian primary.<br><br>(*See* CBP 30(b)(6) Depo 73:2-12; Marquez Decl. ¶ 2, Ex.1; Plaintiff's Depo at 39:16-40:10) | <u>Assumes facts not in evidence; mischaracterizes prior testimony; misleading (FRE 403)</u><br>The cited testimony does not establish that the term "pedestrian primary" is a term that is "known." The term was not used by either Plaintiff in their depositions and is not generally known to the public. |
| **14.** Primary is typically the first point at which travelers interface with CBP at a Port of Entry. This is where CBP officers ask travelers what their purpose is for seeking entry into the country and check their documents.<br><br>(*See* H.E. Depo at 24:10-22) | <u>Assumes facts not in evidence; mischaracterizes prior testimony; misleading (FRE 403)</u><br>Defendant mischaracterizes prior testimony, and the asserted fact is therefore misleading. The cited testimony does not establish that the term "primary" is a term that is "known." The term was not used by either Plaintiff in their depositions and is not generally known to the public. |
| **15.** The pedestrian primary officer asked Mr. Arredondo if he and his daughter A.F.A.J. had any valid documents. Mr. Arredondo explained that he had no visa and "was here to turn [himself in]."<br><br>(*See* Plaintiff's Depo at 39:16-22) | <u>Assumes facts not in evidence mischaracterizes prior testimony; misleading (FRE 403)</u><br>Defendant mischaracterizes prior testimony, as the evidence does not support the asserted fact. Specifically, the characterization of the officer as a "pedestrian primary officer" is not supported by any evidence, including Plaintiff's cited testimony, and Defendant has not identified any agent who had such a title. |

- 9 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **17.** | Mr. Arredondo and A.F.A.J. lawfully applied for admission into the United States and expressed a fear of return to Guatemala.<br><br>(*See* Long Decl., Ex. 4; Fondren Decl., Ex. 2; Plaintiff's Depo at 39:16-22) | <u>Unauthenticated document (FRE 901); inmissible hearsay (FRE 802)</u><br>The document (Form I-213 Record of Deportable/Inadmissible Alien) is unauthenticated (FRE 901) and constitutes inadmissible hearsay. (FRE 802.) The document also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created, and because the document contains various and internally inconsistent dates, there is a strong indication that the document was created after-the-fact. |
| **18.** | All individuals who appear inadmissible and express a fear of return are referred to secondary for further processing.<br><br>(*See* H.E. Depo at 34:15-20; CBP 30(b)(6) Depo at 95: 2-12) | <u>Assumes facts not in evidence; mischaracterizes prior testimony; misleading (FRE 403)</u><br>Defendant mischaracterizes prior testimony, and the cited testimony does not support the fact asserted. The 30(b)(6) testimony relied on by Defendant does not support the asserted fact.  There is no mention of "all individuals" being referred to "secondary" or being "referring" anywhere "for further processing."  R. Harris Tr. 95:2-12, Ex. W.<br><br>Defendant's witness' testimony describes what a "duty would be," it does not describe what happens to "all individuals who appear inadmissible |

- 10 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | and express a fear of return." H. Elguezabal Tr. 34:15-20, Ex. M. |
| **19.** | Mr. Arredondo and A.F.A.J. were referred to what is known as secondary processing.<br><br>(*See* Plaintiff's Depo at 40:8-17, 41:21-42:1, 42:6-10, 42:19-43:4, 64:17-65:1) | <u>Assumes facts not in evidence; mischaracterizes prior testimony; misleading (FRE 403)</u><br>Defendant mischaracterizes prior testimony, and the asserted fact is therefore misleading. The cited testimony does not establish that the term "secondary processing" is "known." The term was not used by either Plaintiff in their depositions and is not generally known to the public. |
| **20.** | In secondary, CBP officers gather initial information from the individuals. This includes fingerprinting and photographs.<br><br>(*See* CBP 30(b)(6) Depo 73:9-25; H.E Depo at 120:16-22, 160:21-161:8) | <u>Assumes facts not in evidence; mischaracterizes prior testimony; misleading (FRE 403)</u><br>Defendant mischaracterizes prior testimony, and the asserted fact is therefore misleading. The cited testimony does not establish that the term "secondary" processing is "known." The term was not used by either Plaintiff in their depositions and is not generally known to the public. |
| **23.** | Through his fingerprints, it was discovered that Mr. Arredondo was previously encountered by U.S. Border Patrol agents in Laredo, Texas on or about December 10, 2006, and falsely identified himself as a | <u>Unauthenticated document (FRE 901); inadmissible hearsay (FRE 802)</u><br>The documents (Record of Sworn Statement and Form I-213 Record of Deportable/Inadmissible Alien) are unauthenticated (FRE 901) and constitute inadmissible hearsay. (FRE 802.) The documents also lack foundation as a business record for purposes of FRE 803(6). |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | Mexican citizen by the name of Esbin Fernando Ramirez-Lopez.<br><br>(*See* Long Decl. at ¶¶ 5C-D, Exs. 3-4 (Mr. Arredondo's Record of Sworn Statement and Form I-213); CBP 30(b)(6) Depo at 187:11-188:2; Plaintiff's Depo at 16:15-17:8, 18:22-24, 19:7-20) | Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created, and because the document contains various and internally inconsistent dates, there is a strong indication that the document was created after-the-fact. |
| **24.** | In 2018, prior immigration violations, including a previous unlawful entry, were considered when CBP exercised its discretionary authority to process an inadmissible noncitizen, which may result in separation of a family unit to effectuate detention.<br><br>(*See* H.N. Depo at 97:14-24, 141:18-22, 206:6-11; CBP 30(b)(6) Depo at 232:2-14) | <u>Offers unsubstantiated legal conclusions; improper opinion of lay witness (FRE 701)</u><br>This statement consists of a self-serving argument, is unsubstantiated, and is an improper legal conclusion of a lay witness. The improper and unsubstantiated legal conclusion is that CBP's authority to consider prior immigration violations when processing a noncitizen in 2018 was discretionary. |
| **25.** | Based on this prior immigration violation, which included the aggravating factors of Mr. Arredondo providing a false identity to U.S. Border Patrol, and providing a false | <u>Unauthenticated document (FRE 901); inadmissible hearsay (FRE 802)</u><br>This document (Form I-213 Record of Deportable/Inadmissible Alien) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). |

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| nationality, OFO concluded that Mr. Arredondo would be processed as an expedited removal ("ER") case.  Due to Mr. Arredondo's claim that he feared returning to his home country, the case was processed as an ER/credible fear ("ERCF") case, where his removal was put on hold pending the outcome of his credible fear determination during which time he would be detained.<br><br>(*See* Long Decl., Ex. 4; CBP 30(b)(6) Depo at 186:9-16; H.E. Depo at 173:18-174:9) | Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created, and because the document contains various and internally inconsistent dates, there is a strong indication that the document was created after-the-fact.<br><br><u>Lack of foundation (FRE 901)</u><br>There is no foundation for the asserted fact that Mr. Arredondo's immigration record justified Defendant's conduct or that it provided "aggravating factors."  The testimony relied on by Defendant does not speak to any "aggravating factors." R. Harris Tr. at 186:9-16, Ex. W; H. Elguezabal Tr. 173:18-174:9, Ex. M. Defendant has not produced any evidence concerning "aggravating factors." |
| 26. | Due to the fact that United States Immigration and Customs Enforcement ("ICE) family residential centers did not have space for a family unit with a male head of household at the time CBP processed Plaintiffs, to effect Mr. Arredondo's detention, he and A.F.A.J. had to be separated because they could not be detained together. | <u>Offers unsubstantiated legal conclusions; improper opinion of lay witness (FRE 701)</u><br>This statement is unsubstantiated and constitutes a legal argument created by Defendant's counsel who asked witnesses to speculate on what happened. It lacks any support in the record.<br><br><u>Lack of personal knowledge; speculation (FRE 602)</u><br>Defendant's Rule 30(b)(6) witness lacks firsthand knowledge concerning the asserted fact, as the witness did not |

- 13 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | (*See* CBP 30(b)(6) Depo at 186:9-16; 271:3-9) | interact with Plaintiffs or take any action in their case. Therefore, the statement is speculative.<br><br>Assumes facts not in evidence; lack of foundation (FRE 901)<br>This statement assumes facts not in evidence. Other than the entirely speculative testimony of a purported Rule 30(b)(6) witness who guessed what might have happened, but who did not interact with Plaintiffs or take any action in their case, there is no evidence that Defendant ever sought to place Plaintiffs in a family residential center, but could not find space. |
| 27. | The decision to separate was made during the initial intake process, which took place on May 16, 2018.<br><br>(*See* CBP 30(b)(6) Depo at 169:6-170:9, 187:11-188:9; H.N. Depo at 81:16-22) | Offers legal conclusions; improper opinion of lay witness (FRE 701)<br>This statement is unsubstantiated and constitutes a legal argument created by Defendant's counsel who asked witnesses to speculate on what happened. It lacks any support in the record.<br><br>Lack of personal knowledge; speculation. (FRE 602)<br>Defendant's Rule 30(b)(6) witness lacks firsthand knowledge concerning the asserted fact, as the deponent did not interact with Plaintiffs or take any action in their case. Therefore, the statement is speculative. |

