E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
CHRISTINA A. MARQUEZ (Cal. Bar No. 305301)
DAVID PINCHAS (Cal. Bar No. 130751)
Assistant United States Attorneys
    Federal Building, Suite 7516
      300 North Los Angeles Street
      Los Angeles, California 90012
      Telephone: (213) 894-4061/2920
      Facsimile: (213) 894-7819
      E-mail: Christina.Marquez@usdoj.gov
      E-mail: David.Pinchas@usdoj.gov

Attorneys for Federal Defendant
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Esvin Fernando Arredondo Rodriguez, individually and A.F.A.J., a minor, by her guardian ad litem, Jeffrey Hamilton,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:22-cv-02845-JLS-AFM<br><br>Hearing Date: February 16, 2024<br>Hearing Time: 10:30 a.m.<br>Courtroom: 8A First Street Courthouse<br><br>Honorable Josephine L. Staton<br>United States District Judge |

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR

SUMMARY JUDGMENT;

MEMORANDUM OF POINTS AND AUTHORTIES.

**TABLE OF CONTENTS**

| DESCRIPTION | PAGE |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | 1 |
| I. INTRODUCTION | 1 |
| II. ARGUMENT | 3 |
|    A. Plaintiffs' Constitutional Claims Do Not Preclude Summary Judgment | 3 |
|       1. Plaintiffs Cannot Overcome the Discretionary Function Exception By Alleging a Constitutional Violation | 3 |
|       2. Plaintiffs Have Established Neither a Substantive nor a Procedural Due Process Claim | 5 |
|       3. The DFE Bars Plaintiffs' Claims | 6 |
|    B. Plaintiffs Cannot Establish Claims for Negligent or Intentional Infliction of Emotional Distress or Negligence Under Claim Law | 7 |
|       1. Plaintiffs Cannot Establish Intentional Infliction of Emotional Distress | 7 |
|       2. Plaintiffs Cannot Establish Negligence | 9 |
|    C. Plaintiffs Improperly Seek Retroactive Monetary Liability Based on Rulings in the Ms. L. Litigation | 9 |
| III. CONCLUSION | 12 |

# TABLE OF AUTHORITIES

DESCRIPTION                                                                                                 PAGE

Supreme Court Opinions

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998) ................................................................................. 5

*Landgraf v. USI Film Products,*
    511 U.S. 244 & n. 35 (1994) ................................................................. 11

*United States v. Gaubert,*
    499 U.S. 315 (1991) ................................................................................. 6

Federal Court Opinions

*B.A.D.J v. United States,*
2022 WL 11631016 (D. Ariz. Sept. 30, 2022) ................................................. 1

*Blanco Ayala v. United States,*
982 F.3d 209 (4th Cir. 2020) ................................................................. 4

*Caban v. United States,*
728 F.2d 68 (2d Cir. 1984) ................................................................. 7

*D.B. v. Poston,*
119 F. Supp. 3d 472 (E.D. Va. 2015) ................................................................. 4

*Delgado v. INS,*
637 F.2d 762 (10th Cir. 1980) ................................................................. 4

*Dull v. W. Manchester Twp. Police Dep't,*
604 F.Supp.2d 739 (M.D. Pa. 2009) ................................................................. 8-9

*Felipe v. United States,*
659 F.Supp.3d 1249 (D.N.M. 2023) ................................................................. 8

*Galvin v. Hay,*
374 F.3d 739 (9th Cir. 2004) ................................................................. 3

*J.F.G. v. Hott*,
921 F.3d 204 (4th Cir. 2019) .................................................................................. 4

*Linder v. United States*,
937 F.3d 1087 (7th Cir. 2019) ................................................................................ 3

*Marin-Garcia Holder v. Holder*,
647 F.3d 666 (7th Cir. 2011) .................................................................................. 4

*McQuillion v. Schwarzenegger*,
369 F.3d 1091 (9th Cir. 2004) .............................................................................. 12

*Ms. L. v. Immigration and Customs Enforcement*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018) ........................................................... passim

*Nurse v. United States*,
226 F.3d 996 (9th Cir. 2000) .................................................................................. 3

*Payne-Barahona v. Gonzales*,
474 F.3d 1 & n.1 (1st Cir. 2007) ............................................................................ 4

*Reyna v. Hott*,
2018 WL 3551558 at * 5 (E.D. Va. Mar. 20, 2018) .............................................. 5

*Shivers v. United States*,
1 F4th 924 (11th Cir. 2021) .................................................................................... 3

