E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
CHRISTINA A. MARQUEZ (Cal. Bar No. 305301)
DAVID PINCHAS (Cal. Bar No. 130751)
Assistant United States Attorneys
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-4061/2920
        Facsimile: (213) 894-7819
        E-mail: Christina.Marquez@usdoj.gov
        E-mail: David.Pinchas@usdoj.gov

Attorneys for Defendant
The United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Esvin Fernando Arredondo Rodriguez, individually and A.F.A.J., a minor, by her guardian ad litem, Jeffrey Hamilton, <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. 2:22-cv-02845-JLS-AFM <br><br> **DEFENDANT UNITED STATES OF AMERICA'S RESPONSES TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES** <br><br> Hearing Date:  February 16, 2024 <br> Hearing Time:  10:30 a.m. <br> Courtroom:   8A <br><br> Hon. Josephine L. Staton <br> United States District Judge |

1

Pursuant to L.R. 56-3 and the Court's Standing Order at pg.7, Defendant submits the following Responses to Plaintiffs' Statement of Disputed Fact and Supplemental Statement of Fact (Dkt. 117) .[1]

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| **1.** U.S. Border Patrol ("BP") is a component of U.S. Customs and Border Protection ("CBP"), which is an agency within DHS.<br><br>(*See* CBP Organizational Structure ("CBP Org. Chart"), available at https://www.cpb.gov/sites/default/ files/assets/documents/2023-Mar/ cbp-org-chart-compliant-03-2023.pdf.)[2] | **DISPUTED**.  BP is not a "component" of CBP, and that term is undefined.  Rather, CBP, one of the world's largest law enforcement organizations" is "the United States' first unified border entity, which takes a comprehensive approach to border management and control, combining customs, immigration, border security, and agricultural protection into one coordinated and supportive activity." *See About CBP*, U.S. Customs and Border Protection https://www.cbp.gov/about (last visited Jan. 16, 2024), Ex. A. |

---

[1] Plaintiffs contend that Defendant refused to bates label documents, which made it difficult for them to respond to Defendant's motion. *See* Plaintiffs' Statement of Disputed Fact (Dkt. 117) at pg. 1, fn. 1. The majority of the discovery (over 400,000 pages of documents) in this case were produced with bates numbers. *See* Marquez Reply Decl. at ¶¶ 2-3. There were a few productions wherein Defendant could not bates number the documents because it would have delayed production to Plaintiffs by two weeks. *Id*. at ¶ 4. Rather than delay production, Defendant produced the documents without bates numbers. *Id*. at ¶ 4. It was not until the midst of filing Motions for Summary Judgment, when Plaintiffs expressed an urgency in Defendant bates numbering certain productions. *See* Plaintiffs. Ex. AA (Dkt. 119-28). Accordingly, Defendant has since bates numbered the requested productions and produced them to Plaintiffs, except for one, which consists of approximately 700 pages. *See* Marquez Decl. at ¶ 6. Defendant is working on bates numbering those remaining documents and will produce them. *See id*. at ¶ 6. Lastly, almost all the documents relied on by Defendant in support of its Motion for Summary Judgment were bates labelled documents or documents that Plaintiffs or Defendant identified as exhibits or potential exhibits in deposition. *See* Marquez Decl. at ¶ 7.

[2] Defendant has added the most up to date docket numbers for Defendant's filed evidence for ease of reference. Further, the correct link, which was included in Defendant's filed Statement of Undisputed Fact (Dkt. 122-1) is: https://www.cbp.gov/sites/default/files/assets/documents/2023-Mar/cbp-org-chart-compliant-03-2023.pdf.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | The organizational chart referenced by Defendant was not produced in discovery and is not found at the provided URL, which states: "We're sorry, we can't find the page you're looking for.  It might have been removed, changed its name, or is otherwise unavailable." |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Rather, Plaintiffs assert their opinion and ignore the organizational structure of CBP and the fact CBP is comprised of various component agencies, which is not only evidenced in the CBP Organizational Chart, but also the testimony and discovery produced in this case. *See* Deft's SUFs 1-7 and exhibits thereto. In fact, Plaintiffs cited to a document in support of their Motion for Summary Judgment, which makes this critical distinction. *See* Plaintiffs' Ex.YY (Dkt. 115-50)[3] at -924, fn.12. Additionally, the term "unified" referenced in the quoted language cited by Plaintiffs refers to the fact that trade and immigration were combined after 9/11. *See* https://www.cbp.gov/about/history/march-1-2003-cbp-born; *see also* https://www.cbp.gov/about/history/timeline/timeline-date/march-1-2003. Lastly, the link provided in Defendant's SUF takes you directly to the cited Organizational Chart. *See* Dkts. 93-1, 122-1. The link Plaintiffs' cite has "CPB" instead of "CBP," which appears to be the cause of the error. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 2. | BP possesses responsibility for apprehending individuals who enter the United States between ports of entry.<br><br>(Declaration of David Pinchas "Pinchas Decl." at ¶ 2, Ex. 2 (Officer | **DISPUTED** to the extent that this assertion purports to be a comprehensive description of BP's responsibilities or an assertion that BP is the only agency within CBP with such responsibilities.<br><br>BP's responsibility is much more extensive than asserted.  BP's "primary mission" is to detect and |

---

[3] Defendant is referring to the most up to date docket numbers following the parties' re-filings in accordance with the Court's Orders on their respective Applications to Seal. *See* Dkts. 106-107.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Nieves Depo) at 18:11-24, 51:1-13 (Dkt. 122-3); Declaration of Christina Marquez "Marquez Decl." at ¶ 6, Ex. 5 (Officer Elguezabal Depo) at 101:3-10 (Dkt. 122-2). | prevent the illegal entry of individuals into the US," both between ports of entry and at official border stations. To that end, BP operates and controls border stations across sectors of the U.S. border, including the Laredo sector in Texas, where the events at issue in this case occurred. *See Border Patrol Overview*, U.S. Customs and Border Protection website, https://www.cbp.gov/border-security/along-us-borders/overview (last visited Jan. 16, 2024), Ex. B; *Border Security - Sectors and Stations*, U.S. Customs and Border Protection, https://www.cbp.gov/border-security//along-us-borders/border-patrol-sectors (last visited Jan. 16, 2024), Ex. C. |

**Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. The evidence Plaintiffs cite further supports Defendant's undisputed fact that BP is responsible for apprehending individuals who enter the United States between ports of entry. Plaintiffs' Ex. B (Dkt. 119-3) states in pertinent part, "[t]he primary mission of the Border Patrol is to protect our Nation by reducing the likelihood that dangerous people and capabilities enter the United States **between the ports of entry.** *See* Plaintiffs' Ex. B (Dkt.119-3), at 4. Further, the events in this case took place at the Laredo Port of Entry not the Laredo Sector, which is BP's responsibility. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| 3. | Office of Field Operations ("OFO") is a component of CBP, which is an agency within DHS.<br><br>(*See* CBP Org. Chart) | Undisputed that CBP has an office of Field Operations.<br><br>**DISPUTED** to the extent that the OFO is not a "component" of CBP. That term is undefined.<br><br>The organizational chart referenced by Defendant was not produced in |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | | discovery and is not found at the provided URL, which states: "We're sorry, we can't find the page you're looking for.  It might have been removed, changed its name, or is otherwise unavailable." |
| | **Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Rather, Plaintiffs assert their opinion and ignore the organizational structure of CBP and that CBP is comprised of various component agencies, which is not only evidenced in the CBP Organizational Chart, but also the testimony and discovery produced in this case. *See* Deft's SUFs 1-7 and exhibits thereto. In fact, Plaintiffs cited to a document in support of their Motion for Summary Judgment, which makes this critical distinction. *See* Plaintiffs' Ex.YY (Dkt. 115-50) at -924, fn.12. Lastly, the link provided in Defendant's SUF takes you directly to the cited Organizational Chart. *See* Dkts. 93-1, 122-1. The link Plaintiffs cite has "CPB" instead of "CBP," which appears to be the cause of the error. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 4. | OFO is responsible for processing individuals at ports of entry.<br><br>(*See* CBP Org. Chart; *see also* Officer Nieves Depo at 18:11-24 (Dkt. 122-3, Ex. 2)) | **DISPUTED** to the extent that it implies that CBP as a whole is not responsible for processing individuals at ports of entry or that CBP employees, including those within its BP section are not also involved.<br><br>The organizational chart referenced by Defendant was not produced in discovery and is not found at the provided URL, which states: "We're sorry, we can't find the page you're looking for.  It might have been removed, changed its name, or is otherwise unavailable." |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Rather, Plaintiffs assert their opinion and ignore the organizational structure of CBP and the distinction between OFO and BP's area of responsibility. The distinction between OFO and BP's area of responsibility, is not only evidenced in Defendant's cited exhibits, but also the testimony and | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| discovery produced in this case. *See* Deft's SUFs 2, 4 and exhibits thereto. In fact, Plaintiffs cited to a document in support of their Motion for Summary Judgment, which makes this critical distinction. *See* Plaintiffs' Ex.YY (Dkt. 115-50) at -924, fn.12. Lastly, the link provided in Defendant's SUF takes you directly to the cited Organizational Chart. *See* Dkts. 93-1, 122-1. The link Plaintiffs cite has "CPB" instead of "CBP," which appears to be the cause of the error. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| 5. | BP and OFO are co-equal parts of CBP that report to the Deputy Commissioner independent of each other.

(*See* CBP Org Chart; *see also* Officer Nieves Depo at 51:1-13, 94:18-21 (Dkt. 122-3, Ex.2)) | **DISPUTED**, but irrelevant.

The organizational chart referenced by Defendant was not produced in discovery and is not found at the provided URL, which states: "We're sorry, we can't find the page you're looking for.  It might have been removed, changed its name, or is otherwise unavailable."

The testimony cited does not support the fact asserted.  *See* H. Nieves Tr. 51:1-13 (describing BP's role apprehending illegal entrants), Ex. L; *See also id.* (testifying that BP and OFO each have their own chains of command).  Neither of the issues that the deponent testified to establishes that "BP and OFO are co-equal parts of CBP that report to the Deputy Commissioner independent of each other." |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Rather, Plaintiffs appear unable to interpret the cited Organizational Chart. The cited Organizational Chart demonstrates that six component agencies (including Border Patrol and OFO) report to the Deputy Commissioner independent of each other, meaning the six component agencies do not report to each other. Additionally, Mr. Nieves testified that Border Patrol does not operate at the port and that they have their own chain of command,

6

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| which supports the fact that they are two separate agencies who do not report to each other. *See* Deft's SUF 6 and (exhibits thereto); *see also* Marquez Reply Decl. at Ex. 1 (CBP's 30(b)(6) Depo) at 60:5-21 (describing an OFO chain of command that does not include BP). Lastly, the link provided in Defendant's SUF takes you directly to the cited Organizational Chart. *See* Dkts. 93-1, 122-7. The link Plaintiffs cite has "CPB" instead of "CBP," which appears to be the cause of the error. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | | |
|---|---|---|
| **6.** | BP does not control policy for OFO.<br><br>(*See* Marquez Decl. ¶¶ 8-9, Exs. 7-8 (Hastings Depo) at 31:22, 33:12-34:3, (DHS 30(b)(6) Depo) at 193:15-194:12 (Dkt. 122-2). | **DISPUTED** because unsubstantiated by any evidence, but irrelevant. The Family Separation Policy and ZTP within it were not directed to specific sections within CBP. *See* Plaintiffs' Statement of Undisputed Fact ("SOF") in support of Plaintiffs' Motion (Dkt. 98-2) ¶ 43 and Exhibits 24 and 33 attached thereto.<br><br>The testimony relied on by Defendant does not support the fact asserted. B. Hastings Tr. 31:22 (states in full, "Q. Okay. Let me -- let me circle"); B. Hastings Tr. 33:12-34:3 (testifying about the role of "LEOD" in developing BP policy); J. McCament 30(b)(6) Tr. 192:2-194:12 (testifying that "guidelines" on the implementation of policies are specific to an area of OFO or a sector of BP), Ex. J. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Rather, Plaintiffs cited evidence (Dkt. 98-2, Exs. 24, 33)(now Dkts. 114-2 (SOF), 115-88 (Exs. 24, 33)) supports Defendant's undisputed fact. The e-mail (CD-US-00016672) disseminating what Plaintiffs refer to as the "Zero Tolerance Policy/Family Separation Policy[4]" was disseminated down BP's chain of command. The United States admits that

---
[4]

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| children were separated from adult detainees for prosecution under the Zero Tolerance Policy but denies Plaintiffs' subjective characterization that there was a "Family Separation Policy." Plaintiffs were not separated pursuant to what Plaintiffs describe as the "Zero Tolerance Policy." As for Defendant's reference to Mr. Hasting's testimony, Defendant inadvertently omitted the citation to page 285:15-286:4 of his deposition, which was included in Defendant's Ex. 7 to the Marquez Decl. (Dkt. 93-2, 122-2). This further supports Defendant's undisputed fact. Additionally, Plaintiffs' cited evidence (Ex. J) further supports Defendant's undisputed fact in that the DHS 30(b)(6) is explaining the distinction between OFO and BP and how each would have their own applicable guidance. | |

| 7. | OFO is responsible for the Laredo Port of Entry. | **DISPUTED** to the extent this suggests CBP as a whole is not responsible for the Laredo Port of Entry or that BP and other agencies within CBP are not also active at the Laredo Port of Entry. |
|---|---|---|
| | (*See* Officer Nieves Depo at 52:8-9 (Dkt.122-3, Ex.2)) | The testimony cited does not support the fact asserted. *See* H. Nieves. Tr. at 52:8-9 (describing BP and Customs actions at ports of entry), Ex. L. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Rather, Plaintiffs assert their opinion and ignore the organizational structure of CBP and the distinction between OFO and BP's area of responsibility. The distinction between OFO and BP's area of responsibility, is not only evidenced in Defendant's cited exhibit, but also the testimony and discovery produced in this case. *See* Deft's SUF 1-7 and exhibits thereto. In fact, Plaintiffs cited to a document in support of their Motion for Summary Judgment, which makes this critical distinction. *See* Plaintiffs' Ex.YY (Dkt. 115-50) at -924, fn.12. Further, Mr. Nieves clearly indicates in the cited testimony that Border Patrol does not operate at the port. The "Customs" he is referring to in the cited testimony is OFO. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | | |

| 8. | The Laredo Port of Entry processes thousands of individuals each day. | **DISPUTED** because unsubstantiated, but irrelevant. |
|---|---|---|
| | | The "Laredo Port of Entry," actually |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Officer Elguezabal Depo at 95:13-25, 96:5-6 (Dkt.122-2, Ex. 5) | consists of five separate ports of entry. *See U.S. Land Port of Entry at Laredo, TX*, U.S. General Services Administration, https://www.gsa.gov/about-us/gsa-regions/region-7-greater-southwest/buildings-and-facilities/texas/us-land-port-of-entry-at-laredo-tx (last visited Jan. 16, 2024),  Ex. D.  Whether those five ports of entry process a combined thousands of individuals every single day is irrelevant. <br><br> Undisputed that Laredo is a port of entry. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs dispute this fact on evidentiary grounds. *See* Defendant's Response to Plaintiffs' Evidentiary Objections. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **9.** | The Zero Tolerance Policy was never applied at the Laredo Port of Entry. <br><br> (*See* Marquez Decl., at ¶ 3, Ex.2 (CBP 30(b)(6) Depo) at 292:9-293:12 (Dkt. 122-2; *see also* Officer Nieves Depo at 17:21-25, 106:18-23 (Dkt.122-3, Ex.2)) | **DISPUTED**. <br><br> Documentary evidence produced by Defendant establishes that the Zero Tolerance Policy was applied at the Laredo Port of Entry.  *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 53-54 and Exhibit 28 attached thereto. <br><br> Defendant has acknowledged that Plaintiffs were victims of the Zero Tolerance Policy at the Laredo Port of Entry.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 244-45 and Exhibits MMM, KKK, and JJJ attached thereto; *infra* III ¶¶ 10-14. <br><br> The deponent Defendant relies on for this alleged fact testified to the |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | contrary.  H. Nieves Tr. 93:18-97:24 (discussing an email regarding the Zero Tolerance Policy sent to Laredo OFO), Ex. L; *id.* 93:18-97:24 (testifying that families arriving at the Laredo Port of Entry were separated if there was a prior immigration violation).<br><br>Additionally, other witnesses, including Defendant's 30(b)(6) representatives, testified that the Zero Tolerance Policy was applied at the Laredo Port of Entry.  R. Harris Tr. 273:16-21 (testifying "[w]e know at that time [the port of entry was] detaining people for criminality, prior immigration history."), Ex. W; H. Elguezabal Tr. 127:1-6 (discussing an email regarding the Zero Tolerance Policy sent to Laredo OFO, and testifying families arriving at the Laredo Port of Entry were separated if there was a prior immigration violation), Ex. M. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. None of the cited exhibits indicate that Plaintiffs were separated pursuant to what they describe as the "Zero Tolerance Policy" or that it ever applied at the Laredo Port of Entry. Plaintiffs mischaracterize Exhibit 28 (Dkt. 115-90) for the same reasons set forth in Defendant's Statement of Genuine Dispute (Dkt. 113-1) ¶¶ 53-54 and (exhibits thereto). As for *infra* III ¶¶ 10-14, *see infra* for Defendant's responses. Plaintiffs' Ex. MMM (Dkt. 115-64) makes no mention of the "Zero Tolerance Policy" and its application to Plaintiffs. Plaintiffs' Ex. KKK (Dkt. 115-62) makes no mention of the "Zero Tolerance Policy" applying to the Laredo Port of Entry. Plaintiffs' Ex.JJJ (Dkt. 115-61) makes no mention of the "Zero Tolerance Policy" applying to the Laredo Port of Entry. As for Mr. Nieves' testimony, he did not testify to the contrary. Nowhere in Plaintiffs' cited testimony (Ex. L) does Mr. Nieves refer to the "Zero Tolerance Policy." Also, Plaintiffs do not indicate what e-mail Mr.

