MILBANK LLP
Linda Dakin-Grimm (State Bar #119630)
Mark Shinderman (State Bar #136644)
Samir L. Vora (State Bar #253772)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (213) 892-4404
Facsimile: (213) 629-5063
Email: Ldakin-grimm@milbank.com

*Additional counsel listed on signature page

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and A.F.A.J

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ESVIN FERNANDO ARREDONDO RODRIGUEZ INDIVIDUALLY AND A.F.A.J., A MINOR, BY HER GUARDIAN *AD LITEM*, JEFFREY HAMILTON, | Case No.: CV 22-02845-JLS-JC |
| Plaintiffs, | **PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES OF AMERICA, | Hearing Date:  February 16, 2024 |
| Defendant. | Time:  10:30 a.m. Place:  First Street Courthouse, Courtroom 8A |
| | Honorable Josephine L. Staton, United States District Judge |

1

# TABLE OF CONTENTS

2

3    I.    OBJECTIONS TO DEFENDANT'S STATEMENT OF

4          UNDISPUTED FACTS .............................................................................. 1

5

6    II.   OBJECTIONS TO DEFENDANT'S PROPOSED

     CONCLUSIONS OF LAW ..................................................................... 68
7

8    III.  PLAINTIFFS SUPPLEMENTAL STATEMENT OF FACTS ............................ 81

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED
CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

Pursuant to Local Rule 56-2, Plaintiffs Esvin Fernando Arredondo Rodriguez and A.F.A.J. respectfully submit the following Statement of Genuine Issues in response to Defendant's Statement of Undisputed Facts and Conclusions of Law with respect to its Motion for Partial Summary Judgment.[1]

# I.   OBJECTIONS TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

As discussed in further detail below and in Plaintiffs' Supplemental Statement of Fact, *infra* III, Defendant's proposed Statement of Fact relies predominantly on what *should* have occurred at ports of entry, detainment centers, and Office of Refugee Resettlement ("ORR") shelters.  There is no testimony that these procedures were in fact followed as it relates to Plaintiffs.  In fact, *no witness* for Defendant has testified that procedures were followed in this case.  *infra* III ¶¶ 18-19.  Additionally, many of the documents relied upon by Defendant are unauthenticated, and in several instances, likely not prepared at or near the time of the events they purport to describe.  As a result, the only evidence about what actually occurred is the unrebutted testimony of Plaintiffs.

---

[1] Plaintiffs note that many of the documents relied on by Defendant in their purported statement of fact were produced to Plaintiffs and filed with the Court without any Bates stamping.  Plaintiffs repeatedly asked Defendant to Bates stamp their document productions.  *See* Declaration of Samir L. Vora Ex. N (raising the issue that productions are not Bates stamped); *id.* Ex. O (same); *id.* Ex. R (stating, in part, "given the speed in which documents must be turned around we are unable to bates number the documents . . . . This can take up to two weeks.  We eventually will bates number anything produced to you"); *id.* Ex. R (stating, in part, "[w]e will get you the bates numbered versions as soon as possible"); *id.* Ex. AA (continuing to follow-up on Plaintiffs' request for Bates-stamped documents).  Defendant's continued refusal to Bates stamp their own documents despite numerous requests caused difficulties throughout the discovery process and continued to cause difficulties when preparing Plaintiffs motion and responding to Defendant's motion.

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| **1.** U.S. Border Patrol ("BP") is a component of U.S. Customs and Border Protection ("CBP"), which is an agency within DHS.<br><br>(*See* CBP Organizational Structure ("CBP Org. Chart"), available at https://www.cpb.gov/sites/default/files/assets/documents/2023-Mar/cbp-org-chart-compliant-03-2023.pdf.) | **DISPUTED.** BP is not a "component" of CBP, and that term is undefined. Rather, CBP, one of the world's largest law enforcement organizations" is "the United States' first unified border entity, which takes a comprehensive approach to border management and control, combining customs, immigration, border security, and agricultural protection into one coordinated and supportive activity." *See About CBP*, U.S. Customs and Border Protection https://www.cbp.gov/about (last visited Jan. 16, 2024), Ex. A.<br><br>The organizational chart referenced by Defendant was not produced in discovery and is not found at the provided URL, which states: "We're sorry, we can't find the page you're looking for.  It might have been removed, changed its name, or is otherwise unavailable." |
| **2.** BP possesses responsibility for apprehending individuals who enter the United States between ports of entry.<br><br>(Declaration of David Pinchas "Pinchas Decl." at ¶ 2, Ex. 2 (H.N. Depo) at 18:11-24, 51:1-13; Declaration of Christina Marquez | **DISPUTED** to the extent that this assertion purports to be a comprehensive description of BP's responsibilities or an assertion that BP is the only agency within CBP with such responsibilities.<br><br>BP's responsibility is much more extensive than asserted.  BP's "primary mission" is to detect and prevent the illegal entry of individuals into the US," both between ports of entry and at official border stations. |

2

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | **Defendant's Statement of Undisputed Facts** | **Plaintiffs' Responses and Supporting Evidence** |
|---|---|---|
| | "Marquez Decl." at ¶ 6, Ex. 5 (H.E. Depo) at 101:3-10) | To that end, BP operates and controls border stations across sectors of the U.S. border, including the Laredo sector in Texas, where the events at issue in this case occurred.  *See Border Patrol Overview*, U.S. Customs and Border Protection website, https://www.cbp.gov/border-security/along-us-borders/overview (last visited Jan. 16, 2024), Ex. B; *Border Security - Sectors and Stations*, U.S. Customs and Border Protection, https://www.cbp.gov/border-security//along-us-borders/border-patrol-sectors (last visited Jan. 16, 2024), Ex. C. |
| 3. | Office of Field Operations ("OFO") is a component of CBP, which is an agency within DHS.  (*See* CBP Org. Chart) | Undisputed that CBP has an office of Field Operations.  **DISPUTED** to the extent that the OFO is not a "component" of CBP. That term is undefined.  The organizational chart referenced by Defendant was not produced in discovery and is not found at the provided URL, which states: "We're sorry, we can't find the page you're looking for.  It might have been removed, changed its name, or is otherwise unavailable." |
| 4. | OFO is responsible for processing individuals at ports of entry. | **DISPUTED** to the extent that it implies that CBP as a whole is not responsible for processing individuals at ports of entry or that CBP employees, including those within its BP section are not also involved. |

3

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | (*See* CBP Org. Chart; *see also* H.N. Depo at 18:11-24) | The organizational chart referenced by Defendant was not produced in discovery and is not found at the provided URL, which states: "We're sorry, we can't find the page you're looking for.  It might have been removed, changed its name, or is otherwise unavailable." |
| **5.** | BP and OFO are co-equal parts of CBP that report to the Deputy Commissioner independent of each other.<br><br>(*See* CBP Org Chart; *see also* H.N. Depo at 51:1-13, 94:18-21) | **DISPUTED**, but irrelevant.<br><br>The organizational chart referenced by Defendant was not produced in discovery and is not found at the provided URL, which states: "We're sorry, we can't find the page you're looking for.  It might have been removed, changed its name, or is otherwise unavailable."<br><br>The testimony cited does not support the fact asserted.  *See* H. Nieves Tr. 51:1-13 (describing BP's role apprehending illegal entrants), Ex. L; *See also id.* (testifying that BP and OFO each have their own chains of command).  Neither of the issues that the deponent testified to establishes that "BP and OFO are co-equal parts of CBP that report to the Deputy Commissioner independent of each other." |
| **6.** | BP does not control policy for OFO.<br><br>(*See* Marquez Decl. ¶¶ 8-9, Exs. 7-8 (Hastings Depo) at 31:22, 33:12-34:3, | **DISPUTED** because unsubstantiated by any evidence, but irrelevant.  The Family Separation Policy and ZTP within it were not directed to specific sections within CBP.  *See* Plaintiffs' Statement of Undisputed Fact ("SOF") |

4

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (DHS 30(b)(6) Depo) at 193:15-194:12) | in support of Plaintiffs' Motion (Dkt. 98-2) ¶ 43 and Exhibits 24 and 33 attached thereto. |
| | The testimony relied on by Defendant does not support the fact asserted.  B. Hastings Tr. 31:22 (states in full, "Q. Okay.  Let me -- let me circle"); B. Hastings Tr. 33:12-34:3 (testifying about the role of "LEOD" in developing BP policy); J. McCament 30(b)(6) Tr. 192:2-194:12 (testifying that "guidelines" on the implementation of policies are specific to an area of OFO or a sector of BP), Ex. J. |
| **7.**   OFO is responsible for the Laredo Port of Entry.<br><br>(*See* H.N. Depo at 52:8-9) | **DISPUTED** to the extent this suggests CBP as a whole is not responsible for the Laredo Port of Entry or that BP and other agencies within CBP are not also active at the Laredo Port of Entry.<br><br>The testimony cited does not support the fact asserted.  *See* H. Nieves. Tr. at 52:8-9 (describing BP and Customs actions at ports of entry), Ex. L. |
| **8.**   The Laredo Port of Entry processes thousands of individuals each day.<br><br>(*See* H.E. Depo at 95:13-25, 96:5-6) | **DISPUTED** because unsubstantiated, but irrelevant.<br><br>The "Laredo Port of Entry," actually consists of five separate ports of entry. *See U.S. Land Port of Entry at Laredo, TX*, U.S. General Services Administration, https://www.gsa.gov/about-us/gsa-regions/region-7-greater-southwest/buildings-and- |

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | facilities/texas/us-land-port-of-entry-at-laredo-tx (last visited Jan. 16, 2024), Ex. D.  Whether those five ports of entry process a combined thousands of individuals every single day is irrelevant. |
| | | Undisputed that Laredo is a port of entry. |
| **9.** | The Zero Tolerance Policy was never applied at the Laredo Port of Entry. (*See* Marquez Decl., at ¶ 3, Ex.2 (CBP 30(b)(6) Depo) at 292:9-293:12; *see also* H.N. Depo at 17:21-25, 106:18-23) | **DISPUTED**. Documentary evidence produced by Defendant establishes that the Zero Tolerance Policy was applied at the Laredo Port of Entry.  *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 53-54 and Exhibit 28 attached thereto. Defendant has acknowledged that Plaintiffs were victims of the Zero Tolerance Policy at the Laredo Port of Entry.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 244-45 and Exhibits MMM, KKK, and JJJ attached thereto; *infra* III ¶¶ 10-14. The deponent Defendant relies on for this alleged fact testified to the contrary.  H. Nieves Tr. 93:18-97:24 (discussing an email regarding the Zero Tolerance Policy sent to Laredo OFO), Ex. L; *id.* 93:18-97:24 (testifying that families arriving at the Laredo Port of Entry were separated if there was a prior immigration violation). Additionally, other witnesses, including Defendant's 30(b)(6) |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | representatives, testified that the Zero Tolerance Policy was applied at the Laredo Port of Entry.  R. Harris Tr. 273:16-21 (testifying "[w]e know at that time [the port of entry was] detaining people for criminality, prior immigration history."), Ex. W; H. Elguezabal Tr. 127:1-6 (discussing an email regarding the Zero Tolerance Policy sent to Laredo OFO, and testifying families arriving at the Laredo Port of Entry were separated if there was a prior immigration violation), Ex. M. |
| **10.** Plaintiff Esvin Arredondo Rodriguez ("Mr. Arredondo") is a native and citizen of Guatemala.<br><br>(*See* Declaration of Tracey Long "Long Decl." at ¶ 5D, Ex. 4 (Mr. Arredondo's Form I-213)) | Undisputed. |
| **11.** Plaintiff A.F.A.J., Mr. Arredondo's daughter, is a native and citizen of Guatemala.<br><br>(*See* Declaration of Randy Fondren "Fondren Decl." at ¶ 5B, Ex. 2 (A.F.A.J.'s Form I-213)) | Undisputed. |
| **12.** Mr. Arredondo and A.F.A.J. sought admission to the United States on May | **DISPUTED** as to the date. Documents produced by Defendant contain multiple dates on which Plaintiffs |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| 16, 2018 at the Gateway to the Americas Bridge, otherwise known as "Bridge 1" at the Laredo Port of Entry at approximately 5:37 p.m. A.F.A.J. was 12 years on this day.<br><br>(*See* Long Decl., Ex. 4; Fondren Decl., Ex. 2; CBP 30(b)(6) Depo at 67:5-9) | arrived at the Laredo Port of Entry. Defendant's documents are hearsay, unauthenticated and many of them appear to have been created after the fact and are unreliable as business records. |
| **13.** This first official interaction Mr. Arredondo and A.F.A.J. had with CBP occurred at what is known as pedestrian primary.<br><br>(*See* CBP 30(b)(6) Depo 73:2-12; Marquez Decl. ¶ 2, Ex.1; Plaintiff's Depo at 39:16-40:10) | **DISPUTED**.<br><br>Mr. Arredondo did not use the term "pedestrian primary" in his deposition. The term "pedestrian primary" is not "known" in any sense of that term.<br><br>Defendant's 30(b)(6) witness testimony relied on here does not refer to the actual arrival of these Plaintiff's, but rather describes a hypothetical entry.  R. Harris Tr. 73:2-12 (beginning "[s]o, anyway, imagine . . .), Ex. W. |
| **14.** Primary is typically the first point at which travelers interface with CBP at a Port of Entry. This is where CBP officers ask travelers what their purpose is for seeking entry into the country and check their documents.<br><br>(*See* H.E. Depo at 24:10-22) | Undisputed but irrelevant to the issues presented in this case.  Moreover, the term "primary" is not generally known. |

