MILBANK LLP
Linda Dakin-Grimm (State Bar #119630)
Mark Shinderman (State Bar #136644)
Samir L. Vora (State Bar #253772)
2029 Century Park East, 33rd Floor
Los Angeles, CA  90067
Telephone: 213-892-4404
Facsimile: 213-629-5063
Email: Ldakin-grimm@milbank.com

*Additional counsel listed on signature page

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and A.F.A.J.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

ESVIN FERNANDO ARREDONDO
RODRIGUEZ, an individual AND A.F.A.J.,
a minor, BY HER GUARDIAN *AD LITEM*,
JEFFREY HAMILTON,

                      Plaintiffs,

            v.

UNITED STATES OF AMERICA,

                      Defendant.

Case No.: CV 22-02845-JLS-JC

**PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT JUNE HAGEN [*DAUBERT*]**

**Hearing Date:** March 29, 2024
**Hearing Time:** 10:30 a.m.
**Judge:** Hon. Josephine L. Staton
**Courtroom:** 8A

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

I. INTRODUCTION................................................................................................1

II. LEGAL STANDARD .........................................................................................1

III. ARGUMENT ......................................................................................................3

    A. The Rebuttal Reports Are Not Based on Sufficient Facts or
        Data ............................................................................................................3

    B. The Rebuttal Reports Are Not A Product of Reliable Principles
        or Methods .................................................................................................7

        1. Dr. Hagen Fails to Show That She Properly Applied
            Professional Experience or Reliable Principles or
            Methods to Reach Her Conclusions .........................................7

        2. Dr. Hagen Failed to Engage with the Totality of the
            Evidence and Instead Only Considered the Evidence
            Favorable to Defendant's Position ............................................9

IV. CONCLUSION ...............................................................................................12

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

6

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.,*
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) .......................................................... 9, 10

7

8

*In re Canvas Specialty Inc.,*
   261 B.R. 12 (C.D. Cal. 2001) ....................................................................... 2

9

10

*City of Pomona v. SQM N. Am. Corp.,*
   750 F.3d 1036 (9th Cir. 2014) ..................................................................... 2

11

12

*Daubert v. Merrell Dow Pharms.,*
   509 U.S. 579 (1993) ..................................................................................... 2

13

14

*EEOC v. Freeman,*
   778 F.3d 463 (4th Cir. 2015) ....................................................................... 9

15

*Est. of Barabin v. AstenJohnson, Inc.,*
   740 F.3d 457 (9th Cir. 2014) ....................................................................... 2

16

17

*GE v. Joiner,*
   522 U.S. 136 (1997) ..................................................................................... 3

18

19

*Nat'l Fire Prot. Ass'n, Inc. v. Upcodes, Inc.,*
   21 -05262, 2023 WL 6194385 (C.D. Cal. Sep. 7, 2023) ............................. 6

20

21

*Primiano v. Cook,*
   598 F.3d 558 (9th Cir. 2010) ....................................................................... 2

22

23

*Santa Clarita Valley Water Agency v. Whittaker Corp.,*
   18-06825, 2020 WL 6260015 (C.D. Cal. Sep. 16, 2020) ............................ 3

24

25

*Turner v. ThyssenKrupp Materials, N.A.,*
   492 F. Supp. 3d 1045 (C.D. Cal. 2020) ....................................................... 3

26

*United States v. Bazaarvoice, Inc.,*
   13-00133, 2013 WL 3784240 (N.D. Cal. July 18, 2013) ............................ 3

27

28

*United States v. Sandoval-Mendoza,*
   472 F.3d 645 (9th Cir. 2006) ....................................................................... 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

Fed. R. Civ. P. 26....................................................................................2, 3

Fed. R. Evid. 702 ...............................................................1, 2, 7, 9, 11

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3        Defendant has proposed to offer rebuttal testimony from June Hagen ("Dr.

