1  MILBANK LLP
2  Linda Dakin-Grimm (State Bar #119630)
   Mark Shinderman (State Bar #136644)
3  Samir L. Vora (State Bar #253772)
4  2029 Century Park East, 33rd Floor
   Los Angeles, CA  90067
5  Telephone: (213) 892-4404
6  Facsimile: (213) 629-5063
   Email: Ldakin-grimm@milbank.com
7
   *Additional counsel listed on signature page
8
   *Pro Bono* Attorneys for Plaintiffs,
9  Esvin Fernando Arredondo Rodriguez and A.F.A.J.

10

11            **UNITED STATES DISTRICT COURT**
12       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                    **WESTERN DIVISION**
13

14  ESVIN FERNANDO ARREDONDO
    RODRIGUEZ, an individual,  AND
15  A.F.A.J., a minor, BY HER GUARDIAN         Case No.: CV 22-02845-JLS-JC
    *AD LITEM*, JEFFREY HAMILTON,
16                                             **PLAINTIFFS' MOTION TO**
17              Plaintiffs,                    **EXCLUDE TESTIMONY AND**
                                               **REPORT OF PROPOSED**
18         v.                                  **EXPERT BENNETT**
                                               **WILLIAMSON [*DAUBERT*]**
19  UNITED STATES OF AMERICA,
                                               **Hearing Date:** March 29, 2024
20              Defendant.                     **Hearing Time:** 10:30 a.m.
21                                             **Judge:** Honorable Josephine L. Staton
                                               **Place:** Courtroom 8A
22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ....................................................................................... 2

    A.   Dr. Williamson's Reports, Opinions, and Testimony, Must be Excluded Under Rule 37 Because Defendant Failed to Comply with Rule 26, Engaging in Gamesmanship by Positioning an Affirmative Report as a Rebuttal Report ............................................. 2

        1.   Dr. Williamson's report, opinions, and testimony must be excluded because Defendant failed to disclose him as an expert. ...................................................................................... 4

        2.   Defendant's failure to disclose Dr. Williamson as an expert was neither substantially justified nor harmless............ 7

    B.   The Court Should Exclude Dr. Williamson's Report, Opinions, and Testimony Because He is Not Qualified Under  Rule 702 ......... 11

        1.   Dr. Williamson is  not qualified to opine on the facts at issue. ..................................................................................... 12

        2.   Dr. Williamson's reports do not contain expert opinion or scientific, specialized, or other technical knowledge that would help the Court to understand the evidence or to determine a fact in issue. .......................................................... 14

        3.   Dr. Williamson's opinions are not based on sufficient facts or data. .............................................................................. 16

        4.   Dr. Williamson's opinions are not the product of reliable principles and methods. ....................................................... 18

        5.   Dr. Williamson's opinions do not reflect a reliable application of his chosen methodology to the facts at issue. .................................................................................... 20

III.   CONCLUSION ........................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Abdo v. Fitzsimmons*,
No. 17-CV-00851, 2020 WL 4051299 (N.D. Cal. July 20, 2020)......................8

*In re Canvas Specialty Inc.*,
261 B.R. 12 (C.D. Cal. 2001)...........................................................................11

*In re Celsius Network LLC*, 655 B.R. 301, 308–09 (Bankr. S.D.N.Y. 2023).................................................................................................................19

*Century Indem. Co. v. Marine Grp., LLC*,
No. 3:08-CV-1375, 2015 WL 5521986 (D. Or. Sept. 16, 2015) ...................6, 7

*City & Cnty. of S.F. v. Purdue Pharma L.P.*,
No. 18-CV-07591, 2022 WL 1203075 (N.D. Cal. Apr. 22, 2022) ...................10

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014).........................................................................12

*Clear-View Techs., Inc. v. Rasnick*,
No. 13-CV-02744, 2015 WL 3509384 (N.D. Cal. June 3, 2015)..........3, 6, 7, 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
43 F.3d 1311 (9th Cir. 1995)...........................................................................14

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993) ...........................................................................1, 11, 14

*Est. of Barabin v. AstenJohnson, Inc.*,
740 F.3d 457 (9th Cir. 2014)...........................................................................12

*Goodman v. Staples The Office Superstore, LLC*,
644 F.3d 817 (9th Cir. 2011)...........................................................................10

*J.G. et al. v. New York City Department of Education*,
No. 1:23-cv-00959 (S.D.N.Y. Feb. 22, 2023) (Dkt. 32) ..................................20

*Liberty Ins. Corp. v. Brodeur*,
41 F.4th 1185 (9th Cir. 2022)............................................................................7

-3-

*Lust v. Merrell Dow Pharmaceuticals, Inc.*,
   89 F.3d 594 (9th Cir. 1996) ................................................................... 21

*In re Marriott Int'l, Inc.*,
   602 F. Supp. 3d 767 (D. Md. 2022) ....................................................... 19

*Martin v. Walmart Inc.*,
   2023 WL 5505898 (C.D. Cal. July 10, 2023) .......................................... 3

*Nat'l Fire Prot. Ass'n, Inc. v. Upcodes, Inc.*,
   No. 21-CV-05262, 2023 U.S. Dist. LEXIS 151744 (C.D. Cal. Aug.
   8, 2023) ................................................................................................ 6, 7

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ................................................................. 12

*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006) ................................................................. 12

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ............................................................. 3, 6

**Rules**

Fed. R. Civ. P. 26(a)(1)(D) ......................................................................... 3

Fed. R. Civ. P. 26(a)(2)(B)(v) ..................................................................... 9

Fed. R. Civ. P. 37(c)(1) ........................................................................... 3, 7

Fed. R. Civ. P. (a)(2)(b) .............................................................................. 8

Fed. R. Evid. 702(b) .................................................................................... 2

**Other Authorities**

Patricia K. Kerig et al., *Forensic Assessment of PTSD Via DSM-5
   Versus ICD-11 Criteria: Implications for Current Practice and
   Future Research*, 13 Psych. Inj. L. 4 .................................................... 18

