1   MILBANK LLP
2   Linda Dakin-Grimm (State Bar #119630)
    Mark Shinderman (State Bar #136644)
3   Samir L. Vora (State Bar #253772)
4   2029 Century Park East, 33rd Floor
    Los Angeles, CA  90067
5   Telephone: 213-892-4404
6   Facsimile: 213-629-5063
    Email: Ldakin-grimm@milbank.com
7   *Additional counsel listed on signature page
8
    *Pro Bono* Attorneys for Plaintiffs,
9   Esvin Fernando Arredondo Rodriguez and A.F.A.J.
10
11              **UNITED STATES DISTRICT COURT**
12        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                      **WESTERN DIVISION**
13

14  ESVIN FERNANDO ARREDONDO
    RODRIGUEZ, an individual AND A.F.A.J.,
15  a minor, BY HER GUARDIAN *AD LITEM*,    Case No.: CV 22-02845-JLS-JC
16  JEFFREY HAMILTON,
                                            **PLAINTIFFS' AMENDED**
17              Plaintiffs,                 **MOTION TO EXCLUDE**
                                            **TESTIMONY AND REPORT OF**
18          v.                              **PROPOSED EXPERT JUNE**
                                            **HAGEN [*DAUBERT*]**
19  UNITED STATES OF AMERICA,
20              Defendant.                  **Hearing Date:** March 29, 2024
                                            **Hearing Time:** 10:30 a.m.
21                                          **Judge:** Hon. Josephine L. Staton
                                            **Place:** 8A
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.      INTRODUCTION ....................................................................1

II.     LEGAL STANDARD.................................................................1

III.    ARGUMENT.........................................................................3

    A.      The Rebuttal Reports Are Not Based on Sufficient Facts or Data ........................................................................3

    B.      The Rebuttal Reports Are Not A Product of Reliable Principles or Methods...........................................................7

        1.      Dr. Hagen Fails to Show That She Properly Applied Professional Experience or Reliable Principles or Methods to Reach Her Conclusions ........................7

        2.      Dr. Hagen Failed to Engage with the Totality of the Evidence and Instead Only Considered the Evidence Favorable to Defendant's Position .........................10

IV.     CONCLUSION .......................................................................12

1

2
# <u>TABLE OF AUTHORITIES</u>

3
**Page(s)**

4
**Cases**

5

6
*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007)...........................................................9, 10

7

8
*In re Canvas Specialty Inc.*,
   261 B.R. 12 (C.D. Cal. 2001).................................................................................2

9

10
*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014)..............................................................................2

11

12
*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993)..............................................................................................2

13
*EEOC v. Freeman*,
   778 F.3d 463 (4th Cir. 2015).................................................................................9

14

15
*Est. of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014)................................................................................2

16

17
*GE v. Joiner*,
   522 U.S. 136 (1997)..............................................................................................3

18

19
*Nat'l Fire Prot. Ass'n, Inc. v. Upcodes, Inc.*,
   21 -05262, 2023 WL 6194385 (C.D. Cal. Sep. 7, 2023)....................................7

20

21
*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010).................................................................................2

22

23
*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
   18-06825, 2020 WL 6260015 (C.D. Cal. Sep. 16, 2020)...................................3

24

25
*Turner v. ThyssenKrupp Materials, N.A.*,
   492 F. Supp. 3d 1045 (C.D. Cal. 2020) ...............................................................3

26
*United States v. Bazaarvoice, Inc.*,
   13-00133, 2013 WL 3784240 (N.D. Cal. July 18, 2013)...................................3

27

28
*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006)................................................................................2

**Statutes**

Fed. R. Civ. P. 26......................................................................................................3

Fed. R. Evid. 702 ............................................................................... 1, 2, 7, 9, 12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    Defendant has proposed to offer rebuttal testimony from June Hagen ("Dr.

