E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
CHRISTINA A. MARQUEZ (Cal. Bar No. 305301)
DAVID PINCHAS (Cal. Bar No. 130751)
Assistant United States Attorneys
Federal Building, Suite 7516
   300 North Los Angeles Street
   Los Angeles, California 90012
   Telephone: (213) 894-4061/2920
   Facsimile: (213) 894-7819
   E-mail: Christina.Marquez@usdoj.gov
   E-mail: David.Pinchas@usdoj.gov

Attorneys for Federal Defendant
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Esvin Fernando Arredondo Rodriguez, individually and A.F.A.J., a minor, by her guardian ad litem, Jeffrey Hamilton,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:22-cv-02845-JLS-AFM<br><br>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY AND REPORT OF VOCATIONAL EXPERT DR. JUNE HAGEN; DECLARATION OF DAVID PINCHAS<br><br>Hearing Date: March 29, 2024<br>Time: 10:30 a.m.<br><br><br>Honorable Josephine Staton<br>United States District Judge |

# MEMORANDUM OF POINTS AND AUTHORITES

## I. INTRODUCTION

Dr. June Hagen, Ph.D., M.E.C., C.D.M.S., A.B.V.E., is a vocational expert with licensing/certifications by the American Board of Vocational Experts, the Social Security Administration, and the California Division of Workers' Compensation. *See* Dr. Hagen's CV, attached as Exhibit 1 to the declaration of Assistant United States Attorney David Pinchas. Dr. Hagen has testified thousands of times as a vocational expert for the Social Security Administration in the past 30 years, and continues to testify in that capacity. *Id.*

The United States has designated Dr. Hagen as Defendant's rebuttal vocational expert to the findings and opinions of Mr. Lieberman, Plaintiffs' vocational expert. As explained below, Dr. Hagen pointed out a number of material facts that Plaintiff's vocational expert, Mr. Lieberman, had failed to consider, and in *his* deposition, Mr. Lieberman agreed with many of Dr. Hagen's points and, in some cases, limited his opinions accordingly. As explained below, Mr. Lieberman claims that but-for the government treatment Plaintiff Esvin Arredondo received, Plaintiff Fernando Arredondo could have reached the 75th percentile earning level in construction in the United States, even though he has no verifiable significant construction experience, does not speak English, is now 49, and has only a sixth grade education. In addition, Mr. Lieberman claims that Plaintiff AFAJ, who is still in high school and who told him at one point that she wanted to go to college, will never rise above the level of working as a cleaning woman or fast food worker. Moreover, the controversial methodology that Mr. Lieberman uses to attempt to quantify Plaintiffs' claimed economic losses does not even require a medical or psychological diagnosis by a competent professional.

Furthermore, to the extent that Plaintiffs claim that Dr. Hagen did not consider enough material in forming her rebuttal opinions, the strength of her opinion goes to the weight of such opinions, not their admissibility. *See Quidel Corp. v. Siemens Med Solutions USA, Inc.*, 2019 WL 4727939 at * 4 (S.D. Cal. Sept. 27, 2019) (dispute as to

1

lack of textual authority goes to weight, not admissibility of expert's opinion). Therefore, Plaintiff's *Daubert* Motion should be denied.[1]

## II. ARGUMENT

### A. Plaintiffs' Motion Relies on Conclusory and Unsupported Arguments by Counsel

In their Motion to exclude Dr. Hagen, Plaintiffs' counsel Linda-Dakin Grimm—, who neither attended Dr. Hagen's deposition, nor reviewed the transcript of that deposition—makes a number of conclusory allegations against Dr. Hagen, without support in the record. Motion at 1 & n. 1; Pinchas declaration ¶ 3. For example, Ms. Dakin-Grimm alleges, without any citation to the transcript, that Dr. Hagen "admitted that she did not rely on methods or principles." *Ibid*. Ms. Dakin-Grimm's allegation is incorrect on this point. *See* Transcript of February 15, 2024 Hagen deposition at 26:1-18 (Exhibit 2 to Pinchas declaration).

Next, Plaintiffs complain that Dr. Hagen reviewed too few documents. *See* Motion at 4. In fact, Dr. Hagen reviewed both Plaintiffs' depositions to form her opinion, in contrast with Plaintiffs' expert, Mr. Lieberman, who did not review these depositions until *after* he submitted his initial expert reports. *See* Plaintiffs' exhibits A and B (containing the list of documents Mr. Lieberman reviewed). In other words, Mr. Lieberman formed and disclosed his opinions as a retained expert for the Plaintiffs without even reviewing their deposition testimony, unlike Dr. Hagen. Dr. Hagen was provided all documents produced in this action concerning Plaintiff Fernando Arredondo's work and salary history, psychological reports, and the initial reports of Mr. Lieberman and Plaintiffs' psychologist expert, Dr. Samuelson. *See* Rebuttal Reports of Dr. Hagen, Exhibits C and D (Dkt # 147).

