1

2   MILBANK LLP
Linda Dakin-Grimm (State Bar #119630)
3   Mark Shinderman (State Bar #136644)
Samir L. Vora (State Bar #253772)
4   2029 Century Park East, 33rd Floor
Los Angeles, CA  90067
5   Telephone: (213) 892-4404
Facsimile: (213) 629-5063
6   Email: Ldakin-grimm@milbank.com

7   *Additional counsel listed on signature page

8   *Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and A.F.A.J.
9

10

11                  **UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
12                          **WESTERN DIVISION**

13

14   ESVIN FERNANDO ARREDONDO
RODRIGUEZ, an individual,  AND
15   A.F.A.J., a minor, BY HER GUARDIAN      Case No.: CV 22-02845-JLS-JC
*AD LITEM*, JEFFREY HAMILTON,
16                                          **PLAINTIFFS' REPLY IN**
**SUPPORT OF THEIR AMENDED**
17              Plaintiffs,                 **MOTION TO EXCLUDE**
**TESTIMONY AND REPORT OF**
18        v.                               **PROPOSED EXPERT JUNE**
**HAGEN [*DAUBERT*]**
19   UNITED STATES OF AMERICA,
                                           **Hearing Date:** March 29, 2024
20              Defendant.                  **Hearing Time:** 10:30 a.m.
**Judge:** Hon. Josephine L. Staton
21                                          **Place:** 8A

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

I.    INTRODUCTION.....................................................................................1

II.   ARGUMENT ...........................................................................................3

      A.    Dr. Hagen's Testimony Is Not Based on Sufficient Facts or
            Data ...............................................................................................3

            1.    Dr. Hagen Admittedly Did Not Review the Vast Majority
                  of Evidence in the Case; Her Broad Conclusions Are
                  Simply Not Supported By a Review of the Evidence. ..............3

            2.    Dr. Hagen's Testimony Is Not Supported By Authority
                  From Her Field. ......................................................................5

      B.    Dr. Hagen Failed to Apply Reliable Principles or Methods to
            Reach Her Conclusions..................................................................7

            1.    Dr. Hagen Did Not Use Reliable Principles or Methods
                  To Reach Her Opinions Regarding Mr. Arredondo. .................7

            2.    Dr. Hagen Did Not Use Any Reliable Principles or
                  Methods To Reach Her Opinions Regarding A.F.A.J..............9

      C.    The Opposition's New Criticisms of Mr. Lieberman's
            Methodology Have No Bearing On the Admissibility of Dr.
            Hagen's Testimony. .....................................................................11

III.  CONCLUSION .......................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*De Freitas v. Hertz Corp.*,

    No. 2:18-cv-01522-JAD-BNW, 2023 WL 3505498 (D. Nev. May

    17, 2023) ....................................................................................................... 3

*Hi Ltd. Partnership v. Winghouse of Florida, Inc.*,

    No. 03–116, 2004 WL 5486964 (M.D. Fla. Oct. 6, 2004) ................................ 9

*Khadera v. ABM Indus.*,

    No. C08-0417RSM, 2011 WL 6813454 (W.D. Wash. Dec. 28,

    2011) ............................................................................................................... 8

*Nuveen Quality Income Mun. Fund Inc. v. Prudential Equity Grp.,*

    *LLC*,

    262 F. App'x 822 (9th Cir. 2008) ................................................................... 5

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry*,

    LLC, No. 09-61490-CIV, 2011 WL 2295269 (S.D. Fla. June 8,

    2011) ........................................................................................................... 7, 8

