MILBANK LLP
Linda Dakin-Grimm (State Bar #119630)
Mark Shinderman (State Bar #136644)
Samir L. Vora (State Bar #253772)
2029 Century Park East, 33rd Floor
Los Angeles, CA  90067
Telephone: (213) 892-4404
Facsimile: (213) 629-5063
Email: Ldakin-grimm@milbank.com

*Additional counsel listed on signature page

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and A.F.A.J.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

ESVIN FERNANDO ARREDONDO
RODRIGUEZ, an individual,  AND
A.F.A.J., a minor, BY HER GUARDIAN
*AD LITEM*, JEFFREY HAMILTON,

       Plaintiffs,

       v.

UNITED STATES OF AMERICA,

       Defendant.

Case No.: CV 22-02845-JLS-JC

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]**

**Hearing Date:** March 29, 2024
**Hearing Time:** 10:30 a.m.
**Judge:** Josephine L. Staton
**Place:** 8A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

I.     INTRODUCTION .........................................................................................1

II.    ARGUMENT ...............................................................................................2

    A.    Rule 37(c) Requires the Exclusion of Dr. Williamson's Reports, Testimony, and Opinion.................................................................2

        1.    Defendant failed to disclose Dr. Williamson as an expert. .......3

            a.    *Lack of Time Does Not Excuse a Failure to Disclose* .......................................................................3

            b.    *Dr. Williamson's Affirmative Reports were Improperly Included in His Rebuttal Report*.................5

        2.    Defendant's failure to disclose Dr. Williamson as an expert was neither substantially justified nor harmless............6

    B.    The Court Should Exclude Dr. Williamson's Report, Testimony, and Opinion Because He is Not Qualified Under Rule 702 ...........................................................................................12

        1.    Dr. Williamson does not meet *any* Rule 702 criteria. .............12

III.    CONCLUSION .........................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*,
  No. 17-CV-00851, 2020 WL 4051299 (N.D. Cal. July 20, 2020)......................... 9

*In re Celsius Network LLC*,
  655 B.R. 301 (Bankr. S.D.N.Y. 2023) ............................................... 19

*Clear-View Techs., Inc. v. Rasnick*,
  No. 13-CV-02744, 2015 WL 3509384 (N.D. Cal. June 3, 2015) ..............*passim*

*Cleveland v. Behemoth*,
  No. 19-CV-672, 2022 WL 5314770 (S.D. Cal. Oct. 6, 2022) .................... 19, 20

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................. 14

*Estakhrian v. Obenstine*,
  No. 11-CV-3480, 2016 WL 6868178 (C.D. Cal. Feb. 29, 2016)....................... 12

*Goodman v. Staples The Off. Superstore, LLC*,
  644 F.3d 817 (9th Cir. 2011) ..................................................... 11, 12

*Gunaratna v. Dennis Gross Cosmetology LLC*,
  No. 20-CV-2311, 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023).............. 13, 14

*J.G. v. N.Y.C. Dep't of Educ.*,
  No. 23-CV-959, 2024 WL 728626 (S.D.N.Y. Feb. 22, 2024).......................... 19

*Lanard Toys Ltd. v. Novelty, Inc.*,
  375 F. App'x 705 (9th Cir. 2010).................................................... 7

*Liberty Ins. Corp. v. Brodeur*,
  41 F.4th 1185 (9th Cir. 2022)...................................................... 7

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  602 F. Supp. 3d 767 (D. Md. 2022) ................................................ 19

-ii-

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ................................................................. 12

*Nat'l Fire Prot. Ass'n v. UpCodes, Inc.*,
   No. 21-CV-05262, 2023 WL 5505888 (C.D. Cal. Aug. 8, 2023) ....................... 6

*Nelson v. Matrixx Initiatives*,
   No. 09-CV-02904, 2012 WL 3627399 (N.D. Cal. Aug. 21, 2012),
   *aff'd*, 592 F. App'x 591 (9th Cir. 2015) ................................................ 14

*In re Paoli R.R. Yard PCBPCB Litig.*,
   35 F.3d 717 (3d Cir. 1994) ...................................................................... 8

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ....................................................... 2, 11, 12

*Zavislak v. Netflix, Inc.*,
   No. 21-cv-01811, 2024 WL 382448 (N.D. Cal. Jan. 31, 2024) ...................... 18

*In re Zicam Cold Remedy Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   No. 09-MD-2096, 2011 WL 798898 (D. Ariz. Feb. 24, 2011) ...................... 14

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B) ......................................................................... 9

Fed. R. Civ. P. 37(c)(1) ....................................................................... 2, 12

Fed. R. Evid. 702(a) ................................................................................ 14

Honorable Josephine L. Staton, Judge's Procedures, *4. Stipulations
   (Civil and Criminal)* https://www.cacd.uscourts.gov/honorable-
   josephine-l-staton (last visited Mar. 12, 2024) .................................... 10

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF
PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3          The Court should exclude the reports, opinions, and purported "rebuttal"

4  testimony of Bennett Williamson, Ph.D. ("Dr. Williamson"), for two reasons.  First,

5  Defendant admittedly failed to meet its disclosure obligations under Federal Rule of

6  Civil Procedure 26 ("Rule 26"), designating Dr. Williamson as a rebuttal witness but

7  providing affirmative reports.  Second, Dr. Williamson is not adequately qualified

8  to serve as an expert on the psychological issues presented in this case because he

9  and his reports fail to meet *any* of the criteria Federal Rule of Evidence 702 ("Rule

10  702") requires courts to consider—any one of which would render his testimony,

11  opinion, and reports inadmissible.

