MILBANK LLP
Linda Dakin-Grimm (State Bar #119630)
Mark Shinderman (State Bar #136644)
Samir L. Vora (State Bar #253772)
2029 Century Park East, 33rd Floor
Los Angeles, CA  90067
Telephone: (213) 892-4404
Facsimile: (213) 629-5063
Email: Ldakin-grimm@milbank.com

*Additional counsel listed on signature page

*Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and A.F.A.J.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

ESVIN FERNANDO ARREDONDO
RODRIGUEZ, an individual,  AND
A.F.A.J., a minor, BY HER GUARDIAN
*AD LITEM*, JEFFREY HAMILTON,

             Plaintiffs,

      v.

UNITED STATES OF AMERICA,

             Defendant.

Case No.: CV 22-02845-JLS-JC

**PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]**

**Hearing Date:** March 29, 2024

**Hearing Time:** 10:30 a.m.
**Judge:** Josephine L. Staton
**Place:** 8A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.    INTRODUCTION ......................................................................................1

II.   ARGUMENT ...............................................................................................1

    A.   Rule 37(c) Requires the Exclusion of Dr. Williamson's Opinions ...............................................................................................1

        1.   Defendant failed to disclose Dr. Williamson. ...........................2

            a.   Lack of Time Does Not Excuse a Failure to Disclose ...........................................................................2

            b.   Dr. Williamson's Affirmative Reports Were Improperly Included in His Rebuttal Report.................3

        2.   Defendant's failure was neither substantially justified nor harmless. .................................................................5

    B.   The Court Should Exclude Dr. Williamson's Opinions Because He Is Not Qualified Under Rule 702 .....................................8

III.  CONCLUSION ...........................................................................................14

PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

## TABLE OF AUTHORITIES

**Cases**                                            **Page(s)**

*In re Celsius Network LLC*,
   655 B.R. 301 (Bankr. S.D.N.Y. 2023) ................................................................ 11

*Clear-View Techs., Inc. v. Rasnick*,
   No. 13-CV-02744, 2015 WL 3509384 (N.D. Cal. June 3, 2015) ............... 2, 4, 5

*Cleveland v. Behemoth*,
   No. 19-CV-672, 2022 WL 5314770 (S.D. Cal. Oct. 6, 2022) ......................... 13

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ........................................................................................... 9

*Goodman v. Staples The Off. Superstore, LLC*,
   644 F.3d 817 (9th Cir. 2011) .............................................................................. 8

*Gunaratna v. Dennis Gross Cosmetology LLC*,
   No. 20-CV-2311, 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023) ....................... 9

*J.G. v. N.Y.C. Dep't of Educ.*,
   No. 23-CV-959, 2024 WL 728626 (S.D.N.Y. Feb. 22, 2024) .......................... 11

*Liberty Ins. Corp. v. Brodeur*,
   41 F.4th 1185 (9th Cir. 2022) ............................................................................. 5

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   602 F. Supp. 3d 767 (D. Md. 2022) .................................................................. 11

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) .............................................................................. 8

*Nat'l Fire Prot. Ass'n v. UpCodes, Inc.*,
   No. 21-CV-05262, 2023 WL 5505888 (C.D. Cal. Aug. 8, 2023) ....................... 4

*R&O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*,
   No. 09-CV-1749, 2011 WL 2923703 (D. Nev. July 18, 2011) ...................... 4, 5

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ............................................................................ 1

-2-

*Zavislak v. Netflix, Inc.*,
No. 21-cv-01811, 2024 WL 382448 (N.D. Cal. Jan. 31, 2024).........................13

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B) .........................................................................6

Fed. R. Civ. P. 37(c)(1) ..........................................................................1, 5

Fed. R. Evid. 702(a)................................................................................10

Honorable Josephine L. Staton, Judge's Procedures, *4. Stipulations
(Civil and Criminal)* https://www.cacd.uscourts.gov/honorable-
josephine-l-staton (last visited Mar. 12, 2024)........................................7

PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Court should exclude the reports, opinions, and purported "rebuttal" testimony (collectively, "the opinions") of Bennett Williamson, Ph.D. ("Dr. Williamson"), for two reasons.   First, Defendant admittedly failed to meet its disclosure obligations under Federal Rule of Civil Procedure 26 ("Rule 26"). Second, Dr. Williamson cannot offer admissible expert evidence because he fails to meet *any* of the criteria under Federal Rule of Evidence 702 ("Rule 702").[1]