- 14 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | <u>Assumes facts not in evidence; lack of foundation (FRE 901)</u><br>This statement assumes facts not in evidence. No percipient witness in this case has admitted to having made the decision to separate Plaintiffs or provided his or her reasoning as to that decision. Other than the entirely speculative testimony of a purported Rule 30(b)(6) witness who guessed what might have happened, but who did not interact with Plaintiffs or take any action in their case, there is no evidence that the decision to separate Plaintiffs was made during the initial intake process, or that it took place on May 16, 2018. |
| 28. | The policy at the Laredo Port of Entry required a GS-14 Watch Commander or equivalent to concur with the separation.<br><br>(*See* Marquez Decl. at ¶ 7, Ex. 6 (R.H. e-mail dated December 13, 2017; *see also* CBP 30(b)(6) Depo at 168:2-18) | <u>Unauthenticated document (FRE 901); inadmissible hearsay (FRE 802)</u><br>This document (Email from R.H. at CBP) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>The document also predates the separation at issue in this case or the ZTP. *See* Marquez Decl. at ¶ 7 (Dkt. 93-2). Defendant's own witnesses testified that they received a subsequent email following the announcement of the ZTP instructing them differently—that they were to separate any families arriving at the port of entry if the adult in the family |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | had any prior immigration violation or criminal history. *See* SOF ¶ 54 and Exhibit 28 attached thereto; H. Nieves Tr. 93:18-97:24 (testifying about instructions received for the Laredo port of entry following the announcement of the ZTP), Ex. L; H. Elguezabal Tr. 127:1-6 (same), Ex. M. |
| 29. | The CBP Watch Commander, on duty at the relevant time, Cynthia Rodriguez, would have provided final approval for the decision to separate Mr. Arredondo and A.F.A.J. <br><br> (*See* CBP 30(b)(6) Depo at 168:2-18, 186:17-187:1) | <u>Lack of personal knowledge; speculation (FRE 602)</u> <br> The statement declares that "Cynthia Rodriguez[] *would have* provided final approval" for separating Plaintiffs, but this statement is inherently speculative and cannot constitute a fact. Defendant's Rule 30(b)(6) witness who testified had no percipient knowledge to this fact. |
| 30. | After the initial intake process, Mr. Arredondo and A.F.A.J. were referred to secondary for further processing. <br><br> (*See* CBP 30(b)(6) Depo at 74:1-3, 159:8-10.) | <u>Lack of personal knowledge; speculation (FRE 602)</u> <br> Defendant's Rule 30(b)(6) witness lacks firsthand knowledge concerning the asserted fact, as the deponent did not interact with Plaintiffs or take any action in their case. Therefore, the statement is speculative. <br><br> <u>Assumes facts not in evidence; lack of foundation (FRE 901)</u> <br> As stated above, the term "secondary" is not "known" and was not used with Plaintiffs in this case. Further, the cited testimony does not support the asserted fact.  While the deponent |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | speaks generally about secondary processing, he does not and cannot testify to Plaintiffs' experience at the Laredo port of entry. |
| 31. | Secondary at the Laredo Port of Entry in 2018 contained ten holding cells.<br><br>(*See* CBP 30(b)(6) Depo at 77:11-14) | Lack of personal knowledge; speculation (FRE 602)<br>Defendant's Rule 30(b)(6) witness lacks firsthand knowledge concerning the asserted fact, as the deponent did not interact with Plaintiffs or take any action in their case.<br><br>Assumes facts not in evidence; lack of foundation (FRE 901)<br>The cited testimony does not support the asserted fact. While the deponent testified that "there *should* have been ten" holding cells, the witness does not and cannot testify that there were in fact ten holding cells. R. Harris Tr. 77:11-14, Ex. W. |
| 32. | Mr. Arredondo was never prosecuted nor referred for prosecution at any relevant time in this case.<br><br>(*See* CBP 30(b)(6) Depo at 292:6-293:12) | Assumes facts not in evidence; lack of foundation (FRE 901)<br>The cited testimony does not support the asserted fact. Defendant's Rule 30(b)(6) witness did not assert that Mr. Arredondo was "never prosecuted or referred for prosecution." R. Harris Tr. 292:6-293:12 (discussing prosecutions for illegal entry generally and testifying based on review of the file, not personal knowledge, that a charge of illegal entry was not warranted in this case), Ex. W. |

PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANT'S PROFFERED EVIDENCE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AND TO THE DECLARATION OF JAMES DE LA CRUZ
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **33.** | The practice at the Laredo Port of Entry was to keep a parent and child together and not effectuate a separation until the child was ready for transfer to the custody of Office of Refugee Resettlement ("ORR") at BCFS Health and Human Services formerly known as Baptist Child and Family Services ("BCFS"), in San Antonio, Texas.<br><br>(*See* CBP 30(b)(6) Depo at 257:13-258:1, H.N. Depo at 131:20-25, 162:9-15) | Not relevant (FRE 401-402)<br>The "practice at the Laredo Port of Entry" is not at issue in this litigation. Rather, what is at issue is what happened to Plaintiffs. Moreover, Mr. Arredondo testified that the purported practice is not what actually occurred in his case. E.F.A.R. Tr. 72:7-16 (testifying that he was separated from A.F.A.J. approximately six hours before she was taken from the Laredo port of entry), Ex. O. His testimony is uncontroverted by Defendant. |
| **34.** | BCFS is an independent contractor that ORR maintains a cooperative agreement with to provide housing and services to unaccompanied children or "UACs" in ORR custody.<br><br>(*See* Declaration of James De La Cruz, at 6, Ex. A (cooperative agreement). | Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)<br>This document (Cooperative Agreement) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Furthermore, it is not the only agreement between ORR and BCFS and does not purport to be the comprehensive description of those parties' relationship. |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | <u>Not relevant (FRE 401-402)</u> Whether or not BCFS has a "cooperative agreement" with ORR is irrelevant. BCFS, and its employees, acted and act as agents of Defendant, charged by Defendant with the care of children in Defendant's custody. *See* HHS 30(b)(6) J Gonzalez Tr. 19:4-19 (testifying that in 2018, in his capacity as an ORR employee, he oversaw the staff responsible for the care of children at BCFS, referring to BCFS as "our shelter"), Ex. S.<br><br><u>Offers legal conclusions; improper opinion of lay witness (FRE 701)</u> That BCFS is an independent contractor is also an improper legal conclusion, and is therefore inadmissible. |
| 35. | Mr. Arredondo and A.F.A.J. were separated ten minutes before A.F.A.J. departed from the Laredo Port of Entry to be transferred to the custody of ORR at BCFS.<br><br>(*See* A.F.A.J.'s Depo at 37:4-39:24) | <u>More prejudicial that probative (FRE 403)</u> A.F.A.J.'s testimony concerning the timing of the separation is unreliable as she was a 12-year-old traumatized and terrified child at the time the separation occurred. Mr. Arredondo, who was an adult at the time, testified that he was separated approximately six hours before he witnessed A.F.A.J. being taken from the Laredo port of entry. E.F.A.R. Tr. 72:7-16, Ex. O. |
| 36. | Since it had been determined that Mr. Arredondo and A.F.A.J. were going | <u>More prejudicial than probative; misleading and incomplete. (FRE 403)</u> |

- 19 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | to be separated, and A.F.A.J. did not have a known parent or legal guardian in the United States who could care for her, A.F.A.J. was processed as an unaccompanied child or "UAC."<br><br>(*See* CBP 30(b)(6) Depo at 270:25-271:9) | The asserted fact is unsupported by the cited testimony and is misleading as it fails to consider that A.F.A.J.'s mother and two sisters were being held together in Defendant's custody; Defendant was therefore aware that A.F.A.J. had a parent in the United States who could care for her when it wrongfully designated A.F.A.J. an "UAC." *See* Excerpt of Cleivi Marilu Jerez Lara's Credible Fear Interview Transcript, dated May 24, 2018, Ex. E. |
| 37. | The practice in Laredo was to process the minor child as a UAC before physical separation so the parent is with the child during processing and in order to meet the statutory and policy time requirements for referring and transferring custody of all UACs to ORR custody.<br><br>(*See* H.N. Depo at 36:14-18, 81:16-22; CBP 30(b)(6) Depo 133:21-134:5, 174:21-175:5, 232:2-14, 257:23-258:11) | <u>Not relevant (FRE 401-402)</u><br>The "practice in Laredo" is not at issue in this litigation, and is therefore irrelevant. What is relevant is what Defendant did to Plaintiffs at Laredo, but Defendant failed to produce any witness to these events. |
| 38. | Mr. Arredondo remained in CBP custody until May 18, 2018. | <u>Unauthenticated document (FRE 901);</u><br><u>Inadmissible hearsay (FRE 802)</u><br>This document (Custody Log) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It |

- 20 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | (*See* Long Decl. at ¶ 5C, Ex.2 (Custody Log)) | also lacks foundation as a business record for purposes of FRE 803(6). The dates on the documents Defendant produced are also internally inconsistent and unauthenticated, as we do not know who created them or when they were created. The documents produced by Defendant refer to Plaintiffs arriving on both May 16, 2018 and May 18, 2023. Mr. Arredondo testified that he was held at the Laredo port of entry for a day and a half. E.F.A.R. Tr. 75:18-20, Ex. O. Defendant failed to produce any witness who had any knowledge of the date on which Plaintiffs arrived at the Laredo Port of Entry, were taken into Defendant's custody, and were moved to other facilities. |
| **40.** | In 2018, the Laredo Port of Entry had a contract with a local franchise to provide food. (*See* H.N. Depo at 120:24-121:4) | Not relevant (FRE 401-402) The asserted fact is inadmissible because it is irrelevant to Plaintiffs' claims or Defendant's defenses. Best evidence rule (FRE 1001-1008) The best evidence rule would require that this document itself be produced, but the contract was not produced in the litigation. Assumes facts not in evidence; lack of foundation (FRE 901) The cited testimony does not establish the fact, it merely reflects what one |