*Tekle v. United States*,
2009 WL 1303357 at * 11 (C.D. Cal. May 8, 2009) .............................................. 7

<u>United States Code</u>

8 U.S.C. § 1225(b) .................................................................................................. 5
8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ........................................................................... 5
8 U.S.C. § 1231(g)(1) ............................................................................................. 4
8 U.S.C. § 1232 ....................................................................................................... 5
8 U.S.C. §§ 1231(g)(1), 1182(d)(5)(A) ................................................................... 6
28 U.S.C. §1346(b)(1) .......................................................................................... 11

28 U.S.C. § 2680(a) .................................................................................................. 2, 6

State Cases

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ........................................................................................... 9

Rules

Federal Rule of Civil Procedure 30(b)(6) .......................................................................... 8

Restatement of the Law

Restatement (Second) of Torts § 46, comment g ............................................................... 7

Other

8 C.F.R. § 235.3(b)(2)(iii) ................................................................................................. 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The United States is entitled to summary judgment against Plaintiffs' claims because the Court lacks jurisdiction under the Federal Tort Claims Act ("FTCA") and because Plaintiffs cannot establish actionable claims for negligence and intentional infliction of emotional distress.

Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, or in the alternative, for Summary Adjudication of Issues (the "Opposition" and the "Motion") misidentifies Defendant's discretionary acts of detaining Plaintiff Esvin Fernando Mr. Rodriguez ("Mr. Arredondo"), and not paroling him, as products of the previous Administration's "Zero Tolerance Policy."[1]

In fact, Plaintiffs sought admission to the United States at a lawful port of entry and were never prosecuted or referred to prosecution for having done so. *See* Defendant's Statement of Uncontroverted Fact ("SUF") 3. (Dkt # 122-1.) Based on (1) Mr. Arredondo previously entering the United States unlawfully and providing federal officers with false information about his identity and nationality and (2) the lack of available family detention unit space—and not due to the previous Administration's "Zero Tolerance Policy"—Mr. Arredondo was transferred to adult detention in the custody of Immigration and Customs Enforcement ("ICE") and his daughter A.F.A.J. was transferred to the custody of the Department of Health and Human Services'

---

[1] Even if Plaintiffs were correct that the separation here was part of a "nationwide separation policy," which Defendant denies, their claims would constitute an impermissible institutional or systemic tort claim against the Department of Homeland Security writ large, over which the Court would have no subject matter jurisdiction. *See, e.g.*, *B.A.D.J v. United States*, 2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022). Although this Court rejected this argument at the pleading stage, 2022 WL 192337182, at * 4 (C.D. Cal. Dec. 22, 2022), the Court can consider this issue on this Motion because Plaintiffs have reframed their argument on summary judgment as a challenge to the previous Administration's "Zero Tolerance Policy." *See, e.g.*, Opposition at 18-19, 21.

1

1  ("HHS") Office of Refugee Resettlement ("ORR").  The discretionary determinations by
2  the federal government that resulted in Mr. Arredondo's detention and his daughter's
3  placement are plainly covered by the discretionary function exception to the FTCA.  28
4  U.S.C. § 2680(a) (the "DFE").

5  Plaintiffs' arguments to the contrary lack both factual and legal support.  Plaintiffs
6  do not appear to dispute that Defendant lawfully detained Mr. Arredondo.  They have
7  pointed to no evidence that detention facilities were available that would have allowed
8  Plaintiffs to be housed together.  Nor have they cited any case law in which, as here,
9  there was no available family detention housing for a male head of household unit.

10  Defendant is also entitled to summary judgment against Plaintiffs' negligence
11  claims as a matter of state law because its employees lacked any duty *not* to detain or
12  remove Mr. Arredondo and they were expressly authorized, under the circumstances, to
13  place A.F.A.J. in a children's shelter.  Defendant is also entitled to summary judgment as
14  to Plaintiffs' claim for intentional infliction of emotional distress because Plaintiffs
15  failed to establish any intent on the part of Defendant's employees to cause Plaintiffs
16  severe emotional distress and failed to rebut the fact that Defendant's employees' actions
17  were privileged because they were lawful under immigration statutes and regulations.

18  Although Plaintiffs allege that Mr. Arredondo was removed from this country
19  despite his membership in the *Ms. L.* class action lawsuit, *Ms. L. v. Immigration and*
20  *Customs Enforcement*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284
21  (S.D. Cal. 2019), that does not support their FTCA claims because he was not a class
22  member at the time of his removal.  Though he was added to the class *after* his removal,
23  he cites no basis for holding the United States liable under the FTCA because he was
24  added to the class after his removal.  Such retroactive liability for monetary damages is
25  unreasonable and raises due process concerns.