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | Nieves' is referring to. As for Plaintiffs' Exhibits W (Dkt.119-24), CBP's 30(b)(6) witness did not testify to that effect. Nowhere in the cited testimony does he refer to the "Zero Tolerance Policy." Lastly, as for Plaintiffs' Exhibit M (Dkt. 119-14), again Plaintiffs do not indicate what e-mail Officer Elguezabal is referring to. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 10. | Plaintiff Esvin Arredondo Rodriguez ("Mr. Arredondo") is a native and citizen of Guatemala.<br><br>(*See* Declaration of Tracey Long "Long Decl." at ¶ 5D, Ex. 4 (Mr. Arredondo's Form I-213)(Dkt.122-7)) | Undisputed. |
| 11. | Plaintiff A.F.A.J., Mr. Arredondo's daughter, is a native and citizen of Guatemala.<br><br>(*See* Declaration of Randy Fondren "Fondren Decl." at ¶ 5B, Ex. 2 (A.F.A.J.'s Form I-213)(Dkt.122-6)) | Undisputed. |
| 12. | Mr. Arredondo and A.F.A.J. sought admission to the United States on May 16, 2018 at the Gateway to the Americas Bridge, otherwise known as "Bridge 1" at the Laredo Port of Entry at approximately 5:37 p.m. A.F.A.J. was 12 years on this day. | **DISPUTED** as to the date. Documents produced by Defendant contain multiple dates on which Plaintiffs arrived at the Laredo Port of Entry. Defendant's documents are hearsay, unauthenticated and many of them appear to have been created after the fact and are unreliable as business records. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Long Decl., Ex. 4 (Dkt.122-7); Fondren Decl., Ex. 2 (Dkt.122-6); CBP 30(b)(6) Depo at 67:5-9 (Dkt.122-2, Ex.2)). | |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs indicate in their evidentiary objections that the cited document contains two different dates as to when Plaintiffs arrived at the Laredo Port of Entry, however, both indicated they applied for admission on May 16, 2018. Further, Plaintiff admits in their Statement of Undisputed Fact (Dkt. 114-2) at ¶ 92 that they arrived together at the Laredo Port of Entry on May 16, 2018. Additionally, Mr. Arredondo's declaration at Ex. HH (Dkt. 115-33) indicates they arrived on May 16, 2018. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| 13. | This first official interaction Mr. Arredondo and A.F.A.J. had with CBP occurred at what is known as pedestrian primary.<br><br>(*See* CBP 30(b)(6) Depo 73:2-12 (Dkt.122-2, Ex.2); Marquez Decl. ¶ 2, Ex.1; Plaintiff's Depo at 39:16-40:10 (Dkt.122-2)). | **DISPUTED**.<br><br>Mr. Arredondo did not use the term "pedestrian primary" in his deposition. The term "pedestrian primary" is not "known" in any sense of that term.<br><br>Defendant's 30(b)(6) witness testimony relied on here does not refer to the actual arrival of these Plaintiff's, but rather describes a hypothetical entry.  R. Harris Tr. 73:2-12 (beginning "[s]o, anyway, imagine . . .), Ex. W. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' attempted assertion that Mr. Arredondo did not use the term "pedestrian primary" or that the term is not generally known does not establish a genuine dispute of material fact. Defendant was not quoting Plaintiffs' deposition. Plaintiffs' do not dispute that this initial interaction occurred at what CBP refers to as "pedestrian primary." Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | **Moving Party's Uncontroverted Facts and Supporting Evidence** | **Opposing Party's Response to cited Fact and Supporting Evidence** |
|---|---|---|
| **14.** | Primary is typically the first point at which travelers interface with CBP at a Port of Entry. This is where CBP officers ask travelers what their purpose is for seeking entry into the country and check their documents.<br><br>(*See* Officer Elguezabal Depo at 24:10-22 (Dkt.122-2, Ex.5)). | Undisputed but irrelevant to the issues presented in this case. Moreover, the term "primary" is not generally known. |
| **15.** | The pedestrian primary officer asked Mr. Arredondo if he and his daughter A.F.A.J. had any valid documents. Mr. Arredondo explained that he had no visa and "was here to turn [himself in]."<br><br>(*See* Plaintiff's Depo at 39:16-22 (Dkt.122-2, Ex.1)). | **DISPUTED** as to the characterization of an unnamed officer as "pedestrian primary." Mr. Arredondo did not use that term and Defendant has not identified any agent who had such a title.<br><br>**DISPUTED** as mischaracterizing the totality of Mr. Arredondo's testimony of what he was asked and what occurred when he initially approached the Laredo Port of Entry. *See* E.F.A.R. Tr. 37:3-40:14, Ex. O. |
| | **Moving Party's Response:** Plaintiffs do not dispute this material fact. Plaintiffs' attempted assertion that the fact is irrelevant and that the term "primary" is not generally known does not establish a genuine dispute of material fact. Plaintiffs do not dispute what occurred at what CBP refers to as "primary." Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **16.** | Mr. Arredondo and A.F.A.J. did not have valid entry documents to enter the United States. | Undisputed. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | (*See* Plaintiff's Depo at 39:16-22 (Dkt.122-2, Ex.1)). | |
| 17. | Mr. Arredondo and A.F.A.J. lawfully applied for admission into the United States and expressed a fear of return to Guatemala.<br><br>(*See* Long Decl., Ex. 4 (Dkt.122-7); Fondren Decl., Ex. 2 (Dkt.122-6); Plaintiff's Depo at 39:16-22 (Dkt.122-2, Ex.1)). | Undisputed that Mr. Arredondo and A.F.A.J. applied for asylum in the United States and expressed fear of returning to Guatemala. |
| | **Moving Party's Response**: Plaintiffs do not dispute this material fact. Plaintiffs' attempted assertion that Mr. Arredondo and A.F.A.J. "applied for asylum" does not establish a genuine dispute of material fact. Mr. Arredondo and A.F.A.J. did not apply for asylum when they arrived to the port of entry. Applying for asylum requires filing a Form I-589, Application for Asylum and for Withholding of Removal. *See* 8 C.F.R. §§ 208.3, 1208.3. Plaintiffs filed these applications once they were in removal proceedings. *See* Plaintiffs' Ex. UUU (Dkt. 115-72) at -805-806. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 18. | All individuals who appear inadmissible and express a fear of return are referred to secondary for further processing.<br><br>(*See* Officer Elguezabal Depo at 34:15-20; CBP 30(b)(6) Depo at 95: 2- | **DISPUTED**.  Plaintiffs did not "appear inadmissible" when they approached the Laredo Port of Entry. They asked for asylum, which should have resulted in being referred for a "credible fear interview," not being "referred to secondary for further processing." Nothing about what Defendant did to these specific Plaintiffs was typical or same as what happens to "all individuals."  *See* |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| 12) | Excerpt of Cleivi Marilu Jerez Lara's Credible Fear Interview Transcript, dated May 24, 2018, Ex. E (reflecting that Mr. Arredondo's wife and two other daughters arrived at the same port of entry days before Plaintiffs, were not separated, and a credible fear interview was given just days later). |
| | The 30(b)(6) testimony relied on by Defendant does not support the asserted fact. There is no mention of "all individuals" being referred to "secondary" or being "referring" anywhere "for further processing." R. Harris Tr. 95:2-12, Ex. W. |
| | The Defendant's witness testimony describes what a "duty would be," it does not describe what happens to "all individuals who appear inadmissible and express a fear of return." H. Elguezabal Tr. 34:15-20, Ex. M. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' opinion that Plaintiffs did not "appear inadmissible" does not establish a genuine dispute of material fact. Plaintiffs were inadmissible to the United States because they did not have valid entry documents. Inadmissibility is defined in the Immigration and Nationality Act. *See* 8 U.S.C. § 1182(a)(7)(A)(i). The fact that Plaintiffs claimed a fear of return did not change the fact that they were inadmissible when they arrived at the port of entry. Further, Plaintiffs' cited exhibit (Ex. E, Dkt. 119-6), does not create a genuine dispute that individuals who claim a fear are not referred to secondary for further processing. Nowhere in Ex. E does Mr. Arredondo's wife explain how she was processed when she arrived at the Laredo Port of Entry, and whether she had prior immigration violations. Lastly, Plaintiffs read Defendant's cited exhibits in isolation. The fact is supported by both citations. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | fact.[5] | |
| **19.** | Mr. Arredondo and A.F.A.J. were referred to what is known as secondary processing.<br><br>(*See* Plaintiff's Depo at 40:8-17, 41:21-42:1, 42:6-10, 42:19-43:4, 64:17-65:1 (Dkt.122-2, Ex.1)) | **DISPUTED**.<br><br>Mr. Arredondo and A.F.A.J. were not told anything about what was being done to them, much less that they were "referred to secondary processing." The term "secondary processing" is not "known."<br><br>The testimony relied on by Defendant does not support the fact stated. There is no mention of "secondary processing" in the testimony. E.F.A.R. Tr. 40:8-17, 41:21-42:1, 42:6-10, 42:19-43:4, 64:17-65:1, Ex. O. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' assertion that the term "secondary processing" is not known does not establish a genuine dispute of material fact. Further, Defendant is not quoting Plaintiffs' testimony. Plaintiffs do not contend that Plaintiffs were referred to something other than secondary processing. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **20.** | In secondary, CBP officers gather initial information from the individuals. This includes fingerprinting and photographs. | **DISPUTED** as to the use of the term "secondary."<br><br>Undisputed that while in custody at the Laredo Port of Entry, CBP agents took all Mr. Arredondo's possessions from him and took his fingerprints and |

---

[5] Defendant previously moved to file the certain documents under seal because of its concern related to public disclosure of information protected by 8 CFR § 208.6.  The court denied this motion, holding that the "confidentiality provision does not apply to any disclosure to[] . . . [a]ny Federal, State, or local court in the United States considering any legal action[] . . . [a]rising from the proceedings of which the asylum application, credible fear determination, or reasonable fear determination is a part." 8 C.F.R. § 208.6(c)(2)(ii)." *See* Dkt.106, p. 2 n.1 (internal quotations omitted).

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* CBP 30(b)(6) Depo 73:9-25 (Dkt.122-2, Ex.2); Officer Elguezabal Depo at 120:16-22, 160:21-161:8 (Dkt.122-2, Ex.5)). | photograph. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' dispute as to the term "secondary" does not establish a genuine dispute of material fact. Plaintiffs do not contend that Plaintiffs were referred to something other than secondary processing. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **21.** Mr. Arredondo was fingerprinted.<br><br>(*See* Plaintiff's Depo at 57:18-58:4, 64: 17-65:1 (Dkt.122-2, Ex.1); Pinchas Decl. ¶ 3, Ex. 1 (A.F.A.J. depo) at 34:10-12 (Dkt.122-3)). | Undisputed. |
| **22.** Mr. Arredondo was searched via a pat down over his clothes.<br><br>(*See* Plaintiff's Depo at 42:25-43:4; 45:1-4 (Dkt.122-2, Ex.1)). | Undisputed. |
| **23.** Through his fingerprints, it was discovered that Mr. Arredondo was previously encountered by U.S. Border Patrol agents in Laredo, Texas on or about December 10, 2006, and falsely identified himself as a Mexican citizen | Undisputed that Mr. Arredondo entered the U.S. more than 12 years prior to his May 2018 entry with his daughter A.F.A.J.<br><br>Undisputed that when apprehended in 2006, Mr. Arredondo gave authorities a different surname.<br><br>**DISPUTED** to this extent that the |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| by the name of Esbin Fernando Ramirez-Lopez.<br><br>(*See* Long Decl. at ¶¶ 5C-D, Exs. 3-4 (Mr. Arredondo's Record of Sworn Statement and Form I-213)(Dkt.122-7); CBP 30(b)(6) Depo at 187:11-188:2 (Dkt.122-2, Ex.2); Plaintiff's Depo at 16:15-17:8, 18:22-24, 19:7-20 (Dkt.122-2, Ex.1)). | phrasing used by Defendant suggests Mr. Arredondo concealed or was not forthcoming about his prior encounter with CBP. The record, including evidence produced by Defendant, establishes that Mr. Arredondo disclosed this information to officers at the Laredo Port of Entry and was willing to answer any questions about his prior encounter with CBP. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 98-99, 117 and Exhibit 29 attached thereto. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' additional assertions do not establish a genuine dispute of material fact. The undisputed fact does not suggest that Mr. Arredondo concealed his prior immigration history. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| 24. | In 2018, prior immigration violations, including a previous unlawful entry, were considered when CBP exercised its discretionary authority to process an inadmissible noncitizen, which may result in separation of a family unit to effectuate detention.<br><br>(*See* Officer Nieves Depo at 97:14-24, 141:18-22, 206:6-11 (Dkt.122-3, Ex.2); CBP 30(b)(6) Depo at 232:2-14 (Dkt.122-2, Ex.1)). | **DISPUTED** that in 2018 (or at any relevant time) CBP had "discretionary authority" to separate an asylum-seeking adult from his child on the purported basis of a prior civil immigration violation that was more than ten years previous. *See* 8 U.S.C. § 1182(a)(9); *see also*, *Self -Help Guide: Do you Just Want to Go Home? Information on Voluntary Departure*, U.S. Dep't of J. Executive Ofc., https://www.justice.gov/media/1211416/dl?inline (last visited Jan. 16, 2023), Ex. H. Furthermore, CBP agents certainly knew or should have known this law, as "the unified border entity" that is charged with "facilitating lawful international |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | travel." *See About CBP*, U.S. Customs and Border Protection https://www.cbp.gov/about (last visited Jan. 16, 2024), Ex. A. |
| **Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' cited Exhibits A and H (Dkts. 119-2, 119-9) do not establish a genuine dispute of material fact. Further, 8 U.S.C. § 1182(a)(9) also does not establish a genuine dispute of material fact. The statute Plaintiffs cite pertains to grounds of inadmissibility. This statute does not foreclose Defendant's ability to consider prior immigration violations when exercising discretion. Exhibits A and H (Dkts. 119-2, 119-9) also do not indicate that prior immigration violations cannot be considered when exercising discretion. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| 25. | Based on this prior immigration violation, which included the aggravating factors of Mr. Arredondo providing a false identity to U.S. Border Patrol, and providing a false nationality, OFO concluded that Mr. Arredondo would be processed as an expedited removal ("ER") case. Due to Mr. Arredondo's claim that he feared returning to his home country, the case was processed as an ER/credible fear ("ERCF") case, where his removal was put on hold pending the outcome of his credible fear determination during which time he would be detained. | **DISPUTED** that Mr. Arredondo's immigration record justified Defendant's conduct or that it provided "aggravating factors." The testimony relied on by Defendant does not speak to any "aggravating factors." R. Harris Tr. at 186:9-16, Ex. W; H. Elguezabal Tr. 173:18-174:9, Ex. M. Defendant has not produced any evidence concerning "aggravating factors." <br><br> **DISPUTED** that "the case was processed as an ER/credible fear ('ERCF') case, where his removal was put on hold pending the outcome of his credible fear determination during which time he would be detained." This assertion was not made to Mr. Arredondo. Nor is there any contemporaneous documentary or testimonial evidence from May 2018 that when Defendant forcibly separated Plaintiffs they intended to |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Long Decl., Ex. 4 (Dkt.122-7); CBP 30(b)(6) Depo at 186:9-16 (Dkt.122-2, Ex.2); Officer Elguezabal Depo at 173:18-174:9 (Dkt.122-2, Ex.5)). | offer Mr. Arredondo a credible fear interview.  To the contrary, Mr. Arredondo was shuttled from detention center to detention center within the country in chains for months without any suggestion that he would be offered a credible fear interview. When he was eventually offered what purported to be a credible fear interview, it was conducted unlawfully, amounting to an evaluation of his asylum claim, not an evaluation of his fear. |

**Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. CBP's 30(b)(6) witness testified about the "aggravating factor" of Mr. Arredondo "lying to the government during his first apprehension about his name and county of citizenship." *See* Marquez Decl., Ex. 2 (CBP's 30(b)(6) Depo) at 232:2-14) (Dkts. 93-2, 122-2). Further, the factors considered are outlined in Mr. Arredondo's I-213. *See* Long Decl., Ex. 4 (Dkt.122-7). Additionally, evidence of Mr. Arredondo being processed as an expedited removal pending credible fear is also outlined in Mr. Arredondo's I-213. *See id*. Mr. Arredondo was also provided information about the credible fear process at the Laredo Port of Entry. He also admitted in his deposition that he learned about the purpose of the credible fear interview while detained at Rio Grande Detention Center. *See* Taylor Opp'n Cert. (Dkt. 113-5) at Exhs. 1-2; Marquez Opp'n Decl. (Dkt. 113-3) at Ex.1 (Mr. Arredondo Depo) at 123:25-124:19.

| | | |
|---|---|---|
| 26. | Due to the fact that United States Immigration and Customs Enforcement ("ICE) family residential centers did not have space for a family unit with a male head of household at the time CBP processed Plaintiffs, to | **DISPUTED**.<br><br>This is a legal argument created by counsel in this case who asked their witnesses to speculate on what may have happened.  There is no evidentiary support for this assertion in the record.  There is no evidence that Defendant ever sought to place Plaintiffs in a family residential center |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| effect Mr. Arredondo's detention, he and A.F.A.J. had to be separated because they could not be detained together.<br><br>(*See* CBP 30(b)(6) Depo at 186:9-16; 271:3-9 (Dkt.122-2, Ex.2)). | but could not find a space Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 56-57 and Exhibits Z and V attached thereto; *infra* III ¶ 2.<br><br>Taken in context, Defendant's 30(b)(6) representative (who was not personally involved in the case and did not interview those who were) speculated that a lack of space at a family residential center was "likely," not that it was in fact the case.  R. Harris Tr. 186:9-188:2, Ex. W. |

**Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. CBP's 30(b)(6) witness interviewed several individuals who were personally involved in the case and who were working at the Laredo Port of Entry during the time Plaintiffs were there. *See infra* III, Deft's Response at ¶ 19 and exhibits thereto. Plaintiffs' citation to their Separate Statement ¶¶ 56-57 and Exhibits Z and V attached thereto do no support their contention. *See* Deft's Statement of Genuine Dispute (Dkt. 113-1) ¶¶ 56-57 and corresponding Evidentiary Objections (Dkt. 113-2). Further, despite no one have an independent recollection of Plaintiffs, the witness testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| 27. | The decision to separate was made during the initial intake process, which took place on May 16, 2018.<br><br>(*See* CBP 30(b)(6) Depo at 169:6-170:9, 187:11-188:9 (Dkt.122-2, Ex.2); Officer Nieves Depo at 81:16- | **DISPUTED** as to the date referenced. The dates on the documents Defendant produced are internally inconsistent and unauthenticated, and we do not know by whom or when they were created.  The documents produced by Defendant refer to Plaintiffs as arriving on May 16, 2018 and May 18, 2023.  Defendant was unable to produce any witness who had any knowledge when Plaintiffs arrived and |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| 22 (Dkt.122-3, Ex.2)). | were taken into Defendant's custody. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M.  The dates referenced are therefore unverified and disputed. |
| | No percipient witness in the case has admitted to having made the decision to separate Plaintiffs or provided his/her reasoning therefor.  R. Harris Tr. 22:1-6 (testifying that he spoke to no one who made the decision to separate Plaintiffs and speculating on who might have made the decision), Ex. W; *id.* (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs); H. Nieves Tr. 81:16-22 (describing designations of UACs only in general), Ex. L; *id.* 145:13-24 (testifying that he has no recollection of Plaintiffs). |
| | Undisputed that Defendant's decision to forcibly separate Plaintiffs was made by a still unidentified agent of Defendant on May 18, 2018 at the Laredo Port of Entry, prior to Defendant's forcible separation of father and daughter. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Both I-213s for Plaintiffs, indicate that they arrived at the Laredo Port of Entry on May 16, 2018. *See* Fondren Decl. (Dkt.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | 122-6) at Ex. 2 and Long Decl. (Dkt.122-7) at Ex.4. Additionally, Mr. Arredondo's declaration at Ex. HH (Dkt. 115-33) indicates they arrived on May 16, 2018. Further, Plaintiffs admit in their Statement of Undisputed Fact (Dkt. 114-2) at ¶ 166 that Mr. Arredondo was transported to the Rio Grande Detention Center on May 18, 2018. Despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Lastly, Plaintiffs do not dispute that the decision to separate was made during the initial intake process. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. |

| | | |
|---|---|---|
| **28.** | The policy at the Laredo Port of Entry required a GS-14 Watch Commander or equivalent to concur with the separation.<br><br>(*See* Marquez Decl. at ¶ 7, Ex. 6 (Rodney Harris e-mail dated December 13, 2017 (Dkt.122-2); *see also* CBP 30(b)(6) Depo at 168:2-18 (Dkt.122-2, Ex.2)). | **DISPUTED**.<br><br>Defendant relies on a document that predates the ZTP (and the separation in this case) and is thus irrelevant. *See* Marquez Decl. at ¶ 7 (Dkt. 93-2). Defendant's witnesses testified that they received an email following the announcement of the ZTP instructing them differently. Following the announcement of the ZTP they were to separate any families arriving at the port of entry if the adult in the family had any prior immigration violation or criminal history. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 54 and Exhibit 28 attached thereto; H. Nieves Tr. 93:18-97:24 (testifying about instructions received for the Laredo port of entry following the announcement of the ZTP), Ex. L; H. Elguezabal Tr. 127:1-6 (same), Ex. M. |

**Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Plaintiffs do not identify, which witnesses testified as to receiving an email following the announcement of the "Zero Tolerance Policy" instructing them differently. Rather, Officer Nieves testified

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|

that he never received a different instruction. Further, Plaintiffs did not produce any evidence that this instruction changed after the pre-"Zero Tolerance Policy" email, but before Plaintiffs' separation. *See* Pinchas Reply Decl. at Ex. 1 (Officer Nieves Depo) at 65:3-16. Plaintiffs mischaracterize Exhibit 28 (Dkt. 115-90) for the same reasons set forth in Defendant's Statement of Genuine Dispute (Dkt. 113-1) ¶¶ 53-54 and (exhibits thereto). Nowhere in Plaintiffs' cited testimony (Ex. L, Dkt. 119-13) does Mr. Nieves refer to the "Zero Tolerance Policy." Also, Plaintiffs do not indicate what e-mail Mr. Nieves' is referring to. He discusses family separations. The "Zero Tolerance Policy" and family separations are independent concepts. As for Plaintiffs' Exhibit M (Dkt. 119-14), again Plaintiffs do not indicate what e-mail Officer Elguezabal is referring to and he also does not mention the "Zero Tolerance Policy." Both Mr. Nieves and the CBP 30(b)(6) witness testified that the "Zero Tolerance Policy" was not applied at the Laredo Port of Entry. *See* Deft's SUF 9 and exhibits thereto. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| 29. | The CBP Watch Commander, on duty at the relevant time, Cynthia Rodriguez, would have provided final approval for the decision to separate Mr. Arredondo and A.F.A.J.<br><br>(*See* CBP 30(b)(6) Depo at 168:2-18, 186:17-187:1 (Dkt.122-2, Ex.2)). | **DISPUTED**.<br><br>This assertion is not of a fact but is instead speculation. Its language that someone "*would* have provided" final approval supposes that the Court will find facts based on speculation. R. Harris Tr. 186:17-187:1, Ex. W. The testifying representative for Defendant admittedly had no percipient knowledge of this assertion. *Id.* 21:1-3. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time and investigated who would have been the Watch Commander on duty at the relevant time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections; *see also* Marquez Reply Decl. at Ex. 1 (CBP 30(b)(6) Depo) at 17:5-22:10, 25:7-29:25. Lastly, Plaintiffs do not dispute that the Watch Commander would have provided final approval for the decision to separate Mr. Arredondo and A.F.A.J. Accordingly, Plaintiffs fail to create a genuine

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | dispute of the stated material fact. | |
| **30.** | After the initial intake process, Mr. Arredondo and A.F.A.J. were referred to secondary for further processing.<br><br>(*See* CBP 30(b)(6) Depo at 74:1-3, 159:8-10 (Dkt.122-2, Ex.2)). | **DISPUTED**.<br><br>As stated above, the term "secondary" is not "known" and was not used with Plaintiffs in this case.<br><br>Defendant produced no witness or evidence supporting this assertion. The testimony Defendant cites to does not support the fact asserted.  *See* R. Harris Tr. 74:1-3 (describing generally "what we call hard secondary," but not testifying about Plaintiffs' experience at the Laredo port of entry), Ex. W; *Id.* 159:5-10 (describing generally processes involving "hard secondary," but not testifying about Plaintiffs' experience at the Laredo port of entry). |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' assertion that the term "secondary" is not known does not establish a genuine dispute of material fact. Despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Lastly, Plaintiffs do not dispute that after the initial intake process, Mr. Arredondo and A.F.A.J. were referred to secondary. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **31.** | Secondary at the Laredo Port of Entry in 2018 contained ten holding cells.<br><br>(*See* CBP 30(b)(6) Depo at 77:11-14 (Dkt.122-2, Ex.2)). | **DISPUTED**.<br><br>The testimony Defendant cites to does not support the fact asserted. Defendant's 30(b)(6) representative did not testify that "[s]econdary at the Laredo Port of Entry in 2018 contained ten holding cells."  He |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | testified that "there *should* have been ten." R. Harris Tr. 77:11-14, Ex. W. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs do not dispute that there were any more or any less holding cells than what the CBP 30(b)(6) witness testified to. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| 32. | Mr. Arredondo was never prosecuted nor referred for prosecution at any relevant time in this case.<br><br>(*See* CBP 30(b)(6) Depo at 292:6-293:12 (Dkt.122-2, Ex.2)). | **DISPUTED** to the extent that Defendant is asserting that it never contemplated prosecution of Mr. Arredondo or that Defendant intended to prosecute him when it separated Mr. Arredondo from his daughter. *See* M. Burke Tr. 48:4-11, 57:16-58:6 Ex. T (testifying that The Rio Grande Processing Center is used by the Marshals for criminally accused "pretrial inmates").<br><br>The testimony Defendant cites to does not support the fact asserted. The deponent made no assertion that Mr. Arredondo was "never prosecuted nor referred for prosecution." *See* R. Harris Tr. 292:6-293:12 (discussing prosecutions for illegal entry generally and testifying based on review of the file, not personal knowledge, that a charge of illegal entry was not warranted in this case), Ex. W.<br><br>Undisputed that Mr. Arredondo never engaged in any conduct that could have resulted in prosecution and that he was not prosecuted. |

**Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' additional unsubstantiated assertions do not establish a genuine dispute of material fact and Plaintiffs agree he was never

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| referred for prosecution. *See* Plaintiffs' SOF 214 (Dkt. 114-2). The mere fact that ICE's 30(b)(6) witness's testified Rio Grande Detention Center may have been used by the Marshals for pretrial inmates does not suggest that prosecution was ever contemplated. The ICE 30(b)(6) also testified that the Rio Grande Detention Center was also used to detain individuals who were placed in expedited removal. *See* Plaintiffs' Ex. T (Dkt. 119-21) at 58:10-17. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| 33. | The practice at the Laredo Port of Entry was to keep a parent and child together and not effectuate a separation until the child was ready for transfer to the custody of Office of Refugee Resettlement ("ORR") at BCFS Health and Human Services formerly known as Baptist Child and Family Services ("BCFS"), in San Antonio, Texas.<br><br>(*See* CBP 30(b)(6) Depo at 257:13-258:1 (Dkt.122-2, Ex.2), Officer Nieves Depo at 131:20-25, 162:9-15 (Dkt.122-3, Ex. 2 )). | DISPUTED "the practice at the Laredo Port of Entry" is not at issue in this litigation.<br><br>Mr. Arredondo testified that the asserted "practice at the Laredo Port of Entry" is not what occurred in this instance. E.F.A.R. Tr. 72:7-16 (testifying that he was separated from A.F.A.J. approximately six hours before she was taken from the Laredo port of entry), Ex. O. Defendant was unable to produce any witness that had any knowledge of how Plaintiffs (or those with whom they were held) were treated at the Laredo port of entry or any witness who spoke to someone who had any knowledge of how Plaintiffs were treated at the Laredo port of entry. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves Tr. 81:16-22 (describing designations of UACs in general), Ex. L; *id.* 145:13-24 (testifying that he has no recollection of Plaintiffs); H. Elguezabal Tr. 133:6-9 (same), Ex. M. Mr. Arredondo's testimony is |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | therefore undisputed. |
| **Moving Party's Response:** Plaintiffs do not cite to sufficient evidence to establish a genuine dispute of material fact. While Mr. Arredondo's testimony may suggest that the practice was not adhered to, A.F.A.J.'s testimony suggests otherwise. *See infra* Deft's SUF 35 and exhibits thereto. Plaintiffs' internally inconsistent testimony is insufficient to create a genuine issue of material fact. Despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **34.** BCFS is an independent contractor that ORR maintains a cooperative agreement with to provide housing and services to unaccompanied children or "UACs" in ORR custody.<br><br>(*See* Declaration of James De La Cruz, at ¶ 6, Ex. A (cooperative agreement)(Dkt.122-8)). | **DISPUTED.** BCFS is not an independent contractor. Rather, it is a grantee recipient of hundreds of millions of dollars of federal funds annually, under contract to the US Department of Health and Human Services' (HHS") Office of Refugee Resettlement ("ORR"). BCFS was reviewed and evaluated by HHS's Office of Inspector General in December 2018, which found that BCFS failed to comply with federal and state requirements related to the health and safety of unaccompanied alien children. *infra* III ¶¶ 5-6, 9.<br><br>Whether or not BCFS has a "cooperative agreement" with ORR is irrelevant. BCFS, and its employees, acted and act as agents of Defendant, charged by Defendant with the care of children in Defendant's custody. *See* HHS 30(b)(6) J Gonzalez Tr. 19:4-19 (testifying that in 2018, in his capacity as an ORR employee, he oversaw the staff responsible for the care of children at BCFS, referring to BCFS |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | as "our shelter"), Ex. S. |
| | The question of whether BCFS and its employees are sufficiently removed from Defendant to qualify as an independent contractor for purposes of liability is a question best left to the fact finder. *See Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997). |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' additional unsubstantiated assertions do not establish a genuine dispute of material fact. Plaintiff cites to *infra* III at ¶¶ 5-6, 9, none of which dispute the fact that BCFS is an independent contractor.  Additionally, Plaintiffs cite to legal authority, which is contrary to the Court's Standing Order at pg. 8. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **35.** | Mr. Arredondo and A.F.A.J. were separated ten minutes before A.F.A.J. departed from the Laredo Port of Entry to be transferred to the custody of ORR at BCFS.<br><br>(*See* A.F.A.J.'s Depo at 37:4-39:24 (Dkt.122-3, Ex.1)). | **DISPUTED**.<br><br>A.F.A.J. was a distressed and terrified 12-year-old at the time the separation occurred.  Mr. Arredondo, who was an adult at the time of the separation testified that he was separated approximately six hours before he witnessed A.F.A.J. being taken from the Laredo port of entry.  E.F.A.R. Tr. 72:7-16, Ex. O. |

**Moving Party's Response:** Plaintiffs do not cite to sufficient evidence to establish a genuine dispute of material fact. Plaintiffs' internally inconsistent testimony is insufficient to create a genuine issue of material fact. A.F.A.J.'s testimony is consistent with the practice at the time, corroborating the testimony of the CBP 30(b)(6) witness. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **36.** | Since it had been determined that Mr. | **DISPUTED** to the extent that Defendant is characterizing its |

29

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Arredondo and A.F.A.J. were going to be separated, and A.F.A.J. did not have a known parent or legal guardian in the United States who could care for her, A.F.A.J. was processed as an unaccompanied child or "UAC."<br><br>(*See* CBP 30(b)(6) Depo at 270:25-271:9 (Dkt.122-2, Ex.2)). | designation of A.F.A.J. as an UAC as justified.<br><br>A.F.A.J.'s mother and two sisters were being held together in Defendant's custody; Defendant was therefore aware that A.F.A.J. had a parent in the United States who could care for her. *See* Ex. E.<br><br>Undisputed that Defendant wrongfully declared A.F.A.J. to be "unaccompanied." |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' additional unsubstantiated assertions do not establish a genuine dispute of material fact. Further, Exhibit E (Dkt. 119-6) does not support the contention that at the time of processing on May 16, 2018, the Defendant was aware of her mother's whereabouts. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| 37. | The practice in Laredo was to process the minor child as a UAC before physical separation so the parent is with the child during processing and in order to meet the statutory and policy time requirements for referring and transferring custody of all UACs to ORR custody.<br><br>(*See* Officer Nieves Depo at 36:14-18, 81:16-22 (Dkt.122-3, Ex.2); CBP 30(b)(6) Depo 133:21-134:5, 174:21-175:5, 232:2-14, 257:23-258:11 | **DISPUTED** "the practice at the Laredo Port of Entry" is not at issue in this litigation.<br><br>Mr. Arredondo testified that he was separated from A.F.A.J. approximately six hours before she was taken from the Laredo port of entry. E.F.A.R. Tr. 72:7-16, Ex. O. Defendant failed to produce any witness who had any knowledge of how Plaintiffs were treated at the Laredo port of entry or any representative witness who spoke to anyone had any knowledge of how Plaintiffs were treated at the Laredo port of entry. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (Dkt.122-2, Ex.2)). | Plaintiffs), Ex. W; H. Nieves Tr. 81:16-22 (describing designations of UACs in general), Ex. L; *id.* 145:13-24 (testifying that he has no recollection of Plaintiffs); H. Elguezabal Tr. 133:6-9 (same), Ex. M. Mr. Arredondo's testimony is therefore undisputed. Furthermore, "the TVPRA does not grant CBP agents discretion to make pre-emptive determinations that a parent *might become* unavailable." *C.M. v. United States*, 2023 WL 7102132, at *11 (D. Ariz. Oct. 24, 2023) (emphasis in original) (citing 6 U.S.C. § 279(g)). |
| **Moving Party's Response**: Plaintiffs do not cite to sufficient evidence to establish a genuine dispute of material fact. Plaintiffs' internally inconsistent testimony is insufficient to create a genuine issue of material fact. A.F.A.J.'s testimony is consistent with the practice at the time, corroborating the testimony of the CBP 30(b)(6) witness. Despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Additionally, Plaintiffs cite to legal authority, which is contrary to the Court's Standing Order at pg. 8. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | | |
|---|---|---|
| **38.** | Mr. Arredondo remained in CBP custody until May 18, 2018.<br><br>(*See* Long Decl. at ¶ 5C, Ex.2 (Custody Log) (Dkt.122-7)). | **DISPUTED**.<br><br>The dates on the documents Defendant produced are internally inconsistent and unauthenticated, as we do not know when they were created or by whom. The documents produced by Defendant refer to Plaintiffs as arriving on May 16, 2018 and May 18, 2023. Mr. Arredondo testified that he |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | was held at the Laredo port of entry for a day and a half. E.F.A.R. Tr. 75:18-20, Ex. O. Defendant failed to produce any witness who had any knowledge of the date on which Plaintiffs arrived at the Laredo Port of Entry, were taken into Defendant's custody, and were moved to other facilities. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. The dates referenced are therefore unverified and disputed. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Both I-213s for Plaintiffs, indicate that they arrived at the Laredo Port of Entry on May 16, 2018. *See* Fondren Decl. (Dkt. 122-6) at Ex. 2 and Long Decl. (Dkt. 122-7) at Ex. 4. Further, Plaintiff admits in their Statement of Undisputed Fact (Dkt. 114-2) at ¶ 92 that they arrived together at the Laredo Port of Entry on May 16, 2018. Additionally, Mr. Arredondo's declaration at Ex. HH (Dkt. 115-33) indicates they arrived on May 16, 2018. Mr. Arredondo testified that he remained at the Laredo Port of Entry for about a day and a half. *See* Plaintiffs' Ex.O (Dkt. 119-16) at 75:18-20. Considering he arrived to the Laredo Port of Entry in the early evening on May 16th, his transfer on May 18th is consistent with his own representation of how long he was at the Laredo Port of Entry. Moreover, ICE's EARM Person History record shows that Mr. Arredondo entered ICE custody on May 18, 2018. *See* Lynch Decl. at Ex. 1 (Dkt. 122-5). Plaintiffs also admit in their Statement of Undisputed Fact (Dkt. 114-2) at ¶ 166 that Mr. Arredondo was transported to the Rio Grande Detention Center on May 18, 2018. Further, despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See*