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| **15.** | The pedestrian primary officer asked Mr. Arredondo if he and his daughter A.F.A.J. had any valid documents. Mr. Arredondo explained that he had no visa and "was here to turn [himself in]." *(See* Plaintiff's Depo at 39:16-22) | **DISPUTED** as to the characterization of an unnamed officer as "pedestrian primary." Mr. Arredondo did not use that term and Defendant has not identified any agent who had such a title. **DISPUTED** as mischaracterizing the totality of Mr. Arredondo's testimony of what he was asked and what occurred when he initially approached the Laredo Port of Entry. *See* E.F.A.R. Tr. 37:3-40:14, Ex. O. |
| **16.** | Mr. Arredondo and A.F.A.J. did not have valid entry documents to enter the United States. *(See* Plaintiff's Depo at 39:16-22) | Undisputed. |
| **17.** | Mr. Arredondo and A.F.A.J. lawfully applied for admission into the United States and expressed a fear of return to Guatemala. *(See* Long Decl., Ex. 4; Fondren Decl., Ex. 2; Plaintiff's Depo at 39:16-22) | Undisputed that Mr. Arredondo and A.F.A.J. applied for asylum in the United States and expressed fear of returning to Guatemala. |
| **18.** | All individuals who appear inadmissible and express a fear of return are referred to secondary for further processing. | **DISPUTED**. Plaintiffs did not "appear inadmissible" when they approached the Laredo Port of Entry. They asked for asylum, which should have resulted in being referred for a "credible fear interview," not being "referred to secondary for further |

9

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* H.E. Depo at 34:15-20; CBP 30(b)(6) Depo at 95: 2-12) | processing." Nothing about what Defendant did to these specific Plaintiffs was typical or same as what happens to "all individuals."  *See* Excerpt of Cleivi Marilu Jerez Lara's Credible Fear Interview Transcript, dated May 24, 2018, Ex. E (reflecting that Mr. Arredondo's wife and two other daughters arrived at the same port of entry days before Plaintiffs, were not separated, and a credible fear interview was given just days later). |
| | The 30(b)(6) testimony relied on by Defendant does not support the asserted fact.  There is no mention of "all individuals" being referred to "secondary" or being "referring" anywhere "for further processing."  R. Harris Tr. 95:2-12, Ex. W. |
| | The Defendant's witness testimony describes what a "duty would be," it does not describe what happens to "all individuals who appear inadmissible and express a fear of return."  H. Elguezabal Tr. 34:15-20, Ex. M. |
| **19.** Mr. Arredondo and A.F.A.J. were referred to what is known as secondary processing.<br><br>(*See* Plaintiff's Depo at 40:8-17, 41:21-42:1, 42:6-10, 42:19-43:4, 64:17-65:1) | **DISPUTED**.<br><br>Mr. Arredondo and A.F.A.J. were not told anything about what was being done to them, much less that they were "referred to secondary processing." The term "secondary processing" is not "known."<br><br>The testimony relied on by Defendant does not support the fact stated.  There |

10

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | is no mention of "secondary processing" in the testimony. E.F.A.R. Tr. 40:8-17, 41:21-42:1, 42:6-10, 42:19-43:4, 64:17-65:1, Ex. O. |
| **20.** In secondary, CBP officers gather initial information from the individuals. This includes fingerprinting and photographs.<br><br>(*See* CBP 30(b)(6) Depo 73:9-25; H.E Depo at 120:16-22, 160:21-161:8) | **DISPUTED** as to the use of the term "secondary."<br><br>Undisputed that while in custody at the Laredo Port of Entry, CBP agents took all Mr. Arredondo's possessions from him and took his fingerprints and photograph. |
| **21.** Mr. Arredondo was fingerprinted.<br><br>(*See* Plaintiff's Depo at 57:18-58:4, 64: 17-65:1; Pinchas Decl. ¶ 3, Ex. 1 (A.F.A.J. depo) at 34:10-12) | Undisputed. |
| **22.** Mr. Arredondo was searched via a pat down over his clothes.<br><br>(*See* Plaintiff's Depo at 42:25-43:4; 45:1-4) | Undisputed. |
| **23.** Through his fingerprints, it was discovered that Mr. Arredondo was previously encountered by U.S. Border Patrol agents in Laredo, Texas on or about December 10, 2006, and falsely | Undisputed that Mr. Arredondo entered the U.S. more than 12 years prior to his May 2018 entry with his daughter A.F.A.J. |

11

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| identified himself as a Mexican citizen by the name of Esbin Fernando Ramirez-Lopez.<br><br>(*See* Long Decl. at ¶¶ 5C-D, Exs. 3-4 (Mr. Arredondo's Record of Sworn Statement and Form I-213); CBP 30(b)(6) Depo at 187:11-188:2; Plaintiff's Depo at 16:15-17:8, 18:22-24, 19:7-20) | Undisputed that when apprehended in 2006, Mr. Arredondo gave authorities a different surname.<br><br>**DISPUTED** to this extent that the phrasing used by Defendant suggests Mr. Arredondo concealed or was not forthcoming about his prior encounter with CBP. The record, including evidence produced by Defendant, establishes that Mr. Arredondo disclosed this information to officers at the Laredo Port of Entry and was willing to answer any questions about his prior encounter with CBP. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 98-99, 117 and Exhibit 29 attached thereto. |
| **24.** In 2018, prior immigration violations, including a previous unlawful entry, were considered when CBP exercised its discretionary authority to process an inadmissible noncitizen, which may result in separation of a family unit to effectuate detention.<br><br>(*See* H.N. Depo at 97:14-24, 141:18-22, 206:6-11; CBP 30(b)(6) Depo at 232:2-14) | **DISPUTED** that in 2018 (or at any relevant time) CBP had "discretionary authority" to separate an asylum-seeking adult from his child on the purported basis of a prior civil immigration violation that was more than ten years previous. *See* 8 U.S.C. § 1182(a)(9); *see also*, *Self -Help Guide: Do you Just Want to Go Home? Information on Voluntary Departure*, U.S. Dep't of J. Executive Ofc., https://www.justice.gov/media/1211416/dl?inline (last visited Jan. 16, 2023), Ex. H. Furthermore, CBP agents certainly knew or should have known this law, as "the unified border entity" that is charged with "facilitating lawful international travel." *See About CBP*, U.S. Customs and Border Protection |

12

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | https://www.cbp.gov/about (last visited Jan. 16, 2024), Ex. A. |
| 25. | Based on this prior immigration violation, which included the aggravating factors of Mr. Arredondo providing a false identity to U.S. Border Patrol, and providing a false nationality, OFO concluded that Mr. Arredondo would be processed as an expedited removal ("ER") case. Due to Mr. Arredondo's claim that he feared returning to his home country, the case was processed as an ER/credible fear ("ERCF") case, where his removal was put on hold pending the outcome of his credible fear determination during which time he would be detained.<br><br>(*See* Long Decl., Ex. 4; CBP 30(b)(6) Depo at 186:9-16; H.E. Depo at 173:18-174:9) | **DISPUTED** that Mr. Arredondo's immigration record justified Defendant's conduct or that it provided "aggravating factors."  The testimony relied on by Defendant does not speak to any "aggravating factors." R. Harris Tr. at 186:9-16, Ex. W; H. Elguezabal Tr. 173:18-174:9, Ex. M. Defendant has not produced any evidence concerning "aggravating factors."<br><br>**DISPUTED** that "the case was processed as an ER/credible fear ('ERCF') case, where his removal was put on hold pending the outcome of his credible fear determination during which time he would be detained." This assertion was not made to Mr. Arredondo.  Nor is there any contemporaneous documentary or testimonial evidence from May 2018 that when Defendant forcibly separated Plaintiffs they intended to offer Mr. Arredondo a credible fear interview.  To the contrary, Mr. Arredondo was shuttled from detention center to detention center within the country in chains for months without any suggestion that he would be offered a credible fear interview. When he was eventually offered what purported to be a credible fear interview, it was conducted unlawfully, amounting to an |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | evaluation of his asylum claim, not an evaluation of his fear. |
| **26.** Due to the fact that United States Immigration and Customs Enforcement ("ICE) family residential centers did not have space for a family unit with a male head of household at the time CBP processed Plaintiffs, to effect Mr. Arredondo's detention, he and A.F.A.J. had to be separated because they could not be detained together.<br><br>(*See* CBP 30(b)(6) Depo at 186:9-16; 271:3-9) | **DISPUTED**.<br><br>This is a legal argument created by counsel in this case who asked their witnesses to speculate on what may have happened. There is no evidentiary support for this assertion in the record. There is no evidence that Defendant ever sought to place Plaintiffs in a family residential center but could not find a space Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 56-57 and Exhibits Z and V attached thereto; *infra* III ¶ 2.<br><br>Taken in context, Defendant's 30(b)(6) representative (who was not personally involved in the case and did not interview those who were) speculated that a lack of space at a family residential center was "likely," not that it was in fact the case. R. Harris Tr. 186:9-188:2, Ex. W. |
| **27.** The decision to separate was made during the initial intake process, which took place on May 16, 2018.<br><br>(*See* CBP 30(b)(6) Depo at 169:6-170:9, 187:11-188:9; H.N. Depo at 81:16-22) | **DISPUTED** as to the date referenced. The dates on the documents Defendant produced are internally inconsistent and unauthenticated, and we do not know by whom or when they were created. The documents produced by Defendant refer to Plaintiffs as arriving on May 16, 2018 and May 18, 2023. Defendant was unable to produce any witness who had any knowledge when Plaintiffs arrived and were taken into Defendant's custody. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M.  The dates referenced are therefore unverified and disputed.

No percipient witness in the case has admitted to having made the decision to separate Plaintiffs or provided his/her reasoning therefor.  R. Harris Tr. 22:1-6 (testifying that he spoke to no one who made the decision to separate Plaintiffs and speculating on who might have made the decision), Ex. W; *id.* (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs); H. Nieves Tr. 81:16-22 (describing designations of UACs only in general), Ex. L; *id.* 145:13-24 (testifying that he has no recollection of Plaintiffs).

Undisputed that Defendant's decision to forcibly separate Plaintiffs was made by a still unidentified agent of Defendant on May 18, 2018 at the Laredo Port of Entry, prior to Defendant's forcible separation of father and daughter. |
| **28.** The policy at the Laredo Port of Entry required a GS-14 Watch Commander | **DISPUTED**.

Defendant relies on a document that predates the ZTP (and the separation |

15

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| or equivalent to concur with the separation.<br><br>(*See* Marquez Decl. at ¶ 7, Ex. 6 (R.H. e-mail dated December 13, 2017; *see also* CBP 30(b)(6) Depo at 168:2-18) | in this case) and is thus irrelevant.  *See* Marquez Decl. at ¶ 7 (Dkt. 93-2). Defendant's witnesses testified that they received an email following the announcement of the ZTP instructing them differently.  Following the announcement of the ZTP they were to separate any families arriving at the port of entry if the adult in the family had any prior immigration violation or criminal history.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 54 and Exhibit 28 attached thereto; H. Nieves Tr. 93:18-97:24 (testifying about instructions received for the Laredo port of entry following the announcement of the ZTP), Ex. L; H. Elguezabal Tr. 127:1-6 (same), Ex. M. |
| 29. | The CBP Watch Commander, on duty at the relevant time, Cynthia Rodriguez, would have provided final approval for the decision to separate Mr. Arredondo and A.F.A.J.<br><br>(*See* CBP 30(b)(6) Depo at 168:2-18, 186:17-187:1) | **DISPUTED**.<br><br>This assertion is not of a fact but is instead speculation.  Its language that someone "*would* have provided" final approval supposes that the Court will find facts based on speculation.  R. Harris Tr. 186:17-187:1, Ex. W.  The testifying representative for Defendant admittedly had no percipient knowledge of this assertion.  *Id.* 21:1-3. |
| 30. | After the initial intake process, Mr. Arredondo and A.F.A.J. were referred to secondary for further processing. | **DISPUTED**.<br><br>As stated above, the term "secondary" is not "known" and was not used with Plaintiffs in this case. |

16

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* CBP 30(b)(6) Depo at 74:1-3, 159:8-10.) | Defendant produced no witness or evidence supporting this assertion. The testimony Defendant cites to does not support the fact asserted.  *See* R. Harris Tr. 74:1-3 (describing generally "what we call hard secondary," but not testifying about Plaintiffs' experience at the Laredo port of entry), Ex. W; *Id.* 159:5-10 (describing generally processes involving "hard secondary," but not testifying about Plaintiffs' experience at the Laredo port of entry). |
| **31.** Secondary at the Laredo Port of Entry in 2018 contained ten holding cells.  (*See* CBP 30(b)(6) Depo at 77:11-14) | **DISPUTED**.  The testimony Defendant cites to does not support the fact asserted. Defendant's 30(b)(6) representative did not testify that "[s]econdary at the Laredo Port of Entry in 2018 contained ten holding cells."  He testified that "there *should* have been ten." R. Harris Tr. 77:11-14, Ex. W. |
| **32.** Mr. Arredondo was never prosecuted nor referred for prosecution at any relevant time in this case.  (*See* CBP 30(b)(6) Depo at 292:6-293:12) | **DISPUTED** to the extent that Defendant is asserting that it never contemplated prosecution of Mr. Arredondo or that Defendant intended to prosecute him when it separated Mr. Arredondo from his daughter.  *See* M. Burke Tr. 48:4-11, 57:16-58:6 Ex. T (testifying that The Rio Grande Processing Center is used by the Marshals for criminally accused "pretrial inmates").  The testimony Defendant cites to does not support the fact asserted.  The |

17

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | deponent made no assertion that Mr. Arredondo was "never prosecuted nor referred for prosecution." *See* R. Harris Tr. 292:6-293:12 (discussing prosecutions for illegal entry generally and testifying based on review of the file, not personal knowledge, that a charge of illegal entry was not warranted in this case), Ex. W.<br><br>Undisputed that Mr. Arredondo never engaged in any conduct that could have resulted in prosecution and that he was not prosecuted. |
| 33. | The practice at the Laredo Port of Entry was to keep a parent and child together and not effectuate a separation until the child was ready for transfer to the custody of Office of Refugee Resettlement ("ORR") at BCFS Health and Human Services formerly known as Baptist Child and Family Services ("BCFS"), in San Antonio, Texas.<br><br>(*See* CBP 30(b)(6) Depo at 257:13-258:1, H.N. Depo at 131:20-25, 162:9-15) | **DISPUTED** "the practice at the Laredo Port of Entry" is not at issue in this litigation.<br><br>Mr. Arredondo testified that the asserted "practice at the Laredo Port of Entry" is not what occurred in this instance. E.F.A.R. Tr. 72:7-16 (testifying that he was separated from A.F.A.J. approximately six hours before she was taken from the Laredo port of entry), Ex. O. Defendant was unable to produce any witness that had any knowledge of how Plaintiffs (or those with whom they were held) were treated at the Laredo port of entry or any witness who spoke to someone who had any knowledge of how Plaintiffs were treated at the Laredo port of entry. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves Tr. |

18

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | 81:16-22 (describing designations of UACs in general), Ex. L; *id.* 145:13-24 (testifying that he has no recollection of Plaintiffs); H. Elguezabal Tr. 133:6-9 (same), Ex. M. Mr. Arredondo's testimony is therefore undisputed. |
| **34.** BCFS is an independent contractor that ORR maintains a cooperative agreement with to provide housing and services to unaccompanied children or "UACs" in ORR custody. (*See* Declaration of James De La Cruz, at ¶ 6, Ex. A (cooperative agreement)) | **DISPUTED.** BCFS is not an independent contractor. Rather, it is a grantee recipient of hundreds of millions of dollars of federal funds annually, under contract to the US Department of Health and Human Services' (HHS") Office of Refugee Resettlement ("ORR"). BCFS was reviewed and evaluated by HHS's Office of Inspector General in December 2018, which found that BCFS failed to comply with federal and state requirements related to the health and safety of unaccompanied alien children. *infra* III ¶¶ 5-6, 9. 