4  Hagen") in response to the employability assessments conducted by Plaintiffs'

5  vocational expert Mark Lieberman ("Mr. Lieberman"). Dr. Hagen's testimony

6  should be excluded from this case for two reasons. First, Dr. Hagen did not

7  adequately prepare herself prior to writing her Rebuttal Reports (defined below), in

8  failing to review relevant, available evidence. Thus, Dr. Hagen's conclusions are not

9  sufficiently supported by facts and data. Second, Dr. Hagen fails to show that she

10  properly applied her professional experience or reliable principles or methods to

11  reach her opinions in this case. The Rebuttal Reports contain only a single citation

12  to authority from Dr. Hagen's field of expertise and do not include any references to

13  defined methods or principles. In deposition, Dr. Hagen admitted that she did not

14  rely on methods or principles at all.[1]  Moreover, after reviewing documents

15  Defendant's counsel had selected and sent her, Dr. Hagen relied solely upon the

16  evidence that favored the Defendants, failing to engage with the evidence that

17  opposed Defendant's position. Such cherry-picking is routinely rejected by courts

18  and further justifies excluding Dr. Hagen's conclusions.

19

**II.    LEGAL STANDARD**

20        Under Federal Rule of Evidence 702 ("Rule 702"), expert opinion is

21  admissible if:

22            (1) the witness is sufficiently qualified as an expert by knowledge, skill,

23            experience, training, or education; (2) the scientific, technical, or other

24            specialized knowledge will help the trier of fact to understand the

25

---

26  [1] The deposition of Dr. Hagen occurred on February 15, 2024.  To date, Plaintiffs have not received a copy
    of the deposition transcript from the court reporter.  *See* Declaration of Linda Dakin-Grimm in Support of

27  Plaintiffs' Motion to Exclude Testimony and Report of Proposed Expert June Hagen ¶ 7.  Because the
    transcript was not available by the Court's deadline for Daubert motions, Dkt. No. 51 at 2, Plaintiffs will

28  file an amended Motion with citations to the deposition transcript when they receive the transcript from the
    court reporter.

---

1   evidence or to determine a fact in issue; (3) the testimony is based on

2   sufficient facts or data; (4) the testimony is the product of reliable

3   principles and methods; and (5) the expert has reliably applied the

4   relevant principles and methods to the facts of the case.

5   Fed. R. Evid. 702. To determine whether an expert is sufficiently qualified, a court

6   must examine whether the expert's qualifications and experiences are "relevant to

7   the determination of the facts in issue." *In re Canvas Specialty, Inc.*, 261 B.R. 12,

8   19 (C.D. Cal. 2001).

9       Once an expert is found to be qualified, a trial court must ensure that the

10  testimony of the expert "both rests on a *reliable* foundation and is *relevant* to the

11  task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 579-80 (1993)

12  (emphasis added). Testimony rests on a "reliable foundation" if it is rooted "in the

13  knowledge and experience of the relevant discipline" while "testimony is relevant if

14  the knowledge underlying it has a valid connection to the pertinent inquiry." *City of

15  Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014) (citation and

16  internal quotation marks omitted).

17      A court's primary concern is "the soundness of [the expert's] methodology."

18  *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citation

19  and internal quotation marks omitted). When assessing scientific expert opinion, a

20  court may consider factors, such as "(1) whether the scientific theory or technique

21  can be (and has been) tested, (2) whether the theory or technique has been subjected

22  to peer review and publication, (3) whether there is a known or potential error rate,

23  and (4) whether the theory or technique is generally accepted in the relevant

24  scientific community." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th

25  Cir. 2006) (citation and internal quotation marks omitted). These factors are not

26  exhaustive, and a court may use its discretion "to decide how to test an expert's

27  reliability as well as whether the testimony is reliable, based on the particular

28

-2-

1   circumstances of the particular case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.

2   2010) (citation and internal quotation marks omitted).