-4-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court should preclude the purported "rebuttal" testimony of Bennett Williamson, Ph.D., ("Dr. Williamson") concerning psychological issues for two reasons.  First, Defendant failed to meet its disclosure obligations.  Second, Dr. Williamson is not adequately qualified to serve as an expert on psychological issues; he and his reports fail to meet each of the five criteria Rule 702 requires courts to consider—any one of which would render his testimony, opinion, and reports inadmissible.  Specifically, (1) Dr. Williamson is not sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) his reports do not contain expert opinion or scientific, specialized, or other technical knowledge that would help the Court to understand the evidence or to determine a fact in issue; (3) his opinions are not based on sufficient facts or data; (4) his opinions are not the product of reliable principles and methods; and (5) he did not reliably apply relevant principles and methods to the facts of the case.[1]

Dr. Williamson must be excluded under Fed. R. Civ. P. 37(c)(1) because Defendant failed to meet its disclosure obligations under Fed. R. Civ. P. 26. Dr. Williamson was offered solely as a "rebuttal expert" in response to the affirmative testimony offered by Plaintiffs' highly qualified trauma expert, Dr. Kristin Samuelson.  But on the date set by the Court for rebuttal reports, Dr. Williamson actually offered two *affirmative* expert reports—not rebuttal reports—offering his own evaluations of each Plaintiff under Federal Rule of Civil Procedure 26(a). Dr. Williamson based these affirmative reports on examinations he had previously

---

[1] The deposition of Dr. Williamson occurred on February 12, 2024.  To date, Plaintiffs have not received a copy of the deposition transcript from the court reporter.  *See* Declaration of Linda Dakin-Grimm ("Dakin-Grimm Decl.") ¶ 21. Because the transcript was not available by the Court's deadline for *Daubert* motions, Dkt. No. 51 at 2, Plaintiffs will file an amended Motion with citations to the deposition transcript when they receive the transcript from the court reporter.

conducted of Plaintiffs under Rule 35 of the Federal Rules of Civil Procedure, but he never produced a Rule 35 report.

The Court should also preclude Dr. Williamson's testimony pursuant to Fed. R. Evid. 702 because he lacks the requisite expertise by knowledge, skill, experience, training, or education to offer opinions on the issues presented here. Moreover, even if Dr. Williamson had the requisite specialized expertise, his reports do not contain *his* expert opinion, but rather were cut and pasted from artificial intelligence ("AI") generated narratives.  Incredibly, during his deposition, Dr. Williamson admitted the narrative contained in his reports was created by AI, the underlying algorithms for which still have not been disclosed.  The entirety of his reports and opinions are tainted by this improper material.  Fed. R. Ev. 702(b).  Dr. Williamson relied on principles and methods that are not reliable: he administered tests in the case of A.F.A.J. that are inappropriate for a minor, and tests in the case of the father that were outdated and are not generally accepted in the psychology profession.  After administering these tests, Dr. Williamson sent the data to a company he owns to generate the AI narratives.  No legitimate psychological expert would endorse these applications of psychological testing.

 Plaintiffs therefore respectfully request that the Court preclude Defendant from offering Dr. Williamson's report, opinions, or testimony.

## II.   ARGUMENT

### A.   Dr. Williamson's Reports, Opinions, and Testimony, Must be Excluded Under Rule 37 Because Defendant Failed to Comply with Rule 26, Engaging in Gamesmanship by Positioning an Affirmative Report as a Rebuttal Report

Federal Rule of Civil Procedure 26 governs parties' disclosure obligations and requires parties to "make disclosures at the times and in the sequence that the court

PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

orders." Fed. R. Civ. P. 26(a)(1)(D).  "Parties should not 'indulge in gamesmanship with respect to' their Rule 26 disclosure obligations." *Martin v. Walmart Inc.*, 2023 WL 5505898, at *4 (C.D. Cal. July 10, 2023) (quoting *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) (Staton, J.)).  "Compliance with Rule 26's disclosure requirements is 'mandatory.'"  *Id.* (quoting *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 (9th Cir. 2014)).  Federal Rule of Civil Procedure 37 mandates that a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e), . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

A party need not disclose an expert within the deadline for initial expert reports, and can instead disclose an expert as a "rebuttal expert," when the expert's testimony is "intended *solely* to contradict or rebut evidence on the same subject matter identified by an initial expert witness." *Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744, 2015 WL 3509384, at *4 (N.D. Cal. June 3, 2015) (quoting *R&O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011).  "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).

Here, Defendant failed to disclose Dr. Williamson as a Rule 26 expert and failed to produce initial reports containing his opinion and conclusions.  Instead Defendant offered Dr. Williamson's initial Rule 26 report under the guise of a rebuttal.  Rule 37(c) therefore requires the Court to exclude Dr. Williamson's report,

-3-

opinions, and testimony due to Defendant's failure to comply with its disclosure obligations under Rule 26.

                1.    <u>Dr. Williamson's report, opinions, and testimony must be excluded because Defendant failed to disclose him as an expert.</u>

Defendant did not comply with its obligations under Rule 26.  As is relevant here, the Court's Rule 26 Scheduling Order set forth the following deadlines:

- Disclosure of Initial Expert Reports – December 22, 2023
- Disclosure of Rebuttal Expert Reports – January 19, 2024

Dkt. 51 at 2.  Defendant disclosed no initial expert reports by December 22, 2023, and did not disclose Dr. Williamson as a proposed expert until it produced his "Rule 26(a) Reports" on January 19, 2024.  Dakin-Grimm Decl. Ex. F.  This despite Defendant's request on October 31, 2023 that Plaintiffs stipulate to a Rule 35 Mental Examination without the need for a motion.  Dakin-Grimm Decl. Ex. A at 3.  When Plaintiffs' counsel asked who Defendant proposed to conduct the examinations and requested that Defendant identify the procedures anticipated, then Defendant produced Dr. Williamson's curriculum vitae.  Plaintiffs' counsel advised Defendant they did not believe that Dr. Williamson possessed the requisite qualifications to conduct such examinations, but nevertheless agreed to proceed without requiring Defendant to incur the cost of a motion.[2]

On December 20 and December 21, 2023, respectively, Mr. Arredondo and A.F.A.J. attended their mental examinations with Dr. Williamson.[3]  After the Rule

---

[2] In agreeing to proceed, Plaintiffs reserved their objections to Dr. Williamson's qualifications.