4    Hagen") in response to the employability assessments conducted by Plaintiffs'

5    vocational expert Mark Lieberman ("Mr. Lieberman"). Dr. Hagen's testimony

6    should be excluded from this case for two reasons. First, Dr. Hagen did not

7    adequately prepare herself prior to writing her Rebuttal Reports (defined below), in

8    failing to review relevant, available evidence. Thus, Dr. Hagen's conclusions are not

9    sufficiently supported by facts and data. Second, Dr. Hagen fails to show that she

10   properly applied her professional experience or reliable principles or methods to

11   reach her opinions in this case. The Rebuttal Reports contain only a single citation

12   to authority from Dr. Hagen's field of expertise and do not include any references to

13   defined methods or principles. In her deposition, Dr. Hagen admitted that she did

14   not rely on methods or principles at all. Moreover, after reviewing documents

15   Defendant's counsel had selected and sent her, Dr. Hagen relied solely upon the

16   evidence that favored the Defendant, failing to engage with the evidence that

17   opposed Defendant's position. Such cherry-picking is routinely rejected by courts

18   and further justifies excluding Dr. Hagen's conclusions.[1]

19   ## II.    LEGAL STANDARD

20   Under Federal Rule of Evidence 702 ("Rule 702"), expert opinion is

21   admissible if:

22

23

24   _____

25   [1] When *Plaintiffs' Motion to Exclude Testimony and Report of Proposed Expert June Hagen* was originally filed on February 23, 2024 (Dkt. 146), Plaintiffs had not

26   received a copy of the transcript of the deposition of Dr. Hagen from the court reporter. Plaintiffs have since received the transcript of Dr. Hagen's deposition,

27   excerpted portions of which are attached to the *Second Declaration of Linda Dakin-Grimm* as Exhibit A. *Plaintiffs' Amended Motion* hereinafter includes citations to

28   Dr. Hagen's deposition transcript.

1  (1) the witness is sufficiently qualified as an expert by knowledge, skill,

2  experience, training, or education; (2) the scientific, technical, or other

3  specialized knowledge will help the trier of fact to understand the

4  evidence or to determine a fact in issue; (3) the testimony is based on

5  sufficient facts or data; (4) the testimony is the product of reliable

6  principles and methods; and (5) the expert has reliably applied the

7  relevant principles and methods to the facts of the case.

8  Fed. R. Evid. 702. To determine whether an expert is sufficiently qualified, a court

9  must examine whether the expert's qualifications and experiences are "relevant to

10  the determination of the facts in issue." *In re Canvas Specialty, Inc.*, 261 B.R. 12,

11  19 (C.D. Cal. 2001).

12  Once an expert is found to be qualified, a trial court must ensure that the

13  testimony of the expert "both rests on a *reliable* foundation and is *relevant* to the

14  task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 579-80 (1993)

15  (emphasis added). Testimony rests on a "reliable foundation" if it is rooted "in the

16  knowledge and experience of the relevant discipline" while "testimony is relevant if

17  the knowledge underlying it has a valid connection to the pertinent inquiry." *City of

18  Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014) (citation and

19  internal quotation marks omitted).

20  A court's primary concern is "the soundness of [the expert's] methodology."

21  *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citation

22  and internal quotation marks omitted). When assessing scientific expert opinion, a

23  court may consider factors, such as "(1) whether the scientific theory or technique

24  can be (and has been) tested, (2) whether the theory or technique has been subjected

25  to peer review and publication, (3) whether there is a known or potential error rate,

26  and (4) whether the theory or technique is generally accepted in the relevant

27  scientific community." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th

28

-2-

Cir. 2006) (citation and internal quotation marks omitted). These factors are not exhaustive, and a court may use its discretion "to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citation and internal quotation marks omitted).

Additionally, Federal Rule of Civil Procedure 26 governs parties' disclosure obligations and outlines the requirements for a written report by a witness retained to provide expert testimony. Among other requirements, such a report must contain: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). "Th[is] duty to disclose is broad." *United States v. Bazaarvoice, Inc.*, 13-00133, 2013 WL 3784240, at *2 (N.D. Cal. July 18, 2013). In particular, "'facts or data' as used in Rule 26(a)(2)(B)(ii) is to 'be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients.'" *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 18-06825, 2020 WL 6260015, at *1 (C.D. Cal. Sept. 16, 2020) (quoting Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment).