---

[1] Defendant reiterates its objections to Plaintiffs' untimely attempt to amend their *Daubert* motions. *See* Dkt # 159. Plaintiffs finally shared their unredacted amended motion papers on March 11, 2024 at approximately 6 p.m. *See* attached Pinchas declaration at paragraph 6.

2

1  On the other hand, Mr. Lieberman was provided by Plaintiffs' counsel with
2  Plaintiffs' asylum declarations, which were prepared and submitted by their litigation
3  counsel—Ms. Dakin-Grimm—and which reiterates her partisan claims.  Plaintiffs appear
4  to argue, again without support, that Dr. Hagen should have reviewed any other
5  documents in this case that might have been submitted by Plaintiffs' counsel.  Motion at
6  4.  That is not the standard for a *Daubert* motion, however, which centers on expert
7  testimony that is useful to the trier of fact. Similarly, Plaintiffs fault Dr. Hagen for not
8  conducting significant academic research on the vocational harms that might arise from
9  family separation.  *Id.* at 5.

10  Even Plaintiff's own expert, Mr. Lieberman, testified in his deposition that such
11  materials "really wasn't a part of what I look at as a vocational rehabilitation
12  counselor….I'm looking at how they're functioning now and how they're likely to
13  function in the future, not what caused them to function the way they are."  Transcript of
14  February 9, 2023 deposition of Mark Lieberman at 10:1-11 (Exhibit 3 to Pinchas
15  declaration).   Thus, Plaintiffs are in the strange position of insisting that *Daubert*
16  requires more of Dr. Hagen—a rebuttal expert—than from their own expert whose
17  claims Dr. Hagen is rebutting as to how the Plaintiffs are likely to function in the future.

18  Plaintiff also faults Dr. Hagen for not conducting research on ▮▮▮▮ but in this
19  case, there is a dispute between the two psychological experts for the parties, Dr.
20  Samuelson for the Plaintiffs, and Dr. Williamson for the Defendant, as to whether this
21  diagnosis even applies to Plaintiffs.  Motion at 5.  Although Dr. Hagen has a doctorate in
22  psychology, *see* Exhibit 1 hereto, she was never designated to diagnose whether the
23  Plaintiffs suffered from ▮▮▮▮ caused by the separation.  Dr. Hagen has testified that she
24  has no opinion whether Plaintiffs have ▮▮▮▮.  Hagen transcript at 110:1-10.  Rather, she
25  considered the symptoms of each Plaintiff in rendering her opinions regarding the
26  validity of Mr. Lieberman's vocational analysis.  *Id.* 149:9-17. As a vocational expert,
27  Dr. Hagen could certainly obtain and consider information about the severity of
28  Plaintiffs' symptoms from the psychological reports of the experts and the Plaintiffs'

1 own recent deposition testimony; she was not required to independently test them.

2 Again, Mr. Lieberman did not review Plaintiff's deposition testimony prior to
3 submitting his initial report. Mr. Lieberman's opinion relies almost exclusively on
4 accepting the disputed diagnosis of ▇ as an operating assumption for his analysis
5 (since Mr. Lieberman did not conduct any testing of his own on that subject, and he has
6 no qualification to do that in any event). *See* Plaintiffs' Exhibit B, Lieberman
7 Employability Assessment for AFAJ at 13, 15; Plaintiffs' Exhibit A, Lieberman
8 Employability Assessment for Fernando Arredondo at 17.

9       **B. Dr. Hagen Raised Appropriate Rebuttal Facts Regarding Mr.**
10             **Lieberman's Assessment of Plaintiff Arredondo**

11 As a rebuttal expert, Dr. Hagen can testify as to the flaws that she believed are
12 inherent in Mr. Lieberman's report insofar as it assumes or ignores certain facts. *See*
13 *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at * 5 (S.D.
14 Fla. June 8, 2011) (citation omitted). Thus, a rebuttal expert may "testify that, while [the
15 expert's] report implicitly assumes (or erroneously fails to consider) facts X, Y, and Z,
16 [the expert's] analysis is seriously flawed if the jury does not accept X, Y, and Z as true."
17 *Id.* That is what Dr. Hagen did in this case.

18 In opining that Plaintiff Fernando Arredondo did not appear to have been harmed
19 *financially* by his experience at the border, Dr. Hagen explained that the record
20 established that he had improved his employment from unskilled to skilled, full-time
21 employment, despite that fact that he does not speak English and has only a sixth-grade
22 education. Hagen deposition transcript at 78:79:1.