**Other Authorities**

Federal Rule of Evidence 702 ....................................................................... 2, 8, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Rather than defend the admissibility of the testimony of Defendant's proposed vocational expert, Dr. June Hagen ("Dr. Hagen"), Defendant primarily uses its *Opposition to Plaintiff's Motion to Exclude Testimony and Report of Vocational Expert Dr. June Hagen* (the "Opposition," Dkt. 164) to criticize the testimony of Plaintiffs' vocational expert, Mark Lieberman ("Mr. Lieberman"). The Opposition reiterates Dr. Hagen's purported criticisms against the two expert reports by Mr. Lieberman: the *Employability Assessment of Esvin Fernando Arredondo Rodriguez* (the "Fernando Lieberman Report," Dkt. 147-1) and *Employability Assessment of A.F.A.J* (the "A.F.A.J. Lieberman Report," Dkt. 147-2). Indeed, the Opposition even makes *new* criticisms of Mr. Lieberman that have no bearing on the admissibility of Dr. Hagen's testimony and were not included in either the *Vocational Evaluation and Rebuttal of Plaintiff Employability Assessment re: Esvin Fernando Arredondo Rodriguez* (the "Arredondo Rebuttal Report," Dkt. 147-3) or the *Vocational Evaluation and Rebuttal of Plaintiff Employability Assessment re:* ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (the "A.F.A.J. Rebuttal Report," Dkt. 147-4, and, together with the Arredondo Rebuttal Report, the "Rebuttal Reports"). Defendant has not moved to exclude Mr. Lieberman as an expert in this case. Its criticisms of his work—while false—are offered to distract from what *is* at issue in the pending motion: the disqualifying deficiencies in the work by proposed expert Dr. Hagen, which are largely unaddressed.

The Opposition fails to actually respond to the specific arguments that *Plaintiffs' (Amended) Motion to Exclude Testimony and Report of Proposed Expert June Hagen [Daubert]* (the "Hagen Daubert Motion," Dkt. 146-1, Dkt. 155-1) advances concerning Dr. Hagen's disqualifying deficiencies. The Hagen Daubert Motion establishes that Dr. Hagen's testimony (i) was not based on sufficient facts or data—as Dr. Hagen admittedly did not review most of the evidence available in

-1-

the case before offering her sweeping conclusions—and (ii) was not the product of reliable principles or methods—as Dr. Hagen admitted that she did not reliably apply trustworthy principles and methods to reach her conclusions.  In fact, she did not apply principles and methods at all, instead impermissibly cherry-picking data to support her conclusions.  Because the bases for Dr. Hagen's expert opinions are fundamentally flawed and Defendant—who bears the burden of proving that Dr. Hagen satisfies the requirements of Federal Rule of Evidence 702—does not address the disqualifying deficiencies in the Opposition, the Court should grant the Hagen Daubert Motion.[1]

---

[1] On March 11, 2024, Defendant filed an Objection to Plaintiffs' Amended *Daubert* Motions (the "Objection"). Dkt. 159. In their Objection, Defendant argues (1) that they were prejudiced by the filing of the amended motions; (2) that Plaintiffs should have incurred additional costs to avoid the need for amended motions; and (3) that Plaintiffs created the need for amended motions by failing to plan properly. Each of these arguments is false. *First*, Defendant was not prejudiced. Plaintiffs' initial motions clearly stated that because of the *Daubert* deadline the motions had to be filed prior to the receipt of transcripts, and amended motions with the relevant transcript citations would be filed as soon as practicable. Dkt. 146-1 at 1 n.1; Dkt. 150-1 at 1 n.1. That is precisely what Plaintiffs did. *Second*, Defendant's assertion that to avoid the need to file amended *Daubert* motions, Plaintiffs should have ordered expedited transcripts because Plaintiffs are represented by a "very large and wealthy law firm, Milbank LLC [sic]," Dkt. 159 at 2, ignores that Plaintiffs are represented *pro bono* and are proceeding *in forma pauperis*. Dkt. 9. Defendant's disregard for the costs it attempts to impose on Plaintiffs only serves to create yet another barrier preventing the financially disadvantaged from seeking justice. *Third*, Defendant's argument that Plaintiffs created the need for amended motions by failing to plan ignores that Defendant's proposed experts were not deposed until February 12, and February 16, 2024—the week before the *Daubert* deadline—due to the limited availability of Defendant's experts. Furthermore, Plaintiffs informed Defendant in January that they intended to file *Daubert* motions.

-2-

II.   **ARGUMENT**

    A.   **Dr. Hagen's Testimony Is Not Based on Sufficient Facts or Data**

        1.   Dr. Hagen Admittedly Did Not Review the Vast Majority of Evidence in the Case; Her Broad Conclusions Are Simply Not Supported By a Review of the Evidence.