12          Defendant's opposition actually confirms that the contentions made in

13  Plaintiffs' moving papers are valid, including but not limited to, Dr. Williamson's

14  improper reliance on artificial intelligence ("AI"), failure to consider all information

15  and reports available in the case, reliance on selected information curated by

16  Defendant's counsel, and use of the wrong tests.  Moreover, Dr. Williamson's

17  belated efforts to bolster his qualifications—by adding details not contained in his

18  C.V., his Reports, or his answers to deposition questions—fail.  He cannot escape

19  the fact that he simply has no formal training in the specialist field of diagnosing and

20  treating trauma.  The new information he offers in his declaration—even if it could

21  be considered—does not satisfy Rule 702.   In sum, Defendant's opposition,

22  including Dr. Williamson's declaration, only underscores why the Court should

23  grant Plaintiffs' motion under both Federal Rule of Civil Procedure 37(c) ("Rule

24  37(c)") and Rule 702.[1]

25

26  _____

[1] On March 11, 2024, Defendant filed an Objection to Plaintiffs' Amended *Daubert*

27  Motions (the "Objection").  Dkt. 159.  In its Objection, Defendant argues (1) that it

28  was prejudiced by the filing of the amended motions; (2) that Plaintiffs should have

-1-

## II.      ARGUMENT

### A.      Rule 37(c) Requires the Exclusion of Dr. Williamson's Reports, Testimony, and Opinion

Defendant admittedly failed to disclose Dr. Williamson as a Rule 26 expert and failed to produce initial reports containing his opinion and conclusions. Instead, Defendant offered Dr. Williamson's initial affirmative Rule 26 report under the guise of a rebuttal. Federal Rule of Civil Procedure 37(c) mandates that a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e), . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a)

---

incurred additional costs to avoid the need for amended motions; and (3) that Plaintiffs created the need for amended motions by failing to plan properly. Each of these arguments is false. *First*, Defendant was not prejudiced. Plaintiffs' initial motions clearly stated that because of the *Daubert* deadline, the motions had to be filed prior to the receipt of transcripts, and amended motions with the relevant transcript citations would be filed as soon as practicable. Dkt. 146-1 at 1 n.1; Dkt. 150-1 at 1 n.1. That is precisely what Plaintiffs did. *Second*, Defendant's assertion that, to avoid the need to file amended *Daubert* motions, Plaintiffs should have ordered expedited transcripts because Plaintiffs are represented by a "very large and wealthy law firm, Milbank LLC [sic]," Dkt. 159 at 2, ignores that Plaintiffs are represented *pro bono* and are proceeding *in forma pauperis*. Dkt. 9. Defendant's disregard for the costs it attempts to impose on Plaintiffs only serves to create yet another barrier preventing the financially disadvantaged from seeking justice. *Third*, Defendant's argument that Plaintiffs created the need for amended motions by failing to plan ignores that Defendant's proposed experts were not deposed until February 12 and February 16, 2024—the week before the *Daubert* deadline—due to the limited availability of Defendant's experts. Furthermore, Plaintiffs informed Defendant in January that they intended to file *Daubert* motions.

-2-

1    that is not properly disclosed."). Defendant willfully failed to comply with its

2    disclosure obligations under Rule 26. That failure was neither substantially justified

3    nor harmless. Accordingly, Rule 37(c) requires the Court to exclude Dr.

4    Williamson's reports, opinions, and testimony.

5                    1.    <u>Defendant failed to disclose Dr. Williamson as an expert.</u>

6           Defendant did not comply with its obligations under Rule 26. Defendant

7    concedes that it failed to disclose Dr. Williamson as a proposed affirmative expert

8    by the December 22, 2023, deadline set by this Court. Instead, Defendant argues

9    that (1) it lacked adequate time to prepare initial reports by the December 22, 2023

10   deadline, and (2) that it is permissible for a purported rebuttal expert to offer an

11   affirmative report. Defendant's Opposition to Plaintiffs' Motion to Exclude

12   Testimony and Report of Psychological Expert Dr. Williamson ("<u>Def. Opp.</u>"), Dkt.

13   165, at 2-3. Neither argument is correct. Defendant's admitted failure to comply

14   with its obligation under Rule 26 and Rule 37(c) requires exclusion because

15   Defendant's failure was willful and was neither substantially justified nor harmless.

16                    a.    *Lack of Time Does Not Excuse a Failure to Disclose*

17          Defendant's argument that it *had* to put forth a psychological expert, and that

18   the time between exam and affirmative report deadline necessitated the late

19   disclosure is wrong. First, Defendant had no obligation to put forth such an expert.

20   *See Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744, 2015 WL 3509384, at \*5

21   (N.D. Cal. June 3, 2015). Moreover, the examinations of Plaintiffs were done on

22   dates agreed to by Defendant, and were done under the guise of Mental

23   Examinations *under Fed. R. Civ. P. 35*—not as predicates for expert testimony under

24   Rule 26. Defendant could have—but did not—insisted on examinations on earlier

25   dates, but it would have had to disclose its intent to use the examinations in

26   affirmative Rule 26 expert reports. Defendant chose not to do so. Second, regardless

27

28

-3-

1  of how critical Defendant now contends its expert to be, this does not excuse

2  Defendant's failure to properly disclose Dr. Williamson. *Id.* at *4 ("Defendants can

3  be expected to introduce such expert testimony. . . .   What a party cannot do,

4  however, is exactly what Defendants did here . . . Defendants attempted to sandbag

5  Plaintiff[.]").

6         In arguing that the late disclosure of Dr. Williamson's affirmative opinion is

7  justified by the short time between his Rule 35 examinations of Plaintiffs and the

8  deadline for initial expert reports, Defendant necessarily concedes that at the time of

9  those examinations, Defendant anticipated producing affirmative reports but *chose*

10 not to tell Plaintiffs or to seek an amendment to the schedule.  Instead, Defendant

11 played a game to obtain Plaintiffs' expert's work in advance, and willfully produced

12 its own reports late.   The parties agreed to schedule Dr. Williamson's Rule 35

13 examinations of Plaintiffs on December 20 and 21, 2023, knowing that the deadline

14 for affirmative expert reports was December 22, 2023.[2] *See* Dkt. 151-1 at 4; Dkt.