## II.   ARGUMENT

### A.    Rule 37(c) Requires the Exclusion of Dr. Williamson's Opinions

Defendant admittedly failed to disclose Dr. Williamson as a Rule 26 expert and failed to produce affirmative reports, instead offering Dr. Williamson's affirmative Rule 26 report under the guise of rebuttal.   Federal Rule of Civil Procedure 37(c) mandates that a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e), . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any

---

[1] On March 11, 2024, Defendant filed an Objection to Plaintiffs' Amended *Daubert* Motions (the "Objection"). Dkt. 159, falsely arguing (1) it was prejudiced by the filing of the amended motions; (2) Plaintiffs should have incurred additional costs to avoid the need for amended motions; and (3) Plaintiffs created the need for amended motions by failing to plan properly.   Defendant was not prejudiced. Plaintiffs' initial motions clearly stated that amended motions with the relevant transcript citations would be filed as soon as practicable. Dkt. 146-1 at 1 n.1; Dkt. 150-1 at 1 n.1.  Defendant's ignores that Plaintiffs are represented *pro bono* and are proceeding *in forma pauperis*.  Dkt. 9.   Finally, Defendant's ignores that Dr. Williamson was not deposed until February 12, 2024 due to his limited availability.

-1-

1    information required to be disclosed by Rule 26(a) that is not properly disclosed.").
2    Defendant willfully failed to comply with its Rule 26 disclosure obligations.  That
3    failure was neither substantially justified nor harmless.   Rule 37(c) requires
4    exclusion of his opinions.

5                    1.    Defendant failed to disclose Dr. Williamson.

6           Defendant concedes it failed to disclose Dr. Williamson as a proposed
7    affirmative expert by the December 22, 2023 deadline set by this Court.  Defendant
8    incorrectly argues (1) it lacked adequate time to prepare initial reports by the
9    deadline, and (2) a purported rebuttal expert can offer an affirmative report.
10   Defendant's Opposition to Plaintiffs' Motion to Exclude Testimony and Report of
11   Psychological Expert Dr. Williamson ("Opp."), Dkt. 165, at 2-3.

12                   a.    *Lack of Time Does Not Excuse a Failure to Disclose*

13          Defendant had no obligation to put forth such an expert and cannot justify its
14   late disclosure. *See Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744, 2015 WL
15   3509384, at *5 (N.D. Cal. June 3, 2015).  Moreover, Plaintiffs' examinations were
16   done on dates agreed to by Defendant, and under the guise of Mental Examinations
17   *under Fed. R. Civ. P. 35*—not as predicates for Rule 26 expert testimony.  Defendant
18   could have—but did not—insisted on earlier examination dates.  Neither the lack of
19   time nor need for an expert justifies Defendant's failure to disclose.  *Id.* at *4
20   ("Defendants can be expected to introduce such expert testimony. . . .  What a party
21   cannot do, however, is exactly what Defendants did here . . . Defendants attempted
22   to sandbag Plaintiff[.]").

23          The parties agreed to schedule Dr. Williamson's Rule 35 examinations of
24   Plaintiffs on December 20 and 21, 2023, knowing that the deadline for affirmative

                                    -2-

1    expert reports was December 22, 2023.[2]  *See* Dkt. 151-1 at 4; Dkt. 151-3; Dkt. 151-

2    4.  Defendant was aware of the deadline for initial expert reports when scheduling

3    the exams and could have raised its timing issues with Plaintiffs and the Court at that

4    time.  Defendant chose not to do so for perceived advantage.

5                    b.    *Dr. Williamson's Affirmative Reports Were Improperly*

6                          *Included in His Rebuttal Report*

7            Defendant contends that "Dr. Williamson was not required to produce his

8    Rule 35 ***findings*** regarding Plaintiffs' medical examinations by the initial disclosure

9    deadline of December 22, 2023," and that Dr. Williamson produced his "***findings***

10   together with his rebuttal opinion within the expert discovery period."  Opp. at 3

11   (emphasis added).  This argument fails for two reasons.