- 21 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | agent "understood" to be the case. *See* H. Nieves Tr. 120:21-121:4, Ex. L. |
| **41.** | Individuals housed at the Laredo Port of Entry were provided three meals a day, as well as water, and snacks if requested.<br><br>(*See* H.N. Depo at 121:5-7, 121:11-24, 122:12-123:2; H.E. Depo at 189:16-24, 191:22-192:22) | <u>More prejudicial than probative; misleading (FRE 403)</u> This fact is misleading and inaccurate. Mr. Arredondo testified that he was not given snacks at Laredo, and that even if he did ask for snacks, the officers would not provide them. E.F.A.R. Tr. 76:10-77:9, Ex. O.<br><br><u>Lack of personal knowledge; speculation (FRE 602)</u><br>Defendant failed to produce any witness with actual knowledge of Plaintiffs' treatment at the Laredo port of entry or any witness who spoke with someone with knowledge of Plaintiffs' treatment at Laredo. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. None of Defendant's witnesses have firsthand knowledge as to whether the individuals housed at Laredo were actually provided three meals, water, and snacks if requested. |
| **42.** | Individuals held at the Laredo Port of Entry were also provided with cots or mats in their cells. | <u>Unauthenticated document (FRE 901); inadmissible hearsay (FRE 802)</u><br>This document (Custody Log) is unauthenticated (FRE 901) and is |

- 22 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | (*See* Long Decl. at ¶ 5C, Ex.2; H.E. Depo at 197:23-198:1. CBP 30(b)(6) Depo 82:5-11) | inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). <u>Lack of personal knowledge; speculation (FRE 602)</u> Defendant failed to produce any witness with actual knowledge of Plaintiffs' treatment at the Laredo port of entry or any witness who spoke with someone with knowledge of Plaintiffs' treatment at Laredo. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. None of the deponents have firsthand knowledge as to whether the individuals housed at Laredo were actually provided with cots or mats in their cells. |
| 43. | Holding cells were checked every fifteen minutes. (*See* H.E. Depo at 192:19-22; CBP 30(b)(6) Depo at 79:10-14) | <u>Lack of personal knowledge; speculation (FRE 602)</u> The cited testimony does not support that the asserted fact was true during Plaintiff's stay. Defendant failed to produce any witness with actual knowledge of Plaintiffs' treatment at the Laredo port of entry or any witness who spoke with someone with knowledge of Plaintiffs' treatment at Laredo. R. Harris Tr. 246:1-4 (testifying that the individuals he |

PLAINTIFFS' EVIDENTIARY OBJECTIONS TO DEFENDANT'S PROFFERED EVIDENCE IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AND TO THE DECLARATION OF JAMES DE LA CRUZ
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| | spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. None of Defendant's witnesses have firsthand knowledge as to whether the holding cells were actually checked every fifteen minutes. |
| **44.** On May 18, 2018, Mr. Arredondo was transferred into ICE custody.<br><br>(*See* Long Decl. at ¶ 5C, Ex.2; Declaration of Jason Lynch "Lynch Decl." at ¶ 5, Ex.1) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>The documents (Custody Log and EARM Person History for E.F.A.R.) are unauthenticated (FRE 901) and constitute inadmissible hearsay. (FRE 802.) They also lack foundation as business records for purposes of FRE 803(6).<br><br>Moreover, the documents produced by Defendant refer to Plaintiffs as arriving on May 16, 2018 and May 18, 2018. Because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact. |
| **45.** On May 17, 2018, A.F.A.J. was admitted to BCFS in San Antonio, | <u>Unauthenticated document. (FRE 901); inadmissible hearsay (FRE 802)</u><br>This document (Initial Intake Assessment) is unauthenticated (FRE |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | Texas, and transferred to the custody of ORR.<br><br>(*See* A.F.A.J.'s Depo 42:19-25; *see also* Declaration of Kevin Duvall "Duvall Decl." at ¶ 3, Ex. 2 (Initial Intake Assessment)) | 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as business records for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact. |
| 46. | BCFS is an emergency shelter and one of ORR's least restrictive environments.<br><br>(*See* Marquez Decl. at ¶ 5, Ex. 4 (HHS 30(b)(6) Depo) at 29:2-10) | <u>Not relevant (FRE 401-402); more prejudicial than probative; misleading (FRE 403)</u><br>This asserted fact is incomplete and highly misleading, since BCFS is a massive organization that consists of multiple shelters and multiple foster homes. Moreover, it is not relevant to Plaintiffs' claims or Defendant's defenses. |
| 47. | In 2018, upon a UAC's arrival, BCFS would begin the preliminary intake assessment.<br><br>(*See* HHS 30(b)(6) Depo at 79:1-6, 17-23) | <u>Lack of foundation; speculation (FRE 602)</u><br>This statement is not a factual assertion but instead speculation of what "would" potentially happen.<br><br><u>Assumes facts not in evidence; lack of foundation (FRE 901)</u><br>The cited testimony does not establish which kind of BCFS facility was being discussed, nor does it support the asserted fact that BCFS began |

- 25 -

|  | **Defendant's Statement of Undisputed Facts** | **Grounds for Plaintiffs' Objection** |
|---|---|---|
|  |  | preliminary intake assessments at the time a child arrived. |
| **48.** | This preliminary intake assessment determines whether that emergency shelter is the appropriate place to house the minor considering the minor's physical and emotional state.<br><br>(*See* HHS 30(b)(6) Depo at 80:15-19) | Mischaracterizes prior testimony, confusion of issues (FRE 403) Defendant's Rule 30(b)(6) witness testified that the purpose of the "72-hour intake assessment" is to "determine if a child is in visible distress, injured; uncontrollably sad or in any direction . . . [i]f the child is obviously sick, has a high temperature of 106. . . . we are going to proceed with our standard operating procedures." J. Gonzalez Tr. 80:7-81:2, Ex. E. The case manager responsible to A.F.A.J. during the time she was held at BCFS testified that "during that initial intake assessment, we cover rules and expectations. And that was pretty much it." G. Alvarez-Ramos Tr. 50:8-20, Ex. Q. |
| **49.** | ORR's standard operating procedures require a full assessment of the child's mental, physical, social background so that the child can have a successful stay in a shelter.<br><br>(*See* HHS 30(b)(6) Depo at 80:24-81:6) | Mischaracterizes prior testimony; confusion of issues (FRE 403) Defendant's 30(b)(6) representative described this "full assessment" as designed to identify children who hear voices encouraging them to kill others, children have a "heightened medical situation," and children who are being held with their alleged smuggler. The testimony did not say that the assessment was to ensure "that the child can have a successful stay." Gonzalez Tr. 81:24-83:25, Ex. E. |

- 26 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **50.** | After the preliminary assessment, an individual service plan is prepared for the child, which includes individual counseling and group counseling, each occurring once a week.<br><br>(*See* HHS 30(b)(6) Depo at 86:22-25, 87:4-25, 88:19-25) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is misleading because A.F.A.J. testified that she did not receive any therapy or counseling while at BCFS. SOF ¶ 144.<br><br><u>Lack of personal knowledge; speculation (FRE 602)</u><br>The asserted fact is speculative. Defendant failed to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone with personal knowledge of how A.F.A.J. was treated at BCFS. *See* Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; G. Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. |
| **51.** | ORR policy allows children to call their families at least twice a week. This doesn't include calls that may be needed to obtain reunification information. Also, if a child is in | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is misleading because A.F.A.J.'s testimony and evidence in the record establishes that in this case, she was only able to speak to her father once during the time Defendant held her at BCFS; that call happened weeks after her arrival at |

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| distress he/she may be provided with additional phone calls to family.<br><br>(*See* HHS 30(b)(6) Depo at 89:14-90:11) | BCFS. SOF ¶¶ 156-57. A.F.A.J. also testified that she first spoke with her mother several weeks after Defendant transported A.F.A.J. to BCFS. SOF ¶ 155.<br><br><u>Lack of personal knowledge; speculation (FRE 602)</u><br>The asserted fact is also speculative. Defendant failed to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone who has personal knowledge of how A.F.A.J. was treated at BCFS. *See* Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. |
| **52.** The process of reunification begins as soon as the child comes into ORR custody.<br><br>(*See* HHS 30(b)(6) Depo at 105:13-19) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is speculative and not relevant to this case. The evidence is uncontroverted that Defendant never undertook steps to reunify A.F.A.J. with her father. Reunification was achieved only after multiple court orders and intervention by counsel and elected officials. |