26  Accordingly, for the below reasons and those set forth in Defendant's Motion (Dkt
27  # 93), summary judgment should be granted for the United States and against Plaintiffs.
28

## II. ARGUMENT

### A. Plaintiffs' Constitutional Claims Do Not Preclude Summary Judgment

#### 1. Plaintiffs Cannot Overcome the Discretionary Function Exception By Alleging a Constitutional Violation

To overcome the DFE, Plaintiffs must prove that the government violated a constitutional right that was clearly established and prescribed a specific course of conduct at the time of the alleged violation. *See* Defendant's Motion for Summary Judgment at 11-13 (Dkt # 122); *see also Shivers v. United States*, 1 F4th 924, 932-33 (11th Cir. 2021), *cert. denied,* 142 S. Ct. 1361 (2022) (finding DFE text leaves no room for extra-textual "constitutional-claims exclusions"); *Linder v. United States*, 937 F.3d 1087, 1090-91 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 159 (2020) ("the theme that 'no one has discretion to violate the Federal Constitution' has nothing to do with the Federal Tort Claims Act, which does not apply to constitutional violations").

Plaintiffs attempt to argue the opposite, relying on dicta in *Galvin v. Hay*, 374 F.3d 739 (9th Cir. 2004), for the proposition that a clearly established and specific constitutional directive is not required to overcome Defendant's invocation of the DFE. But in *Galvin,* the Ninth Circuit *affirmed* the dismissal of the plaintiffs' FTCA claim, on other grounds, and thus its discussion of the DFE was unnecessary to decide the case. *Id.* at 758.

*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000), is also not to the contrary. In *Nurse*, the Ninth Circuit denied a motion to dismiss for failure to state a claim upon which relief could be granted because it could not determine at the *pleading* stage whether a constitutional violation had taken place. *Id.* at 1002.[2] But the Court was also careful not to "make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of the federal actor." *Nurse*, 226 F.3d at 1002 n. 2.

---

[2] The Opposition also relies on several inapposite decisions that arose at the pleading stage. *See* Opposition at 10-11.

3

This case presents a factual situation not discussed in any authorities that Plaintiffs cite: how to detain noncitizens, one of whom previously gave immigration authorities false information about his identity and nationality, when there was no available family detention housing in which they could be detained together. But even if this case did not present such a novel circumstance, Plaintiffs have pointed to no case law that clearly established a right to family integrity in the context of immigration detention at the time of Plaintiffs' separations.

Indeed, in *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019), the Court found itself "unable to find a substantive due process right to family unity in the context of immigration detention pending removal." The *Reyna* court also found that there was no "general right to 'family unity' in the context of [immigration] detention" and that a "liberty interest in 'family unity' … does not exist." *Id.* at 210-211. *See also Delgado v. INS*, 637 F.2d 762, 763-64 (10th Cir. 1980) ("incidental impact visited upon the children" resulting from family separation due to parent's removal "does not raise constitutional problems"); *Marin-Garcia Holder v. Holder*, 647 F.3d 666, 674 (7th Cir. 2011) ("nothing in the Constitution prohibits" separation of citizen children from their parents when the parents are deported); *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits that have addressed the constitutional issue… have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right."); *D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."); *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) (designating a child as an unaccompanied child because the decision to detain the parent for removal proceedings is integrally related to the decision to detain the parent); 8 U.S.C. § 1231(g)(1) (the federal government has the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.").

4

2. <u>Plaintiffs Have Established Neither a Substantive nor a Procedural Due Process Claim</u>

To prevail on their substantive due process argument, Plaintiffs must prove that the challenged exercise of power was "without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). U.S. Customs and Border Protection's ("CBP") Office of Field Operations officials considered the relevant facts of Plaintiffs' case and decided that Mr. Arredondo should be processed and detained as an expedited removal/credible fear applicant, whose removal was put on hold pending the outcome of his credible fear determination. *See* Defendant's SUF 25 (Dkt # 117). This determination was well within their discretion, *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), and does not reflect—as Plaintiffs allege—malicious intent, particularly under this confluence of facts. Indeed, Plaintiffs do not allege that Arredondo's detention was unlawful. Acting within federal law and enforcing immigration policy provide reasonable bases for Defendant's actions. Thus, Plaintiffs cannot establish the requisite intent to establish a substantive due process violation under *Lewis,* 523 U.S. at 849.