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Defendant's responses to Plaintiff's Evidentiary Objections. Lastly, Plaintiffs do not contend what day they believe Mr. Arredondo was released from the Laredo Port of Entry. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | | |
|---|---|---|
| **39.** | Mr. Arredondo was provided breakfast, lunch, and dinner at the Laredo Port of Entry.<br><br>(*See* Plaintiff's Depo at 76:4-9 (Dkt.122-2, Ex.1)). | Undisputed. |
| **40.** | In 2018, the Laredo Port of Entry had a contract with a local franchise to provide food.<br><br>(*See* Officer Nieves Depo at 120:24-121:4 (Dkt.122-3, Ex.2)). | **DISPUTED** but irrelevant.<br><br>To prove this assertion, the best evidence rule would require production of this document. No such document was produced. The deposition testimony cited does not establish the fact, it merely reflects what one agent "understood" to be the case. *See* H. Nieves Tr. 120:21-121:4, Ex. L. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The relevance of this fact is to establish that CBP provided food to those held in custody, including Mr. Arredondo. Mr. Arredondo does not dispute that he was provided with three meals a day. *See supra* Deft's SUF 39 and exhibits thereto. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **41.** | Individuals housed at the Laredo Port of Entry were provided three meals a day, as well as water, and snacks if requested. | **DISPUTED** the practice generally for individuals at the Laredo port of entry is not at issue in this litigation but rather, what is at issue is the treatment of Plaintiffs.<br><br>The testimony Defendant relies on |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Officer Nieves Depo at 121:5-7, 121:11-24, 122:12-123:2 (Dkt.122-3, Ex.2); Officer Elguezabal Depo at 189:16-24, 191:22-192:22 (Dkt.122-2, Ex.5)). | reflects those witnesses understanding of usual procedures, not what actually occurred in this instance. Mr. Arredondo testified (in part) that, even if requested, snacks were not provided. E.F.A.R. Tr. 76:10-77:9, Ex. O. Defendant was unable to produce any witness who had any knowledge of how Plaintiffs were treated at the Laredo port of entry or any witness who spoke to anyone with any knowledge of how Plaintiffs were treated at the Laredo port of entry. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. Mr. Arredondo's testimony about what occurred is therefore undisputed. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Additionally, it is undisputed that Plaintiffs received the requisite number of meals as well as water while at the Laredo Port of Entry. *See infra* Deft's SUF 39 and exhibits thereto; *see also* Marquez Opp'n Decl. at Ex.1 (Dkt. 113-3) (Mr. Arredondo's Depo) at 50:17-19. As for snacks, Mr. Arredondo never asked for snacks. *See* Plaintiffs' Ex.O (Dkt. 119-16) (Mr. Arredondo's Depo) at 76:15-17. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. ||
| **42.** Individuals held at the Laredo Port of Entry were also provided with cots or | **DISPUTED** the practice generally for individuals at the Laredo port of entry is not at issue in this litigation but rather what is at issue is the treatment |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| mats in their cells.<br><br>(*See* Long Decl. at ¶ 5C, Ex.2 (Dkt.122-7); Officer Elguezabal Depo at 197:23-198:1 (Dkt.122-5, Ex.5); CBP 30(b)(6) Depo 82:5-11 (Dkt.122-2, Ex.2)). | of Plaintiffs.<br><br>Mr. Arredondo and A.F.A.J. both testified that they were not provided with either a cot or a mat during the time they were detained at the Laredo port of entry.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 125, 162, 164 and Exhibits BBBB, HH and CCCC attached thereto; E.F.A.R. Tr. 78:8-80:2, Ex. O; A.F.A.J. Tr. 39:6-10, Ex. E.  Defendant was unable to produce any witness who had any knowledge of how Plaintiffs were treated at the Laredo port of entry or any witness who spoke to anyone who had any knowledge of how Plaintiffs were treated at the Laredo port of entry.  R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M.  Mr. Arredondo and A.F.A.J.'s testimony is therefore undisputed. |
| **Moving Party's Response:** Plaintiffs do not provide sufficient evidence to create a genuine dispute of material fact. Plaintiffs' citations to their Separate Statement (Dkt. 114-2) does not create a genuine issue of material fact. *See* Deft's Statement of Genuine Dispute (Dkt. 113-1) at ¶¶ 125, 162, 164 and exhibits thereto. Further, despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Additionally, Defendant has corroborating documents. *See* Long Decl. at ¶ 5C, Ex.2 (Dkt. 122-7). Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| **43.** Holding cells were checked every fifteen minutes.<br><br>(*See* Officer Elguezabal Depo at 192:19-22 (Dkt.122-2, Ex.5); CBP 30(b)(6) Depo at 79:10-14 (Dkt.122-2, Ex.2)). | **DISPUTED** the practice generally for individuals at the Laredo port of entry is not at issue in this litigation but rather what is at issue is the treatment of Plaintiffs.<br><br>Mr. Arredondo testified that he and other adults were ignored by Defendant's employees at the Laredo port of entry.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 127, 165 and Exhibit HH attached thereto; E.F.A.R. Tr. 76:20-25, Ex. O.  Defendant was unable to produce any witness that had any knowledge of how Plaintiffs were treated at the Laredo port of entry or any witness who spoke to anyone had any knowledge of how Plaintiffs were treated at the Laredo port of entry.  R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. Defendant produced no documentary evidence to establish the asserted fact.<br><br>Mr. Arredondo's testimony is therefore undisputed. |
| **Moving Party's Response:** Plaintiffs do not provide sufficient evidence to create a genuine dispute of material fact. Plaintiffs' citations to their Separate Statement (Dkt. 114-2) does not create a genuine dispute of material fact. *See* Deft's Statement of Genuine Dispute (Dkt. 113-1) at ¶¶ 127, 165 and exhibits thereto. Further, despite no one having an independent recollection of Plaintiffs, the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | Lastly, Defendant has corroborating documents. *See* Long Decl. at ¶ 5C, Ex.1 (Dkt. 122-7), Fondren Decl. at Ex.1 (Dkt. 122-6). Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. |

**44.** | On May 18, 2018, Mr. Arredondo was transferred into ICE custody.<br><br><br>(*See* Long Decl. at ¶ 5C, Ex.2 (Dkt.122-7); Declaration of Jason Lynch "Lynch Decl." at ¶ 5, Ex.1 (Dkt.122-5)). | **DISPUTED**.<br><br>The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who created them or when they were created. The documents produced by Defendant refer to Plaintiffs as arriving at the Laredo Port of Entry on both May 16, 2018 and May 18, 2023. Defendant was unable to produce any witness who had any knowledge of the date on when Plaintiffs arrived and were taken into Defendant's custody. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. The dates referenced are therefore unverified and disputed. |

| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Both I-213s for Plaintiffs, indicate that they arrived at the Laredo Port of Entry on May 16, 2018. *See* Fondren Decl. (Dkt. 122-6) at Ex. 2 and Long Decl. (Dkt. 122-7) at Ex.4. Additionally, Mr. Arredondo's declaration at Ex. HH (Dkt. 115-33) indicates they arrived on May 16, 2018. Mr. Arredondo testified that he remained at the Laredo Port of Entry for about a day and a half. *See* Plaintiffs' Ex.O (Dkt. 119-16) at 75:18-20. Considering he arrived to the Laredo Port of Entry in the early evening on May 16th, his transfer on May 18th is consistent with his own representation of how long he was at the Laredo Port of Entry. Moreover, ICE's EARM Person History record shows that Mr. Arredondo entered ICE custody on May 18, |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| 2018. *See* Lynch Decl. at Ex. 1 (Dkt. 122-5). Further, Plaintiffs admit in their Statement of Undisputed Fact (Dkt. 114-2) at ¶ 166 that Mr. Arredondo was transported to the Rio Grande Detention Center on May 18, 2018. Lastly, Plaintiffs do not contend what day they believe Mr. Arredondo was released from the Laredo Port of Entry. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **45.** On May 17, 2018, A.F.A.J. was admitted to BCFS in San Antonio, Texas, and transferred to the custody of ORR.<br><br>(*See* A.F.A.J.'s Depo 42:19-25 (Dkt.122-3, Ex.1); *see also* Declaration of Kevin Duvall "Duvall Decl." at ¶ 3, Ex. 2 (Initial Intake Assessment)(Dkt.121-Under Seal)). | **DISPUTED**.<br><br>The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who prepared them or when they were created. The documents produced by Defendant refer to Plaintiffs as arriving at the Laredo Port of Entry on both May 16, 2018 and May 18, 2023. Defendant was unable to produce any witness who had any knowledge of the date on when Plaintiffs arrived and were taken into Defendant's custody. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M; Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; G. Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q; *see also id.* 109:11-110:10, 112:7-18 (testifying that some information on BCFS forms |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | is as of the time *printed* rather than the time completed, and testifying that some forms in A.F.A.J.'s BCFS file were printed after she was discharged from BCFS). The dates referenced are therefore unverified and disputed. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Both I-213s for Plaintiffs, indicate that they arrived at the Laredo Port of Entry on May 16, 2018. *See* Fondren Decl. (Dkt. 122-6) at Ex. 2 and Long Decl. (Dkt. 122-7) at Ex.4. Additionally, Mr. Arredondo's declaration at Ex. HH (Dkt. 115-33) indicates they arrived on May 16, 2018. A.F.A.J.'s transfer on May 17, 2018, is consistent with the fact that she left the Laredo Port of Entry prior to Mr. Arredondo. *See* Deft's SUF at 45 *supra* and exhibits thereto. Lastly, Plaintiffs do not contend what day they believe A.F.A.J. was released from the Laredo Port of Entry and admitted to BCFS. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| 46. | BCFS is an emergency shelter and one of ORR's least restrictive environments.<br><br>(*See* Marquez Decl. at ¶ 5, Ex. 4 (HHS 30(b)(6) Depo) at 29:2-10 (Dkt.122-2)) | **Disputed**. BCFS is a provider of temporary shelter and foster care services at multiple locations. In 2018, BCFS operated eight shelter facilities and eight foster care homes in Texas. The "emergency" designation testimony offered by one of Defendant's witnesses did not acknowledge the size of BCFS or the breadth of its many offerings. It was not specific as to the location to which A.F.A.J. was sent. *Infra* III ¶¶ 7-8. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Plaintiff cites *infra* III ¶¶ 7-8, however, this does not contravene the fact that A.F.A.J. was housed at BCFS at an emergency shelter, which is one of ORR's least restrictive environments. Further, the HHS 30(b)(6) witness testified as to A.F.A.J.'s time in ORR custody and her specific placement, as sought by Plaintiff's Notice of Deposition pursuant to Fed.R.Civ.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | P. 30(b)(6). Lastly, Plaintiffs do not contend that she was placed anywhere other than an emergency shelter. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. |
| **47.** In 2018, upon a UAC's arrival, BCFS would begin the preliminary intake assessment.<br><br>(*See* HHS 30(b)(6) Depo at 79:1-6, 17-23 (Dkt.122-2, Ex.4)). | **DISPUTED**.<br><br>This is not a factual assertion but is instead an assertion of what "would" potentially happen.  BCFS is a provider of temporary shelter and foster care services at multiple locations.  In 2018, BCFS operated eight shelter facilities and eight foster care homes in Texas.  The testimony relied on by Defendant does not establish which kind of BCFS facility was being discussed, nor does it support that BCFS began preliminary intake assessments at the time a child arrived. J. Gonzalez Tr. 79:1-23 (testifying that how soon after a child's arrival a shelter might begin an assessment was determined on a case-by-case bases), Ex. E; *infra* III ¶¶ 7-8. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Plaintiff cites *infra* III ¶¶ 7-8, which does not contravene that a preliminary intake assessment is performed on a UAC, upon arrival. Additionally, the HHS 30(b)(6) witness, specifically responded to the question "So upon an unaccompanied minor's arrival at BCFS, what happens next to that unaccompanied minor?" *See* Marquez Reply Decl. at Ex. 3 (HHS 30(b)(6)(Depo) at 78:23-25. Plaintiffs mischaracterize his testimony. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **48.** This preliminary intake assessment determines whether that emergency shelter is the appropriate place to | **DISPUTED** as to the characterization of the testimony.<br><br>The 30(b)(6) representative testified |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| house the minor considering the minor's physical and emotional state.<br><br>(*See* HHS 30(b)(6) Depo at 80:15-19 (Dkt.122-2, Ex.4)). | that the purpose of the "72-hour intake assessment" is to "determine if a child is in visible distress, injured; uncontrollably sad or in any direction . . . [i]f the child is obviously sick, has a high temperature of 106. . . . we are going to proceed with our standard operating procedures."  J. Gonzalez Tr. 80:7-81:2, Ex. E.  The case manager responsible to A.F.A.J. during the time she was held at BCFS testified that "during that initial intake assessment, we cover rules and expectations.  And that was pretty much it."  G. Alvarez-Ramos Tr. 50:8-20, Ex. Q. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Further, Plaintiffs do not dispute that the purpose of the initial intake assessment is to evaluate whether the child is in the proper setting. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| 49. | ORR's standard operating procedures require a full assessment of the child's mental, physical, social background so that the child can have a successful stay in a shelter.<br><br>(*See* HHS 30(b)(6) Depo at 80:24-81:6 (Dkt.122-2, Ex.4)). | **DISPUTED**.<br><br>Defendant's 30(b)(6) representative described this "full assessment" as for the purpose of identifying troublesome children – who identifying hear voices encouraging them to kill others, children have a "heightened medical situation," and children who are being held with their alleged smuggler. Gonzalez Tr. 81:24-83:25, Ex. E. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| stated undisputed fact. Further, Plaintiffs citation to the HHS 30(b)(6)'s testimony is mischaracterized. He was discussing a hypothetical situation. The initial intake assessment demonstrates the depth of the assessment. *See* Duvall Decl. at Ex. 1 (Dkt. 121-Under Seal). Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **50.** | After the preliminary assessment, an individual service plan is prepared for the child, which includes individual counseling and group counseling, each occurring once a week.<br><br>(*See* HHS 30(b)(6) Depo at 86:22-25, 87:4-25, 88:19-25 (Dkt.122-2, Ex.4)). | **DISPUTED**.<br><br>A.F.A.J. testified that she did not receive any therapy or counseling while at BCFS.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 144 and Exhibit BBBB attached thereto. Defendant failed to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone who has any personal knowledge of how A.F.A.J. was treated at BCFS.  Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; G. Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. A.F.A.J.'s testimony is therefore undisputed. |

**Moving Party's Response:** Plaintiffs do not provide sufficient evidence to create a genuine dispute of material fact. Despite no one having an independent recollection of A.F.A.J., the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Further, Defendant has documentary evidence reflecting that A.F.A.J. received counseling and was provided with an individual service plan. *See infra* Deft's SUF 56 and exhibits thereto; *see also* Duvall Opp'n Decl. (Dkt. 126-Under Seal) at Ex.1. Accordingly, Plaintiffs fail

42

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **51.** | ORR policy allows children to call their families at least twice a week. This doesn't include calls that may be needed to obtain reunification information. Also, if a child is in distress he/she may be provided with additional phone calls to family.<br><br>(*See* HHS 30(b)(6) Depo at 89:14-90:11(Dkt.122-2, Ex.4)). | **DISPUTED** as to the implication that the policy referenced was followed.<br><br>A.F.A.J.'s testimony and evidence in the record establishes that she was only allowed to speak to her father once during the entire time Defendant held her at BCFS; that call happened weeks after her arrival at BCFS. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 156-57 and Exhibits T, 61, and 68 attached thereto. A.F.A.J. also testified that she first spoke with her mother several weeks after Defendant transported A.F.A.J. to BCFS. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 155 and Exhibit BBBB attached thereto. Defendant was unable to produce any witness with any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone that has any personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q.<br><br>A.F.A.J.'s testimony is therefore undisputed. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| stated undisputed fact. Despite no one having an independent recollection of A.F.A.J., the witnesses testified as to the practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Additionally, documentary evidence as well as A.F.A.J.'s own testimony reflects the policy was complied with. *See infra* Deft's SUF 65-67 and exhibits thereto. Lastly, Plaintiffs do not dispute the policy as stated. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| 52. | The process of reunification begins as soon as the child comes into ORR custody.<br><br>(*See* HHS 30(b)(6) Depo at 105:13-19 (Dkt.122-2, Ex.4)). | **DISPUTED**.<br><br>Defendant never undertook to reunify A.F.A.J. with her father. Reunification was only accomplished after multiple court orders and intervention by counsel and elected officials.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 215, 221-39 and Exhibits R, II, RR, SS, TT, UU, VV, WW, XX, AAA, BBB, CCC, DDD, FFF, EEEE, GGGG and Dakin-Grimm Decl. ¶¶ 5, 7, 10 attached thereto. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. As for Plaintiffs' citations to their Separate Statement regarding the reunification of A.F.A.J. with Mr. Arredondo, *see* Defendant's Statement of Genuine Dispute (Dkt. 113-1) at ¶¶ 215, 221-39 and exhibits thereto. Lastly, Plaintiffs do not dispute the policy as stated or that A.F.A.J. was reunited with her mother. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 53. | ORR's reunification checklist must be completed before a child is released into a sponsor' custody. | **DISPUTED** to the extent that the document cited does not support the fact asserted.  The existence of a reunification checklist, Duvall Decl. ¶ 4, Ex. 3, says nothing of whether such a "reunification checklist *must be completed* before a child is released |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Duvall Decl. ¶ 4, Ex. 3 (Reunification Checklist) (Dkt.121- Under Seal)). | into a sponsor' custody." |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Further, they do not dispute that the steps taken in the checklist must be completed prior to release of a child. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **54.** | In 2018, the average length of stay in ORR custody was 60 days.<br><br>(*See* HHS 30(b)(6) Depo at 114:2-5 (Dkt.122-2, Ex.4)). | **DISPUTED** and irrelevant.<br><br>It is unclear whether the testimony cited by Defendant refers to the average length of time children stayed at all ORR shelters all BCFS shelters, all BCFS facilities or something else. It is also unclear what point in time in 2018 the purported average reflects. Moreover, the case manager responsible for A.F.A.J.'s care during the time she was held at BCFS was unable to provide an average length of stay for children at BCFS. *See* G. Alvarez-Ramos Tr. 254:18-259:11, Ex. Q. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs do not dispute that this was the average length of stay in ORR custody in 2018. Further, the question Mr. Gonzalez was asked was "how long, would you say, on average, an unaccompanied child is housed at BCFS before being released to a sponsor?" A: Are you talking today or in 2018? Q: That's a good question. Let's do 2018. A: At that point, average length of stay was 60 days per child. Marquez Reply Decl. at Ex.3 (*See* HHS 30(b)(6) Depo at 113:23-114:5. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **55.** | Once a child's case is approved for release, the child should be released | **DISPUTED**. This is not a factual assertion but is instead one person's |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| within 72 hours.<br><br>(*See* HHS 30(b)(6) Depo at 132-7-16 (Dkt.122-2, Ex.4)). | speculation as to what "should" occur. |