Whether or not BCFS has a "cooperative agreement" with ORR is irrelevant. BCFS, and its employees, acted and act as agents of Defendant, charged by Defendant with the care of children in Defendant's custody. *See* HHS 30(b)(6) J Gonzalez Tr. 19:4-19 (testifying that in 2018, in his capacity as an ORR employee, he oversaw the staff responsible for the care of children at BCFS, referring to BCFS as "our shelter"), Ex. S. 

The question of whether BCFS and its employees are sufficiently removed |

19

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | from Defendant to qualify as an independent contractor for purposes of liability is a question best left to the fact finder. *See Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997). |
| **35.** Mr. Arredondo and A.F.A.J. were separated ten minutes before A.F.A.J. departed from the Laredo Port of Entry to be transferred to the custody of ORR at BCFS.<br><br>(*See* A.F.A.J.'s Depo at 37:4-39:24) | **DISPUTED**.<br><br>A.F.A.J. was a distressed and terrified 12-year-old at the time the separation occurred. Mr. Arredondo, who was an adult at the time of the separation testified that he was separated approximately six hours before he witnessed A.F.A.J. being taken from the Laredo port of entry. E.F.A.R. Tr. 72:7-16, Ex. O. |
| **36.** Since it had been determined that Mr. Arredondo and A.F.A.J. were going to be separated, and A.F.A.J. did not have a known parent or legal guardian in the United States who could care for her, A.F.A.J. was processed as an unaccompanied child or "UAC."<br><br>(*See* CBP 30(b)(6) Depo at 270:25-271:9) | **DISPUTED** to the extent that Defendant is characterizing its designation of A.F.A.J. as an UAC as justified.<br><br>A.F.A.J.'s mother and two sisters were being held together in Defendant's custody; Defendant was therefore aware that A.F.A.J. had a parent in the United States who could care for her. *See* Ex. E.<br><br>Undisputed that Defendant wrongfully declared A.F.A.J. to be "unaccompanied." |
| **37.** The practice in Laredo was to process the minor child as a UAC before physical separation so the parent is | **DISPUTED** "the practice at the Laredo Port of Entry" is not at issue in this litigation. |

20

| | **Defendant's Statement of Undisputed Facts** | **Plaintiffs' Responses and Supporting Evidence** |
|---|---|---|
| | with the child during processing and in order to meet the statutory and policy time requirements for referring and transferring custody of all UACs to ORR custody.<br><br>(*See* H.N. Depo at 36:14-18, 81:16-22; CBP 30(b)(6) Depo 133:21-134:5, 174:21-175:5, 232:2-14, 257:23-258:11) | Mr. Arredondo testified that he was separated from A.F.A.J. approximately six hours before she was taken from the Laredo port of entry. E.F.A.R. Tr. 72:7-16, Ex. O. Defendant failed to produce any witness who had any knowledge of how Plaintiffs were treated at the Laredo port of entry or any representative witness who spoke to anyone had any knowledge of how Plaintiffs were treated at the Laredo port of entry. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves Tr. 81:16-22 (describing designations of UACs in general), Ex. L; *id.* 145:13-24 (testifying that he has no recollection of Plaintiffs); H. Elguezabal Tr. 133:6-9 (same), Ex. M. Mr. Arredondo's testimony is therefore undisputed.<br><br>Furthermore, "the TVPRA does not grant CBP agents discretion to make pre-emptive determinations that a parent *might become* unavailable." *C.M. v. United States*, 2023 WL 7102132, at *11 (D. Ariz. Oct. 24, 2023) (emphasis in original) (citing 6 U.S.C. § 279(g)). |
| 38. | Mr. Arredondo remained in CBP custody until May 18, 2018. | **DISPUTED**.<br><br>The dates on the documents Defendant produced are internally inconsistent and unauthenticated, as we do not know when they were created or by |

21

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* Long Decl. at ¶ 5C, Ex.2 (Custody Log)) | whom. The documents produced by Defendant refer to Plaintiffs as arriving on May 16, 2018 and May 18, 2023. Mr. Arredondo testified that he was held at the Laredo port of entry for a day and a half. E.F.A.R. Tr. 75:18-20, Ex. O. Defendant failed to produce any witness who had any knowledge of the date on which Plaintiffs arrived at the Laredo Port of Entry, were taken into Defendant's custody, and were moved to other facilities. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. The dates referenced are therefore unverified and disputed. |
| **39.** Mr. Arredondo was provided breakfast, lunch, and dinner at the Laredo Port of Entry.<br><br>(*See* Plaintiff's Depo at 76:4-9) | Undisputed. |
| **40.** In 2018, the Laredo Port of Entry had a contract with a local franchise to provide food.<br><br>(*See* H.N. Depo at 120:24-121:4) | **DISPUTED** but irrelevant.<br><br>To prove this assertion, the best evidence rule would require production of this document. No such document was produced. The deposition testimony cited does not establish the fact, it merely reflects |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | what one agent "understood" to be the case.  *See* H. Nieves Tr. 120:21-121:4, Ex. L. |
| **41.** Individuals housed at the Laredo Port of Entry were provided three meals a day, as well as water, and snacks if requested.<br><br>(*See* H.N. Depo at 121:5-7, 121:11-24, 122:12-123:2; H.E. Depo at 189:16-24, 191:22-192:22) | **DISPUTED** the practice generally for individuals at the Laredo port of entry is not at issue in this litigation but rather, what is at issue is the treatment of Plaintiffs.<br><br>The testimony Defendant relies on reflects those witnesses understanding of usual procedures, not what actually occurred in this instance.  Mr. Arredondo testified (in part) that, even if requested, snacks were not provided. E.F.A.R. Tr. 76:10-77:9, Ex. O. Defendant was unable to produce any witness who had any knowledge of how Plaintiffs were treated at the Laredo port of entry or any witness who spoke to anyone with any knowledge of how Plaintiffs were treated at the Laredo port of entry.  R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. Mr. Arredondo's testimony about what occurred is therefore undisputed. |
| **42.** Individuals held at the Laredo Port of Entry were also provided with cots or mats in their cells. | **DISPUTED** the practice generally for individuals at the Laredo port of entry is not at issue in this litigation but |

23

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* Long Decl. at ¶ 5C, Ex.2; H.E. Depo at 197:23-198:1. CBP 30(b)(6) Depo 82:5-11) | rather what is at issue is the treatment of Plaintiffs.<br><br>Mr. Arredondo and A.F.A.J. both testified that they were not provided with either a cot or a mat during the time they were detained at the Laredo port of entry.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 125, 162, 164 and Exhibits BBBB, HH and CCCC attached thereto; E.F.A.R. Tr. 78:8-80:2, Ex. O; A.F.A.J. Tr. 39:6-10, Ex. N.  Defendant was unable to produce any witness who had any knowledge of how Plaintiffs were treated at the Laredo port of entry or any witness who spoke to anyone who had any knowledge of how Plaintiffs were treated at the Laredo port of entry.  R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M.  Mr. Arredondo and A.F.A.J.'s testimony is therefore undisputed. |
| **43.**  Holding cells were checked every fifteen minutes.<br><br>(*See* H.E. Depo at 192:19-22; CBP 30(b)(6) Depo at 79:10-14) | **DISPUTED** the practice generally for individuals at the Laredo port of entry is not at issue in this litigation but rather what is at issue is the treatment of Plaintiffs.<br><br>Mr. Arredondo testified that he and other adults were ignored by Defendant's employees at the Laredo port of entry.  Pls' SOF in support of |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | Pls' Mot. (Dkt. 98-2) ¶¶ 127, 165 and Exhibit HH attached thereto; E.F.A.R. Tr. 76:20-25, Ex. O.  Defendant was unable to produce any witness that had any knowledge of how Plaintiffs were treated at the Laredo port of entry or any witness who spoke to anyone had any knowledge of how Plaintiffs were treated at the Laredo port of entry.  R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. Defendant produced no documentary evidence to establish the asserted fact. Mr. Arredondo's testimony is therefore undisputed. |
| **44.** On May 18, 2018, Mr. Arredondo was transferred into ICE custody. (*See* Long Decl. at ¶ 5C, Ex.2; Declaration of Jason Lynch "Lynch Decl." at ¶ 5, Ex.1) | **DISPUTED.** The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who created them or when they were created.  The documents produced by Defendant refer to Plaintiffs as arriving at the Laredo Port of Entry on both May 16, 2018 and May 18, 2023.  Defendant was unable to produce any witness who had any knowledge of the date on when Plaintiffs arrived and were taken into Defendant's custody.  R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no |

25

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M.  The dates referenced are therefore unverified and disputed. |
| **45.** On May 17, 2018, A.F.A.J. was admitted to BCFS in San Antonio, Texas, and transferred to the custody of ORR.<br><br>(*See* A.F.A.J.'s Depo 42:19-25; *see also* Declaration of Kevin Duvall "Duvall Decl." at ¶ 3, Ex. 2 (Initial Intake Assessment)) | **DISPUTED**.<br><br>The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who prepared them or when they were created.  The documents produced by Defendant refer to Plaintiffs as arriving at the Laredo Port of Entry on both May 16, 2018 and May 18, 2023.  Defendant was unable to produce any witness who had any knowledge of the date on when Plaintiffs arrived and were taken into Defendant's custody. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M; Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. S; G. Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS),  Ex. Q; *see also id.* 109:11-110:10, 112:7-18 (testifying |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | that some information on BCFS forms is as of the time *printed* rather than the time completed, and testifying that some forms in A.F.A.J.'s BCFS file were printed after she was discharged from BCFS). The dates referenced are therefore unverified and disputed. |
| 46. | BCFS is an emergency shelter and one of ORR's least restrictive environments.<br><br>(*See* Marquez Decl. at ¶ 5, Ex. 4 (HHS 30(b)(6) Depo) at 29:2-10) | **Disputed**. BCFS is a provider of temporary shelter and foster care services at multiple locations. In 2018, BCFS operated eight shelter facilities and eight foster care homes in Texas. The "emergency" designation testimony offered by one of Defendant's witnesses did not acknowledge the size of BCFS or the breadth of its many offerings. It was not specific as to the location to which A.F.A.J. was sent. *Infra* III ¶¶ 7-8. |
| 47. | In 2018, upon a UAC's arrival, BCFS would begin the preliminary intake assessment.<br><br>(*See* HHS 30(b)(6) Depo at 79:1-6, 17-23) | **DISPUTED**.<br><br>This is not a factual assertion but is instead an assertion of what "would" potentially happen. BCFS is a provider of temporary shelter and foster care services at multiple locations. In 2018, BCFS operated eight shelter facilities and eight foster care homes in Texas. The testimony relied on by Defendant does not establish which kind of BCFS facility was being discussed, nor does it support that BCFS began preliminary intake assessments at the time a child arrived. J. Gonzalez Tr. 79:1-23 (testifying that how soon after a child's arrival a shelter might begin an |

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | assessment was determined on a case-by-case bases), Ex. S; *infra* III ¶¶ 7-8. |
| **48.** This preliminary intake assessment determines whether that emergency shelter is the appropriate place to house the minor considering the minor's physical and emotional state.<br><br>(*See* HHS 30(b)(6) Depo at 80:15-19) | **DISPUTED** as to the characterization of the testimony.<br><br>The 30(b)(6) representative testified that the purpose of the "72-hour intake assessment" is to "determine if a child is in visible distress, injured; uncontrollably sad or in any direction . . . [i]f the child is obviously sick, has a high temperature of 106. . . . we are going to proceed with our standard operating procedures." J. Gonzalez Tr. 80:7-81:2, Ex. S. The case manager responsible to A.F.A.J. during the time she was held at BCFS testified that "during that initial intake assessment, we cover rules and expectations. And that was pretty much it." G. Alvarez-Ramos Tr. 50:8-20, Ex. Q. |
| **49.** ORR's standard operating procedures require a full assessment of the child's mental, physical, social background so that the child can have a successful stay in a shelter.<br><br>(*See* HHS 30(b)(6) Depo at 80:24-81:6) | **DISPUTED**.<br><br>Defendant's 30(b)(6) representative described this "full assessment" as for the purpose of identifying troublesome children – who identifying hear voices encouraging them to kill others, children have a "heightened medical situation," and children who are being held with their alleged smuggler. Gonzalez Tr. 81:24-83:25, Ex. S. |