3        Additionally, Federal Rule of Civil Procedure 26 governs parties' disclosure

4   obligations and outlines the requirements for a written report by a witness retained

5   to provide expert testimony. Among other requirements, such a report must contain:

6   "(i) a complete statement of all opinions the witness will express and the basis and

7   reasons for them; (ii) the facts or data considered by the witness in forming them;

8   [and] (iii) any exhibits that will be used to summarize or support them[.]" Fed. R.

9   Civ. P. 26(a)(2)(B)(i)-(iii). "Th[is] duty to disclose is broad." *United States v.*

10  *Bazaarvoice, Inc.*, 13-00133, 2013 WL 3784240, at *2 (N.D. Cal. July 18, 2013). In

11  particular, "'facts or data' as used in Rule 26(a)(2)(B)(ii) is to 'be interpreted

12  broadly to require disclosure of any material considered by the expert, from

13  whatever source, that contains factual ingredients.'" *Santa Clarita Valley Water*

14  *Agency v. Whittaker Corp.*, 18-06825, 2020 WL 6260015, at *1 (C.D. Cal. Sept. 16,

15  2020) (quoting Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010

16  amendment).

17  **III.   ARGUMENT**

18       **A.   The Rebuttal Reports Are Not Based on Sufficient Facts or Data**

19       Expert testimony must be "based on sufficient facts or data." *Turner v.*

20  *ThyssenKrupp Materials, N.A.*, 492 F. Supp. 3d 1045, 1048 (C.D. Cal. 2020)

21  (citation and internal quotation marks omitted). When "there is simply too great an

22  analytical gap between the data and the opinion proffered," the expert opinion must

23  be excluded. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

24       Here, exclusion is warranted because Dr. Hagen failed to review sufficient

25  facts or data prior to authoring her reports; indeed, she reviewed very little at all. Dr.

26  Hagen's *Vocational Evaluation and Rebuttal of Plaintiff Employability Assessment*

27  *re: Esvin Fernando Arredondo Rodriguez* (the "Arredondo Rebuttal Report") lists

28

-3-

just six documents in the report's "Documents Reviewed" section. Arredondo Rebuttal Report at 1. Those documents, all of which were selected and provided to her by counsel, are (i) the two reports prepared by Plaintiffs' experts on Mr. Arredondo; (ii) a psychological evaluation of Mr. Arredondo done by psychiatrist Amy Cohen, M.D., in June 2020; (iii) the transcript of Mr. Arredondo's deposition; and (iv) Mr. Arredondo's Reponses to Defendant's First Set of Interrogatories. *Id.* Similarly, Dr. Hagen's *Vocational Evaluation and Rebuttal of Plaintiff Employability Assessment re:* ███████████ (the "A.F.A.J. Rebuttal Report" and, together with the Arredondo Rebuttal Report, the "Rebuttal Reports") lists just 11 total documents in the "Documents Reviewed" section. A.F.A.J. Rebuttal Report at 1. Those documents are (i) four school records, including two academic transcripts and a ██████; (ii) the two expert reports produced by Plaintiffs' counsel relating to A.F.A.J.; (iii) a psychological evaluation of A.F.A.J. done by Genero Rodriguez in June 2020; (iv) the transcript of A.F.A.J.'s deposition; and (v) A.F.A.J.'s treatment records from ████████████. *Id.*

Moreover, Dr. Hagen did not draw on her expertise to identify the relevant pieces of evidence. Instead, Defendant's counsel—not Dr. Hagen—determined what materials Dr. Hagen reviewed. During her deposition, Dr. Hagen testified that she only reviewed the documents that Defendant's counsel sent her. She did not request additional documents, and she made no follow-up requests for more information. Dr. Hagen thus did not review the other documents in this case relevant to Plaintiffs' experiences and injuries, including Plaintiffs' respective sworn testimony that was admitted in their asylum case, the extensive record of what Defendant did to separated families like the Arredondos, any pleadings from this case, notes or transcripts of Plaintiffs' various interviews, or any of the many other factual records produced in discovery.