[3] Plaintiffs have learned that, during preparation for his examination of A.F.A.J.— who had just turned twelve at the time of the traumatic events that led to this litigation—Defendant's counsel suggested to him that he should treat A.F.A.J. "as

PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

35 Examinations, Dr. Williamson failed to produce reports under Rule 35. On January 8, 2024, Plaintiffs proactively asked Defendant if it was producing affirmative expert reports. Dakin-Grimm Decl. Ex. E. Defendant confirmed it had no affirmative reports. *Id.* Following the production of Dr. Williamson's Rule 26 report, at Dr. Williamson's deposition on February 12, 2024, Plaintiffs' counsel again requested that Dr. Williamson's Rule 35 report be produced. No such report has been produced. The only reports authored by Dr. Williamson that Defendant has produced are Dr. Williamson's affirmative Rule 26(a) reports for each Plaintiff. The lack of Rule 35 reports and the production of affirmative Rule 26(a) reports demonstrates that Dr. Williamson was only contemplated as an affirmative expert. Defendant was obligated under Rule 26 to identify and disclose Dr. Williamson as an affirmative expert and to produce his reports by the deadline for initial expert reports, December 22, 2023. It did neither.

Instead, Defendant ran roughshod over the Federal Rules and this Court's scheduling order. The reports—titled "Federal Rule of Civil Procedure 26(a) Report Clinical Psychological Evaluation / Expert Rebuttal"—that were ultimately produced by Defendant at the rebuttal expert report deadline are largely affirmative reports. *See* Dakin-Grimm Decl. Exs. G, H. Dr. Williamson's report as to Mr. Arredondo is 29 pages, 20 of those pages are dedicated to Dr. Williamson's

---

an adult," because she is now seventeen. Dakin-Grimm Decl. ¶ 6; Dakin-Grimm Decl. Ex. A at 4. Dr. Williamson agreed. Dakin-Grimm Decl. ¶ 6. On December 21, 2023, when A.F.A.J. arrived at Dr. Williamson's office with her Court-appointed guardian ad litem, Jeffrey Hamilton, and her interpreter, Bertha Cardenti, Dr. Williamson informed them that only A.F.A.J. could be enter the room. Dr. Williamson then threatened them all that they were in violation of a Court Order for insisting that A.F.A.J. be accompanied during the examination. There is no such order. After Mr. Hamilton contacted Plaintiffs' counsel, Mr. Hamilton and Ms. Cardenti were eventually permitted to accompany A.F.A.J.

-5-

1  affirmative opinion. *See* Dakin-Grimm Decl. Ex. G.  Dr. Williamson's report as to

2  A.F.A.J. is 31 pages, 22 of those pages are dedicated to Dr. Williamson's affirmative

3  opinion. *See* Dakin-Grimm Decl. Ex. H.  Throughout the reports, Dr. Williamson

4  offers his own examination and affirmative findings, he proposes different

5  diagnoses, and he puts forth different theories of causation.

6       This is foreclosed by Rule 26. *Nat'l Fire Prot. Ass'n, Inc. v. Upcodes, Inc.*,

7  No. 21-CV-05262, 2023 U.S. Dist. LEXIS 151744, at *14 (C.D. Cal. Aug. 8, 2023)

8  (quoting *City & Cnty. of S.F. v. Purdue Pharma L.P.*, No. 18-CV-07591, 2022 WL

9  1203075, at *2 (N.D. Cal. Apr. 22, 2022)) ("Using a rebuttal report as a backdoor to

10 introduce analysis that could have been included in the opening report is squarely

11 foreclosed by Rule 26."); *see also Century Indem. Co. v. Marine Grp., LLC*, No.

12 3:08-CV-1375, 2015 WL 5521986, at *3 (D. Or. Sept. 16, 2015) (Rebuttal testimony

13 "is limited to new unforeseen facts brought out in the other side's case"); *Clear-View*

14 *Techs., Inc.*, 2015 WL 3509384, at *4 ("Permitting parties to backdoor affirmative

15 expert testimony under the guise of 'rebuttal' testimony would render Rule 26's

16 limits generally meaningless.").

17       If a  "rebuttal" expert's testimony is offered,  to "contradict an expected and

18 anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal

19 witness or anything close to one." *Id.* (quoting  *Amos v. Makita U.S.A.*, 2011 WL

20 43092, at *2 (D. Nev. Jan. 6, 2011) (citing *In re Apex Oil Co.*, 958 F.2d 243, 245

21 (8th Cir. 1992)); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

22 1101, 1105-06 (9th Cir. 2001) (affirming trial court's exclusion of expert who was

23 improperly disclosed as a rebuttal expert).  Although a defendant need not put forth

24 expert opinions to challenge affirmative theories on which the plaintiff bears the

25 burden of proof, such as damages, a defendant's rebuttal expert is limited to offering

26 opinions rebutting and refuting the theories set forth by plaintiff's expert(s). *See, e.g.*,

27

28

-6-

1    *Clear-View Techs., Inc.*, 2015 WL 3509384, at *5 (citing *Cates v. Sears, Roebuck &*

2    *Co.*, 928 F.2d 679, 685 (5th Cir. 1991)).