## III.   ARGUMENT

### A.   The Rebuttal Reports Are Not Based on Sufficient Facts or Data

Expert testimony must be "based on sufficient facts or data." *Turner v. ThyssenKrupp Materials, N.A.*, 492 F. Supp. 3d 1045, 1048 (C.D. Cal. 2020) (citation and internal quotation marks omitted). When "there is simply too great an analytical gap between the data and the opinion proffered," the expert opinion must be excluded. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

-3-

1    Here, exclusion is warranted because Dr. Hagen failed to review sufficient

2    facts or data prior to authoring her reports; indeed, she reviewed very little at all. Dr.

3    Hagen's *Vocational Evaluation and Rebuttal of Plaintiff Employability Assessment*

4    *re: Esvin Fernando Arredondo Rodriguez* (the "Arredondo Rebuttal Report") lists

5    just six documents in the report's "Documents Reviewed" section. Arredondo

6    Rebuttal Report at 1. Those documents, all of which were selected and provided to

7    her by counsel (*see* Hagen Dep. Tr. 18:14-22), are (i) the two reports prepared by

8    Plaintiffs' experts on Mr. Arredondo; (ii) a psychological evaluation of Mr.

9    Arredondo done by psychiatrist Amy Cohen, M.D., in June 2020; (iii) the transcript

10   of Mr. Arredondo's deposition; and (iv) Mr. Arredondo's Reponses to Defendant's

11   First Set of Interrogatories. Arredondo Rebuttal Report at 1. Similarly, Dr. Hagen's

12   *Vocational Evaluation and Rebuttal of Plaintiff Employability Assessment re:*

13   *Andrea Arredondo Jerez* (the "A.F.A.J. Rebuttal Report" and, together with the

14   Arredondo Rebuttal Report, the "Rebuttal Reports") lists just 11 total documents in

15   the "Documents Reviewed" section. A.F.A.J. Rebuttal Report at 1. Those documents

16   are (i) four school records, including two academic transcripts and a truancy report;

17   (ii) the two expert reports produced by Plaintiffs' counsel relating to A.F.A.J.; (iii)

18   a psychological evaluation of A.F.A.J. done by Genaro Rodriguez in June 2020; (iv)

19   the transcript of A.F.A.J.'s deposition; and (v) A.F.A.J.'s treatment records from the

20   Childrens' Hospital of Los Angeles. *Id.*

21       Moreover, Dr. Hagen did not draw on her expertise to identify the relevant

22   pieces of evidence. Instead, Defendant's counsel—not Dr. Hagen—determined what

23   materials Dr. Hagen reviewed. *See* Hagen Dep. Tr. 18:14-22. During her deposition,

24   Dr. Hagen testified that she only reviewed the documents that Defendant's counsel

25   sent her. *Id.* She did not request additional documents, and she made no follow-up

26   requests for more information. *Id.*; *see id.* at 19:09-16. Dr. Hagen thus did not review

27   the other documents in this case relevant to Plaintiffs' experiences and injuries,

28

-4-

including Plaintiffs' respective sworn testimony that was admitted in their asylum case, the extensive record of what Defendant did to separated families like the Arredondos, any pleadings from this case, notes or transcripts of Plaintiffs' various interviews, or any of the many other factual records produced in discovery.

Dr. Hagen also failed to conduct, or rely on, any significant academic research for her Rebuttal Reports, including any research on the vocational harms that may arise from a family separation[2] like the one that Plaintiffs experienced or from the mental conditions that Plaintiffs suffer from, including PTSD. In fact, she merely assumed that the two plaintiffs did not suffer from PTSD because Defendant's other proposed expert, Bennett Williamson ("Dr. Williamson"), told her so. Thus, she was wholly unprepared to make educated assessments about how Plaintiffs' mental injuries, including PTSD, would impact their earning capacity and vocational potential. For example, during her deposition, Dr. Hagen could not answer whether experts in her field had observed a negative correlation between depression or traumatic stress and earnings capacity. *See* Hagen Dep. Tr. 114:23-115:10; 116:06-21.