23 Plaintiffs incorrectly claim that Dr. Hagen had no basis for her opinion that Mr.
24 Arredondo's current earning capacity is at the 25th percentile for maintenance workers .
25 *See* Motion at 8. Dr. Hagen actually opined that Plaintiff Arredondo *was* working at that
26 level. Hagen Rebuttal Report re Mr. Arredondo at 5-6. Plaintiffs also overlook the fact
27 that Dr. Hagen was relying on the same classification of job evidence that Mr.
28 Lieberman used in his report: the Department of Labor's Dictionary of Occupation

4

1  Titles, and the Bureau of Labor Statistics, as well as job postings mentioned in her
2  report, which were provided to Plaintiffs' counsel.  *See* Hagen transcript at 121:19-
3  123:18.
4       Plaintiffs also fault Dr. Hagen for not considering Mr. Arredondo's alleged
5  "extensive experience in construction" and putative "skill set." Motion at 8.  But Mr.
6  Lieberman admits that he has no "objective metric" to claim that Mr. Arredondo's
7  experience in construction was in fact extensive.  *See* Lieberman deposition transcript at
8  40:6-17.  Indeed, Mr. Lieberman's deposition testimony establishes that he did not ask
9  Mr. Arredondo even the most basic questions about his putative construction
10 background.  *See Id.* 44:3-51:22.  Thus, Dr. Hagen's criticism of Mr. Lieberman on this
11 point was not only correct, but was in fact understated.  Thus, there is and was no clear
12 evidence of any relevant skill set or experience in construction for either Dr. Hagen or
13 Mr. Lieberman to have considered in their reports.
14      Dr. Hagen also questioned whether Mr. Arredondo would be qualified to earn a
15 salary at the 75th percentile in construction, given that he had not been trained to work in
16 compliance with U.S. or California regulations, and that he had worked as a taxi driver
17 in Guatemala from 2010 to 2018—*not construction*—before he came to this country in
18 2018.  Hagen rebuttal report re Fernando Arredondo at 3-4.
19      Dr. Hagen also properly took issue with Mr. Lieberman's opinion that Mr.
20 Arredondo could join a union, *see* Lieberman employment assessment for Mr.
21 Arredondo at 11, given the requirements for joining a union.  *See* Hagen rebuttal report
22 re Mr. Arredondo at 4.  In fact, Mr. Lieberman admitted in his deposition that Mr.
23 Arredondo could not join a union because he "doesn't have a GED or a high school
24 diploma so it's a moot point. He wouldn't have been able to even apply." Lieberman
25 deposition transcript at 60:5-7; 58:1-59:25.   Furthermore, Mr. Lieberman did not use
26 *any* construction position for his calculations of any type of loss because "it would be
27 speculative to try to pick out exactly what occupation he would have been doing if not
28 but for issues related to" his separation.  Lieberman deposition transcript at 43:1-19;

5

77:16-23.

Dr. Hagen also properly rebutted Mr. Lieberman's opinion that Mr. Arredondo lacks the mental energy to secure a job within the construction industry, because Mr. Arredondo already demonstrated that he improved his financial situation by leaving his warehouse job to start work in construction but then acquired a full-time skilled job with a better salary. Hagen Rebuttal Report re Mr. Arredondo at 5. In other words, Mr. Arredondo had worked in construction, but he was able to get a better salary doing other work.

Dr. Hagen also noted that persons like Mr. Arredondo with less than a high school education have a higher unemployment rate (5.5%), which Mr. Lieberman did not consider. *Id.* at 6. Mr. Lieberman admits that he did not consider these basic issues because of his rigid reliance on the discredited census data that is described *infra*. *See* Lieberman deposition at 95:11-25.

### C. Dr. Hagen Raised Appropriate Rebuttal Facts Regarding Mr. Lieberman's Assessment of Plaintiff AFAJ

Mr. Lieberman opines that Plaintiff AFAJ would not "be vocationally marketable above basic service industry positions such as fast food or cleaning." Lieberman deposition transcript at 114:9-17. He rendered this opinion even though he admits that AFAJ will likely graduate from high school and that he was able to conduct his interview of her entirely in English. *Id.* at 97:9-20; Lieberman Employability Assessment of AFAJ at 8. He also made this conclusion in the absence of any physical, educational, cognitive, or intellectual assessments. *See* Lieberman deposition transcript at 124:1-16. Accordingly, Dr. Hagen properly found that Mr. Lieberman's opinions were too speculative. Hagen Rebuttal Report re AFAJ at 4.