As explained in the Hagen Daubert Motion, Dr. Hagen failed to review sufficient facts or data to support her sweeping statements about what the evidence in the case purports to show. *See* Hagen Daubert Motion at 3-7. For example, despite having reviewed only six documents, Dr. Hagen opines that "there is no evidence of [Mr. Arredondo] being harmed financially by his experience at the border." Arredondo Rebuttal Report at 5. Similarly, in the A.F.A.J. rebuttal report, Dr. Hagen opines that "[t]here is no reason [A.F.A.J.] would not be able to pursue a college education if given encouragement and guidance." A.F.A.J. Rebuttal Report at 6. Such broad conclusions could not even conceivably be valid *unless* Dr. Hagen had reviewed all the relevant evidence in the case, which she admittedly did not. *See De Freitas v. Hertz Corp.*, No. 2:18-cv-01522-JAD-BNW, 2023 WL 3505498, at *14 (D. Nev. May 17, 2023) (excluding expert rebuttal testimony for not being based on sufficient facts or data because the expert lacked a "full understanding of [victim's] injuries[,]" which was necessary to support the expert's conclusions regarding the injuries).

Defendant's first response to this argument is that Dr. Hagen reviewed the Plaintiffs' depositions, in contrast with Plaintiffs' expert, Mr. Lieberman. Objection at 2. Defendant, however, ignores that, unlike Dr. Hagen, Mr. Lieberman personally interviewed both Plaintiffs himself. *See* Arredondo Lieberman Report at 1; A.F.A.J. Lieberman Report at 1. Furthermore, Defendant fails to engage with Plaintiffs' argument regarding the admissibility of Dr. Hagen's testimony; it does not (and

-3-

cannot) explain how Dr. Hagen's review of adversarial deposition transcripts (but not the other sworn testimony available in the case) sufficiently grounds her sweeping generalizations.

Defendant then suggests that Dr. Hagen did review all the evidence, claiming that "Dr. Hagen was provided all documents produced in this action concerning Plaintiff Fernando Arredondo's work and salary history, psychological reports, and the initial reports of Mr. Lieberman and Plaintiff's psychologist expert, Dr. Samuelson." Objection at 2. This response, however, simply is not true. During her deposition, Dr. Hagen testified that the six documents listed in the "Documents Reviewed" section of her report were "all the files that the government [had] sent [her]" regarding Mr. Arredondo by the time she wrote the Arredondo Rebuttal Report. Hagen Dep. Tr. 18:14-22, Dkt. 156-1. Those six documents (selected by counsel) are not "all" the documents produced in this action concerning Mr. Arredondo's work and psychology. Dr. Hagen never even asked for or received the expert report of Defendant's own proposed psychologist expert, Bennett Williamson ("Dr. Williamson"), even though Dr. Hagen admitted that the conclusions within Dr. Williamson's report could have changed her opinions. *Id.* at 113:5-12. Similarly, Dr. Hagen did not ask for or review the Plaintiffs' respective sworn testimony that was admitted in their asylum case, the record of what Defendant did to separated families like the Plaintiffs, any pleadings from this case, or notes or transcripts of Plaintiffs' various interviews (including Dr. Williamson's notes).

Moreover, as further described in the Hagen Daubert Motion, even though Dr. Hagen claims she looked over the materials listed in the Rebuttal Reports, Dr. Hagen's testimony indicates that she did not review them with adequate care, as her testimony is replete with material factual errors. For example, first, Dr. Hagen opined that Mr. Lieberman ignored certain factors in his analysis of A.F.A.J.'s

-4-

1    earning capacity, but Mr. Lieberman's report explicitly explained how he considered
2    those factors.  *See* Hagen Daubert Motion at 9.  Second, during her deposition, Dr.
3    Hagen adamantly claimed that, during Mr. Lieberman's assessment of A.F.A.J., Mr.
4    Lieberman did not apply the PEEDS factors in the PEEDS-RAPEL test—the method
5    Mr. Lieberman used to measure A.F.A.J.'s vocational potential. When later shown
6    the section of Mr. Lieberman's report where Mr. Lieberman *did* apply the PEEDS
7    factors (Dkt. 147-2 at 8, 9, 13), Dr. Hagen was forced to revise her testimony,
8    admitting that Mr. Lieberman had indeed applied the factors but then contending
9    that he had not developed them fully.[2]  These are just two examples demonstrating
10   Dr. Hagen's unfamiliarity with the very materials she purportedly reviewed.