15 151-3; Dkt. 151-4.  Defendant was aware of the deadline for initial expert reports

16 when scheduling the exams and could have raised its timing issues with Plaintiffs

17 and the Court at that time.  Defendant chose not to do so for perceived advantage.

18

19

20 [2] Defendant initially requested that Plaintiffs stipulate to Rule 35 Mental

21 Examination on October 31, 2023.  Dkt. 151-1 at 4.  Defendant's notices for Dr.
   Williamson's examination of Plaintiffs state that the examinations will be

22 "[p]ursuant to Federal Rule of Civil Procedure 35."  Dkt. 151-3 at 1; Dkt. 151-4 at

23 1.  Plaintiffs thus agreed to mental examinations with the understanding that Rule
   35 reports would be created and produced.  Defendant argues that Plaintiffs did not

24 request a Rule 35 report until Dr. Williamson's deposition, and that Rule 35 reports
   need not be produced unless requested by the opposing party or person examined.

25 *See* Def. Opp. at 2.  Even assuming that Plaintiffs were required to renew the
   requests, Plaintiffs did so at Dr. Williamson's deposition. Defendant has not

26 produced any Rule 35 report.

27
                                        -4-

28

1
2

                              b.    *Dr. Williamson's Affirmative Reports Were Improperly Included in His Rebuttal Report*

3
4
5
6
7

    Defendant contends that "Dr. Williamson was not required to produce his Rule 35 *findings* regarding Plaintiffs' medical examinations by the initial disclosure deadline of December 22, 2023," and that Dr. Williamson produced his "*findings* together with his rebuttal opinion within the expert discovery period." Def. Opp. at 3 (emphasis added). This argument fails for two reasons.

8
9
10
11
12

    *First*, Dr. Williamson *never* produced a Rule 35 report or Rule 35 "findings." He produced reports entitled "Federal Rule of Civil Procedure 26(a) Report Clinical Psychological Evaluation / Expert Rebuttal." By their own admission, the documents contain affirmative Rule 26(a) reports, which Defendant was obligated to disclose by December 22, 2023.

13
14
15
16
17
18
19
20
21

    *Second*, despite Defendant's unsupported assertions to the contrary, a rebuttal expert *cannot* offer an affirmative expert report. The law here is quite clear: rebuttal expert testimony, opinions, and reports are "'intended *solely* to contradict or rebut evidence on the same subject matter identified by an initial expert witness.'" *Clear-View Techs.*, 2015 WL 3509384, at *2 (emphasis added) (quoting *R&O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 09-CV-1749, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011)). This is because "'[t]he function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.'" *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).

22
23
24
25
26

    Dr. Williamson's "Federal Rule of Civil Procedure 26(a) Report Clinical Psychological Evaluation[s] / Expert Rebuttal[s]" are admittedly affirmative reports—not rebuttal reports. Dr. Williamson's report as to Mr. Arredondo is 29 pages; but more than two-thirds of those pages are dedicated to Dr. Williamson's *affirmative* opinion. *See* Dkt. 148-3. Dr. Williamson's report as to A.F.A.J. is 31

27
28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

pages; 22 of those pages are dedicated to Dr. Williamson's affirmative opinion.  *See* Dkt. 148-4.  Throughout the reports, Dr. Williamson offers his own examination and affirmative findings (based on his Rule 35 examinations), he proposes different diagnoses, and he puts forth different theories of causation.  The reports are a blatant attempt to backdoor affirmative expert testimony—served well after the affirmative report deadline—under the guise of rebuttal testimony.  The Federal Rules of Civil Procedure are clear and self-executing—this proposed expert must be excluded.  *Nat'l Fire Prot. Ass'n v. UpCodes, Inc.*, No. 21-CV-05262, 2023 WL 5505888, at *4 (C.D. Cal. Aug. 8, 2023) ("'Using a rebuttal report as a backdoor to introduce analysis that could have been included in the opening report is squarely foreclosed by Rule 26.'") (quoting *City & Cnty. of S.F. v. Purdue Pharma L.P.*, No. 18-CV-07591, 2022 WL 1203075, at *2 (N.D. Cal. Apr. 22, 2022)); *see also Clear-View Techs.*, 2015 WL 3509384, at *4 ("Permitting [d]efendants to backdoor such expert testimony under the guise of 'rebuttal' testimony would render Rule 26's limits generally meaningless.").  Because Dr. Williamson's reports are not proper rebuttal evidence and were not properly disclosed as affirmative reports, they must be excluded under Rule 37(c).  *Nat'l Fire Prot. Ass'n*, 2023 WL 5505888, at *4.

        2.    <u>Defendant's failure to disclose Dr. Williamson as an expert was neither substantially justified nor harmless.</u>

Defendant was required to disclose Dr. Williamson as a proposed expert, and to provide his entire affirmative expert reports, on or before December 22, 2023.  Instead, Defendant waited until Dr. Williamson had Plaintiffs' expert reports in hand, and submitted his affirmative reports and rebuttals jointly a month later—on January 19, 2024, the expert rebuttal deadline.  A party that fails properly to disclose information as required by Rule 26(a) may not "'unless such failure is harmless, [] use as evidence at trial . . . any witness or information not so disclosed.'"  *Clear-*

1   *View Techs.*, 2015 WL 3509384, at *2 (quoting Fed. R. Civ. P. 37(c)(1)).  "The

2   sanction is *automatic and mandatory* unless the sanctioned party can show that its

3   violation . . . was either justified or harmless." *Id.* (citing *R&O Constr.*, 2011 WL

4   2923703, at *3); *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir.

5   2010) ("The burden is on the party facing exclusion of its expert's testimony to prove

6   the delay was justified or harmless.") (citing *Yeti*, 259 F.3d at 1107).

7            Plaintiffs explained in their motion that, in determining whether the error was

8   substantially justified or harmless, courts considers several factors, including:  "(1)

9   prejudice or surprise to the party against whom the evidenced is offered; (2) the

10  ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and

11  (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp.*

12  *v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (citation and internal quotation

13  marks omitted).