12           *First*, Dr. Williamson *never* produced a Rule 35 report or Rule 35 "findings."

13   He produced reports entitled "Federal Rule of Civil Procedure 26(a) Report Clinical

14   Psychological Evaluation / Expert Rebuttal."    By their own admission, the

15   documents contain affirmative Rule 26(a) reports, which Defendant was obligated

16   to disclose by December 22, 2023.

17           *Second*, despite Defendant's unsupported assertions to the contrary, a rebuttal

18   expert ***cannot*** offer an affirmative expert report.  The law here is quite clear:  rebuttal

19   expert testimony, opinions, and reports are "'intended *solely* to contradict or rebut

20   _____

21   [2] Defendant initially requested Plaintiffs stipulate to Rule 35 Mental Examination on
     October 31, 2023.  Dkt. 151-1 at 4.  Defendant's notices for Dr. Williamson's
22   examinations state that the examinations would be "[p]ursuant to Federal Rule of
     Civil Procedure 35[.]" Dkt. 151-3 at 1; Dkt. 151-4 at 1.  Plaintiffs agreed to mental
23   examinations with the understanding that Rule 35 reports would be created and
24   produced.  Defendant argues that Plaintiffs did not request a Rule 35 report until Dr.
     Williamson's deposition, and that Rule 35 reports need not be produced unless
25   requested by the opposing party or person examined. *See* Opp. at 2.  Even assuming
26   Plaintiffs were required to renew the requests, Defendant has not produced any Rule
     35 report.
27

28

-3-

_____

PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1   evidence on the same subject matter identified by an initial expert witness.'" *Clear-*

2   *View Techs.*, 2015 WL 3509384, at *2 (emphasis added) (quoting *R&O Constr. Co.*

3   *v. Rox Pro Int'l Grp., Ltd.*, No. 09-CV-1749, 2011 WL 2923703, at *2 (D. Nev. July

4   18, 2011)).  This is because "'[t]he function of rebuttal testimony is to explain, repel,

5   counteract or disprove evidence of the adverse party.'" *Id.* (citation omitted).

6        Dr. Williamson's "Federal Rule of Civil Procedure 26(a) Report Clinical

7   Psychological Evaluation[s] / Expert Rebuttal[s]" are admittedly affirmative

8   reports—not rebuttal reports.  Two-thirds of Dr. Williamson's reports consist of

9   affirmative opinions.  *See* Dkt. 148-3, 148-4.  Throughout the reports, Dr.

10  Williamson offers his own examination and affirmative findings (based on his Rule

11  35 examinations), he proposes different diagnoses, and he puts forth different

12  theories of causation.  The reports are a blatant attempt to backdoor affirmative

13  expert testimony—served well after the affirmative report deadline—under the guise

14  of rebuttal testimony.  The Federal Rules of Civil Procedure are clear and self-

15  executing—the opinions must be excluded.  *Nat'l Fire Prot. Ass'n v. UpCodes, Inc.*,

16  No. 21-CV-05262, 2023 WL 5505888, at *4 (C.D. Cal. Aug. 8, 2023) ("'Using a

17  rebuttal report as a backdoor to introduce analysis that could have been included in

18  the opening report is squarely foreclosed by Rule 26.'") (citation omitted); *see also*

19  *Clear-View Techs.*, 2015 WL 3509384, at *4 ("Permitting [d]efendants to backdoor

20  such expert testimony under the guise of 'rebuttal' testimony would render Rule 26's

21  limits generally meaningless[.]").  Dr. Williamson's opinions are not proper rebuttal

22  evidence and were not properly disclosed in affirmative reports; Rule 37(c) requires

23  exclusion.  *See Nat'l Fire Prot. Ass'n*, 2023 WL 5505888, at *3.