- 28 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **53.** | ORR's reunification checklist must be completed before a child is released into a sponsor' custody.<br><br>(*See* Duvall Decl. ¶ 4, Ex. 3 (Reunification Checklist)) | Unauthenticated document. (FRE 901); inadmissible hearsay (FRE 802) This document (Reunification Checklist) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Assumes facts not in evidence; lack of foundation (FRE 901) The document does not support the fact asserted. The existence of a reunification checklist, Duvall Decl. ¶ 4, Ex. 3, says nothing of whether such a "reunification checklist must be completed before a child is released into a sponsor' custody." |
| **54.** | In 2018, the average length of stay in ORR custody was 60 days.<br><br>(*See* HHS 30(b)(6) Depo at 114:2-5) | Not relevant (FRE 401-402) The average length of stay in ORR custody is not relevant to Plaintiffs' claims or Defendant's defenses.<br><br>More prejudicial than probative; misleading (FRE 403) The asserted fact is unclear and misleading. It is unclear whether the testimony cited by Defendant refers to the average length of time children stayed at all ORR shelters, all BCFS shelters, all BCFS foster homes or something else. It is also unclear what point in time in 2018 the purported average reflects. Moreover, the case manager responsible for A.F.A.J.'s care during the time she was held at |

- 29 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | BCFS was unable to provide an average length of stay for children at BCFS. *See* G. Alvarez-Ramos Tr. 254:18-259:11, Ex. Q. |
| 55. | Once a child's case is approved for release, the child should be released within 72 hours.<br><br>(*See* HHS 30(b)(6) Depo at 132-7-16) | <u>Lack of personal knowledge; speculation (FRE 602)</u><br>The statement is not a factual assertion but is instead one person's speculation as to what "should" occur. |
| 56. | A.F.A.J. had her own individualized service plan.<br><br>(*See* Duvall Decl. ¶ 2, Ex.1 (Individual Service Plan)) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Individualized Service Plan) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br><u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is misleading. The existence of a document titled "Individual Service Plan," Duvall Decl. ¶ 2, Ex. 1, does not establish that said document was individualized for A.F.A.J. Defendant's 30(b)(6) witness and the case manager responsible for A.F.A.J.'s care during the time she was held at BCFS both testified that the document Defendant cites to reflects the "minimum" services available to a child in ORR's custody. SOF ¶ 137. |

- 30 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **59.** | A.F.A.J. testified that she found her bed at BCFS comfortable.<br><br>(*See* A.F.A.J. Depo at 45:3-4) | <u>Mischaracterizes prior testimony; misleading (FRE 403)</u><br>Defendant mischaracterizes prior testimony, and the asserted fact is therefore misleading. The statement implies that A.F.A.J. was comfortable in ORR custody at BCFS or that she was not suffering from sleep problems caused by Defendant's forcible separation of A.F.A.J. from her father. However, A.F.A.J. testified that she had difficulty sleeping at BCFS. SOF ¶ 153. |
| **63.** | While at BCFS, A.F.A.J. watched movies, played board games, made friends, and played football and baseball.<br><br>(*See* A.F.A.J. Depo at 46:21-47:16) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is misleading because it implies that A.F.A.J. was happy or enjoyed her time in custody at BCFS. However, testimony by A.F.A.J. and Mr. Arredondo, along with evidence produced by Defendant, shows that during the time she was held at BCFS, A.F.A.J. had difficulty sleeping, felt anxious and desperate, missed her family, and reported to BCFS that was very sad and worried. SOF ¶ 145-46, 153, 175. |
| **64.** | A.F.A.J. was able to take showers every night at BCFS.<br><br>(*See* A.F.A.J. Depo at 47:3-6) | <u>Assumes facts not in evidence; lack of foundation (FRE 901)</u><br>The cited testimony does not support the fact asserted. A.F.A.J. testified that she was able to take showers during the time she was held at BCFS, and that when she took showers it was at night. She did not testify that she was |

- 31 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | "able to take showers every night at BCFS." |
| 65. | A.F.A.J. was able to speak to her mother and cousin while at BCFS.<br><br>(*See* A.F.A.J. Depo at 47:17-24) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact implies that A.F.A.J. was able to speak with her mother and cousin throughout her time detained in ORR custody or that the alleged ORR policy regarding phone calls with families was followed. However, this statement is misleading because A.F.A.J. testified that she first spoke with her mother *several weeks* after Defendant transported A.F.A.J. to BCFS. SOF ¶ 155. |
| 67. | A.F.A.J. spoke to her father while at BCFS and learned he was in detention.<br><br>(*See* A.F.A.J. Depo at 48:8-14; Plaintiff's Depo at 99:19-22) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact implies that A.F.A.J. spoke with her father more than once while detained in ORR custody at BCFS or that the ORR policy regarding phone calls with families was followed. However, this statement is misleading because A.F.A.J.'s testimony and evidence in the record establish that she was only able to speak to her father *once* during the time Defendant held her at BCFS; that call happened weeks after her arrival at BCFS. SOF ¶¶ 156-57. |
| 68. | A.F.A.J. testified that she felt safe at the shelter. | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (BCFS satisfaction survey) is unauthenticated (FRE 901) |

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| (*See* A.F.A.J. Depo at 48:25-49:1; *see also* Duvall Decl. ¶ 5, Ex.4 (BCFS satisfaction survey)) | and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). |
| | More prejudicial than probative; misleading (FRE 403) |
| | The asserted fact is misleading and incomplete. The BCFS satisfaction survey was prepared *by the case manager* assigned to A.F.A.J.'s care during the time she was held at BCFS—not by A.F.A.J. *See* Duvall Decl. ¶ 5, Ex.4; *see also* A.F.A.J. Tr. 51:8-12 (testifying only that she completed her name at the bottom). Additionally, the cited portion of A.F.A.J.'s testimony supports only that A.F.A.J. felt physically safe; it ignores A.F.A.J.'s testimony about her emotional and mental state. *See* SOF ¶ 145-46, 153, 175. |
| **69.** A.F.A.J. was never punished at the shelter.<br><br>(*See* A.F.A.J. Depo at 49:2-4) | Not relevant (FRE 401-402)<br>Whether A.F.A.J. was ever punished at the shelter has no bearing on Plaintiffs' claims and Defendant's motion. |
| | More prejudicial than probative; misleading (FRE 403)<br>The asserted fact is also misleading as it does not explain what constitutes "punishment." Nevertheless, A.F.A.J. never engaged in any conduct for which punishment would or should have been considered. |

- 33 -

|  | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **70.** | A.F.A.J. learned from her case manager Glorimar that she would be reunited with her mother and sisters. Glorimar was nice to A.F.A.J. and A.F.A.J. testified that she felt comfortable discussing any problems with her.<br><br>(*See* A.F.A.J. Depo at 51:23-52:13) | <u>More prejudicial than probative; misleading (FRE 403.)</u><br>The asserted fact is incomplete and therefore misleading as Defendant ignores A.F.A.J.'s additional testimony on this issue, which provides greater context. A.F.A.J. Tr. 94:4-14 (testifying that she did not trust her case manager and only felt that she could speak to the case manager about things she needed, not how she felt), Ex. N. |
| **71.** | A.F.A.J.'s reunification checklist was completed and signed by her case manager on June 5, 2018.<br><br>(*See* Duvall Decl. ¶ 4, Ex. 3) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Family Reunification Checklist) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). |
| **72.** | On June 8, 2019, ORR approved the release of A.F.A.J. to her mother.<br><br>(*See* Duvall Decl. ¶ 6, Ex. 5 (UAC straight release approval)) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Email re: straight release approval) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). |
| **73.** | One June 9, 2018, A.F.A.J. was released from ORR custody to her mother in Los Angeles, California. | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Verification of Release) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a |

- 34 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | (*See* Duvall Decl. ¶ 7, Ex. 6 (Verification of Release)) | business record for purposes of FRE 803(6). |
| **74.** | On May 18, 2018, Mr. Arredondo was transferred to the Rio Grande Detention Center.<br><br>(*See* Lynch Decl. ¶ 5, Ex.1; Marquez Decl. ¶ 4, Ex. 3 (ICE 30(b)(6) Depo) at 44:7-45:24) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (EARM Person History for E.FA.R.) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact. |
| **75.** | The Rio Grande Detention Center is used by ICE.<br><br>(*See* ICE 30(b)(6) Depo at 48:4-11) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is incomplete and therefore misleading. The Rio Grande Processing Center, its actual name, is a privately owned, for-profit detention facility whose clients are ICE and the U.S. Marshals Service. Defendant's 30(b)(6) witness testified that the Rio Grande Detention Center is "used by the U.S. Marshals and ICE ERO." M. Burke Tr. 48:4-11, Ex. T. The Rio Grande Detention Center was used by the Marshals for "pretrial inmates." *Id.* 57:16-58:6. |

- 35 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **76.** | In 2018, there were a higher number of detainees in Rio Grande than usual, but Rio Grande was still within its capacity limits and there was no overcrowding problem.<br><br>(*See* ICE 30(b)(6) Depo at 65:20-66:9) | <u>Lack of personal knowledge; speculation (FRE 602)</u><br>Defendant's 30(b)(6) witness does not have firsthand knowledge of the crowding conditions at Rio Grande. She testified that she was unfamiliar with how population was tracked at the Rio Grande Detention Center and did not review historical data in preparing for her deposition. M. Burke Tr. 66:11-23, Ex. T. In fact, Mr. Arredondo actually testified that the room he was held in at the Rio Grande Detention Center was overcrowded. *See* SOF ¶ 171. |
| **77.** | In 2018, the Rio Grande Detention Center had an open housing layout for noncitizens, which is an open bay area that can hold 50-100 detainees.<br><br>(*See* ICE 30(b)(6) Depo at 60:1-7, 60:20-61:2, 61:7-17) | <u>Assumes facts not in evidence; lack of personal knowledge; speculation. (FRE 602)</u><br>The cited testimony does not support the fact asserted. Defendant's 30(b)(6) witness testified that "*many* of our facilities have an open bay are . . . which *can* hold between 50 and a hundred detainees. . . . it varies by facility." M. Burke Tr. 61:9-13 (emphasis added), Ex. T. However, she does not have firsthand knowledge of the facility.<br><br>Further, the cited testimony does not support the asserted fact that the individuals held were all noncitizens. Defendant's 30(b)(6) witness testified that she did not know what portion of the open housing space was occupied by noncitizens. *Id.* 61:3-6. |