Insofar as Defendants understand Plaintiffs' procedural due process claim, Plaintiffs allege that they were not provided notice and a hearing before they were detained in different locations. Opposition at 12. Neither the Trafficking Victims Protection Reauthorization Act, 8 U.S.C. § 1232 (the "TVPRA"), nor 8 U.S.C. § 1225(b), provides for such procedures. *See also Reyna v. Hott*, 2018 WL 3551558 at * 5, 6 (E.D. Va. Mar. 20, 2018), *aff'd* 921 F.3d 204 (4th Cir. 2019) (finding no procedural due process right to contest transfer of children's father causing separation with his children).[3]

---

[3] To the extent Plaintiffs' constitutional argument relies on the so-called "Zero-Tolerance Policy," that argument fails because the Zero-Tolerance Policy was not the reason for Arredondo's detention and Plaintiffs' separation. *See infra* at pages 7-8.

5

   3. <u>The DFE Bars Plaintiffs' Claims</u>

Defendant's employees had authority to detain, and the discretion not to parole, Mr. Arredondo under 8 U.S.C. §§ 1231(g)(1), 1182(d)(5)(A); 8 C.F.R. § 235.3(b)(2)(iii). *See* Defendant's Motion for Summary Judgment at 7-9. Thus, Defendant has satisfied the first prong of the DFE analysis set forth in *United States v. Gaubert*, 499 U.S. 315, 322 (1991), because Arredondo's detention was a discretionary act. With respect to the second prong of *Gaubert,* 499 U.S. at 325, whether the action taken is susceptible to policy analysis. Opposition at 19, the *Gaubert* Court held that when, as here, "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 325. Moreover, the decision to perform that discretionary act must merely be s*usceptible* to a policy analysis." *Id.*

Indeed, even the court in *Ms. L. v. U.S. Customs and Enforcement*, 415 F.Supp.3d 980, 988 (S.D. Cal. 2020), recognized that, in the context of the international border between the United States and Mexico, the government's interests "extend to securing the Nation's borders and enforcing the Nation's criminal and immigration laws, and all that those interests entail, including detention and parole determinations for migrants taken into custody." The exception applies "whether or not the discretion was abused." 28 U.S.C. § 2680(a).

Finally, Plaintiffs' attempt to prevent application of the DFE to their claims for alleged severe conditions of confinement also fails. *See* Opposition at 18. Plaintiffs argue that these were not "standalone claims." But in their operative First Amended Complaint ("FAC"), Plaintiffs allege several distinct acts including "the severe conditions of incarceration" as a breach of the duty or "extreme and outrageous conduct with the intent to cause, or reckless disregard for the probability of causing" severe emotional distress. FAC ¶¶ 71, 80, 86, 91, 95. As explained in the Motion, each of these conditions of confinement claims is barred by the DFE. Motion at 10-11 (Dkt #

22.)  Plaintiffs cannot keep these claims alive by trying to conflate them with their other claims (which are, in any event also meritless).

### B. Plaintiffs Cannot Establish Claims for Negligent or Intentional Infliction of Emotional Distress or Negligence Under Claim Law

#### 1. Plaintiffs Cannot Establish Intentional Infliction of Emotional Distress

Plaintiffs cannot establish intentional infliction of emotional distress ("IIED") because the conduct at issue is privileged.  *See Tekle v. United* States, 2009 WL 1303357 at * 11 (C.D. Cal. May 8, 2009) ("the detention of an individual carries no tort liability where it was otherwise privileged or justified by law"); *cf. Caban v. United States*, 728 F.2d 68 (2d Cir. 1984) (false imprisonment claim was not actionable because INS's detention of plaintiff pursuant to federal statutory authority was privileged); Restatement (Second) of Torts § 46, comment g (conduct is privileged when the actor "insist[s] upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.").

Plaintiffs seek to circumvent this privilege by contending their claims are based on the "Zero Tolerance Policy," as opposed to CBP employees' individualized discretionary law enforcement actions.[4]  As discussed in the United States' Opposition to Plaintiffs' Summary Judgment Motion, the "Zero-Tolerance Policy" concerned the prosecution of noncitizens who entered the United States unlawfully.  (Dkt. #113 at 1-2.)  It had nothing to do with Plaintiffs, who presented themselves at a lawful port of entry.  There is no evidence that the "Zero-Tolerance Policy" was the reason for Arredondo's detention and Plaintiffs' separation.