| | | |
|---|---|---|
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The HHS 30(b)(6) witness is speaking to best practices, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Deft's Responses to Plaintiffs' Evidentiary Objections. Further, Plaintiffs do not dispute that this is what should happen as stated. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 56. | A.F.A.J. had her own individualized service plan.<br><br>(*See* Duvall Decl. ¶ 2, Ex.1 (Individual Service Plan) (Dkt.122-4)). | **Disputed**.<br><br>The existence of a document titled "Individual Service Plan," Duvall Decl. ¶ 2, Ex. 1, does not establish that said document was in any was individualized for A.F.A.J. Defendant's 30(b)(6) witness and the case manager responsible for A.F.A.J.'s care during the time she was held at BCFS both testified that the document Defendant cites to reflects the "minimum" services that should be available to a child in ORR's custody.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 137 and Exhibits DDDD and FFFF attached thereto. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' assertion that A.F.A.J. was provided minimum services, *see* Dkt. 98-2 ¶ 137, does not create a genuine dispute of material fact. *See* Deft's Statement of Genuine Dispute (Dkt. 113-1) at ¶ 137 and exhibits thereto. Accordingly, Plaintiffs fail to create a genuine dispute of the stated | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | material fact. | |
| 57. | A.F.A.J. had her own bed in a room she shared with three other girls at BCFS.<br><br>(*See* A.F.A.J. Depo 44:19-25 (Dkt.122-3, Ex.1)). | Undisputed. |
| 58. | A.F.A.J. testified that she got along with the other girls in her room.<br><br>(*See* A.F.A.J. Depo at 45:1-2 (Dkt.122-3, Ex.1)). | Undisputed. |
| 59. | A.F.A.J. testified that she found her bed at BCFS comfortable.<br><br>(*See* A.F.A.J. Depo at 45:3-4 (Dkt.122-3, Ex.1)). | **DISPUTED** to the extent there is an implication that A.F.A.J. was comfortable in ORR custody at BCFS or that she was not suffering from sleep problems caused by Defendant's forcible separation of A.F.A.J. from her father.<br><br>A.F.A.J. testified that she had difficulty sleeping at BCFS. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 153 and Exhibit BBBB attached thereto. Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone who has any |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. A.F.A.J.'s testimony is therefore undisputed. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Defendant is relying on A.F.A.J's own testimony. Further, A.F.A.J. testified that at ***the beginning*** it was difficult for her to sleep. *See* Plaintiffs' Ex. BBBB (Dkt. 115-77) at 49:5-9. Also, A.F.A.J.'s clinical notes indicates that on May 18, 2018 and May 22, 2018 she denied having issues sleeping. *See* Duvall Opp'n Decl. at Ex. 1 (Dkt. 126-Under Seal). While witnesses may not have an independent recollection of A.F.A.J., there is overwhelming documentary evidence from A.F.A.J.'s ORR file about how she was doing while at BCFS. *See id*. at Exs. 1-2 (Dkt. 126-Under Seal). Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| 60. | A.F.A.J. attended school while she as at the shelter and her classes were in Spanish. The school was located at BCFS.  (*See* A.F.A.J. Depo at 45:5-14 (Dkt.122-3, Ex.1)). | Undisputed. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **61.** | A.F.A.J. testified that she liked the school.<br><br>(*See* A.F.A.J. Depo at 45:15-16 (Dkt.122-3, Ex.1)). | Undisputed. |
| **62.** | A.F.A.J. was provided clothing and shoes while at BCFS.<br><br>(*See* A.F.A.J. Depo at 46:21-24 (Dkt.122-3, Ex.1)). | Undisputed. |
| **63.** | While at BCFS, A.F.A.J. watched movies, played board games, made friends, and played football and baseball.<br><br>(*See* A.F.A.J. Depo at 46:21-47:16 (Dkt.122-3, Ex.1)). | **DISPUTED** to the extent that Defendant seeks to imply that A.F.A.J. was happy or enjoyed the time she was held at BCFS.<br><br>Testimony by A.F.A.J. and Mr. Arredondo, along with evidence produced by Defendant, shows that during the time she was held at BCFS, A.F.A.J. had difficulty sleeping, felt anxious and desperate, missed her family, and reported to BCFS that was very sad and worried.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 145-46, 153, 175 and Exhibits 55, BBBB, and CCCC attached thereto. Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. was treated or how she felt at BCFS or any |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | witness who spoke to anyone that has any personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. Mr. Arredondo and A.F.A.J.'s testimony on this issue is therefore undisputed. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Defendant is relying on A.F.A.J.'s own testimony. Defendant does not dispute that A.F.A.J. missed her family. *See* Defendant's Statement of Genuine Dispute (Dkt. 113-1) at ¶ 146. However, there is overwhelming corroborating evidence about how A.F.A.J. felt while she was at BCFS and the activities A.F.A.J. participated in. *See* Duvall Opp'n Decl. at Exs. 1-2 (Dkt. 126-Under Seal). Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| 64. | A.F.A.J. was able to take showers every night at BCFS.<br><br><br>(*See* A.F.A.J. Depo at 47:3-6 (Dkt.122-3, Ex.1)). | **DISPUTED**.<br><br>The testimony cited does not support the fact asserted.  A.F.A.J. testified that she was able to take showers during the time she was held at BCFS, and that when she took showers it was at night.  She did not testify that she was "able to take showers every night at BCFS." *See* A.F.A.J. Depo at 47:3-6. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Further, they do not contend that A.F.A.J. did not take a shower every night. A.F.A.J.'s daily activity logs reflect that A.F.A.J. did her

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| hygiene and took showers every day. *See* Duvall Opp'n Decl. at Ex. 2 (Dkt. 126-Under Seal). Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | | |
|---|---|---|
| 65. | A.F.A.J. was able to speak to her mother and cousin while at BCFS. (*See* A.F.A.J. Depo at 47:17-24 (Dkt.122-3, Ex.1)). | **DISPUTED** to the extent that Defendant seeks to imply that A.F.A.J. was able to speak with her mother and cousin throughout her time detained in ORR custody or that the alleged ORR policy regarding phone calls with families, ¶ 51 above, was followed in A.F.A.J.'s case.

A.F.A.J. testified that she first spoke with her mother *several weeks* after Defendant transported A.F.A.J. to BCFS. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 155 and Exhibit BBBB attached thereto. Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone that has any personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. A.F.A.J.'s testimony is therefore undisputed. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Defendant is citing to A.F.A.J.'s own testimony. Despite no one having an independent recollection of A.F.A.J., A.F.A.J. admits that she | |

51

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | was able to speak to her cousin every other day and that she also spoke to her mother and father while at BCFS. *See infra* Deft's SUF 66-67 and exhibits thereto. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **66.** | A.F.A.J. spoke to her cousin every other day.<br><br>(*See* A.F.A.J. Depo at 47:23-24 (Dkt.122-3, Ex.1)). | Undisputed. |
| **67.** | A.F.A.J. spoke to her father while at BCFS and learned he was in detention.<br><br>(*See* A.F.A.J. Depo at 48:8-14 (Dkt.122-3, Ex.1); Plaintiff's Depo at 99:19-22 (Dkt.122-2, Ex.1)). | **DISPUTED** to the extent that Defendant seeks to imply that A.F.A.J. spoke with her father more than once while detained in ORR custody at BCFS or that the ORR policy regarding phone calls with families, ¶ 51 above, was followed.<br><br>A.F.A.J.'s testimony and evidence in the record establishes that she was only able to speak to her father one time while Defendant held her at BCFS; that call happened weeks after her arrival at BCFS. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 156-57 and Exhibits 61, 68, and T attached thereto. Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness that spoke to anyone that has any personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q.  A.F.A.J.'s testimony is therefore undisputed.

Moreover, representatives for Defendant and documents produced by Defendant establish that Defendant had no tracking mechanism by which to arrange calls between parents and children that Defendant had separated. ORR shelters struggled to obtain information and facilitate communication between parents and children that Defendant had separated. *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 46, 49-50, 60, 65-70 and Exhibits JJ, YY, EEE, LLL, OOO, SSS, EEEE, and FFFF attached thereto. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Despite no one having an independent recollection of A.F.A.J., A.F.A.J. admits that she was able to speak to her cousin every other day and that she also spoke to her mother and father while at BCFS. *See supra* Deft's SUF 66 and exhibits thereto. Further, Plaintiffs' assertion that there was no tracking mechanism to arrange calls between parents and children does not create a genuine dispute of material fact. Plaintiffs fail to establish how that was at issue in this case. A.F.A.J. was able to communicate with her family, by and through her cousin as soon as May 18, 2018. *See* Duvall Opp'n Decl. at Ex.3 (Dkt. 126-Under Seal). The same applies to Mr. Arredondo who was also able to communicate with his family, by and through his niece as soon as May 18, 2018. *See infra* Deft's SUF 80 and exhibits thereto. Further, Ms. Ramos, A.F.A.J.'s case manager was able to track A.F.A.J.'s father and set up a call. *See* Plaintiffs' Ex. T (Dkt. 115-21-Portions Under Seal). Accordingly, Plaintiffs

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | fail to create a genuine dispute of the stated material fact. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **68.** | A.F.A.J. testified that she felt safe at the shelter.<br><br><br>(*See* A.F.A.J. Depo at 48:25-49:1 (Dkt.122-3, Ex.1); *see also* Duvall Decl. ¶ 5, Ex.4 (BCFS satisfaction survey) (Dkt.121-Under Seal)). | **DISPUTED**.<br><br>The document that Defendant cites to was prepared *by the case manager* assigned to A.F.A.J.'s care during the time she was held at BCFS—not by A.F.A.J.  *See* Duvall Decl. ¶ 5, Ex.4; *see also* A.F.A.J. Tr. 51:8-12 (testifying only that she completed her name at the bottom), Ex. N. Additionally, the portion of A.F.A.J.'s testimony Defendant cites to supports only that A.F.A.J. felt physically safe; it ignores A.F.A.J.'s testimony about her emotional and mental state of fear and despair.  *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 145-46, 153, 175 and Exhibits 55, BBBB, and CCCC attached thereto.  Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. felt at BCFS or any witness that spoke to someone that has any personal knowledge of how A.F.A.J. felt at BCFS.  Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. A.F.A.J.'s testimony on this issue is therefore undisputed. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| stated undisputed fact. Defendant is relying on A.F.A.J's own testimony. Further, A.F.A.J. never testified that she was afraid or in despair. While witnesses may not have an independent recollection of A.F.A.J., there is overwhelming documentary evidence from A.F.A.J.'s ORR file about how she was doing while at BCFS. *See* Duvall Opp'n Decl. at Exs. 1-2 (Dkt. 126-Under Seal). Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. ||

| 69. | A.F.A.J. was never punished at the shelter.<br><br><br>(*See* A.F.A.J. Depo at 49:2-4 Dkt.122-3, Ex.1)). | Undisputed. A.F.A.J. never engaged in any conduct for which punishment would or should have been considered. |
|---|---|---|
| 70. | A.F.A.J. learned from her case manager Glorimar that she would be reunited with her mother and sisters. Glorimar was nice to A.F.A.J. and A.F.A.J. testified that she felt comfortable discussing any problems with her.<br><br><br>(*See* A.F.A.J. Depo at 51:23-52:13 (Dkt.122-3, Ex.1)). | **DISPUTED**.<br><br>Defendant ignores and omits A.F.A.J.'s testimony on this issue. A.F.A.J. Tr. 94:4-14 (testifying that she did not trust her case manager (Glorimar) and only felt that she could speak to the case manager about things she needed, not how she felt), Ex. N. |

| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Defendant is relying on A.F.A.J's own testimony. Further, Plaintiffs do not dispute what she learned from Glorimar or that Glorimar was nice to her. Plaintiffs merely dispute the scope of what A.F.A.J. ||

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| shared with Glorimar. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **71.** | A.F.A.J.'s reunification checklist was completed and signed by her case manager on June 5, 2018. <br><br> (*See* Duvall Decl. ¶ 4, Ex. 3 (Dkt.121-Under Seal)). | Undisputed. |
| **72.** | On June 8, 2019, ORR approved the release of A.F.A.J. to her mother. <br><br> (*See* Duvall Decl. ¶ 6, Ex. 5 (UAC straight release approval) (Dkt.121-Under Seal)). | Undisputed. |
| **73.** | One June 9, 2018, A.F.A.J. was released from ORR custody to her mother in Los Angeles, California. <br><br> (*See* Duvall Decl. ¶ 7, Ex. 6 (Verification of Release) (Dkt.121-Under Seal)). | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| **74.** On May 18, 2018, Mr. Arredondo was transferred to the Rio Grande Detention Center.<br><br>(*See* Lynch Decl." ¶ 5, Ex.1 (Dkt.122-5); Marquez Decl. ¶ 4, Ex. 3 (ICE 30(b)(6) Depo) at 44:7-45:24 (Dkt.122-2)) | **DISPUTED**.<br><br>The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know by whom they were created or when they were created.  The documents produced by Defendant refer to Plaintiffs as arriving at the Laredo Port of Entry both on May 16, 2018 and May 18, 2023.  Mr. Arredondo testified that he was held at the Laredo Port of Entry for a day and a half. E.F.A.R. Tr. 75:18-20, Ex. O. Defendant was unable to produce any witness who had any knowledge of the actual date of Plaintiffs arrival or transfers.   R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. The dates referenced are therefore unverified and disputed. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Both I-213s for Plaintiffs, indicate that they arrived at the Laredo Port of Entry on May 16, 2018. *See* Fondren Decl. (Dkt. 122-6) at Ex. 2 and Long Decl.(Dkt.122-7) at Ex.4. Additionally, Mr. Arredondo's declaration at Ex. HH (Dkt. 115-33) indicates they arrived on May 16, 2018. Mr. Arredondo testified that he remained at the Laredo Port of Entry for about a day and a half. *See* Plaintiffs' Ex.O (Dkt. 119-16) at 75:18-20. Considering he arrived to the Laredo Port of Entry in the early evening on May 16th, his transfer on May 18th is consistent with his own representation of how long he was at the Laredo Port of Entry. Lastly, Plaintiffs do not contend what day they believe Mr. Arredondo was released from the Laredo Port of Entry. ||

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. |

| | | |
|---|---|---|
| **75.** | The Rio Grande Detention Center is used by ICE.<br><br>(*See* ICE 30(b)(6) Depo at 48:4-11 (Dkt.122-2, Ex.3)). | **DISPUTED** as incomplete.<br><br>The Rio Grande Processing Center, its actual name, is a privately owned, for-profit detention facility whose clients are ICE and the US Marshals Service.<br><br>Defendant's 30(b)(6) representative testified that the Rio Grande Processing Center is "used by the U.S. Marshals and ICE ERO." M. Burke Tr. 48:4-11, Ex. T. The Rio Grande Processing Center is used by the Marshals for criminally accused "pretrial inmates." *Id.* 57:16-58:6. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Further, Plaintiffs' assertion that the fact is incomplete does not create a genuine dispute of material fact. Defendant included the relevant fact. There is no indication that the U.S. Marshals Service were involved in this case, and thus no reason to include the portion of the testimony Plaintiffs cites. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **76.** | In 2018, there were a higher number of detainees in Rio Grande than usual, but Rio Grande was still within its capacity limits and there was no overcrowding problem.<br><br>(*See* ICE 30(b)(6) Depo at 65:20-66:9 | **DISPUTED**.<br><br>Mr. Arredondo testified that the room he was held in at the Rio Grande Detention Center was overcrowded. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 171 and Exhibits WWW and CCCC attached thereto. Defendant's ICE representative testified that she was unfamiliar with how population was tracked at the Rio Grande Detention Center and did not review historical data in preparing for her deposition. M. Burke Tr. 66:11-23, |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (Dkt.122-2, Ex.3)). | Ex. T. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertion that Rio Grande was overcrowded does not create a genuine dispute of material fact. The ICE 30(b)(6) witness did not testify that she was unfamiliar with how the population was tracked. She testified that she could speak to how ERO kept track of the crowd levels. *See* Plaintiffs' Ex. T (Dkt. 119-21) at 66:11-19. While the ICE 30(b)(6) did not review historical databases from 2018 to determine the actual population, she still had the foundation to testify as to overcrowding based on her knowledge of the capacity limits and the policy requiring the population in the facility to be within the capacity limit. *See id.* at 66:3-9. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **77.** In 2018, the Rio Grande Detention Center had an open housing layout for noncitizens, which is an open bay area that can hold 50-100 detainees.<br><br>(*See* ICE 30(b)(6) Depo at 60:1-7, 60:20-61:2, 61:7-17 (Dkt.122-2, Ex.3)). | Undisputed that the Rio Grande Detention Center was an open room.<br><br>**DISPUTED** as to the capacity. The testimony Defendant relies on does not support the fact asserted. Defendant's ICE representative testified that "*many* of our facilities have an open bay are . . . which *can* hold between 50 and a hundred detainees. . . . it varies by facility." M. Burke Tr. 61:9-13 (emphasis added), Ex. T.<br><br>DISPUTED as to whether the individuals held were all noncitizens. Defendant's ICE representative testified that she did not know what portion of the open housing space was occupied by noncitizens. *Id.* 61:3-6. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' do not contend that the Rio Grande Detention Center could hold any more or any less detainees in the general housing unit. Further, Plaintiffs mischaracterize the ICE's 30(b)(6) witness testimony about the number of noncitizens. The ICE 30(b)(6) witness was asked "So in the open housing, do you know how many bed spaces there were for noncitizens in the | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| relevant May 2018 period?" Plaintiffs did not ask in the entire deposition whether citizens were held with noncitizens, therefore Plaintiffs are taking the witnesses response out of context. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **78.** In 2018, in the Rio Grande Detention Center housing units, detainees would sleep on bunks beds.<br><br>(*See* ICE 30(b)(6) 67:5-7 (Dkt.122-2, Ex.3)). | Undisputed. |
| **79.** In 2018, Rio Grande Detention Center assigned one detainee to each bunk bed.<br><br>(*See* ICE 30(b)(6) 67:8-10 (Dkt.122-2, Ex.3)). | Undisputed. |
| **80.** On May 18, 2018, Mr. Arredondo arrived at the Rio Grande Detention Center and he was able to call his wife's niece.<br><br>(*See* Plaintiff's Depo at 84:22-85:15 (Dkt.122-2, Ex.1); *see also* Lynch | **DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who prepared them or when they were created.  The documents produced by Defendant refer to Plaintiffs as arriving t the Laredo Port of Entry both May 16, 2018 and May 18, 2023. Mr. Arredondo testified that he was held at the Laredo Port of Entry for a day and a half.  E.F.A.R. Tr. 75:18-20, |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Decl. ¶ 6b, Ex. 3 (Rio Grande Detainee Orientation Acknowledgement)(Dkt.122-5)). | Ex. O.  Defendant was unable to produce any witness who had any knowledge when Plaintiffs arrived and were taken into Defendant's custody. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M.  The dates referenced are therefore unverified and disputed. |
| | Undisputed that during his time at the Rio Grande Detention Center he was able to call his wife's niece. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Both I-213s for Plaintiffs, indicate that they arrived at the Laredo Port of Entry on May 16, 2018. *See* Fondren Decl. (Dkt. 122-6) at Ex. 2 and Long Decl.(Dkt.122-7) at Ex.4. Additionally, Mr. Arredondo's declaration at Ex. HH (Dkt. 115-33) indicates they arrived on May 16, 2018. Mr. Arredondo testified that he remained at the Laredo Port of Entry for about a day and a half. *See* Plaintiffs' Ex.O (Dkt. 119-16) at 75:18-20. Considering he arrived to the Laredo Port of Entry in the early evening on May 16th, his transfer on May 18th is consistent with his own representation of how long he was at the Laredo Port of Entry. Further, Plaintiffs admit in their Statement of Undisputed Fact (Dkt. 114-2) at ¶ 166 that he was transported to the Rio Grande Detention Center on May 18, 2018. Lastly, Plaintiffs do not contend what day they believe Mr. Arredondo made the call to his wife's niece. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| 81. | His wife's niece informed him about his wife's whereabouts. | Undisputed that his wife's niece provided information about his wife's whereabouts. |
|---|---|---|
| | | **DISPUTED** as to the omission of Mr. |