28

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| **50.** After the preliminary assessment, an individual service plan is prepared for the child, which includes individual counseling and group counseling, each occurring once a week.<br><br>(*See* HHS 30(b)(6) Depo at 86:22-25, 87:4-25, 88:19-25) | **DISPUTED**.<br><br>A.F.A.J. testified that she did not receive any therapy or counseling while at BCFS.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 144 and Exhibit BBBB attached thereto.  Defendant failed to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone who has any personal knowledge of how A.F.A.J. was treated at BCFS.  Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. S; G. Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. A.F.A.J.'s testimony is therefore undisputed. |
| **51.** ORR policy allows children to call their families at least twice a week. This doesn't include calls that may be needed to obtain reunification information. Also, if a child is in distress he/she may be provided with additional phone calls to family. | **DISPUTED** as to the implication that the policy referenced was followed.<br><br>A.F.A.J.'s testimony and evidence in the record establishes that she was only allowed to speak to her father once during the entire time Defendant held her at BCFS; that call happened weeks after her arrival at BCFS.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 156-57 and Exhibits T, 61, and 68 attached thereto.  A.F.A.J. also testified that she first spoke with her mother several weeks after Defendant |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | (*See* HHS 30(b)(6) Depo at 89:14-90:11) | transported A.F.A.J. to BCFS.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 155 and Exhibit BBBB attached thereto.  Defendant was unable to produce any witness with any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone that has any personal knowledge of how A.F.A.J. was treated at BCFS.  Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. S; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q.<br><br>A.F.A.J.'s testimony is therefore undisputed. |
| 52. | The process of reunification begins as soon as the child comes into ORR custody.<br><br><br>(*See* HHS 30(b)(6) Depo at 105:13-19) | **DISPUTED**.<br><br>Defendant never undertook to reunify A.F.A.J. with her father. Reunification was only accomplished after multiple court orders and intervention by counsel and elected officials.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 215, 221-39 and Exhibits R, II, RR, SS, TT, UU, VV, WW, XX, AAA, BBB, CCC, DDD, FFF, EEEE, GGGG and Dakin-Grimm Decl. ¶¶ 5, 7, 10 attached thereto. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | | **Defendant's Statement of Undisputed Facts** | **Plaintiffs' Responses and Supporting Evidence** |
|---|---|---|---|
| | 53. | ORR's reunification checklist must be completed before a child is released into a sponsor' custody.

(*See* Duvall Decl. ¶ 4, Ex. 3 (Reunification Checklist)) | **DISPUTED** to the extent that the document cited does not support the fact asserted.  The existence of a reunification checklist, Duvall Decl. ¶ 4, Ex. 3, says nothing of whether such a "reunification checklist *must be completed* before a child is released into a sponsor' custody." |
| | 54. | In 2018, the average length of stay in ORR custody was 60 days.

(*See* HHS 30(b)(6) Depo at 114:2-5) | **DISPUTED** and irrelevant.

It is unclear whether the testimony cited by Defendant refers to the average length of time children stayed at all ORR shelters all BCFS shelters, all BCFS facilities or something else. It is also unclear what point in time in 2018 the purported average reflects. Moreover, the case manager responsible for A.F.A.J.'s care during the time she was held at BCFS was unable to provide an average length of stay for children at BCFS.  *See* G. Alvarez-Ramos Tr. 254:18-259:11, Ex. Q. |
| | 55. | Once a child's case is approved for release, the child should be released within 72 hours.

(*See* HHS 30(b)(6) Depo at 132-7-16) | **DISPUTED**.  This is not a factual assertion but is instead one person's speculation as to what "should" occur. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| **56.** | A.F.A.J. had her own individualized service plan.<br><br>(*See* Duvall Decl. ¶ 2, Ex.1 (Individual Service Plan)) | **Disputed**.<br><br>The existence of a document titled "Individual Service Plan," Duvall Decl. ¶ 2, Ex. 1, does not establish that said document was in any was individualized for A.F.A.J. Defendant's 30(b)(6) witness and the case manager responsible for A.F.A.J.'s care during the time she was held at BCFS both testified that the document Defendant cites to reflects the "minimum" services that should be available to a child in ORR's custody. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 137 and Exhibits DDDD and FFFF attached thereto. |
| **57.** | A.F.A.J. had her own bed in a room she shared with three other girls at BCFS.<br><br>(*See* A.F.A.J. Depo 44:19-25) | Undisputed. |
| **58.** | A.F.A.J. testified that she got along with the other girls in her room.<br><br>(*See* A.F.A.J. Depo at 45:1-2) | Undisputed. |

32

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| **59.** | A.F.A.J. testified that she found her bed at BCFS comfortable.<br><br>(*See* A.F.A.J. Depo at 45:3-4) | **DISPUTED** to the extent there is an implication that A.F.A.J. was comfortable in ORR custody at BCFS or that she was not suffering from sleep problems caused by Defendant's forcible separation of A.F.A.J. from her father.<br><br>A.F.A.J. testified that she had difficulty sleeping at BCFS. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 153 and Exhibit BBBB attached thereto. Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone who has any personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. S; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. A.F.A.J.'s testimony is therefore undisputed. |
| **60.** | A.F.A.J. attended school while she as at the shelter and her classes were in Spanish. The school was located at BCFS. | Undisputed. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED
CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* A.F.A.J. Depo at 45:5-14) | |
| **61.** A.F.A.J. testified that she liked the school.<br><br>(*See* A.F.A.J. Depo at 45:15-16) | Undisputed. |
| **62.** A.F.A.J. was provided clothing and shoes while at BCFS.<br><br>(*See* A.F.A.J. Depo at 46:21-24) | Undisputed. |
| **63.** While at BCFS, A.F.A.J. watched movies, played board games, made friends, and played football and baseball.<br><br>(*See* A.F.A.J. Depo at 46:21-47:16) | **DISPUTED** to the extent that Defendant seeks to imply that A.F.A.J. was happy or enjoyed the time she was held at BCFS.<br><br>Testimony by A.F.A.J. and Mr. Arredondo, along with evidence produced by Defendant, shows that during the time she was held at BCFS, A.F.A.J. had difficulty sleeping, felt anxious and desperate, missed her family, and reported to BCFS that was very sad and worried. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 145-46, 153, 175 and Exhibits 55, BBBB, and CCCC attached thereto. Defendant was unable to produce any witness who has any personal |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED
CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | knowledge of how A.F.A.J. was treated or how she felt at BCFS or any witness who spoke to anyone that has any personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. S; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. Mr. Arredondo and A.F.A.J.'s testimony on this issue is therefore undisputed. |
| 64. | A.F.A.J. was able to take showers every night at BCFS.<br><br>(*See* A.F.A.J. Depo at 47:3-6) | **DISPUTED**.<br><br>The testimony cited does not support the fact asserted.  A.F.A.J. testified that she was able to take showers during the time she was held at BCFS, and that when she took showers it was at night.  She did not testify that she was "able to take showers every night at BCFS."  *See* A.F.A.J. Depo at 47:3-6. |
| 65. | A.F.A.J. was able to speak to her mother and cousin while at BCFS.<br><br>(*See* A.F.A.J. Depo at 47:17-24) | **DISPUTED** to the extent that Defendant seeks to imply that A.F.A.J. was able to speak with her mother and cousin throughout her time detained in ORR custody or that the alleged ORR policy regarding phone calls with families, ¶ 51 above, was followed in A.F.A.J.'s case. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | A.F.A.J. testified that she first spoke with her mother *several weeks* after Defendant transported A.F.A.J. to BCFS.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 155 and Exhibit BBBB attached thereto.  Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness who spoke to anyone that has any personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. S; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. A.F.A.J.'s testimony is therefore undisputed. |
| **66.** A.F.A.J. spoke to her cousin every other day.<br><br>(*See* A.F.A.J. Depo at 47:23-24) | Undisputed. |
| **67.** A.F.A.J. spoke to her father while at BCFS and learned he was in detention. | **DISPUTED** to the extent that Defendant seeks to imply that A.F.A.J. spoke with her father more than once while detained in ORR custody at BCFS or that the ORR policy |

36

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* A.F.A.J. Depo at 48:8-14; Plaintiff's Depo at 99:19-22) | regarding phone calls with families, ¶ 51 above, was followed. A.F.A.J.'s testimony and evidence in the record establishes that she was only able to speak to her father one time while Defendant held her at BCFS; that call happened weeks after her arrival at BCFS.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 156-57 and Exhibits 61, 68, and T attached thereto.  Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. was treated at BCFS or any witness that spoke to anyone that has any personal knowledge of how A.F.A.J. was treated at BCFS. Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. S; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q.  A.F.A.J.'s testimony is therefore undisputed. Moreover, representatives for Defendant and documents produced by Defendant establish that Defendant had no tracking mechanism by which to arrange calls between parents and children that Defendant had separated. ORR shelters struggled to obtain information and facilitate communication between parents and |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED
CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | children that Defendant had separated. *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 46, 49-50, 60, 65-70 and Exhibits JJ, YY, EEE, LLL, OOO, SSS, EEEE, and FFFF attached thereto. |
| **68.** A.F.A.J. testified that she felt safe at the shelter.<br><br><br>(*See* A.F.A.J. Depo at 48:25-49:1; *see also* Duvall Decl. ¶ 5, Ex.4 (BCFS satisfaction survey)) | **DISPUTED**.<br><br>The document that Defendant cites to was prepared *by the case manager* assigned to A.F.A.J.'s care during the time she was held at BCFS—not by A.F.A.J.  *See* Duvall Decl. ¶ 5, Ex.4; *see also* A.F.A.J. Tr. 51:8-12 (testifying only that she completed her name at the bottom), Ex. N. Additionally, the portion of A.F.A.J.'s testimony Defendant cites to supports only that A.F.A.J. felt physically safe; it ignores A.F.A.J.'s testimony about her emotional and mental state of fear and despair.  *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 145-46, 153, 175 and Exhibits 55, BBBB, and CCCC attached thereto.  Defendant was unable to produce any witness who has any personal knowledge of how A.F.A.J. felt at BCFS or any witness that spoke to someone that has any personal knowledge of how A.F.A.J. felt at BCFS.  Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held by Defendant at BCFS), Ex. S; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q. A.F.A.J.'s testimony on this issue is therefore undisputed. |
| **69.** A.F.A.J. was never punished at the shelter.<br><br>(*See* A.F.A.J. Depo at 49:2-4) | Undisputed. A.F.A.J. never engaged in any conduct for which punishment would or should have been considered. |
| **70.** A.F.A.J. learned from her case manager Glorimar that she would be reunited with her mother and sisters. Glorimar was nice to A.F.A.J. and A.F.A.J. testified that she felt comfortable discussing any problems with her.<br><br>(*See* A.F.A.J. Depo at 51:23-52:13) | **DISPUTED**.<br><br>Defendant ignores and omits A.F.A.J.'s testimony on this issue. A.F.A.J. Tr. 94:4-14 (testifying that she did not trust her case manager (Glorimar) and only felt that she could speak to the case manager about things she needed, not how she felt), Ex. N. |
| **71.** A.F.A.J.'s reunification checklist was completed and signed by her case manager on June 5, 2018.<br><br>(*See* Duvall Decl. ¶ 4, Ex. 3) | Undisputed. |

39

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| **72.** | On June 8, 2019, ORR approved the release of A.F.A.J. to her mother.<br><br>(*See* Duvall Decl. ¶ 6, Ex. 5 (UAC straight release approval)) | Undisputed. |
| **73.** | One June 9, 2018, A.F.A.J. was released from ORR custody to her mother in Los Angeles, California.<br><br>(*See* Duvall Decl. ¶ 7, Ex. 6 (Verification of Release)) | Undisputed. |
| **74.** | On May 18, 2018, Mr. Arredondo was transferred to the Rio Grande Detention Center.<br><br>(*See* Lynch Decl." ¶ 5, Ex.1; Marquez Decl. ¶ 4, Ex. 3 (ICE 30(b)(6) Depo) at 44:7-45:24) | **DISPUTED**.<br><br>The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know by whom they were created or when they were created.  The documents produced by Defendant refer to Plaintiffs as arriving at the Laredo Port of Entry both on May 16, 2018 and May 18, 2023.  Mr. Arredondo testified that he was held at the Laredo Port of Entry for a day and a half. E.F.A.R. Tr. 75:18-20, Ex. O. Defendant was unable to produce any witness who had any knowledge of the actual date of Plaintiffs arrival or transfers.   R. Harris Tr. 246:1-4 |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. The dates referenced are therefore unverified and disputed. |
| 75. | The Rio Grande Detention Center is used by ICE.<br><br><br>(*See* ICE 30(b)(6) Depo at 48:4-11) | **DISPUTED** as incomplete.<br><br>The Rio Grande Processing Center, its actual name, is a privately owned, for-profit detention facility whose clients are ICE and the US Marshals Service.<br><br>Defendant's 30(b)(6) representative testified that the Rio Grande Processing Center is "used by the U.S. Marshals and ICE ERO."  M. Burke Tr. 48:4-11, Ex. T.  The Rio Grande Processing Center is used by the Marshals for criminally accused "pretrial inmates." *Id.* 57:16-58:6. |
| 76. | In 2018, there were a higher number of detainees in Rio Grande than usual, but Rio Grande was still within its capacity limits and there was no overcrowding problem.<br><br><br><br>(*See* ICE 30(b)(6) Depo at 65:20-66:9) | **DISPUTED**.<br><br>Mr. Arredondo testified that the room he was held in at the Rio Grande Detention Center was overcrowded. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 171 and Exhibits WWW and CCCC attached thereto.  Defendant's ICE representative testified that she was unfamiliar with how population was tracked at the Rio Grande Detention Center and did not review historical data in preparing for her |