-4-

1     Dr. Hagen also failed to conduct, or rely on, any significant academic research

2     for her Rebuttal Reports, including any research on the vocational harms that may

3     arise from a family separation[2] like the one that Plaintiffs experienced or from the

4     mental conditions that Plaintiffs suffer from, including ███. In fact, she merely

5     assumed that the two plaintiffs did not suffer from ███ because Defendant's other

6     proposed expert, Bennett Williamson ("Dr. Williamson"), told her so.  Thus, she

7     was wholly unprepared to make educated assessments about how Plaintiffs' mental

8     injuries, including ███, would impact their earning capacity and vocational

9     potential. For example, during her deposition, Dr. Hagen could not answer whether

10    experts in her field had observed a negative correlation between ███ and earnings

11    capacity.

12    Finally, further evidencing her inadequate preparation, despite relying on his

13    conclusions, Dr. Hagen failed to review the reports of Defendant's own psychologist

14    expert witness, Dr. Williamson. *See* Arredondo Rebuttal Report at 1; A.F.A.J.

15    Rebuttal Report at 1. Dr. Hagen stated that she was told that Dr. Williamson's report

16    had not been written by the time Dr. Hagen needed to submit her own report (even

17    though the reports were produced on the same date), so she instead had an eight-

18    minute phone call with Dr. Williamson to hear his opinions regarding both Plaintiffs.

19    Dr. Hagen acknowledged during her deposition that Dr. Williamson's report could

20    contain information that would cause her to change the conclusions in her report.

21    Nevertheless, she did not make an attempt to obtain and read it at any point after it

22    was authored.

23

24

25    [2] Plaintiffs presented significant evidence showing how numerous entities, including government officials,

26    members of Congress, and private organization, explained and warned Defendant about the traumatic harm
      family separation causes its victims. *See, e.g.*, *Plaintiffs' Memorandum of Points and Authorities in Support

27    of Motion for Partial Summary Judgment* at 2-3, Dkt. No. 114-1. Dr. Hagen did not review any of this
      evidence.

28                                          -5-

1    Despite failing to review key pieces of evidence, Dr. Hagen made sweeping

2    statements about what the evidence in the case *purports* to show. For example, in

3    the Arredondo Rebuttal Report, Dr. Hagen disagrees with Mr. Lieberman's opinion

4    that Mr. Arredondo's ▇▇▇ will prevent Mr. Arredondo from seeking higher-paying

5    employment, claiming that "[t]here is no evidence of [Mr. Arredondo] being harmed

6    financially by his experience at the border." Arredondo Rebuttal Report at 5. Not

7    having made a complete review of "the evidence," however, Dr. Hagen is not

8    positioned to opine in this manner. Similarly, in the A.F.A.J. Rebuttal Report, Dr.

9    Hagen purports to opine that A.F.A.J. could "begin Community College with ESL

10   classes . . . which will improve her future earning capacity," without any reference

11   to a method or principle to support her assertion. She simply says: "[t]here is no

12   reason [A.F.A.J.] would not be able to pursue a college education if given

13   encouragement and guidance." A.F.A.J. Rebuttal Report at 6. These unsupported

14   generalizations are not proper expert testimony.

15   Dr. Hagen could not have made such statements had she actually reviewed all

16   of the relevant evidence, especially the evidence pertaining to the impact of the

17   injuries Plaintiffs sustained due to their forced separation at the border and

18   subsequent detentions. At a minimum, Dr. Hagen should have reviewed: (i)

19   Plaintiffs' prior sworn testimony; and (ii) the extensive body of recognized authority

20   from the field of vocational rehabilitation regarding the relationship between

21   negative mental conditions, including ▇▇▇, and a person's earning capacity and

22   vocational potential. Yet Dr. Hagen did <u>not</u> review any of these. Instead, she simply

23   relied on Defendant's counsel to decide for her what documents she should review

24   and conducted little, if any, independent research. In short, Dr. Hagen did not possess

25   the knowledge and information needed to justify the broad conclusions she included

26   in the Rebuttal Reports.