3         Defendant was required to disclose Dr. Williamson as a proposed expert, and

4    to provide his affirmative expert reports, on or before December 22, 2023.  Instead

5    Defendant waited until Dr. Williamson had Plaintiffs' expert reports in hand, and

6    then submitted his affirmative reports and rebuttals jointly on January 19, 2024,

7    styled as "Federal Rule of Civil Procedure 26(a) Report Clinical Psychological

8    Evaluation / Expert Rebuttal."  These present new arguments, which rebuttal reports

9    may not include.  *See, e.g.*, *Century Indem. Co.*, 2015 WL 5521986, at *26

10        Because Dr. Williamson was not properly noticed as an expert and because

11   his  reports are not proper rebuttal evidence, they must be excluded under Rule 37(c).

12   *Nat'l Fire Prot. Ass'n, Inc.*, 2023 U.S. Dist. LEXIS 151744, at *14.

13                   2.    <u>Defendant's failure to disclose Dr. Williamson as an expert was</u>

14                         <u>neither substantially justified nor harmless.</u>

15        A party that, without substantial justification, fails to properly disclose

16   information as required by Rule 26(a) may not "unless such failure is harmless, []

17   use as evidence at trial . . . any witness or information not so disclosed."  Fed. R.

18   Civ. P. 37(c)(1).  "The sanction is *automatic and mandatory* unless the sanctioned

19   party can show that its violation . . . was either justified or harmless."  *Id.* (citing

20   *R&O Constr.*, 2011 WL 2923703, at *3) (emphasis in original).  In determining

21   whether the error was substantially justified or harmless, courts considers several

22   factors, including: (1) prejudice or surprise to the party against whom the evidenced

23   is offered, (2) the ability of that party to cure the prejudice, (3) the likelihood of

24   disruption of trial, and (4) bad faith or willfulness in not timely disclosing the

25   evidence.  *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022).

26

27                                          -7-

28

1    *Prejudice.*  Plaintiffs have been prejudiced by Defendant's failure to disclose

2    Dr. Williamson's opinions and the subsequent shoehorning of an affirmative initial

3    expert report into a so-called rebuttal report.  First, by offering Dr. Williamson's

4    affirmative report under the guise of a rebuttal report Defendant deprived Plaintiffs

5    of the opportunity to offer a rebuttal expert of their own, countering and discrediting

6    the opinions offered by Dr. Williamson.  *See Abdo v. Fitzsimmons*, No. 17-CV-

7    00851, 2020 WL 4051299, at *4 (N.D. Cal. July 20, 2020) ("Further, the late

8    disclosure is not harmless because it deprived Plaintiffs of the opportunity to submit

9    an expert report to rebut the Rebuttal Report.").  Second, waiting until Dr.

10   Williamson was in receipt of the affirmative reports prepared by Plaintiffs' expert

11   gave Dr. Williamson an unfair advantage in the preparation of his own affirmative

12   report.  This enabled him to tailor his affirmative report to the report prepared by

13   Plaintiffs' expert.

14   *Inability to Cure.*  Plaintiffs cannot cure the prejudice.  First, as discussed

15   *supra*, Plaintiffs were deprived of the opportunity to submit a rebuttal report to

16   contradict and refute the affirmative opinions and conclusions contained in Dr.

17   Williamson's affirmative report.  Because expert discovery has closed, and the

18   deadline for expert rebuttal reports has passed, Defendant is unable to cure this

19   severe prejudice.  Second, although Plaintiffs were able to depose Dr. Williamson,

20   they did not have the full opportunity that they would have been afforded if he had

21   (1) been timely disclosed, (2) produced an affirmative expert report that did not

22   improperly benefit from the work of Plaintiffs' expert, and (3) produced the

23   materials underlying his opinions as required by Rule 26.[4]  Fed. R. Civ. P. (a)(2)(b).

24   _____

25   [4] As an example, in his reports, Dr. Williamson claims to have testified thirty times
     in Immigration Court in the last four years. Dakin-Grimm Decl. Ex. G at 26; Dakin-
26   Grimm Decl. Ex. H at 28.  Dr. Williamson, however, did not disclose the cases as

27                                              -8-

28   PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT
     WILLIAMSON [*DAUBERT*]
     CASE NO. CV 22-02845-JLS-JC

Moreover, Dr. Williamson's reports were produced without the underlying data on which he purported to rely. Plaintiffs repeatedly requested this data. Dakin-Grimm Decl. Ex. L at 1-8; Dakin-Grimm Decl. Ex. I at 1-2. Dr. Williamson claimed that he was unable to provide this material under California law and his ethical obligations absent a court order compelled him to do so. Plaintiffs' counsel agreed on January 25, 2025 not to oppose Defendant's request for an *ex parte* order directing Dr. Williamson to comply with his obligations. Dakin-Grimm Decl. Ex. L at 1. Nonetheless, Defendant's counsel waited until five days before the deposition—February 7, 2024—to file its *ex parte* application for Dr. Williamson "comfort order." Dkt. 141. The Court promptly granted Defendant's request on February 9, 2024. Dkt. 142. Defendant and Dr. Williamson did not produce copies of the underlying testing materials that Dr. Williamson relied on until February 10, 2023, the weekend before his Monday deposition.[5]  Dakin-Grimm Decl. ¶ 17. Further

---

Rule 26 requires. Fed. R. Civ. P. 26(a)(2)(B)(v). After requests by Plaintiffs, a few days before Dr. Williamson's February 12, 2024 deposition, he produced a list of the cases in which he claimed to have testified at trial. There were four. Dakin-Grimm Decl. Ex. J. In deposition, he testified that he was not certain he actually testified in all four, and it may have been only two. Dakin-Grimm Decl. ¶ 16.

[5] Dr. Williamson's reports criticize Plaintiffs expert's use of a volunteer interpreter, Bertha Cardenti. Ms. Cardenti has worked with the Arredondo family since their arrival in the United States. She provides her services through a program arranged by the Archdiocese of Los Angeles and was trained by the well-respected organization, Kids in Need of Defense ("KIND"). Notably, Dr. Williamson conducted his examination of Plaintiffs in Spanish. At his deposition, Dr. Williamson testified that he himself is not a native Spanish speaker or a certified translator; no certified translator was present as his examinations. Dr. Williamson also testified that he is free to come up with new opinions not disclosed in his reports and, to that end, did research regarding the propriety of using an "uncertified" translator to conduct psychological examinations in preparation for his deposition. He testified that in doing this research, he started with Google and went wherever

compounding this issue, Dr. Williamson produced additional documents *during* his deposition, but to date still has not produced the algorithms underlying the AI he relied on to form his opinions.  This late disclosure denied Plaintiffs access to data and information necessary to fully prepare for Dr. Williamson's deposition—including consultation with their own expert.