Finally, further evidencing her inadequate preparation, despite relying on his conclusions, Dr. Hagen <u>failed</u> to review the reports of Defendant's own psychologist expert witness, Dr. Williamson. *See* Arredondo Rebuttal Report at 1; A.F.A.J. Rebuttal Report at 1. Dr. Hagen stated that she was told that Dr. Williamson's report had not been written by the time Dr. Hagen needed to submit her own report (even though the reports were produced on the same date), so she instead had an eight-minute phone call with Dr. Williamson to hear his opinions regarding both Plaintiffs.

---

[2] Plaintiffs presented significant evidence showing how numerous entities, including government officials, members of Congress, and private organizations, explained and warned Defendant about the traumatic harm family separation causes its victims. *See, e.g.*, *Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment* at 2-3, Dkt. No. 114-1. Dr. Hagen did not review any of this evidence.

-5-

1   Hagen Dep. Tr. 113:03-04. Dr. Hagen acknowledged during her deposition that Dr.
2   Williamson's report could contain information that would cause her to change the
3   conclusions in her report. *Id.* at 113:05-12. Nevertheless, she did not make an
4   attempt to obtain and read it at any point after it was authored. *Id.* at 22:08-13.

5        Despite failing to review key pieces of evidence, Dr. Hagen made sweeping
6   statements about what the evidence in the case *purports* to show. For example, in
7   the Arredondo Rebuttal Report, Dr. Hagen disagrees with Mr. Lieberman's opinion
8   that Mr. Arredondo's PTSD will prevent Mr. Arredondo from seeking higher-paying
9   employment, claiming that "[t]here is no evidence of [Mr. Arredondo] being harmed
10  financially by his experience at the border." Arredondo Rebuttal Report at 5. Not
11  having made a complete review of "the evidence," however, Dr. Hagen is not
12  positioned to opine in this manner. Similarly, in the A.F.A.J. Rebuttal Report, Dr.
13  Hagen purports to opine that A.F.A.J. could "begin Community College with ESL
14  classes . . . which will improve her future earning capacity," without any reference
15  to a method or principle to support her assertion. She simply says: "[t]here is no
16  reason [A.F.A.J.] would not be able to pursue a college education if given
17  encouragement and guidance." A.F.A.J. Rebuttal Report at 6. These unsupported
18  generalizations are not proper expert testimony.

19       Dr. Hagen could not have made such statements had she actually reviewed all
20  of the relevant evidence, especially the evidence pertaining to the impact of the
21  injuries Plaintiffs sustained due to their forced separation at the border and
22  subsequent detentions. At a minimum, Dr. Hagen should have reviewed: (i)
23  Plaintiffs' prior sworn testimony; and (ii) the extensive body of recognized authority
24  from the field of vocational rehabilitation regarding the relationship between
25  negative mental conditions, including PTSD, and a person's earning capacity and
26  vocational potential. Yet Dr. Hagen did <u>not</u> review any of these. Instead, she simply
27  relied on Defendant's counsel to decide for her what documents she should review

28

-6-

and conducted little, if any, independent research. In short, Dr. Hagen did not possess the knowledge and information needed to justify the broad conclusions she included in the Rebuttal Reports.