With respect to Plaintiffs' criticism of Dr. Hagen's view that Plaintiff AFAJ could attend at least some college when she graduates from high school, AFAJ told Dr. Lieberman, at one point, that "she would like to attend college." Lieberman deposition transcript at 104:6-21. However, Mr. Lieberman omitted this important detail in his

1  expert report.   Mr. Lieberman also testified that it is possible that AJAJ will attend at
2  least some college. *Id.* 116:18-117:9. Far from identifying a legitimate criticism of Dr.
3  Hagen's opinion, this is a serious defect in Mr. Lieberman's opinion.
4        Plaintiffs also accuse Dr. Hagen of ignoring the so-called PEEDS-RAPEL factors.
5  Motion at 9.  In the first place, Mr. Lieberman has admitted that, as to the weight he
6  assigns these factors, "there's no objective metric.  It's totally subjective in nature."
7  Lieberman deposition transcript at 143:17-21.  In addition, Dr. Hagen did not ignore
8  these factors.  With respect to Mr. Lieberman's "Rehabilitation Plan," that AFAJ go to a
9  guidance counselor to discuss her post-secondary school plans, Dr. Hagen made the
10 same recommendation in her report, Hagen Rebuttal Report re AFAJ at 6, but she also
11 noted that, given that Mr. Lieberman believes she will never function at the level of a
12 high school graduate, it was unclear what Lieberman thought this would accomplish.
13 *Id.* at 4.
14       Dr. Hagen disagrees with this prediction as to AFAJ's educational goals, because,
15 despite experiencing trauma in Guatemala due to the death of her brother and her
16 separation from her father, "she has attended school in a new country, earned grades that
17 started out good, went down for a couple years, and have improved again to where she is
18 obtaining B's and A's."  Hagen rebuttal report re AFAJ at 6.   These are facts that Mr.
19 Lieberman failed to consider in issuing his opinion.  It appears that his view that AFAJ
20 will forever be working as a maid or a fast food worker was influenced by claims made
21 by AFAJ's guardian ad litem Jeffrey Hamilton, who is not a vocational expert.
22 Lieberman transcript at 112:12-113:21.
23       As to AFAJ's parents' occupation and educational attainment, Mr. Lieberman
24 downplays these issues, because they are unrelated to any diagnosis compensable in this
25 case, even though they are preexisting facts that could limit AFAJ's vocational potential
26 in the absence of Dr. Samuelson's diagnosis.  Lieberman report re AFAJ at 13.  But, as
27 Dr. Hagen points out in her rebuttal report, there is a strong correlation between a
28 parent's level of education and employment history and those of their offspring.  Hagen

7

1  rebuttal report re AFAJ at 4 and exhibit thereto. Mr. Lieberman admits this is true.
2  Lieberman deposition at 133:17-134:6.
3       In addition, to the extent Mr. Lieberman suggests that AFAJ's parents "both
4  strongly encourage their children to maximize their studies in school," *Ibid.* at 4-5, Dr.
5  Hagen correctly notes that Mr. Arredondo's father made him quit school after the 6th
6  grade, his wife does not work, and AFAJ's parents did not encourage her to make up the
7  classes in which she was struggling. Hagen rebuttal report re AFAJ at 5. Even
8  Plaintiffs' own expert psychologist, Dr. Samuelson has testified that AFAJ's parents "are
9  not the kind of parents that are going to make her do something." Samuelson deposition
10 transcript at 136:15-16 (Exhibit 4 hereto).

**D.    Dr. Hagen Raised Appropriate Facts in Rebuttal to Mr. Lieberman's Analysis**

Mr. Lieberman relies on the diagnosis of ▇▇▇ throughout much of his reports, but he has admitted in his deposition that no diagnosis of any kind was actually required for his methodology of calculating what he believes to be the lost earning capacity of either Plaintiff. Lieberman deposition transcript at 112:2-11. Furthermore, although Mr. Lieberman repeatedly uses variations of the terms and phrase "cognitive disability" in his reports, neither Dr. Williamson nor Dr. Samuelson ever diagnosed the Plaintiffs with a cognitive disability. *See id.* at 16:24-17:5; Samuelson deposition transcript at 90:2-9.[2]

Rather than using a medical diagnosis, Mr. Lieberman utilized census data, including the American Community Survey ("ACS"), for the basis of his opinions as to the monetary amount of Plaintiff's alleged lost earnings capacity. Lieberman deposition transcript at 112:1-11. The ACS is a self-report survey—meaning it categorizes people pursuant to their own beliefs—and with respect to cognitive disability, it merely asks the person answering the survey whether they have serious difficulty concentrating,

---

[2] Plaintiffs conflate ▇▇▇ with a cognitive disability or impairment without support. *See* Amended Motion at 11.

remembering, or making decisions, without any definition of the term "serious." Lieberman Deposition Transcript at 12:2-11. The ACS gives only two possible answer choices to that question: yes or no. *See* https://www2.census.gov/programs-surveys/acs/about/qbyqfact/Disability.pdf. If the person answers yes to this self-reporting question, under Mr. Lieberman's view, they are reliably considered to be "cognitively disabled." Lieberman deposition at 145:19-22.