11        In short, Dr. Hagen failed properly to review even the scant record that
12   Defendant's counsel curated for her.  As a result, Dr. Hagen's broad conclusions
13   about what the evidence purports to show "is unsupported by evidence in the record
14   and is not sufficiently founded on facts."  *See Nuveen Quality Income Mun. Fund*
15   *Inc. v. Prudential Equity Grp., LLC*, 262 F. App'x 822, 824 (9th Cir. 2008) ("An
16   expert opinion is properly excluded where it relies on an assumption that is
17   unsupported by evidence in the record and is not sufficiently founded on facts.").
18   Thus, the court should exclude Dr. Hagen's testimony.

19        2.    Dr. Hagen's Testimony Is Not Supported By Authority From Her
20              Field.

21        Plaintiffs also note in the Hagen Daubert Motion that Dr. Hagen failed to
22   conduct or rely on any academic research to reach the conclusions in her Rebuttal
23   Reports, including any research on the vocational harms that may arise from ███
24   ████████████████████████████████████████████████.  Hagen Daubert
25

26   _____
     [2]  Dr. Hagen did not include her criticism of Mr. Lieberman's purported
27   misapplication of the PEEDS-RAPEL factors in the Rebuttal Reports.
28
PLAINTIFFS' REPLY IN SUPPORT OF THEIR AMENDED MOTION TO EXCLUDE TESTIMONY AND
PROPOSED REPORT OF PROPOSED EXPERT JUNE HAGEN [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1  Motion at 5.  Outside of a single study regarding the relationship between parents'
2  education and their children's life outcomes, the Rebuttal Reports contain <u>no</u>
3  citations or references to literature from her field.  And during her deposition, Dr.
4  Hagen repeatedly affirmed that her conclusions were based *solely* her review of the
5  case file.  *See, e.g.*, Hagen Dep. Tr. 62:2-9, 87:7-10, 121:10-25, 126:14-127:3,
6  133:1-10, 166:23-167:1, 171:13-19.  Because Dr. Hagen did not conduct or review
7  any authority from her field, she was unprepared to make educated assessments
8  about how Plaintiffs' mental injuries would impact their earning capacity.

9     Defendant responds by noting that the parties' psychological experts disagree
10  on ███████████████████████████████████████████████
11  ███████████████████████████  Opposition at 3.  This point
12  is both unresponsive and incorrect.  Rather than assessing Plaintiffs' vocational
13  capacity based on a comprehensive review of the evidence concerning Plaintiffs'
14  symptoms, Dr. Hagen relied *solely on Dr. Williamson's opinion*—which was
15  conveyed to her during an eight-minute phone call—that neither Plaintiff suffered
16  from ████████████████.  *See* Hagen Daubert Motion at 10.  Dr. Hagen
17  failed to acknowledge that multiple highly credentialed mental health
18  professionals—including Dr. Kristin Samuelson, Dr. Amy Cohen (a Board-certified
19  psychiatrist), and Mr. Genaro Rodriguez (a licensed family therapist)—had
20  independently concluded that the ██████████████████████
21  ███.  *Id.* at 10-11.  In other words, Dr. Hagen erroneously *assumed* that Plaintiffs
22  did not suffer from ███████████████ and impermissibly cherry-
23  picked evidence from already cherry-picked documents that supported her pre-
24  determined conclusion.  <u>The Opposition does not address, let alone dispute, that Dr.</u>
25  <u>Hagen engaged in this improper cherry-picking.</u>

-6-

Defendant's response fails to engage with Plaintiffs' specific argument:  the fact that Dr. Hagen's testimony is not supported by research or authority from her field (outside of one study) compounds the deficiency that her opinions are not based on sufficient facts or data.  Defendant has not even tried to defend or justify Dr. Hagen's factual errors and cherry-picking of information favorable to Defendant's position.  As such, the Court should exclude her testimony.

**B.    Dr. Hagen Failed to Apply Reliable Principles or Methods to Reach Her Conclusions**

1.    <u>Dr. Hagen Did Not Use Reliable Principles or Methods To Reach Her Opinions Regarding Mr. Arredondo.</u>

The Arredondo Rebuttal Report does not demonstrate that Dr. Hagen properly applied her professional experience or reliable principles or methods to reach her conclusions.  Indeed, Dr. Hagen applied no principles or methods at all—offering comments about Mr. Lieberman with no support but "because I said so."  For example, Dr. Hagen did not identify any principle, method, or application of her own particular experience to justify her opinion that Mr. Arredondo's current earning capacity is at the 25th percentile of wages for workers in his position.  Absent application of principle or methodology, Dr. Hagen's opinions are unhelpful because the trier of fact cannot know whether and how those factors  are relevant to the case.