14           Defendant cites this legal standard but fails to engage with each of the factors.

15  Instead, Defendant principally argues that Plaintiffs have suffered no prejudice

16  because Defendant would consent to Plaintiffs' preparing supplemental reports (with

17  the Court's permission), and that, because Plaintiffs have not accepted this offer, due

18  to real budgetary constraints, Plaintiffs are "manufactur[ing] prejudice."  Def. Opp.

19  at 4-5.  Defendant's counsel seems to willfully misunderstand that Plaintiffs herein

20  are proceeding *in forma pauperis* and have no funds to pay for another round of

21  expert reports.  Counsel seems to believe that a law firm that is providing services

22  *pro bono* must also pay for experts—which, if true, would further disincentivize

23  private lawyers from taking on important *pro bono* matters like this one.

24  Defendant's "offer" to require counsel to pay for another round of reports (due to

25  Defendant's misconduct) is really a concession that Plaintiffs have been prejudiced

26  by Defendant's failure to abide by its disclosure obligations.  Notably, *Defendant*

27

28

-7-

*has not offered to remedy the prejudice it caused by Defendant paying for Dr. Samuelson to prepare another round of reports*.  Having conceded the first factor and made no arguments as to the remaining factors (in particular their own bad faith and willfulness), Defendant fails to establish that its conduct was substantially justified or harmless.

*Prejudice.* As noted above, Defendant actually concedes that Plaintiffs have been prejudiced by its failures.  Notwithstanding its concession, Defendant argues that Plaintiffs are manufacturing prejudice by failing to accept the offer to submit supplemental reports or by "elicit[ing] Dr. Samuelson's rebuttal opinions at her deposition."  Def. Opp. at 4.  But Plaintiffs have not "manufacture[d] prejudice." Defendant has failed to cure the prejudice it caused--by failing to tender the cost it now suggests Plaintiffs must incur (which they simply cannot).  Defendant relies on out-of-circuit case law for the proposition that a plaintiff "cannot manufacture prejudice by their own failure to cure any prejudice when they had sufficient opportunity to do so." Def. Opp. at 4–5 (citing *In re Paoli R.R. Yard PCBPCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).  In any event, the *In re Paoli* case is wholly inapposite. There, the Third Circuit found the district court abused its discretion by excluding plaintiffs' expert, when there "was only a slight deviation from pre-trial notice requirements," "admitting the witness was likely to cause only slight prejudice to the defendants, who were already aware of the basic substance of the witness' testimony," and the district court's finding of "willfulness and bad faith [wa]s clearly erroneous." *Paoli*, at 792-93. This is certainly not what happened here.

Plaintiffs were prejudiced in several ways by Defendant's failure to disclose Dr. Williamson as an affirmative expert.  First, by waiting until Dr. Williamson was in receipt of the affirmative reports prepared by Plaintiffs' expert, Dr. Williamson was provided an unfair advantage in the preparation of his own affirmative reports

-8-

that cannot be undone.  This stolen advantage enabled him to tailor his affirmative report to the report prepared by Plaintiffs' expert, necessarily creating an uneven playing field that is contrary to the Federal Rules.[3]  Second, Plaintiffs have been deprived of the opportunity to marshal the resources they had to cover both an affirmative and a rebuttal report that would counter and discredit the opinions offered by Dr. Williamson.  *See Abdo v. Fitzsimmons*, No. 17-CV-00851, 2020 WL 4051299, at *4 (N.D. Cal. July 20, 2020) ("Further, the late disclosure is not harmless because it deprived Plaintiffs of the opportunity to submit an expert report to rebut the Rebuttal Report.").  Third, although Plaintiffs were able to depose Dr. Williamson, they did not have the full opportunity that they would have been afforded if he had (1) been timely disclosed, (2) produced an affirmative expert report that did not improperly benefit from the work of Plaintiffs' expert, and (3) produced the materials underlying his opinions as required by Rule 26.  Fed. R. Civ. P. 26(a)(2)(B).[4]

---

[3] Even with that advantage, as explained *Infra*, Dr. Williamson's report remains inadmissible under Rule 702.

[4] It is noteworthy that Dr. Williamson believes he is still free to add to his credentials and opinions—offering new material in his declaration in opposition to this motion and testifying in deposition that his Reports do not limit him from offering new opinions if he thinks of them.  *See, e.g.*, Williamson Tr. 40:24–41:4 ("Q: Well, you are not holding back things that you now plan to testify about that you didn't put in your report, are you? A: Well, I have some additional information but most of the opinions are embedded within those reports."); *id.* 41:11–14, 41:18–22 ("Q: Is it your understanding that you can just keep formulating new ideas after the report is submitted and testify to them later? . . . A: If I should become aware of additional information that would be relevant to my opinions it would be appropriate for me to consider that, revise or add or subtract opinions depending upon the new information."); *id.* 53:13–15, 53:18–20 ("Q: Is it your understanding that you are still free to create any exhibits that were not produced with your report? . . . A: I'm

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

*Inability to Cure.*  Defendant cannot cure the prejudice it caused.  Defendant does not, because it cannot, argue that the uneven playing field afforded to Dr. Williamson or the impediments to a full deposition of Dr. Williamson can be cured. Defendant's sole attempt to cure the prejudice Plaintiffs suffered is an offer to require Plaintiffs' *pro bono* counsel to pay for Plaintiffs' expert to prepare a rebuttal report.  (Defendant has not itself offered to pay for the proposed reports.) Defendant's argument fails for two reasons.  First, expert discovery has closed.  The parties cannot stipulate to reopen a deadline contained in the Court's scheduling order—and Defendant did not seek to do so.  *See* Honorable Josephine L. Staton, Judge's Procedures, *4. Stipulations (Civil and Criminal)* https://www.cacd.uscourts.gov/honorable-josephine-l-staton (last visited Mar. 12, 2024).  Second, even if the deadline could be extended, Defendant's argument ignores the fact that Plaintiffs are represented by *pro bono* counsel, who cannot, and should not, be forced to incur additional unforeseen expert expenses at this late date based on Defendant's gamesmanship, including its willful failure to properly disclose its expert.[5]

---

not sure of what the exact guidelines are for exhibit preparation so I would defer to the court on that."); *id.* 65:16–17, 20–21, 68:14–20 (acknowledging that he brought new material, previously undisclosed to Plaintiffs, to his deposition).