24

25

26

27                                           -4-

28
    PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
    REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
    CASE NO. CV 22-02845-JLS-JC

2.   <u>Defendant's failure was neither substantially justified nor harmless.</u>

Defendant was required to disclose Dr. Williamson as a proposed expert, and to provide his entire affirmative expert reports, on or before December 22, 2023. Instead, Defendant waited until Dr. Williamson had Plaintiffs' expert reports in hand, and submitted his affirmative reports and rebuttals jointly a month later—on January 19, 2024, the expert rebuttal deadline. A party that fails properly to disclose information as required by Rule 26(a) may not "'unless such failure is harmless, [] use as evidence at trial . . . any witness or information not so disclosed.'" *Clear-View Techs.*, 2015 WL 3509384, at *2 (quoting Fed. R. Civ. P. 37(c)(1)). "'The sanction is *automatic and mandatory* unless the sanctioned party can show that its violation . . . was either justified or harmless.'" *Id.* (citing *R&O Constr.*, 2011 WL 2923703, at *3).

In determining whether the error was substantially justified or harmless, courts considers several factors, including: "(1) prejudice or surprise to the party against whom the evidenced is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (citation and internal quotation marks omitted).

Defendant has not established that its failure was substantially justified or harmless. Defendant principally argues that Plaintiffs have suffered no prejudice because Defendant would consent to Plaintiffs' preparing supplemental reports, and that, because Plaintiffs have not accepted this offer, Plaintiffs are "manufactur[ing] prejudice[.]" Opp. at 4-5. Defendant's "offer" to require counsel to pay for another round of reports (due to Defendant's misconduct) is a concession that Plaintiffs have been prejudiced. Notably, *Defendant has not offered to remedy the prejudice it*

-5-

1  *caused by paying for Dr. Samuelson to prepare another round of reports*.  Having

2  conceded the first factor and made no arguments as to the remaining factors (in

3  particular their own bad faith and willfulness), Defendant fails to establish that its

4  conduct was substantially justified or harmless.

5  *Prejudice.* As noted above, Defendant actually concedes that Plaintiffs have

6  been prejudiced by its failures.  Notwithstanding its concession, Defendant argues

7  that Plaintiffs are manufacturing prejudice by failing to accept the offer to submit

8  supplemental reports or by "elicit[ing] Dr. Samuelson's rebuttal opinions at her

9  deposition."  Opp. at 4.  But Plaintiffs have not "manufacture[d] prejudice."

10  Defendant has failed to cure the prejudice it caused—by failing to tender the cost it

11  now suggests Plaintiffs must incur (which they simply cannot).

12  As previously explained, *see* Dkt. 150-1 at 7, Plaintiffs have suffered

13  prejudice.  Dr. Williamson was provided an unfair advantage in preparing his own

14  affirmative reports because he waited until he had Plaintiffs' expert's reports in

15  hand.  Plaintiffs  also were deprived of the opportunity to marshal the resources to

16  cover both an affirmative and a rebuttal report to counter and discredit Dr.

17  Williamson's opinions.  Finally, Plaintiffs were deprived of the opportunity to

18  depose Mr. Williamson, as fully as they would have if he had (1) been timely

19  disclosed, (2) produced an affirmative expert report that did not improperly benefit

20  from the work of Plaintiffs' expert, and (3) produced the materials underlying his

21  opinions as required by Rule 26.  Fed. R. Civ. P. 26(a)(2)(B).[3]

22  

23  [3] It is noteworthy that Dr. Williamson believes he is still free to add to his credentials

24  and opinions—offering new material in his declaration in opposition to this motion
   and testifying in deposition that his Reports do not limit him from offering new

25  opinions if he thinks of them. *See, e.g.*, Williamson Tr. 40:24–41:4 ("Q: Well, you

26  are not holding back things that you now plan to testify about that you didn't put in
   your report, are you? A: Well, I have some additional information but most of the

27  

28  
-6-

1    *Inability to Cure.*  Defendant cannot cure the prejudice it caused.  Defendant

2    does not, because it cannot, argue that the uneven playing field afforded to Dr.