- 36 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **80.** | On May 18, 2018, Mr. Arredondo arrived at the Rio Grande Detention Center and he was able to call his wife's niece.<br><br>(*See* Plaintiff's Depo at 84:22-85:15; *see also* Lynch Decl. ¶ 6b, Ex. 3 (Rio Grande Detainee Orientation Acknowledgement)) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Detainee Orientation Acknowledgement) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact. |
| **81.** | His wife's niece informed him about his wife's whereabouts.<br><br>(*See* Plaintiff's Depo at 82:19-83:12, 84:22-85:15; Lynch Decl. ¶ 6b, Ex. 3) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is misleading because it omits that his wife's niece was unable to provide him with A.F.A.J.'s whereabouts. *See* E.F.A.R. Tr. 85:2-10, Ex. O. |
| **82.** | On May 18, 2018, Mr. Arredondo was provided with bedding, personal hygiene products, and clothing.<br><br>(*See* Lynch Decl. ¶ 6a, Ex. 2 (Rio Grande Property Receipt); Plaintiff's Depo at 87:5-13; ICE 30(b)(6) 80:14-81:2) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Rio Grande Property Receipt) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). |

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| | <u>Lack of personal knowledge; speculation (FRE 602)</u><br>Defendant's 30(b)(6) witness lacks firsthand knowledge as she did not personally interact with Mr. Arredondo or speak with anyone with knowledge of the conditions of Mr. Arredondo's confinement. However, despite her lack of personal knowledge, she testified that he was issued personal hygiene product, which is speculative. *See* M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T. |
| **84.** | Mr. Arredondo participated in activities such as religious services.<br><br>(*See* Plaintiff's Depo at 87:16-22) | <u>Mischaracterizes prior testimony; misleading (FRE 403)</u><br>This asserted fact mischaracterizes Mr. Arredondo's prior testimony. Mr. Arredondo testified that the only activity in which he participated was religious services. He did not participate in activities (plural) "such as" religious activities. |
| **86.** | Mr. Arredondo was able to take showers at Rio Grande Detention Center.<br><br>(*See* Plaintiff's Depo at 104:25-105:4) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is misleading because it implies that Mr. Arredondo was able to take showers at will, which is unsupported by any evidence. |

- 38 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **88.** | Other than getting his molar removed, Mr. Arredondo did not have any other physical health issues in Rio Grande.<br><br>(*See* Plaintiff's Depo at 90:10-22) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is false, incomplete and therefore misleading. Mr. Arredondo testified that he had many other health issues. He did not tell anyone or receive treatment for his health issues, and physical symptoms of the anxiety manifested later (at other detention centers). E.F.A.R. Tr. 90:10-22, Ex. O. |
| **89.** | On or about May 23, 2018, Mr. Arredondo submitted a detainee request form for information about A.F.A.J.'s whereabouts.<br><br>(*See* Lynch Decl. ¶ 6c, Ex.4 (Detainee Request Form); Plaintiff's Depo 94:12-97:15) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Detainee Request Form) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact. |
| **90.** | The detainee request form reflects that Mr. Arredondo learned of A.F.A.J.'s whereabouts on May 23, 2018. On or about May 30, 2018, Mr. | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Detainee Request Form) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). |

- 39 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | Arredondo received a telephone call from A.F.A.J.<br><br>(*See* Lynch Decl. ¶ 6c, Ex.4 (Detainee Request Form); Plaintiff's Depo at 99:19-22) | Assumes facts not in evidence; lack of foundation (FRE 901)<br>The citations to the record do not support the asserted fact that Mr. Arredondo "learned of" anything in response to his request about A.F.A.J.'s whereabouts. The cited record only shows he made a request for that information. Further, Mr. Arredondo testified that he did not receive any response to his request for information about A.F.A.J.'s whereabouts. E.F.A.R. Tr. 97:18-98:2, Ex. O. |
| 91. | On June 1, 2018, Mr. Arredondo received a detainee transfer notification informing him that he was being transferred to the Stewart Detention Center in Lumpkin, Georgia.<br><br>(*See* Lynch Decl. ¶ 6d, Ex. 5 (Detainee Transfer Notification)) | Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)<br>This document (Detainee Transfer Notification) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact.<br><br>Assumes facts not in evidence; lack of foundation (FRE 901)<br>Though Mr. Arredondo's signature is on the document, the citation to record |

- 40 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | does not support or establish the asserted fact that Mr. Arredondo *received* the detainee transfer notification. He testified that he was never given this document while in detention. |
| 92. | On June 4, 2018, Mr. Arredondo was transferred to the Stewart Detention Center, in Lumpkin, Georgia, by airplane.<br><br>(*See* Lynch Decl. ¶ 5, Ex.1; ICE 30(b)(6) Depo at 44:7-10, 46:2-17, 93:4-11; Plaintiff's Depo at 92:4-7) | <u>Unauthenticated document (FRE 901);</u> <u>Inadmissible hearsay (FRE 802)</u><br>This document (EARM Person History for E.F.A.R.) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact.<br><br><u>Lack of personal knowledge;</u> <u>speculation (FRE 602)</u><br>Defendant's 30(b)(6) witness does not have firsthand knowledge of the circumstances of Mr. Arredondo's transfer to Stewart Detention Center nor did she speak to anyone with personal knowledge to prepare for her testimony. Defendant was unable to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody. Further, |

- 41 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | Mr. Arredondo was not asked in his deposition about when he was transferred to Stewart Detention Center. The dates referenced are therefore unverified and disputed. |
| 93. | Pursuant to ICE policy, restraints are used during transfer for safety.<br><br>(*See* ICE 30(b)(6) 95:18-20) | <u>Assumes facts not in evidence; lack of foundation (FRE 901)</u><br>The cited testimony does not support the fact asserted. Defendant's 30(b)(6) witness testified that "generally" restraints are used, but the "the officers always have discretion" about using restraints. M. Burke Tr. 95:13-20, Ex. T. |
| 94. | Mr. Arredondo was transferred to the Stewart Detention Center because it was large, and a dedicated ICE facility, and had space for new intakes to decompress the Rio Grande Detention Center because it was experiencing higher than usual population levels.<br><br>(*See* ICE 30(b)(6) Depo at 85:22-86:9; 91:19-25) | <u>Lack of personal knowledge; speculation (FRE 602)</u><br>Defendant's 30(b)(6) witness had no personal knowledge of Mr. Arredondo's detention nor did she speak to anyone with personal knowledge to prepare for her testimony. M. Burke Tr. 19:14-20, Ex. T. Defendant has offered no evidence to support the assertion, nor any witness involved in the transfer decision. The cited testimony speculates as to the reason that Mr. Arredondo was transferred. |
| 95. | Another factor that went into the decision to transfer Mr. Arredondo was the fact that he was being | <u>Lack of personal knowledge; speculation (FRE 602)</u><br>Defendant's 30(b)(6) representative had no personal knowledge of Mr. Arredondo's detention nor did she |

- 42 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | processed for expedited removal, and therefore did not have a case pending before an immigration judge in a particular venue.<br><br>(*See* ICE 30(b)(6) Depo at 86:10-87:4) | speak to anyone with personal knowledge to prepare for her testimony. M. Burke Tr. 19:14-20, Ex. T. Defendant has offered no evidence to support the assertion, nor any witness involved in the transfer decision. The cited testimony speculates as to the reason that Mr. Arredondo was transferred. |
| 96. | ICE officers consider many factors when deciding to make a transfer including, but not limited to, detention space, location of the facility, and whether the detainee has family or legal counsel in the area.<br><br>(*See* ICE 30(b)(6) 87:20-88:6, 90:13-91:6) | <u>Not relevant (FRE 401-402)</u><br>The asserted fact is not relevant to Plaintiffs' claims or Defendant's defenses. What ICE officers may do generally is not at issue in this action.<br><br><u>Lack of personal knowledge; speculation (FRE 602)</u><br>This asserted fact speculates as to the factors that ICE officers consider in transferring a detainee. Defendant's ICE representative had no personal knowledge of Mr. Arredondo's detention nor did she speak to anyone with personal knowledge to prepare for her testimony. M. Burke Tr. 19:14-20, Ex. T. Defendant has offered no evidence to support the assertion, nor any witness involved in the transfer decision. |
| 97. | During the three-hour plane flight from Rio Grande to Stewart Detention Center, Mr. Arredondo was provided with a sandwich and water. | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The fact is misleading and incomplete, as it omits the fact that Mr. Arredondo could not drink the water bottle. He was physically unable to open and |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | (*See* Plaintiff's Depo at 92:12-21) | drink the water bottle due to his shackles. E.F.A.R. Tr. 92:12-21, Ex. O. |
| 99. | In 2018, Stewart Detention Center did not experience overcrowding.<br><br>(*See* ICE 30(b)(6) 104:9-11) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is misleading, as the cited testimony only states that Stewart did not have an overcrowding problem in June 2018, specifically—not all of 2018.<br><br><u>Lack of personal knowledge; speculation. (FRE 602)</u><br>The asserted fact is speculative. Defendant's 30(b)(6) representative testified that she did not review historical data about the population levels at Stewart Detention Center in preparing for her deposition. M. Burke Tr. 104:25-105:11, Ex. T. |
| 102. | In 2018, each general population housing unit had restroom facilities and showers that could be used by detainees at any time.<br><br>(*See* ICE 30(b)(6) 105:22-106:8, 106:15-16) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is unclear and therefore misleading because it does not specify which detention center is being referenced. It is also misleading because it omits the fact that Mr. Arredondo had to get in line to use the shower or bathroom. *See* E.F.A.R. Tr. 105:1-4, Ex. O.<br><br><u>Lack of personal knowledge; speculation (FRE 602)</u><br>Not only does the testimony cited by Defendant not support the fact |