Plaintiffs miscite the testimony of Defendant's CBP supervisory program manager, Rodney Harris, as having admitted that the "Zero Tolerance Policy" applied in

---

[4] The *Ms. L.* court itself recognized that not all family separations were the result of the Executive Branch's "Zero Tolerance Policy." *Ms. L.*, 310 F.Supp.3d at 1143.

7

this case. *See* Plaintiffs' Statement of Disputed Fact 9 (Dkt # 117.) Mr. Harris, who served as CBP's representative under Federal Rule of Civil Procedure 30(b)(6), testified about why Plaintiffs were separated: "[ICE] did not have detention space for a male head of household, so the only way to effect detention was to separate the family." Transcript of Deposition of Rodney Harris at 186:14-16 (Dkt # 122-2 at 75.) *See also* Harris testimony at 292:9-293:12. (*Id.* at 83-84.)[5]

In addition, to the extent Plaintiffs claim that there was a mandatory separation policy at the Laredo Port of Entry with no exceptions, they are mistaken because separations at Laredo were made on a "case by case" basis. *See* Exhibit 2 to the declaration of David Pinchas, excerpts from the transcript of the deposition of Officer Nieves, at 141:18-25, (Dkt.113-4); *see also* Defendant's Statement of Genuine Dispute at ¶ 55 and exhibits thereto (Dkt. 113-1).

Furthermore, Plaintiffs have submitted no evidence that any of the government employees who were involved in the separation of Plaintiffs intended to harm them. Rather, Plaintiffs' separation was the direct result of, and is inextricably intertwined with, privileged law enforcement decisions and actions that were undertaken pursuant to federal law enforcement statutes and regulations. *See S.E.B.M., by and through Felipe v. United States*, 659 F.Supp.3d 1249, 1272 (D.N.M. 2023). Among other laws, these federal employees were following the TVPRA, which expressly authorized them to transfer A.F.A.J. to ORR custody once they had identified her as an unaccompanied minor due to Arredondo's detention.

Whether the CBP officers erred in their interpretation of the TVPRA cannot supply the basis for an IIED claim. *See Dull v. W. Manchester Twp. Police Dep't*, 604

---

[5] Moreover, Plaintiffs wrongly rely on an unauthenticated form letter dated December 1, 2021, that does not even mention Plaintiffs, for the proposition that Plaintiffs were separated due to the "Zero Tolerance Policy." *See* Plaintiffs' Exhibit G (Dkt # 102).

F.Supp.2d 739, 756 (M.D. Pa. 2009) (finding improper arrest was not "sufficiently extreme or outrageous" to prevail on an IIED claim because "[a]t most defendants miscalculated the propriety of their law enforcement activities").

### 2. Plaintiffs Cannot Establish Negligence

Likewise, Defendants are entitled to summary judgment against Plaintiffs' negligence claims. Plaintiffs have not established that Defendant's employees negligently breached a duty not to detain Mr. Arredondo or that there was a duty not to place A.F.A.J. in ORR custody when her father was detained in a structured environment where she could not be housed, and when there was no family residential center facility available in which to detain a male head of household with his daughter.[6]

### C. Plaintiffs Improperly Seek Retroactive Monetary Liability Based on Rulings in the Ms. L. Litigation

Plaintiffs rely on interlocutory rulings in the *Ms. L.* class action to support their claims for monetary damages in this case. That reliance is misplaced. On June 26, 2018, the *Ms. L.* court issued a preliminary injunction to prohibit separation of class members from their children *in the future* absent a finding that the parent is unfit or presents a danger to the child. *Ms. L.*, 310 F.Supp.3d at 1149-50.

The description of the *Ms. L.* class on June 26, 2018 was (with some exclusions not relevant here):

> All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, *and* (2) *have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody*, absent a determination that the parent is unfit or presents a danger to the child.

*Id.* at 1139 & n. 5 (emphasis added).

---

[6] As stated previously, Plaintiffs' claim for negligent infliction of emotional distress fails because it does not exist in California state law. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984-85 (1993). *See* Motion at 19 & n. 11. (Dkt # 122.)