61

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Plaintiff's Depo at 82:19-83:12, 84:22-85:15 (Dkt.122-2, Ex.1); Lynch Decl. ¶ 6b, Ex. 3 (Dkt.122-5)). | Arredondo's testimony that his wife's niece had no information about A.F.A.J.'s whereabouts.  E.F.A.R. Tr. 85:2-10, Ex. O. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' additional assertion does not create a genuine issue of material fact since the fact does not suggest that his wife's niece also informed him about A.F.A.J.'s whereabouts. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **82.** On May 18, 2018, Mr. Arredondo was provided with bedding, personal hygiene products, and clothing.<br><br>(*See* Lynch Decl. ¶ 6a, Ex. 2 (Rio Grande Property Receipt)(Dkt.122-5); Plaintiff's Depo at 87:5-13 (Dkt.122-2, Ex.1); ICE 30(b)(6) 80:14-81:2 (Dkt.122-2, Ex.3)). | **DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know by whom they were created or when they were created.  The documents produced by Defendant refer to Plaintiffs as arriving at the Laredo Port of Entry on both May 16, 2018 and May 18, 2023.<br><br>Mr. Arredondo testified that he was held at the Laredo port of entry for a day and a half.  E.F.A.R. Tr. 75:18-20, Ex. O.  Defendant was unable to produce any witness who had any knowledge when Plaintiffs arrived and were taken into Defendant's custody. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M.  The dates referenced are |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | therefore unverified and disputed. |
| | Undisputed that at the Rio Grande Processing Center, Defendant provided Mr. Arredondo with a mattress and blanket (no pillow), some personal hygiene products, and a uniform. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of material fact. Both I-213s for Plaintiffs, indicate that they arrived at the Laredo Port of Entry on May 16, 2018. *See* Fondren Decl. (Dkt. 122-6) at Ex. 2 and Long Decl. (Dkt. 122-7) at Ex. 4. Additionally, Mr. Arredondo's declaration at Ex. HH (Dkt. 115-33) indicates they arrived on May 16, 2018. Mr. Arredondo testified that he remained at the Laredo Port of Entry for about a day and a half. *See* Plaintiffs' Ex.O (Dkt. 119-16) at 75:18-20. Considering he arrived at the Laredo Port of Entry in the early evening on May 16th, his transfer on May 18th is consistent with his own representation of how long he was at the Laredo Port of Entry. Lastly, Plaintiffs do not dispute the items Mr. Arredondo was provided. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **83.** | Mr. Arredondo was detained in an open area with about 30-40 people and he slept in a bunk bed.<br><br><br>(*See* Plaintiff's Depo at 86:16-87:2 (Dkt.122-2, Ex.1)). | Undisputed. |
| **84.** | Mr. Arredondo participated in activities such as religious services. | **DISPUTED.**<br><br>Mr. Arredondo testified that the only activity in which he participated was |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Plaintiff's Depo at 87:16-22 (Dkt.122-2, Ex.1)). | religious services. He did not participate in activities (plural) "such as" religious activities. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact and do not dispute that Mr. Arredondo attended religious services. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **85.** | Mr. Arredondo was provided with breakfast, lunch, and dinner every day. (*See* Plaintiff's Depo at 88:4-7, 15-17 (Dkt.122-2, Ex.1); ICE 30(b)(6) 81:3-6 (Dkt.122-2, Ex.3)). | Undisputed. |
| **86.** | Mr. Arredondo was able to take showers at Rio Grande Detention Center. (*See* Plaintiff's Depo at 104:25-105:4 (Dkt.122-2, Ex.1)). | **DISPUTED** as to the characterization that Mr. Arredondo could shower at will. Undisputed that the Rio Grande Detention Center had showers and that at times Mr. Arredondo was able to access the showers. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact and do not dispute that Mr. Arredondo was able to shower at the Rio Grande Detention Center. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **87.** | Mr. Arredondo saw a dentist at Rio Grande Detention Center for a painful and loose molar. A dentist administered anesthesia and his molar was removed.<br><br>(*See* Plaintiff's Depo at 89:10-25 (Dkt.122-2, Ex.1)). | Undisputed. |
| **88.** | Other than getting his molar removed, Mr. Arredondo did not have any other physical health issues in Rio Grande.<br><br>(*See* Plaintiff's Depo at 90:10-22 (Dkt.122-2, Ex.1)). | **DISPUTED**.<br><br>Mr. Arredondo testified that he had other health issues—anxiety due to the separation.  He did not tell anyone about his health issues, and physical symptoms of the anxiety manifested later (at other detention centers). E.F.A.R. Tr. Plaintiff's Depo at 90:10-22, Ex. O. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. This fact is speaking to his physical health issues in Rio Grande. Mr. Arredondo indicates he felt nervous but that it did not manifest itself in any physical way while at Rio Grande. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **89.** | On or about May 23, 2018, Mr. Arredondo submitted a detainee request form for information about A.F.A.J.'s whereabouts. | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Lynch Decl. ¶ 6c, Ex.4 (Detainee Request Form) (Dkt.122-5); Plaintiff's Depo 94:12-97:15 (Dkt.122-2, Ex.1)). | |
| **90.** The detainee request form reflects that Mr. Arredondo learned of A.F.A.J.'s whereabouts on May 23, 2018. On or about May 30, 2018, Mr. Arredondo received a telephone call from A.F.A.J.<br><br>(*See* Lynch Decl. ¶ 6c, Ex.4 (Detainee Request Form)(Dkt.122-5); Plaintiff's Depo at 99:19-22 (Dkt.122-2, Ex.1)). | **DISPUTED** that Mr. Arredondo "learned of A.F.A.J.'s whereabouts on May 23, 2018."<br><br>Mr. Arredondo testified that he never received a response to his request for information about A.F.A.J.'s whereabouts.  E.F.A.R. Tr. 97:18-98:2, Ex. O.  Defendant offered no evidence that any response to the request for information was ever provided to Mr. Arredondo.<br><br>Undisputed that on or about May 30, 2018, Mr. Arredondo and A.F.A.J. had their only phone call while in Defendant's custody. |
| **Moving Party's Response:** Plaintiffs do not cite sufficient evidence to establish a genuine dispute of material fact. Mr. Arredondo claims he didn't receive a response after his attorney improperly coached him by asserting a speaking objection during his deposition. *See* Marquez Decl. (Dkt. 122-2) at Ex.1 (Mr. Arredondo's Depo) at 94:12-97:15. The Detainee Request Form reflects that ICE responded on May 23, 2018. *See* Lynch Decl. (Dkt. 122-5) at Ex. 4. Further, Mr. Arredondo admits that he submitted a form requesting information about his family and that he received an answer after five days indicating that A.F.A.J. was in San Antonio, Texas. *See* Plaintiffs' Ex. HH (Dkt. 115-33) at ¶ 12. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **91.** On June 1, 2018, Mr. Arredondo received a detainee transfer | **DISPUTED** as to the date referenced. The dates on the documents produced are inconsistent and unauthenticated, |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| notification informing him that he was being transferred to the Stewart Detention Center in Lumpkin, Georgia.<br><br>(*See* Lynch Decl. ¶ 6d, Ex. 5 (Detainee Transfer Notification)(Dkt.122-5)). | as we do not know when they were created.<br><br>Mr. Arredondo was not provided with any documents during his stay at Rio Grande Processing Center. Defendant offered no evidence that Mr. Arredondo received the document referenced.   Defendant was unable to produce any witness who had any knowledge about Mr. Arredondo's time in Defendant's custody.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant's counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  The dates referenced are therefore unverified and disputed. |
| **Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Mr. Arredondo signed the detainee transfer notification form. *See* Lynch Decl. (Dkt. 122-5) at Ex.5. Further, Plaintiffs do not dispute Mr. Arredondo's signature is on the document and they also do not suggest that he received this document on a day other than June 1, 2018. Accordingly, | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 92. | On June 4, 2018, Mr. Arredondo was transferred to the Stewart Detention Center, in Lumpkin, Georgia, by airplane.<br><br>(*See* Lynch Decl. ¶ 5, Ex.1 (Dkt.122-5); ICE 30(b)(6) Depo at 44:7-10, 46:2-17, 93:4-11 (Dkt.122-2 Ex.3); Plaintiff's Depo at 92:4-7 (Dkt.122-2, Ex.1)). | **DISPUTED** as incomplete, as buses were also used in the transfer of Mr. Arredondo to Stewart Detention Center. E.F.A.R. Tr. 92:4-7, Ex. O.<br><br>**DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who created them or when they were created. Mr. Arredondo was not asked in his deposition about when he was transferred to Stewart Detention Center. Defendant was unable to produce any witness who had any knowledge about Mr. Arredondo's time in Defendant's custody. J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V. The dates referenced |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | are therefore unverified and disputed. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Additionally, Plaintiffs' SOF 176 filed in support of their Motion for Summary Judgment is virtually identical to this fact. *See* Dkt. 114-2. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **93.** | Pursuant to ICE policy, restraints are used during transfer for safety.<br><br>(*See* ICE 30(b)(6) 95:18-20 (Dkt.122-2 Ex.3)). | **DISPUTED**.<br><br>The testimony cited by Defendant does not support the fact asserted. Defendant's 30(b)(6) representative testified that "generally" restraints are used, but the "the officers always have discretion" about using restraints. M. Burke Tr. 95:13-20, Ex. T. |

**Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. The ICE 30(b)(6) witness testified that "the policy is that the safe way to transfer detainees is in restraints." Plaintiffs do not dispute that "generally" this is the policy as stated. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **94.** | Mr. Arredondo was transferred to the Stewart Detention Center because it was large, and a dedicated ICE facility, and had space for new intakes to decompress the Rio Grande Detention Center because it was experiencing higher than usual population levels.<br><br>(*See* ICE 30(b)(6) Depo at 85:22-86:9; | **DISPUTED**.<br><br>The testimony cited is pure speculation as to the reason that Mr. Arredondo was transferred. Defendant has offered no evidence to support the assertion, nor any witness involved in the transfer decision. Defendant's 30(b)(6) representative had no personal knowledge of Mr. Arredondo's detention and spoke to no one with personal knowledge in preparation for her testimony. M. Burke Tr. 19:14-20, Ex. T. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| 91:19-25 (Dkt.122-2 Ex.3)). | |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The ICE 30(b)(6) witness met with subject matter experts for all three detention centers at issues in this case (Folkston, Stewart, and Rio Grande) in preparation for her deposition. *See* Marquez Reply Decl. at Ex. 2 (ICE 30(b)(6) Depo) at 17:15-24. She also reviewed documents related to Mr. Arredondo's case as well as a document indicating that the number of intakes increased. *See id*. at 20:4-12, 33:9-24. Further, despite no one having an independent recollection of Plaintiffs, the witness testified as to the policy and practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Lastly, Plaintiffs do not contend any other reason for Mr. Arredondo's transfer. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **95.** | Another factor that went into the decision to transfer Mr. Arredondo was the fact that he was being processed for expedited removal, and therefore did not have a case pending before an immigration judge in a particular venue.<br><br>(*See* ICE 30(b)(6) Depo at 86:10-87:4 (Dkt.122-2 Ex.3)). | **DISPUTED**.<br><br>The testimony cited is pure speculation as to the reason that Mr. Arredondo was transferred. Defendant has offered no evidence to support the assertion, nor any witness involved in the transfer decision. Defendant's 30(b)(6) representative had no personal knowledge of Mr. Arredondo's detention and spoke to no one with personal knowledge in preparation for her testimony.  M. Burke Tr. 19:14-20, Ex. T. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The ICE 30(b)(6) witness met with subject matter experts for all three detention centers at issues in this case (Folkston, Stewart, and Rio Grande) in preparation for her deposition. *See* Marquez Reply Decl. at Ex. 2 (ICE 30(b)(6) Depo) at 17:15-24. She also reviewed documents related to Mr. Arredondo's case. *See id*. at 20:4-12. Further, despite no one having an