41

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | deposition.  M. Burke Tr. 66:11-23, Ex. T. |
| **77.** In 2018, the Rio Grande Detention Center had an open housing layout for noncitizens, which is an open bay area that can hold 50-100 detainees.<br><br>(*See* ICE 30(b)(6) Depo at 60:1-7, 60:20-61:2, 61:7-17) | Undisputed that the Rio Grande Detention Center was an open room.<br><br>**DISPUTED** as to the capacity.  The testimony Defendant relies on does not support the fact asserted.  Defendant's ICE representative testified that "*many of our facilities have an open bay are . . . which can hold between 50 and a hundred detainees.  . . . it varies by facility.*"  M. Burke Tr. 61:9-13 (emphasis added), Ex. T.<br><br>DISPUTED as to whether the individuals held were all noncitizens.  Defendant's ICE representative testified that she did not know what portion of the open housing space was occupied by noncitizens.  *Id.* 61:3-6. |
| **78.** In 2018, in the Rio Grande Detention Center housing units, detainees would sleep on bunks beds.<br><br>(*See* ICE 30(b)(6) 67:5-7) | Undisputed. |
| **79.** In 2018, Rio Grande Detention Center assigned one detainee to each bunk bed. | Undisputed. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED
CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| *(See* ICE 30(b)(6) 67:8-10) | |
| **80.** On May 18, 2018, Mr. Arredondo arrived at the Rio Grande Detention Center and he was able to call his wife's niece.<br><br>*(See* Plaintiff's Depo at 84:22-85:15; *see also* Lynch Decl. ¶ 6b, Ex. 3 (Rio Grande Detainee Orientation Acknowledgement)) | **DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who prepared them or when they were created.  The documents produced by Defendant refer to Plaintiffs as arriving t the Laredo Port of Entry both May 16, 2018 and May 18, 2023. Mr. Arredondo testified that he was held at the Laredo Port of Entry for a day and a half.  E.F.A.R. Tr. 75:18-20, Ex. O.  Defendant was unable to produce any witness who had any knowledge when Plaintiffs arrived and were taken into Defendant's custody. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M.  The dates referenced are therefore unverified and disputed.<br><br>Undisputed that during his time at the Rio Grande Detention Center he was able to call his wife's niece. |
| **81.** His wife's niece informed him about his wife's whereabouts. | Undisputed that his wife's niece provided information about his wife's whereabouts. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* Plaintiff's Depo at 82:19-83:12, 84:22-85:15; Lynch Decl. ¶ 6b, Ex. 3) | **DISPUTED** as to the omission of Mr. Arredondo's testimony that his wife's niece had no information about A.F.A.J.'s whereabouts. E.F.A.R. Tr. 85:2-10, Ex. O. |
| **82.** On May 18, 2018, Mr. Arredondo was provided with bedding, personal hygiene products, and clothing.

(*See* Lynch Decl. ¶ 6a, Ex. 2 (Rio Grande Property Receipt); Plaintiff's Depo at 87:5-13; ICE 30(b)(6) 80:14-81:2) | **DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know by whom they were created or when they were created. The documents produced by Defendant refer to Plaintiffs as arriving at the Laredo Port of Entry on both May 16, 2018 and May 18, 2023.

Mr. Arredondo testified that he was held at the Laredo port of entry for a day and a half. E.F.A.R. Tr. 75:18-20, Ex. O. Defendant was unable to produce any witness who had any knowledge when Plaintiffs arrived and were taken into Defendant's custody. R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M. The dates referenced are therefore unverified and disputed.

Undisputed that at the Rio Grande Processing Center, Defendant provided Mr. Arredondo with a mattress and blanket (no pillow), some |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | personal hygiene products, and a uniform. |
| **83.** Mr. Arredondo was detained in an open area with about 30-40 people and he slept in a bunk bed.<br><br>(*See* Plaintiff's Depo at 86:16-87:2) | Undisputed. |
| **84.** Mr. Arredondo participated in activities such as religious services.<br><br>(*See* Plaintiff's Depo at 87:16-22) | **DISPUTED.**<br><br>Mr. Arredondo testified that the only activity in which he participated was religious services. He did not participate in activities (plural) "such as" religious activities. |
| **85.** Mr. Arredondo was provided with breakfast, lunch, and dinner every day.<br><br>(*See* Plaintiff's Depo at 88:4-7, 15-17; ICE 30(b)(6) 81:3-6) | Undisputed. |
| **86.** Mr. Arredondo was able to take showers at Rio Grande Detention Center. | **DISPUTED** as to the characterization that Mr. Arredondo could shower at will.<br><br>Undisputed that the Rio Grande Detention Center had showers and that |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | (*See* Plaintiff's Depo at 104:25-105:4) | at times Mr. Arredondo was able to access the showers. |
| **87.** | Mr. Arredondo saw a dentist at Rio Grande Detention Center for a painful and loose molar. A dentist administered anesthesia and his molar was removed.<br><br>(*See* Plaintiff's Depo at 89:10-25) | Undisputed. |
| **88.** | Other than getting his molar removed, Mr. Arredondo did not have any other physical health issues in Rio Grande.<br><br>(*See* Plaintiff's Depo at 90:10-22) | **DISPUTED**.<br><br>Mr. Arredondo testified that he had other health issues—anxiety due to the separation.  He did not tell anyone about his health issues, and physical symptoms of the anxiety manifested later (at other detention centers). E.F.A.R. Tr. Plaintiff's Depo at 90:10-22, Ex. O. |
| **89.** | On or about May 23, 2018, Mr. Arredondo submitted a detainee request form for information about A.F.A.J.'s whereabouts. | Undisputed. |

46

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* Lynch Decl. ¶ 6c, Ex.4 (Detainee Request Form); Plaintiff's Depo 94:12-97:15) | |
| **90.** The detainee request form reflects that Mr. Arredondo learned of A.F.A.J.'s whereabouts on May 23, 2018. On or about May 30, 2018, Mr. Arredondo received a telephone call from A.F.A.J. <br><br> (*See* Lynch Decl. ¶ 6c, Ex.4 (Detainee Request Form); Plaintiff's Depo at 99:19-22) | **DISPUTED** that Mr. Arredondo "learned of A.F.A.J.'s whereabouts on May 23, 2018." <br><br> Mr. Arredondo testified that he never received a response to his request for information about A.F.A.J.'s whereabouts.  E.F.A.R. Tr. 97:18-98:2, Ex. O.  Defendant offered no evidence that any response to the request for information was ever provided to Mr. Arredondo. <br><br> Undisputed that on or about May 30, 2018, Mr. Arredondo and A.F.A.J. had their only phone call while in Defendant's custody. |
| **91.** On June 1, 2018, Mr. Arredondo received a detainee transfer notification informing him that he was being transferred to the Stewart Detention Center in Lumpkin, Georgia. <br><br> (*See* Lynch Decl. ¶ 6d, Ex. 5 (Detainee Transfer Notification)) | **DISPUTED** as to the date referenced. The dates on the documents produced are inconsistent and unauthenticated, as we do not know when they were created. <br><br> Mr. Arredondo was not provided with any documents during his stay at Rio Grande Processing Center. Defendant offered no evidence that Mr. Arredondo received the document referenced.   Defendant was unable to produce any witness who had any knowledge about Mr. Arredondo's time in Defendant's custody.  J. Rellis Tr. 15:2-12 (testifying that she only |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | spoke with counsel to prepare for the deposition and that Defendant's counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  The dates referenced are therefore unverified and disputed. |
| 92. | On June 4, 2018, Mr. Arredondo was transferred to the Stewart Detention Center, in Lumpkin, Georgia, by airplane.<br><br>(*See* Lynch Decl. ¶ 5, Ex.1; ICE 30(b)(6) Depo at 44:7-10, 46:2-17, 93:4-11; Plaintiff's Depo at 92:4-7) | **DISPUTED** as incomplete, as buses were also used in the transfer of Mr. Arredondo to Stewart Detention Center.  E.F.A.R. Tr. 92:4-7, Ex. O.<br><br>**DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who created them or when they were created.  Mr. Arredondo was not asked in his deposition about when he was transferred to Stewart Detention Center.  Defendant was unable to produce any witness who had any knowledge about Mr. Arredondo's time in Defendant's custody.  J. Rellis Tr. 15:2-12 (testifying that she only |

48

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  The dates referenced are therefore unverified and disputed. |
| **93.** | Pursuant to ICE policy, restraints are used during transfer for safety.<br><br>(*See* ICE 30(b)(6) 95:18-20) | **DISPUTED**.<br><br>The testimony cited by Defendant does not support the fact asserted. Defendant's 30(b)(6) representative testified that "generally" restraints are used, but the "the officers always have discretion" about using restraints.  M. Burke Tr. 95:13-20, Ex. T. |
| **94.** | Mr. Arredondo was transferred to the Stewart Detention Center because it was large, and a dedicated ICE facility, and had space for new intakes to decompress the Rio Grande Detention | **DISPUTED**.<br><br>The testimony cited is pure speculation as to the reason that Mr. Arredondo was transferred. Defendant has offered no evidence to support the assertion, nor any witness involved in the transfer decision.  Defendant's |

49

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| Center because it was experiencing higher than usual population levels.<br><br>(*See* ICE 30(b)(6) Depo at 85:22-86:9; 91:19-25) | 30(b)(6) representative had no personal knowledge of Mr. Arredondo's detention and spoke to no one with personal knowledge in preparation for her testimony. M. Burke Tr. 19:14-20, Ex. T. |
| **95.** Another factor that went into the decision to transfer Mr. Arredondo was the fact that he was being processed for expedited removal, and therefore did not have a case pending before an immigration judge in a particular venue.<br><br>(*See* ICE 30(b)(6) Depo at 86:10-87:4) | **DISPUTED**.<br><br>The testimony cited is pure speculation as to the reason that Mr. Arredondo was transferred. Defendant has offered no evidence to support the assertion, nor any witness involved in the transfer decision. Defendant's 30(b)(6) representative had no personal knowledge of Mr. Arredondo's detention and spoke to no one with personal knowledge in preparation for her testimony. M. Burke Tr. 19:14-20, Ex. T. |
| **96.** ICE officers consider many factors when deciding to make a transfer including, but not limited to, detention space, location of the facility, and whether the detainee has family or legal counsel in the area. | **DISPUTED**. What ICE officers may do generally is not at dispute in this action.<br><br>The testimony cited reflects a generalization of what ICE offers might do, not factual testimony about what did happen in this case. Defendant's 30(b)(6) representative had no personal knowledge of Mr. Arredondo's detention and spoke to no one with personal knowledge in |

50

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* ICE 30(b)(6) 87:20-88:6, 90:13-91:6) | preparation for her testimony.  M. Burke Tr. 19:14-20, Ex. T. |
| **97.** During the three-hour plane flight from Rio Grande to Stewart Detention Center, Mr. Arredondo was provided with a sandwich and water.<br><br>(*See* Plaintiff's Depo at 92:12-21) | Undisputed that a sandwich and water was given to Mr. Arredondo.<br><br>**DISPUTED** that he was able to consume them.  Mr. Arredondo testified that due to the shackles on his hands, feet, and waist he was unable to open the bottle of water.  E.F.A.R. Tr. 92:12-21, Ex. O. |
| **98.** In 2018, Stewart Detention Center had a medical unit staffed by ICE Health Service Corps and included both indoor and outdoor recreation.<br><br>(*See* ICE 30(b)(6) 103:7-17) | Undisputed. |
| **99.** In 2018, Stewart Detention Center did not experience overcrowding.<br><br>(*See* ICE 30(b)(6) 104:9-11) | **DISPUTED**.<br><br>Mr. Arredondo testified that the room he was held in at the Stewart Detention Center was overcrowded.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 181 and Exhibits WWW and CCCC attached thereto.  Defendant's ICE representative testified that she did not review historical data about the population levels at Stewart Detention |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | Center in preparing for her deposition. M. Burke Tr. 104:25-105:11, Ex. T. |
| **100.** Once he arrived at Stewart Detention Center he was provided with bedding, personal hygiene products, and clothing.<br><br>(*See* Plaintiff's Depo 104:1-18) | Undisputed. |
| **101.** The sleeping area in Stewart Detention Center was similar to the sleeping area in Rio Grande, which was an open layout with bunk beds.<br><br>(*See* Plaintiff's Depo 103:20-25; ICE 30(b)(6) 103:7-13, 104:2-4; 105:19-21) | Undisputed. |
| **102.** In 2018, each general population housing unit had restroom facilities and showers that could be used by detainees at any time. | **DISPUTED.** It is unclear from the fact asserted what detention center is being references.<br><br>The testimony cited by Defendant does not support the fact asserted. Defendant's 30(b)(6) representative testified that access to shower and restroom facilities was "dependent on many factors. But generally speaking, |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED
CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* ICE 30(b)(6) 105:22-106:8, 106:15-16) | detainees can use facilities when they need them."  M. Burke Tr. 106:9-16, Ex. T. |
| **103.** In 2018, the Stewart Detention Center had both air-conditioning and central heat.<br><br>(*See* ICE 30(b)(6) 106:17-21) | Undisputed. |
| **104.** The Stewart Detention Center also provided religious services once a week, which Mr. Arredondo attended.<br><br>(*See* Plaintiff's Depo 105:15-18) | Undisputed. |
| **105.** At Stewart Detention Center, Mr. Arredondo claimed he was feeling ill, but had no noticeable symptoms.<br><br>(*See* Plaintiff's Depo 107:6-17) | **DISPUTED**.  The fact asserted mischaracterizes Mr. Arredondo's testimony.  Mr. Arredondo testified that he felt ill, he had visible symptoms, and that he did not interact much with others.  E.F.A.R. Tr. 107:6-17, Ex. O.<br><br>Defendant failed to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody, including his visible symptoms of illness.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the |

53

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | deposition and that Defendant's counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  Mr. Arredondo's testimony on this issue is therefore undisputed. |
| **106.**  Mr. Arredondo never asked for medical treatment at the Stewart Detention Center.   (*See* Plaintiff's Depo 105:23-25) | **DISPUTED**.  The fact asserted mischaracterizes Mr. Arredondo's testimony.  Mr. Arredondo testified that although he was visibly ill, he did not seek treatment at the Stewart Detention Facility out of fear because detainees who sought treatment risked being put into isolation for long periods of time, thus missing their interviews and prolonging their detention.  E.F.A.R. Tr. 105:23-106:24, Ex. O; *see also* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 183-91 and Exhibits HH, WWW, VVV, CCCC, and GGGG attached thereto.  Defendant was unable to produce any witness who had any |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | knowledge about Mr. Arredondo's time in Defendant's custody. J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V. Mr. Arredondo's testimony on this issue is therefore undisputed. |
| **107.** On June 15, 2018, Mr. Arredondo was transferred to Folkston Immigration Processing Center so that he could receive his credible fear interview more efficiently. | **DISPUTED** as to the date referenced. The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who created them or when they were created. Mr. Arredondo was not asked in his deposition about what date he was transferred to Folkston Detention Center. Mr. Arredondo testified that he was never told why he was being transferred from one prison to another. E.F.A.R. Tr. 111:17-24. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* Lynch Decl. ¶ 5, Ex. 1; ICE 30(b)(6) Depo at 44:7-10, 46:2-17, 47:2-5,126:4-18) | Defendant was unable to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody, including the reasons for the transfers.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  The dates referenced are therefore unverified and disputed.