27

28

-6-

**B.**     **The Rebuttal Reports Are Not a Product of Reliable Principles or Methods**

  1. Dr. Hagen Fails to Show That She Properly Applied Her Professional Experience or Reliable Principles or Methods to Reach Her Conclusions

  To be admissible, the expert's testimony must be "the product of reliable principles and methods, and the expert must appl[y] the principles and methods reliably to the facts of the case." *Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*, 21-05262, 2023 WL 6194385, at *1 (C.D. Cal. Sept. 7, 2023) (citation and internal quotation marks omitted). To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* (citation and internal quotation marks omitted). And where the witness "rel[ies] solely or primarily on experience, . . . witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

  The Rebuttal Reports simply do <u>not</u> reflect that Dr. Hagen properly applied her professional experience or reliable principles or methods to reach her conclusions. Her reports are from the "because I said so" school of expert opinion—which violates the Federal Rules of Evidence. Prior to writing the Rebuttal Reports, Dr. Hagen did not review any authorities or literature from her field except for the *single* study she cites only in the A.F.A.J. Rebuttal Report regarding the relationship between parental educational levels and child educational outcomes. *See* A.F.A.J. Rebuttal Report at 4; *see also* A.F.A.J. Rebuttal Report, Exhibit 1. Accordingly, the Rebuttal Reports generally lack citations to testable methodology, peer-reviewed studies, or other authoritative sources showing that Dr. Hagen used generally

accepted practices to derive her conclusions. Instead, her opinions are admittedly off the top of her head: the Rebuttal Reports are based purely on her review of portions of each Plaintiff's case file, which Defendant's counsel had selected and provided.

Because Dr. Hagen failed to properly to apply her professional experience or a reliable method or principle when writing the Rebuttal Reports, the conclusions therein are unreliable. For example, in the Mr. Arredondo Rebuttal Report, Dr. Hagen states that Mr. Arredondo's current earning capacity is at the 25th percentile of wages for workers in the category of Maintenance and Repair Workers. Arredondo Rebuttal Report at 5-6. She anecdotally bases this opinion on Mr. Arredondo's work history, level of English-speaking ability, and lack of high school diploma. *Id.* Dr. Hagen does not explain what principle or methodology supports the finding that those three characteristics justify assessing Mr. Arredondo's earning potential at the 25th percentile. She expects to be believed because she said so. She fails to provide any sources or citations showing that the unidentified reasoning she used to reach this conclusion is reliable and generally accepted. She does not explain her exclusion of other relevant factors, including Mr. Arredondo's extensive experience in construction, his current skillset, or his strong work ethic. Thus, there is simply no way of knowing whether Dr. Hagen's assessment of Mr. Arredondo's earning potential has any validity.

As another example, in the A.F.A.J. Rebuttal Report, Dr. Hagen states that Mr. Lieberman's opinion that "A.F.A.J. will have low earnings due to her experience at the border . . . ignores other factors that affect her potential future earnings." A.F.A.J. Rebuttal Report at 5. The factors Mr. Lieberman allegedly ignored include A.F.A.J. not yet having any vocational skills and not yet graduating high school. *Id.* Mr. Lieberman, however, used a specific methodology—the PEEDS-RAPEL methodology—to form his opinion. PEEDS-RAPEL is a method specifically designed to evaluate the earnings capacity "where the plaintiff is of a young age and

-8-

their academic, work, and earnings history may not be firmly established." Mark Lieberman, *Employability Assessment* ▉▉▉▉▉▉▉▉▉ at 7 (Dec. 22, 2023). Dr. Hagen's assertion disregards that Mr. Lieberman's methodology considers the very factors she identifies as "ignored." It is almost as if she did not actually read the Lieberman Report. To the extent her assertion could be construed as an attack of the PEEDS-RAPEL methodology, Dr. Hagen fails provide any sources or citations showing that the factors she identified are relevant to, but excluded from, the PEEDS-RAPEL methodology or that those factors were not properly considered in Mr. Lieberman's application of that methodology. Instead, she simply states that the factors are relevant and that Mr. Lieberman failed to take them into account. These naked assertions do not satisfy Federal Rule of Evidence 702.