 *Bad Faith.*  Defendant should have required Dr. Williamson to prepare and produce a report under Rule 35. It should have disclosed him as an initial expert. Defendant was in contact with Dr. Williamson in October 2023, well before the expert disclosure deadline. Dakin-Grimm Decl. Ex. A at 4.  And Defendant's notice of a Rule 35 examinations indicates its intent to put forth competing, affirmative evidence on causation.

Defendant's failure to provide an initial report disclosing Dr. Williamson's examination, findings, and opinions, cannot be substantially justified.  *See City & Cnty. of S.F. v. Purdue Pharma L.P.*, No. 18-CV-07591, 2022 WL 1203075, at *14 (N.D. Cal. Apr. 22, 2022) (finding failure to timely disclose not substantially justified where expert only included opinion in rebuttal report that could have been included in her opening report).  The failure to disclose Dr. Williamson or to provide initial reports can only be attributed to bad faith effort to insulate its expert and his opinions from scrutiny.

The Court should not countenance Defendant's efforts to play fast-and-loose with Rule 26's disclosure requirements or gamesmanship—"something Rule 26 was designed to combat, not foster." *Clear-View Techs., Inc.*, 2015 WL 3509384, at *12. Rule 37 therefore requires that Dr. Williamson's report be stricken and Dr. Williamson be prohibited from testifying.  *See Goodman v. Staples The Office*

---

that led him.  Because this was not disclosed prior to the deposition, Plaintiffs did not have the benefit of fully exploring this issue during Dr. Williamson's deposition.

-10-

*Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (affirming the self-executing sanction under Rule 37 of excluding the expert for failing to comply with Rule 26 where non-compliant party did not carry her burden of proving harmlessness).

### B.    The Court Should Exclude Dr. Williamson's Report, Opinions, and Testimony Because He is Not Qualified Under Rule 702

Even if Defendant had properly and timely directed Dr. Williamson to produce his affirmative report and underlying data, the Court should still preclude Dr. Williamson's report, opinions, and testimony because he is not qualified under Federal Rule of Evidence 702 ("Rule 702").

Rule 702 governs the admissibility of expert opinion testimony. Under Rule 702, expert opinion is only admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

Fed. R. Evid. 702. To determine whether an expert is sufficiently qualified in a particular area of expertise, a court must examine whether the expert's qualifications and experiences are "relevant to the determination of the facts in issue." *In re Canvas Specialty Inc.*, 261 B.R. 12, 19 (C.D. Cal. 2001).

Once an expert is found to be qualified, a trial court must ensure that the testimony of the expert "both rests on a *reliable* foundation and is *relevant* to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993) (emphases added). Testimony rests on a "reliable foundation" if it is rooted "in the knowledge and experience of the relevant discipline" while "testimony is relevant if

-11-

1  the knowledge underlying it has a valid connection to the pertinent inquiry." *City of*

2  *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014).

3      A court's primary concern is "the soundness of [the expert's] methodology"

4  and not the correctness of the conclusion. *Est. of Barabin v. AstenJohnson, Inc.*, 740

5  F.3d 457, 463 (9th Cir. 2014).  When assessing scientific expert opinion, a court may

6  consider factors, such as "(1) whether the scientific theory or technique can be (and

7  has been) tested, (2) whether the theory or technique has been subjected to peer

8  review and publication, (3) whether there is a known or potential error rate, and (4)

9  whether the theory or technique is generally accepted in the relevant scientific

10  community." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654-55 (9th Cir.

11  2006) (internal quotation omitted).  These factors are not exhaustive, and a court

12  may use its discretion "to decide how to test an expert's reliability as well as whether

13  the testimony is reliable, based on the particular circumstances of the particular

14  case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27,

15  2010).  Dr. Williamson fails to meet any of the five criteria outlined in Rule 702,

16  any one of which would result in the exclusion of his reports, opinions, and

17  testimony.

18          1.      <u>Dr. Williamson is  not qualified to opine on the facts at issue.</u>

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████  Dr.

22  Williamson lacks the education and experience to qualify him as an expert in this

23  specialty or in the broader area of clinical psychology.  Additionally, this case

24  involves severe and long-lasting trauma;  Dr. Williamson is not qualified to serve as

25  an expert regarding trauma.

-12-

Dr. Williamson's degree and training are in educational, not clinical, psychology.  Nearly two-thirds of his curriculum vitae relates to positions he had before he was even licensed, [6] what the profession calls "counting hours to licensure."  He has *zero* training in trauma.  He has *zero* training or education in the protocols for treating traumatized children.  Per his own deposition testimony and admission, Dr. Williamson's sole qualifying "experience" is in ordinary day-to-day treatment of patients.

Dr. Williamson has never published anything, much less peer-reviewed articles, or books.  He has no affiliations with hospitals. He has never held an academic position or conducted psychological research.  He does not belong to the specialist groups of treating psychologists devoted to ███, trauma issues, or children.  He has never presented at professional conferences or colloquia on trauma, or any other issues, nor has he performed peer-reviewed conference presentations. He has never applied for nor received a grant to perform trauma-related research. He has never taught academic courses at a four year, degree granting institution (though his curriculum vitae indicates that he once gave a guest lecture at a community college, Dakin-Grimm Decl. Ex. B at 4).  Dr. Williamson also has no training in child forensic interviewing, a specialty offered by the American Professional Society on the Abuse of Children.  He is not a member of the American Psychological Association's Trauma Psychology group, nor of the International Society for Traumatic Stress Studies.