  **B.**  **The Rebuttal Reports Are Not a Product of Reliable Principles or Methods**

    1.  <u>Dr. Hagen Fails to Show That She Properly Applied Her Professional Experience or Reliable Principles or Methods to Reach Her Conclusions</u>

  To be admissible, the expert's testimony must be "the product of reliable principles and methods, and the expert must appl[y] the principles and methods reliably to the facts of the case." *Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*, 21-05262, 2023 WL 6194385, at *1 (C.D. Cal. Sept. 7, 2023) (citation and internal quotation marks omitted). To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* (citation and internal quotation marks omitted). And where the witness "rel[ies] solely or primarily on experience, . . . witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

  The Rebuttal Reports simply do <u>not</u> reflect that Dr. Hagen properly applied her professional experience or reliable principles or methods to reach her conclusions. Her reports are from the "because I said so" school of expert opinion— which violates the Federal Rules of Evidence. Prior to writing the Rebuttal Reports, Dr. Hagen did not review any authorities or literature from her field except for the *single* study she cites only in the A.F.A.J. Rebuttal Report regarding the relationship between parental educational levels and child educational outcomes. *See* A.F.A.J.

1  Rebuttal Report at 4; *see also* A.F.A.J. Rebuttal Report, Exhibit 1; Hagen Dep. Tr.
2  at 19:17-20:01 (Dr. Hagen agreeing with the statement that all the documents she
3  reviewed are either listed in the "Documents Reviewed" section of the Rebuttal
4  Reports or attached as exhibits). Accordingly, the Rebuttal Reports generally lack
5  citations to testable methodology, peer-reviewed studies, or other authoritative
6  sources showing that Dr. Hagen used generally accepted practices to derive her
7  conclusions. Instead, her opinions are admittedly off the top of her head: the Rebuttal
8  Reports are based purely on her review of portions of each Plaintiff's case file, which
9  Defendant's counsel had selected and provided. *See, e.g.*, Hagen Dep. Tr. 62:02-09;
10  87:07-10; 121:10-25; 126:14-127:03; 133:01-10; 166:23-167:01; 171:13-19.

11      Because Dr. Hagen failed to properly to apply her professional experience or
12  a reliable method or principle when writing the Rebuttal Reports, the conclusions
13  therein are unreliable. For example, in the Mr. Arredondo Rebuttal Report, Dr.
14  Hagen states that Mr. Arredondo's current earning capacity is at the 25th percentile
15  of wages for workers in the category of Maintenance and Repair Workers.
16  Arredondo Rebuttal Report at 5-6. She anecdotally bases this opinion on Mr.
17  Arredondo's work history, level of English-speaking ability, and lack of high school
18  diploma. *Id.* Dr. Hagen does not explain what principle or methodology supports the
19  finding that those three characteristics justify assessing Mr. Arredondo's earning
20  potential at the 25th percentile. She expects to be believed because she said so. She
21  fails to provide any sources or citations showing that the unidentified reasoning she
22  used to reach this conclusion is reliable and generally accepted. She does not explain
23  her exclusion of other relevant factors, including Mr. Arredondo's extensive
24  experience in construction, his current skillset, or his strong work ethic. Thus, there
25  is simply no way of knowing whether Dr. Hagen's assessment of Mr. Arredondo's
26  earning potential has any validity.

27
28

-8-

1    As another example, in the A.F.A.J. Rebuttal Report, Dr. Hagen states that

2    Mr. Lieberman's opinion that "A.F.A.J. will have low earnings due to her experience

3    at the border . . . ignores other factors that affect her potential future earnings."

4    A.F.A.J. Rebuttal Report at 5. The factors Mr. Lieberman allegedly ignored include

5    A.F.A.J. not yet having any vocational skills and not yet graduating high school. *Id.*

6    Mr. Lieberman, however, used a specific methodology—the PEEDS-RAPEL

7    methodology—to form his opinion. PEEDS-RAPEL is a method specifically

8    designed to evaluate the earnings capacity "where the plaintiff is of a young age and

9    their academic, work and earnings history may not yet be firmly established." Mark

10   Lieberman, *Employability Assessment Andrea Fernanda Arredondo* at 7 (Dec. 22,

11   2023). Dr. Hagen's assertion disregards that Mr. Lieberman's methodology

12   considers the very factors she identifies as "ignored." It is almost as if she did not

13   actually read the Lieberman Report. To the extent her assertion could be construed

14   as an attack of the PEEDS-RAPEL methodology, Dr. Hagen fails to provide any

15   sources or citations showing that the factors she identified are relevant to, but

16   excluded from, the PEEDS-RAPEL methodology or that those factors were not

17   properly considered in Mr. Lieberman's application of that methodology. Instead,

18   she simply states that the factors are relevant and that Mr. Lieberman failed to take

19   them into account. These naked assertions do not satisfy Federal Rule of Evidence

20   702.