Understandably, the Census Bureau is currently considering a change to this particular question on the survey. *See* https://www.census.gov/newsroom/blogs/director/2024/02/next-steps-on-acs-disability-questions.html#:~:text=We're%20also%20proposing%20adding,relate%20to%20the%20disability%20content. Laymen are not normally able to give reliable self-diagnoses as to whether they actually have cognitive disabilities, particularly by answering one "yes-no" question as part of a general survey. That presents a very different type of reliability issue than (for example) self-reporting a person's educational attainment, age, or sex.

On the other hand, Dr. Hagen has noted that Mr. Arredondo was found by his psychologist to be of average to above-average intelligence with no obvious cognitive deficits, and his insight and intelligence were excellent. Hagen Rebuttal Report re Mr. Arredondo at 2. Dr. Hagen also noted that AFAJ's psychologist found her intellectual functioning and memory were unimpaired and that her thought process and judgment were intact. Hagen Rebuttal Report re AFAJ at 6. Dr. Samuelson did not observe any cognitive deficiencies in either Plaintiff. Samuelson deposition at 74:1-15; 76:1-13, 88:1-25. Yet Mr. Lieberman failed to consider such basic reliability issues by rigidly relying instead on Plaintiff AFAJ's self-reported response to the ACS.

As Dr. Hagen noted in her deposition, the ACS has been the subject of academic criticism. Hagen deposition at 172:11-173: 25 (citing *Longitudinal Critique of the American Community Survey as a Valid Instrument for Estimating Future Earning Capacity*, Journal of Forensic Vocational Analysis 21(2) pp. 5-22 found at: https://www.memphis.edu/umid/pdfs/j.f.v.a.outcome-based-perspectives-2022.pdf,

9

which established that some persons who self-reported as having a cognitive disability on the ACS made *more* in salary than those that did not).

To the extent Plaintiffs claim that Dr. Hagen's opinions are unreliable, the test of reliability is flexible and can be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). As a rebuttal witness, Dr. Hagen was not required to conduct independent alternative methodologies that could have been applied instead, because that is not Defendant's burden in this case. *See Ringcentral, Inc. v. Nextiva, Inc.*, 2021 WL 1271869, at * 4 (N.D. Cal. June 25, 2021).

### III. CONCLUSION

For all the above reasons, Defendant requests that the Court deny Plaintiff's Motion to exclude Dr. Hagen as an expert in this case.

Dated: March 12, 2024        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

  /s/  David Pinchas
DAVID PINCHAS
Assistant United States Attorney

Attorneys for Federal Defendant
United States of America

Certification of Compliance with Local Rule 11-6.2

The undesigned counsel of record for Defendant certifies that this brief contains 3,140 words, which complies with the word limit of Local Rule 11.6.1

  /s/ David Pinchas
DAVID PINCHAS

**DECLARATION OF DAVID PINCHAS**

I, David Pinchas, do hereby declare and state as follows:

1. I am an Assistant United States Attorney for the Central District of California, and I have been assigned to the defense of this action along with Assistant United States Attorney Christina Marquez. If called upon, I would and could testify as to the following facts from my personal knowledge.

2. Attached hereto as Exhibit 1 is a copy of Dr. June Hagen's CV. I received this document from Dr. Hagen.

3. Attached hereto as Exhibit 2 are true copies of pages from the deposition of Dr. Hagen. I defended this deposition but Plaintiff's counsel Linda Dakin-Grimm was not present. I received these documents from the court reporter.

4. Attached hereto as Exhibit 3 are true copies of pages from the deposition of Mark Lieberman. I took this deposition and I received these documents from the court reporter.

5, Attached hereto as Exhibit are true copies of pages from the deposition of Dr. Kristen Samuelson. I took this deposition and I received these documents from the court reporter.

6. On March 11, 2024, at approximately 6:00 p.m. P.S.T., Plaintiffs' counsel finally provided my office with unredacted copies of their Amended Motions and additional exhibits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of March, 2024, at Los Angeles, California.

/s/ David Pinchas
DAVID PINCHAS

11