In response, Defendant cites an out-of-circuit decision to argue that, as a rebuttal expert, Dr. Hagen is entitled to testify about what facts Mr. Lieberman assumed or failed to consider.  Objection at 4 (citing *Pandora Jewelers 1995, Inc. v. Pandora Jewelry*, LLC, No. 09-61490-CIV, 2011 WL 2295269, at *5 (S.D. Fla. June 8, 2011)).  In essence, Defendant claims this case means that rebuttal experts can simply offer opinions without application of principles or methodology.  The *Pandora* case does not stand for this proposition, but rather, its opposite. *See Pandora*, 2011 WL 2295269, at *1 ("In order to determine the admissibility of

-7-

expert testimony, a district court must consider whether . . . the method employed by the expert is sufficiently reliable[.]").  All experts, affirmative or rebuttal, must prove that they are qualified and their opinions reliable under Federal Rule of Evidence 702.  No experts are allowed to offer their opinions based solely on their own say-so.  Rebuttal experts cannot *simply* identify facts that the opposing expert did not consider (as a lawyer might do); for such testimony to be helpful, rebuttal experts must also, using reliable principles and methods, explain how and why the inclusion or omission of those facts are relevant.  *See Khadera v. ABM Indus.*, No. C08-0417RSM, 2011 WL 6813454, at *3 (W.D. Wash. Dec. 28, 2011) (refusing to exclude affirmative expert's testimony based on rebuttal expert's testimony because the rebuttal expert had failed to explain why the facts the affirmative expert allegedly ignored "would have been relevant" or demonstrate that the opposing expert's "conclusions would have been different in the event he had considered those facts.").

Defendant bizarrely argues that Dr. Hagen did *not* opine that Mr. Arredondo's currently earning capacity is at the 25th percentile, but only that Mr. Arredondo "was working at that level [currently]."  Opposition at 4.  This is patently false.  The Arredondo Rebuttal Report makes the affirmative claim that the 25% percentile "is appropriate" for Mr. Arredondo considering his work history, English-speaking ability, and education. *See* Arredondo Rebuttal Report at 5-6.  As the very case cited by Defendant provides, when rebuttal experts provide specific, affirmative conclusions—which Dr. Hagen did here—such conclusions must be derived using "sound methodology." *See Pandora*, 2011 WL 2295269, at *6 (noting that the District Court for the Middle District of Florida had previously excluded expert rebuttal testimony for failing to provide a sound methodology to support the rebuttal expert's affirmative conclusion that no more than 10% of the defendant's profit were attributable to the factors the opposing expert identified (citing *Hi Ltd. Partnership*

1    *v. Winghouse of Florida, Inc.*, No. 03–116, 2004 WL 5486964, at *1 (M.D. Fla. Oct.

2    6, 2004))).   Dr. Hagen, however, does not identify any method or principle

3    supporting that the characteristics she identified mean that the 25th percentile is

4    "appropriate" for Mr. Arredondo.

5         In stark contrast, to reach his conclusions regarding Plaintiffs' vocational

6    capacity, Mr. Lieberman used a well-known, widely used methodology that even Dr.

7    Hagen admits is a valid methodology—RAPEL and its variant, PEEDS-RAPEL.

8    *See* Arredondo Lieberman Report at 13-14; A.F.A.J. Lieberman Report at 12.

9         Because Dr. Hagen used no methods or principles to reach her conclusions,

10   her testimony should be excluded.

11        2.    <u>Dr. Hagen Did Not Use Any Reliable Principles or Methods To</u>

12              <u>Reach Her Opinions Regarding A.F.A.J.</u>

13        Dr. Hagen's proposed testimony regarding A.F.A.J. similarly is not based on

14   the reliable application of trustworthy methods or principles.   Accordingly, Dr.