[5] Defendant's assertion that Plaintiffs' counsel is a "large and wealthy law firm, Milbank LLC [sic], [that] can afford" such expenses is truly outrageous and is itself a reflection of the unlawful policies (acting unconscionably toward poor migrants in order to deter migration) at issue in this case.  Counsel's argument here concretely perpetuates the harm Defendant has caused to Plaintiffs—and thousands of other families.  Dkt. 159 at 2.  Thousands of families, like Plaintiffs, were separated by Defendant's agents and employees under the Trump Administration's family separation policy.  They were largely impoverished people fleeing harm and persecution.  Very few of these families have been able to find *pro bono* lawyers to take on their cases where *the federal government* is the opposing party.  The

-10-

1    *Bad Faith.*  Defendant's argument that it is justified in its late disclosure of

2    Dr. Williamson's affirmative report because of the short time between Dr.

3    Williamson's Rule 35 examination of Plaintiffs and the Rule 26 initial expert report

4    deadline concedes that Defendant acted in bad faith, *choosing* to serve Plaintiffs with

5    a late affirmative report rather than timely producing a Rule 35 report, timely

6    disclosing Dr. Williamson as an affirmative expert or requesting that the Court

7    extend the expert discovery deadline.

8        Because Defendant has not established that its failure to meet its Rule 26

9    obligations of disclosure was substantially justified or harmless, Rule 37 requires

10   that Dr. Williamson's report be stricken and Dr. Williamson be prohibited from

11   testifying.  *See Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827

12   (9th Cir. 2011) (affirming the self-executing sanction under Rule 37 of excluding

13   the expert for failing to comply with Rule 26 where non-compliant party did not

14   carry her burden of proving harmlessness); *Yeti*, 259 F.3d at 1106 ("[E]ven absent a

15   showing in the record of bad faith or willfulness, exclusion is an appropriate remedy

16   for failing to fulfill the required disclosure requirements of Rule 26(a).").[6]

17

18   _____

18   disregard shown by Defendant and its counsel for the costs it attempts to impose on

19   Plaintiffs here serves to discourage other law firms from taking on these cases *pro

20   bono*.  Stated differently, if the government is permitted to increase the Plaintiffs'

20   costs of litigation by consciously ignoring the rules that govern such litigation, it

21   would dissuade other lawyers from taking on important cases like this one—

22   intended to address the federal government's egregious misconduct.

23   [6] Defendant concedes that its failure to disclose is not a *Daubert* issue.  *See* Def.

24   Opp. at 3.  Unlike *Daubert* issues, the failure to comply with Rule 26's disclosure

25   requirements cannot be cured by limiting instructions or other less extreme remedies.

25   The failure to comply with Rule 26 results in exclusion of the evidence—here the

26   reports, testimony, and opinion of Dr. Williamson.  The remedy is required "even

26   absent a showing in the record of bad faith or willfulness"—though both are present

27                                    -11-

28   _____

**B.      The Court Should Exclude Dr. Williamson's Report, Testimony, and Opinion Because He Is Not Qualified Under Rule 702**

Even if Defendant had properly and timely directed Dr. Williamson to produce his affirmative report and underlying data, the Court should still preclude Dr. Williamson's report, opinions, and testimony because he is not qualified under Rule 702 of the Federal Rules of Evidence to opine on the specific issues in this case. Defendant's argument that the Rule 702 factors go to weight rather than admissibility, *see* Def. Opp. at 11-12, is simply wrong. Defendant bears the burden of proving that Dr. Williamson is qualified under these factors before he can offer opinions. Defendant ignores (1) that Dr. Williamson fails to meet *any* of the criteria outlined in Rule 702, and he must satisfy all of them or his reports, opinions, and testimony must be excluded; and (2) that, in his reports, Dr. Williamson has copied and relied on the opinion generated by an untested AI software (the underlying algorithms for which remain undisclosed) and did not author an expert report or opinion.

1.      Dr. Williamson does not meet *any* Rule 702 criteria.

*Dr. Williamson is not qualified to render opinions in this case*. According to Defendant, any "psychologist" can offer opinions about "psychology." But that is not how Rule 702 and the law on experts works. Courts regularly find that an expert's qualifications in one field do not automatically translate to qualification to opine in a separate field, even if those fields are related in some general sense. *See, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001) ("[A] very

_____

here because Defendant consciously made a decision to choose this path. *Yeti*, 259 F.3d at 1106 (citing Fed. R. Civ. P. 37(c)(1)); *Goodman*, 644 F.3d at 827 ("Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure."); *Estakhrian v. Obenstine*, No. 11-CV-3480, 2016 WL 6868178, at *11 (C.D. Cal. Feb. 29, 2016) (same).

-12-

significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation[.]") (citation and internal quotation marks omitted); *Gunaratna v. Dennis Gross Cosmetology LLC*, No. 20-CV-2311, 2023 WL 2628620, at *9 (C.D. Cal. Mar. 15, 2023) (". . . Defendant's argument boils down to the logically flawed premise that because [the proposed expert] is trained as a scientist, she is therefore qualified to review lab reports in any field of science, regardless of whether she is familiar with the particular subject and methodologies used therein.").