3    Williamson or the impediments to a full deposition of Dr. Williamson can be cured.

4    Defendant's sole attempt at cure is an offer to require Plaintiffs' *pro bono* counsel

5    to pay for Plaintiffs' expert to prepare a rebuttal report (discussed *supra*)  Defendant

6    ignores that expert discovery has closed, and that parties cannot stipulate to reopen

7    a deadline contained in the Court's scheduling order—nor did Defendant seek to do

8    so.  *See* Honorable Josephine L. Staton, Judge's Procedures, *4. Stipulations (Civil*

9    *and Criminal)*  https://www.cacd.uscourts.gov/honorable-josephine-l-staton  (last

10   visited Mar. 12, 2024).  Even if the deadline could be extended, Defendant ignores

11   that Plaintiffs are represented by *pro bono* counsel, who cannot, and should not, be

12   forced to incur additional unforeseen expert expenses at this late date based on

13   Defendant's gamesmanship, including its willful failure to properly disclose its

14   expert.[4]

15

16

17   _____

     opinions are embedded within those reports."); *see also id.* 41:11–14, 41:17–22;
18   53:13-15, 53:18-20; 65:16-21, 68:14-20.

     [4] Defendant's assertion that Plaintiffs' counsel is a "large and wealthy law firm,
19   Milbank LLC [sic], [that] can afford" such expenses is truly outrageous and is itself
     a reflection of the unlawful policies (acting unconscionably toward poor migrants in
20   order to deter migration) at issue in this case.  Counsel's argument here concretely
     perpetuates the harm Defendant has caused to Plaintiffs—and thousands of other
21   families. Dkt. 159 at 2.  Thousands of families, like Plaintiffs, were separated by
     Defendant's agents and employees under the Trump Administration's family
22   separation policy.  They were largely impoverished people fleeing harm and
     persecution.  Very few of these families have been able to find *pro bono* lawyers to
23   take on their cases where *the federal government* is the opposing party.  If the
     government is permitted to increase the Plaintiffs' costs of litigation by consciously
24   ignoring the rules, it would dissuade other lawyers from taking on important cases
     like this one—intended to address the federal government's egregious misconduct.
25

26

27                                        -7-
     _____
28   PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
     REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
     CASE NO. CV 22-02845-JLS-JC

1    *Bad Faith.*  Defendant's argument that it is justified in its late disclosure of

2    Dr. Williamson's affirmative report because of the short time between Dr.

3    Williamson's Rule 35 examination of Plaintiffs and the Rule 26 initial expert report

4    deadline concedes that Defendant acted in bad faith, *choosing* to serve Plaintiffs with

5    a late affirmative report rather than timely producing a Rule 35 report, timely

6    disclosing Dr. Williamson as an affirmative expert or requesting that the Court

7    extend the expert discovery deadline.

8        Because Defendant's failure was neither substantially justified nor harmless,

9    Rule 37 requires that Dr. Williamson's opinions be stricken.  *See Goodman v.*

10   *Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (affirming the

11   self-executing sanction under Rule 37 where non-compliant party did not carry

12   burden of proving harmlessness).[5]

13   **B.      The Court Should Exclude Dr. Williamson's Opinions Because He**

14   **Is Not Qualified Under Rule 702**

15       Even if Dr. Williamson's reports were timely disclosed, the Court should still

16   preclude Dr. Williamson's opinions because he is not qualified under Rule 702.

17   Defendant bears the burden but has failed to prove Dr. Williamson is qualified.

18       *Dr. Williamson is not qualified to render opinions in this case*.  According to

19   Defendant, any "psychologist" can offer opinions about "psychology."  That is not

20   how Rule 702 or the law works.  Courts regularly find an expert's qualifications in

21   one field do not automatically translate to qualification to opine in a separate field,

22   even if those fields are related in some general sense.  *See, e.g.*, *Metabolife Int'l, Inc.*

23

24   [5] Defendant concedes that its failure to disclose is not a *Daubert* issue.  *See* Opp. at

25   3.    Unlike *Daubert* issues, the failure to comply with Rule 26's disclosure
     requirements cannot be cured by limiting instructions or other less extreme remedies.

26   *Goodman*, 644 F.3d at 827 ("Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction

27   designed to provide a strong inducement for disclosure.").

     -8-

28

1   *v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001); *Gunaratna v. Dennis Gross*

2   *Cosmetology LLC*, No. 20-CV-2311, 2023 WL 2628620, at *9 (C.D. Cal. Mar. 15,

3   2023) ("Defendant's argument boils down to the logically flawed premise that

4   because [the proposed expert] is trained as a scientist, she is therefore qualified to

5   review lab reports in any field of science, regardless of whether she is familiar with

6   the particular subject and methodologies used therein.").