- 44 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | asserted, but Defendant's 30(b)(6) witness also lacked firsthand knowledge about the detention facilities. She testified using generalities, stating that it was "dependent on many factors. But generally speaking, detainees can use facilities when they need them." M. Burke Tr. 106:9-16, Ex. T. |
| 105. | At Stewart Detention Center, Mr. Arredondo claimed he was feeling ill, but had no noticeable symptoms.<br><br>(*See* Plaintiff's Depo 107:6-17) | <u>Mischaracterizes prior testimony;</u> <u>misleading (FRE 403)</u><br>The asserted fact mischaracterizes Mr. Arredondo's testimony. Mr. Arredondo testified that he "had allergies due to nervousness" and that his "hair would be falling off." E.F.A.R. Tr. 107:6-17, Ex. O.<br><br>However, there is no indication from the citation that these symptoms were not "noticeable" on the basis that they were not visible but rather that they were not noticeable because he was not in contact with many people. *See id.* 107:11-13. |
| 106. | Mr. Arredondo never asked for medical treatment at the Stewart Detention Center.<br><br>(*See* Plaintiff's Depo 105:23-25) | <u>More prejudicial than probative;</u> <u>mischaracterizes prior testimony;</u> <u>misleading (FRE 403)</u><br>The asserted fact is misleading and mischaracterizes Mr. Arredondo's prior testimony. Mr. Arredondo testified that although he was visibly ill, he did not seek treatment at Stewart out of fear because detainees who sought treatment risked being put into isolation for long periods of time, |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | causing them to miss their interviews and prolonging their detention. E.F.A.R. Tr. 105:23-106:24, Ex. O; *see also* SOF ¶¶ 183-91. |
| 107. | On June 15, 2018, Mr. Arredondo was transferred to Folkston Immigration Processing Center so that he could receive his credible fear interview more efficiently.<br><br>(*See* Lynch Decl. ¶ 5, Ex. 1; ICE 30(b)(6) Depo at 44:7-10, 46:2-17, 47:2-5,126:4-18) | <u>Unauthenticated document (FRE 901); inadmissible hearsay (FRE 802)</u><br>This document (EARM Person History for E.F.A.R.) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact.<br><br><u>More prejudicial than probative; misleading (FRE 403)</u><br>Defendant's characterization of the interview as a "credible fear interview" and that the reason for transfer was for "efficiency" is misleading. ICE offered detainees credible fear interviews over the telephone—their physical locations were irrelevant. If efficiency had been important, Mr. Arredondo would have been provided with a credible fear interview when he arrived at the Laredo Port of Entry. Moreover, when ICE provided Mr. Arredondo with |

- 46 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | what it called a "credible fear interview," it was performed in an unlawful manner, adjudicating not just his fear but the merits of an asylum claim. There was no reason for a transfer to Folkston. *Compare* SOF ¶ 202 and Exhibit 29 attached thereto *with* Ex. E.<br><br>Lack of personal knowledge; speculation (FRE 602)<br>This statement is inadmissible because Defendant's 30(b)(6) witness lacked personal knowledge to support this assertion, nor did she speak with anyone who had personal knowledge of Mr. Arredondo while he was detained at Stewart or Folkston. M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T. |
| **108.** | In 2018, the Folkston Immigration Processing Center was similar to both the Rio Grande and Stewart Detention Centers in that it had open housing units, medical facilities, and recreation facilities.<br><br>(*See* ICE 30(b)(6) 138:4-10) | Assumes fact not in evidence; lack of personal knowledge; speculation (FRE 602)<br>The cited testimony does not support the fact asserted. Further, the statement is inadmissible because Defendant's 30(b)(6) witness lacked personal knowledge to support this assertion, nor did she speak with anyone who had personal knowledge of Mr. Arredondo while he was detained at Rio Grande, Stewart, or Folkston. *See* M. Burke Tr. 19:14-20 |

- 47 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T. She also had no personal knowledge of Folkston. *See id.* 137:10-138:16. |
| **109.** | In 2018, Folkston Immigration Processing Center had bunk beds.<br><br>(*See* ICE 30(b)(6) 138:17-20) | <u>Assumes fact not in evidence; lack of personal knowledge; speculation (FRE 602)</u><br>The cited testimony does not support the fact asserted. Further, this statement is inadmissible because Defendant's 30(b)(6) witness lacked personal knowledge of Folkston, so her testimony about whether Folkston had bunk beds is speculation. *See* M. Burke Tr. 137:10-138:20, Ex. T. |
| **110.** | In 2018, Folkston Immigration Processing Center had toilets, sinks, and showers in the housing unit.<br><br>(*See* ICE 30(b)(6) 140:12-15) | <u>Assumes fact not in evidence; lack of personal knowledge; speculation (FRE 602)</u><br>The cited testimony does not support the fact asserted. Further, this statement is inadmissible because Defendant's 30(b)(6) witness had no personal knowledge of Folkston. She speculated that the showering facilities would be similar to other detention centers but acknowledged that they "vary by facility and it varies over time at each facility." She further testified that she did not know what the bathing facilities were like in the Folkston Detention Center during the |

- 48 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | period in question. *See* M. Burke Tr. 140:12-141:19, Ex. T. |
| **113.** | On June 16, 2018, Mr. Arredondo was provided with bedding, clothing, and personal hygiene products at Folkston.<br><br>(*See* Lynch Decl. ¶ 6g, Ex. 8 (Folkston Property Receipts)) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Folkston Property Receipt) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). |
| **117.** | During the two and a half weeks, Mr. Arredondo was at Folkston, he was able to contact his family approximately five times.<br><br>(*See* Plaintiff's Depo 117:4-16) | <u>Mischaracterizes prior testimony; misleading (FRE 403)</u><br>The asserted fact mischaracterizes Mr. Arredondo's testimony. Mr. Arredondo testified that he could not recall how many times he spoke with his family. Defendant asked if it could have been five times, to which Mr. Arredondo testified that was possible, but that he could not recall. *See* E.F.A.R. Tr. 117:4-17, Ex. O. |
| **118.** | Mr. Arredondo did not ask for medical treatment at Folkston Immigration Processing Center.<br><br>(*See* Plaintiff's Depo 120:5-7) | <u>Mischaracterizes prior testimony; misleading (FRE 403)</u><br>The asserted fact mischaracterizes Mr. Arredondo's prior testimony and is misleading. Mr. Arredondo testified that he did not seek treatment at Folkston for the same reason he had not sought treatment at Stewart Detention Facility—out of fear because detainees who sought treatment were put into isolation and risked missing their interviews and |

- 49 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | prolonging their detention. *See* E.F.A.R. Tr. 120:5-10, Ex. O; *see also id.* 105:23-106:24; SOF ¶¶ 183-91. |
| **119.** | On June 19, 2018, Mr. Arredondo had his credible fear interview over the telephone with an interpreter present.<br><br>(*See* Plaintiff's Depo 123:5-13) | <u>Assumes facts not in evidence; more prejudicial than probative; misleading (FRE 403)</u><br>The cited deposition testimony does not support the fact that an interpreter was present for Mr. Arredondo's telephonic interview. *See* E.F.A.R. Tr. 123:5-13, Ex. O.<br><br>Further, it is misleading to characterize the telephone interrogation a credible fear interview. Instead, a credible fear interview is what Defendant purports the call to be. |
| **120.** | Mr. Arredondo explained why he was afraid to return to Guatemala and felt like he had enough time to explain why he was afraid.<br><br>(*See* Plaintiff's Depo 125:19-126:18) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is incomplete and therefore misleading. Mr. Arredondo was not asked in the deposition cited whether he could understand the questions asked or whether he felt ill when the interview occurred. Evidence in the record establishes that he felt that the interviewer was rushing him, he had difficulty following the questions asked, he was ignored when he asked for questions to be repeated, and he felt physically ill. SOF ¶ 201. |

- 50 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| **121.** | On June 28, 2018, Mr. Arredondo was transferred back to the Stewart Detention Center by bus.<br><br>(*See* Lynch Decl. ¶ 5, Ex.1; ICE 30(b)(6) Depo at 44:7-10, 47:6-17; Plaintiff's Depo 140:11-13) | Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)<br>This document (EARM Person History for E.F.A.R.) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact.<br><br>Lack of personal knowledge; speculation (FRE 602)<br>This asserted fact is also speculative. Mr. Arredondo was not asked in his deposition about what date he was transferred back to Stewart Detention Center.  Defendant also failed to produce any witness that had any knowledge about the circumstances of Mr. Arredondo's confinement and transfer. *See* J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no |