9

Mr. Arredondo was not a class member based on the class definition on June 26, 2018. A.F.A.J. had been released from ORR custody and reunited with her mother on June 9, 2018. *See* SUF 73 (undisputed by Plaintiffs) (Dkt # 117). Accordingly, on June 26, 2018, the date of the class order, Arredondo did not "have a minor child who *is or will be* separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody." Mr. Arredondo was removed to Guatemala on August 22, 2018. *See* SUF 129 (undisputed as to the date of removal). He was not a member of the class as defined by the court's 2018 class certification at the time of his removal.

The foregoing events happened before the *Ms. L.* class was *modified in 2019* to add individuals who "have a minor child who *has been*, is or will be separated from them by DHS and *has been*, is or will be detained in ORR custody, ORR foster care, or DHS custody." *Ms. L. v. U.S. Immigration and Customs Enforcement*, 330 F.R.D. 284, 292-93 (S.D. Cal. 2019) (emphasis added).[7] Thus, any orders of the *Ms. L.* court did not apply to Mr. Arredondo until after this modification.

On September 4, 2019, the *Ms. L.* court ordered the Government to allow Mr. Arredondo and various other individuals to return to the United States. *Ms. L. v. U.S. Immigration and Customs Enforcement*, 403 F. Supp.3d 853, 857, 868 (S.D. Cal. 2018). However, as discussed above, Mr. Arredondo was not a member of the *Ms. L.* class when he was removed the previous year.[8]

Plaintiffs cite the *Ms. L.* court's statement that Mr. Arredondo and another class member:

*appear* to have been removed in violation of the Court's stay order…on August 22,

---

[7] The *Ms. L.* court also stayed application of its preliminary injunction to the newly included class members pending further briefing from the parties as to what specific relief Plaintiffs requested and were entitled to at that stage of the case. *Id.* 330 F.R.D. at 293.

[8] The *Ms. L.* litigation recently settled, with the parties agreeing to various forms of classwide relief and restrictions on future separations of families at the border. *See Ms. L.*, Dkt #721 (Dec. 1, 2023); Dkt. #727 (Dec. 11, 2023).

> 2018…Indeed, [Mr. Arredondo] was removed not only after the Court's stay order… but after the Court issued a temporary restraining order [on June 26, 2018] prohibiting Defendants from removing Class Member. Accordingly, the removals of these two additional parents were also unlawful.

*Id.* 403 F. Supp.3d at 863 (emphasis added). But the undisputed evidence shows that Arredondo was not a class member when the referenced stay order and temporary restraining order which orders were issued in 2018. Relying on the *Ms. L.* court's interlocutory, injunctive order to impose retroactive monetary liability under the FTCA would be a great injustice.

Imposing liability based on the *Ms. L.* order would also contradict the FTCA's "private analog" requirement. Under FTCA, this Court has:

> jurisdiction of civil actions against the United States, for money damages… for personal injury….caused by the negligent or wrongful act or omission of any employee of the Government … under circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. §1346(b)(1) (emphasis added).

No private person could be liable for violating orders of a court in a class action, applying federal law, when the claimant was not even a member of the class. The hypothetical individual would not have known that the *Ms. L.* court's orders applied to Mr. Arredondo because he was not a member of the class when the orders were issued. Such an unfair result cannot be what Congress intended in enacting the FTCA. *See Landgraf v. USI Film Products*, 511 U.S. 244, 282-86 & n. 35 (1994) (finding degree of unfairness is inherent whenever law imposes additional burdens based on conduct that occurred in past).

Finally, Plaintiffs' claim that dicta in *Ms. L.* collaterally estops Defendant from arguing that Plaintiffs were not separated due to the "Zero Tolerance Policy" is also misplaced. *See* Opposition at 6-7. Collateral estoppel does not apply because the *Ms. L.* court's statements on which Plaintiffs rely were not "a critical and necessary part of the

judgment in the earlier action," nor was "the issue [whether Plaintiffs were separated pursuant to the "Zero Tolerance Policy"] actually litigated … in the prior litigation." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004).

### III. CONCLUSION

For the foregoing reasons, and those set forth in the Motion and Defendant's opposition to Plaintiffs' motion for partial summary judgment, Defendant requests that the Court grant Defendant's Motion and deny Plaintiffs' motion for summary judgment.

Dated: February 2, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

　/s/ David Pinchas
CHRISTINA MARQUEZ
DAVID PINCHAS
Assistant United States Attorney

Attorneys for Defendant

L.R. 11-6.2 Certification

The undersigned counsel of record for the United States of America certifies that this brief contains 3,792 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 2, 2024

　/s/ David Pinchas
DAVID PINCHAS
Assistant United States Attorney