70

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|

| | | |
|---|---|---|
| | independent recollection of Plaintiffs, the witness testified as to the policy and practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Lastly, Plaintiffs do not contend any other reason for Mr. Arredondo's transfer. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 96. | ICE officers consider many factors when deciding to make a transfer including, but not limited to, detention space, location of the facility, and whether the detainee has family or legal counsel in the area.<br><br>(*See* ICE 30(b)(6) 87:20-88:6, 90:13-91:6 (Dkt.122-2 Ex.3)). | **DISPUTED**.  What ICE officers may do generally is not at dispute in this action.<br><br>The testimony cited reflects a generalization of what ICE offers might do, not factual testimony about what did happen in this case. Defendant's 30(b)(6) representative had no personal knowledge of Mr. Arredondo's detention and spoke to no one with personal knowledge in preparation for her testimony.  M. Burke Tr. 19:14-20, Ex. T. |
| | **Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Despite no one having an independent recollection of Plaintiffs, the witness testified as to the policy and practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Lastly, Plaintiffs do not dispute the fact as stated. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 97. | During the three-hour plane flight from Rio Grande to Stewart Detention Center, Mr. Arredondo was provided with a sandwich and water. | Undisputed that a sandwich and water was given to Mr. Arredondo.<br><br>**DISPUTED** that he was able to consume them.  Mr. Arredondo testified that due to the shackles on his hands, feet, and waist he was unable to open the bottle of water.  E.F.A.R. Tr. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Plaintiff's Depo at 92:12-21 (Dkt.122-2 Ex.1)). | 92:12-21, Ex. O. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. This fact does not mention Mr. Arredondo's consumption. Further, Plaintiffs do not dispute that he was able to eat his sandwich. Plaintiffs do not explain why he was able to eat his sandwich but unable to open his water. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **98.** | In 2018, Stewart Detention Center had a medical unit staffed by ICE Health Service Corps and included both indoor and outdoor recreation.<br><br>(*See* ICE 30(b)(6) 103:7-17 (Dkt.122-2 Ex.3)). | Undisputed. |
| **99.** | In 2018, Stewart Detention Center did not experience overcrowding.<br><br>(*See* ICE 30(b)(6) 104:9-11(Dkt.122-2 Ex.3)). | **DISPUTED**.<br><br>Mr. Arredondo testified that the room he was held in at the Stewart Detention Center was overcrowded. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 181 and Exhibits WWW and CCCC attached thereto. Defendant's ICE representative testified that she did not review historical data about the population levels at Stewart Detention Center in preparing for her deposition. M. Burke Tr. 104:25-105:11, Ex. T. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| **Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertion that Stewart Detention Center was overcrowded does not create a genuine dispute of material fact. While the ICE 30(b)(6) did not review historical databases from 2018 to determine the actual population, she still had the foundation to testify as to overcrowding based on her knowledge of the capacity limits and the policy requiring the population in the facility to be within the capacity limit. *See* Marquez Reply Decl. at Ex. 2 (ICE 30(b)(6) Depo) at 56:10-20; *see also* Marquez Decl. at Ex.3 (ICE 30(b)(6) Depo) at 66:3-9 (Dkt. 122-2). Further, Plaintiffs claim there were 25 to 30 other individuals in Mr. Arredondo's room, yet the open housing layout could fit anywhere from 50-100 detainees. *See* Plaintiffs' SOF 181 (Dkt. 114-2); Marquez Reply Decl. at Ex. 2 (ICE 30(b)(6) Depo) at 139:18-21, 140:2-3. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **100.** Once he arrived at Stewart Detention Center he was provided with bedding, personal hygiene products, and clothing.<br><br>(*See* Plaintiff's Depo 104:1-18 (Dkt.122-2 Ex.1)). | Undisputed. |
| **101.** The sleeping area in Stewart Detention Center was similar to the sleeping area in Rio Grande, which was an open layout with bunk beds.<br><br>(*See* Plaintiff's Depo 103:20-25 (Dkt.122-2 Ex.1); ICE 30(b)(6) 103:7- | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| 13, 104:2-4; 105:19-21 (Dkt.122-2 Ex.3)). | |
| **102.** In 2018, each general population housing unit had restroom facilities and showers that could be used by detainees at any time.<br><br>(*See* ICE 30(b)(6) 105:22-106:8, 106:15-16 (Dkt.122-2 Ex.3)). | **DISPUTED**. It is unclear from the fact asserted what detention center is being references.<br><br>The testimony cited by Defendant does not support the fact asserted. Defendant's 30(b)(6) representative testified that access to shower and restroom facilities was "dependent on many factors. But generally speaking, detainees can use facilities when they need them." M. Burke Tr. 106:9-16, Ex. T. |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs removed the headings Defendant included in its Statement of Undisputed Fact, which are provided for ease of reference. This fact is under the section related to Mr. Arredondo's first time at the Stewart Detention Center. Therefore, it is not unclear what detention center this fact refers to. Lastly, Plaintiffs do not dispute that generally detainees could use the restroom facilities when they need them. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **103.** In 2018, the Stewart Detention Center had both air-conditioning and central heat.<br><br>(*See* ICE 30(b)(6) 106:17-21 (Dkt.122-2 Ex.3)). | Undisputed. |
| **104.** The Stewart Detention Center also | Undisputed. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | provided religious services once a week, which Mr. Arredondo attended.<br><br>(*See* Plaintiff's Depo 105:15-18 (Dkt.122-2 Ex.1)). | |
| **105.** | At Stewart Detention Center, Mr. Arredondo claimed he was feeling ill, but had no noticeable symptoms.<br><br>(*See* Plaintiff's Depo 107:6-17 (Dkt.122-2 Ex.1)). | **DISPUTED**.  The fact asserted mischaracterizes Mr. Arredondo's testimony.  Mr. Arredondo testified that he felt ill, he had visible symptoms, and that he did not interact much with others.  E.F.A.R. Tr. 107:6-17, Ex. O.<br><br>Defendant failed to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody, including his visible symptoms of illness.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant's counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  Mr. Arredondo's testimony on this issue is therefore undisputed. |
| **Moving Party's Response:** Plaintiffs do not cite sufficient evidence to establish a genuine dispute of material fact. In addition to Plaintiffs testimony that his symptoms were not noticeable, medical records produced in this case do not reflect any of the symptoms Mr. Arredondo complained of. *See* Lynch Decl. at Ex.6 (Dkt. 121-1-Under Seal); Lynch Opp'n Decl. at Ex. 1 (Dkt. 126-2). Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **106.** Mr. Arredondo never asked for medical treatment at the Stewart Detention Center.<br><br>(*See* Plaintiff's Depo 105:23-25 (Dkt.122-2 Ex.1)). | **DISPUTED**.  The fact asserted mischaracterizes Mr. Arredondo's testimony.  Mr. Arredondo testified that although he was visibly ill, he did not seek treatment at the Stewart Detention Facility out of fear because detainees who sought treatment risked being put into isolation for long periods of time, thus missing their interviews and prolonging their detention.  E.F.A.R. Tr. 105:23-106:24, Ex. O; *see also* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 183-91 and Exhibits HH, WWW, VVV, CCCC, and GGGG attached thereto.  Defendant was unable to produce any witness who had any knowledge about Mr. Arredondo's time in Defendant's custody.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  Mr. Arredondo's testimony on this issue is therefore undisputed. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The fact that Mr. Arredondo had a reason for not seeking treatment, does not create a genuine dispute that he did not ask for medical treatment. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| 107. | On June 15, 2018, Mr. Arredondo was transferred to Folkston Immigration Processing Center so that he could receive his credible fear interview more efficiently.<br><br>(*See* Lynch Decl. ¶ 5, Ex. 1 (Dkt.122-5); ICE 30(b)(6) Depo at 44:7-10, 46:2-17, 47:2-5,126:4-18 (Dkt.122-2 Ex.3)). | **DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who created them or when they were created.  Mr. Arredondo was not asked in his deposition about what date he was transferred to Folkston Detention Center.  Mr. Arredondo testified that he was never told why he was being transferred from one prison to another. E.F.A.R. Tr. 111:17-24.<br><br>Defendant was unable to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody, including the reasons for the transfers.  J. Rellis Tr. 15:2-12 |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  The dates referenced are therefore unverified and disputed. |
| | **DISPUTED** as to the characterization that Mr. Arredondo was transferred to the Folkston prison "so that he could receive his credible fear interview more efficiently." ICE offered detainees credible fear interviews over the telephone—their physical locations were irrelevant.  If efficiency had been important, Mr. Arredondo would have been provided with a credible fear interview when he arrived at the Laredo Port of Entry.  Moreover, when ICE provided Mr. Arredondo with what it called a "credible fear interview," it was performed in an unlawful manner, adjudicating not just his fear but the merits of an asylum |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | claim. There was no reason for a transfer to Folkston. *Compare* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 202 and Exhibit 29 attached thereto *with* Ex. E. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of the stated material fact. Plaintiffs seems to agree that Mr. Arredondo was transported to Folkston Immigration Processing Center on June 15, 2018. *See* Plaintiffs' SOF (Dkt. 114-2) at ¶ 192. Additionally, ICE did not provide Mr. Arredondo with a credible fear interview, USCIS did. *See* Taylor Opp'n Cert. at Ex.1, -001, -005 (Dkt.113-5). Further, despite no one having an independent recollection of Plaintiffs, the ICE 30(b)(6) witness testified as to the policy and practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. The ICE 30(b)(6) witness met with subject matter experts for all three detention centers at issues in this case (Folkston, Stewart, and Rio Grande) in preparation for her deposition. *See* Marquez Reply Decl. at Ex. 2 (ICE 30(b)(6) Depo) at 17:15-24. She also reviewed documents related to Mr. Arredondo's case. *See id*. at 20:4-12. Lastly, Plaintiffs do not contend any other reason for Mr. Arredondo's transfer. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | |
|---|---|
| **108.** In 2018, the Folkston Immigration Processing Center was similar to both the Rio Grande and Stewart Detention Centers in that it had open housing units, medical facilities, and recreation facilities.<br><br>(*See* ICE 30(b)(6) 138:4-10 (Dkt.122-2 | **DISPUTED**.<br><br>The testimony relied on by Defendant does not support the fact asserted. Defendant's 30(b)(6) representative testified that she had no personal knowledge of Folkston, but she speculated that it was like other detention centers.  M. Burke Tr. 137:10-138:16, Ex. T. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Ex.3)). | |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The ICE 30(b)(6) witness met with a subject matter expert on the Folkston Immigration Processing Center, who educated her on these issues. Plaintiffs do not contend that Folkston was any different than the other facilities. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | | |
|---|---|---|
| **109.** | In 2018, Folkston Immigration Processing Center had bunk beds.<br><br>(*See* ICE 30(b)(6) 138:17-20 (Dkt.122-2 Ex.3)). | **DISPUTED**.<br><br>The testimony relied on by Defendant does not support the fact asserted. Defendant's ICE representative testified that she had no personal knowledge of Folkston, but she speculated that it had bunk beds.  M. Burke Tr. 137:10-138:20, Ex. T. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The ICE 30(b)(6) witness met with a subject matter expert on the Folkston Immigration Processing Center, who educated her on these issues. Plaintiffs do not contend that Folkston had anything other than bunk beds. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **110.** | In 2018, Folkston Immigration Processing Center had toilets, sinks, and showers in the housing unit.<br><br>(*See* ICE 30(b)(6) 140:12-15 (Dkt.122-2 Ex.3)). | **DISPUTED**.<br><br>The testimony relied on by Defendant does not support the fact asserted. Defendant's ICE representative testified that she had no personal knowledge of Folkston; she speculated that the bathing facilities would be similar to other detention centers but acknowledged that they "vary by facility and it varies over time at each facility." She further testified that she did not know what the bathing facilities were like in the Folkston |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | Detention Center during the period in question.  M. Burke Tr. 140:12-141:19, Ex. T. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The ICE 30(b)(6) witness met with a subject matter expert on the Folkston Immigration Processing Center, who educated her on these issues. *See infra*, III, Deft's Response to Plaintiffs SSOF at ¶ 19 and exhibits thereto. Plaintiffs do not contend that Folkston lacked toilets, sinks, or showers. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| **111.** | In 2018, Folkston Immigration Processing Center had air-conditioning and central heat.<br><br>(*See* ICE 30(b)(6) 142:9-14 (Dkt.122-2 Ex.3)). | Undisputed. |
| **112.** | In 2018, Folkston Immigration Processing Center offered medical care.<br><br>(*See* ICE 30(b)(6) 142:15-143:2 (Dkt.122-2 Ex.3)). | Undisputed. |
| **113.** | On June 16, 2018, Mr. Arredondo was provided with bedding, clothing, and personal hygiene products at Folkston. | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Lynch Decl. ¶ 6g, Ex. 8 (Folkston Property Receipts)(Dkt.122-5)). | |
| **114.** The temperature in Folkston Immigration Processing Center was comfortable for Mr. Arredondo.<br><br>(*See* Plaintiff's Depo 112:7-18, 115:13-16 (Dkt.122-2 Ex.1)). | Undisputed. |
| **115.** Mr. Arredondo was provided with breakfast, lunch, and dinner at Folkston. For lunch, he was provided with three options.<br><br>(*See* Plaintiff's Depo 115:19-116:8 (Dkt.122-2 Ex.1)). | Undisputed. |
| **116.** Mr. Arredondo attended religious services at Folkston Immigration Processing Center.<br><br>(*See* Plaintiff's Depo 116:18-22 | Undisputed. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | (Dkt.122-2 Ex.1)). | |
| **117.** | During the two and a half weeks, Mr. Arredondo was at Folkston, he was able to contact his family approximately five times.<br><br>(*See* Plaintiff's Depo 117:4-16 (Dkt.122-2 Ex.1)). | **DISPUTED**.<br><br>The asserted fact mischaracterizes Mr. Arredondo's testimony. Mr. Arredondo testified that he could not recall how many times he spoke with his family. Defendant asked if it *could have been* five times. Mr. Arredondo testified that was possible, but that he could not recall. E.F.A.R. Tr. 117:4-17, Ex. O. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Mr. Arredondo testified "I think I contacted them about five times." Plaintiffs do not contend that he contacted his family less than five times. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **118.** | Mr. Arredondo did not ask for medical treatment at Folkston Immigration Processing Center.<br><br>(*See* Plaintiff's Depo 120:5-7 (Dkt.122-2 Ex.1)). | **DISPUTED**. The fact asserted mischaracterizes Mr. Arredondo's testimony. Mr. Arredondo testified that he did not seek treatment at Folkston for the same reason he had not sought treatment at Stewart Detention Facility—out of fear because detainees who sought treatment were put into isolation and risked missing their interviews and prolonging their detention. E.F.A.R. Tr. 120:5-10, Ex. O; *see also id.* 105:23-106:24; Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 183-91 and Exhibits HH, WWW, VVV, CCCC, and GGGG attached thereto. Defendant was unable to produce any witness who had any knowledge about |

83

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | Mr. Arredondo's time in Defendant's custody. J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  Mr. Arredondo's testimony on this issue is therefore undisputed. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. The fact that Mr. Arredondo had a reason for not seeking treatment, does not great a genuine dispute that he did not ask for medical treatment. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| 119. | On June 19, 2018, Mr. Arredondo had his credible fear interview over the telephone with an interpreter present.<br><br>(*See* Plaintiff's Depo 123:5-13 | **DISPUTED**.<br><br>The testimony relied on by Defendant does not support the fact asserted. There is no mention of an interpreter in the testimony cited. *See* E.F.A.R. Tr. 123:5-13, Ex. O. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (Dkt.122-2 Ex.1)). | |
| **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Mr. Arredondo's credible fear interview indicates there was an interpreter present. *See* Taylor Opp'n Cert. (Dkt. 113-5) at Ex.1, Credible Fear Interview at 000001. Plaintiffs do not contend there was not an interpreter present. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **120.** | Mr. Arredondo explained why he was afraid to return to Guatemala and felt like he had enough time to explain why he was afraid.<br><br>(*See* Plaintiff's Depo 125:19-126:18 (Dkt.122-2 Ex.1)). | **DISPUTED** as incomplete.<br><br>Mr. Arredondo was not asked in the deposition cited whether he could understand the questions asked or whether he felt ill when the interview occurred.  Evidence in the record establishes that he felt that the interviewer was rushing him, he had difficulty following the questions asked, he was ignored when he asked for questions to be repeated, and he felt physically ill.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 201 and Exhibits HH and HHH attached thereto. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. During Mr. Arredondo's credible fear interview, he indicated that he did not feel ill and that he understood the questions. *See* Taylor Opp'n Cert. (Dkt. 113-5) at Ex.1, Credible Fear Interview at 000007-8, 16. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **121.** | On June 28, 2018, Mr. Arredondo was transferred back to the Stewart Detention Center by bus. | **DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who created them or when they were created.  Mr. Arredondo was not asked in his deposition about what date he |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* Lynch Decl. ¶ 5, Ex.1 (Dkt.122-5); ICE 30(b)(6) Depo at 44:7-10, 47:6-17 (Dkt.122-2 Ex.3); Plaintiff's Depo 140:11-13 (Dkt.122-2 Ex.1)). | was transferred back to Stewart Detention Center. Defendant was unable to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody. J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V. The dates referenced are therefore unverified and disputed. |
| **Moving Party's Response**: Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of the stated material fact. Plaintiffs seems to agree that Mr. Arredondo was transported back to Stewart Detention Center on June 28, 2018. *See* Plaintiffs' SOF (Dkt. 114-2) at ¶ 208. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 122. Mr. Arredondo was transferred back to Stewart Detention Center pending the outcome of his credible fear interview. | **DISPUTED**. The testimony cited is pure speculation as to the reason that Mr. Arredondo was transferred. Defendant's 30(b)(6) representative |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| (*See* ICE 30(b)(6) 162:10-163:4 (Dkt.122-2 Ex.3)). | had no personal knowledge of Mr. Arredondo's detention or the reasons for transfers, and she spoke to no one with personal knowledge in preparation for her testimony.  M. Burke Tr. 19:14-20, 162:10-163:4, 164:4-17, Ex. T. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of the stated material fact. Despite no one having an independent recollection of Plaintiffs, the ICE 30(b)(6) witness testified as to the policy and practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. The ICE 30(b)(6) witness met with subject matter experts for all three detention centers at issues in this case (Folkston, Stewart, and Rio Grande) in preparation for her deposition. *See* Marquez Reply Decl. at Ex. 2 (ICE 30(b)(6) Depo) at 17:15-24. She also reviewed documents related to Mr. Arredondo's case. *See id*. at 20:4-12. Lastly, Plaintiffs do not contend any other reason for Mr. Arredondo's transfer. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| | | |
|---|---|---|
| 123. | Mr. Arredondo was provided with a sandwich, apple, and bottle of water during the bus ride from Folkston to Stewart Detention Center.<br><br>(*See* Plaintiff's Depo 140:20-24 (Dkt.122-2 Ex.1)). | Undisputed. |
| 124. | While in Stewart Detention Center this second time, prior to his removal, | **DISPUTED**.<br><br>The asserted fact mischaracterizes Mr. Arredondo's testimony.  Mr. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Plaintiff contacted his family once or twice a week.<br><br><br>(*See* Plaintiff's Depo 141:24-142:4 (Dkt.122-2 Ex.1)). | Arredondo testified that spoke to them "once, twice a week maximum," not that he spoke to them once or twice each week.  E.F.A.R. Tr. 141:24-142:4, Ex. O. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs mischaracterize Mr. Arredondo's testimony. The deposition transcript speaks for itself. Lastly, Plaintiffs do not contend that he spoke to his family less than once or twice a week for the month he was at Stewart Detention Center prior to his removal. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact.

| 125. | On or about June 25, 2018, Mr. Arredondo learned over the phone from a USCIS male Immigration Analyst (through a Spanish interpreter) that the asylum officer determined that he had not established credible fear of persecution or torture.<br><br><br>(*See* Long Decl. ¶ 5A, Ex. 1 (Dkt.122-7); Plaintiff's Depo at 123:5-19, 130:18-23, 132:10-13 (Dkt.122-2 Ex.1); Pinchas Decl. ¶ 4, Ex. 3 (Travis Rice Depo) 261:1-20, 267:24-268:22 (Dkt.122-3)). | **DISPUTED** as to the date referenced. The dates on the documents produced are inconsistent and unauthenticated, as we do not know when they were created.  Mr. Arredondo was not asked in his deposition about what date he was informed about his credible fear determination.  Mr. Arredondo testified that a male ICE agent informed him of the decision, not a USCIS agent.  Defendant was unable to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V. The dates referenced are therefore unverified and disputed.<br><br>**DISPUTED** as to the contention that Mr. Arredondo "had not established credible fear of persecution or torture." The document called "Credible Fear Determination Checklist" produced for the first time in discovery in this case states that contrary to what Mr. Arredondo was told, he *had* established credible fear. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 202 and Exhibits 29 and CCCC attached thereto. |

**Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs' unsubstantiated assertions do not create a genuine issue of the stated material fact. The Record of Negative Credible Fear Finding and Request for Review reflects that Travis Rice is the person who informed Mr. Arredondo about the results of his credible fear interview. *See* Long Decl. (Dkt. 122-7) at Ex.1. Further, Mr. Rice admits this in his declaration filed in support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment. *See* Declaration of Travis Rice "Rice Decl." (Dkt. 113) at ¶ 2. Despite no one having an independent recollection of Plaintiffs, the USCIS 30(b)(6) witness and Mr. Rice testified as to the policy and practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Lastly, the checklist Plaintiffs refer to does not indicate that he established a credible fear of persecution, because he failed

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| to establish the required persecution. *See* Deft's Statement of Genuine Dispute (Dkt. 113-1) at ¶ 202 and Plaintiffs' Ex. 29 (Dkt. 115-91) at -875. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

| | | |
|---|---|---|
| **126.** | The USCIS Immigration Analyst advised Mr. Arredondo of the adverse result and asked him twice whether he requested review of the negative credible fear determination by an Immigration Judge.<br><br>(*See* Travis Rice Depo at 191:23-192:19, 299:9-10, 300:14-17 (Dkt.122-3, Ex.3)). | **DISPUTED**.<br><br>The testimony relied on does not support the fact asserted.  The Immigration Analyst who was deposed in this case had no recollection of Mr. Arredondo or his conversation with Mr. Arredondo.  T. Rice Tr. 309:25-310:21, Ex. P.  Mr. Arredondo testified that he could not recall being told that he could request a review of the decision, but he did recall being told that it was useless to speak with an immigration judge because immigration judges always agree with ICE's decision.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 204-05 and Exhibits HH, HHH, and CCCC attached thereto.  Mr. Arredondo's testimony is uncontested. |
| | **Moving Party's Response:** Plaintiffs do not cite sufficient evidence to establish a genuine dispute of material fact. Mr. Arredondo admits that he was informed that he had a right to request the immigration judge review his case. *See* Plaintiffs' Ex. HH (Dkt. 115-33) at ¶ 21. Further, Mr. Rice admits in his declaration that it was his practice to ask asylum seekers twice whether they wished to request review of the decision from an Immigration Judge. *See* Rice Decl. (Dkt. 113) at ¶ 3. Despite Mr. Rice not having an independent recollection of Mr. Arredondo, Mr. Rice testified as to his practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| **127.** | The "Record of Negative Credible | **DISPUTED**. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Fear Finding and Request for Review by Immigration Judge," Form I-869, reflects that Mr. Arredondo signed the document and opted not to seek Immigration Judge review of the adverse decision.<br><br>(*See* Long Decl. ¶ 5A, Ex. 1 (Dkt.122-7); Plaintiff's Depo at 129:1-19 (Dkt.122-2, Ex.1); Travis Rice Depo at 261:1-20, 292:5-13, 294:15-20 (Dkt.122-3, Ex.3)). | The testimony relied on does not support the fact asserted.  The Immigration Analyst who testified in deposition had no recollection of Mr. Arredondo or his conversation with Mr. Arredondo.  T. Rice Tr. 309:25-310:21, Ex. P.  The Immigration Analyst testified generally about how the Immigration Analyst job was conducted.  *See* T. Rice Tr. 261:1-20, 292:5-13, 294:15-20, Ex. P.<br><br>Mr. Arredondo testified that no one read, translated, or explained the document called "Record of Negative Credible Fear Finding" to him, that he was not given a copy of it, and he *did not* check the boxes on the form.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 207 and Exhibit CCCC attached thereto.  Mr. Arredondo's testimony is uncontested. |
| **Moving Party's Response:** Plaintiffs do not cite sufficient evidence to establish a genuine dispute of material fact. Mr. Arredondo admits that he was informed that he had a right to request the immigration judge review his case. *See* Plaintiffs' Ex. HH (Dkt. 115-33) at ¶ 21. Further, Mr. Rice admits in his declaration that it was his practice to ask asylum seekers twice whether they wished to request review of the decision from an Immigration Judge. See Rice Decl. (Dkt. 113) at ¶ 3. Despite Mr. Rice not having an independent recollection of Mr. Arredondo, Mr. Rice testified as to his practice at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |
| 128. On June 26, 2018, the U.S. District Court for the Southern District of | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| California issued a preliminary injunction enjoining the separation of non-citizen parents and children following their entry into the United States, absent certain circumstances set forth by the court, and ordering the reunification of class members with their children by certain dates.<br><br>(*Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018)) | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| 129. | Mr. Arredondo was removed on August 22, 2018 because he had a final order of removal and had waived Immigration Court review.<br><br>(*See* ICE 30(b)(6) Depo 187:16-21 (Dkt.122-2, Ex.3)). | **DISPUTED** that Mr. Arredondo was removed "because he had a final order of removal and had waived Immigration Court review." A District Court has already determined that Mr. Arredondo was removed unlawfully in violation of multiple orders in the *Ms. L case*. Defendant did not appeal that determination. The asserted fact also omits legal requirements that Defendant failed to complete prior to Mr. Arredondo's unlawful deportation. *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 85-86 and Exhibits LL, NN, and OO attached thereto. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs mischaracterize the procedural history in the *Ms.L* litigation. *See* Deft's Statement of Genuine Dispute (Dkt. 113-1) at ¶¶ 76-78, 85-86, 222-223, 228, 230, 232. Accordingly, Plaintiffs fail to create a | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | genuine dispute of the stated material fact. | |
| 130. | Before removing Mr. Arredondo, ICE considered the *Ms.L* injunction and determined that Mr. Arredondo-Rodriguez was not a class member as of August 22, 2018.<br><br>(*See* ICE 30(b)(6) Depo 193:4-21, 194:5-17 (Dkt.122-2 Ex.3)). | **DISPUTED.** A federal judge has already determined that this asserted fact is false: that Mr. Arredondo was a class member when the *Ms. L.* injunction was issued, and that Mr. Arredondo was unlawfully deported. *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 232 and Exhibit XX attached thereto. Defendant did not appeal this determination. |
| | **Moving Party's Response:** Plaintiffs do not cite any evidence contravening the stated undisputed fact. Plaintiffs mischaracterize the procedural history in the *Ms.L* litigation. *See* Deft's Statement of Genuine Dispute (Dkt. 113-1) at ¶¶ 76-78, 85-86, 222-223, 228, 230, 232. Accordingly, Plaintiffs fail to create a genuine dispute of the stated material fact. | |