**DISPUTED** as to the characterization that Mr. Arredondo was transferred to the Folkston prison "so that he could receive his credible fear interview more efficiently." ICE offered detainees credible fear interviews over the telephone—their physical locations were irrelevant.  If efficiency had been important, Mr. Arredondo would have been provided with a credible fear interview when he arrived at the |

56

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | Laredo Port of Entry.  Moreover, when ICE provided Mr. Arredondo with what it called a "credible fear interview," it was performed in an unlawful manner, adjudicating not just his fear but the merits of an asylum claim. There was no reason for a transfer to Folkston.  *Compare* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 202 and Exhibit 29 attached thereto *with* Ex. E. |
| **108.** In 2018, the Folkston Immigration Processing Center was similar to both the Rio Grande and Stewart Detention Centers in that it had open housing units, medical facilities, and recreation facilities.<br><br>(*See* ICE 30(b)(6) 138:4-10) | **DISPUTED**.<br><br>The testimony relied on by Defendant does not support the fact asserted. Defendant's 30(b)(6) representative testified that she had no personal knowledge of Folkston, but she speculated that it was like other detention centers.  M. Burke Tr. 137:10-138:16, Ex. T. |
| **109.** In 2018, Folkston Immigration Processing Center had bunk beds.<br><br>(*See* ICE 30(b)(6) 138:17-20) | **DISPUTED**.<br><br>The testimony relied on by Defendant does not support the fact asserted. Defendant's ICE representative testified that she had no personal knowledge of Folkston, but she speculated that it had bunk beds.  M. Burke Tr. 137:10-138:20, Ex. T. |

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| **110.** | In 2018, Folkston Immigration Processing Center had toilets, sinks, and showers in the housing unit.<br><br>(*See* ICE 30(b)(6) 140:12-15) | **DISPUTED**.<br><br>The testimony relied on by Defendant does not support the fact asserted. Defendant's ICE representative testified that she had no personal knowledge of Folkston; she speculated that the bathing facilities would be similar to other detention centers but acknowledged that they "vary by facility and it varies over time at each facility." She further testified that she did not know what the bathing facilities were like in the Folkston Detention Center during the period in question.  M. Burke Tr. 140:12-141:19, Ex. T. |
| **111.** | In 2018, Folkston Immigration Processing Center had air-conditioning and central heat.<br><br>(*See* ICE 30(b)(6) 142:9-14) | Undisputed. |
| **112.** | In 2018, Folkston Immigration Processing Center offered medical care.<br><br>(*See* ICE 30(b)(6) 142:15-143:2) | Undisputed. |

58

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| **113.** | On June 16, 2018, Mr. Arredondo was provided with bedding, clothing, and personal hygiene products at Folkston.<br><br>(*See* Lynch Decl. ¶ 6g, Ex. 8 (Folkston Property Receipts)) | Undisputed. |
| **114.** | The temperature in Folkston Immigration Processing Center was comfortable for Mr. Arredondo.<br><br>(*See* Plaintiff's Depo 112:7-18, 115:13-16) | Undisputed. |
| **115.** | Mr. Arredondo was provided with breakfast, lunch, and dinner at Folkston. For lunch, he was provided with three options.<br><br>(*See* Plaintiff's Depo 115:19-116:8) | Undisputed. |

59

| | Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| **116.** | Mr. Arredondo attended religious services at Folkston Immigration Processing Center.<br><br>(*See* Plaintiff's Depo 116:18-22) | Undisputed. |
| **117.** | During the two and a half weeks, Mr. Arredondo was at Folkston, he was able to contact his family approximately five times.<br><br>(*See* Plaintiff's Depo 117:4-16) | **DISPUTED**.<br><br>The asserted fact mischaracterizes Mr. Arredondo's testimony.  Mr. Arredondo testified that he could not recall how many times he spoke with his family.  Defendant asked if it *could have been* five times.  Mr. Arredondo testified that was possible, but that he could not recall.  E.F.A.R. Tr. 117:4-17, Ex. O. |
| **118.** | Mr. Arredondo did not ask for medical treatment at Folkston Immigration Processing Center.<br><br>(*See* Plaintiff's Depo 120:5-7) | **DISPUTED**.  The fact asserted mischaracterizes Mr. Arredondo's testimony.  Mr. Arredondo testified that he did not seek treatment at Folkston for the same reason he had not sought treatment at Stewart Detention Facility—out of fear because detainees who sought treatment were put into isolation and risked missing their interviews and prolonging their detention.  E.F.A.R. Tr. 120:5-10, Ex. O; *see also id.* 105:23-106:24; Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 183-91 and Exhibits HH, WWW, VVV, CCCC, and GGGG attached thereto.  Defendant was unable to produce any |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | witness who had any knowledge about Mr. Arredondo's time in Defendant's custody.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  Mr. Arredondo's testimony on this issue is therefore undisputed. |
| **119.** On June 19, 2018, Mr. Arredondo had his credible fear interview over the telephone with an interpreter present. <br><br> (*See* Plaintiff's Depo 123:5-13) | **DISPUTED**. <br><br> The testimony relied on by Defendant does not support the fact asserted. There is no mention of an interpreter in the testimony cited.  *See* E.F.A.R. Tr. 123:5-13, Ex. O. |
| **120.** Mr. Arredondo explained why he was afraid to return to Guatemala and felt | **DISPUTED** as incomplete. <br><br> Mr. Arredondo was not asked in the deposition cited whether he could |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| like he had enough time to explain why he was afraid.<br><br><br>(*See* Plaintiff's Depo 125:19-126:18) | understand the questions asked or whether he felt ill when the interview occurred.  Evidence in the record establishes that he felt that the interviewer was rushing him, he had difficulty following the questions asked, he was ignored when he asked for questions to be repeated, and he felt physically ill.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 201 and Exhibits HH and HHH attached thereto. |
| **121.** On June 28, 2018, Mr. Arredondo was transferred back to the Stewart Detention Center by bus.<br><br><br>(*See* Lynch Decl. ¶ 5, Ex.1; ICE 30(b)(6) Depo at 44:7-10, 47:6-17; Plaintiff's Depo 140:11-13) | **DISPUTED** as to the date referenced.  The dates on the documents produced are internally inconsistent and unauthenticated, as we do not know who created them or when they were created.  Mr. Arredondo was not asked in his deposition about what date he was transferred back to Stewart Detention Center.  Defendant was unable to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  The dates referenced are therefore unverified and disputed. |
| **122.** Mr. Arredondo was transferred back to Stewart Detention Center pending the outcome of his credible fear interview.<br><br>(*See* ICE 30(b)(6) 162:10-163:4) | **DISPUTED.**<br><br>The testimony cited is pure speculation as to the reason that Mr. Arredondo was transferred. Defendant's 30(b)(6) representative had no personal knowledge of Mr. Arredondo's detention or the reasons for transfers, and she spoke to no one with personal knowledge in preparation for her testimony.  M. Burke Tr. 19:14-20, 162:10-163:4, 164:4-17, Ex. T. |
| **123.** Mr. Arredondo was provided with a sandwich, apple, and bottle of water during the bus ride from Folkston to Stewart Detention Center.<br><br>(*See* Plaintiff's Depo 140:20-24) | Undisputed. |
| **124.** While in Stewart Detention Center this second time, prior to his removal, | **DISPUTED.**<br><br>The asserted fact mischaracterizes Mr. Arredondo's testimony.  Mr. Arredondo testified that spoke to them |

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| Plaintiff contacted his family once or twice a week.<br><br>(*See* Plaintiff's Depo 141:24-142:4) | "once, twice a week maximum," not that he spoke to them once or twice each week.  E.F.A.R. Tr. 141:24-142:4, Ex. O. |
| **125.** On or about June 25, 2018, Mr. Arredondo learned over the phone from a USCIS male Immigration Analyst (through a Spanish interpreter) that the asylum officer determined that he had not established credible fear of persecution or torture.<br><br>(*See* Long Decl. ¶ 5A, Ex. 1; Plaintiff's Depo at 123:5-19, 130:18-23, 132:10-13; Pinchas Decl. ¶ 4, Ex. 3 (T.R. Depo) 261:1-20, 267:24-268:22) | **DISPUTED** as to the date referenced. The dates on the documents produced are inconsistent and unauthenticated, as we do not know when they were created.  Mr. Arredondo was not asked in his deposition about what date he was informed about his credible fear determination.  Mr. Arredondo testified that a male ICE agent informed him of the decision, not a USCIS agent.  Defendant was unable to produce any witness that had any knowledge about Mr. Arredondo's time in Defendant's custody.  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she |

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V.  The dates referenced are therefore unverified and disputed.<br><br>**DISPUTED** as to the contention that Mr. Arredondo "had not established credible fear of persecution or torture."  The document called "Credible Fear Determination Checklist" produced for the first time in discovery in this case states that contrary to what Mr. Arredondo was told, he *had* established credible fear.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 202 and Exhibits 29 and CCCC attached thereto. |
| **126.** The USCIS Immigration Analyst advised Mr. Arredondo of the adverse result and asked him twice whether he requested review of the negative credible fear determination by an Immigration Judge.<br><br>(*See* T.R. Depo at 191:23-192:19, 299:9-10, 300:14-17) | **DISPUTED**.<br><br>The testimony relied on does not support the fact asserted.  The Immigration Analyst who was deposed in this case had no recollection of Mr. Arredondo or his conversation with Mr. Arredondo.  T. Rice Tr. 309:25-310:21, Ex. P.  Mr. Arredondo testified that he could not recall being told that he could request a review of the decision, but he did recall being told that it was useless to speak with an immigration judge because immigration judges always agree with ICE's decision.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 204-05 and Exhibits HH, HHH, and |

65

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| | CCCC attached thereto.  Mr. Arredondo's testimony is uncontested. |
| **127.** The "Record of Negative Credible Fear Finding and Request for Review by Immigration Judge," Form I-869, reflects that Mr. Arredondo signed the document and opted not to seek Immigration Judge review of the adverse decision.<br><br>(*See* Long Decl. ¶ 5A, Ex. 1; Plaintiff's Depo at 129:1-19; T.R. Depo at 261:1-20, 292:5-13, 294:15-20) | **DISPUTED**.<br><br>The testimony relied on does not support the fact asserted.  The Immigration Analyst who testified in deposition had no recollection of Mr. Arredondo or his conversation with Mr. Arredondo.  T. Rice Tr. 309:25-310:21, Ex. P.  The Immigration Analyst testified generally about how the Immigration Analyst job was conducted.  *See* T. Rice Tr. 261:1-20, 292:5-13, 294:15-20, Ex. P.<br><br>Mr. Arredondo testified that no one read, translated, or explained the document called "Record of Negative Credible Fear Finding" to him, that he was not given a copy of it, and he *did not* check the boxes on the form.  Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 207 and Exhibit CCCC attached thereto.  Mr. Arredondo's testimony is uncontested. |
| **128.** On June 26, 2018, the U.S. District Court for the Southern District of California issued a preliminary injunction enjoining the separation of non-citizen parents and children following their entry into the United States, absent certain circumstances set | Undisputed. |

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| forth by the court, and ordering the reunification of class members with their children by certain dates.<br><br>(*Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018)) | |
| **129.** Mr. Arredondo was removed on August 22, 2018 because he had a final order of removal and had waived Immigration Court review.<br><br>(*See* ICE 30(b)(6) Depo 187:16-21) | **DISPUTED** that Mr. Arredondo was removed "because he had a final order of removal and had waived Immigration Court review." A District Court has already determined that Mr. Arredondo was removed unlawfully in violation of multiple orders in the *Ms. L case*. Defendant did not appeal that determination. The asserted fact also omits legal requirements that Defendant failed to complete prior to Mr. Arredondo's unlawful deportation. *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 85-86 and Exhibits LL, NN, and OO attached thereto. |
| **130.** Before removing Mr. Arredondo, ICE considered the *Ms.L* injunction and determined that Mr. Arredondo-Rodriguez was not a class member as of August 22, 2018. | **DISPUTED.** A federal judge has already determined that this asserted fact is false: that Mr. Arredondo was a class member when the *Ms. L.* injunction was issued, and that Mr. Arredondo was unlawfully deported. *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶ 232 and Exhibit XX attached thereto. Defendant did not appeal this determination. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| Defendant's Statement of Undisputed Facts | Plaintiffs' Responses and Supporting Evidence |
|---|---|
| (*See* ICE 30(b)(6) Depo 193:4-21, 194:5-17) | |