The Rebuttal Reports are replete with unsupported conclusions based on unexplained methods and unjustified reasoning. Because the reports fail to demonstrate that their conclusions were properly derived using trustworthy techniques, the Court should exclude them.

2. <u>Dr. Hagen Did Not Consider All Evidence She Reviewed and, Instead, Only Considered the Evidence Favorable to Defendant's Position</u>

"[C]ourts have consistently excluded expert testimony that 'cherry-picks' relevant data." *EEOC v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015) (collecting cases). Conclusions based on "rejecting or ignoring the great weight of the evidence that contradicts [the expert's] conclusion" are inadmissible because such conclusions "do[] not reflect scientific knowledge, [are] not derived by the scientific method, and [are] not 'good science.'" *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007).

-9-

1    Dr. Hagen's opinion that Mr. Lieberman should not have treated Plaintiffs as

2  having a ███████████ is based on impermissible cherry-picking. In the

3  Arredondo Rebuttal Report, Dr. Hagen disagrees "with Mr. Lieberman describing

4  Mr. Arredondo as having a ████████." Arredondo Rebuttal Report at 5.

5  Dr. Hagen notes that Mr. Lieberman had written that "Mr. Arredondo's issues due

6  to his ███ would be consistent with the category of ████████," and she

7  objects to this assessment based solely on the fact that Dr. Williamson told her that

8  "Mr. Arredondo does not meet the criteria for a diagnosis of ████ nor a ████

9  ████." *Id.* Similarly, in A.F.A.J.'s Rebuttal Report, Dr. Hagen disagrees with Mr.

10  Lieberman's treatment of A.F.A.J. as having a ████████ because, during

11  their eight-minute conversation, "Dr. Williamson related to me that she does not

12  have a ████████." A.F.A.J. Rebuttal Report at 5-6.

13    However, Dr. Hagen fails to mention or consider that multiple mental health

14  professionals—including Dr. Kristin Samuelson, Dr. Amy Cohen (a Board-certified

15  psychiatrist), and Mr. Genaro Rodriguez (a licensed therapist)—had independently

16  concluded that one or both Plaintiffs displayed symptoms consistent with ███. *See*

17  Kristin W. Samuelson, *Forensic Psychological Evaluation of* ████████

18  ████████ at 22 (Dec. 22, 2023); Kristin W. Samuelson, *Forensic*

19  *Psychological Evaluation of Fernando Arredondo* at 16 (Dec. 22, 2023); Genaro

20  Rodriguez, *Psychological Evaluation of* ████████ at 3

21  (June 2, 2020); Amy J. Cohen, *Psychological Evaluation of Esvin Fernando*

22  *Arredondo Rodriguez* at 12 (June 20, 2020).

23    Dr. Hagen was well aware of these other psychologists' conclusions; she

24  listed their reports in the "Documents Reviewed" sections of the Rebuttal Reports.

25  Arredondo Rebuttal Report at 1; A.F.A.J. Rebuttal Report at 1. And the conclusions

26  were clearly relevant to the issue at hand; they relate directly to Mr. Lieberman's

27  conclusion that Plaintiffs suffered from symptoms of ████, which qualify as a

-10-

28

1  ████████████. The Rebuttal Reports nevertheless fail to acknowledge, let alone

2  justify, the omission of these opposing opinions.