---

[6] Dr. Williamson's reports and curriculum vitae indicate that he has practiced as an independently licensed "clinical psychologist."  Dakin-Grimm Decl. Ex. B at 1, 2; Dakin-Grimm Decl. Ex. G at 2; Dakin-Grimm Decl. Ex. H at 2.  This implies that he has been Board certified *as a clinical psychologist* by the American Board of Professional Psychology, which his deposition testimony made clear is not the case. Dakin-Grimm Decl. ¶ 19; Dakin-Grimm Decl. Ex. K.  Rather, he is licensed as a "psychologist," not a clinical psychologist.

-13-

1    In short, Dr. Williamson is not an expert in the field of either trauma or
2    children.  He is a person who is licensed to practice psychology in the States of
3    California and Hawaii.  But that alone does not make him qualified to offer expert
4    opinions in this case and to this Court.  *See Daubert v. Merrell Dow*
5    *Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (considering "[w]hether
6    experts are proposing to testify about matters growing naturally and directly out of
7    research they have conducted independent of the litigation, or whether they have
8    developed their opinions expressly for purposes of testifying").

9    In sum, Dr. Williamson is an ordinary therapist in a general practice.  He has
10   no education or training in trauma, does not regularly treat trauma patients in the
11   ordinary course, and made no effort to supplement his lack of training and
12   experience with pertinent and necessary contextual knowledge.  He is not an expert
13   on the issues in this case and therefore cannot provide admissible expert evidence.
14   *See Daubert*, 509 U.S. at 596.

15          2.   Dr. Williamson's reports do not contain expert opinion or
16              scientific, specialized, or other technical knowledge that would
17              help the Court to understand the evidence or to determine a fact
18              in issue.

19   Dr. Williamson's reports, opinions, and testimony do not constitute
20   admissible expert evidence because they do not contain "scientific, technical, or
21   other specialized knowledge [to] help the trier of fact to understand the evidence or
22   to determine a fact in issue."  Fed. R. Evid. 702.  Rather than include his own
23   opinion, Dr. Williamson testified at his deposition that wide swaths of his reports
24   are AI-generated narratives that have been copied and pasted from a testing
25   company's software.  Dakin-Grimm Decl. Ex. G at 16; Dakin-Grimm Decl. Ex. H
26   at 14-16, 17-19.  As such, the narratives in the report are inadmissible.

27
28
-14-

1         In Dr. Williamson's report as to A.F.A.J., the pasted AI-generated narrative

2    states that the testing Dr. Williamson administered "has *marginal validity*, because

3    the individual attempted to place herself in an overly positive light by minimizing

4    faults and denying psychological problems."[7]   Dakin-Grimm Decl. Ex. H at 14

5    (emphasis added).   Yet Dr. Williamson relied on it.   Pasting this AI-generated

6    narrative into his Rule 26(a) report does not transform it into Dr. Williamson's

7    opinion.

8         In Dr. Williamson's report as to Mr. Arredondo, he relied on testing

9    administered using an outmoded version of the MMPI psychometric test. MMPI-2,

10   the testing used by Dr. Williamson, is disfavored because well-known aspects of the

11   test that have been determined to be invalid and unreliable. Dr. Williamson testified

12   at his deposition that he knew the MMPI-2 was outdated.  Initially, Dr. Williamson

13   offered no explanation for using the MMPI-2.  Eventually, he revealed that he owns

14   the company he used to score and generate AI narratives for both reports he issued

15   in this case.  That company cannot score or generate AI narratives for the current

16   version of the MMPI.  Importantly, the AI-generated narrative that Dr. Williamson

17   pasted into his report on Mr. Arredondo acknowledges that the validity of the results

18   is "borderline."[8]  Dakin-Grimm Decl. Ex. G at 16.

19

20

21

22   [7] It is not clear whether Dr. Williamson communicated to Defendant's other expert,
     Dr. Hagen, that the report concerning A.F.A.J. had "marginal validity."  Dr. Hagen

23   relied solely on Dr. Williamson's verbal representations regarding his examination

24   of A.F.A.J.

25   [8] It is not clear whether Dr. Williamson communicated to Defendant's other expert,
     Dr. Hagen that the validity of the reports were "borderline."  Dr. Hagen in turn relied

26   solely on Dr. Williamson's verbal representations regarding his examination of

27   Plaintiffs.

28

PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT
WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1    Dr. Williamson offers no real expertise or opinion in this case.  In both reports,
2    he simply recites the T-scores reported by the AI testing software (that he owns) and
3    states whether the scores were or were not clinically elevated.[9]  He does not provide
4    support for, or offer a contextual analysis of, the results, based on, for example, his
5    own interview or interaction with Mr. Arredondo.  To the extent one could call Dr.
6    Williamson's work "analysis," his reliance and emphasis of narratives that explicitly
7    state they lack credibility does not evidence that Dr. Williamson examined the AI-
8    generated interpretation with "care," let alone "more than usual care."  Further, Dr.
9    Williamson's copy and paste of T-scores does not constitute "scientific, technical,
10   or other specialized knowledge."  A lay person could have conducted the same copy
11   and paste exercise.  The Court certainly could do the same, and so Dr. Williamson's
12   report would not "help" the Court "to understand the evidence or to determine a fact
13   in issue."  Fed. R. Evid. 702.

14        Because Dr. Williamson's report does not contain his "opinion" or include
15   scientific, technical, or other specialized knowledge that would help the Court as
16   trier of fact, Dr. Williamson's opinions do not constitute admissible expert evidence
17   and should be excluded.