21   The Rebuttal Reports are replete with unsupported conclusions based on

22   unexplained methods and unjustified reasoning. Because the reports fail to

23   demonstrate that their conclusions were properly derived using trustworthy

24   techniques, the Court should exclude them.

25

26

27

28

-9-

1      2.      <u>Dr. Hagen Did Not Consider All Evidence She Reviewed and,</u>
2              <u>Instead, Only Considered the Evidence Favorable to</u>
3              <u>Defendant's Position</u>

4      "[C]ourts have consistently excluded expert testimony that 'cherry-picks'
5    relevant data." *EEOC v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015) (collecting
6    cases). Conclusions based on "rejecting or ignoring the great weight of the evidence
7    that contradicts [the expert's] conclusion" are inadmissible because such
8    conclusions "do[] not reflect scientific knowledge, [are] not derived by the scientific
9    method, and [are] not 'good science.'" *See In re Bextra & Celebrex Mktg. Sales*
10   *Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007).

11      Dr. Hagen's opinion that Mr. Lieberman should not have treated Plaintiffs as
12   having a cognitive disability is based on impermissible cherry-picking. In the
13   Arredondo Rebuttal Report, Dr. Hagen disagrees "with Mr. Lieberman describing
14   Mr. Arredondo as having a cognitive disability." Arredondo Rebuttal Report at 5.
15   Dr. Hagen notes that Mr. Lieberman had written that "Mr. Arredondo's issues due
16   to his PTSD would be consistent with the category of Cognitive Disability," and she
17   objects to this assessment based solely on the fact that Dr. Williamson told her that
18   "Mr. Arredondo does not meet the criteria for a diagnosis of PTSD nor a cognitive
19   disorder." *Id.* Similarly, in A.F.A.J.'s Rebuttal Report, Dr. Hagen disagrees with Mr.
20   Lieberman's treatment of A.F.A.J. as having a cognitive disability because, during
21   their eight-minute conversation, "Dr. Williamson related to me that she does not
22   have a cognitive disorder." A.F.A.J. Rebuttal Report at 5-6.

23      However, Dr. Hagen fails to mention or consider that multiple mental health
24   professionals—including Dr. Kristin Samuelson, Dr. Amy Cohen (a Board-certified
25   psychiatrist), and Mr. Genaro Rodriguez (a licensed therapist)—had independently
26   concluded that one or both Plaintiffs displayed symptoms consistent with PTSD. *See*
27   Kristin W. Samuelson, *Forensic Psychological Evaluation of Andrea Fernanda*

28

-10-

*Arredondo Jerez* at 22 (Dec. 22, 2023); Kristin W. Samuelson, *Forensic Psychological Evaluation of Fernando Arredondo* at 16 (Dec. 22, 2023); Genaro Rodriguez, *Psychological Evaluation of Andrea Fernando Arredondo Jerez* at 3 (June 2, 2020); Amy J. Cohen, *Psychological Evaluation of Esvin Fernando Arredondo Rodriguez* at 12 (June 20, 2020).

Dr. Hagen was well aware of these other psychologists' conclusions; she listed their reports in the "Documents Reviewed" sections of the Rebuttal Reports. Arredondo Rebuttal Report at 1; A.F.A.J. Rebuttal Report at 1. And the conclusions were clearly relevant to the issue at hand; they relate directly to Mr. Lieberman's conclusion that Plaintiffs suffered from symptoms of PTSD, which qualify as a cognitive disability. The Rebuttal Reports nevertheless fail to acknowledge, let alone justify, the omission of these opposing opinions.