15   Hagen's testimony is unhelpful and inadmissible.

16        In another example of Defendant's failure to respond to the points Plaintiffs

17   raise concerning Dr. Hagen's reports and testimony, Defendant simply argues that

18   Mr. Lieberman did not consider certain factors in his evaluation of A.F.A.J.'s future

19   vocational capacity, including that he was able to interview A.F.A.J in English or

20   his conclusion that A.F.A.J. would likely graduate high school.   Opposition at 6.

21   This criticism lacks any merit.   First, this is incorrect.   Mr. Lieberman's evaluation

22   *did* factor in A.F.A.J.'s level of English when conducting his evaluation and

23   accounted for the fact that it was likely that A.F.A.J. would graduate high school.

24   *See* A.F.A.J. Lieberman Report at 12 (specifically accounting for A.F.A.J.'s "limited

25   English skills" and noting that "she will likely possess a high school degree").

26   Second, and more importantly, even if it were true (it is not), Defendant's response

27                                    -9-

28

1  has no relevance to the issue before the Court:  that Dr. Hagen's opinions are not

2  supported by reliable methods or principles.

3  Defendant further ignores the issue before the Court—Dr. Hagen's failings)—

4  by claiming that "Plaintiffs [] accuse Dr. Hagen of ignoring the so-called PEEDS-

5  RAPEL factors" and then asserting that "Dr. Hagen did not ignore these factors."

6  Opposition at 7.  She most certainly did.  As explained in the Hagen Daubert Motion,

7  Dr. Hagen opined that Mr. Lieberman had ignored certain factors that affect

8  A.F.A.J.'s potential future earnings, such as the fact that A.F.A.J. had not yet

9  graduated high school.  Hagen Daubert Motion at 9.  In the Hagen Daubert Motion,

10 Plaintiffs pointed out, however, that that the method Mr. Lieberman used to evaluate

11 A.F.A.J.—PEEDS-RAPEL—explicitly included the specific factors Dr. Hagen

12 falsely claimed that Mr. Lieberman ignored.  *Id.*  In other words, Dr. Hagen either

13 failed to realize or willfully obfuscated the fact that the method Mr. Lieberman used

14 included the exact factors she accused Mr. Lieberman of ignoring.  *Id.*  Dr. Hagen's

15 misplaced criticism is emblematic of the core issue with the Rebuttal Reports.

16 Instead of providing opinions supported by reliable principles and methods, the

17 Rebuttal Reports contain off-the-cuff, *ipse dixit* conclusory observations, based

18 purely on Dr. Hagen's cursory review of a truncated record.

19 Instead of addressing Dr. Hagen's failure to use proper methods, Defendant

20 accuses Mr. Lieberman of allegedly failing to consider the fact that A.F.A.J. has

21 attended school in a new country and improved her grades.  Opposition at 7.  This

22 accusation is also both wrong and irrelevant, as Defendant has not moved to exclude

23 Mr. Lieberman.  In his report, Mr. Lieberman specifically accounted for the progress

24 in A.F.A.J.'s academic performance, noting that A.F.A.J.'s grades had improved

25 overall by the time she reached the tenth grade because she did not have to take math

26 classes and was able to take a Spanish class.  *See* A.F.A.J. Lieberman Report at 4.

27

28

-10-

1    In any event, this "look over there" criticism does not relate to the issue of the

2    admissibility of Dr. Hagen's—not Mr. Lieberman's—testimony.

3         Finally, Defendant reiterates Dr. Hagen's blame-the-parents opinion—that

4    Mr. Lieberman's opinion that A.F.A.J.'s parents strongly encourage their children

5    to maximize their studies is belied by certain facts, specifically that Mr. Arredondo

6    had to quit school, that Mr. Arredondo's wife does not work, and that A.F.A.J.'s

7    parents allegedly did not encourage A.F.A.J. to make up classes.  Opposition at 8.

8    Rather than supporting the admissibility of Dr. Hagen's opinion, this argument

9    exemplifies why Dr. Hagen's opinions are unhelpful.  Because neither Defendant

10   nor Dr. Hagen provide any explanation of, or citation to, a recognized method,

11   principle, or authority that explains the significance of these facts, it is *entirely*

12   unclear why and how the above facts suggest that A.F.A.J.'s parents do not

13   encourage A.F.A.J. to maximize her education.  For example, Defendant implies—

14   with absolutely no justification—that the fact that Mr. Arredondo's wife is not

15   currently employed somehow means that she does not encourage her daughter to

16   maximize her education.  *Id.*  This implication is not only nonsensical, it is culturally

17   insensitive and offensive.