Dr. Williamson lacks the education and experience to qualify him as an expert in ███████████████████████, in diagnosis and treatment of trauma generally, in diagnosis and treatment of traumatized children or even in the broader area of clinical psychology.  Per his own deposition testimony, Dr. Williamson is not even a trained clinical psychologist.  His sole qualifying "experience" (as an educational psychologist) has been in ordinary day-to-day treatment of patients.[7] Dr. Williamson has *zero* training in the clinical diagnosis and treatment of trauma. He has *zero* training or education in the protocols for treating traumatized children. He does not belong to the specialist groups of treating psychologists devoted to ████, trauma issues, or children.  He has no education or training in trauma, does not regularly treat trauma patients in the ordinary course of his practice, and made no effort to supplement his lack of training and experience with pertinent and

---

[7] Dr. Williamson's efforts to exaggerate his experience and qualifications are unavailing.  In his new declaration, Dr. Williamson attempts to place a gloss on his pre- and post-licensure experience, averring that his work included seeing ████ ████████ patients, and that he attending trainings regarding trauma.  Williamson Decl., Dkt. 165-1, at ¶¶ 13–19.  But Dr. Williamson was asked about his relevant training during his deposition and failed to provide the information he now wants to offer.  *See, e.g.*, Williamson Tr. 54:14–55:7.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1    necessary contextual knowledge.  He is not an expert on the issues *in this case* and

2    therefore cannot provide admissible expert evidence.  *See Daubert v. Merrell Dow*

3    *Pharms., Inc.*, 509 U.S. 579, 596 (1993); *Gunaratna*, 2023 WL 2628620, at *9; *see*

4    *also Nelson v. Matrixx Initiatives*, No. 09-CV-02904, 2012 WL 3627399, at *11

5    (N.D. Cal. Aug. 21, 2012) ("[The proposed expert] is an otolaryngologist, and

6    diagnoses ear, nose, and throat conditions.  He has no specialized epidemiological

7    or toxicological training or credentials.  He has performed no independent scientific

8    research on the issue of Zicam's ability to produce smell loss.  He has never studied

9    zinc gluconate, the active ingredient in Zicam or Zicam itself."), *aff'd*, 592 F. App'x

10   591 (9th Cir. 2015); *In re Zicam Cold Remedy Mktg., Sales Pracs., & Prods. Liab.*

11   *Litig.*, No. 09-MD-2096, 2011 WL 798898, at *12 (D. Ariz. Feb. 24, 2011)

12   ("Although Rule 702, Fed. R. Evid., classifies experts broadly, at least some relevant

13   background is required.  [The proposed expert] has no academic training or clinical

14   experience in pharmaceutical efficacy.").

15        *Dr. Williamson does not offer specialized knowledge that will help the trier of*

16   *fact.*  Dr. Williamson's reports, opinions, and testimony do not contain "scientific,

17   technical, or other specialized knowledge [to] help the trier of fact to understand the

18   evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  In fact, Dr.

19   Williamson offers no real expertise or opinion in this case.  In both of his reports, he

20   simply recites the T-scores and narratives reported by AI testing software and states

21   whether the AI reports say the scores were or were not clinically elevated (*i.e.*,

22   clinically significant).  Dkt. 148-3 at 15-16; Dkt. 148-4 at 14-19.  Dr. Williamson

23   does not use judgment for this, nor does he provide support for, or offer any

24   contextual analysis of, the results.  He simply parrots the T-scores resulting from the

25   computer-generated results.  And, as Plaintiffs have explained, a lay person could

26   have conducted the same copy-and-paste exercise.  Defendant confirms that Dr.

27

28

-14-

Williamson used computer-scored tests; it then argues that Dr. Williamson used the tests to generate hypotheses to use in conjunction with other tests.  Def. Opp. at 10.  But the Reports themselves prove otherwise, and Dr. Williamson admitted as much in his deposition.  Defendant cites only to Dr. Williamson's new declaration for this contention, but neither Defendant nor Dr. Williamson offers any citation to the reports or any explanation of how the scores were used in conjunction with other evidence (because no such consideration or analysis appears in the reports).  In sum, Dr. Williamson's reports do not contain expert "opinion" or include scientific, technical, or other specialized knowledge that would help the Court as trier of fact, and should be excluded.  Moreover, as discussed *infra*, Dr. Williamson relied on outdated testing in his evaluation of Mr. Arredondo.

*Dr. Williamson's reports are not based on sufficient facts or data.*[8]  In drafting his reports, Dr. Williamson relied only on a handful of documents that were cherry-picked and provided to him by defense counsel.  Nothing else.  Dr. Williamson's reports and deposition testimony confirm that he conducted no research into the vast, available factual and psychological literature surrounding the facts and circumstances of this case.  In addition to the narrow universe of background information selected by counsel, Dr. Williamson based his opinions on insufficient data.  For example, rather than conduct a psychodiagnostics interview, which is standard in trauma diagnosis, Dr. Williamson's notes reflect that he only took a history from each plaintiff, jotting pithy responses to prompts from a generic

---

[8] Defendant argues that Dr. Williamson relied on sufficient facts and data because he relied on "[m]ore [f]acts and [d]ata [t]han Plaintiff's Expert Dr. Samuelson." Def. Opp. at 10.  That childish argument is not the standard under Rule 702.  Defendant's assertion about Dr. Samuelson is wrong, but more importantly, because Defendant has not moved to exclude Dr. Samuelson's testimony, the argument does not merit a substantive response.

-15-

form. *See* Dkt. 148-5. Dr. Williamson then relied almost entirely on AI-generated narrative reports (without disclosing the underlying algorithms) to reach his conclusions.