7       Dr. Williamson lacks the education and experience to qualify him as an expert

8   in ███████████████████████████████, in diagnosis and treatment of trauma

9   generally, in diagnosis and treatment of traumatized children or even in the broader

10  area of clinical psychology.  Per his own deposition testimony, Dr. Williamson was

11  trained as an educational psychologist.  His sole qualifying "experience" is ordinary

12  day-to-day treatment of patients.[6]  Dr. Williamson has *zero* training in the clinical

13  diagnosis and treatment of trauma; *zero* training or education in the protocols for

14  treating traumatized children; does not belong to the specialist groups of treating

15  psychologists devoted to ██████ trauma issues, or children; has no education or

16  training in trauma; does not regularly treat trauma patients in the ordinary course of

17  his practice; and, made no effort to supplement his lack of training and experience

18  with contextual knowledge.  He is not an expert on the issues *in this case* and cannot

19  provide admissible expert evidence.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509

20  U.S. 579, 596 (1993); *Gunaratna*, 2023 WL 2628620, at *9.

21

22

23  _____

24  [6] In his new declaration, Dr. Williamson exaggerates his pre- and post-licensure experience, averring that his work included seeing ████████████ patients, and

25  that he attended trainings regarding trauma.  Williamson Decl., Dkt. 165-1, at ¶¶ 13–19.  But Dr. Williamson was asked about his relevant training during his deposition

26  and failed to provide the information he now wants to offer.  *See, e.g.*, Williamson

27  Tr. 54:14–55:7.

-9-

28  PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1    *Dr. Williamson does not offer specialized knowledge that will help the trier of*

2    *fact*.   Dr. Williamson's opinions do not contain "scientific, technical, or other

3    specialized knowledge [to] help the trier of fact to understand the evidence or to

4    determine a fact in issue[.]"  Fed. R. Evid. 702(a).  Dr. Williamson offers no real

5    expertise or opinion in this case.  In both reports, he simply recites T-scores and

6    narratives reported by AI testing software and states whether the AI reports say the

7    scores were clinically significant.  Dkt. 148-3 at 15-16; Dkt. 148-4 at 14-19.  Dr.

8    Williamson does not use judgment for this, nor does he provide support for, or offer

9    any contextual analysis of, the results.  A lay person could have conducted the same

10    copy-and-paste exercise.  Defendant confirms that Dr. Williamson used computer-

11    scored tests but argues that Dr. Williamson used the tests to generate hypotheses to

12    use in conjunction with other tests.  Opp. at 10.  The Reports themselves prove

13    otherwise, and Dr. Williamson admitted as much in his deposition.  Defendant cites

14    only to Dr. Williamson's new declaration for this contention, but neither Defendant

15    nor Dr. Williamson cite to the reports or explains how the scores were used in

16    conjunction with other evidence (because no such consideration or analysis appears

17    in the reports).  In sum, Dr. Williamson's reports do not contain expert "opinion" or

18    include scientific, technical, or other specialized knowledge that would help the

19    Court as trier of fact, and should be excluded.

20    *Dr. Williamson's reports are not based on sufficient facts or data*.[7]   In

21    drafting his reports, Dr. Williamson relied only on a handful of documents that were

22    cherry-picked and provided to him by defense counsel.  Defendant does not dispute

23    this.  Dr. Williamson's reports and deposition testimony confirm he conducted no

24    _____

25    [7] Defendant argues that Dr. Williamson relied on sufficient facts and data because
he relied on "[m]ore [f]acts and [d]ata [t]han Plaintiff's Expert Dr. Samuelson."
26    Opp. at 10.  Defendant's assertion is wrong but irrelevant because Defendant has not
moved to exclude Dr. Samuelson's testimony.
27

-10-

28    _____
PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1    research into the vast, available literature surrounding the facts and circumstances

2    of this case.  Dr. Williamson also based his opinions on insufficient data.  For

3    example, rather than conduct a psychodiagnostics interview, which is standard in

4    trauma diagnosis, Dr. Williamson's only took a history from each plaintiff, jotting

5    pithy responses on a generic form.  *See* Dkt. 148-5.  Dr. Williamson then relied

6    almost entirely on AI-generated narrative reports (without disclosing underlying

7    algorithms) to reach his conclusions.