- 51 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V. |
| 122. | Mr. Arredondo was transferred back to Stewart Detention Center pending the outcome of his credible fear interview.<br><br>(*See* ICE 30(b)(6) 162:10-163:4) | <u>Lack of personal knowledge; speculation (FRE 602)</u><br>This statement is inadmissible because Defendant's 30(b)(6) witness had no personal knowledge of Mr. Arredondo's detention or reason for his transfer, nor did she speak with anyone who interacted with him in preparation of her testimony. Therefore, her testimony as to why Mr. Arredondo was transferred back to Stewart Detention Center is speculative. *See* M. Burke Tr. 19:14-20, 162:10-163:4, 164:4-17, Ex. T. |
| 124. | While in Stewart Detention Center this second time, prior to his removal, Plaintiff contacted his family once or twice a week.<br><br>(*See* Plaintiff's Depo 141:24-142:4) | <u>Mischaracterizes prior testimony; misleading (FRE 403)</u><br>The asserted fact mischaracterizes Mr. Arredondo's testimony. Mr. Arredondo testified that he spoke to his family "once, twice a week maximum," not that he spoke to them once or twice each week. E.F.A.R. Tr. 141:24-142:4, Ex. O. |

- 52 -

|  | **Defendant's Statement of Undisputed Facts** | **Grounds for Plaintiffs' Objection** |
|---|---|---|
| **125.** | On or about June 25, 2018, Mr. Arredondo learned over the phone from a USCIS male Immigration Analyst (through a Spanish interpreter) that the asylum officer determined that he had not established credible fear of persecution or torture.<br><br>(*See* Long Decl. ¶ 5A, Ex. 1; Plaintiff's Depo at 123:5-19, 130:18-23, 132:10-13; Pinchas Decl. ¶ 4, Ex. 3 (T.R. Depo) 261:1-20, 267:24-268:22) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Record of Negative Credible Fear Finding) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact.<br><br><u>More prejudicial than probative; misleading (FRE 403)</u><br>The asserted fact is misleading because it omits that the officer told Mr. Arredondo that the United States does not deal with cases like Mr. Arredondo's anymore. The asserted fact is also contradicted by other evidence in the record showing that his fear was in fact credible. SOF ¶ 202. Additionally, Mr. Arredondo testified that a male ICE agent informed him of the decision, not a USCIS agent. |
| **126.** | The USCIS Immigration Analyst advised Mr. Arredondo of the adverse result and asked him twice whether | <u>Assumes facts not in evidence; lack of foundation (FRE 901)</u><br>The cited testimony does not support the asserted fact. The officer deposed |

- 53 -

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | he requested review of the negative credible fear determination by an Immigration Judge.<br><br>(*See* T.R. Depo at 191:23-192:19, 299:9-10, 300:14-17) | in this case had no recollection of Mr. Arredondo or his conversation with Mr. Arredondo. *See* T. Rice Tr. 309:25-310:21, Ex. P. Mr. Arredondo testified that he could not recall being told that he could request a review of the decision, but he did recall being told that it was useless to speak with an immigration judge because immigration judges would always agree with ICE's decision. SOF ¶¶ 204-05. |
| **127.** | The "Record of Negative Credible Fear Finding and Request for Review by Immigration Judge," Form I-869, reflects that Mr. Arredondo signed the document and opted not to seek Immigration Judge review of the adverse decision.<br><br>(*See* Long Decl. ¶ 5A, Ex. 1; Plaintiff's Depo at 129:1-19; T.R. Depo at 261:1-20, 292:5-13, 294:15-20) | <u>Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802)</u><br>This document (Record of Negative Credible Fear Finding) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6).<br><br>Moreover, because Defendant failed to produce a witness who created the document or could attest to when it was created and because the document contains various and internally inconsistent dates of creation, there is a strong indication that the document was created after-the-fact.<br><br><u>More prejudicial than probative; mischaracterizes the evidence; misleading (FRE 403)</u><br>This asserted fact mischaracterizes the evidence and is misleading because it omits that during his phone call with |

| | Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|---|
| | | the ICE officer, Mr. Arredondo felt he had no choice but to opt out of Immigration Judge review because of the pressure he felt from the ICE agent. SOF ¶ 206.<br><br>Further, Mr. Arredondo testified that no one read, translated, or explained the document called "Record of Negative Credible Fear Finding" to him, that he was not given a copy of it, and he *did not* check the boxes on the form. SOF ¶ 207. |
| **129.** | Mr. Arredondo was removed on August 22, 2018 because he had a final order of removal and had waived Immigration Court review.<br><br>(*See* ICE 30(b)(6) Depo 187:16-21) | <u>More prejudicial than probative; mischaracterizes the evidence; misleading (FRE 403)</u><br>The asserted fact mischaracterizes the evidence and is misleading. It is disputed that Mr. Arredondo was removed "because he had a final order of removal and had waived Immigration Court review." A District Court has already determined that Mr. Arredondo was removed unlawfully in violation of multiple orders in the *Ms. L case*. Defendant did not appeal that determination. *See* SOF ¶ 232.<br><br>Additionally, the asserted fact omits that during his phone call with the ICE officer, Mr. Arredondo felt he had no choice but to opt out of Immigration Judge review because of the pressure he experienced from the ICE agent. *See* SOF ¶ 206. |

- 55 -

| Defendant's Statement of Undisputed Facts | Grounds for Plaintiffs' Objection |
|---|---|
| | The asserted fact also omits the legal requirements that Defendant failed to complete before Mr. Arredondo was unlawfully deported. SOF ¶¶ 85-86. |
| **130.** Before removing Mr. Arredondo, ICE considered the *Ms.L* injunction and determined that Mr. Arredondo-Rodriguez was not a class member as of August 22, 2018.<br><br>(*See* ICE 30(b)(6) Depo 193:4-21, 194:5-17) | <u>More prejudicial than probative; misleading (FRE 403)</u><br>This fact is misleading, as only Defendant made the erroneous determination that Mr. Arredondo was not a *Ms. L.* class member. In fact, a federal judge has already determined that this asserted fact is false: that Mr. Arredondo was a class member when the Ms. L. injunction was issued, and that Mr. Arredondo was unlawfully deported. *See* SOF ¶ 232. Defendant did not appeal this determination. |

## II.   EVIDENTIARY OBJECTIONS TO THE DECLARATION OF JAMES DE LA CRUZ

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
| **2.** | In 2002, Congress enacted the Homeland Security Act ("HSA"). The HSA transferred responsibility for the care of UACs from the former INS to ORR. Section 462 of the HSA, codified at 6 U.S.C. § 279, defines a UAC as "a child who - (A) has no lawful immigration status in the | <u>Not relevant (FRE 401-402)</u><br>This paragraph is not relevant to Plaintiffs' claims or to Defendant's defenses. |

- 56 -

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
| | United States; (B) has not attained 18 years of age; and (C) with respect to whom - (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). All of the functions under the immigration laws with respect to the care of UACs that were vested by statute in, or performed by, the Commissioner of INS were transferred to the ORR Director. The transfer became effective on March 1, 2003. After the transfer, ORR created the Division of Unaccompanied Children's Services ("DUCS") to handle this new program. | |
| 3. | A cooperative agreement is a legal instrument used by an executive agency to carry out a public purpose authorized by a law of the United States. Cooperative agreements contemplate substantial involvement between the government and the | <u>Not relevant (FRE 401-402)</u><br>This paragraph is not relevant to Plaintiffs' claims or to Defendant's motion.<br><br>To the extent that Defendant relies on the existence of "cooperative agreements" to argue that BCFS was an independent contractor, and therefore Defendant is not liable for BCFS's actions, that argument is unavailing. |

- 57 -

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
| | recipient of the agreement, but at the same time designate specific responsibilities to the recipient. The exact extent of the agency's involvement depends on the circumstances of each case. ORR always retains the option to immediately halt a cooperative agreement recipient's activities. The cooperative agreement mechanism was available to ORR at the time that it was given responsibility for the care of UACs (6 U.S.C. § 279(f)(1)) and was used in lieu of other funding mechanisms. | BCFS, and its employees, act as agents of Defendant, charged by Defendant with the care of children in Defendant's custody. *See* HHS 30(b)(6) J Gonzalez Tr. 19:4-19 (testifying that in 2018, in his capacity as an ORR employee, he oversaw the staff responsible for the care of children at BCFS, referring to BCFS as "our shelter"), Ex. S.<br><br>Further, the question of whether BCFS and its employees are sufficiently removed from Defendant to qualify as an independent contractor for purposes of liability is a question best left to the fact finder. *See, e.g., Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997). |
| **4.** | By statute, ORR is responsible for "identifying a sufficient number of qualified individuals, entities, and facilities to house unaccompanied [] children[.]" 6 U.S.C. § 279(b)(1)(F). ORR chose to provide shelter care services to UACs through cooperative agreements awarded to nongovernmental entities. ORR has determined that the use of grantees to | <u>Not relevant (FRE 401-402)</u><br>This paragraph is not relevant to Plaintiffs' claims or to Defendant's defenses.<br><br>That "ORR chose to provide shelter care services to UACs through cooperative agreements" awarded to nongovernmental entities does not have any relevance to the issues in this case. The nongovernmental entities that are parties to such cooperative agreements and its employees act as agents of Defendant, charged by Defendant with the care of children in Defendant's custody. *See* HHS 30(b)(6) J Gonzalez |