## II.   OBJECTIONS TO DEFENDANT'S PROPOSED CONCLUSIONS OF LAW[6]

## III.  PLAINTIFFS SUPPLEMENTAL STATEMENT OF FACTS

| | Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| 1. | During the Zero Tolerance Policy, officials at the Laredo Port of Entry separated every family presenting at the border with any prior immigration violations or any prior criminal | **Disputed.** The record is clear that the plaintiffs were not separated pursuant to what Plaintiffs describe as the "Zero Tolerance Policy." The cited evidence does not support this fact. Officer Nieves indicates in the cited testimony that he does not remember if |

---

[6] Plaintiffs failed to provide proposed conclusion of law, which are required by the Court's Standing Order at pg.7. Defendant's nonresponse to Plaintiffs' objections does not constitute a waiver of any argument. However, because they are "proposed" conclusions of law, Defendant will not respond to Plaintiffs' objections.

| | Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | history.<br><br>Evidence: Nieves Tr. 97:10-18, Ex. L; Elguezabal Tr. 127:1-6, Ex. M. | separations based on illegal apprehensions/criminal history had to do with the "Zero Tolerance Policy." As for Office Elguezabal's testimony, there is no mention of the Zero Tolerance Policy in the cited testimony. The "Zero Tolerance Policy" was a prosecutions policy against individuals who entered illegally. It is undisputed that Plaintiffs were never referred for prosecutions.<br><br>Evidence: *See supra* Deft's SUF 9, 33 and exhibits thereto; *see also* Plaintiffs' SOF 214 (Dkt. 114-2). |
| 2. | Plaintiffs' I-213 do not reflect that Defendant attempted to place Plaintiffs in a family residential center.<br><br>Evidence: Plaintiff Esvin Fernando Arredondo Rodriguez's A-file, at -885; -934-936 attached to Pls' SOF in support of Pls' Mot. (Dkt. 98-2) as Exhibit 29. | **Disputed in part. Undisputed** that the I-213 does not reflect Defendant's attempt to place Plaintiffs in a family residential center. **Disputed insofar** as the statement of fact is intended to assert that Defendant's did not attempt to place Plaintiffs in a family residential center or that the policy/practice at the time required documentation of these efforts in the I-213. The practice at the Laredo Port of Entry during the relevant time period was to determine whether there was space at a family residential center before separating. The requirement to document this information was not instituted until after the *Ms. L* injunction, long after Plaintiffs presented themselves for admission at Laredo Port of Entry.<br><br>Evidence: *See supra* Deft's SUF 26 and exhibits thereto; *see* Deft's SGI (Dkt. 113-1) at ¶ 56 and exhibits and |

| | Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | | evidentiary objections thereto. |
| 3. | Plaintiffs received no hearing before or after their separation at which they could challenge the separation.<br><br>Evidence: E.F.A.R. Tr. 60:2-62:24; 66:9-16, Ex. O. | **Disputed in part**. **Undisputed** that Plaintiffs did not receive a hearing before their separation. **Disputed insofar** as the statement of fact is intended to assert that a hearing was required before separation. |
| 4. | While in Defendant's custody at the Rio Grande Detention Center, Mr. Arredondo requested information about A.F.A.J.'s location but received no response.<br><br>Evidence: E.F.A.R. Tr. 97:12-98:2, Ex. O. | **Disputed**. Plaintiffs' own undisputed fact and inconsistent testimony contradicts this. Mr. Arredondo admits that while in Rio Grande he learned about A.F.A.J.'s whereabouts. Further, a Detainee Request Form dated May 23, 2018 reflects he received information about A.F.A.J.'s whereabouts.<br><br>Evidence: *See* Plaintiffs' SOF at ¶ 174 (Dkt. 114-2) and Plaintiffs' Ex. HH (Dkt. 115-33) at ¶ 12; *see supra* Deft's SUF 89 and exhibits thereto. |
| 5. | In December 2018, Department of Health and Human Services ("DHS") Office of the Inspector General ("OIG") issued a report concerning BCFS.<br><br>Evidence: Department of Health and | **Disputed** on relevance grounds. This report discusses conditions at BCFS during FY 2015. A.F.A.J. was at BCFS in 2018.<br><br>Evidence: *See* Exhibit F (Dkt. 119-7) at pg. 5; *supra* Deft's SUF 45 and exhibits thereto.<br><br>Objection. Relevance. Fed. R. Evid. |

| Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F. | 401, 402, 403. |
| **6.** BCFS is a grantee recipient of hundreds of millions of dollars of federal funds annually, under contract to the US Department of Health and Human Services' (HHS") Office of Refugee Resettlement ("ORR").<br><br>Evidence: Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F at 1-2. | **Disputed** on relevance grounds. Additionally, the cited evidence does not support this fact. This report discusses conditions at BCFS during FY 2015. A.F.A.J. was at BCFS in 2018.<br><br>Evidence: *See* Exhibit F (Dkt. 119-7) at pg. 5; *supra* Deft's SUF 45 and exhibits thereto.<br><br>Objection. Relevance. Fed. R. Evid. 401, 402, 403. |
| **7.** BCFS is a provider of temporary shelter and foster care services at | **Disputed in part**. **Undisputed** that BCFS HHS is a nonprofit shelter and foster care provider in San Antonio, Texas. **Disputed** on relevance |

| Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| multiple locations.<br><br>Evidence: Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F at 2. | grounds. This report discusses conditions at BCFS during FY 2015. A.F.A.J. was at BCFS in 2018.<br><br>Evidence: *See* Exhibit F (Dkt. 119-7) at pg. 5; *supra* Deft's SUF 45 and exhibits thereto.<br><br>Objection. Relevance. Fed. R. Evid. 401, 402, 403. |
| **8.** In 2018, BCFS operated eight shelter facilities and eight foster care homes in Texas.<br><br>Evidence: Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F at 6. | **Disputed** on relevance grounds. This report discusses conditions at BCFS during FY 2015. A.F.A.J. was at BCFS in 2018. Additionally, the cited evidence does not support this fact. The report indicates that site inspections were conducted in 2016.<br><br>Evidence: *See* Exhibit F (Dkt. 119-7) at pg. 13; *supra* Deft's SUF 45 and exhibits thereto.<br><br>Objection. Relevance. Fed. R. Evid. 401, 402, 403. |
| **9.** DHS OIG found that found that BCFS failed to comply with federal and state requirements related to the health and safety of unaccompanied alien | **Disputed** on relevance grounds. This report discusses conditions at BCFS during FY 2015. The report also indicates that site inspections were conducted in 2016. A.F.A.J. was at BCFS in 2018. Additionally, it is |

| Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| children.<br><br>Evidence: Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F at 6, 7-12. | unclear what facilities these findings apply to.<br><br>Evidence: *See* Exhibit F (Dkt. 119-7) at pg. 5, 13; *supra* Deft's SUF 45 and exhibits thereto.<br><br>Objection. Relevance. Fed. R. Evid. 401, 402, 403. |
| **10.** On December 1, 2021, Defendant sent Plaintiffs a letter confirming that they "were separated at the United States-Mexico border by [DHS] . . . in connection with the operation of the government's Zero-Tolerance Policy and related policies."<br><br>Evidence: USCIS Letter sent to Plaintiffs regarding "Separated Family Parole Request – Family Reunification Task Force (FRTF) Process," dated Dec. 1, 2021, Ex. G. | **Disputed**. This letter makes no mention of Plaintiff. Additionally, it is dated almost two years after Mr. Arredondo and A.F.A.J. were reunited. Plaintiffs were not separated pursuant to the "Zero Tolerance Policy."<br><br>Evidence: *See supra* Deft's SUF 9 and exhibits thereto.<br><br>Objection. Relevance. Fed. R. Evid. 401, 402, 403. Lack of Authenticity. Fed. R. Evid. 901. |
| **11.** Defendant's letter offered Plaintiffs a status called "Parole in Place." | **Disputed**. This letter makes no mention of Plaintiffs. Additionally, it is dated almost two years after Mr. |

| Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Evidence: USCIS Letter sent to Plaintiffs regarding "Separated Family Parole Request – Family Reunification Task Force (FRTF) Process," dated Dec. 1, 2021, Ex. G. | Arredondo and A.F.A.J. were reunited. Plaintiffs were not separated pursuant to the "Zero Tolerance Policy." <br><br> Evidence: *See supra* Deft's SUF 9 and exhibits thereto. <br><br><br> Objection. Relevance. Fed. R. Evid. 401, 402, 403. Lack of Authenticity. Fed. R. Evid. 901. |
| **12.** On January 28, 2022, Defendant notified Plaintiffs that they qualified for additional benefits under DHS's "Family Reunification Task Force." <br><br> Evidence: Email from Juntos@dhs.gov on behalf of the Family Reunification Task Force with subject "Family Reunification Request," dated Jan. 28, 2022, Ex. I. | **Disputed insofar** as this statement of fact is intended to assert that Plaintiffs were separated pursuant to what they describe as the "Zero Tolerance Policy." Plaintiffs' cited evidence does not support such a fact. <br><br> Evidence: *See supra* Deft's SUF 9 and exhibits thereto. |
| **13.** On December 12, 2023, the Family Reunification Task Force sent each Plaintiff an email communication acknowledging that Plaintiffs are *Ms. L.* Settlement class members. <br><br> Evidence: Email from Together.gov on behalf of the Family Reunification Task Force with subject "FRTF | **Disputed insofar** as this statement of fact is intended to assert that Plaintiffs were *Ms. L* class members on June 26, 2018. Plaintiffs were not *Ms. L* class members until March 9, 2019 after the *Ms. L* court granted the motion to modify the class definition. <br><br> Evidence: *Ms. L.* (Dkt. 386). |

| | Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| | Request – Ms. L Settlement Class Member Confirmation" (on behalf of Mr. Arredondo), dated Dec. 12, 2023, Ex. X; Email from Together.gov on behalf of the Family Reunification Task Force with subject "FRTF Request – Ms. L Settlement Class Member Confirmation" (on behalf of A.F.A.J.), dated Dec. 12, 2023, Ex. Y. | |
| 14. | The December 12, 2023, email notified Plaintiffs that they are eligible for additional services under the *Ms. L.* Settlement.<br><br>Evidence: Email from Together.gov on behalf of the Family Reunification Task Force with subject "FRTF Request – Ms. L Settlement Class Member Confirmation" (on behalf of Mr. Arredondo), dated Dec. 12, 2023, Ex. X; Email from Together.gov on behalf of the Family Reunification Task Force with subject "FRTF Request – Ms. L Settlement Class Member Confirmation" (on behalf of A.F.A.J.), dated Dec. 12, 2023, Ex. Y. | **Disputed insofar** as this statement of fact is intended to assert that Plaintiffs were *Ms. L* class members on June 26, 2018. Plaintiffs were not *Ms. L* class members until March 9, 2019 after the *Ms. L* court granted the motion to modify the class definition. Additionally, the e-mail indicates Plaintiffs "may be eligible for additional services under the *Ms. L vs. ICE* Settlement."<br><br>Evidence: *Ms. L.* (Dkt. 386). |

| | Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|---|
| **15.** | Defendant did not appeal any final order in the *Ms. L* Action.<br><br>Evidence: *See Ms. L. v. U.S Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1135 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), appeal voluntarily dismissed in *Ms. L. v. U.S. Immigr. & Customs Enf't*, No. 18-56151, 2020 WL 13557963, at *1 (9th Cir. May 9, 2020); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 403 F. Supp. 3d 853, 855 (S.D. Cal. 2019) (no subsequent history). | **Disputed insofar** as it suggests that a Notice of Appeal was never filed. On August 24, 2018, Defendants filed a timely notice of appeal from the June 26, 2018 preliminary injunction order. On February 26, 2020, Defendants voluntarily moved for dismissal pursuant to Fed. R. App. P. 42(b). No appeal briefs were filed by either party.<br><br>Evidence: *Ms. L., et al., v. U.S. Immigr. & Customs Enf't, et al*., No. 18-56151, Dkt. No. 27 (9th Cir. 2020). |
| **16.** | Defendant admitted that the phrase "Zero Tolerance Policy" and the phrase "family separation policy" refer to the same policy.<br><br>Evidence: *See* Defendant's Responses and Objections to Plaintiffs' Second Request for Production, dated July 21, 2023, Ex. K at 4. | **Disputed**. Nowhere in the cited exhibit does Defendant admit that the phrase 'Zero Tolerance Policy' and the phrase 'family separation policy' refer to the same policy. The United States admits that children were separated from adult detainees referred for prosecution under the Zero Tolerance Policy but denies Plaintiffs' subjective characterization that there was a "Family Separation Policy." Plaintiffs were not separated pursuant to what Plaintiffs describe as the "Zero Tolerance Policy."<br><br>Evidence: *See* Defendant's Responses and Objections to Plaintiffs' Second |

| Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| | Request for Production, dated July 21, 2023, Ex. K at 4. |
| **17.** Defendant admitted that the documents produced regarding the "Zero Tolerance Policy" apply to the broader "family separation policy."<br><br>Evidence: *See* Defendant's Responses and Objections to Plaintiffs' Second Request for Production, dated July 21, 2023, Ex. K at 4. | **Disputed.** Nowhere in the cited exhibit does Defendant admit that the documents produced regarding the 'Zero Tolerance Policy' apply to the broader 'family separation policy.' The United States admits that children were separated from adult detainees referred for prosecution under the Zero Tolerance Policy but denies Plaintiffs' subjective characterization that there was a "Family Separation Policy." Plaintiffs were not separated pursuant to what Plaintiffs describe as the "Zero Tolerance Policy." In Plaintiffs' Request for Production (Set 2), Plaintiffs defined "Family Separation Policy" to include the "Zero Tolerance Policy," which is why Defendant indicates in its Responses and Objections to Plaintiffs' Second Request for Production that it produced responsive documents.<br><br>Evidence: *See* Defendant's Responses and Objections to Plaintiffs' Second Request for Production, dated July 21, 2023, Ex. K at 4; *see* Marquez Reply Decl. at Ex. 6 (Plaintiffs' Second Set of Requests for Production). |
| **18.** None of Defendant's fact witnesses were able to recall Plaintiffs or how Plaintiffs were treated in Defendant's custody. | **Disputed insofar** as the statement of fact is intended to assert that Defendant had no knowledge of how Plaintiffs were treated. Despite not having an independent recollection of Plaintiffs, Defendant's fact witnesses testified as to the practice and/or |

102

| Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| Evidence: H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q; T. Rice Tr. 309:25-310:21, Ex. P. | policies at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that practice. *See* Defendant's responses to Plaintiff's Evidentiary Objections. Officer Nieves has been working with CBP since 2011, spending the majority of his career at the Laredo Port of Entry. Similarly, Officer Elguezabal has been working with CBP since 2011, spending the majority of his career at the Laredo Port of Entry. They have processed thousands of individuals. Additionally, Ms. Ramos, the former case manager with BCFS, worked there for approximately six years. |
| | Evidence: *See supra* Deft's SUF 8 and exhibits thereto; Marquez Reply Decl. at Exs. 4-5 (Officer Elguezabal Depo) at 22:15-23:14, (Ms. Ramos' Depo) at 29:2-3; Pinchas Reply Decl. at Ex. 1 (Officer Nieves Depo) at 17:15-18:6, 19:5-13. |
| **19.** None of Defendant's 30(b)(6) representatives had any personal knowledge, or spoke to anyone with personal knowledge, about Plaintiffs or how Plaintiffs were treated by Defendant.<br><br>Evidence: R. Harris Tr. 246:1-4 (testifying that the individuals he | **Disputed insofar** as the statement of fact is intended to assert that Defendant had no knowledge of how Plaintiffs were treated. Despite not having an independent recollection of Plaintiffs, Defendant's 30(b)(6) witnesses educated themselves by reviewing Plaintiffs' records, as well as corresponding and meeting with individuals who had personal interactions with Plaintiffs as well as individuals who were subject matter experts during the relevant time period. Further, Defendant's 30(b)(6) |

| Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. E;  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's | witnesses have longstanding careers in their respective agencies, providing them with specialized knowledge to understand the policies and practices at issue in this case and how they were applied to Plaintiffs. Defendant's 30(b)(6) witnesses testified as to the policies and practices at the time, which is permissible to establish that on a particular occasion Defendant acted in accordance with that policy or practice. *See* Defendant's Responses to Plaintiff's Evidentiary Objections. More specifically, the CBP 30(b)(6) witness met with several individuals, including Plaintiffs processing officers and officers present at the Laredo Port of Entry the day Plaintiffs arrived. He also reviewed several hundred pages of documents. The ICE 30(b)(6) witness also reviewed several hundred pages of documents and met with subject matter experts at the three detention centers at issue in this case. The HHS 30(b)(6) witness also reviewed A.F.A.J.'s UAC case file and corresponded with individuals who worked in the field at BCFS.<br><br>Evidence: *See* Marquez Reply Decl. at Exs. 1-3, (CBP 30(b)(6) Depo) at 17:5-22:10, 25:7-29:25, 39:16-43:11, (ICE 30(b)(6) Depo) at 17:9-19:13, 19:21-20:12, 23:8-22, (HHS 30(b)(6) Depo) at 10:25-11:10, 12:19-13:14, 18:15-19:13; *See* Pinchas Reply Decl. at Ex.2, (CIS 30(b)(6) Jennifer Rellis Depo) at 12:18-23, 16:20-25, 18:19- |

| Plaintiff's Supplemental Statement of Undisputed Fact | Opposing Party's Response to cited Fact and Supporting Evidence |
|---|---|
| custody), Ex. V. | 19:10, 24:5-7, 24:14-25:24. |

Dated: February 2, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

 */s/ Christina Marquez*
CHRISTINA MARQUEZ
Assistant United States Attorney

Attorneys for Defendant
The United States of America