## II.   OBJECTIONS TO DEFENDANT'S PROPOSED CONCLUSIONS OF LAW

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| 1. | Any arriving noncitizen shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed. *See* 8 U.S.C. § 1225(b)(l)(B)(iii)(IV). | **Defendant's proposed conclusion of law is incorrect.**<br><br>Defendant's proposed conclusion of law seeks to construe one phrase of a statute in a vacuum. There are provisions for releasing asylum seekers on parole, as was done with Plaintiff's wife at the same Port of Entry a few days earlier. 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3; Ex. E. Moreover, any necessary detention does not mandate separation. Here the record is clear that Defendant never sought to place Plaintiffs in a family residential centers. *See* Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 56-57 and Exhibits V and Z attached thereto; *Infra* III ¶ 2. |
| 2. | The Department of Homeland Security has discretion to release or parole noncitizens into the United States temporarily under such conditions as its Secretary may prescribe, "only on a case-by-case | **Defendant's proposed conclusion of law is incorrect.**<br><br>As discussed *supra* II ¶ 1, Defendant's proposed conclusion of law ignores that there are processes in place to parole asylees and detention alternatives that do not require separation. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States."  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 235.3(b)(2)(iii). | |
| 3. | Having made the discretionary decision not to release Mr. Arredondo, OFO was expressly authorized to designate A.F.A.J. as a UAC and to transfer her to the custody of ORR.  *See* 8 U.S.C. § 1232(b)(3). | **Defendant's proposed conclusion of law is incorrect.**<br><br>*First*, Defendant cannot "splice" its decisions under the family separation policy "into a series of discrete, noncontroversial decisions" about Mr. Arredondo's immigration history, "its decision to label [A.F.A.J.] 'unaccompanied' under the TVPRA and decisions relating to Plaintiffs' detention" in an effort to manufacture discretion.  *Leticia v. United States*, 2023 WL 7110953, at *11 (E.D.N.Y. Oct. 27, 2023); *id.* ("When an agency has a policy that in practice determines how agents will enforce immigration laws, the agents are not making discrete discretionary decisions.").<br><br>*Second*, Defendant did not exercise discretion in its decision to separate Plaintiffs—detaining Mr. Arredondo in a series of detention centers and detaining A.F.A.J. at BCFS.  "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  The family separation policy removed all discretion from officers |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | because the entire point of the policy was to "use[] family separation to deter migration to the United States." *Leticia*, 2023 WL 7110953, at *11; *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1136 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019) (finding "Government was engaged in a widespread practice of separating migrant families" and "the practice was applied indiscriminately"). A federal court has already determined that Plaintiffs were separated pursuant the family separation policy. *Ms. L. v. U.S. Immigr. & Customs Enf't (Ms. L. III)*, 403 F. Supp. 3d 853, 860 (S.D. Cal. 2019) (Judge Sabraw's order refers to Mr. Arredondo by his initials, E.F.A.R.). Defendant is collaterally estopped from relitigating this determination. United States v. Stauffer Chem. Co., 464 U.S. 165, 173 (1984); *Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) (holding that the government cannot "avoid issue preclusion by finding some argument it failed to raise in the previous litigation" but is bound by the prior district court's decision on the issue). Furthermore, Defendant's representative and witnesses testified that under the family separation policy there was no exercise of discretion—*any* family presenting at the border with prior immigration violations was summarily separated. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 54-55 and Exhibits 28 and IIII attached thereto; Nieves Tr. 97:10-18, Ex. L; Elguezabal Tr. 127:5-6 (testifying that separations based on prior immigration violations were mandated at ports of entry by the ZTP) Ex. M.<br><br>*Third*, a child may only be labelled a UAC if they meet the definition of a UAC under the |

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | Trafficking Victims Protection and Reauthorization Act of 2003 ("TVPRA").  *See* 8 U.S.C § 1232(b)(1).  The TVPRA "does not apply to children who enter the United States with their parents."  *Leticia*, 2023 WL 7110953, at *16.  "[T]he TVPRA does not grant CBP agents discretion to make pre-emptive determinations that a parent *might become* unavailable."  *C.M. v. United States*, 2023 WL 7102132, at *11 (D. Ariz. Oct. 24, 2023) (emphasis in original). |
| 4. | The FTCA's waiver of sovereign immunity is subject to statutory exceptions.  *See* 28 U.S.C. § 2680.  When an exception applies, the United States retains its sovereign immunity and the court lacks subject matter jurisdiction.  *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). | Undisputed the FTCA waives the federal government's sovereign immunity subject to certain exceptions.  **DISPUTED** as to the application of any exceptions in this case. |
| 5. | One such exception is the discretionary function exception ("DFE"). *See* 28 U.S.C. 2680(a). | Undisputed that the discretionary function exception exists as an exception to the federal government's waiver of sovereign immunity under the FTCA.  **DISPUTED** as to its application to this case. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| **6.** | The Supreme Court has established a two-part test to determine when the DFE bars a claim. *United States v. Gaubert*, 499 U.S. 315, 328-32 (1991). First, a court must ask whether the challenged conduct was in fact "discretionary in nature"—that is, whether the conduct involved "'an element of judgment or choice.'" *Id.* at 322 (citation omitted). Second, if the challenged conduct involves judgment or choice, a court must next determine if the "nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* 499 U.S. at 325. | Undisputed. |
| **7.** | Plaintiffs' claims based on Defendant's decisions to detain Mr. Arredondo and | **Defendant's proposed conclusion of law is incorrect.**<br><br>As outlined *supra* II ¶ 3 and *infra* II ¶¶ 10-11 (and discussed in further detail in the |

72

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | separate Plaintiffs are barred by the DFE.  *See Demore v. Kim*, 538 U.S. 510, 523 (2003); *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012), *amended reh'g denied, reh'g en banc denied*, 689 F.3d 975 (9th Cir. 2012); *S.E.B.M. by & through Felipe v. United States*, 659 F.Supp.3d 1249, 1273 (D.N.M. Mar. 6, 2023); *Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020); *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020); *D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016). | accompanying Memorandum in Opposition to Defendant's Motion for Summary Judgment), Defendant cannot "splice" its decisions here "into a series of discrete, noncontroversial decisions" in an effort to manufacture discretion. *Leticia*, 2023 WL 7110953, at *11 (E.D.N.Y. Oct. 27, 2023).  A federal court has already determined that Defendant separated Plaintiffs pursuant to its family separation policy. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 403 F. Supp. 3d 853, 860 (S.D. Cal. 2019).  Under the family separation policy Defendant's agents exercised no discretion.  *Infra* III ¶ 1.  Moreover, to the extent that Defendant's conduct involved some element of discretion (it did not) and did not violate Plaintiffs' constitutional rights (it did), Defendant is still unable to satisfy the second prong of the *Berkovitz* test.  The second prong of the *Berkovitz* test requires that any discretion be based on "considerations of public policy" or "susceptible to policy analysis" in order to be covered by the DFE. *United States v. Gaubert*, 499 U.S. 315, 325 (1991); *Berkovitz*, 486 U.S. at 536; *see also Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994) (stating that discretionary conduct "is protected by § 2680(a) only if it implements social, economic, or political policy considerations.").  "Both the discretionary act prong and the policy judgment prong of the discretionary function exception must be satisfied before the exception will apply." *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996), as amended (Sept. 26, 1996).  The DFE does not apply where there is "no legitimate policy rationale."  *Myles v. United States*, 47 F.4th 1005, 1012 (9th Cir. 2022). Separation of families in immigration custody |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | serves no legitimate governmental objective. *See e.g.*, *C.M.*, 2023 WL 7102132, at *10 (finding Defendant's intention "to separate families irrespective of whether the parents were ever prosecuted to deter other potential migrants from entering the United States. . . . could serve no compelling or legitimate government interest"); *Ms. L. I*, 302 F. Supp. 3d at 1167 ("These allegations sufficiently describe government conduct that arbitrarily tears at the sacred bond between parent and child, and is emblematic of the 'exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective.'"); *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164, 188–90 (D.D.C. 2015) (finding that general civil detention "for the sake of sending a message of deterrence to other Central American individuals who may be considering immigration" is not justified by any legitimate government interest); *Jacinto-Castanon*, 319 F. Supp. 3d at 502 (finding no support in federal law for the proposition that separating families in immigration custody serves a legitimate government objective). |
| 8. | Plaintiffs' claims regarding the conditions of their confinement in government custody are also barred by the DFE. *See Huff v. Neal*, 555 F. App'x 289, 298-99 (5th Cir. 2014) (per curiam); *El Hanif v. United States*, 2015 WL 72804 * | **Defendant's proposed conclusion of law is incorrect.** <br><br> *First*, Defendant cannot "splice" its decisions under the family separation policy "into a series of discrete, noncontroversial decisions" about Mr. Arredondo's immigration history, "its decision to label [A.F.A.J.] 'unaccompanied' under the TVPRA and decisions relating to Plaintiffs' detention" in an effort to manufacture discretion. *Leticia v. United States*, 2023 WL 7110953, at *11 (E.D.N.Y. Oct. 27, 2023); *id.* ("When an agency has a policy that in practice determines how agents will enforce immigration |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | 10 (S.D.N.Y. Jan. 16, 2015); *Antonelli v. Crow*, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012); *Lineberry v. United States*, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009). | laws, the agents are not making discrete discretionary decisions."). <br><br>*Second*, Plaintiffs assume that Defendant's sweeping claim of immunity for decisions regarding conditions of confinement results from an unfortunate wording choice. Defendant cannot seriously contend that the DFE applies to all claims of "poor conditions of confinement" because "the manner in which the government manages and operates its detention facilities involves discretionary decisions." Def.'s Mot. Summ. J. 10. In any event, the cases cited by Defendant either involve conduct inapposite in kind or degree, or involve FTCA claims alongside other causes of action, such that the complaining party cannot be seen as having no right to remedy or recourse. *See, e.g.*, *Bultema v. United States*, 359 F.3d 379, 384, (6th Cir. 2004) (decision not to provide bed rails); *Lineberry v. United States*, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) (allegations of negligent overcrowding); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) (decision regarding provision of telephone services); *Antonelli v. Crow*, 2012 WL 4215024, at *2-7 (E.D. Ky. Sept. 19, 2012) (considering various claims challenging confinement conditions and rejecting the FTCA claims before addressing the petitioner's Bivens claims). <br><br>*Third*, Defendant's attempt to characterize Plaintiff's factual allegations of mistreatment at the hands of Defendant as standalone claims is grossly misplaced and has been repeatedly rejected in other family separation cases. *See e.g.*, *A.F.P. v. United States*, 2022 WL 2704570, at *13 (E.D. Cal. July 12, 2022) ("[R]eject[ing] the government's characterization of plaintiffs' |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | factual allegations as standalone claims . . . [they] concern not the existence of jurisdiction, but the alleged harm resulting from the separation of plaintiffs."); *C.M. v. United States*, 2020 WL 1698191, at *4 (D. Ariz. March 30, 2020) (same).  Plaintiffs' allegations regarding mistreatment by Defendant while Plaintiffs were in Defendant's custody establish injury caused by Defendant's actions—an element of their claims. |
| 9. | To the extent that Plaintiff complains of actions or omissions that took place at BCFS, the United States is not liable for such acts, pursuant to the "independent contractor exception to the FTCA." *See Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016). | **Defendant's proposed conclusion of law is incorrect.**<br><br>Defendant cannot disclaim liability for any harm caused while A.F.A.J. was in ORR custody under the independent contractor exception.  The case it relies on—*Edison v. United States*, 822 F.3d 510 (9th Cir. 2016)—does not support its position.  *Edison* makes clear that an employer can be liable for its own negligence, even where it has delegated some responsibilities to an independent contractor.  *See id.* at 518.  The question is whether plaintiffs have alleged a separate and nondelegable or undelegated duty, which the United States could be liable for breaching.  *See id.*; *id.* n.4 (analogizing to the Ninth Circuit's "peculiar risk" doctrine, where the United States may be held directly liable for breaching a nondelegable duty to ensure that an independent contractor employs proper safety procedures).<br><br>A.F.A.J.'s injuries were caused by Defendant's agents forcibly separating her from her father and placing her in ORR custody hundreds of miles from her father.  Determining whether |

76

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | BCFS staff are government employees for purposes of FTCA liability is a fact-intensive inquiry more appropriately made by the finder of fact.  *See, e.g.*, *Schuyler v. United States*, 987 F. Supp. 835, 845 (S.D. Cal. 1997) (finding summary judgment could not be granted on independent contractor exception to FTCA because exception only applies after undisputed facts established the degree of control the government and its agents retained over alleged independent contractor); *see also* Williston on Contracts, § 54:2.  Moreover, if the court were to find BCFS employees were independent contractors, then the DFE could not apply. *Id.* at 845 ("[I]f the persons making the decisions. . .were indeed independent contractors and not government employees, then the discretionary function exception does not apply, because the United States would not have been the one making the discretionary decisions."). |
| 10. | Plaintiffs cannot overcome the DFE merely by alleging a constitutional violation and they are unable to identify a specific, clearly established duty under the Constitution that would defeat the DFE in this case. *See, e.g,  Xue Lu v. Powell*, 665 F.3d 944, 950 (9th Cir. 2010); *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d | **Defendant's proposed conclusion of law is incorrect.** <br><br> *First*, Defendant's proposed conclusion of law ignores binding Ninth Circuit precedent.  The DFE does not apply where government conduct violates constitutional rights, regardless of whether those rights were clearly established at the time of the violation.  *Galvin v. Hay*, 374 F.3d 739, 756-58 (9th Cir. 2004) (declining to apply the DFE even though "the constitutional right violate . . . was not clearly established").  The cases Defendant relies on offer no support for their position.  *Compare Nurse*, 226 F.3d at 1002 n.2 ("[W]e do not make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal |

77

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | 204, 210-11 (4th Cir. 2019); *Delgado v. INS*, 637 F.2d 762, 763-64 (10th Cir. 1980); *S.E.B.M.*, 659 F.Supp.3d at 1272. | actor."), *with Galvin*, 374 F.3 at 756-58 (declining to apply the DFE even though "the constitutional right violated . . . was not clearly established"); *Xue Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010) (affirming dismissal of negligent employment claims under the DFE because plaintiff had not "pointed to . . . any specific policy to support a claim of unconstitutional policymaking"). |
| | | *Second*, even if Defendant's proposed standard applied (it does not), the constitutional rights violated by Defendant were clearly established. A constitutional right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 744 (2002). "The substantive due process right to family integrity or to familial association is well established. A parent has a 'fundamental liberty interest' in companionship with his or her child." also Rosenbaum v. Washoe County, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985)); *see also Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("[T]he integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment."). The out-of-circuit caselaw relied on by Defendant do not support the proposition that a right to family integrity is not established within the immigration context. *Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204 (4th Cir. 2019) (addressing a decision to transfer plaintiff-parents further away from their children, not the act of separation); *Delgado v. INS*, 637 F.2d 762 (10th Cir. 1980) |

78

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | (addressing separations that occurred *after* a deportation decision had been made). |
| 11. | Plaintiffs' claims also fail because the challenged government actions have no private-person analogue. *See* 28 U.S.C. § 1346(b)(1); *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997); *Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019); *Akutowicz v. United States,* 859 F.2d 1122, 1125 (2d Cir. 1988); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997). | **Defendant's proposed conclusion of law is incorrect.** As discussed in further detail in the accompanying Memorandum in Opposition to Defendant's Motion for Summary Judgment, family separation has a private party analogue. *See, e.g., B.Y.C.C. v. United States*, 2023 WL 5237147, at *7 (D. N.J. Aug. 15, 2023); *C.D.A.*, 2023 WL 2666064, at *16 (E.D. Penn. Mar. 28, 2023); *A.F.P.*, 2022 WL 2704570, at *10 (holding that "[a] private person may be subject to liability under Texas law for IIED, abuse of process, and negligence in analogous circumstances" to family separation); *C.M. v. United States*, 2023 WL 3261612, at *20 (W.D. Tex. May 4, 2023) (finding private-person analogue for family-separation allegations in "tort cause of action" under Texas law "for interruption of the parent-child relationship when someone abducts, entices away, or harbors a parent's minor child"); *D.A. v. United States*, 2023 WL 2619167, at *10 (W.D. Tex. Mar. 23, 2023) (same); *Wilbur P.G. v. United States*, 2022 WL 3024319 at *5 (N.D. Cal. May 10, 2022); *C.M.*, 2020 WL 1698191, at *2 (recognizing the viability of IIED and negligence claims brought under the FTCA alleging that the "government's separation of families was motivated by malice"); *Martinez v. United States*, 2018 WL 3359562, at *10-12 (D. Ariz. July 10, 2018) (citing *Gasho*, 39 F.3d at 1434). |
| 12. | The Court also lacks subject matter jurisdiction over any | **Defendant's proposed conclusion of law is incorrect.** |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | of Plaintiffs' claims that are based on deceit or misrepresentation. *See* 28 U.S.C. § 2680(h). | Plaintiffs' claims are not based on deceit or misrepresentation, and therefore, Defendant is not immune under the FTCA's misrepresentation exception. Allegations that Defendant deceived Mr. Arredondo regarding his credible fear interview and the role of an Immigration Judge, and that Defendant concealed court order it was required to inform Mr. Arredondo of are allegations related to the harm and injury caused by Defendant. Furthermore, the misrepresentation exception does not bar recovery for IIED claims based on misrepresentation. *C.M.*, 2023 WL 7102132, at *13 n.14. |
| **13.** | Plaintiffs cannot establish that Defendant's employees intended to inflict emotional distress, and none of their actions rise to extreme level required to prove such a tort. *See Ochoa v. Superior Court,* 39 Cal. 3d 159, 165 n.5 (1985); *S.E.B.M.*, 659 F.Supp.3d at 1272; *Delgado,* 637 F.2d at 762. | **Defendant's proposed conclusion of law is incorrect.** The record evidence produced by Defendant establishes that Defendant implemented the family separation policy for the *purpose* of *inflicting harm* in order to deter future migration. Pls' SOF in support of Pls' Mot. (Dkt. 98-2) ¶¶ 7, 17, 21-28, 39-41 and Exhibits B, E, F, G, H, J, L, N, W, GG, OOO, and SSS attached thereto; *see also K.O. v. United States*, 651 F. Supp. 3d 331, 346 (D. Mass. 2023) ("[H]arming children was *the point* of this alleged conduct—to deter other families from crossing the southern border.") (emphasis in original). |

80

| ¶ | Defendant's Proposed Conclusion of Law | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| 14. | Plaintiffs cannot establish negligence because Defendant had no duty *not* to undertake the challenged actions, and the California Supreme Court does not recognize the tort of negligent infliction of emotional distress.  *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993). | **Defendant's proposed conclusion of law is incorrect.** <br><br> *First*, as discussed in further detail in the accompanying Memorandum in Opposition to Defendant's Motion for Summary Judgment, *infra* II ¶ 10, and in Plaintiffs' Motion for Partial Summary Judgment, Defendant violated Plaintiffs constitutional rights and breached its duty of care to Plaintiffs. Def.'s Mot. Summ. J. 18-19. <br><br> *Second*, as discussed in further detail in Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs recognize that under California law negligent infliction of emotional distress is a species of negligence.  Pls. Mot. Summ. J. 18; *see also Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). |

## III.   PLAINTIFFS SUPPLEMENTAL STATEMENT OF FACTS

| ¶ | Plaintiff's Supplemental Statement of Undisputed Fact | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| 1. | During the Zero Tolerance Policy, officials at the Laredo Port of Entry separated every family presenting at the border with any prior immigration violations or any prior criminal history. | Nieves Tr. 97:10-18, Ex. L; Elguezabal Tr. 127:1-6, Ex. M. |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED
CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Plaintiff's Supplemental Statement of Undisputed Fact | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| 2. | Plaintiffs' I-213 do not reflect that Defendant attempted to place Plaintiffs in a family residential center. | Plaintiff Esvin Fernando Arredondo Rodriguez's A-file, at -885; -934-936 attached to Pls' SOF in support of Pls' Mot. (Dkt. 98-2) as Exhibit 29. |
| 3. | Plaintiffs received no hearing before or after their separation at which they could challenge the separation. | E.F.A.R. Tr. 60:2-62:24; 66:9-16, Ex. O. |
| 4. | While in Defendant's custody at the Rio Grande Detention Center, Mr. Arredondo requested information about A.F.A.J.'s location but received no response. | E.F.A.R. Tr. 97:12-98:2, Ex. O. |
| 5. | In December 2018, Department of Health and Human Services ("DHS") Office of the Inspector General ("OIG") issued a report concerning BCFS. | Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F. |
| 6. | BCFS is a grantee recipient of hundreds of millions of dollars of federal funds annually, under contract to the US Department of Health and | Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Plaintiff's Supplemental Statement of Undisputed Fact | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | Human Services' (HHS") Office of Refugee Resettlement ("ORR"). | Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F at 1-2. |
| 7. | BCFS is a provider of temporary shelter and foster care services at multiple locations. | Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F at 2. |
| 8. | In 2018, BCFS operated eight shelter facilities and eight foster care homes in Texas. | Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of Unaccompanied Alien Children," dated Dec. 2018, Ex. F at 6. |
| 9. | DHS OIG found that found that BCFS failed to comply with federal and state requirements related to the health and safety of unaccompanied alien children. | Department of Health and Human Services Office of Inspector General report titled "BCFS Health and Human Services Did Not Always Comply With Federal and State Requirements Related to the Health and Safety of |

83

| ¶ | Plaintiff's Supplemental Statement of Undisputed Fact | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | Unaccompanied Alien Children," dated Dec. 2018, Ex. F at 6, 7-12. |
| 10. | On December 1, 2021, Defendant sent Plaintiffs a letter confirming that they "were separated at the United States-Mexico border by [DHS] . . . in connection with the operation of the government's Zero-Tolerance Policy and related policies." | USCIS Letter sent to Plaintiffs regarding "Separated Family Parole Request – Family Reunification Task Force (FRTF) Process," dated Dec. 1, 2021, Ex. G. |
| 11. | Defendant's letter offered Plaintiffs a status called "Parole in Place." | USCIS Letter sent to Plaintiffs regarding "Separated Family Parole Request – Family Reunification Task Force (FRTF) Process," dated Dec. 1, 2021, Ex. G. |
| 12. | On January 28, 2022, Defendant notified Plaintiffs that they qualified for additional benefits under DHS's "Family Reunification Task Force." | Email from Juntos@dhs.gov on behalf of the Family Reunification Task Force with subject "Family Reunification Request," dated Jan. 28, 2022, Ex. I. |
| 13. | On December 12, 2023, the Family Reunification Task Force sent each Plaintiff an email communication acknowledging that Plaintiffs are *Ms. L.* Settlement class members. | Email from Together.gov on behalf of the Family Reunification Task Force with subject "FRTF Request – Ms. L Settlement Class Member Confirmation" (on behalf of Mr. Arredondo), dated Dec. 12, 2023, Ex. X; Email from Together.gov on behalf |

84

| ¶ | Plaintiff's Supplemental Statement of Undisputed Fact | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | of the Family Reunification Task Force with subject "FRTF Request – Ms. L Settlement Class Member Confirmation" (on behalf of A.F.A.J.), dated Dec. 12, 2023, Ex. Y. |
| 14. | The December 12, 2023, email notified Plaintiffs that they are eligible for additional services under the *Ms. L.* Settlement. | Email from Together.gov on behalf of the Family Reunification Task Force with subject "FRTF Request – Ms. L Settlement Class Member Confirmation" (on behalf of Mr. Arredondo), dated Dec. 12, 2023, Ex. X; Email from Together.gov on behalf of the Family Reunification Task Force with subject "FRTF Request – Ms. L Settlement Class Member Confirmation" (on behalf of A.F.A.J.), dated Dec. 12, 2023, Ex. Y. |
| 15. | Defendant did not appeal any final order in the *Ms. L* Action. | *See Ms. L. v. U.S Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1135 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), appeal voluntarily dismissed in *Ms. L. v. U.S. Immigr. & Customs Enf't*, No. 18-56151, 2020 WL 13557963, at *1 (9th Cir. May 9, 2020); *Ms. L. v. U.S.* |

PLAINTIFFS' CORRECTED STATEMENT OF DISPUTED FACT, OBJECTIONS TO DEFENDANTS' PROPOSED
CONCLUSIONS OF LAW, AND SUPPLEMENTAL STATEMENT OF FACT
CASE NO. CV 22-02845-JLS-JC

| ¶ | Plaintiff's Supplemental Statement of Undisputed Fact | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | | *Immigr. & Customs Enf't*, 403 F. Supp. 3d 853, 855 (S.D. Cal. 2019) (no subsequent history). |
| 16. | Defendant admitted that the phrase "Zero Tolerance Policy" and the phrase "family separation policy" refer to the same policy. | *See* Defendant's Responses and Objections to Plaintiffs' Second Request for Production, dated July 21, 2023, Ex. K at 4. |
| 17. | Defendant admitted that the documents produced regarding the "Zero Tolerance Policy" apply to the broader "family separation policy." | *See* Defendant's Responses and Objections to Plaintiffs' Second Request for Production, dated July 21, 2023, Ex. K at 4. |
| 18. | None of Defendant's fact witnesses were able to recall Plaintiffs or how Plaintiffs were treated in Defendant's custody. | H. Nieves 145:13-24 (testifying that he has no recollection of Plaintiffs), Ex. L; H. Elguezabal Tr. 133:6-9 (same), Ex. M; Alvarez-Ramos Tr. 187:17-190:6, 260:3-261:8 (testifying that she has no recollection of A.F.A.J. or of any child in her care during her tenure with BCFS), Ex. Q; T. Rice Tr. 309:25-310:21, Ex. P. |
| 19. | None of Defendant's 30(b)(6) representatives had any personal knowledge, or spoke to anyone with personal knowledge, about Plaintiffs | R. Harris Tr. 246:1-4 (testifying that the individuals he spoke with to prepare for the deposition had no recollection of Plaintiffs), Ex. W; Gonzalez Tr. 15:6-11(testifying that he did not speak to, or attempt to speak to, anyone who had interacted with A.F.A.J. during the time she was held |

86

| ¶ | Plaintiff's Supplemental Statement of Undisputed Fact | Plaintiffs' Responses and Supporting Evidence |
|---|---|---|
| | or how Plaintiffs were treated by Defendant. | by Defendant at BCFS), Ex. S;  J. Rellis Tr. 15:2-12 (testifying that she only spoke with counsel to prepare for the deposition and that Defendant counsel advised her not to speak with any officers that interacted with Mr. Arredondo), Ex. U; M. Burke Tr. 19:14-20 (testifying that the individuals she spoke with to prepare for the deposition had no interaction with or personal knowledge of Mr. Arredondo), Ex. T; E. Barry-Murphy Tr. 14:2-16:4 (testifying that she did not speak with anyone other than counsel to prepare for her deposition because she did not "think it was necessary," further testifying that she did not speak with anyone who interacted with Mr. Arredondo during the time he was in Defendant's custody), Ex. V. |

Dated: <u>January 19, 2024</u>          Respectfully Submitted,

**MILBANK LLP**

By: <u>/s/    Linda Dakin-Grimm</u>
Linda Dakin-Grimm (State Bar #119630)
LDakin-grimm@milbank.com

Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
Samir L. Vora (State Bar #253772)
SVora@milbank.com
Marina Markarian (State Bar #340686)
MMarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067

87

1

2

Telephone: 424.386.4000
Facsimile: 213.629.5063

3

4

5

6

7

Elizabeth Hamilton, *pro hac vice*
EHamilton@milbank.com
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

8

9

10

11

12

13

14

15

16

17

Julie Wolf, *pro hac vice*
JWolf@milbank.com
Julia Duke, *pro hac vice*
JDuke@milbank.com
Riah Kim, *pro hac vice*
RKim2@milbank.com
Victoria Colbert, *pro hac vice*
VColbert@milbank.com
Jonghyun Lee, *pro hac vice*
JLee7@milbank.com
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: 202.835.7500
Facsimile: 202.263.7586

18

19

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

20

21

22

23

24

25

26

27

28

88