3        In fact, rather than engaging with the fact that multiple medical professionals

4  had determined that Plaintiffs suffer from symptoms of █████, Dr. Hagen instead

5  obfuscates this fact. Dr. Hagen writes in the Rebuttal Reports that Mr. Lieberman

6  lacked a valid basis to treat Plaintiffs as having a ████████████ because no

7  psychologist or therapist had diagnosed them as such. Arredondo Rebuttal Report at

8  5; A.F.A.J. Rebuttal Report at 5. She ignores, however, that Mr. Lieberman clearly

9  stated that the term "████████████" "do[es] not represent any medical defined

10  definition of █████." Mark Lieberman, *Employability Assessment Esvin*

11  *Fernando Arredondo Rodriguez* at 17 (Dec. 22, 2023). Instead, the term is defined

12  in the American Community Survey and means "████████████████████

13  ████████████████████████████████████████████

14  ████████" *Id.* And Mr. Lieberman assessed Mr. Arredondo and A.F.A.J. as having

15  a ████████████ based on the multiple mental health professionals' conclusions

16  that Plaintiffs suffered ████████████ consistent with █████, including

17  ████████████████████. *See* Mark Lieberman, *Employability*

18  *Assessment Esvin Fernando Arredondo Rodriguez* at 12 (Dec. 22, 2023); Mark

19  Lieberman, *Employability Assessment* ████████████████ at 6 (Dec. 22,

20  2023). Thus, Dr. Hagen's statement that no psychologist had diagnosed either

21  Plaintiff with a ████████████ confuses Mr. Lieberman's use of the term

22  "████████████" with a medical diagnosis and wrongly implies that no qualified

23  persons have found that Plaintiffs suffer from ████████████████.

24        In short, Dr. Hagen's selective and argumentative use of the evidence renders

25  her opinion on Plaintiffs' ████████████ inadmissible. Her refusal to engage

26  with facts unfavorable to Defendant supports that she wrote the Rebuttal Reports to

27  support a specific, predetermined conclusion—that Plaintiffs' did not have any

28

-11-

1   ▮▮▮▮▮▮▮▮▮▮ and chose to only present facts supporting that conclusion.

2   Such cherry-picking produces unreliable opinions and justifies excluding Dr.

3   Hagen's testimony on this issue.

4   **IV.    CONCLUSION**

5        Dr. Hagen's reports, opinions, and testimony should be excluded under

6   Federal Rule of Evidence 702: they are not based on sufficient facts or data, are not

7   the product of reliable methodologies, and do not reflect the reliable application of

8   methodology to the facts in issue. We respectfully request that the Court exclude Dr.

9   Hagen's reports, opinions, and testimony in their entirety.

10

11

12

13   Dated: February 23, 2024          Respectfully Submitted,

14                                     **MILBANK LLP**

15                                     By: */s/ Linda Dakin-Grimm*
                                       Linda Dakin-Grimm (State Bar #119630)
16                                     LDakin-grimm@milbank.com

17
                                       Mark Shinderman (State Bar #136644)
18                                     MShinderman@milbank.com
                                       Samir L. Vora (State Bar #253772)
19                                     SVora@milbank.com
                                       Marina Markarian (State Bar #340686)
20                                     MMarkarian@milbank.com
                                       2029 Century Park East, 33rd Floor
21                                     Los Angeles, CA 90067
                                       Telephone: 424-386-4000
22                                     Facsimile: 213-629-5063
23

24
                                       Elizabeth Hamilton, *pro hac vice*
25                                     EHamilton@milbank.com
                                       55 Hudson Yards
26                                     New York, New York 10001
27                                                    -12-

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: 212-530-5000
Facsimile: 212-530-5219

Julie Wolf, *pro hac vice*
JWolf@milbank.com
Julia Duke, *pro hac vice*
JDuke@milbank.com
Riah Kim, *pro hac vice*
RKim2@milbank.com
Victoria Colbert, *pro hac vice*
VColbert@milbank.com
Jonghyun Lee, *pro hac vice*
JLee7@milbank.com
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: 202-835-7500
Facsimile: 202-263-7586

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

-13-

1

**Certificate of Compliance Pursuant to L.R. 11-6.2**

2

The undersigned, counsel of record for Plaintiffs Esvin Fernando Arredondo

3

Rodriguez and A.F.A.J certifies that this brief contains 3,511 words, which

4

complies with the word limit of L.R. 11-6.1.

5

6

Dated:  February 23, 2024                                    By:  /s/ *Victoria Colbert*

Victoria Colbert

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28