18        3.    <u>Dr. Williamson's opinions are not based on sufficient facts or</u>
19              <u>data.</u>

20        Dr. Williamson's  reports are not based on sufficient facts or data.  In drafting
21   them, Dr. Williamson relied only on documents cherry-picked, and provided to him,
22   by Defendant counsel, including the complaint, notice of medical examination,

23

24   _____
     [9] ███████████████████████████████████████████████████████████████
25   ████████████████████████████████████████████████████████████████ Dakin-
     Grimm Decl. Ex. M at 395 ("The MMPI-2 was not designed to assess ████
26   although MMPI-2 scales have been developed to capture symptoms consistent with
     posttraumatic stress . . . .").
27                                              -16-

28   _____
     PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT
     WILLIAMSON [*DAUBERT*]
     CASE NO. CV 22-02845-JLS-JC

1   Plaintiffs' respective deposition transcripts, Plaintiffs' expert's reports, and as to

2   A.F.A.J., prior medical records.  *See* Dakin-Grimm Decl. Ex. G at 5-6; Dakin-

3   Grimm Decl. Ex. H at 5-6.  Dr. Williamson's reports and deposition testimony

4   confirm that he conducted no research into the psychological literature surrounding

5   the facts and circumstances, including basic information from the government's

6   Office of Inspector General report regarding the impact of Defendant's nationwide

7   family separation policy or the well-documented and longstanding trauma suffered

8   by victims of that policy.  Further, in his deposition, Dr. Williamson evidenced

9   fundamental misunderstandings of the basic facts and history of this particular

10  case.[10]

11       In addition to the narrow universe of background information selected by

12  counsel, Dr. Williamson based his opinions on insufficient data.  Rather than

13  conduct a psychodiagnostics interview, his notes reflect that he only took a history

14  from each Plaintiff.  *See* Dakin-Grimm Decl. Ex. O.  Dr. Williamson then relied

15  almost entirely on AI-generated narrative reports of based on improper

16  psychological tests to render his purported conclusions and diagnoses.[11]   Dr.

17  Williamson's notes indicate that he utilized a checklist of symptoms,[12] this type of

18

19  _____

20  [10] For example, he testified that the government allowed Mr. Arredondo  to appeal

21  his adverse credible fear finding, and that was why the government let Mr.
    Arredondo return to the United States and reunify with A.F.A.J.

22  [11] As of the date of filing, the algorithms responsible for generating the AI narratives

23  that Dr. Williamson pasted into his reports have not been produced or disclosed.

24  [12]

25

26

27                                         -17-

28  PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT
    WILLIAMSON [*DAUBERT*]
    CASE NO. CV 22-02845-JLS-JC

1  psychological test is referred to by psychologists as a "self-report measure" and is

2  recognized as insufficient for the conclusion Dr. Williamson purports to rely on the

3  tests to support.[13]

4       Given his lack of education, training, and experience with trauma and ███,

5  Dr. Williamson's overreliance on psychological tests may be understandable;

6  however, his preference for an examination format that would account for his own

7  deficiencies does not render his opinion reliable or admissible.  Rather, his almost

8  wholesale exclusion of examination modalities renders his opinion insufficiently

9  grounded in facts and data, warranting exclusion of his reports, opinions, and

10  testimony.

11              4.    <u>Dr. Williamson's opinions are not the product of reliable</u>

12                     <u>principles and methods.</u>

13       Dr. Williamson's reports, opinions, and testimony are not the product of

14  *reliable* principles and methods.  As noted above, Dr. Williamson relied almost

15  exclusively on self-report measures and AI-generated narratives based on those

16  measures.  This overreliance is particularly improper with culturally-diverse

17  populations because the comparison samples on which the tests are based on do not

18

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████

21  [13] First, self-report measures employ closed-ended, leading questions that cannot be

22  used to measure or assess the intensity of symptoms.  Dakin-Grimm Decl. Ex. P at
3; Dakin-Grimm Decl. Ex. M at 398.  Second, self-report measures derive scores,

23  not diagnoses, Dakin-Grimm Decl. Ex. M at 395, yet Dr. Williamson purports to
make diagnoses on the basis of the scores.  Dakin-Grimm Decl. Ex. G at 19-20;

24  Dakin-Grimm Decl. Ex. H at 21-22.  Third, self-report measures do not differentiate
traumatic events, Dakin-Grimm Decl. Ex. M at 396, this is particularly relevant here

25  where Plaintiffs have been exposed to multiple traumatic events.  While self-report

26  measures may be more time-effective for the psychologist, diagnostic interviews are
considered the gold standard.  Dakin-Grimm Decl. Ex. M at 392.

27  -18-

28

include sufficient numbers of a particular population (here, Central American, Spanish-speaking immigrants). Dakin-Grimm Decl. Ex. T at 229-30.

**Dr. Williamson chose the wrong tests**. As discussed *supra*, Dr. Williamson chose to administer a version of the MMPI which is outdated and is not an accepted test methodology for trauma, a fact he admitted in his deposition. Dr. Williamson's AI-generated narrative reports for both Plaintiffs state that the result was only marginally valid. Nevertheless, he relied on those results heavily. Dakin-Grimm Decl. Ex. G at 16; Dakin-Grimm Decl. Ex. H at 14-16, 17-19.

**Dr. Williamson's reports and opinions were AI-generated**. This is not admissible because the algorithms that generated the narrative reports have not been disclosed and cannot be known. While the use of AI in litigation is relatively new, courts that have considered the question have found information generated by AI to be irrelevant and unreliable. *See, e.g.*, *In re Celsius Network LLC*, 655 B.R. 301, 308–09 (Bankr. S.D.N.Y. 2023) ("A properly submitted expert report is a reflection of the expert's own knowledge, experience, expertise and methods used. It embodies their testimony, and communicates technical and detailed explanations to the finder of fact. [This] Report was not written by [the proposed expert] . . . [it] was written by artificial intelligence at the instruction of [the proposed expert]. . . . the Court finds that the [] Report is unreliable and fails to meet the standard for admission."); *In re Marriott Int'l, Inc.*, 602 F. Supp. 3d 767, 787 (D. Md. 2022) ("noting that AI and its related algorithms "are not omniscient, omnipotent, or infallible. They are nothing more than a systematic method of performing some particular process from a beginning to an end. If improperly programmed, if the analytical steps incorporated within them are erroneous or incomplete, or if they are not tested to confirm their output is the product of a system or process capable of producing accurate results (a condition precedent to their admissibility), then the results they generate cannot be

-19-

1   shown to be relevant, reliable, helpful to the fact finder, or to fit the circumstances

2   of the particular case in which they are used.") (internal citations omitted); *J.G. et*

3   *al. v. New York City Department of Education*, No. 1:23-cv-00959 (S.D.N.Y. Feb.