In fact, rather than engaging with the fact that multiple medical professionals had determined that Plaintiffs suffer from symptoms of PTSD, Dr. Hagen instead obfuscates this fact. Dr. Hagen writes in the Rebuttal Reports that Mr. Lieberman lacked a valid basis to treat Plaintiffs as having a cognitive disability because no psychologist or therapist had diagnosed them as such. Arredondo Rebuttal Report at 5; A.F.A.J. Rebuttal Report at 5. She ignores, however, that Mr. Lieberman clearly stated that the term "cognitive disability" "do[es] not represent any medically defined definition of disability." Mark Lieberman, *Employability Assessment Esvin Fernando Arredondo Rodriguez* at 17 (Dec. 22, 2023). Instead, the term is defined in the American Community Survey and means "serious difficulty concentrating, remembering, or making decisions because of a physical, mental, or emotional condition." *Id.* And Mr. Lieberman assessed Mr. Arredondo and A.F.A.J. as having a cognitive disability based on the multiple mental health professionals' conclusions that Plaintiffs suffered cognitive impairments consistent with PTSD, including severe difficulties with concentrating. *See* Mark Lieberman, *Employability*

-11-

*Assessment Esvin Fernando Arredondo Rodriguez* at 12 (Dec. 22, 2023); Mark Lieberman, *Employability Assessment Andrea Fernanda Arredondo* at 6 (Dec. 22, 2023). Thus, Dr. Hagen's statement that no psychologist had diagnosed either Plaintiff with a cognitive disability confuses Mr. Lieberman's use of the term "cognitive disability" with a medical diagnosis and wrongly implies that no qualified persons have found that Plaintiffs suffer from serious cognitive impairments.

In short, Dr. Hagen's selective and argumentative use of the evidence renders her opinion on Plaintiffs' cognitive disability inadmissible. Her refusal to engage with facts unfavorable to Defendant supports that she wrote the Rebuttal Reports to support a specific, predetermined conclusion—that Plaintiffs' did not have any cognitive disabilities—and chose to only present facts supporting that conclusion. Such cherry-picking produces unreliable opinions and justifies excluding Dr. Hagen's testimony on this issue.

## IV.   CONCLUSION

Dr. Hagen's reports, opinions, and testimony should be excluded under Federal Rule of Evidence 702: they are not based on sufficient facts or data, are not the product of reliable methodologies, and do not reflect the reliable application of methodology to the facts in issue. We respectfully request that the Court exclude Dr. Hagen's reports, opinions, and testimony in their entirety.

Dated: <u>March 8, 2024</u>          Respectfully Submitted,

**MILBANK LLP**

By: <u>*/s/ Linda Dakin-Grimm*</u>
Linda Dakin-Grimm (State Bar #119630)
LDakin-grimm@milbank.com

-12-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
Samir L. Vora (State Bar #253772)
SVora@milbank.com
Marina Markarian (State Bar #340686)
MMarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: 424-386-4000
Facsimile: 213-629-5063

Elizabeth Hamilton, *pro hac vice*
EHamilton@milbank.com
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

Julie Wolf, *pro hac vice*
JWolf@milbank.com
Julia Duke, *pro hac vice*
JDuke@milbank.com
Riah Kim, *pro hac vice*
RKim2@milbank.com
Victoria Colbert, *pro hac vice*
VColbert@milbank.com
Jonghyun Lee, *pro hac vice*
JLee7@milbank.com
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: 202-835-7500
Facsimile: 202-263-7586

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

-13-

## Certificate of Compliance Pursuant to L.R. 11-6/2

The undersigned, counsel of record for Plaintiffs Esvin Fernando Arredondo Rodriguez and A.F.A.J. certifies that this brief contains 3,589 words, which complies with the word limit of L.R. 11-6.1

Dated: March 6, 2024                              By:  /s/ *Jonghyun Lee*
                                                          Jonghyun Lee

-14-