18        As Dr. Hagen's opinions are simply off-the-cuff arguments based on

19   unjustified reasoning and are not based on methodology or principle, the Court

20   should exclude the testimony.

21        **C.    The Opposition's New Criticisms of Mr. Lieberman's Methodology**

22        **Have No Bearing On the Admissibility of Dr. Hagen's Testimony.**

23        In the final section of the Opposition, Defendant attempts yet again to deflect

24   attention away from the lack of reliable bases for Dr. Hagen's testimony.  Indeed,

25   Defendant raises *new* criticisms of Mr. Lieberman's methodology that Dr. Hagen

26   did not include in her Rebuttal Reports.  Opposition 8-9.  Specifically, Defendant

27                                      -11-

28

critiques Mr. Lieberman's reliance on the American Community Survey (the "ACS"), arguing that the because the ACS is a self-report survey that utilizes yes/no questions, it is unreliable.  This criticism is unsound, but more importantly, it is *wholly* irrelevant to the issue at hand:  Dr. Hagen's disqualifying deficiencies.

Defendant's criticism of Mr. Lieberman use of ACS is irrelevant to the admissibility of Dr. Hagen's testimony.  Rule 702 and *Daubert* do not contain a "but my opponent did something too" safe harbor.  Moreover, the new criticisms were not contained in Dr. Hagen's Rebuttal Reports; Dr. Hagen did not criticize Mr. Lieberman's use of ACS data there.  Dr. Hagen only began reviewing literature on the use of ACS data *after* she wrote the Rebuttal Reports.  She purported to opine about issues with ACS for the first time at her deposition and then, in response to questions by *Defendant's* counsel to elicit new opinions.  *See id.* at 9.  Defendant does not and cannot explain why and how this new opinion—not included in Dr. Hagen's reports and substantively raised for the first time in the Opposition—supports that Dr. Hagen's testimony is admissible.

In short, the Opposition entirely misses the mark; because Defendant ignores the many deficiencies Plaintiffs note, they are conceded.  Defendant's attempt to raise new criticisms of  Plaintiffs' expert, rather than establishing the admissibility of Defendant's expert under Rule 702 should prove fatal.  The only issue before the Court here is Defendant's failure to establish that its expert is qualified and admissible under the standards of Federal Rule of Evidence 702.

## III.   CONCLUSION

Plaintiffs respectfully request the Court exclude Dr. Hagen's reports, opinions, and testimony in their entirety.  Exclusion is warranted under Federal Rule of Evidence 702 because Dr. Hagen's testimony (i) is not based on sufficient facts

-12-

or data; (ii) is not the product of reliable methodologies; and (iii) does not reflect the reliable application of methodology to the facts in issue.

Dated: March 15, 2024 _____

Respectfully Submitted,
**MILBANK LLP**

By: */s/ Linda Dakin-Grimm*_____
Linda Dakin-Grimm (State Bar #119630)
LDakin-grimm@milbank.com

Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
Samir L. Vora (State Bar #253772)
SVora@milbank.com
Marina Markarian (State Bar #340686)
MMarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: 424-386-4000
Facsimile: 213-629-5063

Elizabeth Hamilton, *pro hac vice*
EHamilton@milbank.com
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

Julie Wolf, *pro hac vice*
JWolf@milbank.com
Julia Duke, *pro hac vice*
JDuke@milbank.com
Riah Kim, *pro hac vice*
RKim2@milbank.com
Victoria Colbert, *pro hac vice*
VColbert@milbank.com
Jonghyun Lee, *pro hac vice*
JLee7@milbank.com

-13-

1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: 202-835-7500
Facsimile: 202-263-7586

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

-14-

## <u>Certificate of Compliance Pursuant to L.R. 11-6.2</u>

The undersigned, counsel of record for Plaintiffs Esvin Fernando Arredondo Rodriguez and A.F.A.J. certifies that this brief contains 3,688 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 15, 2024                              By:  /s/ <u>*Jonghyun Lee*</u>
                                                                         Jonghyun Lee

-15-