Fatally, Defendant argues that Dr. Williamson did not use AI-generated narratives but rather "relied, ***in part***, on Computer Based Test Interpretation (CBTI)." Def. Opp. at 7 (emphasis in original). Dr. Williamson further explains in his declaration that "CBTI, as opposed to AI, is based on a particular norm group or groups that have been evaluated by experts. From those norm groups, *actuarial* hypotheses are generated for a clinician to consider." Williamson Decl., Dkt. 165-1, at ¶ 30 (emphasis added). This is a distinction without a difference. Whether labeled CBTI or AI is of no moment; Dr. Williamson did not author these passages (generated by an algorithm based on actuarial assumptions) himself; he did not engage with the "hypotheses" (*i.e.*, consider their validity or alternative hypotheses); and he simply parroted the T-scores that were generated by the computer scoring mechanism. As a result, his entire reports are tainted by inadmissible material and his opinions are, accordingly, insufficiently grounded in facts and data, warranting exclusion of his reports, opinions, and purported rebuttal testimony.

*Dr. Williamson's report is not the product of reliable principles and methods*. Defendant contends that Dr. Williamson's opinions are the product of reliable principles and methods because they are "the product of a variety of factors, including: (1) his review of medical documents, case background information, and deposition testimony, (2) his clinical interviews with Plaintiffs, and (3) his applications of various clinical tests to the Plaintiffs." Def. Opp. at 12. Defendant falsely contends that Plaintiffs' objections to Dr. Williamson's opinions and testimony are based on his exclusive reliance on self-reported and AI-generated

-16-

1    narratives and that "Plaintiffs are demonstrably wrong." *Id.*   Respectfully,

2    Defendant is wrong.

3        First, proving his lack of expertise, Dr. Williamson used the wrong tests for

4    each Plaintiff.   For A.F.A.J., Dr. Williamson administered the adult version of tests,

5    even though A.F.A.J. was and remains a minor.  Dr. Williamson chose to administer

6    the adult versions, not based on his independent or professional judgment, but rather

7    because defense counsel suggested he do so. *See* Dkt. 151-1 at 5.

8        For Mr. Arredondo, Dr. Williamson administered an outdated test (the

9    "MMPI-2" rather than the "MMPI-3") that is *not* a test methodology for trauma that

10   is generally accepted by the psychological community.  Defendant conceded this in

11   his deposition, agreeing that his use of the MMPI-2 to diagnose trauma was a "valid

12   criticism" because "the norm group" for Hispanic populations "is more current with

13   the III." Williamson Tr., Dkt. 162-3, 185:15–21.

14       Defendant's and Dr. Williamson's efforts to evade his concession fail.  In a

15   newly written declaration that contradicts his own deposition testimony, Dr.

16   Williamson now avers that: the MMPI-2 is "widely considered to be an outstanding

17   personality inventory"; that attempts to shorten the MMPI-2, such as the MMPI-2-

18   RF and the MMPI-3, have had "unclear results"; and that the shortened MMPI-3 has

19   "been criticized."  Williamson Decl., Dkt. 165-1, ¶¶ 38–39.  He further avers

20   (without support) that "there is no consensus in the field as to which test is

21   appropriate, but for some there is a reflex among less experienced clinicians to use

22   the latest version of a test or accept what a new tests [sic] creator says about it,

23   independent of the other sources of research on it or methodological changes"; and

24   that "[t]his reflex . . . is overly facile." *Id.* ¶ 41.  Dr. Williamson has no support for

25   these statements offered on a "because I said so" basis.

26

27                                   -17-

28

1    Instead, he offers three irrelevant articles:  (1) one, written in 2021, concerns

2    the introduction of the MMPI-2-RF—it mentions the MMPI-3 once, noting only that

3    it had then just recently been released and has nothing to do with the MMPI/MMPI-

4    2, *see id.* ¶ 39, Ex. 1; (2) another, written in 2020 (the year in which the MMPI-3

5    was released), from the Office of Aerospace Medicine, Federal Aviation

6    Administration ("FAA"), which Dr. Williamson contends shows that the FAA "has

7    determined that Airline Pilots, FAA Air Traffic Control Specialists (ATCSs),

8    Federal Air Marshals, and NASA astronauts and therefore the public, are better

9    served by continuing to use the MMPI-2" (as if the FAA were members of the

10   psychological community who are experts in administration of psychological

11   testing), *id.* ¶ 40, Ex. 2; and (3) yet another, written in 2018 (before the MMPI-3

12   existed), in which "many professional psychological organizations endorsed a

13   position statement in 2018 highlighting the importance of not simply selecting the

14   newest version of a test or claiming earlier versions are no longer valid," *id.* ¶ 42,

15   Ex. 3.  None of these articles supports Dr. Williamson's decision to use the MMPI-

16   2 to diagnose Plaintiffs in this case.  Further, to the extent that Dr. Williamson's new

17   declaration contradicts his testimony, the Court should disregard them.  *See, e.g.*,

18   *Zavislak v. Netflix, Inc.*, No. 21-cv-01811, 2024 WL 382448, at *20 (N.D. Cal. Jan.

19   31, 2024) (striking statement from declaration that contradicted deposition

20   testimony).

21          Defendant's arguments in defense of Dr. Williamson's use of the MMPI-2,

22   which parrot the statements in Dr. Williamson's declaration, are equally unavailing.

23   Dr. Williamson actually acknowledged under oath that the MMPI-3 was designed to

24   correct the MMPI-2's flaws with respect to Hispanic populations.  Neither he nor

25   Defendant offers any reasonable explanation for choosing to use a test with a

26   recognized deficiency as to Plaintiffs in this case.

27

28

-18-

In addition, Defendant ignores the glaring issue raised by Plaintiffs—that Dr. Williamson has an undisclosed ownership interest in the company used to score and generate AI narratives for Mr. Arredondo's Report, and that the company does not have the capability of scoring the current version of the MMPI—*i.e.*, the MMPI-3. Dr. Williamson's purported "choice" to use the MMPI-2 was driven by undisclosed financial self-interest.