8         Fatally, Defendant argues that Dr. Williamson did not use AI-generated

9    narratives but rather "relied, ***in part***, on Computer Based Test Interpretation

10   (CBTI)."  Opp. at 7 (emphasis in original).  Dr. Williamson further explains in his

11   declaration that "CBTI, as opposed to AI, is based on a particular norm group or

12   groups that have been evaluated by experts.  From those norm groups, *actuarial*

13   hypotheses are generated for a clinician to consider."  Williamson Decl., Dkt. 165-

14   1, at ¶ 30 (emphasis added).  This is a distinction without a difference.  Whether

15   labeled CBTI or AI is of no moment; Dr. Williamson did not author these passages

16   (generated by an algorithm based on actuarial assumptions) himself, and he did not

17   engage with the "hypotheses" (*i.e.*, consider their validity or alternative hypotheses).

18   Dr. Williamson's purported opinions are copied and pasted from untested AI

19   software and thus unreliable.  *See In re Marriott Int'l, Inc., Customer Data Sec.*

20   *Breach Litig.*, 602 F. Supp. 3d 767, 787 (D. Md. 2022) (noting that "if [AI

21   algorithms] are not tested to confirm their output . . . , then the results they generate

22   cannot be shown to be relevant, reliable, helpful to the fact finder, or to fit the

23   circumstances of the particular case in which they are used"); *see, e.g.*, *In re Celsius*

24   *Network LLC*, 655 B.R. 301, 308-09 (Bankr. S.D.N.Y. 2023) (excluding an AI-

25   generated expert report as unreliable and not the opinion of the expert but of the

26   software); *J.G. v. N.Y.C. Dep't of Educ.*, No. 23-CV-959, 2024 WL 728626, at *7

27

28

-11-

1    (S.D.N.Y. Feb. 22, 2024) (finding portions of counsel's submissions relying on AI

2    "utterly and unusually unpersuasive").

3        *Dr. Williamson's report is not the product of reliable principles and methods*.

4    Defendant incorrectly contends that Dr. Williamson's opinions are the product of

5    reliable principles and methods because they are "the product of a variety of factors,

6    including: (1) his review of medical documents, case background information, and

7    deposition testimony, (2) his clinical interviews with Plaintiffs, and (3) his

8    applications of various clinical tests to the Plaintiffs." Opp. at 12.

9        First, proving his lack of expertise, Dr. Williamson used the wrong tests for

10   each Plaintiff. For minor A.F.A.J., Dr. Williamson chose to administer the adult

11   version of tests, not based on independent or professional judgment, but at defense

12   counsel's suggestion. *See* Dkt. 151-1 at 5.

13       For Mr. Arredondo, Dr. Williamson administered an outdated test (the

14   "MMPI-2" rather than the "MMPI-3") that is *not* a test methodology for trauma

15   generally accepted by the psychological community. Defendant conceded this in his

16   deposition, agreeing that his use of the MMPI-2 to diagnose trauma was a "valid

17   criticism" because "the norm group" for Hispanic populations "is more current with

18   the III." Williamson Tr., Dkt. 162-3, 185:15–21.

19       Defendant's and Dr. Williamson's efforts to evade his concession fail. In a

20   newly-written declaration that contradicts his own deposition testimony, Dr.

21   Williamson now avers the MMPI-2 is "widely considered to be an outstanding

22   personality inventory"; that attempts to shorten the MMPI-2 . . . have had "unclear

23   results"; and the shortened MMPI-3 has "been criticized." Williamson Decl., Dkt.

24   165-1, ¶¶ 38–39.

25       Dr. Williamson supports these statements with three irrelevant articles, none

26   of which supports his decision to use the MMPI-2 to diagnose Plaintiffs. Further, to

27
                                    -12-
28
     PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
     REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
     CASE NO. CV 22-02845-JLS-JC

1   the extent that Dr. Williamson's new declaration contradicts his testimony, the Court
2   should disregard it.  *See, e.g.*, *Zavislak v. Netflix, Inc.*, No. 21-cv-01811, 2024 WL
3   382448, at \*20 (N.D. Cal. Jan. 31, 2024) (striking statement from declaration that
4   contradicted deposition testimony).