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
| | provide shelter care services is the most efficient means of providing such services, with the resources made available by Congress, where and when those services are needed. These facilities also provide a safe environment in the least restrictive setting appropriate for the child's needs while it attempts to unify unaccompanied children with a qualified sponsor. | Tr. 19:4-19 (testifying that in 2018, in his capacity as an ORR employee, he oversaw the staff responsible for the care of children at BCFS, referring to BCFS as "our shelter"), Ex. S. Thus, the nature of the relationship between ORR and the nongovernmental entities has no bearing in this litigation. |
| 5. | A review of Plaintiff A.F.A.J.'s UAC case file reflects that A.F.A.J. was in the legal custody of ORR from May 17, 2018 until June 9, 2018, when she was reunified with her mother. During that time, she was placed at BCFS Health and Human Services formerly known as Baptist Children and Family Services ("BCFS"), in San Antonio, Texas, an ORR-funded, independent contractor that maintains a cooperative agreement with ORR to provide housing and services to UACs. | <u>Lack of personal knowledge; speculation (FRE 602)</u><br>The declarant, De La Cruz, did not interact with A.F.A.J. or play any role in her case, and therefore the asserted facts in this paragraph are speculative and inadmissible.<br><br><u>Not relevant (FRE 401-402)</u><br>That BCFS maintains a cooperative agreement with ORR is not relevant to Plaintiffs' claims or to Defendant's defenses.<br><br>BCFS and its employees, act as agents of Defendant, charged by Defendant with the care of children in Defendant's custody. *See* HHS 30(b)(6) J Gonzalez Tr. 19:4-19 (testifying that in 2018, in his capacity as an ORR employee, he oversaw the staff responsible for the |

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
|  |  | care of children at BCFS, referring to BCFS as "our shelter"), Ex. S. |
| 6. | The ORR cooperative agreement with BCFS is attached as Exhibit A. The agreement required this program to comply with all applicable state licensing requirements, ORR policies and procedures, and the minimum standards for licensing programs established by the Flores Agreement. | Unauthenticated document (FRE 901); Inadmissible hearsay (FRE 802) This document (ORR cooperative agreement) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). Not relevant (FRE 401-402) That BCFS maintains a cooperative agreement with ORR is not relevant to Plaintiffs' claims or to Defendant's motion. BCFS and its employees, act as agents of Defendant, charged by Defendant with the care of children in Defendant's custody. *See* HHS 30(b)(6) J Gonzalez Tr. 19:4-19 (testifying that in 2018, in his capacity as an ORR employee, he oversaw the staff responsible for the care of children at BCFS, referring to BCFS as "our shelter"), Ex. S. |
| 7. | ORR did not supervise or control the day-to day operations or detailed physical performance of this program or its staff. Instead, ORR's established policy and practice, as set forth in the ORR Policy Guide in | Lack of personal knowledge; speculation (FRE 602) De La Cruz does not have firsthand knowledge of ORR's actual oversight over the specific BCFS facility that detained A.F.A.J. at the time of her detention, and therefore cannot speak to the extent of ORR's involvement in the operations of the specific BCFS facility where A.F.A.J. was detained. |

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
| | effect since 2015, was only to conduct periodic monitoring visits (at least monthly) "to ensure that care providers meet minimum standards for the care and timely release of unaccompanied [] children, and that they abide by all Federal and State laws and regulations, licensing and accreditation standards, ORR policies and procedures, and child welfare standards." ORR Unaccompanied Children Program Policy Guide, Section 5.5 (located at https://www.acf.hhs.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide). | <u>Unauthenticated document (FRE 901);</u> <u>Inadmissible hearsay (FRE 802)</u> This document (ORR Unaccompanied Children Program Policy Guide) is unauthenticated (FRE 901) and is inadmissible hearsay. (FRE 802.) It also lacks foundation as a business record for purposes of FRE 803(6). |
| 8. | ORR increases the frequency of monitoring if it is warranted by issues identified at a facility. In addition, if ORR monitoring finds a care provider to be out of compliance, ORR issues corrective action findings and requires the care provider to resolve the issue within a specified time. ORR also provides technical | <u>Not relevant (FRE 401-402)</u> ORR's general monitoring practice of care providers is not at issue in this litigation nor is it relevant to Plaintiffs' claim that A.F.A.J.'s injuries were directly caused by being forcibly separated from her father and being placed in an inadequate ORR facility for weeks.<br><br>Moreover, ORR's general monitoring policy is not relevant to determining whether BCFS staff's actions can be attributed to Defendant for FTCA |

Case 2:22-cv-02845-JLS-JC   Document 118   Filed 01/19/24   Page 63 of 66   Page ID #:7934

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
| | assistance, as needed, to ensure that deficiencies are addressed. | liability, which is a fact-intensive inquiry made by the finder of fact. *See, e.g.*, *Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997). |
| 9. | Periodic monitoring to ensure compliance with established standards does not give ORR the ability to supervise or control the day-to-day operations or detailed physical performance of the program's staff, nor does ORR attempt to do so. That is what ORR pays this program to do through its grant award, and it is the program's obligation under its cooperative agreement. | <u>Not relevant (FRE 401-402)</u><br>ORR's general monitoring practice of care providers is not at issue in this litigation nor is it relevant to Plaintiffs' claim that A.F.A.J.'s injuries were directly caused by being forcibly separated from her father and being placed in an inadequate ORR facility for weeks.<br><br>Moreover, ORR's general monitoring policy is not relevant to determining whether BCFS staff's actions can be attributed to Defendant for FTCA liability, which is a fact-intensive inquiry made by the finder of fact. *See, e.g.*, *Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997). |
| 10. | Section IV.H of the cooperative agreement, which sets out ORR's responsibilities, merely provided for ORR's monitoring of the programs' operations. This included confirming the project plan, submitting and/or reviewing project expenditures, participating in telephone status meetings (monthly or as ORR | <u>Not relevant (FRE 401-402)</u><br>ORR's general responsibilities pursuant to the cooperation agreement is not relevant to Plaintiffs' claim that A.F.A.J.'s injuries were directly caused by being forcibly separated from her father and being placed in an inadequate ORR facility for weeks.<br><br>Moreover, ORR's general responsibilities as laid out in the agreement is not relevant to determining whether BCFS staff's actions can be attributed to Defendant |

- 62 -

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
|  | otherwise required), keeping the program apprised of policy developments, reviewing and approving program's Sub-awards to other organizations, reviewing and approving resumes of key personnel, reviewing policies and procedures for the program, providing training and technical assistance as needed, and reviewing written requests to deviate from the project plan or approved budget. These responsibilities are consistent with ORR's limited role set forth in its Policy Guide as described above. | for FTCA liability, which is a fact-intensive inquiry made by the finder of fact. *See, e.g.*, *Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997). |
| 11. | The cooperative agreement only required ORR to conduct monitoring activities to ensure compliance with the Flores Settlement Agreement, pertinent federal laws and regulations and the ORR policies and procedures for the UAC program.  Those activities included desk monitoring, which is oversight from ORR headquarters involving regular record | <u>Not relevant (FRE 401-402)</u><br>ORR's general monitoring requirements under the cooperation agreement is not relevant to Plaintiffs' claim that A.F.A.J.'s injuries were directly caused by being forcibly separated from her father and being placed in an inadequate ORR facility for weeks.<br><br>Moreover, ORR's monitoring responsibilities as laid out in the agreement is not relevant to determining whether BCFS staff's actions can be attributed to Defendant for FTCA liability, which is a fact- |

- 63 -

| ¶ | Declaration of James De La Cruz | Grounds for Plaintiffs' Objection |
|---|---|---|
| | reviews and regular calls with care provider Program Directors. They also included announced and unannounced on-site visits.  The agreement required the program to provide residential services for UACs by implementing the activities described in its approved application. ORR had no right under the cooperative agreement to supervise, terminate, direct, or interfere with the employment of any program staff. | intensive inquiry made by the finder of fact. *See, e.g.*, *Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997). |

Dated: <u>January 19, 2024</u>          Respectfully Submitted,

**MILBANK LLP**

By: *<u>/s/ Linda Dakin-Grimm</u>*
Linda Dakin-Grimm (State Bar #119630)
LDakin-grimm@milbank.com

Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
Samir L. Vora (State Bar #253772)
SVora@milbank.com
Marina Markarian (State Bar #340686)
MMarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067

- 64 -

1
2

Telephone: 424.386.4000
Facsimile: 213.629.5063

3
4
5
6
7

Elizabeth Hamilton, *pro hac vice*
EHamilton@milbank.com
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

8
9
10
11
12
13
14
15
16
17

Julie Wolf, *pro hac vice*
JWolf@milbank.com
Julia Duke, *pro hac vice*
JDuke@milbank.com
Riah Kim, *pro hac vice*
RKim2@milbank.com
Victoria Colbert, *pro hac vice*
VColbert@milbank.com
Jonghyun Lee, *pro hac vice*
JLee7@milbank.com
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: 202.835.7500
Facsimile: 202.263.7586

18
19

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

20
21
22
23
24
25
26
27
28

- 65 -