4   22, 2023) (Dkt. 32) (finding portions of the counsel's submissions that rely on AI

5   "utterly and unusually unpersuasive").

6       Dr. Williamson cannot offer admissible expert evidence because he did not

7   employ reliable and generally accepted methodologies.

8       5.   Dr. Williamson's opinions do not reflect a reliable application of

9            his chosen methodology to the facts at issue.

10      Dr. Williamson did not reliably apply a methodology in the standard way

11  accepted by the psychological trauma community.

12      First, the reliance on AI to generate narratives in psychological reports is

13  strongly disfavored—particularly when the AI-generated narrative is not

14  accompanied by further analysis or supplemented additional context and

15  considerations. *See supra* Section II.B.4; Dakin-Grimm Decl. Ex. N at 201

16  ("Clinical users who cut and paste (often with no indication that they are doing so)

17  computer-generated narrative statements into forensic reports fail to follow CBTI

18  developers' admonishments that such statements are simply hypotheses to be

19  considered.  In addition to clinicians naively accepting the computerized output as

20  accurate for their particular assessee, narrative statements provided by CBTI

21  developers may include inaccurate descriptive statements . . . .").  Dr. Williamson,

22  of course, did just that—even though the AI-generated narratives *themselves* stated

23  the tests had marginal validity.

24      Second, contrary to ethical requirements in the field of psychology, Dr.

25  Williamson used test scores as the *sole* indicators to characterize functioning,

26  competence, attitude, and predispositions.   The Ethical Practices of Forensic

27                                    -20-

28

1    Psychology 236 (Gianni Pirelli, Robert A. Beattey, and Patricia A. Zapf eds., 2017).

2    He did not attempt to collect or synthesize multiple sources of information, including

3    for example, family interviews, particularly as to A.F.A.J., which is standard practice

4    in any child or adolescent clinical evaluation.  Dakin-Grimm Decl. Ex. R at 178.  Dr.

5    Williamson conceded during his deposition that family interviews are necessary for

6    minors, but he conducted no such interview in this case.  He could not identify any

7    questions he asked of Mr. Arredondo about A.F.A.J., and he never asked to interview

8    A.F.A.J.'s mother.

9        Third, Dr. Williamson failed to address inconsistencies.  █████████

10   ████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ███████████████████     Assuming, *arguendo*, that Dr. Williamson employed a reliable

15   and accepted methodology (a method other than "because I so conclude"), the fact

16   that he reached contradictory conclusions without explanation tends to suggest that

17   his methods were not faithfully applied.  *See Lust v. Merrell Dow Pharmaceuticals,*

18   *Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("When an expert purports to apply principles

19   and methods in accordance with professional standards, and yet reaches a conclusion

20   that other experts in the field would not reach, the trial court may fairly suspect that

21   the principles and methods have not been faithfully applied.").

22       In sum, even assuming that Dr. Williamson had chosen and utilized

23   appropriate methodologies for evaluating trauma victims and minors (and he did

24   not), his failure to apply them in a way that is accepted by the psychological trauma

25   expert community renders his opinions unreliable.  The Court should therefore

26

27                                     -21-

28

exclude his reports, opinions, and testimony as inadmissible expert evidence under Fed. R. Evid. 702.

## III.   CONCLUSION

Plaintiffs respectfully request the Court exclude Dr. Williamson's reports, opinions, and testimony in their entirety.  Dr. Williamson's reports, opinions, and testimony must be excluded pursuant to Rule 37(c) because Defendant failed to disclose Dr. Williamson as an expert or to provide an initial expert report.  Exclusion is further warranted under Fed. R. Evid. 702 because Dr. Williamson (1) is not qualified as an expert in trauma or ████; and his reports and opinions (2) do not contain scientific, technical, or specialized knowledge that would help the Court understand the evidence or determine a fact in issue; (3) are not based on sufficient facts or data; (4) are not the product of reliable methodologies; and (5) do not reflect the reliable application of his chosen methodology to the facts in issue.

Dated: February 23, 2024            Respectfully Submitted,
                                    **MILBANK LLP**

                                    By: */s/ Linda Dakin-Grimm*
                                    Linda Dakin-Grimm (State Bar #119630)
                                    LDakin-grimm@milbank.com

                                    Mark Shinderman (State Bar #136644)
                                    MShinderman@milbank.com
                                    Samir L. Vora (State Bar #253772)
                                    SVora@milbank.com
                                    Marina Markarian (State Bar #340686)
                                    MMarkarian@milbank.com
                                    2029 Century Park East, 33rd Floor
                                    Los Angeles, CA 90067

-22-

Telephone: 424-386-4000
Facsimile: 213-629-5063

Elizabeth Hamilton, *pro hac vice*
EHamilton@milbank.com
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

Julie Wolf, *pro hac vice*
JWolf@milbank.com
Julia Duke, *pro hac vice*
JDuke@milbank.com
Riah Kim, *pro hac vice*
RKim2@milbank.com
Victoria Colbert, *pro hac vice*
VColbert@milbank.com
Jonghyun Lee, *pro hac vice*
JLee7@milbank.com
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: 202-835-7500
Facsimile: 202-263-7586

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

-23-

## <u>Certificate of Compliance Pursuant to L.R. 11-6.2</u>

The undersigned, counsel of record for Plaintiffs Esvin Fernando Arredondo Rodriguez and A.F.A.J certifies that this brief contains 6,696 words, which complies with the word limit of L.R. 11-6.1.


Dated: <u>February 23, 2024</u>          By: <u>/s/ *Elizabeth Hamilton*</u>
                                                    Elizabeth Hamilton

-24-