In addition, his purported opinions are copied and pasted from untested AI software. These AI-generated narratives are the product of algorithms that have not been disclosed or tested for reliability. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 602 F. Supp. 3d 767, 787 (D. Md. 2022) (noting that AI and its related algorithms "are nothing more than a systematic method of performing some particular process from a beginning to an end. . . . [I]f they are not tested to confirm their output is the product of a system or process capable of producing accurate results (a condition precedent to their admissibility), then the results they generate cannot be shown to be relevant, reliable, helpful to the fact finder, or to fit the circumstances of the particular case in which they are used."); *see, e.g.*, *In re Celsius Network LLC*, 655 B.R. 301, 308-09 (Bankr. S.D.N.Y. 2023) (excluding an AI-generated expert report as unreliable and not the opinion of the expert but of the software); *J.G. v. N.Y.C. Dep't of Educ.*, No. 23-CV-959, 2024 WL 728626, at *7 (S.D.N.Y. Feb. 22, 2024) (finding portions of counsel's submissions that rely on AI "utterly and unusually unpersuasive").

Defendant's reliance on *Cleveland v. Behemoth*, No. 19-CV-672, 2022 WL 5314770, at *3 (S.D. Cal. Oct. 6, 2022)—seemingly to suggest that the Court should find Dr. Williamson's testimony reliable because he used the MMPI-2 and various other factors—is misplaced. There, the plaintiff challenged the expert's use of a single objective test (the MMPI-2) and further claimed that the testing was unreliable

-19-

because the expert allowed his assistant to administer the test. *See id.* The court disagreed, finding that the expert's administration of the MMPI-2 was reliable because the expert did not delegate administration to his assistant and administered the test consistent with the test publisher's guidance. *See id.* The Court further found the expert testimony reliable because the expert relied on the MMPI-2 *and* various other valid factors. *See id. Cleveland* is unhelpful to Defendant and irrelevant to this case.

As explained above, Plaintiffs have not challenged *how* Dr. Williamson administered the MMPI-2; they have challenged *that* he used it. Moreover, Defendant offers nothing more than a conclusory assertion that Dr. Williamson's opinions are the product of a variety of factors. Defendant does not and cannot cite to the reports at issue—because the reports do not evidence Dr. Williamson considering "a variety of factors." Rather, they show Dr. Williamson parroting computer-generated scores and concluding that Plaintiffs do not qualify for certain diagnoses because the scores were not elevated. In essence, Dr. Williamson has failed to "show his work," and cannot, by *ipse dixit*, claim that his opinions are based on a "variety of factors" when his reports facially indicate to the contrary.

In sum, Dr. Williamson cannot offer admissible expert evidence because he did not employ reliable and generally accepted methodologies.

*Dr. Williamson did not reliably apply the relevant principles and methods.* First, Dr. Williamson's reliance on AI-generated narratives without further analysis or supplementing the AI with additional context and considerations is contrary to accepted practice in the field of clinical psychology. *See* Dkt. 151-14 at 201. Second, contrary to ethical requirements in the field of psychology, Dr. Williamson used test scores as the *sole* indicators to characterize functioning, competence, attitude, and predispositions. *See* Dkt. 151-17 at 236. Third, Dr. Williamson failed

-20-

1    to address inconsistencies.  *See* Dkt. 148-2 at 21.  Even assuming that Dr.

2    Williamson had chosen and utilized appropriate methodologies for evaluating

3    trauma victims and minors (he did not), his failure to apply them in a way that is

4    accepted by the psychological trauma expert community renders his opinions

5    unreliable.  The Court should therefore exclude his reports, opinions, and testimony

6    as inadmissible expert evidence under Fed. R. Evid. 702.

7    **III.    CONCLUSION**

8          Plaintiffs respectfully request that the Court exclude Dr. Williamson's reports,

9    opinions, and testimony in their entirety.  Dr. Williamson's reports, opinions, and

10   testimony must be excluded pursuant to Rule 37(c) because Defendant failed to

11   disclose Dr. Williamson as an expert or to provide an initial expert report.  Exclusion

12   is further warranted under Fed. R. Evid. 702 because Dr. Williamson (1) is not

13   qualified as an expert in trauma or ▮▮▮▮ or in treatment of children for those

14   matters; and his reports and opinions (2) do not contain scientific, technical, or

15   specialized knowledge that would help the Court understand the evidence or

16   determine a fact in issue; (3) are not based on sufficient facts or data; (4) are not the

17   product of reliable methodologies; and (5) do not reflect the reliable application of

18   his chosen methodology to the facts in issue.

19

20   Dated: <u>March 15, 2024</u>          Respectfully Submitted,

21                                         **MILBANK LLP**

22                                         By: *<u>/s/ Linda Dakin-Grimm</u>*

23                                         Linda Dakin-Grimm (State Bar #119630)
                                           LDakin-grimm@milbank.com

24

25                                         Mark Shinderman (State Bar #136644)
                                           MShinderman@milbank.com

26                                         Samir L. Vora (State Bar #253772)
                                           SVora@milbank.com

27                                         -21-

28   ──────────────────────────────────────────────
     PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF
     PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
     CASE NO. CV 22-02845-JLS-JC

Marina Markarian (State Bar #340686)
MMarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: 424-386-4000
Facsimile: 213-629-5063

Elizabeth Hamilton, *pro hac vice*
EHamilton@milbank.com
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

Julie Wolf, *pro hac vice*
JWolf@milbank.com
Julia Duke, *pro hac vice*
JDuke@milbank.com
Riah Kim, *pro hac vice*
RKim2@milbank.com
Victoria Colbert, *pro hac vice*
VColbert@milbank.com
Jonghyun Lee, *pro hac vice*
JLee7@milbank.com
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: 202-835-7500
Facsimile: 202-263-7586

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
A.F.A.J.

-22-

1

## <u>Certificate of Compliance Pursuant to L.R. 11-6.2</u>

The undersigned, counsel of record for Plaintiffs Esvin Fernando Arredondo Rodriguez and A.F.A.J certifies that this brief contains 6,719 words, which complies with the word limit of L.R. 11-6.1.

Dated: <u>March 15, 2024</u>                         By: <u>/s/ *Elizabeth Hamilton*</u>
                                                                              Elizabeth Hamilton

-23-