5       In addition, Defendant ignores the glaring issue raised by Plaintiffs of Dr.
6   Williamson's undisclosed ownership interest in the company used to score Mr.
7   Arredondo's Report, which does not have the capability of scoring the MMPI-3.  Dr.
8   Williamson's "choice" to use the MMPI-2 was driven by undisclosed financial self-
9   interest.

10      Defendant's reliance on *Cleveland v. Behemoth*, No. 19-CV-672, 2022 WL
11  5314770, at \*3 (S.D. Cal. Oct. 6, 2022)—seemingly to suggest that the Court should
12  find Dr. Williamson's testimony reliable because he used the MMPI-2 and various
13  other factors—is misplaced.  There, the plaintiff challenged *how* the expert used the
14  MMPI-2 in conjunction with other factors, whereas here, Plaintiffs have challenged
15  *that* he used it.  Dr. Williamson cannot, by *ipse dixit*, claim his opinions are based
16  on a "variety of factors" when his reports facially indicate to the contrary.

17      *Dr. Williamson did not reliably apply the relevant principles and methods*.
18  First, Dr. Williamson's reliance on AI-generated narratives without further analysis
19  or supplementing the AI with additional context and considerations is contrary to
20  accepted practice in the field of clinical psychology.  *See* Dkt. 151-14 at 201.
21  Second, contrary to ethical requirements in the field of psychology, Dr. Williamson
22  used test scores as the *sole* indicators to characterize functioning, competence,
23  attitude, and predispositions.  *See* Dkt. 151-17 at 236.  Third, Dr. Williamson failed
24  to address inconsistencies.  *See* Dkt. 148-2 at 21.  Even assuming that Dr.
25  Williamson had chosen and utilized appropriate methodologies for evaluating
26  trauma victims and minors (he did not), his failure to apply them in a way that is

27
28

-13-

accepted by the psychological trauma expert community renders his opinions unreliable and subject to exclusion under Fed. R. Evid. 702.

## III.   CONCLUSION

Plaintiffs respectfully request that the Court exclude Dr. Williamson's opinions in their entirety.  Dr. Williamson's opinions must be excluded pursuant to Rule 37(c).  Exclusion is further warranted because Dr. Williamson does not satisfy *any* of the Rule 702 criteria.

Dated: <u>March 18, 2024</u>          Respectfully Submitted,
**MILBANK LLP**

By: *<u>/s/ Linda Dakin-Grimm</u>*
Linda Dakin-Grimm (State Bar #119630)
LDakin-grimm@milbank.com

Mark Shinderman (State Bar #136644)
MShinderman@milbank.com
Samir L. Vora (State Bar #253772)
SVora@milbank.com
Marina Markarian (State Bar #340686)
MMarkarian@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: 424-386-4000
Facsimile: 213-629-5063

Elizabeth Hamilton, *pro hac vice*
EHamilton@milbank.com
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

Julie Wolf, *pro hac vice*
JWolf@milbank.com

-14-

PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1   Julia Duke, *pro hac vice*
JDuke@milbank.com
2   Riah Kim, *pro hac vice*
RKim2@milbank.com
3   Victoria Colbert, *pro hac vice*
VColbert@milbank.com
4   Jonghyun Lee, *pro hac vice*
JLee7@milbank.com
5   1850 K Street NW, Suite 1100
Washington, DC 20006
6   Telephone: 202-835-7500
Facsimile: 202-263-7586
7

8

9   *Pro Bono* Attorneys for Plaintiffs,
Esvin Fernando Arredondo Rodriguez and
10  A.F.A.J.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27              -15-

28
PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC

1

## Certificate of Compliance Pursuant to L.R. 11-6.2

2

The undersigned, counsel of record for Plaintiffs Esvin Fernando Arredondo

3

Rodriguez and A.F.A.J certifies that this brief contains 4,115 words, which complies

4

with the word limit of L.R. 11-6.1.

5

6

Dated: March 18, 2024                          By: /s/ Elizabeth Hamilton

7

Elizabeth Hamilton

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-16-

28

PLAINTIFFS' AMENDED REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY AND
REPORT OF PROPOSED EXPERT BENNETT WILLIAMSON [*DAUBERT*]
CASE NO. CV 22-02845-JLS-JC